

October 15, 2018

Hon. Magistrate Judge Joseph A. Dickson
United States District Court – District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Newark, New Jersey 07101

2555 Grand Blvd.
Kansas City
Missouri 64108
t 816.474.6550
f 816.421.5547

      Re:    Process, Procedure, and Pending Applications re: October 17, 2018 Conference
             *Occidental Chemical Corp v. 21st Century Fox America, Inc., et al*.
             Docket No. 2:18-cv-11273-JLL-JAD

Dear Magistrate Judge Dickson,

      We serve as Common Counsel on behalf of 74 of the Defendants (the "Small Parties Group" or "SPG")[1] to this litigation and write this letter to identify certain processes, procedures, and pending applications that should be addressed at the October 17, 2018 conference.

      On October 3, 2018, the Court entered a "Letter Order Pursuant to Rule 16.1" scheduling an in-person initial scheduling conference. On October 10, 2018 following submissions by the SPG and other Defendants (ECF No. 295) and by Plaintiff Occidental Chemical Corporation ("Occidental") (ECF No. 301), the Court entered a text order suspending the obligations to prepare a joint discovery plan and exchange Rule 26 initial disclosures. ECF No. 303. Instead, the Court stated that the conference should be used to discuss "process, procedure, and pending applications." *Id.* This letter identifies topics that the SPG respectfully requests the Court entertain and provides, in advance, a summary of legal authority for the SPG's position on certain topics.[2]

### 1. Summary of topics proposed for the October 17, 2018 status conference.

      The SPG proposes that the following discovery-related processes and procedures should be discussed at the October 17 conference:

- Procedures for river and upland sampling and data collection;
- Procedures for document production, including procedures for electronically stored information ("ESI"), procedures for paper documents, and a procedure for establishing a document repository for all produced documents;
- A process to establish periodic status calls with the Court;

---

[1] In submitting this letter, Shook, Hardy & Bacon L.L.P. is acting on behalf of the members of the SPG, which are listed on Attachment A. Each SPG member is also individually represented by separate counsel. Non-SPG defendants who have joined in this letter are listed in Attachment B.

[2] On October, 15, 2018 the parties engaged in a meet-and-confer telephone conference to discuss the upcoming conference. Fundamental issues of disagreement remain among the parties. Despite the Court's order suspending the obligation to prepare a joint discovery plan and to exchange Rule 26 initial disclosures, Occidental continues to request that Defendants confer immediately to establish a comprehensive pretrial and discovery schedule and to provide Rule 26 initial disclosures. Occidental also stated it will not agree to any document sharing platform and appeared only willing to produce documents as it has them regardless of any protocol on formatting that Defendants propose. In short, Occidental appears opposed to the phased approach outlined here.

- Procedures for resolving discovery disputes by letter to the Court; and
- Procedures for filing dispositive motions on successor liability and personal jurisdiction.

In addition, the SPG suggests that the following preliminary and pending applications should also be addressed at the conference:

- The SPG's Request for Permission to Move for a Protective Order for the EPA Allocation and Mediated Settlement Process. ECF No. 291.
- Various *pro hac vice* motions. ECF Nos. 111, 155, 167, 176, 243, 266, 268, 271, and 274.
- Defendant PMC Global, Inc.'s Letter Requesting an Order to Establish Deadlines for Filing Third-Party Complaints. ECF No. 289.
- The SPG, Gordon Rees Group,[3] and Defendants Curtiss Wright Corporation, Palin Enterprises, LLC, and Spectraserv, Inc.'s Request for an Order to Extend Time to Respond to Crossclaims. ECF No. 276.
- The Gordon Rees Group's Joinder of the SPG's Motion to Dismiss. (Not filed on ECF).

**2. The parties and Court should work together to develop certain processes and procedures while the motions to dismiss are considered.**

It is essential in this type of complex, multi-defendant case that orderly procedures and protocols be developed on discovery-related topics. While the Court considers Defendants' motions to dismiss, certain key and necessary protocols can be negotiated between the parties to streamline the case should the Court not dismiss all of Occidental's claims. Establishing these processes and protocols will thus allow the parties to move forward expeditiously if any of Occidental's claims survive the motions to dismiss.

    a. *Data Sampling and Gathering*

Before Occidental conducts its proposed soil or groundwater sampling, Occidental and Defendants will need to confer as to what samples are desired and a proposed protocol for split sampling. This protocol will need to address in detail issues such as timing, conditions, viability, indemnification from contractors, access agreements, and others.

Occidental has also indicated that it desires to destroy certain samples that were taken from relevant properties before this action was filed and transferred to it pursuant to the Bankruptcy Plan of Occidental's former indemnitors, Maxus Energy Corporation and Tierra Solutions, Inc. Occidental has advised that it intends to destroy these samples unless Defendants incur the

---

[3] The Gordon Rees Group consists of 15 defendants: (1) Alliance Chemical Inc.; (2) Borden & Remington Corp.; (3) Chemtrade Chemicals Corporation; (4) Darling Ingredients Inc.; (5) Eden Wood Corporation; (6) Elan Chemical Co., Inc.; (7) Everett Smith Group, Ltd; (8) Fort James LLC; (9) Hexion Inc.; (10) INX International Ink Co.; (11) Kearny Smelting & Refining Corp.; (12) Meltser-Tonnele Avenue LLC; (13) Pfister Urban Renewal Corporation; (14) Teval Corp; and (15) Wiggins Plastics, Inc.

significant costs to continue their maintenance. Before this occurs, Occidental was supposed to provide Defendants with a detailed index of the samples Occidental is talking about discarding. The parties need this information to confer regarding the nature of these samples, when they were taken, and their relevance to the litigation. The parties will need time to consult with the State of New Jersey, the EPA, the NRD trustees, and other regulatory agencies about discarding such samples. Importantly, this process will take time and Defendants have not yet received the index.

      b. *Document Production / Document Repository*

Occidental has acknowledged that initially it will be producing, among other things: (i) at least 12 million pages of ESI; (ii) a hard drive containing 1.4 million documents; and (iii) hundreds of boxes of paper documents scattered in storage across the country that Occidental has yet to review. The 117 Defendants will also be collectively producing a very large number of documents.

The parties thus need to develop a satisfactory protocol for the production and formatting of documents, a protocol on what electronic document housing vehicle will be used, and a confidentiality agreement as part of the development of a discovery protocol. In an earlier state-court litigation involving related issues, certain Defendants were provided by Occidental's previous indemnitors (prior to their bankruptcy) productions of unusable, non-unitized, disorganized, and incomplete documents. So that this does not happen again, the parties need to confer about a comprehensive set of procedures and protocols that are fair and equitable to all parties (and if necessary seek the Court's assistance). Several other of the Defendants in this litigation were not involved in early litigation, have not been through discovery in related cases, and would not be able to produce documents quickly.

Defendants suggest that consideration should be given to having all documents and ESI placed on a single electronic platform to which all parties have access. *See* Manual for Complex Litigation § 34.25 ("CERCLA litigation involves large numbers of documents. Consider the feasibility, in light of the number of parties typically involved, of a central document depository or shared database of documents produced during discovery."). Defendants believe Occidental already has a platform containing Occidental's documents, and that it would be efficient to allow Defendants access to these documents in that format.

      c. *Status Conferences*

Defendants suggest the Court consider having monthly or quarterly status conferences. After each conference, tailored case management orders can be issued that are appropriate to the circumstances that exist at the time. The parties and the Court should also discuss on October 17 whether future conferences should be attended in-person or telephonically, and whether common counsel can continue to appear on behalf of all group members.

      d. *Issues to Decide After the Motions to Dismiss are Resolved*

After resolution of the motions to dismiss, a determination can be made whether the joinder of parties is required and whether discovery should occur in phases, as is common in CERCLA actions. *See, e.g.,* Manual for Complex Litigation § 34.12.

If claims remain following resolution of the motions to dismiss, Defendants contend that entering an order under Federal Rule of Civil Procedure 16(c)(2)(L), requiring Occidental to furnish fundamental evidence to substantiate essential elements of its claims, including the extent of its injury and causation, may be particularly appropriate. *See Asarco LLC v. NL Indus.*, No. 4:11-CV-00864-JAR, 2013 U.S. Dist. LEXIS 33979, at *12-13 (E.D. Mo. Mar. 11, 2013) (CERCLA case where the court entered an order holding that Defendants were not obligated to conduct any discovery "until such time as Asarco establishes its prima facie case.").

**3. Certain pending applications can be addressed now.**

    a. *Certain Defendants' Motion for a Protective Order Relating to the EPA Allocation*

More than sixty Defendants in this litigation are concurrently participating in a separate administrative allocation process initiated by EPA (the "EPA Allocation") that began approximately one year before this litigation was filed. Occidental was asked by EPA to participate in the EPA Allocation, but refused to do so. Certain SPG Defendants have submitted a letter request to the Court, requesting permission to formally move for a protective order for materials that are a part of the EPA Allocation. ECF No. 291. Occidental opposed. ECF No. 284. For the reasons explained in the SPG's letter request, the SPG respectfully submits it should be allowed to file its motion for a protective order immediately.

    b. *Pro Hac Vice Motions*

Counsel for a number of Defendants have filed motions requesting admission to this Court on a *pro hac vice* status. *See* ECF Nos. 111, 155, 167, 176, 243, 266, 268, 271, and 274. There are also additional counsel that have indicated that they intend to file *pro hac vice* motions. The SPG has provided Occidental's counsel with the list of counsel requesting admission *pro hac vice* and requested Occidental provide consent.

    c. *Crossclaims*

On September 26, 2018, SPG, the Gordon Rees Group, and Defendants Curtiss Wright Corporation, Palin Enterprises, LLC, and Spectraserv, Inc. submitted a Proposed Order asking the Court to extend the time to serve an answer or other responsive pleading to any crossclaim until a case management order establishing such deadlines is entered. ECF No. 276.

Defendants request that crossclaims be preserved rather than deemed served. If crossclaims are deemed served, crossclaims should also be deemed denied.

    d. *Third-Party Claims*

On October 3, 2018, Defendant PMC Global, Inc. ("PMC") filed a letter and proposed order, asking the Court to establish deadlines for filing third-party complaints. ECF No. 289. PMC asked the Court to set deadlines for filing third-party complaints in a future case management order

4

and no earlier than November 30, 2018. PMC also asked that third-party complaints be considered timely if filed on or before the date set by the Court in the future case management order.

Occidental has suggested that the deadline for third-party complaints should be set as November 30, 2018—the same date that all briefing on the motions to dismiss are scheduled to be filed and before most Defendants will have even filed an answer (if any is ever required). Occidental is thus inappropriately asking this Court to arbitrarily shorten the time allowed under the Federal Rules. *See* Fed. R. Civ. P. 14(a) (stating that a third-party complaint can be brought without court permission within 14 days of serving an original answer).

Defendants submit the deadline to add parties should be after the Court rules on the pending motions to dismiss as the disposition of those motions may impact the need for third-party practice if Occidental's claims for joint and several liability under CERCLA § 107(a) are dismissed, and only Occidental's contribution claims for several liability under CERCLA § 113(f) remain. The final date to add parties should also be later in the discovery process, as new parties may be identified during the discovery process.

      e. *The Gordon Rees Group's Joinder of the SPG's Motion to Dismiss*

Pursuant to the Court's Pre-Answer Scheduling Order (ECF No. 12), the SPG served its motion to dismiss on Occidental on September 12, 2018. On September 26, the Gordon Rees Group submitted a letter expressing its intention to join the SPG's motion. Occidental opposed the Gordon Rees Group's letter request, arguing that the request was untimely and that by filing an answer, the Gordon Rees Group waived its right to file a motion to dismiss. ECF No. 287. The Gordon Rees Group responded and argued that its request was permissible under the court rules. ECF No. 290.

As a general matter, Defendants propose that any party that intends to join a pending motion should be allowed to file a notice of joinder within five days of the ECF filing of any motion. The notice of joinder should specifically identify the motion in which the party is joining.

4. **The Court should limit other discovery activities before the motions to dismiss are decided.**

As the Court recognized, attempting to set dates for a comprehensive scheduling order is premature at this time. Occidental's 190-page Complaint asserts complex, technical, and fact-specific claims against 117 individual Defendants, and alleges environmental discharges at more than 120 separate properties dating back to the 1800s and early 1900s. It is not possible to set dates now for a comprehensive discovery and pretrial schedule, and attempting to do so will be inefficient and counterproductive. Doing so would at most result in an unrealistic, aspirational, interim schedule that will require multiple significant subsequent modifications. Rather, the Court should employ a phased approach to scheduling discovery and pretrial activities.

As discussed above, while Defendants' motions to dismiss are pending, the parties should confer regarding protocols for the data collection, site sampling, and document production and storage. Until the Court decides whether Occidental can proceed with any of its claims, additional

discovery activities are premature. Indeed, avoiding unnecessary and premature triggering of a case management order and scheduling conference was one of the primary reasons the Court entered the Pre-Answer Scheduling Order. Until the Court determines whether any of Occidental's claims survive the motions to dismiss, it is not possible to enter a meaningful scheduling order.

We understand that the Your Honor does not have the opening briefs on the motions to dismiss before him. A short summary of moving Defendants' positions is included as Attachment C to this letter so that Your Honor can understand the basis of Defendants' motions and why allowing full discovery to proceed while these motions are pending is not warranted.

The Court unquestionably has the ability to structure discovery activities as the SPG proposes for at least three reasons.

*First,* Under Local Civil Rule 16.1(a)(1), a Magistrate Judge has discretion to defer a Rule 16 scheduling conference "due to the pendency of a dispositive or other motion."

*Second*, there is Third Circuit precedent affirming that this Court could suspend *all* discovery activity (which Defendants are *not* proposing) until motions to dismiss are resolved. *E.g., Mann v. Brenner*, 375 F. App'x 232, 239-40 (3d Cir. 2010) (upholding district court's decision to stay discovery while it ruled on the defendants' motion to dismiss) (citing *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989) (the purpose of Rule 12(b)(6) is to "streamline[ ] litigation by dispensing with needless discovery and factfinding"); *accord Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir. 1997) ("A motion to dismiss based on failure to state a claim for relief should . . . be resolved before discovery begins."); *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987) (the idea that discovery should be permitted before deciding a motion to dismiss "is unsupported and defies common sense [because t]he purpose of F.R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery").

*Third, c*ourts have similarly delayed discovery in CERCLA cases until dispositive motions are decided. *See, e.g., Carolina Power & Light Co. v. 3M Co.*, Case No. 5:08-CV-460-FL, 2010 WL 11420854, at *1 (E.D.N.C. Mar. 24, 2010) (in CERCLA case involving 250 defendants, court stayed discovery pending disposition of the defendants' motions to dismiss).

### 5. Certain dispositive motions should be permitted before the close of discovery

In addition to the pending motions to dismiss, it is anticipated that some defendants will be filing dispositive motions based upon lack of personal jurisdiction and no successor liability. Those defendants should not have to wait until fact discovery closes for all parties to do so, while incurring significant litigation costs in the meantime. In fact, Local Civil Rule 16.1 contemplates that the establishment of "dates for filing of dispositive motions" should include "due consideration whether such motions may be brought at an early stage of proceedings (i.e., before completion of fact discovery or submission of expert reports)."

Therefore, the October 17 conference should include discussion of a schedule and procedures for the filing of dispositive motions based upon lack of personal jurisdiction and no

successor liability. That discussion would address issues such as timing for the filing of such motions, limited discovery that may be required for the motions and whether it should be necessary for a party to first seek leave of the Court by way of a letter application in order to file such dispositive motions. The ability to file early dispositive motions on successor liability and other issues should not, however, establish an early deadline for all parties to file such motions. In other words, Defendants want to be able *but not required* to file early dispositive motions.

### 6. Conclusion

For the reasons set forth above, Defendants assert that establishing a discovery plan is premature at this time. The resolution of the pending motions to dismiss will impact many subsequent issues in this case, including the need to bring third-party complaints, whether Occidental must amend its complaint, and what issues and claims (if any) remain to be resolved. At this time, Defendants believe that, as indicated in the Court's text order, it would be a better use of the parties' and the Court's time to use the October 17 hearing date to address preliminary processes and protocols relating to data sampling and gathering, document production, and future conferences, as well as resolve the pending applications already filed on the docket.

We look forward to meeting with Your Honor on October 17.

Respectfully submitted,

*/s/ Joseph H. Blum*

David R. Erickson (*pro hac vice* pending)
Joseph H. Blum (NJ Bar No. 010211984)
Shook, Hardy & Bacon, L.L.P.
2555 Grand Blvd.,
Kansas City, Missouri 64108
*Common Counsel for the Small Parties Group*

## ATTACHMENT A

### SPG Members

1. 21st Century Fox America, Inc. (f/k/a News America, Inc.)
2. A.E. Staley Manufacturing Company
3. Akzo Nobel Coatings, Inc.
4. Arkema Inc.
5. Ashland LLC
6. Atlantic Richfield Co.
7. BASF Corporation
8. BASF Catalysts LLC
9. Bath Iron Works Corporation
10. Benjamin Moore & Co.
11. Berol Corporation
12. Canning Gumm LLC
13. CBS Corporation
14. CNA Holdings LLC
15. Coats & Clark Inc.
16. Conopco, Inc., d/b/a Unilever (as successor to CPC/Bestfoods, former parent of Penick Corporation)
17. Cooper Industries, LLC
18. Covanta Essex Company
19. Croda, Inc.
20. DII Industries, LLC
21. E. I. du Pont de Nemours and Company
22. Emerald Kalama Chemical, LLC
23. EnPro Industries, Inc.
24. Essex Chemical Corporation
25. Franklin-Burlington Plastics, Inc.
26. General Electric Company
27. Givaudan Fragrances Corporation
28. Goodrich Corporation
29. The Hartz Consumer Group, Inc. as successor to certain liabilities of The Hartz Mountain Corporation
30. Hexcel Corporation
31. Hoffmann LaRoche Inc.
32. Honeywell International, Inc.
33. ISP Chemicals LLC
34. Johnson & Johnson
35. Kalama Specialty Chemicals, Inc.
36. LeeMilt's Petroleum, Inc.
37. Legacy Vulcan, LLC
38. Mallinckrodt LLC

39. McKesson Corporation
40. MI Holdings, Inc.
41. Nappwood Land Corporation
42. National-Standard LLC
43. The Newark Group, Inc.
44. Newell Brands Inc.
45. Nokia Corporation of America
46. Novartis Corporation
47. Novelis Corporation (Alcan Corp.)
48. Noveon Hilton Davis, Inc.
49. The Okonite Company, Inc.
50. Otis Elevator Company
51. Pabst Brewing Company, LLC
52. Pharmacia, LLC
53. Pitt-Consol Chemical Company
54. PPG Industries, Inc.
55. Public Service Electric & Gas Company
56. Purdue Pharma Technologies, Inc.
57. Quala Systems, Inc.
58. Quality Carriers, Inc.
59. Revere Smelting and Refining Corporation
60. Royce Associates, a Limited Partnership
61. RTC Properties, Inc.
62. Safety-Kleen Envirosystems Company
63. Sequa Corporation
64. The Sherwin-Williams Company
65. Staley Holdings LLC
66. Stanley Black & Decker, Inc.
67. STWB Inc.
68. Sun Chemical Corporation
69. Sunoco (R&M), LLC
70. Sunoco Partners Marketing & Terminals L.P.
71. Tate & Lyle Ingredients Americas LLC
72. Textron, Inc.
73. Tiffany and Company
74. United States Steel Corporation

## ATTACHMENT B

**Non-SPG Members Joining this Letter**

1. Alliance Chemical Inc.
2. Borden & Remington Corp.
3. Campbell Foundry Company
4. Chargeurs, Inc.
5. Chargeurs Wool (USA) Inc.
6. Chemtrade Chemicals Corporation
7. Curtiss-Wright Corporation
8. Darling Ingredients Inc.
9. Eden Wood Corporation
10. Elan Chemical Co., Inc.
11. Everett Smith Group, Ltd
12. Flint Group
13. Fort James LLC
14. Hexion Inc.
15. INX International Ink Co.
16. Kearny Smelting & Refining Corp.
17. Meltser-Tonnele Avenue LLC
18. Palin Enterprises, LLC
19. Pfister Urban Renewal Corporation
20. PMC, Inc. (incorrectly pled as PMC Global, Inc.)
21. Spectraserv, Inc.
22. Teval Corp
23. Wiggins Plastics, Inc.

ATTACHMENT C

**Summary of Moving Defendants' Dispositive Motion Positions**

Without support in fact or law, Occidental alleges CERCLA cost recovery (§ 107(a)) and contribution (§ 113(f)) premised on costs allegedly paid pursuant to three administrative settlements resolving liability with, and one unilateral administrative order issued by, the United States Environmental Protection Agency ("EPA"): (1) the 2008 Tierra Removal ASAOC, (2) the 2011 CSO ASAOC, (3) the 2012 RM 10.9 Removal UAO, and (4) the 2016 ASAOC. Occidental brings its complaint in an improper attempt to recover environmental clean-up costs it has not and may never incur under the guise of claims not cognizable under CERCLA and binding case law. New Jersey courts have already held that Occidental is liable for the environmental contamination caused by its predecessor, Diamond Shamrock Chemicals Company, and that Diamond flagrantly, deliberately, and knowingly polluted the Passaic River for nearly three decades with the most toxic man-made substance: 2,3,7,8-tetrachlorodibenzodioxin (the "TCDD" form of dioxin). *See Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*, 258 N.J. Super. 167 (App. Div. 1992).

Occidental's claims should be dismissed because:

- **No CERCLA 107(a) Claim.** Occidental has no cost recovery claim under CERCLA 107(a) for its response costs because it alleged a claim for contribution under CERCLA 113(f) and a plaintiff with a contribution claim may not also assert a claim for cost recovery for those same costs.

- **No Costs Incurred.** Occidental fails to allege with sufficient specificity that it incurred the costs it seeks to recover. Occidental fails to allege facts that show that it—as opposed to its former, now-bankruptcy indemnitors Maxus or Tierra—has incurred any of its alleged CERCLA response costs.

- **No Standing.** Occidental lacks standing to assert claims for costs incurred by Maxus and Tierra because those claims belong to the bankruptcy debtors' estates and have not been assigned to Occidental.

- **Bankruptcy Release.** To the extent Occidental is seeking to recover costs incurred by Maxus or Tierra, those response costs are barred against many Defendants because Occidental released them as part of the Maxus/Tierra bankruptcy. Notably, Occidental has released many of the defendants for its 2016 ASAOC claims that Occidental focused on in its response to the SPG's request for an adjournment of the scheduling conference. *See* ECF No. 301.

- **Statute of Limitations.** Most of Occidental's contribution claims fail because they are untimely. Section 113(g)(3) provides a 3-year limitations period for all

contribution actions, and Occidental seeks recovery for administrative settlements and orders issued in 2008, 2011, and 2012.

- **Contribution Protection.** Occidental cannot bring a contribution claim under the 2012 RM 10.9 Removal UAO because most Defendants have contribution protection pursuant to the parallel RM 10.9 settlement agreement.

The below chart summarizes why each of Occidental's claims fail.

| **Why Occidental's Claims Fail** | **Agreement or Order** | | | |
|---|---|---|---|---|
| | **2008 Tierra Removal ASAOC** | **2011 CSO ASAOC** | **2012 RM 10.9 UAO** | **2016 ASAOC** |
| **NO CERCLA 107(a) Claim** | X | X | X | X |
| **No Costs Incurred** | X | X | X | X |
| **No Standing** | X | X | X | X |
| **Bankruptcy Release** | X | X | X | X |
| **Statute of Limitations** | X | X | X | |
| **Contribution Protection** | | | X | |

12