**SHOOK, HARDY & BACON LLP**
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547
Attorneys for Defendants
By: David R. Erickson, Esq. (admitted *pro hac vice*)
Joseph H. Blum (NJ Bar No. 010211984)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

OCCIDENTAL CHEMICAL CORPORATION,

Plaintiff,

v.

21ST CENTURY FOX AMERICA, INC.;
3M COMPANY; A.E. STALEY
MANUFACTURING COMPANY; AKZO
NOBEL COATINGS, INC.; ALDEN LEEDS
INC.; ALLIANCE CHEMICAL INC.;
AMERICAN INKS & COATINGS
CORPORATION; APOLAN
INTERNATIONAL, INC.; ARKEMA INC.;
ASHLAND LLC; ATLANTIC RICHFIELD
COMPANY; ATLAS REFINERY, INC.;
AVENTISUB LLC; BASF CATALYSTS LLC;
BASF CORPORATION; BATH IRON WORKS
CORPORATION; BENJAMIN MOORE & CO.;
BEROL CORPORATION; BORDEN &
REMINGTON CORP.; CAMPBELL
FOUNDRY COMPANY; CANNING GUMM
LLC; CBS CORPORATION; CHARGEURS
WOOL (USA) INC.; CHARGEURS, INC.;
CHEMTRADE CHEMICALS
CORPORATION; CLEAN EARTH OF NORTH
JERSEY, INC.; CAN HOLDINGS LLC;
COATS & CLARK INC.; CONOPCO, INC.;
COOPER INDUSTRIES, LLC; COVANTA
ESSEX CO.; CRODA INC.; CURTISS-
WRIGHT CORPORATION; DARLING
INGREDIENTS INC.; DII INDUSTRIES, LLC;
E.I. DU PONT DE NEMOURS AND

Hon. Madeline Cox Arleo
Hon. Joseph A. Dickson

Civil Action No. 2:18-CV-11273 (MCA-JAD)

**THE SMALL PARTIES GROUP
DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF
OCCIDENTAL CHEMICAL
CORPORATION'S COMPLAINT**

Return Date: November 30, 2018
Oral Argument Requested

COMPANY; EDEN WOOD CORPORATION;
ELAN CHEMICAL CO., INC.; EMERALD
KALAMA CHEMICAL, LLC; ENPRO
INDUSTRIES, INC.; ESSEX CHEMICAL
CORPORATION; EVERETT SMITH GROUP
LTD.; FLINT GROUP INCORPORATED;
FORT JAMES LLC; FOUNDRY STREET
CORPORATION; FOUNDRY STREET
DEVELOPMENT, LLC; FRANKLIN-
BURLINGTON PLASTICS, INC.; GARFIELD
MOLDING COMPANY, INC.; GENERAL
ELECTRIC COMPANY; GIVAUDAN
FRAGRANCES CORPORATION; GOODRICH
CORPORATION; HARRIS CORPORATION;
HEXCEL CORPORATION; HEXION INC.;
HOFFMANN-LA ROCHE, INC.;
HONEYWELL INTERNATIONAL, INC.;
HOUGHTON INTERNATIONAL INC.;
INGREDION INCORPORATED; INNOSPEC
ACTIVE CHEMICALS LLC; INX
INTERNATIONAL INK CO.; ISP
CHEMICALS LLC; JOHNSON & JOHNSON;
KALAMA SPECIALTY CHEMICALS, INC.;
KEARNY SMELTING & REFINING CORP.;
LEEMILT'S PETROLEUM, INC.; LEGACY
VULCAN, LLC; MALLINCKRODT LLC;
MARATHON OIL CORPORATION;
MCKESSON CORPORATION; MELON
LEASING CORPORATION, INC.; MELTSER -
TONNELE AVENUE LLC; MI HOLDINGS,
INC.; NAPPWOOD LAND CORPORATION;
NATIONAL-STANDARD LLC; NEWELL
BRANDS INC.; NOKIA OF AMERICA
CORPORATION; NOVARTIS
CORPORATION; NOVELIS CORPORATION;
NOVEON HILTON DAVIS, INC.; OTIS
ELEVATOR COMPANY; PABST BREWING
COMPANY, LLC; PALIN ENTERPRISES
L.L.C.; PFISTER URBAN RENEWAL
CORPORATION; PHARMACIA LLC; PITT-
CONSOL CHEMICAL COMPANY; PMC
GLOBAL, INC.; PPG INDUSTRIES, INC.;
PUBLIC SERVICE ELECTRIC AND GAS
COMPANY; PURDUE PHARMA
TECHNOLOGIES, INC.; QUALA SYSTEMS,
INC.; QUALITY CARRIERS, INC.; R. T.

VANDERBILT HOLDING COMPANY, INC.;
RECKITT BENCKISER LLC; REVERE
SMELTING & REFINING CORPORATION;
REXAM BEVERAGE CAN COMPANY;
ROSELLE MAUSOLEUM MAINTENANCE
FUND, INC.; ROYCE ASSOCIATES, A
LIMITED PARTNERSHIP; RTC
PROPERTIES, INC.; SAFETY-KLEEN
ENVIROSYSTEMS COMPANY;
SCHIFFENHAUS PACKAGING
CORPORATION; SEQUA CORPORATION;
SETON COMPANY, INC.; SPECTRASERV,
INC.; STALEY HOLDINGS LLC; STANLEY
BLACK & DECKER INC.; STWB INC.; SUN
CHEMICAL CORPORATION; SUNOCO
(R&M), LLC; SUNOCO PARTNERS
MARKETING & TERMINALS L.P.; TATE &
LYLE INGREDIENTS AMERICAS LLC;
TEVAL CORPORATION; THE HARTZ
MOUNTAIN CORPORATION; THE
NEWARK GROUP, INC.; THE OKONITE
COMPANY, INC.; THE SHERWIN-
WILLIAMS COMPANY; TIFFANY AND
COMPANY; UNITED STATES STEEL
CORPORATION; WIGGINS PLASTICS, INC.;
AND ZENECA INC. TEXTRON, INC.

Defendants.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................... vi

INTRODUCTION ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................ 3

    A.    New Jersey Judicial Opinions Establish that Occidental Intentionally and Consistently Polluted the Passaic River ................................................. 5

    B.    Occidental Fails to Allege Specifically that it Incurred Response Costs in Compliance with Any Administrative Agreements or Order. ................. 7

    C.    The Maxus Liquidating Trust Filed a Lawsuit to Recover the Same Costs Occidental is Seeking to Recover in This Action. ................................... 9

STANDARD OF REVIEW .......................................................................... 10

ARGUMENT ............................................................................................ 11

    A.    Count I of Occidental's Complaint Should be Dismissed Because Occidental has no Cost Recovery Claim under CERCLA 107(a) as a Matter of Law. ................................................................................................. 11

        1.    CERCLA § 113(f) contribution claims and CERCLA § 107(a) cost recovery actions provide distinct and mutually exclusive remedies. ......... 12

        2.    Occidental cannot bring a CERCLA § 107(a) cost recovery claim because it has (if at all) a CERCLA § 113(f) contribution claim. ............. 13

        3.    The ASAOCs for which Occidental seeks to recover costs are Administrative Settlements in which Occidental resolved some or all of its liability giving rise to a contribution claim under CERCLA § 113(f)(3)(B). ............................................................................ 17

        4.    The UAO under which Occidental seeks to recover costs is a Civil Action giving rise to a contribution claim under CERCLA § 113(f)(1). ............................................................................... 18

    B.    Occidental's Complaint Should Be Dismissed Because Occidental Fails to Allege with Specificity that It Incurred the Costs it Seeks to Recover. ................ 20

    C.    Occidental's Alleged Costs Related to Investigating and Searching for PRPs are not Recoverable ........................................................................... 26

    D.    Occidental's Contribution Claims for the Tierra Removal ASAOC, the CSO ASAOC, and the RM 10.9 UAO are Barred by the Statute of Limitations. .......... 27

E.    Occidental Cannot Bring a Contribution Claim under the RM 10.9 UAO
      Because Most Defendants Have Contribution Protection Pursuant to the
      RM 10.9 Settlement Agreement. ..........................................................................28

F.    Count III of Occidental's Complaint Should be Dismissed Because
      Occidental is Not Entitled to Declaratory Relief. ...............................................29

CONCLUSION.................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*,
   602 F.3d 204 (3d Cir. 2010)....................................................................................1, 13, 14

*Appleton Papers, Inc. v. George A. Whiting Paper Co.*,
   572 F. Supp. 2d 1034 (E.D. Wisc. 2008) ..........................................................................16

*Asarco, LLC v. Atl. Richfield Co.*,
   866 F.3d 1108 (9th Cir. 2017) .....................................................................................15, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................10

*Basic Management Inc. v. United States*,
   569 F. Supp. 2d 1106 (D. Nev. 2008).................................................................21, 22, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................................10

*Bistrian v. Levi*,
   696 F.3d 352 (3d Cir. 2012)...............................................................................................10

*Burlington N. & Santa Fe Ry. Co. v. United States*,
   446 U.S. 599 (2009)...........................................................................................................12

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011)...............................................................................................25

*Carrier Corp. v. Piper*,
   460 F. Supp. 2d 827 (W.D. Tenn. 2006)............................................................................18

*City of Colton v. Am. Promotional Events, Inc.-West*,
   614 F.3d 998 (9th Cir. 2010) .............................................................................................30

*City of Pittsburgh v. W. Penn. Power Co.*,
   147 F.3d 256 (3d Cir. 1998)...............................................................................................11

*Cook v. Rockwell Int'l Corp.*,
   755 F. Supp. 1468 (D. Colo. 1991)..............................................................................21, 25

*Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*,
   258 N.J. Super. 167 (App. Div. 1992) .................................................................................5

*Diamond Shamrock Chems. Co. v. Aetna Cas. & Surety Co.*,
(N.J. Super. Ct. Law Div. Apr. 12, 1989) ...............................................................5

*Dravo Corp. v. Zuber*,
804 F. Supp. 1182 (D. Neb. 1992) .........................................................................29

*Ford Motor Co. v. Mich. Consol. Gas Co.*,
Case No. 08-CV-13503-DT, 2010 WL 3419502 (E.D. Mich. Aug. 27, 2010) ................20, 25

*Friedland v. TIC-The Indus. Co.*,
566 F.3d 1203 (10th Cir. 2009) ..............................................................................23

*Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*,
561 F. Supp. 2d 653 (E.D. Tex. 2006) ...............................................................21, 25

*Gussack Realty Co. v. Xerox Corp.*,
224 F.3d 85 (2d Cir. 2000) ....................................................................................26

*Handelman v. State of New Jersey*,
No. 16:2325, 2016 WL 3691976 (D.N.J. July 12, 2016) .............................................3

*Hobart Corp. v. Dayton Power & Light Co.*,
997 F. Supp. 2d 835 (S.D. Ohio 2014) ...................................................................27

*Hobart Corp. v. The Dayton Power & Light Co.*,
Case No. 3:13-cv-115-WHR (ECF # 845) (S.D. Ohio Aug. 20, 2018) ...........................20

*Hobart Corp. v. Waste Mgmt., Inc.*,
758 F.3d 757 (6th Cir. 2014) ............................................................................15, 27

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)................................................................................11

*In re Donald J. Trump Casino Sec. Litig.*,
7 F.3d 357 (3d Cir. 1993)....................................................................................11

*In re Maxus Energy Corporation*,
Case No. 16-11501 (CSS) (Bankr. Del.) (filed May 22, 2017) ....................9, 10, 26

*ITT Indus., Inc. v. BorgWarner, Inc.*,
615 F. Supp. 2d 640 (W.D. Mich. 2009) ...............................................................16

*Litgo N.J., Inc. v. Martin*,
No. CIV. 06-2891 AET, 2012 WL 32200 (D.N.J. Jan. 5, 2012) ...............................26

*McGregor v. Indus. Excess Landfill, Inc.*,
856 F.2d 39 (6th Cir. 1988) ..................................................................................21

*Morrison Enters., LLC v. Dravo Corp.*,
    638 F.3d 594 (8th Cir. 2011) ..................................................................15

*N.J. Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*,
    Case No. 2:98-cv-04781-WHW-CLW, 2018 WL 3536090 (D.N.J. July 23,
    2018) ............................................................................................13, 14

*NCR Corp. v. George A. Whiting Paper Co.*,
    768 F.3d 682 (7th Cir. 2014) ..................................................................15

*New Jersey Department of Environmental Protection v. Occidental Chemical
    Corporation*,
    Docket No. ESX-L-9868-05 (N.J. Super. Ct.) .........................................4

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*,
    596 F.3d 112 (2d Cir. 2010) ...................................................................16

*PCS Nitrogen, Inc. v. Ross Dev. Corp.*,
    104 F. Supp. 3d 729 (D.S.C. 2015) .........................................................18

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3d Cir. 1993) ..................................................................11

*Psaros v. Green Tree Servicing, LLC*,
    No. 15-4277, 2015 WL 9412922 (D.N.J. Dec. 21, 2015) ..........................3

*Reichhold Chems., Inc. v. Textron, Inc.*,
    888 F. Supp. 1116 (N.D. Fla. 1995) ........................................................30

*Reichhold, Inc. v. United States Metals Refining Co.*,
    522 F. Supp. 2d 724 (D.N.J. 2007) .........................................................30

*Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power
    Dist.*,
    222 F. Supp. 3d 757 (D. Ariz. 2016) .................................................22, 23

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*,
    181 F.3d 410 (3d Cir. 1999) ....................................................................11

*Solutia, Inc. v. McWane, Inc.*,
    672 F.3d 1230 (11th Cir. 2012) ...............................................................15

*Solutia, Inc. v. McWane, Inc.*,
    726 F. Supp. 2d 1316 (E.D. Ala. 2010), *aff'd* 672 F.3d 1230 (11th Cir. 2012)......................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................7

*Transtech Indus., Inc. v. A & Z Septic Clean*,
    798 F. Supp. 1079 (D.N.J. 1992) ................................................................18, 19, 28

*Union Station Assoc. LLC v. Puget Sound Energy, Inc.*,
    238 F. Supp. 2d 1226 (W.D. Wash. 2002) ................................................................30

*United Alloys, Inc. v. Baker*,
    2011 WL 2749641 (C.D. Cal. July 14, 2011) ..........................................................23

*United States v. Atl. Research Corp.*,
    551 U.S. 128 (2007) ................................................................................12, 13, 14

*United States v. Colo. & E. R.R.*,
    832 F. Supp. 304 (D. Colo. 1993) ..........................................................................28

*United States v. Davis*,
    31 F. Supp. 2d 45 (D.R.I. 1998) ..............................................................................23

*United States v. Occidental Chem. Co.*,
    200 F.3d 143 (3d Cir. 1999) ....................................................................................30

*United Techs. Corp. v. Browning-Ferris Indus.*,
    33 F.3d 96 (1st Cir. 1994) ........................................................................................16

*Whittaker Corp. v. United States*,
    825 F.3d 1002 (9th Cir. 2016) ................................................................................15

**Statutes**

28 U.S.C. § 2201 ..........................................................................................................29, 30

28 U.S.C. § 2202 ..........................................................................................................29, 30

42 U.S.C. § 9601 ................................................................................................................1

42 U.S.C. § 9607 ....................................................................................................... *passim*

42 U.S.C. § 9613 ....................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. § 12(b)(6) ..................................................................................1, 3, 7, 10, 11

Pursuant to Federal Rule of Civil Procedure 12(b)(6), certain members of the Small Parties Group (the "SPG")[1] move to dismiss Plaintiff Occidental Chemical Corporation's ("Occidental") Complaint for failure to state a claim upon which relief can be granted.

## INTRODUCTION

Occidental—a company New Jersey courts previously held to have intentionally polluted the Passaic River—brings its Complaint in an improper attempt to recover environmental clean-up costs it has not and may never incur under the guise of claims not cognizable under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601 *et seq* ("CERCLA") and binding case law. Occidental alleges three CERCLA causes of action: (1) cost recovery under CERCLA § 107(a); (2) contribution under CERCLA § 113(f); and (3) declaratory relief. Occidental's claims are premised on costs allegedly paid pursuant to three administrative settlements resolving liability with, and one Unilateral Administrative Order issued by, the United States Environmental Protection Agency ("EPA").

Occidental's first cause of action, a claim for cost recovery under CERCLA § 107(a), fails because, even if Occidental could truthfully allege that it had incurred the costs actually borne by its indemnitors or not alleged with specificity, § 107(a) does not allow recovery of costs incurred pursuant to an administrative settlement resolving liability or an administrative order. Rather, a responsible party that has incurred costs pursuant to an administrative settlement resolving liability or an administrative order may only bring a contribution claim under CERCLA § 113, if at all. *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204 (3d Cir. 2010). Therefore, Occidental's CERCLA § 107(a) claim cannot be sustained as a matter of law.

---

[1] The defendants joining in this Motion to Dismiss identified in Exhibit 1 to the Certification of Joseph H. Blum, Esq. ("Blum Cert."). These defendants are referred to as "Defendants" throughout this brief.

Both Occidental's first cause of action and its second cause of action, a claim for contribution under CERCLA § 113(f), fail for an independent reason: Occidental fails to allege well-pleaded facts to demonstrate that *Occidental itself* has incurred the costs it seeks to recover. Instead, Occidental's specific allegations related to certain administrative settlements and an administrative order demonstrate that Occidental's indemnitors (but not Occidental) incurred the alleged costs. For another administrative settlement, Occidental does not allege costs with the specificity required. A key element of a CERCLA cost-recovery or contribution claim is that the *plaintiff* has incurred costs. The fact that Occidental pleads specific activities conducted by its indemnitors—but fails to identify specific remedial activity paid for by Occidental—is fatal to its claims. Occidental's §§ 107(a) and 113(f) claims accordingly fail.

Because Occidental's § 107(a) cost recovery claim and its § 113(f) contribution claim both fail, its third cause of action seeking declaratory relief similarly fails, as declaratory relief under CERCLA is available only if liability for some past costs has been established.

Occidental's claims suffer from additional fatal defects as well. For instance, Occidental alleges in conclusory fashion that it has incurred unidentified costs in searching for potentially responsible parties ("PRPs"), but such costs are unrecoverable under CERCLA in these circumstances. Further, certain of Occidental's § 113(f) contribution claims are untimely under the applicable three-year statute of limitations. In addition to the statute of limitations bar, Occidental also cannot recover any costs it allegedly incurred under its Unilateral Administrative Order with EPA because most defendants received contribution protection in a related settlement agreement with EPA.

Accordingly, for these reasons and the reasons set forth below, Defendants' Motion to Dismiss should be granted and Occidental's Complaint should be dismissed.

## **FACTUAL BACKGROUND**

For the purposes of a motion to dismiss, the facts in Occidental's Complaint must be accepted as true, notwithstanding that Defendants do not agree with many of Occidental's factual assertions. However, although Occidental's Complaint spans 190 pages with 287 paragraphs of allegations against 120 named defendants, Occidental fails to fully inform the Court of a number of background facts and circumstances relevant to its purported claims.[2] In particular:

- New Jersey courts have already held that Occidental's predecessor, Diamond Shamrock Chemicals Company ("Diamond"),[3] flagrantly, deliberately, and knowingly polluted the Passaic River for nearly three decades with the most toxic man-made substance: 2,3,7,8-tetrachlorodibenzodioxin (the "TCDD" form of dioxin).

---

[2] The Court can take judicial notice of the information in this factual background section because it is included in matters of public record. Attached to this Motion to Dismiss are several state court documents and settlement agreements with the United States Environmental Protection Agency relied upon by Occidental in its Complaint. As explained in greater detail in the standard of review section, these documents are all matters of public record and can thus be validly considered by this Court in the context of a motion to dismiss. *See Psaros v. Green Tree Servicing, LLC*, No. 15-4277 (JLL) (JAD), 2015 WL 9412922, at * 3 (D.N.J. Dec. 21, 2015) (J. Linares) ("'In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, *matters of the public record*, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.' Among the public records a court may examine in order to resolve a motion to dismiss is a judicial proceeding from a different court or case . . . ." (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal citations omitted)); *see also Handelman v. State of New Jersey*, No. 16:2325 (JLL) (JAD), 2016 WL 3691976, at *4 (D.N.J. July 12, 2016) (J. Linares) (same).

[3] In 1986, Diamond merged into Occidental when an affiliate of Occidental acquired Diamond's ongoing chemicals business pursuant to a Stock Purchase Agreement. *See* Administrative Settlement Agreement and Order on Consent for Removal Action (Region 2, CERCLA Docket No. 02-2008-2020) (June 23, 2008) (the "Tierra Removal ASAOC"), attached as Exhibit 2 to the Blum Cert.; Complaint at ¶ 10. In the eyes of the law, this statutory merger makes Occidental the same corporation as Diamond and liable for all of Diamond's prior liabilities.

- For decades, Tierra Solutions, Inc. ("Tierra") and Maxus Energy Corporation ("Maxus") indemnified Occidental for the costs of the environmental response measures resulting from Diamond's intentional pollution, but Tierra and Maxus filed for bankruptcy in 2016. Consequently, these claims are assets of the bankruptcy estate, and under the bankruptcy plan, became assets of the "Maxus Liquidating Trust," the bankruptcy-created trust to which those assets were transferred. They are not assets of Occidental.

- Occidental is the primary beneficiary of a separate pending lawsuit, brought by the Maxus Liquidating Trust against the parent corporations of Maxus and Tierra, which asserts that these parent corporations are liable for all future environmental response costs arising from the Diamond Alkali site, including those sought by Occidental here.

- Essentially then, Occidental seeks to obtain a windfall double recovery in this litigation for amounts already paid by its former indemnitors or for amounts which it may be reimbursed for from the proceeds of the pending lawsuit brought by the Maxus Liquidating Trust.

- Occidental's Complaint also encompasses portions of the River addressed in a state-court litigation, captioned *New Jersey Department of Environmental Protection v. Occidental Chemical Corporation*, Docket No. ESX-L-9868-05 (PASR) (N.J. Super. Ct.). In that matter, the State settled New Jersey Spill Act claims with a number of defendants, including Occidental, and a number of third-party defendants, including certain Defendants to this action.

- Nearly one year before Occidental filed this lawsuit, EPA initiated an allocation process as part of its proposed settlement framework for implementation of the remedy for the lower 8.3 miles of the Passaic River, the same River segment for which Occidental seeks to recover costs here. Occidental refused to participate in EPA's allocation.

Against this backdrop, it is unsurprising that Occidental's Complaint fails to state any viable claim for relief.

### A. New Jersey Judicial Opinions Establish that Occidental Intentionally and Consistently Polluted the Passaic River.

From the 1940s to 1969, Diamond (which is now Occidental) and its predecessors owned and operated an agricultural chemicals plant on the banks of the Passaic River in Newark, New Jersey (the "Lister Avenue Plant"). Complaint at ¶ 9. During this time period, Diamond produced TCDD and related-dioxin compounds and by-products and intentionally discharged them directly into the Passaic River, causing widespread and long-lasting environmental damage. *See generally Diamond Shamrock Chems. Co. v. Aetna Cas. & Surety Co.*, (N.J. Super. Ct. Law Div. Apr. 12, 1989) ("Aetna Trial Court Opinion"), attached as Exhibit 3 to the Blum Cert.; *Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*, 258 N.J. Super. 167 (App. Div. 1992).

In prior litigation, the New Jersey Superior Court, after plenary trial and based on a rich evidentiary record, concluded that Occidental's predecessor, Diamond, fouled the Passaic River with dioxin. The court characterized Diamond's activities as "unacceptably wrong," "planned," "illegal," "knowing," "routine," "intentional," "continuous," "substantial," "deliberate," "irresponsible," "persistent," "consistent," and "large-scale." Aetna Trial Court Opinion at 8–12, 32–35. It held:

> [T]he record reveals that at a relatively early date, [Occidental's predecessor] Diamond became aware of the dangerous propensities

of dioxins and chose to disregard methods designed to diminish their production. A number of former plant employees testified concerning Diamond's waste disposal policy which essentially amounted to "dumping everything" into the Passaic River. . . . To summarize this testimony briefly, it was clear that prior to 1956, all waste products from chemical processes were either directly discharged or ultimately released into the Passaic River. However, in 1956 an industrial sewer line was installed connecting the plant to the Passaic Valley Sewerage Commission Lister Avenue Line. Nevertheless, the testimony is persuasive that not all of the effluent from the plant was directed to that sewer line. DDT was manufactured until about 1959. So much DDT waste water was directed into the river that a mid-river "mountain" of DDT was created. Employees were directed to surreptitiously wade into the river at low tide and "chop up" the deposits so that they would not be seen by passing boats. . . . [An old] chemical manufacturing building was the site of 2,4-D and 2,4,5-T production along with their esters and amines. Former Diamond employees provided graphic descriptions of the company's heedless indifference to the environmental damage which resulted from its manufacturing operations [there].

*Diamond*, 258 N.J. Super. at 183–184.

As the trial court found, "[t]oleration of substantial and continuous spilling and leaking was the way of life at the Newark plant." Aetna Trial Court Opinion at 32. Over the years, "spills of liquid and solid chemical products and wastes were literally continuous during every day of the plant's operation," and discharges were deliberately concealed. *Id.* at 9–10. Diamond went so far as to install a secret alarm system that warned employees to stop discharges when inspectors were on the premises. *Id.* at 9. Trenches and sumps frequently overflowed, factory floors were badly corroded by acid spills, and chemical stains and deposits were clearly visible to the naked eye, yet "nothing was done to mitigate the polluting effect the spills and leaks had upon the physical environment." *Id.* at 32–33. The court concluded that the "consistent policy of Diamond's management (both at the local plant level and at corporate headquarters) was to discharge dangerous chemicals into the Passaic River in known violation of public law." *Id.* at 9–10.

**B. Occidental Fails to Allege Specifically that it Incurred Response Costs in Compliance with Any Administrative Agreements or Order.**

In its Complaint, Occidental makes conclusory, unsupported allegations that it incurred response costs in compliance with three administrative agreements and one administrative order. *See* Complaint at ¶¶ 34, 43, 44, 278–280. Occidental's allegations are legally deficient and directly refuted by its own pleading, which repeatedly states in no uncertain terms that its prior indemnitors, Maxus and Tierra, paid the required costs to date related to two of the administrative agreements and the administrative order. Therefore, the Maxus Liquidating Trust, not Occidental, owns all claims for such costs. *See* Complaint at ¶ 36 n.23.

Occidental alleges that response costs were incurred pursuant to three ASAOCs:[4] (1) the Tierra Removal ASAOC, (2) the CSO ASAOC, and (3) the 2016 ASAOC.[5] For the Tierra Removal ASAOC and CSO ASAOC, Occidental specifically alleges costs incurred by other parties, but does not specifically allege costs incurred by Occidental. For instance, regarding the Tierra Removal ASAOC, Occidental alleges that Tierra (not Occidental) performed the removal at a cost of over $83 million. *See* Complaint at ¶ 28; *see also id.* at ¶ 39 ("[E]ven before design or implementation of EPA's selected remedy under the 2016 ASAOC, OxyChem's indemnitors

---

[4] The Court can rely on these ASAOCs and Defendants' other attachments when ruling on this motion because they are all either incorporated into Occidental's Complaint or matters that can be judicially noticed. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that when deciding a Rule 12(b)(6) motion, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

[5] (1) A June 23, 2008 Tierra Removal ASAOC between Occidental, Tierra, and EPA. Blum Cert. Ex. 2, Tierra Removal ASAOC; (2) An October 4, 2011 agreement between Occidental and EPA, titled "Administrative Agreement and Order on Consent for Combined Sewer Overflow/Storm Water Outfall Investigation" (Region 2, CERCLA Docket No. 02-2100-2016) (the "CSO ASAOC"), attached as Exhibit 4 to the Blum Cert; and (3) A September 30, 2016 agreement between Occidental and EPA, titled "Administrative Settlement Agreement and Order on Consent for Remedial Design for Operable Unit Two of the Diamond Alkali Superfund Site" (CERCLA Docket No. 02-2016-2021) (the "2016 ASAOC"), attached as Exhibit 5 to the Blum Cert

already paid to remove a significant volume of dioxins and other [contaminants of concern] in Phase 1 of the Tierra Removal Order."). Occidental alleges that "Tierra [not Occidental] performed work under the CSO ASAOC, incurring response costs of more than $2.5 million." Complaint at ¶ 29; *id.* at ¶ 35 ("Tierra incurred over $2.5 million in response costs to investigate the extent of contamination from combined sewer overflows and storm water outfalls into the Passaic River.").

Occidental also alleges that response costs were incurred in compliance with one unilateral administrative order ("UAO").[6] Before the UAO's issuance, a large group of entities referred to as the Cooperating Parties Group[7] entered into an Administrative Settlement Agreement and Order on Consent (Docket No. 02-2012-2015) ("RM 10.9 Settlement Agreement"), attached as Exhibit 7 to the Blum Cert, related to these same removal response activities. However, Occidental chose not to enter into that settlement agreement. The RM 10.9 Removal UAO ordered Occidental to perform activities with respect to the RM 10.9 Removal, including the same response actions as those required by the RM 10.9 Settlement Agreement. Occidental alleges that "[o]n OxyChem's behalf, Tierra [but not Occidental] incurred response costs of more than $1 million under the RM 10.9 Removal UAO." Complaint at ¶ 30.

---

[6] A June 25, 2012 Unilateral Administrative Order ("UAO") that EPA issued to Occidental for Removal Response Activities (Region 2, CERCLA Docket No. 02-2012-2020) (the "RM 10.9 Removal UAO"), attached as Exhibit 6 to the Blum Cert.

[7] Most of the entities in the Cooperating Parties Group are named Defendants in this action. Occidental does not allege that it spent any of its own money to perform the RM 10.9 Removal UAO. The only money was spent by Occidental's indemnitor, Tierra, yet Occidental is now suing other parties who paid for the investigation and clean-up of RM 10.9 to recover for costs it never incurred in the first instance.

**C. The Maxus Liquidating Trust Filed a Lawsuit to Recover the Same Costs Occidental is Seeking to Recover in This Action.**

Under the Stock Purchase Agreement where Diamond merged into Occidental, Diamond's corporate parent, Maxus, and Maxus's affiliate, Tierra, agreed to indemnify Occidental against environmental liabilities stemming from the Lister Avenue Plant. *See* Complaint at ¶¶ 10, 20.

Maxus and Tierra fulfilled their indemnification obligations to Occidental for 30 years, until they filed for bankruptcy in 2016. *Id.* at ¶ 10. The Maxus/Tierra bankruptcy has led to litigation that may completely moot Occidental's Complaint. Pursuant to Article VI.C of the Maxus/Tierra Bankruptcy Plan,[8] the property of the bankruptcy estate was transferred to the Maxus Liquidating Trust. Article IV.H of the Plan specifically provides that the Maxus Liquidating Trust shall have the "exclusive right, authority, and discretion" to pursue any non-released causes of actions previously held by Maxus or Tierra.[9] Maxus and Tierra (not Occidental) paid the past response costs of the Tierra Removal ASAOC, the CSO ASAOC, and the RM 10.9 Removal UAO. As a result, they (not Occidental) might have had claims to recover these costs at the time they filed for bankruptcy. Those claims are thus now the property of the Maxus Liquidating Trust.

---

[8] The Order Confirming Amended Chapter 11 Plan of Liquidation from *In re Maxus Energy Corporation*, Case No. 16-11501 (CSS) (Bankr. Del.) (ECF # 1460) (filed May 22, 2017) is attached as Exhibit 8 to the Blum Cert.

[9] In addition, Occidental's claims are invalid against many Defendants (identified in Exhibit A to Occidental's Complaint) who entered into a "Mutual Contribution Release" with Maxus, Tierra, and Occidental. To the extent Occidental is seeking to recover costs incurred by Maxus or Tierra, the Mutual Contribution Release released all "causes of action held by [Maxus or Tierra] for contribution or cost recovery under any Environmental Law for actual expenses paid by or on behalf of the Debtors prior to June 17, 2016." The Mutual Contribution Release also bars any claims that may belong to Occidental to the extent those claims are for recovery or contribution for the first $165 million spent on the 2016 ASAOC. Occidental has nowhere alleged that it has incurred costs in excess of $165 million. A copy of the "Mutual Contribution Release Agreement" is attached as Exhibit 9 to the Blum Cert.

The Maxus Liquidating Trust is currently pursuing claims against YPF and Repsol for, in part, the same costs Occidental is seeking to recover from Defendants in this lawsuit, alleging claims for alter ego liability, piercing the corporate veil, fraudulent transfers, unjust enrichment, and civil conspiracy.[10] Occidental is the primary beneficiary of any proceeds received by the Maxus Liquidating Trust.[11] Thus, if the Maxus Liquidating Trust succeeds against YPF and Repsol, it may moot Occidental's claims here. Occidental should not be permitted to burden this Court by pursuing claims it does not own, and for which it might already recover as the primary beneficiary of the Maxus Liquidating Trust Complaint against YPF and Repsol.

## **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) questions the sufficiency of the pleadings. On a motion under Rule 12(b)(6), a complaint must be dismissed if it does not allege sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court is not bound to assume the truth of legal conclusions merely because they are stated in the form of factual allegations. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *see Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (holding that,

---

[10] *See* Complaint filed by the Maxus Liquidating Trust in *Maxus Liquidating Trust v. YPF S.A., et al.*, Case No. 16-11501 (Bankr. Del.), attached as Exhibit 10.

[11] *See* Blum Cert., Ex. 8, Order Confirming Amended Chapter 11 Plan of Liquidation, *In re Maxus Energy Corporation*, Case No. 16-11501 (CSS) (Bankr. Del.) (ECF # 1460) (filed May 22, 2017).

in deciding a motion to dismiss, a court should "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth").

When deciding a Rule 12(b)(6) motion, "it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *City of Pittsburgh v. W. Penn. Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations and quotations omitted); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993). A court may also take judicial notice of the existence of proceedings in another court when deciding a motion to dismiss. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

Accordingly, in deciding Defendants' Motion to Dismiss, the Court may consider the administrative settlement agreements and UAO that Occidental relied upon in its Complaint and the Maxus/Tierra bankruptcy pleadings attached as exhibits to the Certification of Joseph H. Blum. These attachments are central to claims in Occidental's Complaint. The administrative settlements and bankruptcy proceedings are also referenced explicitly in the Complaint, and all of the exhibits are official public records that may be judicially noticed.

## **ARGUMENT**

### **A. Count I of Occidental's Complaint Should be Dismissed Because Occidental has no Cost Recovery Claim under CERCLA 107(a) as a Matter of Law.**

Count I in Occidental's Complaint purports to be a claim for cost recovery under CERCLA § 107(a) with respect to response costs associated with four administrative settlements or orders:

the Tierra Removal ASAOC, the CSO ASAOC, the RM 10.9 Removal UAO, and the 2016 ASAOC. Count II is a claim for contribution under CERCLA § 113(f) for the same response costs associated with the same administrative settlements and order. The Third Circuit and every other Circuit to consider the issue have held that a plaintiff with a § 113(f) contribution claim may not also assert a claim for cost recovery under § 107(a) for the same costs. Therefore, Occidental's cost-recovery claims under CERCLA § 107 must be dismissed because Occidental could have asserted (and actually did assert) a § 113 contribution claim for those same costs.

1. *CERCLA § 113(f) contribution claims and CERCLA § 107(a) cost recovery actions provide distinct and mutually exclusive remedies.*

When a private party incurs costs associated with the cleanup of a hazardous waste site, CERCLA provides two distinct means by which the party may seek to recoup part or all of its costs from other parties that are responsible for the contamination.

The first type of claim arises under § 107(a) and is commonly referred to as a "cost recovery" cause of action. 42 U.S.C. § 9607(a); *United States v. Atl. Research Corp.*, 551 U.S. 128, 139 (2007). Courts interpret § 107(a) to provide for joint and several liability among all potentially responsible parties ("PRPs") unless a defendant can show that a reasonable basis for apportionment of harm exists. *Burlington N. & Santa Fe Ry. Co. v. United States*, 446 U.S. 599, 613–14 (2009).

The second type of CERCLA claim is for "contribution" under § 113(f). 42 U.S.C. § 9613(f); *Atl. Research*, 551 U.S. at 139. Claims under § 113(f) call for an apportionment of several liability among all liable parties using such equitable factors "as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Contribution actions are the only cause of action available for "[a] person who has resolved its liability to the United States or the State for some or all of a response action or for some or all of the costs of such in an administrative or judicially approved

12

settlement." 42 U.S.C. § 9613(f)(3)(B). Contribution actions are also the only cause of action available "during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1).

CERCLA §§ 107(a) and 113(f) "provide two clearly distinct remedies" that "complement each other by providing causes of action to persons in different procedural circumstances." *Atl. Research*, 551 U.S. at 138–39 (internal quotations omitted). When a party has a § 113(f) claim, it cannot "avoid § 113(f)'s equitable distribution of reimbursement costs among PRPs by instead choosing to impose joint and several liability on another PRP in an action under § 107(a)." *Id*. at 139. "The choice of remedies simply does not exist." *Id.* at 140 (footnote omitted).

The Third Circuit and this Court agree and have both held that a party with a § 113(f) claim does not also have a claim under § 107(a). *Agere Sys., Inc. v. Advanced Envtl. Tech Corp.*, 602 F.3d 204, 229 (3d Cir. 2010) (holding that a § 113(f) contribution claim was the plaintiff's exclusive remedy based on costs incurred performing work under EPA consent decrees); *N.J. Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*, Case No. 2:98-cv-04781-WHW-CLW, 2018 WL 3536090, at *8–9 (D.N.J. July 23, 2018) (J. Walls) ("[P]laintiffs who have reached a settlement agreement under which they are obligated to perform clean-up work are limited to Section 113(f) claims and do not have any § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit.").

### 2. *Occidental cannot bring a CERCLA § 107(a) cost recovery claim because it has (if at all) a CERCLA § 113(f) contribution claim.*

In this case, Occidental's only available remedy (if any at all, *see* Section B, *infra*) is under CERCLA § 113(f) for contribution. Fundamentally, Occidental's claimed satisfaction of its obligations under administrative settlements and an administrative order prohibits Occidental from

any right to cost recovery under the joint and several liability provisions of § 107(a). As the United

States Supreme Court explained:

> § 107(a) permits a PRP to recover only the costs it has "incurred" in
> cleaning up a site. When a party pays to satisfy a settlement
> agreement or a court judgment it does not incur its own costs of
> response.

*Atl. Research*, 551 U.S. at 139 (internal citation omitted). In such cases, the PRP is limited to a

claim for contribution under CERCLA § 113(f), and cannot bring a claim for cost-recovery under

§ 107(a). *Id.*

Controlling authority from the Third Circuit concurs and holds that if a plaintiff may have

a § 113(f) action it cannot also have a § 107(a) action for the same costs. *See Agere Sys.*, 602 F.3d

at 229. The *Agere* Court noted that a primary goal of CERCLA is "to make polluters pay," and

that allowing a polluter (such as Occidental here) to avoid liability by asserting joint and several

claims against others would result in a "perverse result." *See id.* at 228. "The Supreme Court

expressed concern about this very type of result when it recognized that, without defendants having

availability of a § 113(f) counterclaim, PRP plaintiffs might 'eschew equitable apportionment . . .

in favor of joint and several liability under § 107(a).'" *Id.* (quoting *Atl. Research*, 551 U.S. at 138).

The Third Circuit noted that a district court "is not supposed to fashion an award that allows a

plaintiff to recover from a defendant costs associated with the cleanup of waste that the plaintiff

itself has contributed to the site." *Id.* Otherwise, wielding a § 107(a) claim for joint and several

liability, the plaintiff could "recover from a defendant the costs to undo what the plaintiff itself has

done." *Id.* Under such a scheme, the plaintiff PRP could end up paying nothing.

Judge Walls recently reiterated this same holding in *New Jersey Department of
Environmental Protection v. American Thermoplastics Corp.*, 2:98-cv-04781-WHW-CLW, 2018
WL 3536090 (D.N.J. July 23, 2018). That case involved a situation similar to Occidental's here,

14

where a number of parties entered into a consent decree with the EPA and the New Jersey Department of Environmental Protection. *Id.* at *3. Judge Walls rejected a settling party's attempt to assert a CERCLA § 107 cost-recovery claim for its alleged costs incurred under the consent decree, holding that "[u]nder established case law, [that party] is limited to claims under Section 113(f)." *Id.* at *4. The court reaffirmed the Third Circuit's rationale from *Agere Systems*, holding that "plaintiffs who have reached a settlement agreement under which they are obligated to perform clean-up work are limited to Section 113(f) claims and do not have any § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit." *Id.* at *5.

All federal circuits that have addressed this issue agree, holding that contribution under § 113 is the exclusive remedy for parties that have resolved "some or all" of their CERCLA liability in an administrative settlement, like Occidental here. *See Asarco, LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1117 (9th Cir. 2017) ("[E]very federal court of appeals to have considered the question . . . has concluded that a party who *may* bring a contribution action for certain expenses *must* use the contribution action under § 113(f)(3)(B), even if a cost recovery action under § 107(a) would otherwise be available.") (internal quotations omitted) (emphasis in original).[12]

---

[12] *See also Whittaker Corp. v. United States*, 825 F.3d 1002, 1007 (9th Cir. 2016) ("Because the procedural requirements and the remedies for cost recovery and contribution claims are distinct, every federal court of appeals to have considered the question since *Atlantic Research*, including this Court, has said that a party who *may* bring a contribution action for certain expenses *must* use the contribution action, even if a cost recovery action would otherwise be available.") (internal footnote omitted) (emphasis in original); *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 691 (7th Cir. 2014) ("[T]his court—like our sister circuits—restricts plaintiffs to section 113 contribution actions when they are available.") (compiling citations); *Hobart Corp. v. Waste Mgmt., Inc.*, 758 F.3d 757, 766 (6th Cir. 2014) ("CERCLA's text and structure lead us to conclude that PRPs must proceed under § 113(f) if they meet one of that section's statutory triggers. . . . If § 113(f)'s enabling language is to have bite [] it must [] mean that a PRP, eligible to bring a contribution action, can bring only a contribution action."); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236 (11th Cir. 2012) (holding that § 113(f) "provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement"); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011) (holding

These consistent holdings by the Third Circuit, the District Court for the District of New Jersey, and all other federal circuits to consider the issue make undeniable sense. To hold otherwise—to allow a party that has resolved some or all of its CERCLA liability in an agreement with the government to bring a § 107 claim to recover costs incurred pursuant to that agreement— would render § 113 meaningless. *Niagara Mohawk*, 596 F.3d at 127–28 (holding that permitting settling parties to proceed under § 107 would "in effect nullify" § 113 "and abrogate the requirements Congress placed on contribution claims"); *Solutia, Inc. v. McWane, Inc.*, 726 F. Supp. 2d 1316, 1345 (E.D. Ala. 2010), *aff'd* 672 F.3d 1230 (11th Cir. 2012) ("It cannot be that Congress intended that a plaintiff could avoid the less favorable aspects of § 113(f) claims that are based on compelled direct costs just by seeking those very same costs via § 107(a).").

Occidental undisputedly seeks contribution under CERCLA § 113(f) for the same alleged response costs that it is also seeking under § 107(a). Count II of its Complaint specifically requests (under § 113(f)) the exact same costs as claimed in Count I (under § 107(a)). Nothing in the text of CERCLA or the developed case law suggests that Occidental has a choice of claims in these

---

that § 113(f) "provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement"); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 127-28 (2d Cir. 2010) (holding that where an administrative consent order gives rise to contribution rights under § 113(f), "only [that subsection]," and not § 107(a), "provided[d] the proper procedural mechanism for the [the plaintiff's] claims"); *United Techs. Corp. v. Browning-Ferris Indus.*, 33 F.3d 96, 103 (1st Cir. 1994) (holding that the plaintiff was not entitled to pursue a claim under § 107 because "contribution and cost recovery actions are distinct, non-overlapping anodynes"); *see also ITT Indus., Inc. v. BorgWarner, Inc.*, 615 F. Supp. 2d 640, 646–48 (W.D. Mich. 2009) ("[B]ecause plaintiff ITT entered into a consent decree with respect to the [site], and because ITT could have brought a Section 113(f) contribution claim, but failed to do so in a timely manner, ITT should not be permitted to evade the statute of limitations and the allocation scheme of a Section 113(f) contribution claim by bringing a contribution claim under the guise of a Section 107(a) cost recovery action."); *Appleton Papers, Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1043 (E.D. Wisc. 2008) ("[T]he operative principle appears to be that Section 107(a) is available to recover payments only in cases where Section 113(f) is not.").

circumstances under either statute; rather, CERCLA's text and the developed case law dictates that Occidental has no claim for cost recovery under § 107(a) since these costs were incurred pursuant to a settlement with order from the EPA.

>   *3. The ASAOCs for which Occidental seeks to recover costs are Administrative Settlements in which Occidental resolved some or all of its liability giving rise to a contribution claim under CERCLA § 113(f)(3)(B).*

In finding that administrative settlements foreclose cost recovery claims under § 107, courts interpret the term "administrative settlement" broadly to include any agreement that resolves all or some of a party's CERCLA liability, either through payments or commitments to perform remediation. *See, e.g., Hobart*, 758 F.3d at 768. The Ninth Circuit recently held that an agreement resolves CERCLA liability, and thus makes contribution the exclusive remedy, if it "determines . . . compliance obligations with certainty and finality." *Asarco*, 866 F.3d at 1124–25. Occidental's settlements with EPA under the Tierra Removal Order, the CSO ASAOC, and the 2016 ASAOC are all textbook examples of a § 113(f) administrative settlement. Further, for reasons stated below, the UAO should be treated the same.

There is no question that Occidental settled some or all of its liability in its three ASAOCs with EPA. In all three agreements, Occidental and EPA explicitly agreed that the "Settlement Agreement constitutes an administrative settlement" for purposes of CERCLA § 113(f)(2). Blum Cert., Ex. 2, Tierra Removal ASAOC, at ¶ 82(b); Ex. 4, CSO ASAOC, at ¶ 104(b); Ex. 5, 2016 ASAOC, at ¶ 105. They further agreed that the agreement constituted an administrative settlement "pursuant to which [Occidental] has, as of the Effective Date, resolved [its] liability to the United States" for the matters addressed within each Agreement. Blum Cert., Ex. 2, Tierra Removal ASAOC, at ¶ 82(b); Ex. 4, CSO ASAOC, at ¶ 104(b); Ex. 5, 2016 ASAOC, at ¶ 105.

This language is precisely what was meant to be covered by "administrative settlements" within CERCLA's statutory language and thus precludes Occidental's claims for cost recovery

under § 107. Indeed, Occidental concedes as much in its own Complaint, where it alleges—in support of its 113(f) contribution claim—that, "[p]ursuant to each of the 2016 ASAOC, the Tierra Removal ASAOC, and the CSO ASAOC, *Plaintiff has resolved its liability to the United States for some or all of a response action or for some or all of the costs of such action in an administrative settlement* and has incurred and will incur necessary response costs consistent with the NCP." Complaint at ¶ 278 (emphasis added). Occidental can thus only recover any alleged costs under these administrative settlements through a CERCLA § 113(f) contribution action.

   4.   *The UAO under which Occidental seeks to recover costs is a Civil Action giving rise to a contribution claim under CERCLA § 113(f)(1).*

   Similarly, Occidental's only available remedy to recover its alleged costs (if any, *see infra*, Section B) under the RM 10.9 Removal UAO is via a contribution claim under CERCLA § 113. Courts have determined that a UAO is a "civil action" giving rise to a contribution claim under § 113(f) due to the similarity between a UAO and a judgment in a civil action since the party receiving a UAO (here, Occidental) has only an illusory choice of whether to comply, as noncompliance leads to draconian penalties and punitive damages. *See, e.g., Transtech Indus., Inc. v. A & Z Septic Clean,* 798 F. Supp. 1079, 1086 (D.N.J. 1992) (J. Ackerman) (reasoning that a party under a UAO has a § 113 contribution claim); *PCS Nitrogen, Inc. v. Ross Dev. Corp.,* 104 F. Supp. 3d 729, 742 (D.S.C. 2015) ("There are unquestionable similarities between the effect of the UAO and that of a civil action in terms of coercing a party to undertake remedial actions. Therefore, the court concludes that a § 106 administrative order [*i.e.*, a UAO] . . . is a type of 'civil action' under § 106 which gives rise to a contribution claim under § 113(f)(1)."); *Carrier Corp. v. Piper*, 460 F. Supp. 2d 827, 840–41 (W.D. Tenn. 2006) (holding that "a UAO falls within the requirement of a 'civil action' under § 113(f)(1)" because "in terms of the burden it places on a

party, a UAO is similar to a judgment issued pursuant to a court proceeding"). Indeed, as this Court

(Judge Ackerman) noted:

> I find that plaintiffs are being facetious at best in their argument that
> [under a UAO] it acted voluntarily, privately, and in keeping with
> the goals of CERCLA, and not as a result of government threats.
> Their argument, if accepted, would drain the words "voluntary" and
> "contribution" of any meaning whatsoever. In 1983, the EPA issued
> a unilateral administrative order pursuant to CERCLA section 106
> directing plaintiffs and others to continue remedial measures to
> clean up the Site and ordering them to design, implement, maintain
> and monitor for thirty years the final long-term remedial action
> selected by the EPA for the landfill. These actions by plaintiff
> clearly are the result of civil actions by the government. If plaintiff
> failed to comply with the agreements it made with the government,
> they would be directly liable in the form of civil fines or additional
> injunctive orders. Action under such threats is hardly "voluntary."

*Transtech*, 798 F. Supp. at 1086–87. Thus, the RM 10.9 UAO should be treated as a civil action

that only gives rise to a CERCLA § 113(f) contribution claim.

These judicial statements that UAOs are civil actions are supported by important public

policy considerations aptly illustrated in this case. Allowing Occidental to bring a § 107 cost

recovery claim would reward Occidental for its unwillingness to join into a settlement with EPA

and punish the Defendants that joined the settlement and worked cooperatively with EPA.

Specifically, Occidental refused to join the RM 10.9 Removal Settlement Agreement. *See* Blum

Cert., Ex. 6, RM 10.9 Removal UAO at ¶ 8(s). EPA was thus left with no choice but to issue the

UAO and _demand_ that Occidental conduct the _same_ response actions as those voluntarily agreed

to by others in the RM 10.9 AOC. *Id.* at ¶ 12. Occidental cannot manufacture a § 107 cost recovery

action by refusing to cooperate with EPA and sign onto the RM 10.9 Settlement Agreement; rather,

Occidental's sole remedy under the RM 10.9 UAO is also a CERCLA § 113 contribution claim.

The District Court for the Southern District of Ohio recently addressed an analogous fact

pattern and reasoned that allowing a § 107(a) claim for costs under a UAO would be "unfair" when

the opposing party incurred the same costs through an administrative settlement under which they have only § 113(f) claims. *Hobart Corp. v. The Dayton Power & Light Co.*, Case No. 3:13-cv-115-WHR (ECF # 845) (S.D. Ohio Aug. 20, 2018), attached as Exhibit 11 to the Blum Cert. at 15. CERCLA § 107 cost recovery actions were not created for parties to "game" the system by refusing to cooperate with EPA, requiring EPA to issue a UAO, and then allowing the non-cooperative, recalcitrant party to recover costs from other cooperating PRPs under § 107's *joint and several* liability scheme, while cooperative, settling parties are limited to only recovering costs pursuant to CERCLA § 113(f)'s *several* liability scheme. Such conduct and its attendant unfairness and prejudice to the Defendants and the CERCLA process should not be countenanced, let alone incentivized. Instead, this Court should require Occidental to seek any alleged response costs for the RM 10.9 UAO solely under CERCLA § 113.

### B. Occidental's Complaint Should Be Dismissed Because Occidental Fails to Allege with Specificity that It Incurred the Costs it Seeks to Recover.

Nowhere in its Complaint does Occidental specifically identify any response costs that Occidental itself actually incurred under the Tierra Removal ASAOC, the CSO ASAOC, or the RM 10.9 UAO. Instead, the Complaint facially seeks to recover specifically identified response costs allegedly incurred by third parties—*i.e.*, Maxus and Tierra—that indemnified Occidental. As to Occidental, however, the Complaint merely recites, in conclusory fashion, the elements of a CERCLA cost-recovery action. It thus fails to set forth a prima facie claim for relief as a matter of law and, therefore, should be dismissed.

Specifically, Occidental fails to allege facts that show that *it*—as opposed to Maxus or Tierra—has incurred any of these alleged CERCLA response costs. Without actually incurring such costs, Occidental cannot recover them from other PRPs. *See Ford Motor Co. v. Mich. Consol. Gas Co.*, Case No. 08-CV-13503-DT, 2010 WL 3419502, at *6–7 (E.D. Mich. Aug. 27, 2010)

(dismissing CERCLA claim) ("MichCon's allegations that it incurred costs of recovery, without more, constitute . . . unadorned, conclusory allegations of legal violations . . . It is simply not enough to allege that MichCon incurred costs of response, without detailing *any* factual allegations in support of the statement."); *Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp. 2d 653, 657–59 (E.D. Tex. 2006) (dismissing CERCLA claim) ("The plaintiff failed to allege what response costs it has incurred in containing the release of TCE. When a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." (internal quotations omitted)); *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1475 (D. Colo. 1991) ("Conclusory allegations which merely mirror the terms of the statute are insufficient. The complaint must specify at least one cognizable response cost incurred by each named plaintiff prior to filing the lawsuit. . . . If plaintiffs have incurred no cognizable response costs, it is appropriate to dispose of the CERCLA claim at the outset. On the other hand, if plaintiffs have incurred cognizable response costs, it presents no undue burden to identify them in the complaint."); *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 42–43 (6th Cir. 1988) (dismissing CERCLA claim) ("[P]laintiffs pled with specificity both the response costs and response actions undertaken by the federal government and the State of Ohio but failed to allege any similar factual basis for their conclusory allegation that they had personally incurred response costs . . . . The district court was not, therefore, required to presume facts that would turn plaintiffs' apparently frivolous claim under Section 107 of CERCLA into a substantial one.").

Courts have held that merely pleading that response costs have been incurred by a party's indemnitors (not by the party itself) is insufficient to sustain a CERCLA claim. For example, in *Basic Management Inc. v. United States*, 569 F. Supp. 2d 1106 (D. Nev. 2008), the plaintiffs filed a CERCLA contribution claim after they agreed to pay $22 million in cleanup costs. The plaintiffs'

21

insurance policies, however, paid the alleged costs. The Court found that the plaintiffs had not

"incurred" the specific costs for which it sought contribution, and that to allow them to proceed on

their claims to recover such costs would result in a "contribution windfall for a cost which they

will never incur or have to pay." *Id.* at 1120.[13] "While it is true that Plaintiffs could have paid for

the costs themselves and submitted those claims to [the insurance company] for reimbursement

under the insurance policies, the fact remains that [the insurance company] pays the vendors

directly . . . ." *Id.* The Court disallowed the plaintiffs' claims, finding that "[e]quity and common

sense . . . dictate that Plaintiffs cannot recover the remediation costs paid for by their insurance

policies." *Id.* at 1125. It held:

> Plaintiffs have not been damaged and are not "entitled" to money as
> a damaged party; but rather, Plaintiffs can only receive
> reimbursement for the costs they expended beyond their share of
> actual responsibility for the environmental damage. There is an
> actual dollar amount associated with those costs, and in this case,
> almost all of those costs have been paid directly by Plaintiffs'
> insurers, and without further right of subrogation in the insurers. In
> other words, no party or potential party here has incurred a cost as a
> PRP for which they could seek "contribution" from another PRP.
> Allowing Plaintiffs to recover those costs "again" from Defendants
> would in essence allow Plaintiffs to profit from their own and prior
> contamination of the site simply because they are in the subsequent
> chain of title. The purpose of the Contribution element of CERCLA
> was to reallocate the remedial cost to those who were ultimately
> responsible for the pollution, not to provide a windfall recovery for
> parties who happen to be in the chain of title.

*Id.* at 1124; *see also Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power

Dist.*, 222 F. Supp. 3d 757, 770 (D. Ariz. 2016) (holding that PRP plaintiff did not "incur" response

---

[13] The *Basic Management* court also held that allowing the plaintiffs to recover for costs expended
by another entity would violate CERCLA's statutory double recovery bar in § 114(b). *See* 569 F.
Supp. 2d at 1123.

costs and could not recover under CERCLA because its attorneys directly paid the response costs).[14]

Just as the plaintiffs in *Basic Management*, Occidental failed to plead that it incurred the response costs it seeks to recover. Instead, where it actually pleads specific facts, Occidental only alleges that its indemnitors, Maxus and Tierra, have incurred costs related to the Tierra Removal ASAOC, the CSO ASAOC and the RM 10.9 UAO.

First, regarding the Tierra Removal ASAOC, Occidental alleges, "[i]n 2012, *Tierra performed the Phase 1 removal*, and completed dredging, dewatering, and transport of 40,000 cubic yards of sediment." Complaint at ¶ 28. (emphasis added). Occidental pleads that the Phase 1 removal cost over $83 million, but nowhere claims that it (as opposed to Tierra) paid any of these costs. *See id.; see also id.* at ¶ 39 ("[E]ven before design or implementation of EPA's selected remedy under the 2016 ASAOC, *OxyChem's indemnitors already paid* to remove a significant volume of dioxins and other COCs in Phase 1 of the Tierra Removal Order." (emphasis added)). No allegations regarding Phase 2 removal are made in Occidental's Complaint.

_____

[14] Other courts facing this issue have reached the same result, disallowing a party to maintain a CERCLA action on costs that it had not paid out of its own pocket. *See, e.g., Friedland v. TIC-The Indus. Co.*, 566 F.3d 1203, 1207 (10th Cir. 2009) ("[P]ermitting a CERCLA contribution-action plaintiff to recoup more than the response costs he paid out of pocket flies in the face of CERCLA's mandate to apportion those costs equitably among liable parties."); *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 222 F. Supp. 3d 757, 768 (D. Ariz. 2016) (holding that the plaintiff had not presented sufficient evidence of whether it incurred the claimed costs when "there [was] no evidence that [the plaintiff] provided any assistance in paying" the alleged costs); *United Alloys, Inc. v. Baker*, 2011 WL 2749641, at *26 (C.D. Cal. July 14, 2011) (holding that the plaintiff can only recover response costs that it has paid directly from its "pockets" that exceed its proportionate share of responsibility for the contamination); *United States v. Davis*, 31 F. Supp. 2d 45, 64 (D.R.I. 1998) ("There is nothing 'equitable' about [the] kind of an allocation" that permits the plaintiff "to recover a portion of the costs for which it already has been or will be compensated.").

Second, regarding the CSO ASAOC, Occidental alleges that "*Tierra performed work under the CSO ASAOC*, incurring response costs of more than $2.5 million," but nowhere claims that Occidental performed any work or incurred any costs. *Id.* at ¶ 29; *id.* at ¶ 35 ("*Tierra incurred over $2.5 million in response costs* to investigate the extent of contamination from combined sewer overflows and storm water outfalls into the Passaic River." (emphasis added)).

Third, regarding the RM 10.9 Removal UAO, Occidental alleges that "OxyChem is in full compliance with the RM 10.9 UAO." *Id.* at ¶ 30. Yet, Occidental nowhere alleges that it has performed any work or incurred any response costs under this UAO. In fact, Occidental later concedes that "[o]n OxyChem's behalf, *Tierra incurred response costs* of more than $1 million under the RM 10.9 Removal UAO." *Id.* (emphasis added).

Regarding the 2016 ASAOC, Occidental alleges that it "agreed to design the OU2 Remedy and foot the design's estimated $165-million bill." *Id.* at ¶¶ 5, 33. Nowhere in the Complaint, however, does Occidental affirmatively allege that it has yet incurred any response costs under the 2016 ASAOC with the specificity required.[15] Occidental has only alleged it "has incurred and will incur costs in the performance of the work required by the 2016 ASAOC, including but not limited to, costs of investigation, testing, and design of the remedy mandated by the OU2 ROD." *Id.* at ¶ 43. Unlike Occidental's claims for the other orders, where it specifically claims a dollar figure (albeit incurred by Occidental's indemnitors), Occidental does not specify any dollar amount it has allegedly incurred under the 2016 ASAOC. In short, Occidental does not make these allegations with sufficient specificity to survive a *Twombly* and *Iqbal* pleading standard. *Id.* at ¶ 43.

---

[15] Even if Occidental had pled that it incurred actual costs pursuant to the 2016 ASAOC (and it does not), the Complaint concedes that Occidental released, and therefore has no claim against, forty-one of the Defendants identified in Exhibit A to Occidental's Complaint, unless and until Occidental has paid in excess of $165 million to design the remedy for OU2. *See* Complaint at ¶ 44 n.29. Occidental has no allegations that it has incurred costs in excess of $165 million.

Occidental's formulaic, threadbare recitals regarding its alleged incurrence of CERCLA response costs, supported by nothing other than conclusory legal statements epitomizes the type of pleadings held insufficient by the Supreme Court in *Twombly* and *Iqbal*. Those recitals are not entitled to the assumption of truth. Occidental cannot proceed beyond the pleading stage when it has failed to supply specific factual allegations of response costs it incurred beyond its conclusory, unsupported allegation that it "has incurred and will continue to incur response costs pursuant to the Tierra Removal Order, the CSO ASAOC, the RM 10.9 Removal UAO, and the 2016 ASAOC." *Compare* Complaint at ¶ 34 *with Ford Motor* 2010 WL 3419502, at *6–7 ("It is simply not enough to allege that [plaintiff] incurred costs of response, without detailing any factual allegations in support of the statement; without alleging that the costs were necessary and explaining—even briefly—why they were necessary; or without otherwise enhancing the bare recitation of the element of a cost recovery claim."); *Gen. Cable Indus.*, 561 F. Supp. 2d at 658 ("The Plaintiff failed to allege what response costs it has incurred in containing the release of TCE. When a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.") (internal quotations and alterations omitted); *Cook*, 755 F. Supp. at 1475. These conclusory allegations are insufficient to meet the pleading requirements set forth in *Iqbal*, 556 U.S. at 678; *see also Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (holding that conclusory allegations and "naked assertions" are "not entitled to the assumption of truth").

In short, it is not enough for Occidental to allege that others (Tierra and Maxus) incurred costs on Occidental's behalf. Such claims are owned, if at all, by Tierra and Maxus (and now by

the Maxus Liquidating Trust), not Occidental.[16] Thus, any response costs that Occidental alleges

with specificity that have already been incurred are not Occidental's to recover.

### C. Occidental's Alleged Costs Related to Investigating and Searching for PRPs are not Recoverable.

To the extent Occidental seeks costs related to investigating and searching for PRPs, those

costs are also unrecoverable because they are unnecessary. "A response cost is 'necessary' if it is

'necessary to the containment and cleanup of hazardous releases.'" *Litgo N.J., Inc. v. Martin*, No.

CIV. 06-2891 AET, 2012 WL 32200, at *3–4 (D.N.J. Jan. 5, 2012) (J. Thompson) (quoting *Black*

*Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 294 (3d Cir. 2000)). In contrast,

response costs are *not* necessary if they are incurred "solely in preparation for litigation unless they

'significantly benefited the entire cleanup effort and served a statutory purpose apart from the

reallocation of costs.'" *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 91–92 (2d Cir. 2000)

(quoting *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994)).

Occidental does not allege that the costs incurred in connection with a search for additional

PRPs were necessary costs and does not tie such costs to any actual cleanup of the Passaic River.

This is unsurprising—Occidental likely cannot make such allegations as it has not made any

specific allegations that it conducted *any* cleanup related to the River, because as discussed above,

Occidental's indemnitors paid all previous specifically alleged response costs. Any PRP search

done by Occidental was presumably done solely for litigation purposes. Occidental is not

---

[16] These claims are currently being pursued by the Maxus Liquidating Trust against YPF and Repsol. *See* Blum Cert., Ex. 10, Complaint in *Maxus Liquidating Trust v. YPF S.A., et al.*, Case No. 16-11501 (Bankr. Del.). Pursuant to the Tierra/Maxus Bankruptcy Plan, Occidental is the primary beneficiary of any proceeds received pursuant to this litigation. *See* Blum Cert., Ex. 8, Order Confirming Amended Chapter 11 Plan of Liquidation, *In re Maxus Energy Corporation*, Case No. 16-11501 (CSS) (Bankr. Del.) (ECF # 1460) (filed May 22, 2017). These additional circumstances further demonstrate why Occidental's Complaint should be dismissed on the grounds of double recovery and judicial efficiency.

attempting to facilitate the cleanup of the Passaic River; instead, it only seeks to reallocate costs

(costs that it did not even pay). Thus, any alleged costs for investigating and identifying PRPs are

unnecessary and unrecoverable.[17]

### D. Occidental's Contribution Claims for the Tierra Removal ASAOC, the CSO ASAOC, and the RM 10.9 UAO are Barred by the Statute of Limitations.

Occidental's claims for contribution under CERCLA § 113(f) for costs allegedly incurred

under the Tierra Removal ASAOC, the CSO ASAOC, and the RM 10.9 UAO further fail because

they are untimely.[18] The relevant statute of limitations for a CERCLA § 113(f) contribution cause

of action is three years. 42 U.S.C. § 9613(g)(3). Courts have interpreted § 113(g)(3) to provide a

3-year statute of limitations for *all* contribution actions, including for contribution claims based on

administrative settlements. *See Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757,

772–75 (6th Cir. 2014) ("In summary, we hold that § 113(g)(3) sets the proper limitations period

for contribution actions; that § 113(g)(3) does not explicitly list a triggering event in this case; that

there must be a triggering event; and that the signing of the ASAOC is the most logical triggering

event."). The Tierra Removal ASAOC was entered into in 2008, the CSO ASAOC in 2011, and

the RM 10.9 UAO was issued in 2012, but Occidental did not file this lawsuit until 2018. Because

Occidental failed to bring its claims for contribution under these ASAOCs and UAO within three

---

[17] Occidental is further precluded to such costs under § 107 for a separate and independent reason. *Hobart Corp. v. Dayton Power & Light Co.*, 997 F. Supp. 2d 835, 853-54 (S.D. Ohio 2014) provides that PRP investigation costs cannot alone sustain a § 107 claim where all other "necessary cost of response" were incurred pursuant to an administrative settlement or order and therefore must be brought under § 113(f). As discussed above, Occidental's alleged costs (if any) were all incurred pursuant to an administrative settlement or order and must be brought under § 113(f).

[18] Certain Defendants entered into a Standstill and Tolling Agreement with Occidental in 2015 before the statute of limitations on the RM 10.9 UAO expired that tolled the statute of limitations for the RM 10.9 UAO until June 30, 2018. Because Occidental filed its complaint on June 30, 2018, these Defendants thus do not argue that the claims associated with the RM 10.9 UAO are untimely as to them.

years of the administrative settlement dates or administrative order issuance date, Occidental's contribution claims related to the Tierra Removal ASAOC, the CSO ASAOC, and the RM 10.9 UAO are untimely and should be dismissed as a matter of law as to certain defendants.

### E. Occidental Cannot Bring a Contribution Claim under the RM 10.9 UAO Because Most Defendants Have Contribution Protection Pursuant to the RM 10.9 Settlement Agreement.

A separate and independent legal ground on which Occidental is barred from bringing a claim based on the RM 10.9 UAO against certain Defendants is because of the contribution protection granted in the RM 10.9 Settlement Agreement. *See* Blum Cert., Ex. 7, RM 10.9 Settlement Agreement. In 2012, those Defendants entered into a Settlement Agreement with the EPA to perform remediation work at the RM 10.9. *Id.* In return, they received contribution protection for all matters addressed in the Settlement Agreement. *Id.* at ¶ 74.a. Under CERCLA § 113, a PRP that "has resolved its lability to the United States . . . in an administrative or judicially approved settlement" is immune from contribution claims by other PRPs "regarding matters addressed in the settlement." The costs alleged by Occidental under the RM 10.9 UAO are identical to the costs incurred under the RM 10.9 Settlement Agreement. In fact, the RM 10.9 UAO specifically provides that "[t]he RM 10.9 Settlement Agreement requires the RM 10.9 Settling Parties to conduct the same response actions as those required by this Order." *See* Blum Cert., Ex. 6, RM 10.9 Removal UAO at ¶ 12.

Occidental is thus further barred from bringing any claim for alleged response costs under the RM 10.9 UAO. This bar applies to both Occidental's § 113(f) contribution claim and its § 107(a) cost recovery claim for those costs. *See* 42 U.S.C. § 9613(f)(2); *Transtech*, 798 F. Supp. at 1087 (D.N.J.) (J. Ackerman) (holding that the defenses in § 113(f)(2) apply to defendants in a § 107 action); *United States v. Colo. & E. R.R.*, 832 F. Supp. 304, 307 (D. Colo. 1993) ("The protection contemplated by § 9613(f)(2) covers not just claims for contribution, but claims for

response costs that amount to nothing more than claims for contribution."); *Dravo Corp. v. Zuber*, 804 F. Supp. 1182, 1185 (D. Neb. 1992) ("The courts have consistently . . . provid[ed] settling parties with immunity from any claim regarding matters addressed in the settlement with the government provided the non-settling party's claim is in substance a claim for contribution, even though the claim may be called something else." (compiling citations)). Here, Occidental's claim, even if labeled a cost recovery claim, is at its core a contribution claim. Thus, under CERCLA § 113(f)(2), Occidental's claim is independently barred against the Defendants that are RM 10.9 Settling Parties because they have already settled their liability with the EPA by doing work that Occidental refused to do.[19]

## F. Count III of Occidental's Complaint Should be Dismissed Because Occidental is Not Entitled to Declaratory Relief.

Count III of Occidental's Complaint seeks a declaratory judgment that Defendants are liable to Occidental for future response costs or damages it might incur, referencing CERCLA § 133(g)(2) and 28 U.S.C. §§ 2201–2202. Neither statute, however, supports such relief.

CERCLA § 113(g)(2) provides, in relevant part, "[i]n any such action described in this subsection [concerning § 107 actions], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). The Third Circuit has suggested that, if a district court finds that a defendant is not liable for the plaintiff's alleged past costs, it is proper to dismiss the plaintiff's claims for declaratory judgment as to future costs as well. *United States v. Occidental Chem. Co.*, 200 F.3d 143, 153-54 (3d Cir. 1999); *see also Reichhold, Inc. v. United*

_____

[19] In short, Occidental's claims related to the RM 10.9 UAO are barred against *all* Defendants either because they are time-barred (*see* Section D) or because they are barred by contribution protection.

*States Metals Refining Co.*, 522 F. Supp. 2d 724, 728 (D.N.J. 2007) (J. Debevoise) (dismissing declaratory relief claim where the plaintiff's § 113(f) contribution claim was prematurely brought).

Because Occidental's § 107(a) and § 113(f) causes of action must be dismissed for the reasons discussed above, it is not entitled to a declaratory judgment either. *See, e.g., City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1007–08 (9th Cir. 2010). ("[D]eclaratory relief is available only if liability for past costs has been established under section 107."); *Reichhold Chems., Inc. v. Textron, Inc.*, 888 F. Supp. 1116, 1124 (N.D. Fla. 1995) (reasoning that where § 107 claim was dismissed, declaratory judgment claim should also be dismissed); *Union Station Assoc. LLC v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002) (after § 107 and § 113 claims were dismissed, "no substantive claims exist upon which to base [the plaintiff's] declaratory judgment claims").

Occidental's other statutory citation, 28 U.S.C. §§ 2201–2202, does nothing more than provide for declaratory relief under certain circumstances. There must, however, be an "actual controversy" to support declaratory relief. As Occidental has no other cause of action, there is no "actual controversy," so Occidental is not entitled to a declaratory judgment pursuant to these statutes either.

## CONCLUSION

None of Occidental's causes of action states a claim upon which relief may be granted. The Court should therefore grant the Small Parties Group Defendants' Motion to Dismiss and dismiss Plaintiff Occidental Chemical Corporation's Complaint.

Dated: September 12, 2018

Respectfully submitted,

By: /s/ Joseph H. Blum
David R. Erickson (admitted *pro hac vice*)
Joseph H. Blum (NJ Bar No. 010211984)
Shook, Hardy & Bacon, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
*Common Counsel for the Small Parties Group*

/s/ Andrew Muscato
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(A Delaware Limited Liability Partnership)
Andrew Muscato
Four Times Square
New York, New York 10036
(212) 735-3000 (telephone)
(212) 735-2000 (fax)
Email: andrew.muscato@skadden.com
*Counsel for 21st Century Fox America Inc.*

/s/ Ira Gottlieb
Ira Gottlieb
Cynthia S. Betz
McCarter & English, LLP
100 Mulberry Street
4 Gateway Center
Newark, New Jersey 07102
973-622-4444
igottlieb@mccarter.com
cbetz@mcarter.com
*Attorneys for Akzo Nobel Coatings Inc.*

/s/ Paula A. Martin
Paula A. Martin
Legacy Site Services LLC
RETIA USA LLC
665 Stockton Drive
Suite 100
Exton, PA 19341
Office Phone: 865-596-7655
Email: paula.martin@total.com
*Attorney for Arkema Inc.*
/s/ Glenn Harris
BALLARD SPAHR LLP

Glenn Harris
David Haworth
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
Telephone: 856.761.3440
Facsimile: 856.761.1020
harrisg@ballardspahr.com
haworthd@ballardspahr.com
*Counsel for Atlantic Richfield Co.*

/s/ Keith McManus
BRESSLER, AMERY & ROSS, P.C
Keith McManus
David Schneider
325 Columbia Turnpike, Suite 301
Florham Park, New Jersey 07932
Telephone: 973.514.1200
Facsimile: 973.514.1660
kmcmanus@bressler.com
dschneider@bressler.com
*Counsel for BASF Corporation (on its own
behalf and on behalf of BASF Catalysts
LLC) and Novartis Corporation*

/s/ George C. Jones
George C. Jones
McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
Telephone: (973) 993-8100
Facsimile: (973) 425-0161
gjones@mdmc-law.com
Anne S. Kenney
JENNER & BLOCK LLP

353 North Clark Street
Chicago, Illinois 60654
Telephone: 312.840.8676
Facsimile: 312.840.8776
akenney@jenner.com
*Attorneys for Bath Iron Works Corporation*

/s/ Eric Aronson
GREENBERG TRAURIG, LLP
Eric S. Aronson
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone: 973.360.7900
Facsimile: 973.301.8410
aronsone@gtlaw.com
*Counsel for Benjamin Moore & Co., Inc.*

/s/ Bina Joshi
SCHIFF HARDIN LLP
Bina Joshi
Ryan Granholm
bjoshi@schiffhardin.com
rgranholm@schiffhardin.com
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606
Telephone: 312.258.5500
Facsimile: 312.258.5600
Andrew Sawula
One Westminster Place, Suite 200
Lake Forest, Illinois 60045
Telephone: 847.295.4336
Facsimile: 847.295.7810
asawula@schiffhardin.com
*Counsel for Berol Corporation and Newell Brands Inc.*

/s/ Wendy Klein
COLE SCHOTZ P.C.
Wendy Klein
David Kohane
Heather Demirjian
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Telephone: 201.525.6266
Facsimile: 201.678.6266

wklein@coleschotz.com
dkohane@coleschotz.com
hdemirjian@coleschotz.com
*Counsel for Canning Gumm LLC and Pabst Brewing Company, LLC*

/s/ Marc J. Felezzola
BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.
Marc J. Felezzola
mfelezzola@babstcalland.com
Lindsay P. Howard
lhoward@babstcalland.com
Mark D. Shepard
mshepard@babstcalland.com
Alana E. Fortna
afortna@babstcalland.com
Two Gateway Center, 6th Floor
Pittsburgh, Pennsylvania 15222
(412) 394-5400
(412) 394-6576 (Fax)
*Attorneys for CBS Corporation*

/s/ Jim O'Toole
BUCHANAN INGERSOLL & ROONEY PC
James "Jim" O'Toole
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
Telephone: 215.665.3857
Facsimile: 215.665.8760
james.otoole@bipc.com
*Counsel for CNA Holdings LLC*

/s/ Dan Chorost
SIVE, PAGET & RIESEL P.C.
Dan Chorost
Jeffrey B. Gracer
Daniel Riesel
Adam Stolorow
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone: 212.421.2150
Facsimile: 212.421.1891
dchorost@sprlaw.com

jgracer@sprlaw.com
driesel@sprlaw.com
astolorow@sprlaw.com
*Counsel for Coats & Clark Inc.*

/s/ Richard B. Harper
BAKER BOTTS LLP
Richard B. Harper
Joshua B. Frank
Martha S. Thomsen
30 Rockefeller Plaza
New York, NY 10112
Telephone: 212.408.2675
Facsimile: 212.259.2475
Richard.Harper@bakerbotts.com
*Counsel for Conopco, Inc., d/b/a Unilever*
*(as successor to CPC/Bestfoods, former*
*parent of Penick Corporation); DII*
*Industries, LLC; Hexcel Corporation*

/s/ Barbara Kelly
Barbara Kelly
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker
LLP
200 Campus Drive
Florham Park, NJ 07932-0668
Telephone: 973.735.5765
Facsimile: 973.624.0808
barbara.kelly@wilsonelser.com
*Counsel for Covanta Essex Company and*
*National Standard LLC*

/s/ Stephen Swedlow
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Stephen Swedlow
191 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: 312.705.7400
Facsimile: 312.705.7401
stephenswedlow@quinnemanuel.com
Matthew Robson
Margaret Schmidt
51 Madison Avenue, 22nd Floor
New York, New York 10010

Telephone: 212.849.7489
Facsimile: 212.849.7100
matthewrobson@quinnemanuel.com
margaretschmidt@quinnemanuel.com
*Counsel for Croda, Inc.*

/s/ Glenn Harris
BALLARD SPAHR LLP
Glenn Harris
David Haworth
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
Telephone: 856.761.3440
Facsimile: 856.761.1020
harrisg@ballardspahr.com
haworthd@ballardspahr.com
*Counsel for E.I. du Pont de Nemours and*
*Company on its own behalf and on behalf of*
*Pitt-Consol Chemical Company*

*/s/ Dwayne F. Stanley*
Dwayne F. Stanley
Charles E. Merrill*
Megan P. Caldwell*
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Ste. 600
St. Louis, MO  63105
Telephone:  314.480.1500
Facsimile:   314.480.1505
E-mail:
Dwayne.stanley@huschblackwell.com
*Counsel for Defendant EnPro Holdings Inc.*

/s/ Kenneth Mack
FOX ROTHSCHILD LLP
Kenneth Mack
997 Lenox Drive
Princeton Pike Corporate Center
Lawrenceville New Jersey 08648
Telephone: 609.896.3600
Facsimile: 609.896.1469
kmack@foxrothschild.com
*Counsel for Essex Chemical Corporation*

/s/ Norman Spindel
LOWENSTEIN SANDLER LLP

Norman Spindel
Reynold "Rey" Lambert
Allison Gabala
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: 973.597.2500
Facsimile: 973.597.2400
nspindel@lowenstein.com
rlambert@lowenstein.com
agabala@lowenstein.com
*Counsel for Franklin-Burlington Plastics,
Inc.*

/s/ Patrick J. McStravick
RICCI TYRRELL JOHNSON & GREY
Patrick J. McStravick
Kelly J. Woy
1515 Market Street, Suite 700
Philadelphia, Philadelphia 19102
Telephone: 215.320.3260
Facsimile: 215.320.3261
pmcstravick@rtjglaw.com
kwoy@rtjglaw.com
*Counsel for Garfield Molding Co., Inc.*

/s/ Gary Gengel
LATHAM & WATKINS LLP
Gary Gengel
Kegan Brown
Thomas Pearce
885 Third Avenue
New York, New York 10022
Telephone: 212.906.1200
Facsimile: 212.751.4864
gary.gengel@lw.com
kegan.brown@lw.com
Thomas.Pearce@lw.com
*Counsel for General Electric Company,
PPG Industries, Inc. and Sequa Corporation*

/s/ Curtis Michael
HOROWITZ RUBINO & PATTON
Curtis Michael
400 Plaza Drive, PO Box 2038
Secaucus, New Jersey 07094
Telephone: 201.863.7988

Facsimile: 201.272.6136
Curt.michael@hrplaw.com
*Counsel for The Hartz Mountain
Corporation*

/s/ Glenn Harris
BALLARD SPAHR LLP
Glenn Harris
David Haworth
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
Telephone: 856.761.3440
Facsimile: 856.761.1020
harrisg@ballardspahr.com
haworthd@ballardspahr.com
*Counsel for Johnson & Johnson*

/s/ Nicole R. Moshang
MANKO, GOLD, KATCHER & FOX LLP
Nicole R. Moshang
James M. McClammer
401 City Avenue, Suite 901
Bala Cynwyd, Pennsylvania 19004
Telephone: 484.430.5700
Facsimile: 484.430.5711
nmoshang@mankogold.com
jmcclammer@mankogold.com
*Counsel for Leemilt's Petroleum, Inc.*

/s/ Michael P. McThomas
MICHAEL P. MCTHOMAS, PLLC
Michael P. McThomas Esq.
One Lee Hill Road
Andover, New Jersey 07821
Telephone: 973.691.4711
Facsimile: 973.368.1022
Email: mpm@mmctlaw.com
*Counsel for McKesson Corporation and
Safety-Kleen Envirosystems Company*

/s/ Michael L. Rich
PORZIO BROMBERG & NEWMAN, P.C.
Thomas Spiesman
Michael L. Rich
100 Southgate Parkway
Morristown, New Jersey 07962-1997

Telephone: 973.538.4006
Facsimile:  973.538.5146
tspiesman@pbnlaw.com
mlrich@pbnlaw.com

NORTON ROSE FULBRIGHT US LLP
Edward "Eddie" Lewis
Stephen Dillard
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713 651 5151
Facsimile: 713 651 5246
eddie.lewis@nortonrosefulbright.com
steve.dillard@nortonrosefulbright.com
*Counsel for Legacy Vulcan, LLC*

*/s/ Gregory J. Bevelock*
BEVELOCK & FISHER LLC
Gregory J. Bevelock
14 Main St., Ste. 200
Madison, NJ 07940
Telephone:  973.845.2999
Facsimile:  973.845.2797
gbevelock@bevelocklaw.com
*Counsel for The Newark Group, Inc.*

*/s/ James Stewart*
LOWENSTEIN SANDLER LLP
James Stewart
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: 973.597.2522
Facsimile: 973.597.2523
jstewart@lowenstein.com
*Counsel for Nokia Corporation of America,
Purdue Pharma Technologies, Inc. and
Nappwood Land Corporation*

*/s/ Emily A. Kaller*
GREENBAUM, ROWE, SMITH, & DAVIS
LLP
Emily A. Kaller
Metro Corporate Campus One
PO Box 5600
Woodbridge, New Jersey 07095

Telephone: 732.476.3352
Facsimile: 732.476.3353
ekaller@greenbaumlaw.com
*Counsel for Novelis Corporation (Alcan
Corp.)*

*/s/ James Montano*
MCCULLOUGH GINSBERG MONTANO
& PARTNERS LLP
James Montano
Jason Liam Schmolze
Patrick Lynott
122 East 42nd Street, Suite 3505
New York, New York 10168
Telephone: 646.747.4680 (NY)
Telephone: 646.747.6888 (NJ)
Facsimile: 646.349.2217
jmontano@mgpllp.com
jschmolze@mgpllp.com
plynott@mgpllp.com
*Counsel for The Okonite Company, Inc.*

*/s/ Earl Phillips, Jr.*
ROBINSON & COLE LLP
Earl Phillips, Jr.
Brian Freeman
280 Trumbull Street
Hartford, Connecticut 06103
Telephone: 860.275.8200
Facsimile: 860.275.8299
ephillips@rc.com
bfreeman@rc.com
*Counsel for Otis Elevator Company, and for
Goodrich Corporation for itself and for
Kalama Specialty Chemicals, Inc., Emerald
Kalama Chemical, LLC, and Noveon Hilton
Davis, Inc.*

*/s/ John F. Gullace*
MANKO, GOLD, KATCHER & FOX, LLP
John F. Gullace
401 City Avenue, Suite 901
Bala Cynwyd, Pennsylvania 19004
Telephone: 484.430.5700
Facsimile: 484.430.5711
jgullace@mankogold.com

*Counsel for Pharmacia, LLC*

/s/ Agnes Antonian
CONNELL FOLEY
Agnes Antonian
Kevin Gardner
56 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973.535.0500
Facsimile: 973.535.9217
aantonian@connellfoley.com
kgardner@connellfoley.com
*Counsel for Public Service Electric & Gas Company*

/s/ Katherine A. Skeele
Bonni F. Kaufman
Andrew H. Emerson
Katherine A. Skeele
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010
katherine.skeele@hklaw.com
*Attorneys for Quality Carriers, Inc and Quala Systems, Inc.*

/s/ Jane Luxton
CLARK HILL PLC
Jane Luxton
William "Bill" Walsh
Christopher Clare
Amanda Tharpe
1001 Pennsylvania Ave NW
Suite 1300 South
Washington, D.C. 20004
Telephone: 202.772.0909
Facsimile: 202.772.0919
JLuxton@ClarkHill.com
wwalsh@clarkhill.com
cclare@clarkhill.com
atharpe@clarkhill.com
*Counsel for Revere Smelting and Refining Corporation*

/s/ Marc S. Gaffrey
HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP
Marc S. Gaffrey
Jacob Grouser
40 Paterson Street
P.O. Box 480
New Brunswick, New Jersey 08903
Telephone: 732.545.4717
Facsimile: 732.545.4579
mgaffrey@hoaglandlongo.com
jgrouser@hoaglandlongo.com
*Counsel for Royce Associates, A Limited Partnership*

/s/ John S. Stolz
LOWENSTEIN SANDLER LLP
John S. Stolz
David W. Field
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: 973.597.2500
Facsimile: 973.597.2400
jstolz@lowenstein.com
dfield@lowenstein.com
*Counsel for RTC Properties, Inc.*

/s/ Herbert B. Bennett
CULLEN AND DYKMAN LLP
Herbert B. Bennett
229 Nassau Street
Princeton, New Jersey 08542
Telephone: 609.279.0900
Facsimile: 609.497.2377
hbennett@cullenanddykman.com
*Counsel for The Sherwin-Williams Company*

/s/ Barry M. Kazan
THOMPSON HINE LLP
Barry M. Kazan
335 Madison Avenue, 12th Floor
New York, New York 10017
Telephone: 212.344.5680
Facsimile: 212.344.6101
Barry.Kazan@thompsonhine.com
*Counsel for Stanley Black & Decker, Inc.*

36

/s/ Heidi S. Minuskin

COUGHLIN DUFFY LLP
Timothy I. Duffy
Heidi S. Minuskin
Perri L. Hom
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07961
Telephone: 973.267.0058
Facsimile: 973.267.6442
tduffy@coughlinduffy.com
hminuskin@coughlinduffy.com
phom@coughlinduffy.com
*Counsel for STWB Inc.*

/s/ Martha Donovan

NORRIS MCLAUGHLIN & MARCUS,
P.A.
Martha Donovan
Jeffrey Casaletto
Jessica Palmer
400 Crossing Blvd
Bridgewater, New Jersey 08807
Telephone: 908.722.0700
Facsimile: 908.722.0755
mdonovan@norris-law.com
jcasaletto@norris-law.com
jpalmer@norris-law.com
*Counsel for Sun Chemical Corporation*

/s/ Lanny S. Kurzweil

McCARTER & ENGLISH, LLP
Lanny S. Kurzweil
Amanda G. Dumville
100 Mulberry Street, Four Gateway Center
Newark, New Jersey 07102
Telephone: 973.622.4444
Facsimile: 973.297.3810
lkurzweil@mccarter.com
adumville@mccarter.com
*Counsel for Sunoco (R&M), LLC and*
*Sunoco Partners Marketing & Terminals*
*L.P.*

/s/ John Holsinger

JOHN R. HOLSINGER, LLC
John Holsinger, Esq.
Two University Plaza, Suite 300
Hackensack, NJ 07601
Telephone: 201.487.9000
Facsimile: 201.487.9011
johnh@jrholsinger.com
*Counsel for Tate & Lyle Ingredients*
*Americas LLC (formerly known as A.E.*
*Staley Manufacturing Company) and on*
*behalf of its parent Staley Holdings LLC, all*
*named in Occidental's Complaint*

/s/ George Buermann

GOLDBERG SEGALLA
George Buermann
1037 Raymond Boulevard, Suite 1010
Newark, New Jersey 07102
Telephone: 973.681.7000
Facsimile: 973.681.7101
gbuermann@goldbergsegalla.com
John Parker
711 3rd Avenue, Suite 1900
New York, New York 10017
Telephone: 646.292.8749
Facsimile: 646.292.8701
jparker@goldbergsegalla.com
*Counsel for Textron, Inc.*

/s/ Charles W. Mondora

LANDMAN CORSI BALLAINE & FORD
P.C.
Charles W. Mondora
William Ballaine
Marco Ferreira
One Gateway Center, Fourth Floor
Newark, New Jersey 07102
Telephone: 973.623.2700
Facsimile: 973.623.4496
cmondora@lcbf.com
wballaine@lcbf.com
mferreira@lcbf.com
*Counsel for United States Steel Corporation*