**SHOOK, HARDY & BACON LLP**
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547
By: David R. Erickson, Esq. (admitted *pro hac vice*)
Joseph H. Blum (NJ Bar No. 010211984)
*Common Counsel for the Small Parties Group*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, | Hon. Madeline Cox Arleo |
| Plaintiff, | Hon. Joseph A. Dickson |
| v. | Civil Action No. 2:18-CV-11273 (MCA-JAD) |
| 21ST CENTURY FOX AMERICA, INC., ET AL.; | **THE SMALL PARTIES GROUP DEFENDANTS' REPLY BRIEF IN SUPPORT OF A PROTECTIVE ORDER FOR THE EPA ALLOCATION AND MEDIATED SETTLEMENT PROCESS** |
| Defendants. | |

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    Good cause exists for this Court to enter the proposed Protective Order. .............. 2

    II.    Otherwise protected documents and communications should not lose their protection by virtue of being shared with EPA, particularly given that Occidental has no compelling need in this litigation to discover information or communications shared between the Allocator and EPA. ....................................... 3

    III.    Occidental misreads the Protective Order to argue that it will preclude it from obtaining information it otherwise may be entitled to as a basis for challenging EPA settlements. ............................................................................................... 5

    IV.    Occidental also misreads the Protective Order to argue that it cannot obtain any information through FOIA requests. ........................................................................ 6

    V.    The "standard" protective order Occidental wants is insufficient and will not adequately protect the EPA Allocation process. ..................................................... 9

CONCLUSION ................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Cases**            **Page(s)**

*Allen Cty. v. Reilly Indus., Inc.*,
  197 F.R.D. 352 (N.D. Ohio 2000) .................................................................................. 7

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
  800 F.2d 339 (3d Cir. 1986)........................................................................................... 3

*Bottaro v. Hatton Assocs.*,
  96 F.R.D. 158 (E.D.N.Y. 1982) ..................................................................................... 7

*Cook v. Yellow Freight Sys.*,
  132 F.R.D. 548 (E.D. Cal. 1990) ................................................................................... 7

*County of Madison v. Department of Justice*,
  641 F.2d 1036 (1st Cir. 1981) ........................................................................................ 7

*F.D.I.C. v. Ernst & Ernst*,
  677 F.2d 230 (2d Cir. 1982).................................................................................... 7, 8

*Goodyear Tire & Rubber v. Chiles Power Supply*,
  332 F.3d 976 (6th Cir. 2003) ......................................................................................... 7

*GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*,
  445 U.S. 375 (1980)....................................................................................................... 7

*In re Nat'l Prescription Opiate Litig.*,
  325 F. Supp. 3d 833 (N.D. Ohio 2018)........................................................................... 8

*Lesal Interiors v. Resolution Trust Corp.*,
  153 F.R.D. 552 (D.N.J. 1994)........................................................................................ 3

*NAACP Legal Defense Fund & Education Fund, Inc. v. United States Department of Justice,*
  612 F. Supp. 1143 (D.D.C. 1985) .................................................................................. 7

*Olin Corp. v. Ins. Co. of N. Am.*,
  603 F. Supp. 445 (S.D.N.Y. 1985) ................................................................................ 7

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994)........................................................................................ 3, 7

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
  415 U.S. 1 (1973)........................................................................................................... 7

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984)......................................................................................................... 2

*United States v. Rohm & Haas Co.*,
   721 F. Supp. 666 (D.N.J. 1989) .................................................................................. 3

**Statutes**

5 U.S.C. § 574 ................................................................................................................. 4

**Rules**

Federal Rule of Civil Procedure 26(c) ....................................................................... 2, 3

**Other Authority**

Department of Justice, "FOIA Update: OIP Guidance: Protecting Settlement Negotiations," Vol. VI No. 4 (1985) ……………………………………………………………….. 7

## INTRODUCTION

In an attempt to demonstrate that no controversy exists, Occidental[1] concedes that materials provided to the Allocator or created for the EPA Allocation ("Protected Materials and Communications") are confidential and privileged pursuant to the ADR Act and are entitled to protection. Occidental then, however, argues that those same Protected Materials and Communications—once they become the subject of communications between the Allocator and EPA as part of that same EPA Allocation process—necessarily lose that protection, and that any other communications about the EPA Allocation between the Allocator and EPA would be discoverable as well.

In establishing the EPA Allocation, EPA intended and expected that all communications related to the Allocation would be protected. If the Court accepts Occidental's position on the scope of Protected Materials and Communications, that may mean that the EPA Allocation cannot proceed—a result that Occidental, which decided not to participate but will nonetheless be assigned a share in the EPA Allocation, may welcome. Occidental has presented no compelling reason why it should be entitled to discovery or use of the communications between EPA and the Allocator for purposes of this case. Occidental has raised its right to discovery of those Protected Materials and Communications as a basis for challenging future settlements that EPA may reach with participants in the EPA Allocation. In doing so, however, Occidental fails to acknowledge that the proposed Protective Order expressly provides that Occidental is not precluded from seeking such information, to the extent otherwise discoverable, in connection with its future

---

[1] Capitalized terms that are not otherwise defined have the same meaning as in the SPG's Motion (ECF No. 371).

challenge to a hypothetical settlement or pursuant to a FOIA request.[2]

In short, a protective order is necessary so that the EPA Allocation materials and communications cannot be discovered or used in this litigation, while at the same time—as to specific future settlements—providing that Occidental may seek information from EPA as to the basis of such settlement, consistent with the scope of such inquiries permitted under applicable law.

## ARGUMENT

### I. Good cause exists for this Court to enter the proposed Protective Order.

This motion is not one that requires close analysis of legal authorities to determine the SPG's "entitlement" to a protective order. Instead, it is a practical response to a situation in which EPA—in its role leading the cleanup of the Site—has initiated and is participating in an allocation process it intends to use in securing funding or work to implement the remedy it has selected for OU2.

Viewed in this light, the SPG's proposed Protective Order is supported by ample good cause. Federal Rule of Civil Procedure 26(c) authorizes this Court to balance the need to protect EPA Allocation-related materials and communications from discovery to avoid the imposition of "undue burden" on the SPG members, the Allocation Team, and EPA[3] against Occidental's right

---

[2] The proposed Protective Order would limit use of FOIA to compel the disclosure of Protected Materials and Communications, consistent with exemptions to FOIA. As addressed below, the proposed Protective Order's provisions governing FOIA requests are ones that Occidental, in the negotiations that preceded the filing of the Motion, had agreed were acceptable.

[3] The United States Supreme Court has explicitly stated that there is "no question as to the court's jurisdiction to [enter protective orders] under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) (internal citation omitted).

to discovery in this litigation. The Court has discretion to manage discovery in this case and to facilitate (or at least not impede) EPA's underlying efforts to implement the clean-up of this Site.[4] The EPA Allocation, if successful, will assist in developing funding and identifying work parties for EPA's selected remedy.

> II. **Otherwise protected documents and communications should not lose their protection by virtue of being shared with EPA, particularly given that Occidental has no compelling need in this litigation to discover information or communications shared between the Allocator and EPA.**

Occidental acknowledges that the materials created and provided to the Allocator or created for the EPA Allocation by the SPG members or the Allocator and his team are protected, but then asserts that any such protection is lost when the Allocator provides such information or documents to EPA. Occidental further contends that none of the communications between EPA and the Allocator about the allocation process can be protected, notwithstanding EPA's intent and understanding that those communications are confidential and should be protected from disclosure.

As EPA has acknowledged in its letters regarding the process, in particular its letter dated September 11, 2018, "EPA supports the confidentiality of documents and communications generated for the allocation, including EPA's comments and communications with the allocator."

---

[4] Courts routinely enter similar protective orders using their authority under Rule 26(c). For example, in *Lesal Interiors v. Resolution Trust Corp.*, 153 F.R.D. 552 (D.N.J. 1994) the plaintiff sought discovery of settlement negotiations taking place in a separate litigation. The court granted the defendant's motion for a protective order, highlighting the court's unwillingness to "jeopardize a judicially-supervised settlement process that appears to possess a significant likelihood for benefitting many." *Id.* at 564; *see also Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986); *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 681 (D.N.J. 1989) (emphasizing the law's favorable disposition toward the voluntary settlement of litigation and CERCLA's specific preference for such resolution); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) ("[P]rotective orders over discovery and confidentiality orders over matters concerning other stages of litigation are often used by courts as a means to aid the progression of litigation and facilitate settlements.").

ECF No. 370-6 at 3. The parties to the Allocation were all required to enter into a confidentiality agreement. *Id.* Further, and contrary to Occidental's assertions, EPA also entered into an agreement containing confidentiality provisions governing the Protected Materials and Communications, including communications between the Allocator and his team and EPA.[5]

The Allocation Work Plan similarly states that "all allocation communications"—including communications with EPA or the DOJ—"will be held confidential pursuant to the provisions of the ADR Act." ECF No. 370-5 at 4. However, Occidental argues that *all* materials provided to EPA from the Allocator for any reason then necessarily lose their confidential status. Information shared by the Allocator with EPA should not potentially lose its confidential status or become discoverable,[6] but with the limitation that, as to future EPA settlements with a party of the EPA allocation, Occidental would not be foreclosed from arguing that it is entitled to such information EPA relied upon in entering into that settlement. But for purposes of this litigation, Occidental has not identified any compelling justification for it to obtain or use such information. There is no reason to allow Occidental, to obtain through discovery in this litigation, Protected Materials and Communications provided to EPA from the Allocator simply because such materials have been provided to EPA.

---

[5] As explained by EPA in its letter dated September 11, 2018, "EPA addressed confidentiality in the Agency's prime contract with CSRA (through which EPA retained the allocation team at AlterEcho), and in the SOW pursuant to which AlterEcho is performing the allocation. The SOW contains the confidentiality terms in EPA's agreement with CSRA-AlterEcho and references the ADR Act. Section 2.0 of the SOW states, in relevant part: Unless otherwise noted herein, all allocation related communications by the CSRA Team involving the OU2 PRPs or representatives of EPA or DOJ, individually or in groups, will be held confidential pursuant to the provisions of the ADR Act of 1996, 5 USC 574." ECF No. 370-6 at 2.

4

### III. Occidental misreads the Protective Order to argue that it will preclude it from obtaining information it otherwise may be entitled to as a basis for challenging EPA settlements.

Occidental misconstrues the scope of the proposed Protective Order to set up a specious strawman argument that the proposed Protective Order would impede its ability to obtain the information it would otherwise be entitled to regarding settlements resulting from the EPA Allocation. *See* ECF No. 449 at 2-4. This spurious assertion is inconsistent with the text of the proposed Protective Order and contrary to statements contained in the SPG's opening brief. In fact, nothing in the proposed Protective Order precludes Occidental from later obtaining the information necessary to assess and potentially challenge settlements, if any such settlements are ever reached.

Paragraph 9 of the proposed Protective Order specifically rebuts Occidental's contention that the Protective Order would prohibit Occidental's ability to challenge settlements: "Neither this Order nor any party's consent to entry of this Order shall constitute a waiver of any party's right to object, on any grounds, to implementation of any settlement negotiated through a Mediated Settlement Process or to object to entry of an order barring contribution or cost recovery claims as a result of any Settlement achieved through a Mediated Settlement Process." The Protective Order also specifically identifies a broad swath of documents that are deemed "Unprotected Materials and Communications" and are therefore discoverable. *See* Protective Order ¶ 1(h).

Further, in the SPG's Brief in Support of the Protective Order, it "acknowledge[d] that to challenge any [] settlement [with EPA], parties to this litigation (including Occidental) may have the right to request documents, communications, and other materials contained within EPA's administrative record." ECF No. 371 at 16.

5

### IV. Occidental also misreads the Protective Order to argue that it cannot obtain any information through FOIA requests.

Occidental also misreads the proposed Protective Order's treatment of FOIA requests and claims that the SPG's proposed Protective Order would "permanently bar [Occidental], or any other party to this litigation, from seeking, for any purpose, *any* information related to the Batson [Allocation] Process through discovery in future cases and even the Freedom of Information Act." Opp. at 2 (emphasis in original). In support, Occidental conveniently cites to only the first sentence of paragraph 5 of the proposed Protective Order, which reads: "No party to this litigation shall request or seek to compel production of any Protected Materials or Communications or Unprotected Materials and Communications exchanged as part of the Mediated Settlement Process through the Freedom of Information Act." *Id.* However, paragraph 5 does not stop there—tellingly, Occidental completely omits the second sentence, which reads: "This does not limit parties from otherwise using the Freedom of Information Act or State equivalent to obtain such materials that were otherwise in the possession of a regulatory agency, including, but not limited to, EPA, aside from those materials being submitted or exchanged as part of a Mediated Settlement Process."

Thus, the Protective Order already includes provisions that would allow Occidental to obtain non-confidential information necessary to challenge and object to potential settlements.[7] Occidental provides no justification for why FOIA rights would extend to obtain confidential materials it could not obtain through discovery. And while Occidental argues that no FOIA

---

[7] Further, as discussed above, Occidental will be allowed to obtain the publicly-available administrative record to assess and potentially challenge settlements between EPA and parties participating in the EPA Allocation. If Occidental feels the administrative record is insufficient, it can request EPA supplement the administrative record or argue that because the administrative record is incomplete, the proposed settlement is inadequately supported.

6

exemption applies to protect the materials covered by the Protective Order, Occidental applies its analysis to materials that the proposed Protective Order does not seek to protect (*e.g.*, documents contained in EPA's administrative record).

As to the materials covered by the proposed Protective Order, a specific FOIA exemption does apply. FOIA Exemption 5 covers internal agency communications that are legally "privileged" and federal courts have recognized a federal common law "settlement privilege."[8] Further, even if FOIA Exemption 5 did not apply to the materials at issue, under Rule 26(c) and as allowed by its equitable power, the Court has authority to limit parties' ability to use FOIA requests in circumstances like these.[9]

In addition, as part of the meet and confer process prior to the filing of the motion,

---

[8] *See, e.g., Goodyear Tire & Rubber v. Chiles Power Supply*, 332 F.3d 976 (6th Cir. 2003); *Allen Cty. v. Reilly Indus., Inc.*, 197 F.R.D. 352, 353 (N.D. Ohio 2000); *Cook v. Yellow Freight Sys.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990); *Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445, 449-50 (S.D.N.Y. 1985); *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 159-60 (E.D.N.Y. 1982).

According to the Federal Office of Information Policy (the "OIP"), the recognition of a "settlement negotiations" privilege in federal case law, "provides the basis for its full incorporation into Exemption 5 of the FOIA." *See* DOJ, "FOIA Update: OIP Guidance: Protecting Settlement Negotiations," Vol. VI No. 4 (1985), available online at https://www.justice.gov/oip/blog/foia-update-oip-guidance-protecting-settlement-negotiations. This Guidance explicitly rejected cases that refused to recognize the settlement privilege, including cases relied on by Occidental—*see County of Madison v. Department of Justice*, 641 F.2d 1036, 1040 (1st Cir. 1981) and *NAACP Legal Defense Fund & Education Fund, Inc. v. United States Department of Justice,* 612 F. Supp. 1143 (D.D.C. 1985)—stating that "what each of these adverse decisions failed to consider is that there now exists a distinct 'settlement negotiations' privilege, one that has been specifically recognized in a recent line of cases." *Id.*

[9] The Supreme Court and the Third Circuit have recognized that courts have the equitable power to issue protective orders to limit FOIA requests beyond the enumerated FOIA exemptions. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1973) (recognizing that FOIA does not "limit the inherent powers of an equity court"); *Pansy*, 23 F.3d at 791 (3d Cir. 1994) (noting that "courts have the power to trump freedom of information laws") (citing *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375 (1980) (holding that a federal agency that had been previously ordered by a court not to disclose information was not required to release such information under the FOIA)); *see also F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir.

7

Occidental agreed to nearly identical language regarding limitations on FOIA and it has not explained why its position has now apparently changed. In Occidental's letter opposing the SPG's request to file a brief in support of a Protective Order (ECF No. 284), Occidental attached as Exhibit A a draft protective order that it offered to enter into. ECF No. 284, at 2. Paragraph 5 of that protective order is nearly identical to the paragraph 5 of the Proposed Protective Order and reads as follows:

> No party to this litigation shall request or seek to compel production of any Protected Materials and Communications through the Freedom of Information Act. This does not limit parties from otherwise using the Freedom of Information Act or State equivalents to obtain such materials that were otherwise in the possession of a regulatory agency, including, but not limited to, EPA, aside from those materials being submitted or exchanged as part of a Mediated Settlement Process.

ECF No. 284-1, at pp. 16-17 (pp. 6-7 of the attached proposed protective order) (internal redline edits omitted)). The limitations on FOIA requests were apparently intended and acknowledged by Occidental—it made redline edits to this paragraph and its transmittal message specifically referenced these limitations as "noncontroversial": "The other edits should be noncontroversial. For instance, the reference to FOIA in the Compulsory Process definition is deleted because FOIA requests are addressed in paragraph 5." ECF No. 284-1 at p. 1 (included in Sept. 19, 2018 letter from Mr. Kaim (counsel for Occidental) to Mr. Erickson (common counsel for the SPG)).

---

1982) (holding that a protective order could prevent the disclosure of documents under FOIA because FOIA did not disrupt the court's equitable powers); *In re Nat'l Prescription Opiate Litig.*, 325 F. Supp. 3d 833, 840 (N.D. Ohio 2018) (holding that a court's protective order prevented the disclosure of documents under FOIA). For the reasons addressed above, this case presents precisely the circumstances where the Court should use its equitable powers to provide limited restrictions on the parties in this action.

**V.     The "standard" protective order Occidental wants is insufficient and will not adequately protect the EPA Allocation process.**

Occidental's opposition manufactures non-existent disputes to justify its rewrite of the SPG's proposed Protective Order, a rewrite that would destroy the confidentiality of the Protected Materials and Communications. Occidental asserts that the Court's "standard" protective order should be sufficient as a "compromise," but it would not be. The proposed Protective Order is already a compromise between Occidental and the SPG resulting from months of negotiations. A conventional protective order would nullify the confidentiality EPA intended and the SPG is seeking because it would expose Protected Materials and Communications to discovery. Therefore, the Court should simply consider and rule on the SPG's Motion for a Protective Order and not accept Occidental's proposed "compromise."

## CONCLUSION

For the reasons set forth above, and in the SPG's motion and brief in support, the SPG respectfully requests the Court enter the requested Protective Order (ECF No. 370-4).


Dated: December 7, 2018          /s/ Joseph H. Blum
                                 David R. Erickson (admitted *pro hac vice*)
                                 Joseph H. Blum (NJ Bar No. 010211984)
                                 SHOOK, HARDY & BACON LLP
                                 2555 Grand Boulevard
                                 Kansas City, MO 64108-2613
                                 Telephone: 816.474.6550
                                 *Common Counsel for the Small Parties Group*