**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>21ST CENTURY FOX AMERICA, INC., *et al.* )<br>)<br>Defendants. )<br>) | Civil Action No. 2:18-cv-11273-MCA-JAD<br><br>Electronically Filed<br><br>**JOINT SAMPLING PROTOCOL** |

This Joint Sampling Protocol ("the Protocol") shall be followed for the sample collection, handling, analytical testing, and geophysical investigations ("Sampling" or "Sample" or "Sampled") of environmental media at any upland property not directly in or under the Lower Passaic River, including but not limited to properties directly proximate to the Lower Passaic River, locations upriver of the Dundee Dam, wetlands, creeks, drainage areas, riparian areas, and sewers that ultimately lead to the Lower Passaic River ("Upland Site"), and for Sampling of river, tributary, or streambed sediments or any water column, inclusive of all portions of the river owned by the federal and/or state government ("River Sediment/Water Column Sampling" or "River Sediment/Water Column Sampling Site"), at each location identified by the parties pursuant to paragraphs 11 and 12 of the Pre-26(f) Conference Scheduling Order.

**Application of Protocol**

1.      This Protocol shall apply to all Sampling performed after the filing of the litigation for purposes of proving or defending a claim in this litigation, whether or not such Sampling is performed pursuant to Fed. R. Civ. P. 34(a)(2) and/or Fed. R. Civ. P. 45.

2.      The Protocol shall not apply to environmental activities being performed for purposes other than this litigation, including, but not limited to, site operations, site renovations or construction activities, due diligence activities by parties or non-parties, remediation, permit monitoring and/or investigation activities required by the New Jersey Department of Environmental Protection ("NJDEP") or United States Environmental Protection Agency ("EPA"). A party performing any of these activities conducted outside of this litigation is not required to provide notice to the parties in this litigation for such activities and those activities do not subject the parties in this litigation to any spoliation claim. This Protocol also shall not apply to any activities performed by a party to this litigation on an Upland Site that such party owns, occupies by lease, or over which it has control. No adverse inference nor additional burden shall be imposed on admissibility of Sampling results for failure to follow the provisions of this Protocol where the Sampling was conducted prior to entry of this Protocol or where the Sampling is conducted during the course of this litigation, but not conducted because of this litigation.  This paragraph does not affect any party's obligation

1

to retain and produce information, including but not limited to results of sampling conducted outside of this Protocol, in discovery.

3. With respect to non-parties to the litigation, this Protocol does not supplant the requirements of Federal Rules of Civil Procedure 34 and 45 for third-party subpoena and party notice requirements.

4. Paragraphs 6 through 32 shall apply only to Upland Site Sampling. Paragraphs 33 through 42 shall apply only to River Sediment/Water Column Sampling.  Sampling conducted in the riparian zone of an upland site shall follow the requirements of this Protocol applicable to Upland Site Sampling, regardless of the media or type of Sampling to be performed.

5. Any party that performs Sampling pursuant to this Protocol shall not disseminate or discuss the Sampling or Results (as defined below) except as permitted by the Agreed Confidentiality Order and Protocol for Production of Documents and Electronically-Stored Information or by law. Any documentation created pursuant to this Protocol shall be marked and treated as Confidential in accordance with the Agreed Confidentiality Order and Protocol for Production of Documents and Electronically-Stored Information.

**Upland Site Sampling Requirements**

6. On or before _____ \_\_, 2019, the party seeking to Sample an Upland Site ("Requesting Party") will deliver via certified mail to the Upland Site owner, whether or not a party to this litigation ("Recipient"), and to the party or parties to this litigation who is or are alleged to have caused or contributed to the release, discharge, or disposal of one or more of the eight (8) Lower Passaic River Contaminants of Concern (*i.e.*, poly-chlorinated biphenyls ("PCBs"), mercury, dioxins and furans, polyaromatic hydrocarbons ("PAHs"), DDT, dieldrin, lead, and copper) (collectively, the "COCs") at the Upland Site (an "Interested Party") a Request For Permission To Enter Upon Land which is similar to Attachment A ("Request"). Contact information for each Recipient that is involved in this litigation is attached as Attachment B.  Also on or before that date, the Requesting Party shall provide the Request to the following: (a) all counsel of record; (b) the New Jersey Licensed Site Remediation Professional ("LSRP") of record, if any, for the Upland Site; (c) the New Jersey Department of Environmental Protection case manager, if any, for the Upland Site; and (d) the EPA project manager, if any, for the Upland Site.

7. The Request will include a general description of the area(s) of the Upland Site that Requesting Party intends to Sample, the media that Requesting Party intends to Sample, and the COCs, any tracers, congeners, or isomers of those COCs, and analytes related to the identification of sources of contamination by COCs ("Sampling Analytes") for which each Sample collected will be analyzed and validated results reported by the laboratory conducting the analysis after completing appropriate QA/QC procedures ("Results"), subject to modification, in the Workplan submitted under Paragraph 13, below, after conducting the walk-through and information review required to be conducted pursuant to Paragraph 12, below. The Request will also include a copy of this Protocol and a Statement of Qualifications of the environmental contractor ("Consultant") proposed by Requesting Party to perform a walk-through inspection and Sampling that will take place at the Upland Site ("Statement of Consultant's Qualifications").  The Consultant shall not be a New Jersey LSRP, and the lack of licensure as an LSRP shall not be argued or offered as a basis

2

to challenge the collection or admissibility of sampling data nor the qualifications of any expert who collected or processed such sampling data.

8. Within thirty (30) business days of delivery of the Request, the Recipient and any Interested Party shall provide the following information to the Requesting Party:

    a. The current status, in summary form, of any scheduled environmental investigation or remediation being, or planned to be, conducted at the Upland Site, including investigation and remediation pursuant to compliance with the New Jersey Spill Compensation and Control Act, Industrial Site Recovery Act ("ISRA"), NJDEP's Voluntary Cleanup Program, CERCLA, or Resource Conservation and Recovery Act (RCRA);

    b. Copies of any issued Response Action Outcome, Remedial Action Permit, Deed Notice, or No Further Action Letter, as defined and/or interpreted by NJDEP and its regulations, issued for the Upland Site in the Recipient's or Interested Party's possession, custody or control; and

    c. The name of the individual(s) with whom scheduling and access to the Upland Site should be discussed ("Designated Site Contact").

9. The Recipient or Interested Party has the right, but not the obligation, to request in writing within ten (10) days of delivery of the Request, that the Requesting Party provide it with a written response containing the following information:

    a. An identification of the specific area(s) of the Upland Site which Requesting Party intends to Sample under the Request, including a map;

    b. An explanation of the reasons for Requesting Party's Request for Sampling of the Upland Site, including identification of the parameters for which each Sample collected will be analyzed and Results reported. The parameters that can be potentially analyzed for and Results reported shall be limited to the Sampling Analytes, as defined in paragraph 7, above.

10. The Statement of Consultant's Qualifications will demonstrate that Consultant possesses the requisite education, training, and experience to perform the Sampling at the Upland Site and shall include Curriculum Vitae for Consultant's personnel that will perform walk-through inspections and Sampling. As noted in paragraph __, above, the Consultant shall not be a New Jersey LSRP, and the lack of licensure as an LSRP shall not be argued or offered as a basis to challenge the collection or admissibility of sampling data nor the qualifications of any expert who collected or processed such sampling data. Moreover, the Statement of Consultant's Qualifications will include Endorsements to each Insurance Policy showing that Consultant, any subcontractors retained by Consultant, or Requesting Party possesses at a minimum insurance in the following types and amounts issued by insurance carriers with a minimum AM Best policy holder rating of "B+":

    a. Workers' Compensation and Employer's Liability insurance as required by the laws of the State of New Jersey;

    b. Comprehensive Automobile Liability insurance for vehicles used by Consultant in performance of the work under this Protocol, with bodily injury and property damage limits of at least $1,000,000 each occurrence, combined single limit;

    c. Commercial General Liability insurance with bodily injury and property damage limits of at least $2,000,000 each occurrence and $15,000,000 in the aggregate; and

    d. Pollution liability and impairment insurance with limits of at least $2,000,000 per occurrence.

Insurance coverage under subsections 9.a through 9.d are the minimum insurance requirements and shall not limit the owner and/or operator of a particular Upland Site from requiring additional, reasonable insurance coverage.

The Consultant shall provide to Recipient at least thirty (30) days written notice before any cancellation, modification or reduction of insurance becomes effective (except in the event of non-payment of premium, in which case ten (10) days prior written notice shall be given). Any insurance carried by Recipient or its tenant(s) shall be secondary and non-contributory to that carried by Consultant. Consultant and/or Requesting Party will cause its insurers to issue appropriate waivers of subrogation rights as to Recipient. With respect to polices under subsections 9.c and 9.d and any related excess coverage, Recipient and any tenant(s) of Recipient on the Upland Site shall be listed as an additional insured and loss payee under such policies.

11.    On or before the expiration of ten (10) business days after receipt of service of the Request, any other party to this litigation may provide to Requesting Party an appropriate point of contact for participating in the Sampling ("Other Party Contact"). Such notices shall include the name, address, telephone number, and e-mail address of the Designated Site Contact, Interested Party, and/or the Other Party Contact.

12.    Consultant will provide the Designated Site Contact, the Interested Party, and Other Party Contact with fourteen (14) business days advance notice of the date and time when Consultant intends to access the Upland Site to conduct a walk-through inspection for the purposes of: (i) understanding the specific layout of the Upland Site; (ii) identifying and photographing any potential Sampling areas; (iii) identifying underground structures, conveyances, and/or utilities; and/or (iv) observing and photographing other conditions that might have the potential to restrict any of the Sampling activities at the Upland Site. To assist Consultant in identifying appropriate locations, media, and analytes to be Sampled, the Designated Site Contact in control of the site will provide to Consultant at least two (2) business days in advance of the date of the walk through inspection the following documents and/or information, to the extent available in the on-site active file and known without inquiry to the Designated Site Contact or Recipient's representative with day-to-day responsibility for the management and operation of the entire Site: site plans, process plans, aerial photographs, and information regarding the boundary lines of the Site, including information regarding any known underground structures such as tanks, piping, water, telephone, electric, gas, sewer, and other utility lines, all of which may be marked and treated as Confidential in accordance with the Agreed Confidentiality Order and Protocol for Production of Documents and Electronically-Stored Information. The information required to be provided under this

4

paragraph is limited to that which is within the current actual (as opposed to the implied or constructive) knowledge of Recipient's Designated Site Contact or Representative. The provision of information under paragraph 12 does not relieve Consultant of its obligations under paragraph 12, below, nor its obligations to use reasonable diligence. The use of photography by Requesting Party and/or its Consultant, the Interested Party, and the Other Party Contact is subject to any Site-specific security, trade secret, safety, and confidential limitations on the Upland Site and must be shared with the Recipient. It must also be treated as Confidential in accordance with the Agreed Confidentiality Order and Protocol for Production of Documents and Electronically-Stored Information. All parties that take photographs or video of any Sampling activities must produce copies of the same to the Recipient, Requesting Party and all other parties to this litigation. The Designated Site Contact, the Interested Party, Other Party Contact, and/or their designees shall be invited to accompany Consultant during any walk-through inspections.

13. After the walk-through inspection, Consultant will prepare a Sampling Workplan ("Workplan"). The Workplan, which will be delivered to the Designated Site Contact, the Interested Party, the Other Party Contact, and all parties to this litigation and will include the following:

    a. a map that delineates the areas on the Upland Site that Consultant intends to Sample;

    b. an Upland Site-specific protocol for Sampling the Consultant will undertake stating which of the Sampling Analytes for which each Sample collected will be analyzed and the Results reported, number of Samples to be collected, volume of media to be collected with each Sample, the proposed depth of at which Samples will be collected, and the Upland Site location of each Sampling point;

    c. any impact that the Workplan may have on any institutional and/or engineering controls and actions to comply with conditions on engineering and/or institutional controls and RAPs;

    d. a specific protocol for following any notice requirements for piercing, removing, penetrating, or otherwise disturbing any engineering controls at the Upland Site and schedule for repair and reinstallation;

    e. the manner in which any engineering controls that are, or may be, impacted by the Workplan will be reinstalled and/or repaired to their pre-Sampling condition with the direct oversight and approval of the LSRP of record for the Upland Site, and/or NJDEP or EPA, as applicable;

    f. Standard Operating Procedures that will identify the Consultant personnel who will be conducting the Sampling and the hours during which the Sampling will take place;

    g. Schedule for when the Consultant personnel will be at the Upland Site and an expected timetable for completion of the Sampling and Results;

    h. a Quality Assurance Plan;

    i.  a Health and Safety Plan in accordance with the Health and Safety Plan requirements stated in: 1) the most recently adopted and applicable general industry (29 CFR 1910) and construction (29 CFR 1926) standards of the Federal Occupational Safety and Health Administration ("OSHA"), U.S. Department of Labor; 2) any other Federal, State or local statutes or regulations that are applicable to the Work; and 3) any Deed Notice(s) applicable to a property;

    j.  Sampling Chain of Custody Procedures and document forms;

    k.  identification of the laboratory or laboratories to be used to perform Sample analyses and the methodologies to be employed in such analyses; and

    l.  identification of the firm being utilized for independent third-party data validation of the laboratory data.

14.    On or before the expiration of forty-five (45) days after receipt of service of the Workplan, Recipient, and any Interested Party, must identify to Requesting Party, in writing, any material and substantive objections to the Workplan ("Objections to the Workplan"). Objections to the Workplan may include, but are not limited to, objections regarding the qualifications of Consultant, the scope and/or timing of the Workplan, and/or any elements of the Workplan. In addition, the Recipient, and/or the Interested Party may include in Objections to the Workplan any objection they may have to the performance of any Sampling at all. By permitting the walk-through and complying with the other provisions of this Protocol, no Recipient or Interested Party waives any right to object to Sampling *in toto*. Recipient or Interested Party has the right to challenge any Sampling proposed in the Workplan based on Recipient or Interested Party having Results from Sampling in substantially similar areas. Requesting Party, Recipient, and Interested Party will engage in good faith negotiations to determine if those results alleviate the need for Sampling. Requesting Party, Recipient, and Interested Party will confer regarding Objections to the Workplan within ten (10) days of the submission of the objections. If Requesting Party, Recipient, and Interested Party are unable to resolve any dispute after conferring under Local Civil Rule 37.1, the dispute shall be submitted to the Magistrate as provided by Local Civil Rule 37.1. The Requesting Party must submit any unresolved objections to the Magistrate within twenty-one (21) days of receiving the Objections to the Workplan.

15.    Prior to entry on the Upland Site, Consultant, Interested Party, and Other Party Contact will participate in any of the Recipient's (or Recipient's tenant(s)) existing and applicable security and safety training or orientation for the Upland Site, including Upland Site-specific non-disclosure requirements, as is reasonable and, without limitation to Paragraph 22 below, will abide by all applicable and relevant site-specific health and safety protocols in use at the Upland Site regarding training, the use of personal protective equipment and site specific security obligations. Further, to the extent that Recipient or its tenant(s) has requirements to protect underground facilities, utilities, and other fixtures on the property that exceed the precautions otherwise required by applicable regulatory authorities, Consultant, Interested Party, and/or the Other Party Contact shall abide by those same protections and standards.

16.    Prior to conducting Sampling pursuant to the Workplan, Requesting Party shall obtain all necessary permit(s), approvals, licenses, etc., if any, from EPA and NJDEP and any other

applicable local, state or federal governmental agency and make any requisite notifications, and provide copies to Recipient, the Interested Party, and the Other Party.

17. At least five (5) business days prior to the date agreed upon for implementing the Workplan, the Designated Site Contact, the Interested Party, and/or the Other Party Contact shall notify Consultant if they want Consultant to secure for them split Samples during the Sampling or want to be present and collect split Samples themselves. Assuming receipt of such advance notice Consultant will collect a Sample, utilizing the method proposed in the Workplan, so as to collect as many split Samples as the method will allow in order to accommodate the requests for split Samples received. If a split Sample is requested in advance, representatives of the Interested Party and/or Other Party Contact requesting the split Sample must accompany Consultant during Sampling and provide adequate Sampling containers for the split Sample. Upon creation, the split Samples will be provided, as applicable, to the Recipient, the Interested Party, and/or the Other Party Contact, which will be solely responsible for preparation and handling of the Sample, for arranging for timely laboratory analysis of the split samples (if it so chooses), and for costs of Sample analysis and reporting. The Designated Site Contact, the Interested Party, and/or the Other Party Contact shall have the right to secure split Samples to verify the Results obtained from analysis of Samples taken by the Requesting Party pursuant to the Workplan.

18. Each Sample may be subject to a limitation on split Samples. The Requesting Party, Interested Party, Other Party Contact, and Recipient may negotiate a number of split Samples and, if needed, a second co-located Sample can be taken and the two composited so that sufficient volume is available for all split Samples requested. The Requesting Party, Interested Party, Other Party Contact, and Recipient will work to coordinate and try to minimize the number of split Samples if possible. If, for any given Sample, insufficient material exists from which to create the number of splits requested by virtue of the nature of the media to be Sampled and Sampling method employed pursuant the Workplan, the Sample material shall be distributed in accordance with the following priority, until it runs out: (1) the Requesting Party; (2) any party alleged by another party to be liable for discharges at or from the Upland Site; (3) the Recipient, if any; (4) Other Party Contact; and (5) any other party to this litigation (in a priority based on the timing of Consultant's receipt of each party's request for a split Sample). In the event that no splits can be distributed or distribution cannot be made to the Recipient or any Interested Party, the Recipient or Interested Party shall reserve its right to challenge the Result(s) from which no split could be taken; however, the unavailability of a split Sample, on its own is, not a ground to challenge the validity of a Sample. If a local, state, or federal agency requests a split sample, the agency will be provided with the same opportunity to request, take, and challenge Results from a split sample as other parties. The agency will be given the same priority as Recipient in distributing any limited split samples.

19. Requesting Party shall provide a copy of all field notes, chain of custody documents and Results within thirty (30) days of receipt to the Recipient, the current property owner, Designated Site Contact, the Interested Party, and/or the Other Party Contact and all parties to the litigation. Where Results are validated, only copies of the validated Results will be provided. If no validation occurs, or if validation otherwise fails, the unvalidated Results shall be provided. Any parties receiving a split Sample are not required to perform any analysis of their split Samples until they receive the Results of the sample(s) taken by the Requesting Party. Each party that receives split samples and has them analyzed shall, within 30 days of receiving the validated Results, provide

all such Results to Requesting Party and Recipient, Designated Site Contact, the Interested Party, and/or the Other Party Contact and all parties to the litigation.

20. Sampling analysis will be performed by laboratories certified to perform the specific analyses requested by one of the following programs: National Environmental Laboratory Accreditation Program (NELAP), American Association for Laboratory Accreditation (A2LA), or a certification issued by the New Jersey Department of Environmental Protection (NJDEP).

21. In scheduling a date and time for entry to execute the Workplan and conduct the Sampling, Requesting Party agrees that Consultant shall perform the Sampling at a time and in a manner that does not unreasonably interfere with any use of the Upland Site. Recipient and any other parties agree to conduct themselves in a manner so as not to unreasonably interfere with Consultant's access to the Upland Site and ensuing Sampling activities, including split Sampling activities. To the extent that Consultant's work unreasonably interferes with Upland Site usage, the Recipient may require Consultant to cease Sampling and reserves the right to seek compensation from the Requesting Party for such interference; Requesting Party reserves all rights to challenge any such claims.

22. Without limitation of Recipient's obligation to cooperate to identify known underground structures, Requesting Party shall contact, or shall cause its Consultant, prior to conducting any work on the Upland Site to contact a private locator and, where necessary, New Jersey One Call to obtain a mark out at the Upland Site to identify subsurface pipelines, electric power cables and the like under its jurisdiction (together with underground structures identified by Recipient, "Subsurface Structures"). When appropriate for safety or as requested by an Upland Site property owner or tenant, a soft dig will be undertaken in advance of any drilling, coring or excavation. Where Subsurface Structures are detected, Requesting Party and Recipient shall mutually agree to drilling, coring, or excavation locations and depth. Further, Requesting Party shall be responsible to undertake repair and pay any and all costs, damages, and expenses resulting from damage to any Subsurface Structures caused by Consultant, provided, however, that Requesting Party shall have no such responsibility as to any underground structures of which the Recipient knew but did not disclose. For the purpose of this Paragraph 22, the Recipient's knowledge of any underground structures shall mean the current actual (as opposed to implied or constructive) knowledge of the Recipient's representative with day-to-day responsibility for the management and operation of the entire Site.

23. All activities performed pursuant to this Protocol at the Upland Site shall be done in a safe, reasonable, workmanlike and professional manner in conformity with the standards exercised by professional environmental consultants performing similar work and in accordance with all applicable laws and regulations of any federal, state and local governmental or regulatory entity, including without limitation the Occupational Safety and Health Act (29 U.S.C. 651, et seq.), and in accordance with the Recipient's (or Recipient's tenant(s)') health and safety plan and all applicable safety and security requirements of the Upland Site. Requesting Party shall obtain and maintain all required governmental permits, licenses and approvals for the work conducted pursuant to this Protocol, if any. Where required, Recipient shall cooperate by providing appropriate authorizations and signatures or taking any other similarly ministerial steps to assist Requesting Party in securing any permit, license, or approval. Requesting Party shall be solely responsible to pay any fees or charges assessed by the agency responsible for issuing such permit,

license or approval, and for the cost of any activities required to be conducted by the Site LSRP, NJDEP, or EPA, if any. Requesting Party shall also reimburse or otherwise absorb the out-of-pocket expenses incurred by the Recipient in connection with activities related to responding to the Sampling on its Upland Site. All costs incurred by the Requesting Party pursuant to Sampling under this Protocol are not recoverable as costs in this litigation or otherwise.

24. Requesting Party, Recipient and any Other Party to this litigation seeking split Samples, may, to the extent set forth in the Workplan, secure Samples from any existing wells on the Upland Site to be Sampled. If such wells do not exist or are otherwise not suitable for Requesting Party's Sampling program, Requesting Party may, subject to Paragraph 16 and Paragraph 24, and other applicable provisions of this Protocol, install temporary well-points and/or temporary wells and properly abandon and close such wells following use as soon after the completion of the Sampling as possible.

25. Requesting Party shall immediately restore any areas of the Upland Site disturbed by the Sampling as close as reasonably practicable, to the condition that existed prior to such Sampling. More specifically, Requesting Party shall, at its cost and expense, repair or replace any disturbance or damage or injury caused by the Sampling to (i) the Upland Site, (ii) Subsurface Structures on the Upland Site, subject to Paragraph 21, above, and (iii) above ground structures and equipment on the Upland Site. Requesting Party shall have no obligations under this paragraph, however, with respect to damage or injury that was caused by Recipient's or any of Recipient's predecessors'-in-title or predecessors'-in-interests': (i) use and occupancy of the Upland Site; or (ii) negligence, gross negligence or willful misconduct relating to their activities on the Upland Site; and/or (iii) the negligence, gross negligence or willful misconduct of any Recipient or Interested Party that accompanies Consultant in the implementation of its work pursuant to the terms of this Protocol.

26. If a Requesting Party seeks to perform Sampling on an Upland Site that has any engineering controls, the Requesting Party must notify the LSRP of record for the Upland Site, NJDEP, EPA, and/or other state or federal agency that oversaw the implementation or installation of the engineering control, as applicable, at least thirty (30) days prior to sampling. The Requesting Party is solely responsible for restoring any such engineering controls to their pre-Sampling condition and to the satisfaction of the LSRP of record for the Upland Site, NJDEP, EPA, and/or other state or federal agency that oversaw the implementation or installation of the engineering control, as applicable, at its sole cost and expense, including any fees that may be incurred by Recipient as a result of the LSRP of record, NJDEP, and/or EPA overseeing and ultimately approving the restoration of any disturbed engineering controls at the Upland Site. The Requesting Party is also solely responsible for obtaining any requisite LSRP, NJDEP, and/or EPA approval with regard to engineering and/or institutional controls on the Upland Site.

27. Requesting Party shall be solely liable and responsible for the timely removal and proper disposal of any investigation derived waste ("IDW") generated as a result of the Sampling, and any bills of lading, manifests or shipping papers necessary for the proper off-Site disposal of such IDW wastes shall identify Requesting Party as the generator of the IDW waste. No IDW shall be returned to the borehole or Sampling location. Recipient shall have the right, but not the obligation, to approve the final off-Site disposal site for any Upland Site IDW. To the extent necessary for any IDW pending waste classification for disposal, the characterization,

9

containerization and disposal of which will be the responsibility of Requesting Party, Recipient shall cooperate to identify an appropriate safe temporary storage area for waste containers holding such IDW, but not for longer than 30 days, pending results of waste classification. Requesting Party shall take all steps reasonably necessary to secure such containers in such a manner that they do not interfere with site operations or interact with stormwater or otherwise pose a risk of damage or injury. The Recipient may request payment by the Requesting Party of a reasonable storage fee until the IDW containers are removed.

28. Neither Requesting Party nor Consultant shall suffer or permit to be enforced against the Upland Site, or any part thereof, any construction liens arising from any work performed by Requesting Party and Consultant on the Upland Site and shall discharge or remove any said liens at their own expense by bond, payment or otherwise within thirty (30) calendar days from the date of notice thereof. Without limitation of Recipients' rights and remedies, should Requesting Party fail within thirty (30) days of a written request from Recipient to pay and discharge any liens, the Recipient may, at its option, pay such lien, and all costs, expenses and other sums incurred by Recipients in doing so (including, but not limited to, Recipients' reasonable attorneys' fees) shall be paid to Recipient by Requesting Party upon written demand therefore, together with interest thereon at the maximum rate permitted by law.

29. Because the utility of any Sample is subject to specific analytical holding times set forth in regulations or technical guidance, Samples that exceed the longer of applicable analytical holding times as specified by EPA Region 2 or NJDEP data validation standard operating procedures may be destroyed (or, upon written request by Recipient or any other party to this litigation, either returned to the Recipient or provided to any other party this to this litigation). However, nothing in this paragraph shall affect a party's obligations to preserve other evidence of a Sampling event, including the Workplan, Sampling area maps, field notes, chain of custody, Sample Results, raw data, laboratory notes and/or any photographs or video taken of the event. Further, this paragraph and Protocol do not require a party to preserve samples taken outside of the Protocol's purview. Parties are not required to keep Samples taken outside of this Protocol, subject to applicable regulatory requirements, and are not subject to spoliation claims related to those Samples.

30. Requesting Party and any party that enters an Upland Site for purposes of this Protocol (generally, "Other Entry Party") shall defend, indemnify and hold harmless Recipient and any other party that has a property interest, such as in fixtures or utilities, on the Upland Site ("Other Potentially Impacted Party") and/or Interested Party from and against any and all third party claims, demands, suits actions asserted against the Recipient, Other Potentially Impacted Party, and/or Interested Party for all liabilities, losses, damages, or judgments that a third party seeks to impose on the Recipient, Other Potentially Impacted Party, and/or Interested Party, that arise from acts or omissions regarding the implementation of the Workplan, and/or Requesting Party's and Consultant's and Other Entry Party's entry upon or use or occupancy of the Upland Site pursuant to the Request, including, but not limited to, any fees, attorneys' fees, expert fees, costs, charges and/or expenses incurred by Recipient, Other Potentially Impacted Party, and/or Interested Party in the defense of any such claims, demands, suits, actions, liabilities, damages or judgments. Consultant and its or their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Protocol shall be considered a third party. Requesting Party and Other Entry Party shall have no obligation to defend, indemnify and hold harmless Recipient, Other Potentially Impacted Party,

and/or Interested Party with respect to any claims, demands, suits, actions, liabilities, losses, damages or judgments that arise out of Recipient's, Other Potentially Impacted Party's, and/or Interested Party's or Recipient's, Other Potentially Impacted Party's, and/or Interested Party's predecessors' in-title or interests' (i) use and occupancy of the Upland Site; and/or (ii) negligence, gross negligence or willful misconduct relating to their activities on the Upland Site; or (iii) the negligence, gross negligence or willful misconduct of any Recipient, Other Potentially Impacted Party, and/or Interested Party that accompanies Consultant in the implementation of its work pursuant to the terms of this Protocol. This indemnification shall in no way apply to claims brought in the above captioned action, nor entitle any indemnified party to recover its attorneys' fees for any such claims. This indemnification provision shall survive the expiration of this Agreement for any indemnifiable claims made against the Recipient, Other Potentially Impacted Party, and/or Interested Party within a period of five (5) years after Requesting Party's, Interested Party's, Consultant's, and/or Other Entry Party's entry upon or use or occupancy of the Upland Site pursuant to the Request.

31. In the event an indemnifiable third party claim is asserted against Recipient, Other Potentially Impacted Party and/or Interested Party or any of them (hereinafter "Indemnified Party") as contemplated above, Recipient, Other Potentially Impacted Party, and/or Interested Party shall provide to the Requesting Party and/or Other Entry Party prompt written notice of such claim, together with material written information relating to same. Requesting Party and/or Other Entry Party shall have the right, but not the obligation, to assume and control the defense of such claim and any settlement or compromise thereof if it confirms in writing that it will be responsible for any judgment in, and/or damages arising out of such claim, including the costs of defense, and provided that the defense of such claim by Recipient, Other Potentially Impacted Party, and/or Interested Party will not, in the reasonable judgment of Requesting Party and/or Other Entry Party, have any material adverse effect on the Recipient's, Other Potentially Impacted Party's, and/or Interested Party's business. In the event the Requesting Party and/or Other Entry Party satisfies the conditions set forth in the immediately preceding sentence and assumes and controls the defense of such claim, the Requesting Party and/or Other Entry Party shall keep the Recipient, Other Potentially Impacted Party, and/or Interested Party reasonably informed of matters relating to the claim and shall advise the Requesting Party and/or Other Entry Party prior to any settlement or compromise of the claim and agrees that it will not enter into any settlement or compromise of any claim without the Recipient's, Other Potentially Impacted Party's, and/or Interested Party's consent. Further, Recipient, Other Potentially Impacted Party, and/or Interested Party shall, at the Requesting Party's and/or Other Entry Party's cost and expense (which costs and expenses shall be limited to the actual out of pocket costs and expenses of Recipient, Other Potentially Impacted Party, and/or Interested Party), cooperate fully to assist Requesting Party and/or Other Entry Party in defense of the claim. In addition, Recipient, Other Potentially Impacted Party, and/or Interested Party shall make its employees reasonably available to the Requesting Party and/or Other Entry Party as reasonably necessary to prosecute, defend, investigate and prepare discovery responses in connection with such claim. Recipient, Other Potentially Impacted Party, and/or Interested Party shall not enter into any compromise or settlement of the claim without the prior written consent of the Requesting Party and/or Other Entry Party, which consent shall not be unreasonably withheld. Settlement or compromise of such a claim without the consent of the Requesting Party and/or Other Entry Party shall relieve the Requesting Party and/or Other Entry Party of its indemnification obligation but only with respect to the claim for which consent was not obtained.

32.     In the event that the Sampling conducted by the Requesting Party and/or Other Entry Party disturbs, pierces, or otherwise removes any portion of any engineering control at the Upland Site, which thereby results in the disturbance, release or exacerbation of any Hazardous Substance at the Site, including all substances included in the definition of that term in CERCLA, 42 U.S.C. § 9601(14) and the New Jersey Spill Compensation and Control Act, 58:10-23.11b, and subjects the Recipient, any Interested Party, or any other party responsible for undertaking any action in response including, but not limited to, conducting an environmental investigation or remediation at the Upland Site, to a claim, demand, suit, or action asserted either by any private party or any local, state or federal governmental agency, the Requesting Party and/or Other Entry Party shall defend, indemnify and hold harmless such Recipient, Interested Party, or other party from all claims, demands, suits, liabilities, losses, damages, or judgments that may be pursued or imposed as a result of the Sampling conducted by the Requesting Party and/or Other Entry Party that arise from the Requesting Party's and/or their Consultant's and/or Other Entry Party's entry upon, use or occupancy of the Upland Site pursuant to the Request, including, but not limited to, any fees, attorneys' fees, expert fees, LSRP fees, costs, charges and/or expenses incurred by such Recipient, Interested Party, or other party responsible for conducting an environmental investigation or remediation at the Upland Site in the defense of any such claims, demands, suits, actions, liabilities, damages or judgments.

33.     No party shall, without giving at least fifteen (15) days advance notice to all parties to this litigation, make any physical change to a property on which sampling under this Protocol has been sought if that change would unreasonably interfere with potential future sampling efforts, without providing the required notice.

**River Sediment/Water Column Sampling Requirements**

34.     On or before February __, 2019, any party seeking to perform River Sediment/Water Column Sampling (the "Sampling Party") will deliver a Sampling Notice to the following: (a) all counsel of record; (b) EPA; (c) Army Corps of Engineers; (d) NJDEP; (e) the United States Coast Guard, or any other local, state or federal governmental agency that is required to be notified.

35.     The Sampling Notice shall be similar to Attachment B and include:

   a. A general description of the area(s) and the media that the Sampling Party intends to Sample, and the Sampling Analytes to be analyzed for. The parameters that can be potentially analyzed for and Results reported shall be limited to the Sampling Analytes, as defined in paragraph 7, above.

   b. A Statement of Qualifications of the environmental contractor ("Consultant") proposed by the Sampling Party to perform the River Sediment/Water Column Sampling ("Statement of Consultant's Qualifications"). The Statement of Consultant's Qualifications will demonstrate that Consultant possesses the requisite education, training, and experience to perform the Sampling described in the Sampling Notice, and shall include Curriculum Vitae for Consultant's personnel that will perform walk-through inspections and Sampling. The Consultant shall not be a New Jersey LSRP,

12

and the lack of licensure as an LSRP shall not be argued or offered as a basis to challenge the collection or admissibility of sampling data nor the qualifications of any expert who collected or processed such sampling data.

c. A Sampling Workplan ("Workplan"), which will include:

   i. a map that delineates the areas Consultant intends to Sample;

   ii. a site-specific protocol for Sampling the Consultant will undertake stating which of the Sampling Analytes for which each Sample collected will be analyzed and the Results reported, number of Samples to be collected, volume of media to be collected with each Sample, the proposed depth of at which Samples will be collected, the location of each Sampling point;

   iii. any impact that the Workplan may have on any engineering controls, including sediment caps, and actions to comply with conditions on engineering controls;

   iv. Standard Operating Procedures that will identify the personnel who will be conducting the Sampling and the hours during which the Sampling will take place;

   v. an expected timetable for undertaking and completion of the Sampling and Results;

   vi. a Quality Assurance Plan;

   vii. a Health and Safety Plan in accordance with the Health and Safety Plan requirements stated in: 1) the most recently adopted and applicable general industry (29 CFR 1910) and construction (29 CFR 1926) standards of the Federal Occupational Safety and Health Administration (OSHA), U.S. Department of Labor, 2) any other Federal, State or local statutes or regulations that are applicable to the Work, and 3) any Deed Notice(s) applicable to a property;

   viii. Sampling Chain of Custody Procedures and document forms;

   ix. identification of the laboratory or laboratories to be used to perform Sample analyses and the methodologies to be employed in such analyses; and

   x. identification of the firm being utilized for independent third party data validation of the laboratory data

d. The Request will also include a copy of this Protocol and a Statement of Consultant's Qualifications.

13

36. On or before the expiration of forty-five (45) days after receipt of the Workplan, any party to this litigation may identify to the Sampling Party, in writing, any material and substantive objections to the Workplan. Such Objections to the Workplan may include, but are not limited to, objections regarding the qualifications of Consultant, the scope of the Workplan, and/or any portion of the Workplan. In addition, any party to this litigation may include in Objections to the Workplan any objection they may have to the performance of any Sampling at all. Requesting Party, Recipient, and Interested Party will confer regarding Objections to the Workplan within ten (10) days of the submission of the objections. If the Sampling Party and any party to this litigation who objects to the Workplan or the River Sediment/Water Column Sampling described in the Sampling Notice are unable to resolve any objections after conferring under Local Civil Rule 37.1, the dispute shall be submitted to the Magistrate as provided by Local Civil Rule 37.1. The Requesting Party must submit any unresolved objections to the Magistrate within twenty-one (21) days of receiving the Objections to the Workplan.

37. All activities performed by or for Sampling Party at the River Sediment/Water Column Sampling Site shall be done in a safe, reasonable, workmanlike and professional manner in conformity with the standards exercised by professional environmental consultants performing similar work and in accordance with all applicable laws and regulations of any federal, state and local governmental or regulatory entity, including without limitation the Occupational Safety and Health Act (29 U.S.C. 651, et seq.), and in accordance with all applicable safety and security requirements of the River Sediment/Water Column Sampling Site. Sampling Party shall obtain and maintain all required governmental permits, licenses and approvals for the work conducted pursuant to this Protocol, if any. Sampling Party shall be solely responsible to pay any fees or charges assessed by the agency responsible for issuing such permit, license or approval, and for the cost of any activities required to be conducted by the Site LSRP, NJDEP, and/or EPA, if any. All costs incurred pursuant to Sampling under this Protocol are not recoverable as costs in this litigation or otherwise.

38. Prior to conducting River Sediment/Water Column Sampling, Sampling Party shall obtain all necessary permit(s), approvals, licenses, if any, from EPA, NJDEP, Army Corps of Engineers and/or any other applicable local, state or federal governmental agency, and make any requisite notifications. This includes obtaining the appropriate permits, approvals, and licenses with regard to any and all utilities, pipelines, and riparian permits. It is Sampling Party's sole responsibility to identify and avoid any applicable utility crossings located in and around the river. It is also Sampling Party's sole responsibility to identify any engineering controls, sediment caps, or other remediation designs and avoid damaging them in any manner. If any sampling is conducted above the Dundee Dam, Sampling Party shall obtain access rights from the correct property owner.

39. At least five (5) business days prior to the date agreed upon for implementation of the Workplan, any party to this litigation shall notify Consultant if they want Consultant to secure for them split Samples during the Sampling or want to be present and collect split Samples themselves. Assuming receipt of such advance notice, Consultant will collect a Sample, utilizing the method proposed in the Workplan, so as to collect as many split Samples as the method will allow in order to accommodate the requests for split Samples received. If a split Sample is requested in advance, representatives of the party that timely requested the split Sample must accompany Consultant during Sampling and provide adequate Sampling containers for the split Sample. Upon creation, the split Samples will be provided, as applicable, to representatives for the party(ies) requesting

split Samples, each of which will be solely responsible for preparation and handling of the Sample, for arranging for timely laboratory analysis of the split Samples (if it so chooses), and for costs of Sample analysis and reporting. Parties to this litigation shall have the right to secure split Samples to verify the Results of the analysis of Samples taken by the Sampling Party pursuant to the Sediment Workplan. Each party that receives split Samples and has them analyzed shall, within 30 days of receiving the validated Results, provide all Results to all parties to this litigation.

40. Each Sample may be subject to a limitation on split Samples. The Sampling Party and other parties requesting split Samples may negotiate a number of split Samples and, if needed, a second co-located Sample can be taken and the two composited so that sufficient volume is available for all split Samples requested. The Sampling party and other parties requesting split Samples will work to coordinate and try to minimize the number of split Samples if possible. If, for any given Sample, insufficient material exists from which to create the number of splits requested by virtue of the nature of the media to be Sampled and Sampling method employed pursuant to the Workplan, the Sample material shall be distributed in in accordance with the following priority, until it runs out: (1) any party alleged by another party to be liable for discharges at or from the River Sediment/Water Column Sampling Site, (2) any other party to this litigation (in a priority based on the timing of Consultant's receipt of each party's request for a split Sample). In the event that no splits can be distributed or distribution cannot be made to the parties requesting split Samples, those parties shall reserve their right to challenge the Result(s) from which no split could be taken; however, the unavailability of a split Sample, on its own is, not a ground to challenge the validity of a Sample. Sampling Party agrees to provide, within 30 days of its receipt, a copy of all field notes, chain of custody and analytical results of River Sediment/Water Column Sampling to the other parties that requested split Samples. Where Results are validated, only copies of the validated Results will be provided. If no validation occurs, or if validation otherwise fails, the unvalidated Results shall be provided. If a local, state, or federal agency requests a split sample, the agency will be provided with the same opportunity to request, take, and challenge Results from a split sample as other parties. The agency will be given the same priority as any other party to this litigation in distributing any limited split samples.

41. Sampling analysis will be performed by laboratories certified to perform the specific analyses requested by one of the following programs: National Environmental Laboratory Accreditation Program (NELAP), American Association for Laboratory Accreditation (A2LA), or a certification issued by the New Jersey Department of Environmental Protection (NJDEP).

42. Because the utility of any Sample is subject to specific analytical holding times set forth in regulations or technical guidance, Samples that exceed the longer of applicable analytical holding times as specified by EPA Region 2 or NJDEP data validation standard operating procedures may be destroyed (or, upon written request by a party to this litigation, transferred to that party). However, nothing in this paragraph shall affect a party's obligations to preserve other evidence of a Sampling event, including the Workplan, Sampling area maps, field notes, chain of custody documents, Sample Results, raw data, laboratory notes and/or any photographs or video taken of the River Sediment/Water Column Sampling event.

43. In the event that the Sampling conducted by the Sampling Party disturbs, pierces, or otherwise removes any portion of any engineering control at the River Sediment/Water Column Sampling Site, which thereby results in the disturbance, release or exacerbation of any Hazardous

15

Substance at the River Sediment/Water Column Sampling Site, including all substances included in the definition of that term in CERCLA, 42 U.S.C. § 9601(14) and the New Jersey Spill Compensation and Control Act, 58:10-23.11b, and subjects any party responsible for conducting an environmental investigation or remediation at the River Sediment/Water Column Sampling Site to a claim, demand, suit, or action asserted either by a third-party or any local, state or federal governmental agency, the Sampling Party shall defend, indemnify and hold harmless such party from all liabilities, losses, damages, or judgments that may be imposed as a result of the Sampling conducted by the Sampling Party that arise from the Sampling Party's and/or their Consultant's entry upon, use or occupancy of the River Sediment/Water Column Sampling Site pursuant to the Request, including, but not limited to, any fees, attorneys' fees, expert fees, LSRP fees, costs, charges and/or expenses incurred by any party responsible for conducting an environmental investigation or remediation at the River Sediment/Water Column Sampling Site in the defense of any such claims, demands, suits, actions, liabilities, damages or judgments.

_____
**JOSEPH A. DICKSON, U.S.M.J**