UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OCCIDENTAL CHEMICAL CORPORATION,** <br><br> *Plaintiff*, <br> v. <br> **21ST CENTURY FOX AMERICA, et al.,** <br><br> *Defendants.* | **Civil Action No. 18-11273** <br><br> **ORDER** |

**THIS MATTER** comes before the Court on Defendants'[1] Motions to Dismiss, ECF Nos. 475, 477, 479, 493, Plaintiff Occidental Chemical Corporation's ("Plaintiff" or "OxyChem") Complaint, ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(6);

and it appearing that Plaintiff opposes Defendants' Motions, ECF Nos. 480, 481, 482;

and it appearing that Plaintiff filed this action for cost recovery and contribution from Defendants of response costs that it expended and will expend in response to "releases and threatened releases of hazardous substances in the Lower Passaic River and elsewhere within the Diamond Alkali Superfund Site," Compl. p. 4;

and it appearing that Diamond Shamrock Chemicals Company ("DSCC") or its predecessors in interest owned and operated a chemical plant on Lister Avenue in Newark (the "Lister Plant") from the 1940s to 1969, id. ¶ 9;

---

[1] Sixty-six Defendants moved to dismiss as the Small Parties Group (the "SPG Defendants"). ECF No. 475; see also ECF No. 476.1 (listing the Defendants). Defendant Honeywell International Inc. filed a separate Motion, ECF No. 477, and Defendants Ashland LLC, Givaudan Fragrances Corporation, Harris Corporation, Hoffmann-La Roche Inc., Innospec Active Chemicals LLC, ISP Chemicals LLC, Mallinckrodt LLC, MI Holdings, Inc., and Tiffany and Company (the "Gibbons Defendants") jointly filed a third Motion, ECF No. 479. Defendant Elan Chemical Co. Inc. then filed a fourth Motion to join the prior three. ECF No. 493. Because each Motion incorporates by reference the arguments of the other Motions, the Court refers to the Defendants jointly unless otherwise stated.

1

and it appearing that in 1986, an OxyChem affiliate purchased DSCC's stock from DSCC's corporate parent, Maxus Energy Corporation ("Maxus"), id. ¶ 10, and that in 1987, DSCC "was merged into OxyChem," id. ¶ 20;

and it appearing that Maxus and its affiliate Tierra Solutions, Inc. ("Tierra") agreed to indemnify, defend, and hold OxyChem harmless against all environmental liabilities arising from contamination by the Lister Plant, id. ¶¶ 10, 19–20;

and it appearing that the Environmental Protection Agency (the "EPA") determined that over one hundred industrial facilities, including the Lister Plant, discharged contaminated sediments into the Lower Passaic River, id. ¶ 21;

and it appearing that on or about June 23, 2008, OxyChem, Tierra, and the EPA entered into the Administrative Settlement Agreement and Order on Consent for Removal Action (the "2008 Settlement"), id. ¶ 28; ECF No. 476.2;

and it appearing that on or about October 4, 2011, OxyChem and the EPA entered into the Administrative Settlement Agreement and Order on Consent for Combined Sewer Overflow/Storm Water Outfall Investigation (the "2011 Settlement"), Compl. ¶ 29; ECF No. 476.4;

and it appearing that in June 2012, the EPA issued a Unilateral Administrative Order for Removal Response Activities directing OxyChem to remove contaminated sediments from the Passaic River at River Mile 10.9 (the "2012 UAO"), Compl. ¶¶ 27, 30; ECF No. 476.6;

and it appearing that in June 2016, OxyChem and the EPA entered into the Administrative Settlement Agreement and Order on Consent for Remedial Design for Operable Unit Two of the Diamond Alkali Superfund Site (the "2016 Settlement"), Compl. ¶ 33; ECF No. 476.5;

and it appearing that "Oxychem itself has incurred and will continue to incur response costs" pursuant to the 2008 Settlement, the 2011 Settlement, the 2012 UAO, and the 2016 Settlement, Compl. ¶¶ 34–35;

and it appearing that OxyChem also alleges that it has incurred and will continue to incur costs for "investigating and identifying other potentially responsible parties" ("PRPs"), id.;

and it appearing that OxyChem alleges that in June 2016, the parent company of Maxus and Tierra "forced" them "into bankruptcy and caused Maxus and Tierra to default on their obligations to indemnify, defend, and hold OxyChem harmless from all environmental liabilities arising from the Lister Avenue Plant," id. ¶ 36;

and it appearing that OxyChem asserts three causes of action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.: (1) cost recovery under Section 107(a), 42 U.S.C. § 9607(a); (2) contribution under Sections 113(f)(1) and 113(f)(3)(B); and (3) a declaration of Defendants' liability under Section 113(g)(2), 42 U.S.C. § 9613(g)(2);

and it appearing that Defendants move to dismiss the Complaint on the ground that OxyChem fails to state a claim upon which relief can be granted[2];

---

[2] In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, the Court may consider "a document integral to or explicitly relied upon in the complaint," In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted), as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Accordingly, the Court considers the settlement agreements and orders attached as exhibits to the Defendants' Motions, as well as the confirmed bankruptcy plan of Maxus and Tierra.

The Court also grants Plaintiff's Motion to Supplement the Motion to Dismiss Record, ECF No. 494.

and it appearing that Defendants first argue that OxyChem's claims under Section 107(a) and Section 113(f) fail because OxyChem does not allege that it incurred any costs, see ECF No. 475.1 at 29–35; ECF No. 479.1 at 15–18;

and it appearing that CERCLA provides two mechanisms for PRPs to recover costs they have expended to decontaminate a polluted site: Section 107(a) cost recovery claims and Section 113(f) contribution claims, see Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 602 F.3d 204, 216 (3d Cir. 2010);

and it appearing that to state a claim for cost recovery under Section 107(a), a plaintiff must demonstrate that: (1) hazardous substances were disposed of at plaintiff's "facility"; (2) the defendant is a PRP; (3) "the release or threatened release of a hazardous substance has occurred"; and (4) plaintiff incurred "necessary response costs consistent with the [National Contingency Plan],"[3] Trinity Indus., Inc. v. Greenlease Holding Co., 903 F.3d 333, 352 (3d Cir. 2018) (internal quotation marks omitted);

and it appearing that to state a claim for contribution under Section 113(f), a plaintiff must first demonstrate a prima facie case of liability under Section 107(a), id.;

and it appearing that only the fourth element—whether OxyChem incurred necessary response costs—is at issue here, and that therefore, the Court need not address the first three elements;

---

[3] "The National Contingency Plan provides a set of standards governing environmental cleanup activities, including methods and criteria for determining the appropriate extent of removal, remedy, and other measures . . . and means of assuring that remedial action measures are cost-effective." Trinity Indus., Inc., 903 F.3d at 352 n.9 (internal citations and quotation marks omitted).

and it appearing that OxyChem alleges that it "has been forced to incur millions of dollars of response costs to address DSCC's operations" because Maxus and Tierra have defaulted "on their obligations to indemnify, defend, and hold OxyChem harmless from all environmental liabilities arising from the Lister Avenue Plant," Compl. ¶ 36; see also ¶¶ 33–34;

and it appearing that these allegations are sufficient at this stage to state a claim for both cost recovery under Section 107(a) and contribution under Section 113(f);[4]

and it appearing that Defendants next argue that OxyChem's claim for recovery of costs related to the 2008, 2011, and 2016 Settlements under Section 107(a) must be dismissed because

---

[4] Defendants argue that OxyChem only alleges that Tierra incurred costs pursuant to the settlements and 2012 UAO. See ECF No. 475.1 at 29–35; ECF No. 479.1 at 15-18. The Court agrees that OxyChem cannot recover the costs that Tierra incurred. See EEOC v. Waffle House, Inc., 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can and should preclude double recovery by an individual."). OxyChem counters, however, that it seeks only to recover its own out-of-pocket costs, not those of its indemnitors. See ECF No. 480 at 20–22. The Court finds OxyChem's allegations sufficient to support this argument. OxyChem seeks to recover the costs incurred as a result of its indemnitors' bankruptcy; in other words, the costs incurred via OxyChem's own settlements with the EPA and the 2012 UAO after Maxus and Tierra stopped paying. See Compl. ¶ 36. A plaintiff "need not particularize the costs incurred, and an allegation that plaintiff has incurred and will continue to incur expenses and costs . . . sufficiently allege[s] recoverable response costs." 105 Mt. Kisco Assocs. LLC v. Carozza, No. 15-5346, 2017 WL 1194700, at *22 (S.D.N.Y. Mar. 30, 2017). Accordingly, OxyChem's allegations are sufficient to state a claim under Sections 107(a) and 113(f).

Regardless, Defendants contend that Oxychem's costs related to investigating and searching for PRPs are not recoverable. See ECF No. 475.1 at 35. The Supreme Court, however, has recognized that searching for other responsible parties is the type of activity that is recoverable. See Key Tronic Corp. v. United States, 511 U.S. 809, 820 (1994). The exact amount that is recoverable is subject to determination at a later stage. See id. at 820 n.14.

The Court also disagrees with Defendants' argument that OxyChem is barred from bringing a contribution claim against certain Defendants under the 2016 Settlement because many entered into "Mutual Contribution Release Agreements" (the "Releases"). See ECF No. 484 at 23; see also ECF No. 490 at 6–9. The Complaint makes clear that the Releases are limited to the itemized amount of $165 million. See Compl. ¶ 44. OxyChem pleads both that: (1) it did not release its claim for contribution against those parties for costs that exceed $165 million, see id.; and (2) it is continuing to incur response costs pursuant to the 2016 Settlement, id. ¶ 34. Thus, OxyChem has adequately pled a claim for contribution relating to the 2016 Settlement as to those costs in excess of $165 million.

Lastly, the Court need not address the Gibbons Defendants' argument that OxyChem lacks standing to assert claims incurred by Tierra. See ECF No. 479.1 at 18–21. This argument is moot given that OxyChem concedes that it is not seeking the costs incurred by its indemnitors. See ECF No. 480 at 20–22; ECF No. 482 at 8–9.

administrative settlements foreclose cost recovery claims under Section 107(a), see ECF No. 475.1 at 20–27;

and it appearing that generally, "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)," see also U.S. v. Atl. Research Corp., 551 U.S. 128, 138 (2007) (explaining that Section 107(a) and Section 113(f) provide "clearly distinct" remedies that "complement each other by providing causes of action 'to persons in different procedural circumstances'"); see also Agere, 602 F.3d at 217 (explaining that Section 107(a) "allows for complete cost recovery under a joint and several liability scheme," whereas Sections 113(f)(1) and 113(f)(3) permit parties who have faced civil action under CERCLA or those who have resolved their liability with the government to seek contribution from another PRP);

and it appearing that although Section 107(a) and Section 113(f) are "overlapping" remedies such that "neither remedy swallows the other" in every circumstance, see Atl. Research Corp., 551 U.S. at 139 n.6, the Third Circuit has held that parties cannot bring § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit if they "would be shielded from contribution counterclaims under § 113(f)(2)," Agere, 602 F.3d at 228–229; ("[W]ithout defendants having the availability of a § 113(f) counterclaim, PRP plaintiffs might 'eschew equitable apportionment . . . in favor of joint and several liability under § 107(a).'" (quoting Atl. Research Corp., 551 U.S. at 138));

and it appearing that Section 113(f)(2) states that "[a] person who has resolved its liability to the United States or a State in a an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement," 42 U.S.C. § 9613(f)(2);

6

and it appearing that OxyChem resolved its liability to the United States in the 2008, 2011, and 2016 Settlements for purposes of Section 113(f)(2),[5] and that therefore, Section 113(f)(2) would shield OxyChem from any counterclaims relating to those costs,[6]

and it appearing that OxyChem's Section 107(a) claims for cost recovery relating to the 2008, 2011, and 2016 settlements are dismissed;

and it appearing that Defendants also argue that OxyChem's claim for Section 107(a) cost recovery related to the 2012 UAO must be dismissed because OxyChem's only available remedy to recover its alleged costs under the 2012 UAO is via contribution under Section 113(f)(1), see ECF No. 475.1 at 27–29; ECF No. 479.1 at 23–33;

---

[5] In all three settlement agreements, OxyChem and the EPA explicitly agreed that the "Settlement Agreement constitutes an administrative settlement . . . pursuant to which Respondent has . . . resolved its liability to the United States for the Work and Future Response Costs." ECF 476.2 at ¶ 82(b); ECF No. 476.4 at ¶ 104(b); ECF No. 476.5 at ¶ 105; see also Compl. ¶ 278.

[6] OxyChem argues that Agere does not apply here because Agere involved the resolution of costs incurred by a PRP under a post-suit consent decree. See ECF No. 480 at 32 ("This is fundamentally different . . . [because OxyChem] has voluntarily incurred cleanup costs before suit is filed and before the United States incurred response costs that could be reimbursed."). However, at least two other courts in this District—and several sister circuits—have applied Agere's reasoning where, like here, costs were incurred "after having entered into the administrative Consent Order, in the absence of any lawsuit." Sandvik, Inc. v. Hampshire Partners Fund VI, L.P., No. 13-4667, 2014 WL 1343081, at *4 (D.N.J. Apr. 4, 2014) (granting defendants' motion to dismiss as to plaintiff's Section 107(a) claims for costs incurred pursuant to a consent order, even in the absence of a lawsuit, because plaintiff would be shielded from contribution counterclaims under Section 113(f)(2)); Cranbury Brick Yard, LLC v. United States, No. 15-2789, 2018 WL 4828410, at *4 (D.N.J. Oct. 3, 2018) (explaining that whether a party entered into the settlement agreement "voluntarily" was irrelevant and that plaintiff was limited to a § 113(f) contribution claim because plaintiff settled its liability with the State); see also NCR Corp. v. George A. Whiting Paper Co., 768 F.3d 682, 692 (7th Cir. 2014) ("We are unpersuaded by [Plaintiff's] contention that the costs it incurred under the order before the action was filed . . . were 'voluntary,' and thus not part of the costs recoverable under section 113(f)."); Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 124 (2d Cir. 2010) (finding that "only §113(f)(3)(B) provides the proper procedural mechanism" where the PRP had not been subject to a civil action, but the PRP had resolved its liability with the State). The Court agrees that Agere's reasoning applies here. As the Third Circuit emphasized, "a district court is not supposed to fashion an award that allows a plaintiff to recover from a defendant costs associated with the cleanup of waste that the plaintiff itself has contributed to the site." Agere, 602 F.3d at 229 ("[W]hile joint and several liability allows a plaintiff to collect from a single defendant the collective liability of all defendants, it does not permit a plaintiff to recover from a defendant the costs to undo what the plaintiff itself has done."). Thus, Plaintiff does not have Section 107(a) claim for response costs incurred pursuant to the 2008, 2011, and 2016 Settlements.

and it appearing that although costs incurred voluntarily are recoverable only by way of Section 107(a), neither the Supreme Court nor the Third Circuit have determined whether costs incurred involuntarily[7] can be recovered under Section 107(a), see Atl. Research Corp., 551 U.S. at 139–40 n.6;

and it appearing that courts that have considered the issue are split as to whether involuntarily incurred costs are recoverable under Section 107(a), compare W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc., 559 F.3d 85, 92 (2d Cir. 2009) ("In the same manner that section 107(a) is not limited solely to 'innocent' parties . . . section 107(a) does not specify that only parties who 'voluntarily' remediate a site have a cause of action."), with Morrison Enters., LLC v. Dravo Corp., 638 F.3d 594, 604 (8th Cir. 2011) (holding that response costs incurred pursuant to an administrative order containing penalties for failure to comply were not incurred voluntarily and therefore could not form the basis of a Section 107 claim);

and it appearing that this Court agrees with the reasoning of the Second Circuit and finds that involuntarily incurred costs are recoverable under Section 107(a), see W.R. Grace, 559 F.3d at 92 ("Under the plain language of the statute, the fact that a party enters into a consent order before beginning remediation is of no legal significance with respect to whether or not the party has incurred response costs as required under section 107(a).");

and it appearing that this Court need not determine whether OxyChem can bring both a Section 107(a) claim and a Section 113(f)(1) claim for expenses related to the 2012 UAO because

---

[7] Compliance with the 2012 UAO is involuntary. See Transtech Indus., Inc. v. A & Z Septic Clean, 798 F. Supp. 1079, 1087 (D.N.J. 1992) (declining to find actions voluntary when compelled by a unilateral administrative order). The 2012 UAO explicitly states that Oxychem "shall be subject to civil penalties" if it violates or fails to comply with the 2012 UAO. See 476.6 at ¶ 58. "Action under such threats is hardly voluntary." Transtech, 798 F. Supp. at 1087 (internal quotation marks omitted).

a private party who has not been sued under Sections 106 or 107 of CERCLA may not obtain contribution under Section 113(f)(1), see Cooper Indus., Inc. v. Aviall Services, Inc., 543 U.S. 157, 160–61 (2004), and this Court finds that the 2012 UAO is not a "civil action" for purposes of Section 113(f)(1)[8];

and it appearing that OxyChem has therefore stated a claim for Section 107(a) related to the 2012 UAO,[9] but has not stated a claim for Section 113(f)(1);

---

[8] Neither the Supreme Court nor the Third Circuit have determined whether an administrative order issued by the EPA, such as the 2012 UAO, would qualify as a civil action under Sections 106 or 107 of CERCLA. District courts are split on the issue. Compare Emhart Indus., Inc. v. New England Container Co., Inc., 478 F. Supp. 2d 199, 203 (D.R.I. 2007) ("[B]ecause there is no evidence to support the contention that the plain meaning of 'civil action' includes EPA-issued administrative orders, this Court will follow the majority of courts in concluding that 113(f)(1) is unavailable for parties who are merely subject to administrative orders."); Raytheon Aircraft Co. v. United States, 435 F. Supp. 2d 1136, 1142–43 (D. Kan. 2006) (dismissing plaintiff's Section 113(f)(1) claim because plaintiff had incurred costs in response to a UAO and not a "civil action"); Blue Tee Corp. v. ASARCO, Inc., No. 03-5011, 2005 WL 1532955, at *3–4 (W.D. Mo. June 27, 2005) (same); Pharmacia Corp. v. Clayton Chem. Acquisition LLC, 382 F. Supp. 2d 1079, 1087 (S.D. Ill. 2005) ("[A]n administrative order['s] . . . natural meaning is far from that of being synonymous with a civil action."); with PCS Nitrogen, Inc. v. Ross Development Corp., 104 F. Supp. 3d 729, 742–43 (D.S.C. 2015) (finding that an administrative order qualifies as a civil action because "there are unquestionable similarities between the effect of the UAO and that of a civil action in terms of coercing a party to undertake remedial actions"); Carrier Corp. v. Piper, 460 F. Supp. 2d 827, 840–41 (W.D. Ten. 2006) (holding that a UAO constitutes a civil action under Section 113(f)(1)); see also Transtech, 798 F. Supp. 1079 at 1087 (using the terms "unilateral administrative order" and "civil action" interchangeably, without explanation). This Court finds the reasoning of the district courts that have held that a unilateral administrative order is not a civil action for purposes of Section 113(f)(1) to be more persuasive. "In interpreting a statute, 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" Pharmacia Corp., 382 F. Supp. 2d at 1087 (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992)). "[T]he natural meaning of 'civil action' is clearly a non-criminal judicial proceeding." Id. (citing, among others, Fed. R. Civ. P. 2, Fed. R. Civ. P. 3, and Black's Law Dictionary). Section 113(f)(1) specifically conditions a contribution action on the occurrence of a civil action, whereas Section 113(f)(3)(B) conditions contribution on the existence of a settlement with the government. This Court agrees with the other district courts that have found "that the distinction made by the drafters demonstrates they saw a distinction between a civil action and administrative actions and orders." Id. ("If it were Congress' intention that an administrative order would suffice to bring a Section 113(f)(1) action, then the Court does not see why Congress found it necessary to include Section 113(f)(3) allowing contribution actions after administrative or judicially approved settlements."); see also Blue Tee Corp., 2005 WL 1532955, at *4.

[9] Defendants argue that OxyChem is barred from bringing a Section 107(a) claim related to the 2012 UAO against certain Defendants who also entered into a settlement agreement in 2012 with the EPA to perform remediation work at River Mile 10.9. See ECF No. 475.1 at 37. According to Defendants, those who signed received protection from both contribution and cost recovery claims for matters addressed in the settlement. See id. OxyChem contends, however, that parties with contribution protection are still subject to Section 107(a) cost recovery actions. See ECF No. 480 at 37–38. As an initial matter, the Supreme Court has explicitly held that the Section 113(f)(2) settlement bar "does not by its terms protect against cost-recovery liability under § 107(a)." Atl. Research, 551 U.S. at 140. Thus, the settlement at issue can only bar OxyChem's Section 107(a) claim if it

and it appearing that Defendants next argue that, with respect to OxyChem's remaining Section 113(f)(3)(B) claims for contribution, the claims for the 2008 and 2011 Settlements are time-barred, see ECF No. 479.1 at 34-35;

and it appearing that "[a]n action for contribution for response costs or damages under § 113(f)(3)(B) must be commenced within three years of the date of a cost recovery settlement,"[10] Sandvik, 2014 WL 1343081, at *5 (citing 42 U.S.C. § 9613(g)(3)(B));

and it appearing that OxyChem argues that its contribution claims relating to the 2008 and 2011 Settlements are timely because "[m]ost Defendants" are bound by tolling agreements that prevented any applicable statute of limitation from expiring before OxyChem filed suit on June 30, 2018, see ECF No. 481 at 9–13;

and it appearing that there are disputes of fact as to the interpretation of the tolling agreements that the Court cannot resolve at this stage[11] and the Court therefore declines to dismiss

---

otherwise provides as such. Here, the text of the applicable settlement states that settling parties have "protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA . . . or as may be otherwise provided by law for 'matters addressed' in this Settlement Agreement." ECF No. 476.7 at ¶ 74(a) (emphasis added). Because the interpretation of this provision—particularly the underlined portion—is in dispute, the Court declines to find that it bars OxyChem's Section 107(a) claim at this stage.

[10] OxyChem argues that the three-year statute of limitations set forth in Section 113(g) does not apply. See ECF No. 481 at 16-19. According to OxyChem, Section 113(g) only identifies three types of settlements that would trigger the three-year statute of limitations: (1) judicially approved settlements; (2) administrative orders under Section 9622(g); and (3) administrative orders under Section 9622(h). See id. at 17. OxyChem argues that the 2008 and 2011 Settlements do not fit into these categories, and thus, the three-year statute of limitations does not apply. See id. at 17–18. The Court finds this argument unavailing. "In the aftermath of Congress' amendment of CERCLA to allow PRPs to assert contribution claims, Courts have recognized 'a design to codify one limitations period for contribution actions and another period for cost-recovery actions.'" Cranbury Brick Yard, 2018 WL 4828410, at *6 (quoting RSR Corp. v. Commercial Metals Co., 496 F.3d 552, 558 (6th Cir. 2007)); see also Sandvik, Inc., 2014 WL 1343081, at *6 (finding that the Administrative Settlement Agreement and Consent Order was subject to the three-year statute of limitations). Moreover, the 2008 and 2011 Settlement Agreements expressly provide that each "constitutes an administrative settlement for purposes of . . . 42 U.S.C. § 9613(f)(2) and 9622(h)." ECF No. 476.2 at ¶ 104(a); ECF No. 476.4 at ¶ 82(a); see also Cranbury Brick Yard, 2018 WL 4828410, at *5–6 (applying the three-year statute of limitations where the administrative order expressly provided that it was an administrative settlement within the meaning of 42 U.S.C. § 9613(f)(2)). Accordingly, the Court finds that the applicable statute of limitations is three years.

[11] For example, Defendants argue that the 2007 Standstill Agreement expressly limits its application to specifically identified orders and does not apply to claims arising after the execution of the agreement, see ECF

10

OxyChem's contribution claims for the 2008 and 2011 Settlements as time barred as to all Defendants;[12]

and it appearing that Defendants next argue that OxyChem's contribution claim for costs associated with the 2016 Settlement should be stayed pending resolution of the claims asserted in Maxus and Tierra's bankruptcy complaint by the Liquidating Trustee, see ECF No. 479.1 at 22–23; ECF No. 488 at 12–18;

and it appearing that pursuant to Maxus and Tierra's bankruptcy plan (the "Plan"), creditors—including OxyChem—can assert contribution claims, except where such claims relate to amounts received under the Plan, [13] see ECF No. 476.8 at 118; see also id. at 104;

and it appearing that the Court declines to stay the instant proceeding at this time and directs Defendants to renew their motion at a later stage should OxyChem seek funds that are prohibited pursuant to the Plan;

and it appearing that Defendants also argue that this Court must dismiss OxyChem's claim for declaratory relief because it fails to state a claim under either Section 107(a) or Section 113(f), see ECF No. 475.1 at 38–39;

---

No. 484 at 19, whereas OxyChem argues that the 2007 Standstill Agreement includes a provision "tolling all statutes of limitation applicable to claims for contribution related to the Lower Passaic River among the parties to that agreement," see ECF No. 481 at 11.  The Court has reviewed the text of the 2007 Standstill Agreement that was attached as an exhibit to the SPG Defendants' Reply, but neither interpretation is clear from the text alone.

[12] Plaintiff also argues that its claims should not be barred on statute of limitations grounds because of equitable tolling, the canon against absurdity, and the discovery rule.  See ECF No. 481 at 13.  Because each of these arguments presents fact issues that cannot be resolved at the motion to dismiss stage, the Court also declines to dismiss Plaintiff's contribution claims as against the Defendants who were not parties to any of the relevant tolling agreements.

[13] The Plan states, "For the avoidance of doubt . . . neither the Plan, the creation of the Liquidating Trust . . . nor the classification or treatment of any Claim or Equity Interest under the Plan shall: (i) create, affect, abrogate or restrict any rights or defenses of any Creditor or party in interest to bring any claims against any other Creditor or party in interest for cost recovery or contribution for response costs . . . for amounts incurred and paid with regard to the Diamond Alkali Site . . . other than any amounts received pursuant to the Plan."

and it appearing that OxyChem states claim for Section 107(a) relating to the 2012 UAO and claims for Section 113(f)(3)(B) relating to the 2008, 2011, and 2016 Settlements, and that therefore, there is a sufficient "justiciable controversy" to sustain OxyChem's declaratory judgment claim at this stage, see Noven Therapeutics, LLC v. Actavis Laboratories FL, Inc., No. 15-249, 2015 WL 9918412, at *1 (D.N.J. Feb. 20, 2015);

**IT IS** on this 31st day of July, 2019;

**ORDERED** that Defendants' Motions to dismiss, ECF Nos. 475, 477, 479, 493, are **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's Section 107(a) claims relating to the 2008, 2011, and 2016 Settlements, and Plaintiff's Section 113(f)(1) claim relating to the 2012 UAO are dismissed as to all Defendants, but that the Section 107(a) claim relating to the 2012 UAO and the Section 113(f)(3)(B) claims relating to the 2008, 2011, and 2016 Settlements remain.

*/s Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**