Reynold Lambert
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500
*Attorneys for Defendant*
*Franklin-Burlington Plastics, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> 21ST CENTURY FOX AMERICA, INC., *et al.*, <br><br> Defendants. | Case No: 2:18-CV-11273-MCA-JAD <br><br><br> **ANSWER OF DEFENDANT FRANKLIN-BURLINGTON PLACTICS, INC., SEPARATE DEFENSES, AND COUNTERCLAIMS** |

Defendant Franklin-Burlington Plastics, Inc. ("Defendant"), for its Answer to the Complaint (the "Complaint") of Plaintiff Occidental Chemical Corporation ("Plaintiff" or "OxyChem"), states and alleges that, unless otherwise answered or addressed in this Answer, each and every allegation in the Complaint is denied, and further responds as follows:

I.   **INTRODUCTION**[1]

1.   Paragraph 1 of the Complaint purports to characterize and quote from various unidentified documents and/or studies.  Without identification of those documents and/or studies,

---

[1] Merely for ease of reference, Defendant's Answer replicates the headings and subheadings contained in the Complaint.  Although Defendant believes no response is required to such headings or subheadings, to the extent a response is deemed required and to the extent those headings and titles could be construed to contain factual allegations, those allegations are denied.  Defendant expressly denies that allegation in heading III that all eight contaminants of concern drive EPA's

which speak for themselves within the appropriate context, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 1 and therefore denies the same.  Defendant denies any statement or allegation in paragraph 1 that mischaracterizes and/or misquotes such documents and/or studies or takes them out of context.  Defendant denies the remaining allegations, characterizations, and implications in paragraph 1.

2.      Defendant admits that it received a letter from EPA in which EPA notified it of "potential liability", but denies any such liability or that such letter connotes any liability on the part of Defendant.  To the extent the allegations in paragraph 2 of the Complaint relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies that no single hazardous substances or source is solely to blame.  Defendant avers that 2,3,7,8-TCDD is the sole or only significant cause driving EPA's selected remedy.  Defendant denies any remaining allegations, characterizations, and implications in paragraph 2.

3.      Defendant admits that EPA has identified eight "Contaminants of Concern" ("COCs") for the lower 8.3 miles of the Lower Passaic River Study Area ("LPRSA") but denies that the seven COCs other than 2,3,7,8-TCDD "drive the requirements for remediation" and that the proposed remedy would or is intended to achieve remediation goals for each of such COCs.  Defendant avers that 2,3,7,8-TCDD is the sole or only significant cause driving EPA's selected remedy.  Defendant denies any remaining allegations, characterizations, and implications in paragraph 3.

---

selected remedy.  Defendant avers that 2, 3, 7, 8-tetrachlorodibenzo-p-dioxin ("2,3,7,8-TCDD"), is the sole or only significant cause requiring EPA's selected remedy.

4.     To the extent the allegations in paragraph 4 of the Complaint relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant admits that in 2016, the EPA issued a Record of Decision ("ROD").  The remaining allegations in paragraph 4 of the Complaint reference and purport to characterize the ROD, which speaks for itself in the appropriate context.  Defendant denies any statement or allegation in paragraph 4 that mischaracterizes the referenced ROD or takes it out of context.  Defendant denies any remaining allegations, characterizations, and implications in paragraph 4.

5.     To the extent the allegations in paragraph 5 of the Complaint relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  The allegations in paragraph 5 of the Complaint reference and purport to characterize the Administrative Settlement Agreement and Order on Consent for Remedial Design for Operable Unit Two of the Diamond Alkali Superfund Site ("2016 ASAOC"), which speaks for itself in the appropriate context.   Defendant denies any statements or allegations in paragraph 5 that mischaracterize the referenced ASAOC or take it out of context.  Defendant denies any remaining allegations, characterizations, and implications in paragraph 5.

6.     To the extent the allegations in paragraph 6 of the Complaint relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies the allegation in paragraph 6 of the Complaint that no single COC is solely responsible for EPA's selected remedy for Operable Unit 2, the first 8.3 miles of the Passaic River (the "OU2 Remedy") and further denies that each of the eight COCs "drives" the OU2 Remedy.  Defendant

avers that 2,3,7,8-TCDD is the sole or only significant cause driving EPA's selected remedy. Defendant further states that paragraph 6 purports to reference unidentified EPA documents. Without identification of those documents, which speak for themselves in the appropriate context, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 6 and therefore denies the same. Defendant denies any statement or allegation in paragraph 6 that mischaracterizes and/or misquotes such documents or takes them out of context. Defendant denies any remaining allegations, characterizations, and implications in paragraph 6.

7.      Defendant denies that each of the eight COCs drives the remedy. Defendant avers that 2,3,7,8-TCDD is the sole or only significant cause driving EPA's selected remedy. All three sentences of paragraph 7 contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in these sentences. To the extent that the remaining allegations in paragraph 7 relate to individuals or entities other than Defendant, including the purported unlabeled map of Defendant locations, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same. Defendant denies the remaining allegations in paragraph 7, including any that seek to impute liability to Defendant.

8.      Defendant denies the allegations in the first sentence of Paragraph 8. The second and third sentences of this paragraph contain conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in these sentences. Defendant denies any remaining allegations in paragraph 8, including any that seek to impute liability to Defendant.

9.      To the extent the allegations in paragraph 9 of the Complaint relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant admits that from the 1940s to 1969, OxyChem's corporate predecessor, Diamond Shamrock Chemicals Company, or its predecessors-in-interest owned and operated a chemical plant located at 80-120 Lister Avenue.  Defendant admits that in 1983 Governor Thomas Kean held a press conference and declared a state of emergency for the Ironbound neighborhood adjacent to the Lister Avenue Plant.  The article and press conference referenced in paragraph 9 and footnote 3 of the Complaint speak for themselves in the appropriate context.  Defendant denies any statement or allegation in paragraph 9 and footnote 3 that mischaracterizes and/or misquotes such document or press conference or takes them out of context.  Defendant denies all remaining allegations in paragraph 9.

10.      Defendant admits that Maxus filed for bankruptcy in 2016.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 10 and therefore denies the same.

11.      Defendant denies that all eight COCs drive the OU2 Remedy and avers that 2,3,7,8-TCDD is the sole or only significant cause of the OU2 Remedy.  The second and fourth sentences of Paragraph 11 contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant denies any remaining allegations, characterizations, and implications in paragraph 11.  By way of further answer, upon information and belief, Defendant avers that the Lister Avenue Plant disposed of hazardous materials including dioxin, DDT, PCBs, PAHs, and dieldrin.

12.     Defendant denies that each of the eight COCs drives the remedy and that OxyChem "stepped up to do its part on the OU2 Remedy."  The remainder of Paragraph 12 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the remaining allegations in paragraph 12, including any which seek to impute liability on Defendant.

13.     To the extent the allegations in paragraph 13 of the Complaint relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant admits that, through this action, Plaintiff seeks a money judgment for cost recovery and contribution and a declaratory judgment as to liability for future response costs in connection with the remedial design of the OU2 Remedy pursuant to the 2016 ASAOC but denies that Plaintiff has incurred recoverable costs or is entitled to any of the requested relief.  Defendant denies any remaining allegations in paragraph 13, including any which seek to impute liability on Defendant.

## II.     HISTORY OF THE DISPUTE

### A.     EPA Establishes the Diamond Alkali Superfund Site

14.     Defendant admits that the Diamond Alkali Superfund Site was listed on the Superfund National Priorities List in 1984.  To the extent paragraph 14 of the Complaint seeks to characterize, paraphrase, or quote the ROD or other documents, these documents speak for themselves in the appropriate context.  Defendant denies any statement or allegation in paragraph 14 that mischaracterizes or misquotes these documents or takes them out of context.  Defendant denies any remaining allegations in paragraph 14.

15.     Paragraph 15 of the Complaint references and reproduces a map purportedly taken from the ROD.  The ROD speaks for itself in the appropriate context.  Defendant denies any

statement or allegation in paragraph 15 that mischaracterizes the referenced ROD or takes it out of context.  Defendant denies any remaining allegations in paragraph 15.

16.     Answering the first sentence of paragraph 16, Defendant admits that, based on the claims asserted in the Complaint, this CERCLA case concerns, among other things, costs allegedly incurred by Plaintiff with respect to the remedial design of the OU2 Remedy pursuant to the 2016 ASAOC, but otherwise denies the allegations contained in that sentence.   The remaining allegations in paragraph 16 of the Complaint reference and purport to characterize the content of a website that speaks for itself in the appropriate context.  Defendant denies any statement or allegation in paragraph 16 that mischaracterizes and/or misquotes such documents or takes them out of context.  Defendant denies any remaining allegations in paragraph 16.

17.     To the extent paragraph 17 alleges that the "Site" and "Facility" include all upland sites, and not solely the Lister Avenue Plant, Defendant denies this allegation and avers that the ROD identifies the Lister Avenue Plant as the only upland portion of the Site.  See ROD §§ 2.1, 4.1.  Paragraph 17 of the Complaint consists of one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 17.

**B.     OxyChem Acquires Diamond Shamrock Chemicals Company**

18.     Defendant admits that Plaintiff is liable for cleanup costs and denies that "OxyChem did not itself discharge any hazardous substances to the Lower Passaic River." Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 18 and therefore denies the same.

19.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 19 and therefore denies the same.

20.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 and therefore denies the same.  Defendant denies any implication therein that OxyChem is not fully liable for response costs incurred with respect to the Facility, as defined in the ROD.

### C.     EPA Finds That Over One Hundred Parties Are Responsible for Pollution at the Site and Takes Remedial Action

21.     Paragraph 21 of the Complaint contains quotations to and characterizations of certain EPA documents.  Those documents speak for themselves in the appropriate context. Defendant denies any statement or allegation in paragraph 21 that mischaracterizes and/or misquotes such documents or takes them out of context.  To the extent the allegations in paragraph 21 relate to individuals and entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations, characterizations, and implications in paragraph 21.

22.     Defendant denies that OxyChem has cooperated with EPA and has shouldered more than its share of the burden to clean up the river but admits OxyChem has been and is responsible for operations at the Lister Avenue Plant.  Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the second and third sentences of paragraph 22 and therefore denies the same.  Defendant denies any remaining allegations in paragraph 22.

23.     Defendant admits the allegation in paragraph 23 of the Complaint that the EPA issued a Record of Decision in 1987 addressing remedies for the Lister Avenue Plant.  To the extent the allegations in paragraph 23 seek to paraphrase or characterize the contents of the 1987 ROD and the 1990 Consent Decree, those documents speak for themselves in the appropriate

context and Defendant denies the allegations to the extent they mischaracterize these documents or take them out of context.  Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 23 and therefore denies the same.

24.      The allegations in paragraph 24 of the Complaint reference and purport to characterize a 1994 Administrative Consent Order ("1994 RI/FS ACO") and a Remedial Investigation and Feasibility Study ("RI/FS"), which speak for themselves in the appropriate context.  Defendant denies any statement or allegation in paragraph 24 that mischaracterizes and/or misquotes the referenced 1994 RI/FS ACO and RI/FS or takes them out of context.  To the extent the allegations in paragraph 24 relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.   Defendant denies the remaining allegations, characterizations, and implications in paragraph 24.

25.      Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the allegation that Maxus and Tierra paid the costs associated with the 1994 RI/FS ACO for the Lower 6 and therefore denies the same.  Defendant denies the remaining allegations in paragraph 25.

26.      The allegations in paragraph 26 of the Complaint purport to reference and quote from the ROD, which speaks for itself in the appropriate context.  Defendant denies any statement or allegation in paragraph 26 that mischaracterizes and/or misquotes the ROD or takes it out of context.  To the extent the allegations in paragraph 26 relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth

or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 26.

27.     Defendant admits the allegation in paragraph 27 of the Complaint that a group of parties formed the Cooperating Parties Group ("CPG") and that OxyChem, Maxus, and Tierra were, at one time, members of the CPG.  Defendant further admits that members of the CPG signed a settlement agreement with the EPA in 2004 ("2004 RI/FS ASAOC").   To the extent the allegations in paragraph 27 seek to paraphrase or characterize the 2004 RI/FS ASAOC and amendments thereto, these documents speak for themselves in the appropriate context.  Defendant denies any statement or allegation in paragraph 27 that mischaracterizes the referenced settlement agreement and amendments and/or takes them out of context.  To the extent the allegations in paragraph 27 relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations, characterizations, and implications in paragraph 27, including any that seek to impute liability upon Defendant.

28.     To the extent that the allegations in paragraph 28 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Further, the allegations in paragraph 28 reference and purport to characterize a certain Administrative Settlement Agreement and Order on Consent for Removal Action ("Tierra Removal ASAOC") and other EPA documents, which speak for themselves in the appropriate context. Defendant denies any statement or allegation in paragraph 28 that mischaracterizes and/or misquotes the referenced documents or takes them out of context.  Defendant denies any remaining allegations in paragraph 28.

29.     To the extent the allegations in paragraph 29 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Further, the allegations in paragraph 29 reference and purport to characterize a certain Administrative Settlement Agreement and Order on Consent for Combined Sewer Overflow/Storm Water Outfall Investigation ("CSO ASAOC"), which speaks for itself in the appropriate context.  Defendant denies any statement or allegation in paragraph 29 that mischaracterizes the referenced document or takes it out of context.  Defendant denies any remaining allegations in paragraph 29.

30.     The allegations in paragraph 30 of the Complaint reference and purport to characterize an EPA consent order, which speaks for itself in the appropriate context.  Defendant denies any statement or allegation in paragraph 30 that mischaracterizes the referenced consent order or takes it out of context.  Defendant admits that the EPA issued a Unilateral Administrative Order ("RM 10.9 Removal UAO") directing OxyChem to perform certain activities with respect to the RM 10.9 Removal but denies that Plaintiff "voluntarily" accepted the UAO or that compliance with the UAO was "voluntarily" performed.  The remaining allegations in paragraph 30 relate to individuals and entities other than Defendant.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 30.

31.     To the extent that the allegations in paragraph 31 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Paragraph 31 appears to characterize various EPA documents, which speak for themselves in the appropriate context.   Defendant denies any statement or allegation in paragraph 31 that

mischaracterizes and/or misquotes such documents, or takes them out of context.  Defendant denies any remaining allegations in paragraph 31.

32.     To the extent that the allegations in paragraph 32 and footnote 20 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Further, the allegations in paragraph 32 reference and purport to characterize certain EPA letters and/or notices, which speak for themselves in the appropriate context.  Defendant denies any statement or allegation in paragraph 32 that mischaracterizes the referenced notices and/or letters or take them out of context.  Defendant admits that it received a communication from the EPA, and a letter from OxyChem in May 2016, but denies that such connotes any liability on the part of Defendant.  Defendant denies any remaining allegations in paragraph 32 and footnote 20, including any which seek to impute liability to Defendant.

33.     To the extent that the allegations in paragraph 33 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Further, the allegations in paragraph 33 and footnote 21 reference and purport to characterize a certain Administrative Settlement Agreement and Order on Consent for Remedial Design, which speaks for itself in the appropriate context.  Defendant denies any statement or allegation in paragraph 33 that mischaracterizes and/or misquotes the referenced document or takes it out of context.  Defendant denies any remaining allegations in paragraph 33.

34.     To the extent that the allegations in paragraph 34 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  To the

extent the allegations in paragraph 34 seek to quote or characterize various EPA ASAOCs, UAOs and other documents, these documents speak for themselves in the appropriate context.  Defendant denies any statement or allegation in paragraph 34 that mischaracterizes and/or misquotes such documents or takes them out of context.  The fourth sentence of paragraph 34 contains conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in this sentence.  Defendant denies any remaining allegations in paragraph 34.

**D.** **Cooperating with EPA, OxyChem and Its Indemnitors Spend Hundreds of Millions of Dollars to Remedy Contamination at the Site**

35.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegation that OxyChem, Maxus, and Tierra have spent hundreds of millions of dollars on remedial work and therefore denies the same.  Paragraph 35 contains one or more conclusions of law about liability for costs, to which no response is required.  To the extent a response is required, Defendant denies these allegations.  To the extent the allegations in paragraph 35 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of these allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 35, including any which seek to impute liability upon Defendant.

**E.** **OxyChem's Indemnitors Are Forced into Bankruptcy**

36.     To the extent the allegations in paragraph 36 and footnote 23 of the Complaint relate to individuals or entities  other than Defendant, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  To the extent the allegations in paragraph 36 and footnote 23 seek to paraphrase and characterize a bankruptcy court ruling, such ruling speaks for itself in the appropriate context.  Defendant denies the allegations that mischaracterize this ruling or take it out of context.  The final two sentences of

Paragraph 36 and the second sentence of footnote 23 contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies these allegations.  Defendant denies the remaining allegations in paragraph 36 and footnote 23, including any which seek to impute liability upon Defendant.

III.     **EIGHT CONTAMINANTS OF CONCERN DRIVE EPA'S SELECTED REMEDY AT THE SITE, AND EVERY PARTY THAT RELEASED ANY COC MUST PAY ITS FAIR SHARE OF RESPONSE COSTS**

37.     To the extent that the allegations in paragraph 37 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  To the extent the allegations in paragraph 37 characterize various EPA documents, such documents speak for themselves in the appropriate context.  Defendant denies any statement or allegation in paragraph 37 that mischaracterizes and/or misquotes such documents or takes them out of context.  Defendant denies that the selected remedy addresses all eight COCs.  Defendant denies any remaining allegations in paragraph 37.

A.     **EPA Determined That the OU2 Remedy Was Necessary to Achieve the Remediation Goals with Respect to the Eight COCs**

38.     To the extent that the allegations in paragraph 38 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  The allegations in paragraph 38 reference and purport to characterize the ROD, which speaks for itself in the appropriate context.  Defendant denies any statement or allegation in paragraph 38 that mischaracterizes and/or misquotes the ROD or takes it out of context.  Defendant denies the remaining allegations in paragraph 38.

39.     To the extent the allegations in paragraph 39 of the Complaint relate to individuals and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Further, the allegations in paragraph 39 reference and purport to characterize an EPA news release, which speaks for itself in the appropriate context.  Defendant denies any statement or allegation in paragraph 39 that mischaracterizes the referenced document or takes it out of context.  Defendant denies the remaining allegations in paragraph 39.

**B.      Defendants Are Responsible for Their Equitable Shares of the Cost to Remediate All Eight COCs, Along with Other Hazardous Substances**

40.     Defendant denies that DSSC's manufacturing process involved only two of the eight COCs and denies that all eight COCs drive EPA's selected remedy.  To the extent the allegations in paragraph 40 of the Complaint relate to an entity other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  The final sentence of Paragraph 40 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in the final sentence of Paragraph 40.  Defendant denies any remaining allegations in paragraph 40, including any which seek to impute liability to Defendant.

41.     Defendant denies the allegations in the first sentence of paragraph 41 of the Complaint.  The second and third sentences of paragraph 41 contain conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in these sentences.  Defendant denies any remaining allegations in paragraph 41, including any which seek to impute liability to Defendant.

42.    The first and fourth sentences of paragraph 42 of the Complaint contain one or more conclusions of law and/or subjective statements of opinion, to which no response is required.  To the extent a response is required, Defendant denies the allegations in these sentences.  To the extent the allegations in paragraph 42 seek to characterize or paraphrase the ROD, that document speaks for itself in the appropriate context.  Defendant denies the allegations that mischaracterize the ROD or take it out of context.  To the extent the allegations in paragraph 42 relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies the remaining allegations in paragraph 42, including any which seek to impute liability to Defendant.

43.    Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the first sentence of paragraph 43.  The remainder of paragraph 43 of the Complaint consists of Plaintiff's characterization of its own claims, to which no response is required.  To the extent a response is required, Defendant admits that Plaintiff seeks a money judgment for cost recovery and contribution costs and a declaratory judgment for future response costs in connection with the remedial design of the OU2 Remedy pursuant to the 2016 ASAOC but denies that Plaintiff has incurred recoverable costs or is entitled to any of the requested relief.  Defendant denies any remaining allegations, characterizations, and implications in paragraph 43, including any which seek to impute liability to Defendant.

44.    Defendant admits that it entered into a "Mutual Contribution Release Agreement" with Maxus Energy Corporation, Tierra Solutions, Inc., Maxus International Energy Company, Maxus (U.S.) Exploration Company, and Gateway Coal Company (collectively, the "Bankruptcy Debtors") and Plaintiff (the "Release Agreement").  The Release Agreement is a writing that

speaks for itself and Plaintiff's mischaracterizations of the Release Agreement are denied.  To the extent the Release Agreement is subject to interpretation by the Court, the allegations of this paragraph call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies that the release is limited as alleged by Plaintiff.  Defendant further denies that the Release Agreement did not release Plaintiff's claims related to the Tierra Removal ASAOC, the CSO ASAOC, the RM 10.9 Removal UAO, and other past costs.  Certainly, any costs incurred by the Bankruptcy Debtors under these various agreements and orders have been released as against Defendant, as have Plaintiff's claims for past costs and its anticipated remedial design costs for OU2.  To the extent the allegations in paragraph 44, footnote 29, and Exhibit A of the Complaint relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  To the extent paragraph 44, footnote 29, and Exhibit A seek to characterize or paraphrase a document, that document speaks for itself in the appropriate context. Defendant denies the allegations in paragraph 44, footnote 29, and Exhibit A that mischaracterize this partial release or take it out of context.  The remainder of paragraph 44 and footnote 29 consists of one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the remaining allegations in paragraph 44, footnote 29, and Exhibit A.

## IV.   **JURISDICTION AND VENUE**

45.   Defendant admits that Plaintiff has filed this action pursuant to Sections 107 and 113 of CERCLA, but denies that Plaintiff is entitled to any relief.  Defendant denies any remaining allegations in paragraph 45.

46.   Paragraph 46 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 46.

47.     To the extent the allegations in paragraph 47 of the Complaint relate to individuals or entities other than Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Further, paragraph 47 contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 47.

48.     Paragraph 48 consists of one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations, characterizations, and implications in paragraph 48.

49.     No response is required to paragraph 49 of the Complaint.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 49 and therefore denies the same.

50.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 50 of the Complaint and therefore denies the same.

## V.     <u>PARTIES</u>

51.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 51 of the Complaint and therefore denies the same.

52.     The allegations in paragraph 52 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 52 and therefore denies the same.

53.     The allegations in paragraph 53 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 53 and therefore denies the same.

54.     The allegations in paragraph 54 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 54 and therefore denies the same.

55.     The allegations in paragraph 55 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 55 and therefore denies the same.

56.     The allegations in paragraph 56 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 56 and therefore denies the same.

57.     The allegations in paragraph 57 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 57 and therefore denies the same.

58.     The allegations in paragraph 58 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 58 and therefore denies the same.

59.     The allegations in paragraph 59 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge

or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 59 and therefore denies the same.

60.     The allegations in paragraph 60 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 60 and therefore denies the same.

61.     The allegations in paragraph 61 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 61 and therefore denies the same.

62.     The allegations in paragraph 62 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 62 and therefore denies the same.

63.     The allegations in paragraph 63 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 63 and therefore denies the same.

64.     The allegations in paragraph 64 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 64 and therefore denies the same.

65.     The allegations in paragraph 65 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 65 and therefore denies the same.

66.     The allegations in paragraph 66 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 66 and therefore denies the same.

67.     The allegations in paragraph 67 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 67 and therefore denies the same.

68.     The allegations in paragraph 68 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 68 and therefore denies the same.

69.     The allegations in paragraph 69 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 69 and therefore denies the same.

70.     The allegations in paragraph 70 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge

or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 70 and therefore denies the same.

71.     The allegations in paragraph 71 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 71 and therefore denies the same.

72.     The allegations in paragraph 72 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 72 and therefore denies the same.

73.     The allegations in paragraph 73 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 73 and therefore denies the same.

74.     The allegations in paragraph 74 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 74 and therefore denies the same.

75.     The allegations in paragraph 75 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 75 and therefore denies the same.

76.     The allegations in paragraph 76 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 76 and therefore denies the same.

77.     The allegations in paragraph 77 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 77 and therefore denies the same.

78.     The allegations in paragraph 78 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 78 and therefore denies the same.

79.     The allegations in paragraph 79 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 79 and therefore denies the same.

80.     The allegations in paragraph 80 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 80 and therefore denies the same.

81.     The allegations in paragraph 81 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge

or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 81 and therefore denies the same.

82.     The allegations in paragraph 82 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 82 and therefore denies the same.

83.     The allegations in paragraph 83 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 83 and therefore denies the same.

84.     The allegations in paragraph 84 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 84 and therefore denies the same.

85.     The allegations in paragraph 85 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 85 and therefore denies the same.

86.     The allegations in paragraph 86 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 86 and therefore denies the same.

87.     The allegations in paragraph 87 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 87 and therefore denies the same.

88.     The allegations in paragraph 88 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 88 and therefore denies the same.

89.     The allegations in paragraph 89 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 89 and therefore denies the same.

90.     The allegations in paragraph 90 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 90 and therefore denies the same.

91.     The allegations in paragraph 91 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 91 and therefore denies the same.

92.     The allegations in paragraph 92 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge

or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 92 and therefore denies the same.

93.     The allegations in paragraph 93 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 93 and therefore denies the same.

94.     The allegations in paragraph 94 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 94 and therefore denies the same.

95.     The allegations in paragraph 95 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 95 and therefore denies the same.

96.     The allegations in paragraph 96 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 96 and therefore denies the same.

97.     The allegations in paragraph 97 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 97 and therefore denies the same.

98.     Defendant admits the allegation in paragraph 98 of the Complaint.

99.     The allegations in paragraph 99 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 99 and therefore denies the same.

100.    The allegations in paragraph 100 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 100 and therefore denies the same.

101.    The allegations in paragraph 101 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 101 and therefore denies the same.

102.    The allegations in paragraph 102 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 102 and therefore denies the same.

103.    The allegations in paragraph 103 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 103 and therefore denies the same.

104.    The allegations in paragraph 104 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 104 and therefore denies the same.

105.    The allegations in paragraph 105 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 105 and therefore denies the same.

106.    The allegations in paragraph 106 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 106 and therefore denies the same.

107.    The allegations in paragraph 107 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 107 and therefore denies the same.

108.    The allegations in paragraph 108 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 108 and therefore denies the same.

109.    The allegations in paragraph 109 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 109 and therefore denies the same.

110.    The allegations in paragraph 110 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 110 and therefore denies the same.

111.    The allegations in paragraph 111 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 111 and therefore denies the same.

112.    The allegations in paragraph 112 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of the allegations in paragraph 112 and therefore denies the same.

113.    The allegations in paragraph 113 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 113 and therefore denies the same.

114.    The allegations in paragraph 114 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 114 and therefore denies the same.

115.    The allegations in paragraph 115 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 115 and therefore denies the same.

116.    The allegations in paragraph 116 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 116 and therefore denies the same.

117.    The allegations in paragraph 117 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, To the extent the allegations in paragraph 117 relate to a company other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 117 and therefore denies the same.

118.    The allegations in paragraph 118 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 118 and therefore denies the same.

119.    The allegations in paragraph 119 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 119 and therefore denies the same.

120.    The allegations in paragraph 120 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 120 and therefore denies the same.

121.    The allegations in paragraph 121 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 121 and therefore denies the same.

122.    The allegations in paragraph 122 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 122 and therefore denies the same.

123.    The allegations in paragraph 123 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 123 and therefore denies the same.

124.    The allegations in paragraph 124 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 124 and therefore denies the same.

125.    The allegations in paragraph 125 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 125 and therefore denies the same.

126.    The allegations in paragraph 126 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 126 and therefore denies the same.

127.    The allegations in paragraph 127 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 127 and therefore denies the same.

128.    The allegations in paragraph 128 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 128 and therefore denies the same.

129.    The allegations in paragraph 129 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 129 and therefore denies the same.

130.    The allegations in paragraph 130 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 130 and therefore denies the same.

131.    The allegations in paragraph 131 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 131 and therefore denies the same.

132.    The allegations in paragraph 132 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 132 and therefore denies the same.

133.    The allegations in paragraph 133 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 133 and therefore denies the same.

134.    The allegations in paragraph 134 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 134 and therefore denies the same.

135.    The allegations in paragraph 135 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 135 and therefore denies the same.

136.    The allegations in paragraph 136 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 136 and therefore denies the same.

137.    The allegations in paragraph 137 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 137 and therefore denies the same.

138.    The allegations in paragraph 138 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 138 and therefore denies the same.

139.    The allegations in paragraph 139 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 139 and therefore denies the same.

140.    The allegations in paragraph 140 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 140 and therefore denies the same.

141.    The allegations in paragraph 141 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 141 and therefore denies the same.

142.    The allegations in paragraph 142 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 142 and therefore denies the same.

143.    The allegations in paragraph 143 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 143 and therefore denies the same.

144.    The allegations in paragraph 144 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 144 and therefore denies the same.

145.    The allegations in paragraph 145 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 145 and therefore denies the same.

146.    The allegations in paragraph 146 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 146 and therefore denies the same.

147.    The allegations in paragraph 147 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 147 and therefore denies the same.

148.    The allegations in paragraph 148 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 148 and therefore denies the same.

149.    The allegations in paragraph 149 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 149 and therefore denies the same.

150.    The allegations in paragraph 150 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 150 and therefore denies the same.

151.    The allegations in paragraph 151 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 151 and therefore denies the same.

152.    The allegations in paragraph 152 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 152 and therefore denies the same.

153.    The allegations in paragraph 153 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 153 and therefore denies the same.

154.    The allegations in paragraph 154 of the Complaint are not directed to Defendant and therefore no response is required.   To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 154 and therefore denies the same.

155.    The allegations in paragraph 155 of the Complaint are not directed to Defendant and therefore no response is required.   To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 155 and therefore denies the same.

156.    The allegations in paragraph 156 of the Complaint are not directed to Defendant and therefore no response is required.   To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 156 and therefore denies the same.

157.    The allegations in paragraph 157 of the Complaint are not directed to Defendant and therefore no response is required.   To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 157 and therefore denies the same.

158.    The allegations in paragraph 158 of the Complaint are not directed to Defendant and therefore no response is required.   To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 158 and therefore denies the same.

159.    The allegations in paragraph 159 of the Complaint are not directed to Defendant and therefore no response is required.   To the extent a response is required, Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 159 and therefore denies the same.

160.    The allegations in paragraph 160 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 160 and therefore denies the same.

161.    The allegations in paragraph 161 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 161 and therefore denies the same.

162.    The allegations in paragraph 162 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 162 and therefore denies the same.

163.    The allegations in paragraph 163 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 163 and therefore denies the same.

164.    The allegations in paragraph 164 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 164 and therefore denies the same.

165.    The allegations in paragraph 165 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 165 and therefore denies the same.

166.    The allegations in paragraph 166 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 166 and therefore denies the same.

167.    The allegations in paragraph 167 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 167 and therefore denies the same.

168.    The allegations in paragraph 168 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 168 and therefore denies the same.

169.    The allegations in paragraph 169 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 169 and therefore denies the same.

170.    The allegations in paragraph 170 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 170 and therefore denies the same.

171.    The allegations in paragraph 171 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 171 and therefore denies the same.

172.    The allegations in paragraph 172 of the Complaint are not directed to Defendant and therefore no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 172 and therefore denies the same.

173.    To the extent the allegations in paragraph 173 relate to individuals or entities other than Defendant, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Paragraph 173 references and purports to characterize the earlier New Jersey Litigation.  The motions and/or orders submitted and/or issued in conjunction with that litigation speak for themselves in the appropriate context. Defendant denies any statement or allegation in paragraph 173 that mischaracterizes the referenced motions and/or orders from the New Jersey Litigation or takes them out of context.  Defendant denies any remaining allegations, characterizations, and implications in paragraph 173, including any which seek to impute liability to Defendant.

VI.    **ALLEGATIONS AGAINST INDIVIDUAL PARTIES BY PRIMARY COC**

A.    **PCBs**

174.    Paragraph 174 consists of Plaintiff's characterization of its own claims, to which no response is required.  To the extent the allegations in paragraph 174 of PCB contamination relate to individuals or entities other than Defendant, Defendant lacks knowledge or information to form

a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 174.

175.    The allegations in paragraph 175 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 175 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 175 and therefore denies the same.

176.    The allegations in paragraph 176 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 176 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 176 and therefore denies the same.

177.    The allegations in paragraph 177 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 177 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 177 and therefore denies the same.

178.    The allegations in paragraph 178 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 178 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent

a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 178 and therefore denies the same.

179.    The allegations in paragraph 179 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final three sentences of paragraph 179 of the Complaint contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 179 and therefore denies the same.

180.    The allegations in paragraph 180 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final three sentences of paragraph 180 of the Complaint contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 180 and therefore denies the same.

181.    The allegations in paragraph 181 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final three sentences of paragraph 181 of the Complaint contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 181 and therefore denies the same.

182.    The allegations in paragraph 182 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final three sentences of paragraph 182 of the

Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 182 and therefore denies the same.

183.    The allegations in paragraph 183 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 183 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 183 and therefore denies the same.

184.    The allegations in paragraph 184 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 184 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 184 and therefore denies the same.

**B.    Mercury**

185.    Paragraph 185 characterizes the relief sought by Plaintiff against certain Defendants, to which no response is required.  To the extent the allegations in paragraph 185 of mercury contamination relate to individuals or entities other than Defendant, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 185.

186.    The allegations in paragraph 186 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 186 of the

Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 186 and therefore denies the same.

187.    The allegations in paragraph 187 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 187 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 187 and therefore denies the same.

188.    The allegations in paragraph 188 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 188 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 188 and therefore denies the same.

189.    The allegations in paragraph 189 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 189 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 189 and therefore denies the same.

190.    The allegations in paragraph 190 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 190 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 190 and therefore denies the same.

191.    The allegations in paragraph 191 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 191 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 191 and therefore denies the same.

192.    The allegations in paragraph 192 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 192 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 192 and therefore denies the same.

193.    The allegations in paragraph 193 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 193 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 193 and therefore denies the same.

194.    The allegations in paragraph 194 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 194 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 194 and therefore denies the same.

195.    The allegations in paragraph 195 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 195 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 195 and therefore denies the same.

196.    The allegations in paragraph 196 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 196 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 196 and therefore denies the same.

197.    The allegations in paragraph 197 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 197 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent

a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 197 and therefore denies the same.

198.    The allegations in paragraph 198 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 198 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 198 and therefore denies the same.

**C.     Dioxins**

199.    Paragraph 199 characterizes the relief sought by Plaintiff against certain Defendants, to which no response is required.  To the extent the allegations in paragraph 199 relate to individuals or entities other than Defendant, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 199.

200.    The allegations in paragraph 200 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 200 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 200 and therefore denies the same.

201.    The allegations in paragraph 201 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final sentence of paragraph 201 of the Complaint contains one or more conclusions of law, to which no response is required.  To the

extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 201 and footnote 33 and therefore denies the same.

202.    The allegations in paragraph 202 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of each bulleted portion of paragraph 202 of the Complaint contain one or more conclusions of law, to which no response is required.   To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 202 and therefore denies the same.

203.    The allegations in paragraph 203 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 203 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 203 and therefore denies the same.

204.    The allegations in paragraph 204 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 204 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 204 and therefore denies the same.

205.    The allegations in paragraph 205 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 205 of the

Complaint contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 205 and therefore denies the same.

206.    The allegations in paragraph 206 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final sentence of paragraph 206 of the Complaint contains one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in that sentence. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 206 and footnote 35 and therefore denies the same.

**D.    DDT**

207.    Paragraph 207 characterizes the relief sought by Plaintiff against certain Defendants, to which no response is required. To the extent the allegations in paragraph 207 of DDT contamination relate to individuals or entities other than Defendant, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of those allegations and therefore denies the same. Defendant denies any remaining allegations in paragraph 207.

208.    The allegations in paragraph 208 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final three sentences of paragraph 208 of the Complaint contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 208 and therefore denies the same.

209.    The allegations in paragraph 209 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final three sentences of paragraph 209 of the

Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 209 and therefore denies the same.

> **E.     Copper**

210.     Paragraph 210 characterizes the relief sought by Plaintiff against certain Defendants, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  To the extent the allegations in paragraph 210 of copper contamination relate to individuals or entities other than Defendant, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 210.

211.     The allegations in paragraph 211 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 211 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 211 and therefore denies the same.

212.     The allegations in paragraph 212 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 212 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 212 and therefore denies the same.

213.    The second, fifth, ninth, tenth, and eleventh sentences of paragraph 213 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies those allegations.  Defendant denies each and every remaining allegation contained in paragraph 213 of the Complaint, except it admits that the property located at  113 Passaic Avenue, Kearny, New Jersey,  as currently depicted on the Tax Map of the Township of Kearny, New Jersey (the "Tax Map"), is bounded by the Passaic River to the west; between 1976 and 2017, Defendant owned the property located at 113 Passaic Avenue, Kearny, New Jersey, as then depicted on the Tax Map (the "Property"); between approximately 1976 and 2010, Defendant operated a plastics compounding facility on the Property; PCBs, antimony, arsenic, beryllium, cadmium, chromium, copper, lead, mercury, zinc, pyrene, flouranthene, chrysene, xylenes, chloroform, ethylbenzene, bromodichloromethane, and phthalates have previously been detected on the Property; and certain authorized discharges from a sump pit located on the Property via an 8-inch pipe occurred pursuant to the New Jersey Pollutant Discharge Elimination System Discharge to Surface Water Permit No. NJ0002194.  Defendant denies the remaining allegations, characterizations, and implications in paragraph 213.

214.    The allegations in paragraph 214 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 214 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 214 and therefore denies the same.

215.    The allegations in paragraph 215 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 215 of the

Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 215 and therefore denies the same.

216.    The allegations in paragraph 216 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 216 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 216 and therefore denies the same.

217.    The allegations in paragraph 217 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 217 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 217 and therefore denies the same.

218.    The allegations in paragraph 218 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 218 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 218 and therefore denies the same.

219.     The allegations in paragraph 219 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 219 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 219 and therefore denies the same.

220.     The allegations in paragraph 220 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 220 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 220 and therefore denies the same.

221.     The allegations in paragraph 221 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 221 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 221 and therefore denies the same.

222.     The allegations in paragraph 222 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 222 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 222 and therefore denies the same.

223.    The allegations in paragraph 223 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 223 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 223 and therefore denies the same.

224.    The allegations in 224 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 224 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 224 and therefore denies the same.

225.    The allegations in paragraph 225 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 225 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 225 and therefore denies the same.

226.    The allegations in paragraph 226 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 226 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent

a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 226 and therefore denies the same.

F.    **Dieldrin**

227.    Paragraph 227 characterizes the relief sought by Plaintiff against certain Defendants, to which no response is required.  To the extent the allegations in paragraph 227 of dieldrin contamination relate to individuals or entities other than Defendant, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 227.

228.    Defendant incorporates as if fully set forth herein its responses to paragraphs 200, 201, 203, and 208 of the Complaint.  The remainder of paragraph 228 of the Complaint is not directed to Defendant and therefore no response is required.  Further, the remainder of paragraph 228 of the Complaint consists of one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 228 and therefore denies the same.

G.    **PAHs**

229.    Paragraph 229 characterizes the relief sought by Plaintiff against certain Defendants, to which no response is required.  To the extent the allegations in paragraph 229 of PAH contamination relate to individuals or entities other than Defendant, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 229.

230.    The allegations in paragraph 230 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final four sentences of paragraph 230 of the

Complaint contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 230 and therefore denies the same.

231.    The allegations in paragraph 231 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final three sentences of paragraph 231 of the Complaint contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 231 and therefore denies the same.

232.    The allegations in paragraph 232 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final three sentences of paragraph 232 of the Complaint contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 232 and therefore denies the same.

233.    The allegations in paragraph 233 of the Complaint are not directed to Defendant and therefore no response is required. Further, the final three sentences of paragraph 233 of the Complaint contain one or more conclusions of law, to which no response is required. To the extent a response is required, Defendant denies the allegations in those sentences. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 233 and therefore denies the same.

234.    The allegations in paragraph 234 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the second and third sentences of paragraph 234 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 234 and therefore denies the same.

235.    The allegations in paragraph 235 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 235 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 235 and therefore denies the same.

236.    The allegations in paragraph 236 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 236 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 236 and therefore denies the same.

237.    The allegations in paragraph 237 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 237 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 237 and therefore denies the same.

238.    The allegations in paragraph 238 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 238 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 238 and therefore denies the same.

239.    The allegations in paragraph 239 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final four sentences of paragraph 239 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 239 and therefore denies the same.

240.    The allegations in paragraph 240 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 240 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 240 and therefore denies the same.

241.    The allegations in paragraph 241 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 241 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent

a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 241 and therefore denies the same.

242.    The allegations in paragraph 242 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 242 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 242 and therefore denies the same.

243.    The allegations in paragraph 243 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 243 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 243 and therefore denies the same.

244.    The allegations in paragraph 244 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 244 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 244 and therefore denies the same.

**H.    Lead**

245.    Paragraph 245 characterizes the relief sought by Plaintiff against certain Defendants, to which no response is required.  To the extent the allegations in paragraph 245 of

lead contamination relate to individuals or entities other than Defendant, Defendant lacks knowledge or information to form a belief as to the truth or accuracy of those allegations and therefore denies the same.  Defendant denies any remaining allegations in paragraph 245.

246.   The allegations in paragraph 246 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 246 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 246 and therefore denies the same.

247.   The allegations in 247 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 247 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 247 and therefore denies the same.

248.   The allegations in paragraph 248 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 248 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 248 and therefore denies the same.

249.   The allegations in paragraph 249 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 249 of the

Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 249 and therefore denies the same.

250.    The allegations in paragraph 250 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 250 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 250 and therefore denies the same.

251.    The allegations in paragraph 251 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 251 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 251 and therefore denies the same.

252.    The allegations in paragraph 252 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 252 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 252 and therefore denies the same.

253.     The allegations in paragraph 253 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 253 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 253 and therefore denies the same.

254.     The allegations in paragraph 254 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 254 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 254 and therefore denies the same.

255.     The allegations in paragraph 255 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 255 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 255 and therefore denies the same.

256.     The allegations in paragraph 256 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 256 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks

knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 256 and therefore denies the same.

257.    The allegations in paragraph 257 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 257 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 257 and therefore denies the same.

258.    The allegations in paragraph 258 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 258 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 258 and therefore denies the same.

259.    The allegations in paragraph 259 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 259 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 259 and therefore denies the same.

260.    The allegations in paragraph 260 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 260 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent

a response is required, Defendant denies the allegations in those sentences.   Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 260 and therefore denies the same.

261.    The allegations in paragraph 261 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 261 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.   Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 261 and therefore denies the same.

262.    The allegations in paragraph 262 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 262 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.   Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 262 and therefore denies the same.

263.    The allegations in paragraph 263 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 263 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.   Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 263 and therefore denies the same.

264.    The allegations in paragraph 264 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 264 of the

Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 264 and therefore denies the same.

265.    The allegations in paragraph 265 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 265 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 265 and therefore denies the same.

266.    The allegations in paragraph 266 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 266 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 266 and therefore denies the same.

267.    The allegations in paragraph 267 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 267 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 267 and therefore denies the same.

268.    The allegations in paragraph 268 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the allegations in paragraph 268 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 268 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 268 and therefore denies the same.

269.    The allegations in paragraph 269 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 269 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 269 and therefore denies the same.

270.    The allegations in paragraph 270 of the Complaint are not directed to Defendant and therefore no response is required.  Further, the final three sentences of paragraph 270 of the Complaint contain one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in those sentences.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in paragraph 270 and therefore denies the same.

## VII.    CAUSES OF ACTION

### COUNT I:  CERCLA COST RECOVERY UNDER SECTION 107(A)

271.    Defendant restates and incorporates by reference its responses to paragraphs 1 through 270 of the Complaint.

272.     Paragraph 272 of the Complaint consists of one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 272, except it admits it is a "person" as defined in CERCLA Section 101(21), and is without knowledge or information sufficient to form a belief about the truth of allegations as to other defendants.

273.     Paragraph 273 of the Complaint consists of one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 273.

274.     Plaintiff's Section 107(a) claim relating to the Tierra Removal ASAOC, the CSO ASAOC, and the 2016 ASAOC has been dismissed pursuant to the Court's July 31, 2019 Order partially granting Defendants' Motions to Dismiss; therefore, no response is required to allegations relating to those Agreements/Orders.  Defendant further states that paragraph 274 contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 274.

WHEREFORE, Defendant demands the dismissal of Count I of Plaintiff's Complaint with prejudice, attorney's fees, costs of suit, and such other relief as the Court may deem equitable and just.

## COUNT II:  CERCLA CONTRIBUTION UNDER SECTION 113(F)(1) AND 113(F)(3)(B)

275.     Defendant restates and incorporates by reference its responses to paragraphs 1 through 270 of the Complaint.

276.     Paragraph 276 of the Complaint consists of one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 276, except it admits it is a "person" as defined in CERCLA

Section 101(21), and is without knowledge or information sufficient to form a belief about the truth of allegations as to other defendants.

277.     Paragraph 277 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 277.

278.     Paragraph 278 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 278.

279.     Plaintiff's Section 113(f)(1) claim relating to the RM 10.9  Removal UAO has been dismissed pursuant to the Court's July 31, 2019 Order partially granting Defendants' Motions to Dismiss and therefore no response is required.  Defendant further states that paragraph 279 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 279.

280.     Plaintiff's Section 113(f)(1) claim relating to the RM 10.9  Removal UAO has been dismissed pursuant to the Court's July 31, 2019 Order partially granting Defendants' Motions to Dismiss and therefore no response is required to allegations relating to the RM 10.9 Removal UAO.  Further, paragraph 280 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 280.

281.     Plaintiff's Section 113(f)(1) claim relating to the RM 10.9 Removal UAO has been dismissed pursuant to the Court's July 31, 2019 Order; therefore, no response is required to allegations relating to the UAO.  Defendant further states that paragraph 281 of the Complaint

contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 281.

WHEREFORE, Defendant demands the dismissal of Count II of Plaintiff's Complaint with prejudice, attorney's fees, costs of suit and such other relief as the Court may deem equitable and just.

## COUNT III:  CERCLA DECLARATORY JUDGMENT

282.   Defendant restates and incorporates by reference its responses to paragraphs 1 through 270 of the Complaint.

283.   Paragraph 283 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 283.

284.   Paragraph 284 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 284.

285.   To the extent Plaintiff alleges there is an actual controversy regarding Plaintiff's Section 107(a) claims relating to the Tierra Removal Order, the CSO ASAOC, and/or the 2016 ASAOC and Plaintiff's Section 113 claim relating to the RM 10.9 Removal UAO, these claims have been dismissed pursuant to the Court's July 31, 2019 Order; therefore, no response is required to allegations relating to these Agreements/Orders.  Defendant further states that paragraph 285 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 285.

286.   To the extent Plaintiff alleges there is an actual controversy regarding Plaintiff's Section 107(a) claims relating to the Tierra Removal Order, the CSO ASAOC, and/or the 2016 ASAOC and Plaintiff's Section 113 claim relating to the RM 10.9 Removal UAO, these claims

have been dismissed pursuant to the Court's July 31, 2019 Order; therefore, no response is required to allegations relating to these Agreements/Orders.  Defendant further states that paragraph 286 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 286.

287.    Paragraph 287 of the Complaint contains one or more conclusions of law, to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 287.

WHEREFORE, Defendant demands the dismissal of Count III of Plaintiff's Complaint with prejudice, attorney's fees, costs of suit and such other relief as the Court may deem equitable and just.

## SEPARATE DEFENSES

The following are defenses Defendant may assert based on the facts alleged in the Complaint or based on facts adduced in discovery.  In disclosing these defenses, Defendant does not assume any burden of proof not otherwise required by law.  Moreover, Defendant undertakes the burden of proof only as to those defenses deemed "affirmative" defenses by law, regardless of how defenses are denominated herein.  Finally, Defendant reserves its right to assert further defenses that may become apparent during the course of discovery.

### FIRST SEPARATE DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

### SECOND SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

## THIRD SEPARATE DEFENSE

Plaintiff lacks standing to assert, in whole or in part, the claims and the demands for relief in the Complaint.

## FOURTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## FIFTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, because none of the alleged acts or omissions of Defendant proximately caused Plaintiff's alleged damages.

## SIXTH SEPARATE DEFENSE

Defendant is not a party responsible under CERCLA Section 107(a)(1) through (4) with respect to the release of any Contaminants of Concern ("COCs") to the Passaic River and therefore is not responsible for any of the "necessary costs" sought by Plaintiff.

## SEVENTH SEPARATE DEFENSE

TCDD is the sole or primary COC with respect to remedial investigation of, removal actions in, and the OU-2 Remedy selected by the EPA.  Thus, only Plaintiff, and parties who are responsible for TCDD under CERCLA Section 107, are liable for the "necessary response costs" Plaintiff seeks to recover.

## EIGHTH SEPARATE DEFENSE

The claims and/or damages alleged in the Complaint are barred, in whole or in part, by Plaintiff's failure to mitigate Plaintiff's "necessary response costs," if any.

## NINTH SEPARATE DEFENSE

Defendant cannot be held jointly and severally liable because its acts or omissions, if any, and the harm allegedly caused thereby, or both, were separate and distinct from the acts, omissions,

or harm caused by others, including Plaintiff, and the alleged harm is divisible from any harm allegedly caused by acts or omissions of Plaintiff and/or others.

## TENTH SEPARATE DEFENSE

Plaintiff cannot recover costs under CERCLA Section 107, 42 U.S.C. § 9607, because Plaintiff has not incurred any necessary response costs.

## ELEVENTH SEPARATE DEFENSE

Plaintiff has failed to join parties in whose absence complete relief cannot be accorded among existing parties as required by Fed. R. Civ. P. 19(a)(1).

## TWELFTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## THIRTEENTH SEPARATE DEFENSE

Defendant's releases to the Passaic River, if any, whether in whole or in part, were "federally permitted releases" within CERCLA Section 107(j), 42 U.S.C. § 9607(j), and resulting response costs or damages, if any, may not be recovered under CERCLA.

## FOURTEENTH SEPARATE DEFENSE

Defendant is not liable to Plaintiff because it meets the statutory criteria for a *de micromis* exemption set forth in CERCLA Section 107(o), 42 U.S.C. §9607(o).

## FIFTEENTH SEPARATE DEFENSE

Defendant's contribution of hazardous substances, if any, to the Passaic River was *de minimis.*

## SIXTEENTH SEPARATE DEFENSE

Any recoverable necessary response costs must be allocated among all parties in accordance with those factors recognized under Section 113(f) of CERCLA, 42 U.S.C. §9613(f),

and other equitable considerations, including without limitation, Plaintiff's recalcitrance and intentional conduct.

## SEVENTEENTH SEPARATE DEFENSE

Some or all costs alleged in the Complaint were or are unnecessary and/or inconsistent with the National Contingency Plan as set forth at 40 CFR § 300, *et seq.,* and are not "necessary costs of response" as required by CERCLA, and therefore cannot be reimbursed in whole or in part.

## EIGHTEENTH SEPARATE DEFENSE

Discharges to the Passaic River by the Passaic Valley Sewerage Commission ("PVSC") or other municipally owned sewage treatment systems were not the fault or responsibility of Defendant, who, at all times, discharged to the PVSC system or other municipally owned sewer treatment systems in compliance with its permits and/or applicable discharge limits and/or law.

## NINETEENTH SEPARATE DEFENSE

Plaintiff is a CERCLA potentially responsible party and, therefore, it may not seek to impose joint and several liability pursuant to CERCLA Section 107, 42 U.S.C.§ 9607, against Defendant.  To the extent, if any, that Plaintiff incurs or has incurred necessary response costs, it may only seek such costs pursuant to CERCLA Section 113, 42 U.S.C. § 9613.

## TWENTIETH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant did not release, dispose of, or arrange for the disposal of hazardous substances necessitating a response action.

## TWENTY-FIRST SEPARATE DEFENSE

CERCLA does not permit an award of attorney's fees, experts' fees, consulting fees, costs of litigation, oversight or other costs, or interest as sought by Plaintiff.

### TWENTY-SECOND SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of release.

### TWENTY-THIRD SEPARATE DEFENSE

Any recovery sought by Plaintiff is barred by the doctrine of unclean hands.

### TWENTY-FOURTH SEPARATE DEFENSE

Defendant cannot be held jointly and severally liable for the acts or omissions of third parties because its acts or omissions, if any, were separate and distinct and the alleged harm is divisible from and greater than any harm allegedly caused by acts or omissions of Defendant.

### TWENTY-FIFTH SEPARATE DEFENSE

Plaintiff's expenditure of costs, if any, were proximately caused, in whole or in part, by the acts or omissions of persons or entities which have not been joined in this suit.  The responsibility of the Defendant can only be determined after the percentages of responsibility of all parties and non-parties have been determined.   Accordingly, Defendant seeks an adjudication of the percentage of responsibility of Plaintiff and each and every person or entity (parties and nonparties) whose acts or omissions contributed to the harm and damages complained of in the Complaint.

### TWENTY-SIXTH SEPARATE DEFENSE

Any alleged response costs incurred or to be incurred by Plaintiff were caused by Plaintiff's or its predecessors' sole negligence or intentional misconduct.  Plaintiff's claims are barred, in whole or in part, by Plaintiff's and its predecessors' intentional conduct.

### TWENTY-SEVENTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, and costs claimed, if any, should be limited, to the extent any fault, negligence, assumption of risk, or other culpable conduct by Plaintiff caused, proximately caused, and/or contributed to the alleged injuries and damages, or to

the extent that the doctrines of contributory negligence, comparative fault, avoidable consequences, and/or other applicable common-law or statutory doctrines apply.

## TWENTY-EIGHTH SEPARATE DEFENSE

Defendant reserves the right to adopt defenses asserted by co-defendants or defenses that become appropriate as discovery continues, through the date of trial.

## TWENTY-NINTH SEPARATE DEFENSE

Plaintiff has no right of contribution for response costs or other damages because there is no common liability with Defendant.

## THIRTIETH SEPARATE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, because declaratory judgment cannot be had for past costs under CERCLA.

## THIRTY-FIRST SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## THIRTY-SECOND SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that the alleged damages in the Complaint were proximately caused by persons or entities other than Defendant, including intervening and/or superseding acts or omissions.

## THIRTY-THIRD SEPARATE DEFENSE

Plaintiff's causes of action are barred, in whole or in part, because Plaintiff would be unjustly enriched if it were to prevail on any of the causes of action.

## THIRTY-FOURTH SEPARATE DEFENSE

Plaintiff's claims are barred in whole or part by CERCLA Section 107(b), 42 U.S.C. § 9607(b), because the releases or threatened releases of hazardous substances, if any, as alleged in

the Complaint were caused solely by: an act of God; an act of war; or the acts or omissions of persons or entities other than Defendant, for whom Defendant is not responsible.

## THIRTY-FIFTH SEPARATE DEFENSE

Plaintiff is not entitled to recover from Defendant because Plaintiff has not incurred costs in excess of its fair, equitable and proportionate share of necessary response costs.

## THIRTY-SIXTH SEPARATE DEFENSE

At all relevant times, Defendant complied with all applicable environmental laws, regulations, industry standards, and ordinances relevant to the need for the remedial action determined by EPA in its issuance of the ROD, and otherwise conducted itself reasonably, prudently, in good faith, and with due care for the rights, safety, and property of others.

## THIRTY-SEVENTH SEPARATE DEFENSE

Some or all of the relief sought by Plaintiff in the Complaint is barred by the protections afforded Defendant in the June 18, 2012 Administrative Settlement Agreement and Order on Consent (Docket No. 02-2012-2015), and pursuant to CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2).

## THIRTY-EIGHTH SEPARATE DEFENSE

Defendant is not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority or agency.

## THIRTY-NINTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of res judicata.

## FORTIETH SEPARATE DEFENSE

In the event Defendant is found to be liable for response costs or response activity costs alleged by Plaintiff, Defendant cannot be liable for any costs beyond its proportionate share because the harms alleged by Plaintiff are distinct and reasonably capable of division, and because

there is a reasonable basis for determining the contribution of each party to the alleged harm or harms.

### FORTY-FIRST SEPARATE DEFENSE

Plaintiff is not entitled to recover from Defendant more than its respective fair, equitable, and proportionate share, if any, of the necessary response costs allegedly expended by Plaintiff or to otherwise recover from Defendant more than the amount of such relief, if any, for which Defendant is liable.

### FORTY-SECOND SEPARATE DEFENSE

Defendant adopts by reference all affirmative defenses heretofore and hereafter pleaded by the other parties as may be applicable to the facts alleged against Defendant.

### FORTY-THIRD SEPARATE DEFENSE

Defendant does not waive or relinquish any other available defenses.  Defendant expressly reserves the right to raise such additional defenses as may be established through discovery, further investigation in this case, or further events with respect to the subject matter of this action.

### FORTY-FOURTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of ratification.

### FORTY-FIFTH SEPARATE DEFENSE

To the extent some or all of Plaintiff's claims relate to COCs that are present in historic fill, such claims are barred in whole or in part under CERCLA.

### FORTY-SIXTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by that certain Mutual Contribution Release Agreement between OxyChem, Maxus, Tierra, and Defendant dated May 20, 2017.

## FIFTIETH SEPARATE DEFENSE

Plaintiff may not seek to impose joint and several liability against Defendant, and to the extent Plaintiff incurs recoverable response costs for which Defendant is determined to be liable, Plaintiff is not entitled to recover from Defendant more than Defendant's own several share, and Plaintiff must prove such share.

## FIFTY-FIRST SEPARATE DEFENSE

Several of Plaintiff's claims as against Defendant, and as plead, are barred in whole or in part by the Court's Order, dated July 31, 2019 (Doc. 647).

## FIFTY-SECOND SEPARATE DEFENSE

Plaintiff's claim against Defendant for costs related to the 2016 ASAOC is barred for failure of a condition precedent to such claim.

## FIFTY-THIRD SEPARATE DEFENSE

Defendant is entitled to a setoff against Plaintiff's claims.

## FIFTY-FOURTH SEPARATE DEFENSE

Plaintiff's claims against Defendant are barred in whole or in part by the doctrine of accord and satisfaction.

## FIFTY-FIFTH SEPARATE DEFENSE

Plaintiff has wrongfully failed to pay for its share of RI/FS costs in accordance with agreements entered into with Defendant and therefore Plaintiff's claim should be barred altogether or reduced based on its outstanding debts.

## FIFTY-SIXTH SEPARATE DEFENSE

To the extent Plaintiff seeks relief regarding alleged future costs, Plaintiff may only recover, if at all, for future response costs incurred in connection with an existing legal obligation.

## FIFTY-SEVENTH SEPARATE DEFENSE

The relief sought is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over these matters pursuant to the doctrine of primary jurisdiction, abstention, and or the doctrine of separation of powers.

## COUNTERCLAIM

For its Counterclaim against Occidental Chemical Corporation ("OxyChem"), Defendant hereby alleges as follows:

## NATURE OF ACTION

1.     OxyChem has refused to perform response activities and pay its share of response costs at the Diamond Alkali Superfund Site, which is comprised of the former pesticides manufacturing plant and surrounding properties at 80 and 120 Lister Avenue in Newark, New Jersey (Operable Unit 1 ("OU-1")), the Lower Passaic River Study Area, the Newark Bay Study Area and the areal extent of contamination.  The United States Environmental Protection Agency ("EPA") defines these areas as including the 17-mile stretch of the Lower Passaic River and its tributaries from the Dundee Dam to Newark Bay, along with the Newark Bay and portions of the Hackensack River, Arthur Kill and Kill Van Kull.

2.     Defendant seeks to recover certain past, present, and future response costs caused by releases and/or threatened releases of Hazardous Substances at and from facilities owned and/or operated by OxyChem and its predecessors-in-interest at 80 and 120 Lister Avenue, Newark, New Jersey (the "Diamond Alkali Plant") and facilities where OxyChem and its predecessors-in-interest disposed of Hazardous Substances, including 2,3,7,8-tetrachlorodibenzo-p-dioxinm ("2,3,7,8-TCDD"), a particularly potent form of dioxin, to the extent these claims have not been

mutually released by Plaintiff and Defendant in the Mutual Contribution Release Agreement. Releases from the Diamond Alkali Plant are the driving force behind ongoing and future investigations and remedial actions at the Diamond Alkali Superfund Site.  Defendant seeks contribution from OxyChem pursuant to Section 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613.  Among other things, Defendant seeks to recover response costs incurred and to be incurred in connection with the Remedial Investigation/Feasibility Study for the Lower Passaic River Study Area portion of the Diamond Alkali Superfund Site, to the extent these claims have not been mutually released by Plaintiff and Defendant in the Mutual Contribution Release Agreement.  Defendant also seeks to recover response costs incurred and to be incurred to perform a June 18, 2012 Administrative Settlement Agreement and Order on Consent (Docket No. 02-2012-2015) ("RM 10.9 ASAOC"), to the extent these claims have not been mutually released by Plaintiff and Defendant in the Mutual Contribution Release Agreement.  In addition, Defendant seeks a declaration that OxyChem is liable under CERCLA for future costs that will be incurred as a result of releases of dioxin and other contaminants of concern to the Diamond Alkali Superfund Site by OxyChem and its predecessors-in-interest.  Defendant further seeks a declaration that OxyChem is liable to make all funding payments for Diamond Alkali Superfund Site investigation and remediation activities that are required under the Administrative Orders on Consent reached with EPA.

## JURISDICTION AND VENUE

3.      The Counterclaims set forth herein arise out of the same transactions and occurrences that are set forth in the Complaint.

4.      If jurisdiction is proper with respect to the Complaint, it is proper with respect to Defendant for the purpose of these Counterclaims.

5.     If venue is proper with respect to the Complaint, it is proper with respect to Defendant for the purpose of these Counterclaims.

**PARTIES**

6.     Defendant has incurred response costs at the Diamond Alkali Superfund Site.

7.     Upon information and belief, OxyChem is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 5005 LBJ Freeway, Dallas, Texas 75380.

8.     OxyChem is Diamond Alkali Company, or at least the corporate successor to all the liabilities of Diamond Alkali Company ("Successor-in-interest"), which owned and/or operated the Diamond Alkali Plant at the time 2,3,7,8-TCDD and other Hazardous Substances were disposed and released into the Passaic River and other parts of the Diamond Alkali Superfund Site.  OxyChem is the same entity as, or the Successor-in-interest, to numerous other entities involved in the ownership and/or operation of the Diamond Alkali Plant, including but not limited to Kolker Realty Company, Kolker Chemical Works, Inc., Diamond Alkali Organic Chemical Division, Inc., Diamond Alkali Company, Diamond Chemicals Company, Diamond Shamrock Chemicals Company, Occidental Electrochemicals Corporation, Occidental Diamond Alkali Corporation, and Occidental Agricultural Products, Inc.  (with OxyChem hereinafter at times collectively referred to as "OxyChem").

**GENERAL ALLEGATIONS**

9.     For at least twenty years, from approximately 1945 to approximately 1969, and at various other times thereafter, OxyChem and its corporate predecessors disposed and released 2,3,7,8-TCDD, a particularly potent form of dioxin, dichlorodiphenyltriehloroethane ("DDT"), and various other pesticides, chemicals, and Hazardous Substances into the Passaic River and the surrounding area.  Despite clear responsibility for these releases, OxyChem has not fully

remediated the areas impacted by its 2,3,7,8-TCDD and its other Hazardous Substances, resulting in continuing and ongoing releases to the Passaic River and the surrounding area.

10.     OxyChem is liable under CERCLA Section 113 for response costs resulting from its disposal and releases of Hazardous Substances from the Diamond Alkali Plant and into the Passaic River and the surrounding area.

11.     Defendant has incurred costs to respond to OxyChem's releases and threatened releases from the Diamond Alkali Plant and adjacent disposal areas and areas of migration, and has incurred damages as a result of OxyChem's repudiation of future EPA funding requirements.

### Ownership and Operational History of the Diamond Alkali Plant

12.     From approximately 1945 through approximately 1969, OxyChem's corporate predecessors owned and operated the Diamond Alkali Plant located at 80 and 120 Lister Avenue, on the south bank of the Passaic River at approximately River Mile 3.2.   During this time, OxyChem's corporate predecessors manufactured DDT and phenoxy herbicides, including Agent Orange, at the Diamond Alkali Plant.

13.     Two of the chemicals manufactured by OxyChem's corporate predecessors at the Diamond Alkali Plant were 2,4-dichlorophenoxyacetic acid ("2,4-D") and 2,4,5-trichlorophenoxyacetic acid ("2,4,5-T").   2,3,7-8-TCDD is a highly toxic form of dioxin that was formed as a by-product of the 2,4,5-T production process.

14.     Like the many other constituents used, produced, disposed, and released at and from the Diamond Alkali Plant and adjacent disposal areas, DDT, 2,4-D, 2,4,5-T, and 2,3,7,8-TCDD are Hazardous Substances under 42 U.S.C. § 9601(14) and, together, the Hazardous Substances released from the Diamond Alkali Plant are the drivers of the ecological and human health risks, the remedial and removal actions, and the cleanup and removal costs at the Diamond Alkali Superfund Site.

15.     OxyChem's corporate predecessors continued to operate the Diamond Alkali Plant until August 1969, when the plant was sold and/or leased to Chemicaland Corporation ("Chemicaland").  OxyChem's corporate predecessors did not adequately dismantle or remediate the plant facilities, equipment, or lines that were contaminated with 2,3,7,8-TCDD and other Hazardous Substances prior to transferring ownership and operation to Chemicaland.

16.     From on or about November 22, 1976, until on or about February 24, 1977, OxyChem's corporate predecessors again assumed management and operation of the Diamond Alkali Plant.  During that time, the plant continued to manufacture pesticides and herbicides. Additional and ongoing disposal and releases of 2,3,7,8-TCDD and other Hazardous Substances at and from the Diamond Alkali Plant and adjacent disposal areas continued during this period.

17.     The facilities, equipment, and lines left in place by OxyChem's corporate predecessors at the Diamond Alkali Plant continued to release Hazardous Substances into the Passaic River at least into the 1980s.

### The *Aetna* Litigation and the Court's Findings of Intentional and Continuous Releases from the Diamond Alkali Plant

18.     In September 1984, one of OxyChem's predecessors-in-interest, Diamond Shamrock Chemicals Company ("DSCC"), filed suit against Aetna Casualty & Surety Company and 125 other insurers in New Jersey Superior Court.  As a result of certain transactions, OxyChem is the successor-by-merger to DSCC.  Because OxyChem is the successor-by-merger to DSCC, DSCC's liabilities have passed by operation of law to OxyChem.

19.     In the *Aetna* litigation, DSCC sought a declaratory judgment that its insurers were required to pay for DSCC's past and future remediation of the Diamond Alkali Plant and for third-party bodily injury and property damage claims resulting from dioxin "allegedly created in the manufacture of 2,4,5-T and other chemicals at the Newark Plant."

20.     In response, DSCC's insurers claimed that dioxin had been intentionally released from the Diamond Alkali Plant into the environment and, therefore, coverage for losses due to those releases was excluded under the policies.

21.     In 1988, DSCC's declaratory judgment action was tried before New Jersey Superior Court Judge Reginald Stanton.

22.     After a twenty-day bench trial, Judge Stanton issued a strongly-worded 50-page opinion containing the court's detailed findings of fact and conclusions of law.

23.     Based on extensive findings of fact and conclusions of law, Judge Stanton concluded that none of the insurers was liable under any of the policies with respect to DSCC's operation of the Diamond Alkali Plant.

24.     In summary, the trial court found that DSCC "intentionally and continuously discharged highly toxic chemical effluent into the Passaic River from 1951 to 1969."

25.     The trial court specifically found:

- From 1951 to 1956, DSCC "intentionally discharged all of its waste chemical effluent into the Passaic River."

- In 1956, the Passaic Valley Sewerage District insisted that DSCC discontinue its discharges into the Passaic River and, in response, DSCC "purportedly tied its entire complex at the [Diamond Alkali Plant] into an industrial sewer constructed by the Passaic Valley Sewerage Commission."

- Although DSCC "purported to tie the whole [Diamond Alkali Plant] into the sewer in 1956, it actually tied only the 2,4-D building into the sewer.  The chemical effluent from the main building continued to be discharged directly into the Passaic River."

- Those discharges "were intentional, planned discharges from processing equipment through pipes or ditches."

- "In addition, from 1951 through 1969, spills onto floors and ground surfaces drained mostly into the Passaic River.  These spills were constant, and, collectively, they were substantial in volume."

- DSCC "was conscious that its discharges into the [Passaic] [R]iver were illegal. It deliberately concealed them, and over a period of many years employed an alarm system to warn employees to stop the discharges when Passaic Valley inspectors were on the premises."

- "Over the years, discharges from the [Diamond Alkali Plant] into the Passaic River included 2,4,5-T acid (and dioxin), caustic soda, DDT, sulfuric acid, TCP (and dioxin), muriatic acid and monochlorobenzene."

- "The conclusion is inescapable that the consistent policy of [DSCC's] management was to discharge dangerous chemicals into the Passaic River in known violation of public law. This policy persisted from 1951 through 1969."

- "The policy was consciously adopted by [DSCC] management because the pollution of the public waters of New Jersey was not perceived by management as a significant wrong, and it would have been technically difficult and very costly to have avoided such discharges."

- "Housekeeping at the [Diamond Alkali Plant] ranged from inadequate to poor throughout the entire period of its operation by [DSCC]. . . . Spills of liquid and solid chemical products and wastes were literally continuous during every day of the plant's operations. Some pipes were always leaking."

- "The fact that current remediation efforts are centering on the buildings and soils of the [Diamond Alkali Plant] rather than on the Passaic River does not mean that the extensive testimony about the abuse of the river was irrelevant. The testimony was highly relevant because it established that from 1951 to 1969 [DSCC] had a mindset and a method of conducting manufacturing operations which were destructive of the land, air and water resources of the environment."

- "[E]ven by the standards of the 1951-1969 period, [DSCC's] conduct in operating the [Diamond Alkali Plant] was unacceptably wrong and irresponsible. [DSCC] always put its narrowly perceived economic interest first."

- DSCC knew "the nature of the chemicals it was handling, it [knew] that they were being continuously discharged into the environment, and it [knew] that they were doing at least some harm."

26.     The trial court held that DSCC had no insurance coverage for the discharges because DSCC's discharges from the Diamond Alkali Plant into the Passaic River constituted knowing and intentional conduct.

27.     The trial court stated "[w]hen someone acts the way [DSCC] did for 18 years, it is no accident that the environment was contaminated, that the property was damaged, that the neighbors might have been injured."

28.     In the *Aetna* trial, Judge Stanton found that DSCC, as a matter of corporate policy, intentionally and continuously discharged dioxin, DDT and other Hazardous Substances from the Diamond Alkali Plant into the Passaic River during the entire period of its plant operations.

29.     Some of the detailed testimony regarding discharges to the Passaic River included testimony from Walter Blair, a mechanic at the Diamond Alkali Plant from 1953 to 1969.  He testified that the wastewater effluent from the Diamond Alkali Plant was piped directly to the Passaic River.  He also testified that DSCC heated the waste pit contents and disposed of that waste directly into the Passaic River.  He further testified that the floor wash water went directly into the Passaic River.

30.     Additional detailed testimony regarding the intentional discharges and releases to the Passaic River included that of Nicholas Centanni, a Diamond Alkali Plant employee from 1948 until 1969.  He testified that the term "riverize" was used at the Diamond Alkali Plant to describe the disposal of effluents into the Passaic River.  He also testified that sulfuric acid was poured on the concrete floors of the process buildings, including the area where the 2,4,5-T process was conducted.  He stated that all of the process buildings at the Diamond Alkali Plant had a trench leading to a catch basin, which in turn directly led to the Passaic River.  When the catch basin was full, Nicholas Centanni testified that solid material would be removed and the basin washed, with the wash water flowing directly into the Passaic River.  Finally, he testified that he remembers a "mountain" of DDT that accumulated in the Passaic River due to discharges from the Diamond Alkali Plant.

31.     Another Diamond Alkali Plant employee from 1955 to 1969, Aldo Andreini, also testified that if spills occurred at the Diamond Alkali Plant, the material would be washed into a trench and then into the Passaic River.

32.     Arthur Scureman, a Diamond Alkali Plant employee from 1951 to 1969, also testified that the trench system outside the building in which the 2,4-D and 2,4,5-T was made led directly to the Passaic River.  He also testified about his early morning overtime work, which meant "put[ting] some stuff away in the river."  He stated, "I used to come in early, work overtime to drop it in the river because they didn't want the barges and everything going up and down to see us dropping anything in the river."

33.     Arthur Scureman also testified that if he saw DSCC's guard come in with inspectors, he was to "try to stop them so they don't go to the river front.  And run in the building and the ester room and 2,4-D building and tell them to stop dropping all their stuff to the sewer, close off the valves."

34.     Finally, Mr. Scureman testified that before DSCC installed a catch basin, "everything used to go . . . to the river."

35.     Long-time Diamond Alkali Plant Manager John Burton testified that "generally speaking, any substantial quantities of acids or any substantial quantity of any chemicals was not permitted [by law to be discharged into the Passaic River]."  He was concerned about this "because [they] were putting in substantial quantities of acids and various organic chemicals."  He further testified that the chemicals discharged into the Passaic River included caustic soda, muriatic acid, sulfuric acid, and DDT.

36.     John Burton described the Diamond Alkali Plant's pipe system, which led directly to the Passaic River until 1956.  He stated "[s]o that at some point probably in the 1954 or

thereabouts, I would have known that the amount of chlorophenols and the effluent from the trichlorophenol unit was illegal."

37.     DSCC's own expert witness, Dr. L. Anthony Wolfskill, testified that discharges into the Passaic River were both accidental and planned.  He testified that the Diamond Alkali Plant's effluent discharges into the Passaic River violated regulations and that those violations were essentially continuous.

38.     DSCC also called Michael Catania, Deputy Commissioner of the New Jersey Department of Environmental Protection ("NJDEP") at the time.  He testified that DSCC had entered into a consent decree with NJDEP to conduct certain activities as a result of dioxin contamination at the Diamond Alkali Plant.  He also testified that dioxin levels increased in the area of the Diamond Alkali Plant and decreased away from the plant.

39.     DSCC appealed the trial court's decision on the environmental claims.  In its briefing, DSCC admitted that it discharged dioxin into the Passaic River:  "Up to 1960 the Newark Plant discharged 2,4,5-T process waste waters to the river. . . .  [T]hese discharges contained minute quantities of 2,4,5-T, which, in turn, contained even more minute quantities, of dioxin …."

40.     On appeal, instead of claiming that the Diamond Alkali Plant did not discharge into the Passaic River, DSCC argued that it should be afforded insurance coverage because it did not expect or intend the damages that resulted from its discharges.  DSCC also claimed that the evidence relating to the discharges at the Diamond Alkali Plant was not relevant to the insurance coverage determination.

41.     The New Jersey Appellate Division disagreed and affirmed the trial court's ruling on the environmental claims.  The Appellate Division found that the trial court's findings of fact that DSCC "knowingly and routinely discharged contaminants over a period of 18 years" was

supported by "adequate, substantial and credible evidence."  The Appellate Division wrote that

"we are convinced that subjective knowledge of harm was proven as a matter of fact.  The

Chancery Division judge so found, and we agree that this conclusion is virtually inescapable."

42.     The Appellate Division opinion contains additional facts regarding DSCC's

knowing and routine pollution of the Passaic River, including the following:

- Almost from the day production of the phenoxy herbicides commenced in 1948, the workers at the Diamond Alkali Plant experienced chloracne (a disfiguring disease typically involving open and closed comedones, pustules, cysts and blisters on the face, armpits, and groin).

- By 1955, DSCC was aware that its processes were causing the chloracne and was advised to reduce its air contamination and to insist upon personnel and plant cleanliness.  These suggestions were either ignored or poorly implemented.

- In the Autumn of 1959, DSCC was advised that a German chemical manufacturer had discovered that 2,3,7,8-TCDD was the causative agent of chloracne and that decreasing DSCC's reaction temperature in the 2,4,5-T manufacturing process would substantially reduce the production of 2,3,7,8-TCDD.  DSCC was offered a two-step process by which 2,3,7,8-TCDD could be eliminated—or at least appreciably reduced—in the 2,4,5-T manufacturing process.  DSCC instead decided to run the process at a higher temperature than recommended because reducing the autoclave temperature also would reduce production volumes and, therefore, DSCC's profits.

- In 1960, a reaction in the autoclave—whose temperature was "out of control"—caused an explosion that destroyed the larger of the two process buildings at the Diamond Alkali Plant.  Following the explosion, DSCC rebuilt the destroyed manufacturing process building.  DSCC had the opportunity to employ improved processes and techniques to lower the 2,3,7,8-TCDD production, but again chose not to do so to avoid incurring capital costs and ensure increased profitability.

- Throughout its years of operation, vapors produced by the 2,4,5-T process were vented into the atmosphere on a daily basis. DSCC's emissions from the scrubber unit would literally "pit" the paint on the cars in the parking lot—appearing as if acid had been thrown on them. Only in 1967 did DSCC construct a carbon tower designed to remove 2,3,7,8-TCDD in its process and finished product at or below a level of one part per million.  Even after the carbon tower was installed, there was no decrease in the chloracne among the workers: monitoring reports from 1968 and 1969 showed dioxin levels in DSCC's process and finished product at up to 9.6 parts per million, and employees recall finished product with up to 80 parts per million.

-89-

## Additional Evidence of Releases from the Diamond Alkali Plant

43.     In 1955, DSCC management sent Diamond Alkali Plant Manager John Burton a memorandum asking him to show Bill Taylor, a DSCC representative, around the Diamond Alkali Plant.   According to the memorandum, Bill Taylor was "central engineering's outstanding authority on the subject of pollution abatement[.]"  Following that meeting, John Burton kept Bill Taylor apprised of the Diamond Alkali Plant's practices of discharging its effluents into the Passaic River.

44.     On July 3, 1956, representatives of the Passaic Valley Sewerage Commission observed a discharge from the Diamond Alkali Plant into the Passaic River.  Plant Manager John Burton promised the inspectors that the plant would connect to the sanitary sewer as soon as possible, instead of discharging chemical effluent directly to the Passaic River.  Then, John Burton wrote the inspector to inform him that DSCC had "complied with [its] request to divert the objectionable effluent stream of '2-4-D filtrate' into the sanitary sewer."

45.     However, on July 10, 1956, Mr. Burton told a different story to DSCC corporate representatives.  Mr. Burton explained that "[a] drive has been started to clean up the Passaic River, principally from an appearance point of view, but in turn this has started [the inspectors] to checking on our effluent" which was problematic given the Plant's "general history and problems on effluent."  Mr. Burton explained that the Diamond Alkali Plant had previously been able to outwit the authorities by "[rerouting] our lines containing HCl to underneath the surface of the water so they were never detected as a source of acid effluent."

46.     The memorandum further states:

> [The inspectors] particularly specified that the 2,4-D alkaline filtrate would be satisfactory to go into the sanitary sewer, although at the time at least, they did not know about its high phenolic content.
>
> In general, I feel that if we clean up some of the materials which have some

noticeable content of solids that we are not appreciably contaminating the river which has tremendous flow at this point.  The proof of this is our planned river pump installation.  The high phenolic content of our effluent however might someday be a serious problem if they try to make this an area where fish would live, but on the other hand they would first have to clean up the oil scum from the river which to date they have not been able to do.  ***Nevertheless, in view of their strict rules which these various agencies have, we will have to continue to out-wit them as we have in the past or spend a substantial amount of money for neutralizing our effluent and for construction of a larger sanitary sewer out to Lister Avenue. Every year that we can stall this off we are saving ourselves a substantial amount of money and increasing the likelihood that we may have more land at that time to give us room to install some type of neutralization system*** . . . *Therefore, I think our fundamental position is safe at this location*, although we may have to spend some capital and operating money to keep out of trouble if we are not able to continue to outwit the various agencies concerned with the Passaic River.  (emphasis added).

47. On July 22, 1956, Mr. Burton wrote a letter to the inspectors in which he chastised the inspectors for visiting the "plant area without checking in at the office and being provided with an escort."  In addition, instead of tying the whole Diamond Alkali Plant to the sanitary sewer as he told the investigators, Mr. Burton informed his superiors of his plan to tie the 2,4-D process building to the sanitary sewer, but not the main building:  "I think our best hope at this time is that we can keep out of serious trouble until we get our 2,4-D filtrate diverted to the local sewer and to hope that will be able to get by with our various acidic effluents from DDT, HCB and Miticide operations in our main building."

48. In response, Mr. Burton received a memorandum from Mr. Taylor, the "outstanding authority" at DSCC on pollution abatement.  Excerpts from his response are as follows:

I have noted with some interest your correspondence relative to the activities of the [inspectors].  Apparently we may be in for some extended difficulties with this Commission…

The action of the . . . inspectors in "snooping" around the plant is not considered standard practice in the pollution field.  Their action might arise for one or two reasons; the inspector might be young and ignorant of proper procedure or they might be hoping to find evidence of unlawful doings

when unescorted.  I think your letter to [the inspectors] had just the right tone and was certainly justified.

As a matter of caution, it might be well to continue a cooperative attitude toward [the inspectors] and to be as frank as you feel desirable.  Evasive tactics are fine as long as they work, but discovery of such action by the [inspectors] can lead to a change of attitude which could be serious.  If the [inspectors] begin[] to feel that they have been "had" they may insist on orderly and complete elimination of pollution materials from your discharge.  If this happens, it might be a significant factor in consideration of plant relocation.

49.    Internal DSCC memoranda describe just how much of DSCC's waste chemical effluent was discharged into the Passaic River, the vast majority of which went undetected.  In an April 1960 memorandum to DSCC representatives, entitled "River Contaminants and Your Memo of March 31st," Mr. Burton summarized the various extensive discharges of contaminants from the Diamond Alkali Plant to the Passaic River over the years:

- "Until approximately 1956, we disposed of all our plant effluents into the Passaic River."

- "Approximately 1956, the [inspectors] officially objected to our polluting the river, and we spent approximately $15,000 for a sewer connection to the Newark city sewer."

- "My impression is that the city sewer is a pretty good bet for getting rid of modest amounts of chlorophenols which otherwise would be serious contaminants in rivers, etc."

- "All of our unsold muriatic acid is dumped in the Passaic."  "In 1958 we dumped 2000 tons; in 1959 we dumped 4400 tons."

- "We produce approximately 2000 tons of 2,4-D per year with a yield slightly less than 60%.  This means that we discard approximately the molecular weight equivalent of 400 tons of 2,4-D per year."  "Considering molecular weights, this would be approximately 110 tons of chlorophenols."

- "We discard the acidic effluent from our chlorosulfonation operations to either the city sewer or the river."

- "The 2,4,5-T effluent is generally similar to 2,4-D, but is only approximately one quarter the amount.  The effluent would consist of mostly trichlorophenols with

some 2,4,5-T and 2,4,5-T esters."

- "[A]t various times we have spills or special products which involve additional contamination problems. The 'unimportant violations' are minor quantities of slightly dirty liquids which we can sometimes get from washing down the floors near the river or the river front. I call them 'unimportant' because overzealous inspectors sometimes comment on slight signs of poor housekeeping at the river front…."

50.    On March 24, 1967, DSCC representative F. Gordon Stewart signed a survey form from the Manufacturing Chemists' Association in which Mr. Stewart detailed the discharges from the Diamond Alkali Plant, including the information that at the time, the plant was discharging 12,800 gallons per day of effluent that "did not meet all existing requirements." According to the completed survey, four processes resulted in discharges to surface waters and two processes resulted in discharges to a sewer. The survey event provides estimates of the Diamond Alkali Plant's illegal discharges. For example, the Diamond Alkali Plant discharged 14,500 gallons per day of effluent that required no treatment under existing control requirements, and 12,800 gallons per day of "untreated effluent not meeting all existing requirements."

51.    On August 3, 1956, inspectors issued a notice of violation to DSCC for illegal discharges to the Passaic River from the Diamond Alkali Plant. DSCC responded, not denying the discharges, but denying that the samples of effluents showed pollution as defined by the statute. DSCC asked that further action be deferred until it finished the connection to the sanitary sewer.

52.    On October 13, 1964, the U.S. Army Corps of Engineers advised DSCC that the Diamond Alkali Plant was in violation of federal law prohibiting discharges into navigable waters:

> During a routine inspection of the waterfront facilities along the south shore of the Passaic River, Newark, New Jersey, a concentration of foreign matter, which contained an acid content, was observed in the tidal waters along your waterfront property. Further investigation revealed that this pollution was caused by acid discharged from inside your plant into discharge pipes, located on the east and west end of your bulkhead and empties into the Passaic River, at the foot of Lister Avenue, Newark, New Jersey.

53.     On September 18, 1968, the U.S. Army Corps of Engineers again notified DSCC that the Coast Guard had conducted a routine inspection and had found an acidic discharge emanating from the Diamond Alkali Plant to the Passaic River in violation of federal law.

54.     On October 18, 1969, Mr. Gregoric reported to Bill Taylor that the U.S. Army Corps of Engineers had made two additional inspections of the plant finding violations.  A puddle of sodium trichlorophenol was collecting on the ground and draining into the river.

55.     On November 12, 1968, Bill Taylor drafted a memorandum that stated:  "The Newark plant is building up a history of repeated violations.  It seems that on every Coast Guard spot check of this plant we have a bad violation.  We should recognize that this will not go on indefinitely…  It is imperative that we take care of the acid discharge promptly to avoid some very unpleasant consequences.…"

56.     As early as 1968, DSCC had developed a "blame the enforcer" theory of corporate citizenship.  In September 1968, Bill Taylor stated the following in a memorandum regarding the U.S. Army Corps of Engineers:

> It has been our experience in other parts of the country that the Corps of Engineers is quite active in the pollution field despite their lack of background and competence.  Their authority is based on the law referred to in their letter and they are capable of considerable harassment.

57.     In 1968, more than a decade after the inspectors first contacted DSCC about its discharges from the Diamond Alkali Plant to the Passaic River, DSCC representatives had enough "harassment" from environmental authorities.  One option, according to Bill Taylor, was to discontinue discharges from the Diamond Alkali Plant to the Passaic River:  "Since we can look forward to intense activity on the Passaic River[,] I would like to see everything discharged to the

city sewer and kept out of the Passaic, except uncontaminated cooling water." However, DSCC chose a different option and closed the Diamond Alkali Plant in 1969.

**Response Activities Resulting from Disposal and Releases of 2,3,7,8-TCDD and Other Hazardous Substances at the Diamond Alkali Plant and Adjacent Disposal Areas**

58.    The Passaic River has been used by OxyChem and its predecessor-in-interest as a disposal site for its chemical waste, including significant quantities of 2,3,7,8-TCDD and other Hazardous Substances.

59.    Downstream surface water flow and upstream tidal activity have caused the widespread transport of wastes from the Diamond Alkali Plant, including 2,3,7,8-TCDD and other Hazardous Substances, throughout the Passaic River, from the Dundee Dam into the Newark Bay Study Area.

60.    In 1983, environmental agencies discovered that the Diamond Alkali Plant was the source of dioxin contamination in the Newark area, including the Passaic River, prompting then New Jersey Governor Thomas H. Kean to issue Executive Order No. 40. Through Executive Order No. 40, Governor Kean directed the NJDEP to take necessary steps to "protect the health, safety and welfare of the citizens of [New Jersey]" from the dangers posed by the Diamond Alkali Plant, including the dangers of dioxin contamination in the Passaic River.

61.    Pursuant to Executive Order 40, the NJDEP issued an administrative order on June 13, 1983, requiring DSCC to implement certain stabilization measures at the Diamond Alkali Plant to prevent further off-site migration of 2,3,7,8-TCDD.

62.    In March 1984, NJDEP directed DSCC to remediate the dioxin and other Hazardous Substances contaminating the Diamond Alkali Plant.

63.     The releases and transport of wastes from the Diamond Alkali Plant including 2,3,7,8-TCDD and other Hazardous Substances, throughout the Passaic River also resulted in EPA listing the Diamond Alkali Superfund Site on the National Priorities List in 1984.

64.     Response activities at the Diamond Alkali Superfund Site initially focused on the high levels of 2,3,7,8-TCDD and other Hazardous Substances in the immediate vicinity of the Diamond Alkali Plant.  Due to the widespread transport of 2,3,7,8-TCDD and other Hazardous Substances from the Diamond Alkali Plant and adjacent disposal areas, the Diamond Alkali Superfund Site has been expanded to include two additional study areas – the Lower Passaic River Study Area (the "LPRSA") and the Newark Bay Study Area and the areal extent of contamination (collectively, "Study Areas").

65.     The LPRSA covers the 17-mile stretch of the Lower Passaic River and its tributaries from the Dundee Dam to Newark Bay.

66.     The Newark Bay Study Area covers the Newark Bay and portions of the Hackensack River, Arthur Kill and Kill Van Kull.

67.     EPA and the NJDEP have consistently looked to OxyChem, as the party primarily responsible for releases at and throughout all Study Areas within the Diamond Alkali Superfund Site, to either perform or pay for response activities to address the release of Hazardous Substances within the Diamond Alkali Superfund Site.

### The 80 and 120 Lister Avenue Area

68.     In 1984, OxyChem's corporate predecessor, DSCC, as the party responsible for the Diamond Alkali Plant at that time, entered into Administrative Orders on Consent to perform investigative and response activities at the 80 and 120 Lister Avenue portion of the Diamond Alkali Superfund Site, where it had owned and operated the Diamond Alkali Plant.

69.     In 1987, EPA selected an interim remedy for 80 and 120 Lister Avenue through entry of a Record of Decision.  The interim remedy was limited to source control at the Diamond Alkali Plant through actions such as construction of a site slurry wall and a 100-year flood wall, capping, disassembly and decontamination of nonporous permanent structures for offsite reuse, recycling, or disposal, and removal of contaminated materials, including dioxin-containing drums.

70.     In 1990, the Federal District Court for the District of New Jersey entered a Consent Decree under which OxyChem was required to implement the interim remedy documented in EPA's 1987 Record of Decision.  OxyChem's construction of the interim remedy began in April 2000 and was completed in December 2001.

71.     In 2008, OxyChem, as the party responsible for the Diamond Alkali Plant, entered into another Administrative Order on Consent under which it agreed to implement a non-time critical removal of approximately 200,000 cubic yards of contaminated sediment from the Passaic River near the Diamond Alkali Plant.  Phase I of this removal action (focused on removing and off-site disposal of approximately 40,000 cubic yards of contaminated sediment) was implemented between March 2012 and January 2013.  OxyChem has not yet implemented Phase II of the required removal action.

**The Lower Passaic River Study Area**

72.     In 1994, OxyChem, as the party responsible for the Diamond Alkali Plant, entered into an Administrative Order on Consent under which it agreed to study the lower six-mile stretch of the Passaic River.  Based on the results of that investigation EPA determined that the 17-mile stretch of the Lower Passaic River had been impacted by Hazardous Substances, and the LPRSA was expanded to include the entire 17-mile tidal portion of the Passaic River from the Dundee Dam to the Newark Bay.

73.     In the early 2000s, a group of parties (many of whom are defendants), including Defendant, formed the Cooperating Parties Group ("CPG").

74.     In 2004, OxyChem, as the party responsible for the Diamond Alkali Plant, along with the CPG, entered into a settlement agreement with EPA ("2004 RI/FS Agreement") under which the parties agreed to fund certain costs to perform the Remedial Investigation/Feasibility Study ("RI/FS") of the LPRSA.

75.     In May 2007, OxyChem, as the party responsible for the Diamond Alkali Plant along with the CPG entered into an Administrative Settlement Agreement and Order on Consent ("2007 RI/FS ASAOC") under which the parties agreed to perform the RI/FS for the LPRSA.

76.     Earlier in 2007, before executing the 2007 RI/FS ASAOC, members of the CPG entered into an Amended and Restated Organization Agreement ("AROA") wherein, among other things, the parties agreed to an interim allocation of certain costs incurred by the CPG, including performance and funding obligations under the 2007 RI/FS ASAOC ("Interim Allocation Payments").  In the AROA, the parties also agreed to toll certain claims in accordance with a Standstill Agreement set forth in Exhibit 4 to the AROA ("2007 Standstill Agreement").  At that time, OxyChem was a member of the CPG and a party to the AROA.

77.     OxyChem withdrew from the CPG in May 2012.

78.     OxyChem has failed to make all its Interim Allocation Payments as required by the AROA.

79.     To date, Defendant has incurred substantial response costs in connection with the 2004 RI/FS Agreement and the 2007 RI/FS ASAOC, and continues to incur costs.  Plaintiff has failed to pay its fair and agreed-upon share of RI/FS costs.

80.     In September 2016, OxyChem and EPA entered into another Administrative Settlement Agreement and Order on Consent for Remedial Design for Operable Unit Two of the Diamond Alkali Superfund Site (CERCLA Docket No. 02-2016-2021) (the "2016 ASAOC"). Upon information and belief, OxyChem has not yet incurred any costs pursuant to the 2016 ASAOC.

### The Newark Bay Study Area

81.     In addition to the 80 and 120 Lister Avenue area and the LPRSA, EPA has also found 2,3,7,8-TCDD and other Hazardous Substances released from the Diamond Alkali Plant and adjacent disposal areas in the Newark Bay, including portions of the Hackensack River, the Arthur Kill and Kill Van Kull, and has designated this area as part of the Diamond Alkali Superfund Site.

82.     In February 2004, OxyChem, as the party responsible for the Diamond Alkali Plant, entered into an Administrative Order on Consent to perform the RI/FS for the Newark Bay Study Area.

### The RM 10.9 Removal Action

83.     Sediment samples collected during the LPRSA RI/FS revealed elevated concentrations of 2,3,7,8-TCDD and other Hazardous Substances in an approximately five-acre mud flat and point bar located on the eastern side of the Passaic River, extending approximately 2,380 feet from River Mile 10.65 to River Mile 11.1 (the "RM 10.9 Removal Area").

84.     Contaminated sediments containing 2,3,7,8-TCDD and other Hazardous Substances from the Diamond Alkali Plant and adjacent disposal areas have been transported to and deposited at the RM 10.9 Removal Area as the result of upstream tidal transport of sediments within the Lower Passaic River.

85.     EPA determined that concentrations of 2,3,7,8-TCDD and other Hazardous Substances at RM 10.9 were among the highest concentrations found within the LPRSA and that

a Removal Action (the "<u>RM 10.9 Removal Action</u>") was necessary to protect public health, welfare, and the environment.

86.     EPA sought to negotiate with the parties performing the LPRSA RI/FS to perform the RM 10.9 Removal Action.

87.     In June 2012, Defendant entered into the RM 10.9 ASAOC.

88.     To meet the objectives of the Removal Action, the parties to the RM 10.9 ASAOC have agreed to remove approximately two feet of sediment (with an estimated volume of approximately 16,000 cubic yards) from the RM 10.9 Removal Area and cap this area.  Defendant has incurred substantial response costs in connection with RM 10.9 ASAOC.

89.     Despite evidence that contaminated sediments from the Diamond Alkali Plant and adjacent disposal areas migrated upriver and were deposited in the RM 10.9 Removal Area, and the absence of other significant sources of 2,3,7,8-TCDD in the LPRSA, OxyChem refused to enter into the RM 10.9 ASAOC.

90.     As a result of OxyChem's refusal to voluntarily enter into the RM 10.9 ASAOC, on June 25, 2012, EPA issued a Unilateral Administrative Order to OxyChem requiring it to participate in the RM 10.9 Removal Action.  Specifically, OxyChem was ordered to:

> conduct the removal activities necessary to implement the [Statement of Work] in participation and cooperation with the RM 10.9 Settling Parties and in accordance with CERCLA, the [National Contingency Plan], relevant guidance that EPA identifies to Respondent, and the Removal/Capping Work Plan/Basis of Design Report ("<u>BODR</u>") and the Removal/Capping Final Design approved by EPA under the RM 10.9 Settlement Agreement, as they may be amended or modified by EPA.

Underlying this Order was EPA's determination that OxyChem "is a person that owned and/or operated the 80 Lister Avenue portion of the Site at the time of disposal of Hazardous Substances and that arranged for disposal of Hazardous Substances at the LPRSA, which is part of the Site."

91.     OxyChem has failed and refused to voluntarily conduct the RM 10.9 Removal Action.  As a result, Defendant who is party to the RM 10.9 ASAOC has incurred response costs to remove OxyChem's  2,3,7,8-TCDD and other Hazardous Substances that have been released by OxyChem into the LPRSA and transported to the RM 10.9 Removal Area.

## COUNT I
### (Contribution Under CERCLA Section 113)

92.     Defendant realleges and incorporates by reference paragraphs 1 through 91 above.

93.     Defendant is a "person" as that term is defined in 42 U.S.C. § 9601(21).

94.     OxyChem is a "person" as that term is defined in 42 U.S.C. § 9601(21).

95.     The Diamond Alkali Superfund Site, which encompasses the LPRSA including the RM 10.9 Removal Area and the Diamond Alkali Plant and adjacent disposal areas, is a "facility" as that term is defined in 42 U.S.C. § 9601(9).

96.     Contaminants released from the Diamond Alkali Plant and adjacent disposal areas in the LPRSA, including, but not limited to, 2,3,7,8-TCDD, 2,4-D, 2,4,5-T, and DDT, are "Hazardous Substances" under 42 U.S.C. § 9601(14).

97.     The presence of these Hazardous Substances at the Diamond Alkali Plant and adjacent disposal areas in the LPRSA, and the release and migration of these Hazardous Substances from the Diamond Alkali Plant and adjacent disposal areas into the LPRSA, including the RM 10.9 Removal Area, constitute a release or threatened release of Hazardous Substances as defined in 42 U.S.C. § 9601(22).

98.     OxyChem was the "owner or operator" of the Diamond Alkali Plant, as that term is defined in 42 U.S.C. § 9601(20), at or during the time of the acts or omissions which resulted in the release of Hazardous Substances on, at, under or from the Diamond Alkali Plant and adjacent disposal areas, which migrated throughout the LPRSA, including the RM 10.9 Removal Area.

99.     OxyChem arranged for disposal of Hazardous Substances into the LPRSA, including the RM 10.9 Removal Area.

100.     OxyChem is a person liable pursuant to 42 U.S.C. § 9607(a)(2) and (a)(3).

101.     Defendant is a party to the 2004 RI/FS Agreement, 2007 RI/FS ASAOC, and RM 10.9 ASAOC.

102.     Defendant has incurred costs and will continue to incur costs as a consequence of the release(s) or threatened release(s) of Hazardous Substances into the environment at and from the Diamond Alkali Plant and adjacent disposal areas into the LPRSA, and in connection with the RM 10.9 Removal Action.  These response costs are necessary and are consistent with the National Contingency Plan, 40 C.F.R. § 300.

103.     To date, Defendant has incurred substantial response costs in connection with the LPRSA, and continues to incur costs in connection with the 2004 RI/FS Agreement and 2007 RI/FS ASAOC.  The Cooperating Parties Group, of which Defendant is a member, has collectively incurred well in excess of $100 million in connection with the 2004 RI/FS Agreement and 2007 RI/FS ASAOC.

104.     To date, Defendant has incurred substantial response costs in connection with the RM 10.9 Removal Action.  The parties to the RM 10.9 ASAOC have collectively incurred in excess of $20 million in connection with the RM 10.9 ASAOC, and, to the extent these claims have not been mutually released by Plaintiff and Defendant in the Mutual Contribution Release Agreement, demand for payment of this amount is hereby made on Plaintiff.

105.     The Hazardous Substances released from the Diamond Alkali Plant are the drivers of the ecological and human health risks, the remedial and removal actions, and the cleanup and removal costs at the Diamond Alkali Superfund Site, including in the RM 10.9 Removal Area.

106.    Although Hazardous Substances in the RM 10.9 Removal Area are traceable to releases from the Diamond Alkali Plant and adjacent disposal areas in the LPRSA, and although releases from the Diamond Alkali Plant are driving the risk and remedial action in the RM 10.9 Removal Area, OxyChem has refused to sign the RM 10.9 Settlement Agreement or to contribute to the cost of performing the RM 10.9 Removal Action.  OxyChem has also refused to comply with EPA's June 2012 Unilateral Administrative Order directing it to perform the RM 10.9 Removal Action.

107.    The costs incurred and to be incurred by Defendant to perform the RM 10.9 Removal Action are a direct consequence of releases of Hazardous Substances from the Diamond Alkali Plant and adjacent disposal areas in the LPRSA.

108.    Defendant has paid and will continue to pay more than its equitable share of response costs and is, to the extent these claims have not been mutually released by Plaintiff and Defendant in the Mutual Contribution Release Agreement, entitled to contribution from Plaintiff pursuant to 42 U.S.C. § 9613(f) for an equitable share up to 100 percent of the response costs incurred, or to be incurred, as a consequence of the release(s) or threatened release(s) of Hazardous Substances into the environment at and from the Diamond Alkali Plant and adjacent disposal areas in the LPRSA, including prejudgment interest.

WHEREFORE, Defendant respectfully requests that the Court:

A.    Declare that Plaintiff is liable under 42 U.S.C. § 9613(f) for Plaintiff's share, determined by the Court using such equitable factors as it determines are appropriate, of response costs incurred and to be incurred by Defendant as a result of releases or threatened releases of hazardous substances at or from the Diamond Alkali Plant and adjacent disposal areas;

B.      Award Defendant an amount determined by the Court, using such equitable factors as it determines are appropriate, to satisfy the obligation of Plaintiff for all necessary response costs incurred and to be incurred by Defendant as a result of releases or threatened releases at or from the Diamond Alkali Plant and adjacent disposal areas;

C.      Award Defendant prejudgment interest, costs, and attorneys' and expert fees as allowed by law; and

D.      Grant such other and further relief as the Court determines is just, equitable, and appropriate.

## COUNT II
### (Cost Recovery Under CERCLA Section 107)

109.    Defendant realleges and incorporates by reference paragraphs 1 through 108 above.

110.    OxyChem is jointly and severally liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a) because it is a responsible party as defined by CERCLA § 107(a), 42 U.S.C. § 9607(a).

111.    Each release or threatened release of hazardous substances at the Lister Avenue Site as described above, has caused and will continue to cause Defendants to incur necessary response costs consistent with the National Oil and Hazardous Substances Contingency Plan, 40 C.F.R. § 300 et seq. (the "NCP").

112.    To date, Defendant has incurred substantial response costs in connection with the LPRSA, including response costs outside the scope of the 2004 RI/FS Agreement, 2007 RI/FS ASAOC, and RM 10.9 ASAOC, and will continue to incur costs.

113.    Under CERCLA Section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), to the extent these claims have not been mutually released by Plaintiff and Defendant in the Mutual Contribution Release Agreement, Defendant is entitled to cost recovery from OxyChem for necessary response costs incurred and to be incurred by Defendant consistent with the NCP in

connection with the LPRSA.

WHEREFORE, Defendant respectfully requests that the Court:

A.      Declare that Plaintiff is jointly and severally liable under 42 U.S.C. § 9607(a)(4)(B) for response costs incurred and to be incurred by Defendant as a result of releases or threatened releases of hazardous substances at or from the Diamond Alkali Plant and adjacent disposal areas;

B.      Award Defendant an amount determined by the Court to satisfy the obligation of Plaintiff for all necessary response costs incurred and to be incurred by Defendant in connection with the LPRSA;

C.      Award Defendant prejudgment interest, costs, and attorneys' and expert fees as allowed by law; and

D.      Grant such other and further relief as the Court determines is just, equitable, and appropriate.

## COUNT III
### (Declaratory Judgment -  CERCLA)

114.    Defendant realleges and incorporates by reference paragraphs 1 through 113 above.

115.    An actual controversy exists, within the meaning of 28 U.S.C. § 2201 and CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), between Defendant and OxyChem concerning their respective rights and responsibilities for the response costs incurred and to be incurred with respect to the RM 10.9 AOC.

116.    The Diamond Alkali Superfund Site, which encompasses the LPRSA including the RM 10.9 Removal Area and the Diamond Alkali Plant, is a "facility" as that term is defined in 42 U.S.C. § 9601(9).

117.     Contaminants released from the Diamond Alkali Plant and adjacent disposal areas in the LPRSA, including, but not limited to, 2,3,7,8-TCDD, 2,4-D, 2,4,5-T, and DDT, are "Hazardous Substances" under 42 U.S.C. § 9601(14).

118.     The presence of these Hazardous Substances at the Diamond Alkali Plant and adjacent disposal areas in the LPRSA, and the release and migration of these Hazardous Substances from the Diamond Alkali Plant and adjacent disposal areas into the LPRSA (including the RM 10.9 Removal Area) constitute a release or threatened release of Hazardous Substances as defined in 42 U.S.C. § 9601(22).

119.     Hazardous Substances released from the Diamond Alkali Plant have migrated to the LPRSA, including the RM 10.9 Removal Area.

120.     OxyChem was the "owner or operator" of the Diamond Alkali Plant, as that term is defined in 42 U.S.C. § 9601(20), at or during the time of the acts or omissions which resulted in the release of Hazardous Substances on, at, or under the Diamond Alkali Plant and adjacent disposal areas, which migrated to the LPRSA, including the RM 10.9 Removal Area.

121.     OxyChem arranged for disposal of Hazardous Substances in the LPRSA, including the RM 10.9 Removal Area.

122.     OxyChem is a person liable pursuant to 42 U.S.C. § 9607(a)(2) and (a)(3).

123.     Defendant has incurred and will continue to incur response costs as a direct consequence of the release(s) or threatened release(s) of Hazardous Substances into the environment at and from the Diamond Alkali Plant and adjacent disposal areas in the LPRSA Operable Unit, including but not limited to response costs incurred in connection with the RM 10.9 Removal Action.  These response costs are necessary and are consistent with the National Contingency Plan, 40 C.F.R. § 300.

124.    Pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 9613(g)(2), Defendant is entitled to a declaratory judgment, which will be binding in any subsequent action or actions to recover further response costs, that OxyChem is a liable party under 42 U.S.C. § 9607(a)(2) and (a)(3) for releases from and to the Diamond Alkali Plant, the LPRSA (including the RM 10.9 Removal Area), and the Diamond Alkali Superfund Site, and that OxyChem is liable for any and all response costs that may be incurred in the future to implement the RM 10.9 Removal Action.

WHEREFORE, Defendant respectfully requests that the Court:

A.    Enter judgment under 42 U.S.C. § 9613 against OxyChem, finding that OxyChem is liable to Defendant for response costs incurred and to be incurred in connection with the release of Hazardous Substances at or from the Diamond Alkali Plant and adjacent disposal areas within the LPRSA, to the LPRSA (including the RM 10.9 Removal Area), and the Diamond Alkali Superfund Site, or, in the alternative, for a 100 percent allocation by the Court (using such equitable factors as the Court determines are appropriate) to OxyChem of response costs incurred and to be incurred in connection with the release of Hazardous Substances at or from the Diamond Alkali Plant and adjacent disposal areas within the LPRSA, to the LPRSA (including the RM 10.9 Removal Area), and the Diamond Alkali Superfund Site;

B.    Enter judgment under 42 U.S.C. § 9607 against OxyChem, finding that OxyChem is jointly and severally liable under 42 U.S.C. § 9607(a)(4)(B) to Defendant for response costs that may be incurred in connection with the release of Hazardous Substances at or from the Diamond Alkali Plant and adjacent disposal areas within the LPRSA, to the LPRSA (including the RM 10.9 Removal Area), and the Diamond Alkali Superfund Site, or, in the alternative, for a 100 percent allocation by the Court (using such equitable factors as the Court determines are appropriate) to OxyChem of response costs that may be incurred in connection with the release

of Hazardous Substances at or from the Diamond Alkali Plant and adjacent disposal areas within the LPRSA, to the LPRSA (including the RM 10.9 Removal Area), and the Diamond Alkali Superfund Site.

C.      Enter a declaratory judgment that OxyChem is a liable party under 42 U.S.C. § 9607(a)(2) and (a)(3) for releases from and to the Diamond Alkali Plant and adjacent disposal areas within the LPRSA (including the RM 10.9 Removal Area), and the Diamond Alkali Superfund Site, and that OxyChem is liable for any and all response costs that may be incurred in the future, including but not limited to those incurred in connection with implementation of the RM 10.9 Removal Action;

D.      Enter a declaratory judgment that OxyChem is liable for additional current and future work obligations;

E.      Enter an order awarding Defendant prejudgment interest, reasonable costs, and attorneys' fees; and

F.      Grant such other and further relief as the Court deems just and proper.

## COUNT IV
### (Declaratory Judgment – Corporate Successor)

125.    Defendant realleges and incorporates by reference paragraphs 1 through 124 above.

126.    An actual controversy exists, within the meaning of 28 U.S.C. § 2201 between Defendant and OxyChem concerning OxyChem's corporate relationship to the entities that owned and operated the Diamond Alkali Plant from the mid-1940s through 1969 and the liabilities associated therewith.

127.    Starting in the mid-1940s, Kolker Chemical Works, Inc. manufactured DDT and phenoxy herbicides at the Lister Plant.

128.    In 1947, ownership of the real property underlying the Diamond Alkali Plant was transferred to Kolker Realty Company.

129.    In 1950, Kolker Realty Company merged into Kolker Chemical Works, Inc.

130.    In 1951, DSCC—then named Diamond Alkali Company—acquired the stock of Kolker Chemical Works, Inc., and in 1954, Diamond Alkali Company dissolved Kolker Chemical Works, Inc. (which had been renamed following the 1951 acquisition) and assumed all its assets and liabilities.

131.    From 1951 to 1967, Diamond Alkali Company manufactured pesticides and herbicides at the Diamond Alkali Plant.  Diamond Alkali Company changed its name to Diamond Shamrock Corporation in 1967 and continued to manufacture pesticides and herbicides at the Diamond Alkali Plant under the name Diamond Shamrock Corporation until 1969 when the plant was shut down.

132.    In July 1983, Diamond Shamrock Corporation formed a wholly owned subsidiary named New Diamond Corporation.

133.    Diamond Shamrock Corporation then executed a reverse merger whereby New Diamond Corporation became the parent of Diamond Shamrock Corporation.

134.    After the reverse merger, Diamond Shamrock Corporation changed its name to Diamond Chemicals Company.  Then in October 1983, Diamond Chemicals Company changed its name to Diamond Shamrock Chemicals Company.

135.    Also after the reverse merger, New Diamond Corporation changed its name to Diamond Shamrock Corporation—the second entity to have that name (Diamond Shamrock Chemicals Company had been called Diamond Shamrock Corporation from 1967 to 1983).

136.    In 1986, the new Diamond Shamrock Corporation sold the stock of Diamond Shamrock Chemicals Company to Oxy-Diamond Alkali Corporation, a wholly owned subsidiary of Occidental Petroleum Corporation.

137.    Diamond Shamrock Chemicals Company then changed its named to Occidental Electrochemicals Corporation.

138.    In November 1987, Occidental Electrochemicals Corporation and its parent, Oxy-Diamond Alkali Corporation merged into OxyChem.

139.    As the successor-by-merger to Diamond Shamrock Chemicals Company, OxyChem, thereby assumed Diamond Shamrock Chemicals Company's liabilities, which included the liabilities associated with ownership and operation of the Diamond Alkali Plant from the mid-1940s to 1969.

140.    In 2011, the New Jersey Superior Court in the matter of *New Jersey Dep't Envtl. Prot. v Occidental Chem. Corp.*, Civil Action No. L-9868-05, entered summary judgment in favor of the New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund on their assertion that OxyChem is Diamond Shamrock Chemicals Company's direct successor by merger and liable for all cleanup and removal costs associated with Diamond Shamrock Chemicals Company's discharges.

141.    By operation of statutory merger principles and the general common law principles used to determine successor liability under CERCLA, corporate law principles, and collateral estoppel, OxyChem is the corporate successor to the entities that owned and operated the Diamond Alkali Plant from the mid-1940s through 1969 and is responsible for those entities' conduct and liabilities.

142.    The doctrine of issue preclusion/collateral estoppel precludes OxyChem from challenging that it is the corporate successor to the entities that owned and operated the Diamond Alkali Plant from the mid-1940s through 1969 and to those entities' conduct and liabilities.

WHEREFORE, Defendant respectfully requests that the Court:

A.    Enter a declaratory judgment that OxyChem is the corporate successor to the entities that owned and operated the Diamond Alkali Plant from the mid-1940s through 1969 and is responsible for those entities' conduct and liabilities;

B.    Enter an order awarding Defendant prejudgment interest, reasonable costs, and attorneys' fees; and

C.    Grant such other and further relief as the Court deems just and proper.

## COUNT V
### (Breach of Contract)

143.    Defendant realleges and incorporates by reference paragraph 1 through 142 above.

144.    The AROA constituted a contract between Defendant and OxyChem.

145.    OxyChem has breached the express terms of the AROA by failing to make necessary payments thereunder.

146.    As a direct and proximate result of OxyChem's breach of the AROA, Defendant has been damaged.

WHEREFORE, Defendant respectfully requests that the Court:

A.    Award Defendant all recoverable compensatory and other damages;

B.    Rescind the AROA and 2007 Standstill Agreement as between OxyChem and Defendant;

C.    Award Defendant prejudgment interest, costs, and attorneys' and expert fees as allowed by law; and

D.      Grant such other and further relief as the Court deems just, equitable, and appropriate.

**<u>CROSS-CLAIMS</u>**

Defendant hereby denies any and all cross-claims filed or to be filed in this matter and reserves the right to assert cross-claims.

Dated:  August 14, 2019                         Respectfully submitted,

                                                **By: /s/** *Reynold Lambert*

                                                **LOWENSTEIN SANDLER LLP**
                                                One Lowenstein Drive
                                                Roseland, New Jersey 07068
                                                (973) 597-2500
                                                Reynold Lambert
                                                Norman W. Spindel
                                                Allison Gabala
                                                Email: rlambert@lowenstein.com
                                                Email: nspindel@lowenstein.com
                                                Email: AGabala@lowenstein.com

                                                *ATTORNEYS FOR DEFENDANT*
                                                *FRANKLIN-BURLINGTON PLASTICS, INC.*

## CERTIFICATION OF SERVICE

I, REYNOLD LAMBERT, of full age, do hereby declare as follows:

1.      I am a partner in the law firm Lowenstein Sandler LLP, located at One Lowenstein Drive, Roseland, NJ 07068, counsel for Defendant Franklin-Burlington Plastics, Inc.

2.      On August 14, 2019, I caused a true and correct copy of the Answer of Defendant Franklin-Burlington Plastics, Inc., Separate Defenses and Counterclaims upon all counsel of record via CM/ECF.

Dated: August 14, 2019                          Respectfully submitted,


                                                **By: /s/** *Reynold Lambert*

                                                **LOWENSTEIN SANDLER LLP**
                                                One Lowenstein Drive
                                                Roseland, New Jersey 07068
                                                (973) 597-2500
                                                Reynold Lambert
                                                Email: rlambert@lowenstein.com

                                                *ATTORNEYS FOR DEFENDANT*
                                                *FRANKLIN-BURLINGTON*
                                                *PLASTICS, INC.*