**PretiFlaherty**                                                                 **SHOOK**
                                                                                  HARDY & BACON

August 26, 2019

Hon. Magistrate Judge Joseph A. Dickson
United States District Court – District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009

    **Re:**   *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.*
            **Docket No. 2:18-cv-11273-MCA-JAD**

Dear Magistrate Judge Dickson and Special Master Scrivo:

      We write on behalf of the Small Parties Group ("SPG") and other Defendant liaison groups (collectively "Defendants") to welcome you to the case and provide an initial briefing and case management proposal to help streamline and simplify this matter. Defendants' proposal focuses on identifying those issues whose early resolution would help define the scope of the parties and disputes in this matter and accelerating that resolution to promote orderly and efficient litigation of this case. Plaintiff agrees to the filing of early motions to narrow the issues, but opposes focused discovery even in the short term. Without focused and creative case management, such as Defendants propose, discovery and trial with over 100 parties will be unwieldy, unduly expensive, time consuming, and inefficient. Since the parties have such different approaches to case management, Defendants write separately to outline their proposal.

    **I.**    **CASE SUMMARY**

      This case is an attempt by Occidental Chemical Corporation ("OxyChem") to avoid responsibility for the knowing, intentional, and illegal discharges of various contaminants of concern ("COCs") into the Lower Passaic River (the "River") for which it has already been held liable. The United States Environmental Protection Agency ("EPA") has determined that 2,3,7,8-TCDD ("TCDD") is driving the risks to human health and the environment in the River. TCDD is one of the most toxic chemicals in the world. It is most well-known as a byproduct of Agent Orange, which was widely used in the Vietnam War as an herbicide and defoliant.

      OxyChem is the corporate successor to the Diamond Alkali entities[1] that owned and operated the agricultural chemicals facility at 80-120 Lister Avenue in Newark, New Jersey (the "Lister Plant" or "Diamond Alkali Facility") from the mid-1940s to 1969. During this time, OxyChem's corporate predecessors intentionally discharged TCDD and other chemicals to the

---

[1] OxyChem's corporate predecessors are Kolker Chemical Works, Inc., Diamond Alkali Organic Chemicals Division, Inc., Diamond Alkali Company, the Diamond Shamrock Corporation, and Diamond Shamrock Chemicals Company (collectively "Diamond").

River, knowing these chemicals were harmful to human health and the environment and that such discharges were illegal. A court has already found OxyChem responsible as the corporate successor to the Diamond Alkali entities for the environmental liabilities resulting from these discharges.

Peer-reviewed literature demonstrates that discharges from the Lister Plant, for which OxyChem is liable, account for substantially all the TCDD remaining in the River. The Superfund site is appropriately referred to as the "Diamond Alkali Superfund Site" (the "Site") because the Diamond Alkali Facility was the major polluter on the River and the reason EPA listed the Site on the Superfund National Priorities List. Since OxyChem is responsible for substantially all the TCDD in the River, it is fair for OxyChem to pay substantially all the costs to clean up the River.[2]

In contrast to OxyChem, most defendants in this case produced relatively small amounts of less harmful chemicals and many sent their waste streams to the Passaic Valley Sewer Commission, a public treatment facility that was permitted to legally accept and discharge this material to Upper New York Harbor. Based upon these and other facts, Defendants are confident the Court will ultimately find that it is fair and reasonable for OxyChem to pay all or substantially all the costs to clean up the River.

### A. *Prior Litigation*

#### i. The **Aetna** *Decision*

In the 1980s, after facing environmental enforcement actions, property damage and personal injury claims, and an Agent Orange class action settlement, Diamond sued 125 of its insurers seeking indemnification for the various costs it had and would incur. Following a twenty-day trial, New Jersey Superior Court Judge Reginald Stanton found that "from 1951 to 1969 Diamond had a mindset and a method of conducting manufacturing operations which were destructive of the land, air and water resources of the environment" and that "even by the standards of the 1951-1969 period, Diamond's conduct in operating the Newark plant was unacceptably wrong and irresponsible." *Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*, No. C-3939-84, at 11 (N.J. Super. Ct. Law Div. Apr. 12, 1989).

In light of Diamond's intentional and "knowingly polluting conduct[,]" Judge Stanton concluded that none of Diamond's insurers were liable for the environmental remediation costs or personal injury and property claims. *Id.* at 7–8, 11, 34. Specifically, "Diamond's knowing and routine discharge of contaminants over a period of 18 years makes it necessary to conclude that the resulting injury and damage were expected from the standpoint of [Diamond]." *Id.* at 34.

#### ii. *The Spill Act Litigation*

In 2005, the New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund (collectively the "State") filed a complaint against

---

[2] OxyChem is also liable for discharges of other COCs and hazardous substances, including the majority of the dichlorodiphenyltrichlorethane ("DDT"), as well as dieldrin, polychlorinated biphenyls ("PCBs"), and polycyclic aromatic hydrocarbons ("PAHs").

OxyChem and other Lister Plant defendants in the Superior Court of New Jersey, asserting claims for violation of New Jersey's Spill Compensation and Control Act (the "Spill Act"), the New Jersey Water Pollution Control Act, and New Jersey common law. *See* Compl., *New Jersey Dep't Envtl. Prot. v Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. Dec. 13, 2005).

In May 2011, the State moved for partial summary judgment, seeking a judgment as a matter of law that: (1) Diamond discharged dioxin, DDT, and other hazardous substances into the River; (2) OxyChem is Diamond's direct successor by merger and is liable under the Spill Act for all cleanup and removal costs associated with Diamond's discharges; and (3) OxyChem and its then-indemnitor, Maxus Energy Corporation,[3] are collaterally estopped from denying that Diamond intentionally discharged dioxin, DDT, and other hazardous substances into the River. The Honorable Sebastian P. Lombardi partially granted the State's motion, ruling that OxyChem is the legal successor to Diamond and is responsible for the Lister Plant liabilities based on established corporate law. Tr. of Proceedings at 244:7–11, *N.J. Dep't of Envtl. Prot. v. Occidental Chem. Corp.*, Docket No. L-9868-05 (Super. Ct. Law. Div. July 19, 2011); Order Partially Granting Pls.' Mot. Partial Summ. J. Against Occidental Chem. Corp., Maxus Energy Corp. & Tierra Solutions, Inc., *N.J. Dep't of Envtl. Prot. v. Occidental Chem. Corp.*, Docket No. L-9868-05 (Super. Ct. Law. Div. July 19, 2011).[4]

### B. *This Litigation*

On June 30, 2018, OxyChem filed a 190-page complaint against 114 defendants seeking to recover cleanup costs for the River that it may not have incurred and may never incur. OxyChem asserts three causes of action: (1) cost recovery under CERCLA Section 107(a), Compl. ¶¶ 271–74, ECF No. 1; (2) contribution under CERCLA Sections 113(f)(1) and 113(f)(3)(B), *id.* ¶¶275–81; and (3) a declaration of defendants' liability under CERCLA Section 113(g)(2), *id.* ¶¶ 282–87. OxyChem alleges it incurred costs pursuant to 2008, 2011, and 2016 Administrative Settlement Agreements and Orders on Consents ("ASAOCs") and a 2012 Unilateral Administrative Order ("2012 UAO"). OxyChem's principal claim in this litigation arises from its agreement to conduct a Remedial Design for the selected remedy for the lower 8.3 miles of the River ("OU2") under the 2016 ASAOC (the "RD"). That Remedial Design work is only 30% complete and is ongoing.[5]

Defendants moved to dismiss OxyChem's complaint in November 2018. On July 31, 2019, the Court granted in part and denied in part Defendants' motions to dismiss. Order Mots. Dismiss at 12, ECF No. 647. The Court dismissed OxyChem's Section 107(a) claims relating to the 2008, 2011, and 2016 ASAOCs, *id.* at 5–7, 12, and OxyChem's Section 113(f)(1) claim relating to the 2012 UAO, *id.* at 7–9, 12. The Court denied Defendants' motions with respect to OxyChem's claim for declaratory relief, finding that OxyChem's Complaint states claims for relief under Section 107(a) relating to the 2012 UAO and under Section 113(f)(3)(B) relating to the 2008, 2011, and 2016 ASAOCs. *Id.* at 11–12.

---

[3] Maxus was OxyChem's indemnitor from 1986 until 1996, when Maxus transferred the indemnification obligation to Tierra Solutions, Inc. ("Tierra").
[4] OxyChem's request for discovery on the issue of corporate successor liability was denied by Judge Lombardi.
[5] OxyChem previously released over 40 defendants for, among other things, claims for the RD unless OxyChem's response costs for its conduct exceed $165 million.

3

OxyChem's remaining claims are, therefore, limited to its Section 107(a)(1) claim relating to the 2012 UAO; its Section 113(f)(3)(B) claim relating to the 2008, 2011, and 2016 ASAOCs; and its request for declaratory judgment. *Id.* at 12.

## II.     STATUS UPDATE – SUMMARY OF DISCOVERY PROGRESS

Substantial discovery has already occurred in this case. Additionally, the parties have met and conferred on numerous occasions and are engaged in significant ongoing discovery.

### A. *Site Sampling*

In the Court's Second Pretrial Scheduling Order (ECF No. 550), the Court ordered OxyChem to produce all its 2018 sampling data by April 1, 2019. OxyChem has produced certain validated sampling data submitted to EPA and has represented that additional validated sampling data will not be available until September 2019. OxyChem has refused to produce unvalidated ("Raw") sampling data.[6] The parties have discussed a resolution to this issue, but currently OxyChem has not produced Raw samples.

On February 13, 2019, OxyChem initiated the agreed-upon Site Sampling Protocol for 11 upland sites by serving 21 subpoenas on non-party property owners and four requests for permission to enter upland sites on individual defendants. As of this letter, OxyChem has visited only one site and has not sampled any sites. The SPG has served OxyChem with a sampling plan and Defendant Givaudan Fragrances Corporation has also served a sampling request on OxyChem relative to the Lister Plant.[7]

### B. *Production of Documents*

Defendants have been producing documents (over 1.6 million pages to date) responsive to OxyChem's First Request for Production of Documents on a rolling basis. OxyChem also has served separate requests for production on nine defendants. OxyChem continues to schedule times with individual defendants who have offered to make documents available for review and inspection.

Defendants have served a First and Second Joint Request for Production of Documents on OxyChem, and at least 35 defendants have served individual document requests on OxyChem. OxyChem has been producing documents responsive to these requests on a rolling basis.

In the Spill Act litigation, Maxus and Tierra produced a privilege log ("DBR log") containing approximatively 153,000 entries. OxyChem subsequently received many of the documents listed on the DBR log. OxyChem is currently evaluating Maxus and Tierra's privilege

---

[6] On June 5, 2019, the SPG filed a motion to compel production of OxyChem's unvalidated sampling data. OxyChem has objected and filed a brief in support of a protective order, to which the SPG has objected. These motions are currently pending.

[7] Both the SPG and Givaudan have reserved their right to identify additional areas to sample until thirty days after OxyChem provides all its 2018 sampling data.

assertions, and to date has produced approximately 75,000 of the documents listed on the DBR log. On July 30, 2019, OxyChem notified the SPG that if "any 'provisionally produced' documents are determined not to be privileged, those will be included in OxyChem's next rolling production." Defendants have also completed an initial review of boxes Maxus and Tierra stored at Iron Mountain pertaining to the Site and designated 259 of those boxes for scanning. OxyChem is currently conducting its privilege review of the designated materials.

The SPG has served a series of subpoenas on third-party entities to obtain (1) Lister Plant and River related documents, and (2) pleadings, trial exhibits, and discovery materials from prior litigations related, in part, to the Lister Plant and/or the River. The SPG has received some documents responsive to these subpoenas and is continuing to work with some of the subpoenaed parties and OxyChem to obtain additional information sought by the subpoenas.

### C. *Interrogatories*

The parties have served standard interrogatories on all parties and all parties have answered these interrogatories. As of this letter, the SPG has served OxyChem a deficiency letter regarding its responses and OxyChem has served a deficiency letter on fourteen defendants regarding their responses. The parties met and conferred on August 15th and August 22nd, to address common objections to the interrogatory responses and were able to reach agreement on some, but not all, issues. The parties will continue to attempt to address issues with the responses, but may have to raise some issues with the Court.

## III.   PROPOSED PATH FORWARD

Discovery and trial in this case will be complicated, highly technical, time-consuming, and potentially very expensive. Defendants propose early motion practice on certain threshold issues that, in the immediate aftermath of the Court's decision on Defendants' motions to dismiss, can be resolved with limited to no discovery, and the resolution of which will determine the scope of the claims and parties in the case. Defendants' approach will promote efficiency by reducing the large burden of cost and time this case would otherwise pose to the Court and the parties. Moreover, it will guard against OxyChem using litigation expenses to extract contribution unfairly from Defendants.

One threshold issue Defendants propose addressing early is OxyChem's successor liability for the Lister Plant discharges. In its Responses to the Standard Set of Interrogatories, OxyChem appears to assert that it is not liable for the Lister Plant discharges. OxyChem's position is contrary to basic principles of corporate law incorporated into CERCLA's successor liability framework. Moreover, this issue was litigated and decided against OxyChem in the Spill Act litigation, and OxyChem is precluded from relitigating this issue. Defendants will seek a determination that OxyChem *is* Diamond and is the corporate successor to the entities that owned and operated the Lister Plant and the liabilities and conduct associated therewith. *See* Proposed Order ¶ 11. This key issue is amenable to early motion practice as it is not contingent on facts to be disclosed or developed in discovery.

Defendants also propose addressing three issues identified in the Court's Order on Defendants' motions to dismiss that are ripe for resolution: (1) the costs, if any, the parties have incurred that are the subject of the claims and counterclaims in this matter; (2) whether OxyChem's Section 113(f)(3)(B) claims relating to the 2008 and 2011 ASAOCs and OxyChem's Section 107 claim relating to the 2012 UAO are time barred; and (3) the scope and effect of the Mutual Contribution Release Agreement. *See* Proposed Order ¶¶ 12–15.

In its Order on Defendants' motions to dismiss, the Court found that OxyChem can only recover costs OxyChem *itself* incurred. ECF No. 647 at 5 n.4. This ruling has significant implications for determining the claims and parties that should be in this litigation. For example, if OxyChem itself did not incur any costs with respect to the 2012 UAO, OxyChem's sole Section 107 claim should be dismissed, which in turn would impact the extent to which third-party defendants are brought into this case.[8] Hence, Defendants propose that the parties conduct limited discovery on who spent costs related to the EPA actions at issue and, if such costs are contested, whether they legally fit the definition of a response cost. Defendants anticipate that discovery and briefing on this issue could be completed in approximately 90 to 150 days, respectively, with limited expense to the parties. *See* Proposed Order ¶¶ 14–15.

In the Order on Defendants' motions to dismiss, the Court also found that OxyChem's Section 113(f)(3)(B) claims for contribution relating to the 2008 and 2011 ASAOCs are subject to the three-year statute of limitations in Section 113(g). ECF No. 647 at 10 n.10. However, the Court found that there are disputes of fact that need to be resolved before determining whether these claims are time barred. *Id.* at 10–11, 10 n.11, 11 n.12. The statute of limitations issue also has broad implications for the scope and size of this case. Resolving this issue early could limit the number of parties and claims, thereby reducing expenses, allowing for more focused discovery, and potentially promoting settlement. This issue can also be addressed quickly, *see* Proposed Order ¶¶ 12–13, and with limited discovery and expenses.

OxyChem agrees that threshold motions could streamline this case[9] and has identified additional issues that should be addressed early in the litigation. In particular, OxyChem has raised issues regarding the treatment of the shares of non-parties under Section 113 of CERCLA and the admissibility and authentication of ancient records. Defendants propose that the Court set deadlines for the filing of these potential motions as they impact the scope of discovery and necessary parties to the litigation. *See* Proposed Order ¶¶ 16–18.[10]

---

[8] The SPG does not currently anticipate the need to bring in third-party defendants, based upon the claims currently asserted by OxyChem, if OxyChem's remaining Section 107 claim is dismissed. However, individual defendants may bring in third-party defendants based on contractual/indemnification claims.

[9] In OxyChem's August 1, 2019 letter to the Court, it suggested that the parties and Court discuss threshold legal issues at the August 27th conference, as "[i]nterim guidance on key legal issues could streamline discovery and expedite the preparation of the case for trial."

[10] At the August 15th meet and confer, OxyChem stated that if defendants fail to join third parties, these third parties should be treated as "orphan shares" and their liability should be allocable to Defendants and indicated it intended to file an early motion on this issue. During the August 23rd meet and confer, OxyChem stated this motion should not be filed until the joinder deadline has passed. Defendants do not agree with OxyChem that shares of non-parties should be treated as orphan shares and maintain that this issue should be resolved before the joinder deadline.

Addressing these issues early will serve the goals of judicial economy because other more complicated issues, such as allocating proportionate fault among liable parties or ascertaining the costs each has incurred, may not need to be reached, or if reached, could involve significantly fewer parties and costs. These threshold issues, which can be resolved by motions, impact the necessity of third-party practice and the scope of electronic discovery. Defendants therefore propose extending the deadline for third-party practice until after resolution of the motions discussed above, *see* Proposed Order ¶ 22, and waiting to complete electronic discovery and depositions of fact witnesses on any matter other than these threshold issues until the discovery tasks set forth above are completed.

In addition to moving forward on these threshold issues, certain discovery tasks currently underway can and should proceed. The parties should continue to work together to resolve certain outstanding discovery requests and issues, specifically: site sampling, *see* Proposed Order ¶¶ 1–3,[11] production of paper documents in response to outstanding discovery requests,[11] *see id.* ¶¶ 4–8, and disputes regarding answers to interrogatories, *see id.* ¶ 9. Further, while the motions are pending, the parties can make progress on certain necessary discovery tasks, such as developing a deposition protocol, *see id.* ¶ 23, and negotiating search terms and additional protocols for the production of electronically stored information, *see id.* ¶ 24.

Finally, Defendants' Proposed Order provides that the parties shall meet with the Special Master every month to ensure the parties stay on task and to quickly and efficiently address any issues that may arise, thereby improving overall case management. *See id.* ¶ 21. Such frequent meetings between the parties and the Court should allow for flexible and efficient case management while obviating the need to set deadlines too far into the future.

We have enclosed Defendants' Proposed Third Pretrial Scheduling Order for your consideration, which has been shared with Plaintiff. Thank you for your time and consideration of these materials. We look forward to working with you. Please let us know if there is any other information that would be helpful.

Respectfully submitted,

/s/ Jeffrey D. Talbert
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP**
One City Center
Portland, ME 04101
Telephone: 207.791.3239
Jeffrey D. Talbert, Esq. (admitted *pro hac vice*)
*Common Counsel for the Small Parties Group*

---

[11] Defendants propose the parties supplement their productions related to ongoing clean-up activities or claims, including the RD for OU2, every 30 days. *See* Proposed Order ¶ 8. As noted above, OxyChem's principal claim in this litigation centers on the costs of the RD, which is only 30% complete.

/s/ David R. Erickson
**SHOOK, HARDY & BACON, L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: 816.474.6550
David R. Erickson, Esq. (admitted *pro hac vice*)
Joseph H. Blum, Esq, (NJ Bar No. 010211984)
*Common Counsel for the Small Parties Group*

/s/ Diana L. Buongiorno
**CHISEA SHAHINIAN & GIANTOMASI PC**
One Boland Drive
West Orange, NJ 07052
Telephone: 973.325.1500
Diana L. Buongiorno, Esq.
*Liaison Counsel for the CSG Group*

/s/ Lee Henig-Elona
**GORDON REES SCULLY MANSUKHANI, LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Telephone: 973.549.2520
Lee Henig-Elona, Esq.
*Liaison Counsel for the Gordon Rees Group*

Enclosure