Thomas R. Calcagni
Eric T. Kanefsky
Ralph J. Marra, Jr.
CALCAGNI & KANEFSKY LLC
One Newark Center
1085 Raymond Blvd.
14th Floor
Newark, NJ 07102
(862) 397-1796
rmarra@ck-litigation.com

Anne S. Kenney
Steven M. Siros
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Congoleum*
*Bath Iron Works Corporation*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, | : |
| : | Civil Action No. 2:18-cv-11273-MCA-JAD |
| Plaintiff, | : |
| v. | : **BATH IRON WORKS** |
| | : **CORPORATION'S THIRD-PARTY** |
| | : **COMPLAINT AGAINST** |
| 21ST CENTURY FOX AMERICA, INC. | : **CONGOLEUM CORPORATION** |
| *et al.*, | : |
| Defendants. | : |

**BATH IRON WORKS CORPORATION'S THIRD-PARTY**
**COMPLAINT AGAINST CONGOLEUM CORPORATION**

Bath Iron Works Corporation ("BIW"), by and through its attorneys, alleges as follows:

## INTRODUCTION

1.      This action is brought by BIW to enforce the promise of indemnification made to it by Congoleum Corporation ("Congoleum") as part of a 1986 corporate reorganization and to require Congoleum to accept responsibility as the potentially responsible party, if such liability is found against BIW, with respect to the above-captioned action ("Action").   In addition, BIW seeks declaratory judgment that Congoleum is the real party-in-interest in this Action and that BIW bears no responsibility for the environmental contamination alleged at the property at issue in this Action.

2.      Since its founding in 1884, BIW has built private, commercial, and military ships at a shipyard located in Bath, Maine.

3.      Since the late 1880s, Congoleum, and its predecessors, have operated a resilient flooring business (the "Resilient Flooring Business") based in New Jersey, which included a manufacturing facility located in Kearny, New Jersey, along the Passaic River (the "Kearny Property").  The Kearny Property is a 60-acre plot of land originally owned by Congoleum-Nairn, Inc. ("Congoleum-Nairn").

4.      In 1986, BIW and Congoleum both were owned by the same corporate parent.  That year, as part of a series of transactions, the parties' then corporate parent "spun off" BIW and Congoleum to separate owners.  In a July 1986 merger agreement (the "1986 Merger Agreement") that was part of that reorganization, Congoleum broadly promised to defend, indemnify, and hold BIW harmless against all claims or losses (including attorneys' fees) arising before or after the merger's effective date, arising out of or relating to the conduct of the Resilient Flooring Business. The parties agreed that this covenant would continue without time limit.

5.     Indeed, in the years since the 1986 Merger Agreement, Congoleum complied with and acknowledged its indemnification obligations under the parties' contract by, for example, providing indemnification for liabilities related to its resilient flooring business that were initially presented to BIW in the years following the 1986 merger agreement.

6.     Congoleum only recently walked away from its continuing indemnification obligation to BIW.  Specifically, faced with environmental liability in New Jersey – where Congoleum has operated its flooring business for decades – Congoleum has disclaimed any duty to defend and indemnify BIW.  Through this about-face, Congoleum seeks to pass responsibility for the environmental liabilities of its flooring business in New Jersey on to BIW.

7.     Congoleum's bad-faith denial of its contractual duties is contrary to its prior conduct and would burden BIW – a Maine shipbuilder that never engaged in the flooring business or any other manufacturing activity in New Jersey – with the significant cost of cleaning-up the alleged contamination left by Congoleum's flooring business in New Jersey, unfairly harming BIW's business.

8.     Congoleum's conduct is contrary to the parties' contract of indemnification and is fundamentally unfair.  Accordingly, by this action, BIW seeks a declaration of its rights under the 1986 Merger Agreement and a judgment against Congoleum for breaching its contractual duties to BIW.

## JURISDICTION

9.     This action stems from environmental contamination allegedly associated with 195 Belgrove Drive, Kearny, New Jersey (the "Kearny Property").  In its Complaint in the above-captioned matter, Occidental Chemical Corporation ("OxyChem") alleges costs associated with environmental contamination stemming from the Kearny Property and further alleges that BIW is

responsible and liable for these costs as an owner and/or operator of that property at the time of disposal of hazardous substances.  However, BIW is not the responsible party for any alleged environmental contamination that occurred on the Kearny Property.  BIW brings this Third-Party Complaint because Congoleum is the rightful party responsible for any costs related to environmental liabilities associated with the flooring operations in Kearny.  Therefore, BIW's Third-Party Complaint forms part of the same case or controversy as OxyChem's Complaint in the above-captioned matter (the "Occidental Lawsuit"), and accordingly, this Court has jurisdiction over BIW's Third-Party Complaint pursuant to 28 U.S.C. §§ 1331 and 1367.

10.    This Third-Party Complaint is brought pursuant to Rule 14(a) of the Federal Rules of Civil Procedure.

11.    This Court is the appropriate venue pursuant to 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claim, as well as the damages alleged, occurred and continue to occur, in this judicial district.

## PARTIES

12.    BIW is a corporation formed under the laws of the State of Maine with its principal place of business at 700 Washington Street, Bath, Maine 04530.  BIW has been exclusively in the business of shipbuilding for decades.

13.    Congoleum is a corporation formed in the State of Delaware with a principal place of business of 3500 Quakerbridge Road, P.O. Box 3127, Mercerville, NJ 08619-0127.  Congoleum manufactures and sells various flooring products.

## FACTUAL BACKGROUND

14.    Congoleum is the latest in a number of corporations that have historically done business under the name "Congoleum," and conducted resilient floor product operations.

4

Congoleum's resilient flooring operations have included the manufacturing of linoleum and vinyl flooring products, vinyl asbestos tiles, various associated pastes, waxes and adhesives, and specific products for military use (tent cloth, camouflage netting, mildew proof sandbags and synthetic leather, all manufactured for the military during World War II).  Congoleum is the successor to the resilient floor product operations of its predecessor businesses.

15.     Over the years, Congoleum and its predecessors conducted resilient floor product operations in New Jersey, including in the town of Kearny, New Jersey, which sits along the Passaic River.  Congoleum and its predecessors conducted resilient floor product operations at the Kearny Property, along the Passaic River, continuously from the 1880s through the 1980s.

16.     BIW has never owned or operated any business in Kearny, New Jersey, or along the Passaic River.  Rather, BIW was incorporated in Maine in 1884, and continues to operate a shipbuilding facility located in Bath, Maine.  For more than a century, BIW has manufactured recreational, commercial and military ships.  At peak production during World War II, BIW's shipyard launched a Navy destroyer every 17 days.  Today, BIW continues to build destroyers for the United States Navy at its Bath, Maine shipyard.

17.     For a period of time prior to August 1986, Congoleum, its predecessor businesses, and BIW, were owned as sibling businesses by the same corporate parent, called Congoleum Industries, Inc. ("CII").  During this period, Congoleum and BIW operated separate businesses in separate locations: Congoleum and its predecessors conducted resilient flooring operations, including in Kearny, New Jersey.  BIW conducted its shipbuilding business in Bath, Maine.

18.     In 1986, the parties' owners engaged in a restructuring in part to facilitate savings in Maine state taxes.  Later that year, CII sold different parts of its corporation to different entities. With regard to the resilient flooring operations, CII formed a separate company to own these

5

operations called Resilco, Inc., and then sold its resilient flooring operations to Resilient Acquisition, Inc., a company formed by a third-party buyer for the purpose of acquiring the assets and liabilities of CII's resilient flooring operations, by means of an Agreement and Plan of Merger By and Among Resilient Holdings, Inc. Resilient Acquisition Inc., Congoleum Corporation and Congoleum Industries, Inc., dated as of July 1, 1986, which is the "1986 Merger Agreement" at issue and defined above.  The new corporation was then renamed Congoleum Corporation – the Congoleum in this matter.

19.    As part of that transaction, through an April 1986 Instrument of Assignment and Assumption, Congoleum was broadly assigned the assets of the Resilient Flooring Business, and Congoleum broadly assumed all liabilities (known or unknown, and whether absolute, accrued, contingent or otherwise) directly related to the transferred assets and to the Resilient Flooring Business conducted by its predecessors at the time, regardless of whether those liabilities were asserted before or after such time.

20.    In the 1986 Merger Agreement, Congoleum and BIW agreed to certain rights and responsibilities with respect to the other.  As relates to the instant action, Congoleum took the assets and liabilities related to the Resilient Flooring Business and agreed to defend, indemnify and hold BIW harmless against any loss or claim arising out of or related to those operations.

21.    In the 1986 Merger Agreement, Congoleum acquired a portion of the Kearny Property, on which it operated a research and development lab and administrative offices until Congoleum sold that portion of the Kearny Property on March 18, 1987.

22.    The 1986 Merger Agreement contains a provision entitled "Agreement to Defend and Indemnify" that provides in part that Congoleum:  "will indemnify and hold harmless CII, Bath and their respective affiliates . . . against any and all losses, claims, damages, liabilities, costs,

expenses (including, without limitation, attorneys' fees), judgments and amounts paid in settlement in connection with any pending, threatened or completed claim, action, suit, proceeding or investigation, whether civil, criminal, administrative or investigative, incurred or suffered by CII or its affiliates arising (before or after the Effective Time) out of or relating to the conduct of the Business whether before or after the Effective Time . . . . This covenant shall survive the Effective Time, shall continue without time limit and is intended to benefit CII, Bath and their respective affiliates." "Bath," as used in the 1986 Merger Agreement, refers to BIW. "Business," as used in the 1986 Merger Agreement "refers to the business presently conducted by the [seller] which previously was conducted by the Resilient Flooring Division of the Delaware corporation organized in 1984 and prior to April 18, 1986 known as 'Congoleum Corporation[.]'"

23.     Other transactional agreements related to, and integrated with, the 1986 Merger Agreement also make clear the intent to protect BIW against all liabilities relating to the Resilient Flooring Business by both Congoleum's assumption of liabilities and Congoleum's indemnification of BIW.

24.     In addition to the agreements that show Congoleum's assumption of liabilities and duty to indemnify BIW, Congoleum's post-1986 conduct demonstrates Congoleum acknowledging its status as the successor to the Kearny Property.  For years after the 1986 Agreement, Congoleum took the position that it was the successor to the historic flooring operations of the predecessor Congoleum entities that operated facilities and were headquartered in Kearny, New Jersey.  For example, Congoleum used the historic insurance policies of the flooring business that it obtained in the 1986 Agreement to cover the historic environmental liabilities of the flooring business, including at the former manufacturing facilities in Kearny.

25.     Specifically, on February 28, 2002, in its insurance coverage lawsuit, Congoleum asserted it "is the successor to Congoleum-Nairn, Inc. and Congoleum Industries, Inc., as well as successor to other corporations using the Congoleum Corporation name," and expressly demanded insurance coverage for environmental liabilities, including coverage for claims relating to the Passaic River, based on insurance policies listed in the Disclosure Schedule of the 1986 Merger Agreement.  (*Congoleum v. ACE American Insurance Company, et al.*, Dkt. No. MID-L-8908-01 (N.J. Super. Ct.), the "Congoleum Coverage Action," February 28, 2002 Amended Answer.)

26.     Congoleum continued to make similar statements regarding its connection to and its successorship of Congoleum-Nairn.  During its bankruptcy proceedings in 2006, Congoleum's then-Chief Financial Officer, Howard Feist, testified via sworn declaration that BIW had "no responsibility for any of the liabilities of the Congoleum Flooring Business" in Kearny, and that, with respect to the Congoleum Resilient Flooring Business, "Congoleum is the successor in interest."  (*See, e.g., In re Congoleum*, Case No. 03-51524 (KCF), United States Bankruptcy Court for the District of New Jersey, the "Congoleum Bankruptcy Proceedings," Dkt. No. 4439-3.) During these bankruptcy proceedings, Congoleum attorneys also told the court the following: "After a great deal of due diligence there is no question in my client's mind that we are the successor, the company that is now called Congoleum is the successor to all of the flooring business that had been run by predecessors."  (Congoleum Bankruptcy Proceedings, September 11, 2006 Trial Tr. at 51:3-51:14.)

27.     In addition, Congoleum acted as the successor to the flooring operations in response to government requests.  Specifically, on December 24, 1996, Congoleum received a request for information from the U.S. Environmental Protection Agency ("EPA") concerning possible discharges of allegedly hazardous substances from the Kearny Property, as part of the EPA's

investigation into the release of hazardous substances into the Passaic River.  Instead of alerting BIW to the EPA request, Congoleum (1) responded to EPA on January 15, 1998 and (2) put its insurers on notice of the EPA's inquiry.

28.     On September 24, 2003, Congoleum received another letter from the EPA.  This time it was a Notice of Potential Liability under 42 U.S.C. § 9607(a) for contamination in the lower 8.3 miles of the Lower Passaic River, which is part of the Diamond Alkali Superfund Site. Congoleum, again, did not tender this notice to BIW; rather, it engaged with the EPA and noticed its insurers of its potential liability.

29.     Likewise, in a March 14, 2007 letter to Congoleum's auditors, Congoleum referenced the 1996 inquiry from the EPA concerning "possible discharges from Congoleum's former Kearny, New Jersey plant into the Passaic River." In discussing that potential environmental liability concerning Kearny with its auditors, Congoleum explained that it, Congoleum, owned and operated a manufacturing facility at the Kearny site from the late 1880's to the early or mid-1970's and maintained administrative offices in a small laboratory at the site until the mid-1980s.   Again, Congoleum did not even suggest BIW might be liable.

30.     On March 31, 2016, Congoleum received another Notice of Potential Liability under 42 U.S.C. § 9607(a) from the EPA for the Diamond Alkali Superfund Site/Lower Passaic River Study Area, which is the subject of the above-captioned matter.  Once again, Congoleum put its insurance carrier on notice of the EPA Notice but did not tender this claim for the Diamond Alkali Superfund Site/Lower Passaic River Study Area to BIW.  Congoleum has never tendered this claim to BIW.

31. So Congoleum was engaged with the EPA about environmental liabilities concerning the Passaic River and Kearny for over 20 years without suggesting BIW was the real party in interest.

32. On June 30, 2018, BIW (but not Congoleum) was named as one of dozens of defendants by OxyChem in the above-captioned matter.

33. OxyChem sued BIW based solely on the actions of its alleged "predecessor Congoleum Corp." Specifically, OxyChem alleges that BIW "is the result of three mergers, beginning with Congoleum Corp." and that "BIW, through its predecessor Congoleum Corp., operated at a property located at 195 Belgrove Drive, Kearny, New Jersey." OxyChem goes on to allege the following: "From the late-1880s to the early- to mid-1970s, Congoleum owned and operated a flooring manufacturing facility at the property and manufactured all types of linoleum and/or vinyl floorings, wall coverings, and desk tops. . . . From the late 1880s to mid-1980s, Congoleum operated a laboratory at the Property. During the early- to mid-1940s (during World War II), Congoleum manufactured various products for military use, including tent cloth, aerial torpedo parts, grenades and synthetic leathers. Also during the time Congoleum operated at the property, it manufactured adhesives used for flooring, which included lignin and mercury; manufactured vinyl asbestos tile; and operated a power plant, which included a steam generator, oil-fueled boilers, and a backup electric generator." (Complaint at ¶ 251.)

34. OxyChem further alleges the following about the Congoleum's former site: "COCs [chemicals of concern] stored, used, and/or produced at the property included lead, mercury, PAHs, and PCBs. Site soil contamination includes hazardous substances, such as dioxin-associated compounds, DDT, PAHs, PCBs, copper, lead, and mercury. Site groundwater contamination at the Property also includes dioxin-associated compounds, PAHs, PCBs, copper, lead, and mercury.

Over the years, there were several documented and potential direct discharges from the property to the Passaic River.  In the 1940s through the early 1970s, during times of wet weather/sewer system overflow, untreated contact cooling water was discharged to the Passaic River…."  (*Id.* at ¶ 251.)

35.     OxyChem alleges that "BIW is liable as an owner and/or operator at the time of disposal of hazardous substances.  Releases of hazardous substances including lead from the property have contaminated and continue to contaminate the sediments in the Lower Passaic River, including OU2, and must be removed from the riverbed and/or capped as a result of EPA's mandated remedy.  Under CERCLA §§ 107(a)(2) and/or 107(a)(3) and CERCLA § 113, BIW is therefore liable for the costs of response resulting from the release of hazardous substances from the Facility, including the costs of removing and/or capping lead and other hazardous substances it disposed of that have contaminated and continue to contaminate the river, including but not limited to PCBs, mercury, copper, and PAHs."  (*Id.* at ¶ 251.)

36.     On October 26, 2017, DVL, Inc. and DVL Kearny Holdings, LLC (together, "DVL") sued BIW and Congoleum in *DVL, Inc. and DVL Kearny Holdings, LLC v. Congoelum Corp. and Bath Iron Works Corp.*, No. 2:17-cv-04261-KM-JBC (D. N.J.) (the "DVL Lawsuit") to recover damages for the alleged discharge of polychlorinated biphenyls ("PCBs") and other hazardous substances at a piece of property located at 160-194 Passaic Avenue in Kearny, New Jersey (the "DVL Property").  The 8-acre DVL Property is part of the larger Kearny Property that was originally owned by Congoleum-Nairn.

37.     Congoleum is currently participating in confidential allocation proceedings directed by the EPA and conducted by David Batson, related to liability for environmental

contamination the Diamond Alkali Superfund Site and the Lower Passaic River Study Area Operable Unit No. 2 (the "Batson Allocation").

38.     All the material allegations relating to BIW or Congoleum in the Batson Allocation, DVL Lawsuit, and this Action relate to the Resilient Flooring Business of Congoleum and its predecessors.

39.     On March 22, 2018, BIW demanded Congoleum defend and indemnify it in connection with this Action.  Congoleum denied this request on April 11, 2018 and, accordingly, has breached its obligation to defend and indemnify BIW as required by the 1986 Merger Agreement.

## CLAIM 1: BREACH OF CONTRACT – DUTY TO DEFEND AND INDEMNIFY

40.     BIW restates and realleges the allegations set forth in paragraphs 1 through 39 above and incorporates them by reference.

41.     The 1986 Merger Agreement is a valid, binding, and enforceable agreement.

42.     Congoleum has a duty to defend BIW and indemnify BIW for costs incurred in defending this action under the 1986 Merger Agreement.

43.     Following the Merger Agreement, BIW merged with CII and became the surviving entity.  Pursuant to Section 8.06, the 1986 Merger Agreement also inures to the benefit of BIW as CII's successor.

44.     By failing to accept BIW's demand for a defense and indemnification, Congoleum has breached its obligation to defend and indemnify BIW as required by the 1986 Merger Agreement.

45.     BIW has substantially performed all of its obligations, but Congoleum has materially breached its obligations under the 1986 Merger Agreement.

46.     As a direct and proximate result of Congoleum's material breach, BIW has incurred, and will continue to incur, costs, expenses, damages, and other amounts, including but not limited to attorneys' fees, in the Occidental Lawsuit, all of which are recoverable under the 1986 Merger Agreement.

## CLAIM 2: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

47.     BIW restates and realleges the allegations set forth in paragraphs 1 through 46 above and incorporates them by reference.

48.     The 1986 Merger Agreement is a valid, binding, and enforceable agreement.

49.     Under the 1986 Merger Agreement, Congoleum owes BIW the duty of good faith and fair dealing.

50.     The 1986 Merger Agreement imposes on Congoleum a duty to defend, indemnify and hold harmless BIW for all costs, expenses, damages, and other amounts, including but not limited to attorneys' fees, in the Occidental Lawsuit.

51.     BIW has substantially performed all of its obligations under the 1986 Merger Agreement, but Congoleum has materially breached its obligation of good faith and fair dealing including by, among other things, failing and refusing to honor its obligation to defend and indemnify BIW in the Occidental Lawsuit after having previously accepted responsibility for claims and expenses tendered by BIW to Congoleum relating to the conduct of the Resilient Flooring Business before the 1986 Merger Agreement and represented to a bankruptcy court that BIW had "no responsibility for any of the liabilities of the Congoleum Flooring Business."

52.     As a direct and proximate result of Congoleum's material breach, BIW has incurred, and will continue to incur, costs, expenses, damages, and other amounts, including but

not limited to attorneys' fees, in the Occidental Lawsuit, all of which are recoverable under the 1986 Merger Agreement.

## CLAIM 3: CERCLA CONTRIBUTION

53.     BIW restates and realleges the allegations set forth in paragraphs 1 through 52 above and incorporates them by reference.

54.     Pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), "[a]ny person may seek contribution from any other person who is liable or potentially liable under [CERCLA § 107(a)] during any civil action under . . . [CERCLA § 107(a)]."

55.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), liability attaches when: (a) the a person is a potentially responsible party under CERCLA; (b) hazardous substances were disposed of at a facility; (c) there has been a release or threatened release of hazardous substances from the facility into the environment; and (d) the release or threatened release has required or will require necessary response costs.

56.     Under CERCLA § 107(a), 42 U.S.C. § 9607(a), potentially responsible parties include: (a) the current owner or operator of a facility; (b) any person who owned or operated the facility at the time of the disposal of a hazardous substance; (c) any person who arranged for the disposal or transport for disposal of hazardous substances at a facility; and (d) any person who accepts or accepted hazardous substances for transport to sites selected by said person.

57.     OxyChem and/or EPA allege that hazardous substances as defined by CERCLA were either (1) disposed of or released to the environment at or from the Kearny Property by Congoleum and/or Congoleum-Nairn, or (2) disposed of or released to the environment during the time of Congoleum's and/or Congoleum-Nairn's ownership or operation of the Kearny Property.

58.     Congoleum is the proper successor-in-interest to Congoleum-Nairn for any and all liabilities that are associated with the Kearny Property and any environmental conditions at or emanating from the Kearny Property from the operations of Congoleum-Nairn or its successors.

59.     The Kearny Property and the Diamond Alkali Superfund Site are each a "facility" as defined under Section 101(9), 42 U.S.C. § 9601(9).

60.     Congoleum is a potentially responsible party pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

61.     In the event that BIW is found liable in this action or is required to pay any portion of the costs allegedly incurred or to be incurred with regard to the investigation or remediation of hazardous substances at or from the Kearny Property, then BIW will have incurred necessary response costs consistent with the National Contingency Plan.

62.     In the event that BIW is found liable in this action or is required to pay any portion of the costs allegedly incurred or to be incurred with regard to the investigation or remediation of hazardous substances at or from the Kearny Property, Congoleum is liable to BIW pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), for any amount that BIW is ordered to pay that is in excess of the equitable, proportionate share, if any, of BIW's liability.

## CLAIM 4: DECLARATORY JUDGMENT UNDER CERCLA

63.     BIW restates and realleges the allegations set forth in paragraphs 1 through 62 above and incorporates them by reference.

64.     Occidental brought this action against BIW, in part, as a cost recovery action under CERCLA § 107, 42 U.S.C. § 9607.

65.     CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), states that in any initial action for recovery of costs referenced in CERCLA § 107, "the court shall enter a declaratory judgment on

liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

66.     BIW is entitled to judgment under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201 and 2202 against Congoleum declaring that Congoleum shall be liable to BIW for any and all costs and for contribution arising from the alleged contamination at or emanating from the Kearny Property that are in excess of BIW's equitable, proportionate share, if any, of any response costs and damages, which judgment shall be binding in any subsequent action to recover further costs and/or contribution arising from the same alleged contamination at issue in this action.

## PRAYER FOR RELIEF

Wherefore, BIW prays for:

A.     A judgment declaring that Congoleum is obligated to defend, indemnify, and hold BIW harmless for all costs and fees, including but not limited to attorneys' fees, arising out of claims concerning the Kearny Property;

B.     A judgment declaring that BIW is not liable for any response costs at the Kearny Property;

C.     A judgment declaring that Congoleum is the proper party-in-interest with respect to the Kearny Property and that Congoleum is and shall be responsible for all current and future costs arising from the alleged contamination at or emanating from the Kearny Property that are in excess of BIW's equitable, proportionate share, if any, of any response costs and damages;

D.     Pre-judgment and post-judgment interest; and

E.     Such other further relief as the Court may deem proper and just.

## **JURY DEMAND**

BIW demands a trial by jury on all issues so triable.

Dated: September 24, 2019               Respectfully submitted,

                                            */s/ Ralph J. Marra*
                                            Ralph J. Marra
                                            Thomas R. Calcagni
                                            Eric T. Kanefsky
                                            CALCAGNI & KANEFSKY LLC
                                            1085 Raymond Blvd.
                                            14th Floor
                                            Newark, NJ 07102
                                            (862) 397-1796
                                            rmarra@ck-litigation.com

                                            Anne S. Kenney
                                            Steven M. Siros
                                            JENNER & BLOCK LLP
                                            353 N. Clark Street
                                            Chicago, IL 60654
                                            (312) 222-9350
                                            mdoornweerd@jenner.com
                                            wthomson@jenner.com

                                            *Attorneys for Congoleum*
                                            *Bath Iron Works Corporation*