# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>21ST CENTURY FOX AMERICA, INC., *et. al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 18-11273 (MCA)(JD)<br><br>**DECISION OF SPECIAL MASTER REGARDING MOTION TO COMPEL PRODUCTION OF SAMPLING DATA** |

## **INTRODUCTION**

This matter comes by way of a Motion to Compel the production of site sampling data in the possession of Plaintiff Occidental Chemical Corporation ("Plaintiff") filed by the Small Parties Group and Gordon Rees Group (collectively, the "Moving Defendants"), and a Motion for a Protective Order filed by Plaintiff.

Moving Defendants seek the production of certain environmental sampling and testing data, along with related documentation, concerning contamination of the Lower Passaic River and surrounding areas ("Sampling Data"). Moving Defendants argue that the Sampling Data is discoverable under Rule 26 of the Federal Rules of Civil Procedure and proportional to the needs of the litigation. Plaintiff opposes the Motion to Compel and seeks to withhold unvalidated (or raw) Sampling Data, or alternatively, the imposition of conditions surrounding Defendants' use of unvalidated Sampling Data.

For the reasons set forth herein, Moving Defendants' Motion to Compel Production is granted, and Plaintiff's Motion for a Protective Order is granted in part, and denied in part.

**STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY**

In 2016, Plaintiff entered into an Administrative Settlement Agreement and Order on Consent (the "2016 ASAOC") with the United States Environmental Protection Agency ("EPA") to design the remedy the EPA selected for cleanup of the Lower Passaic River. Plaintiff is performing remediation sampling under the 2016 ASAOC on behalf of, and as overseen by, the EPA.

On February 25, 2019, the Honorable Joseph A. Dickson, U.S.M.J. entered a Second Pretrial Scheduling Order ("Scheduling Order"). The Scheduling Order provides that by no later than April 1, 2019, Plaintiff shall produce:

> all sampling data associated with the sampling of Lower 8.3 miles of the Lower Passaic River ("OU2") or the former Diamond Alkali facility at 80-120 Lister Avenue in Newark, New Jersey ("OU1") performed from January 1, 2018 through December 31, 2018, including sampling done pursuant to the 2016 ASAOC and pursuant to the EPA five-year review of the OU1 remedy, and any other sampling of OU1 or OU2.

The Scheduling Order further provides that within thirty days after Plaintiff has made the required production of Sampling Data, Defendants shall serve requests to conduct additional site sampling. The production of Sampling Data was handled by Judge Dickson outside of the purview of traditional ESI productions, and instead, was ordered to be provided at an early stage of this litigation to afford Defendants an opportunity to determine if additional site sampling would be needed. The Scheduling Order makes no distinction between validated and unvalidated Sampling Data, but instead requires the production of "all" Sampling Data obtained from OU1 or OU2. At oral argument, Plaintiff argued that the issue of the production of raw, or unvalidated, Sampling Data was an issue that remained open for a future judicial determination.

In its First Joint Request for Production of Documents dated March 5, 2019, Moving

Defendants requested that Plaintiff produce all Sampling Data in connection with the 2016 ASAOC. The demands include the production of all:

> Sampling Data from work OxyChem is currently performing at EPA's direction, Sampling Data from investigations extending back to at least 1983, when the contamination of the [80 Lister Avenue Plant Site (currently owned by OxyChem)] and the Lower Passaic River became the subject of regulatory scrutiny (including Sampling Data not required by EPA that OxyChem or its indemnitors may have elected to collect), and all future Sampling Data.

Plaintiff objected to this discovery demand as irrelevant and not proportional to the needs of the case. Plaintiff further advised that it could not release unvalidated data due to EPA restrictions placed on the data.

On June 5, 2019, Moving Defendants filed this Motion to Compel seeking the production of all Sampling Data, validated and unvalidated, arguing that the Sampling Data is relevant and discoverable under Rule 26. Specifically, Moving Defendants argue that the Sampling Data, even unvalidated data, provides information related to the current and historical levels of contamination at the Lister Avenue Plant Site and in the Lower Passaic River. Moving Defendants also claim that the Sampling Data is necessary to evaluate Plaintiff's validation process. According to Moving Defendants, courts routinely hold that unvalidated sampling data is discoverable, and Plaintiff has cited to no legal authority to the contrary.

On June 17, 2019, Plaintiff filed this Motion for a Protective Order pursuant to Rule 26(c). Plaintiff argues that a protective order is warranted to limit the sharing of unvalidated Sampling Data because only data validated by the EPA is discoverable. Plaintiff believes that validated data by the EPA supersedes unvalidated data, and the production of the unvalidated data will cause confusion of the facts, delay of the case, and waste of the parties' resources.

While continuing its objection to the production of unvalidated Sampling Data, Plaintiff

alternatively seeks, to the extent unvalidated Sampling Data is compelled to be produced, to impose certain conditions on the use of the unvalidated Sampling Data. Specifically, Plaintiff submits that Defendants should be required to identify when they use, or rely on, unvalidated Sampling Data in an expert report or any submissions. Plaintiff argues that such identification will ease the potential burden that would be imposed on Plaintiff to review hundreds (or thousands) of pages of data to determine if the data being cited by Defendants is raw or validated.

On September 19, 2019, oral argument was heard on the motions. During oral argument, Plaintiff made clear that its use of the term "unvalidated data" refers to data that the EPA has not validated under the subject work plan.

## ANALYSIS

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Importantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

### I. RELEVANCE OF THE SAMPLING DATA

The purpose of discovery is to investigate the facts about the claims and defenses set forth in the pleadings, and therefore, the boundaries of relevance depend on the context of each matter. See In re Gerber Probiotic Sales Practices Litig., 306 F.R.D. 527, 528 (D.N.J. 2015); Salamone v. Carter's Retail, Inc., Civ. No. 09-5856, 2011 U.S. Dist. LEXIS 41357, 2011 WL 1458063, at *2 (D.N.J. Apr. 14, 2011) (Brown, C.J.), accord Hickman v. Taylor, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947). The determination of relevance is within the court's discretion. Salamone,

2011 U.S. Dist. LEXIS 41357, 2011 WL 1458063, at *2. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman, 329 U.S. at 507. Discovery allows each party to have a fair opportunity to present an effective case at trial. Halpin v. Barnegat Bay Dredging Co., 2011 U.S. Dist. LEXIS 68828, 2011 WL 2559678, at *10 (D.N.J. June 27, 2011). Accordingly, courts construe Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978); see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990) (citation omitted).

Based on the broad standard to be applied, it is evident that the Sampling Data, even if unvalidated, is relevant to this matter and, at the very least, could reasonably lead to the discovery of information relating to the current and historical levels of contamination and corresponding discharges at the Lister Avenue Plant Site, surrounding sites, and in the Lower Passaic River, which is a critical issue in this case. In addition, the Sampling Data could reasonably lead to the discovery of information relating to Plaintiff's proportional liability, if any, for contamination in the Lower Passaic River.

Plaintiff's attempt to parse the Sampling Data as "validated" and "unvalidated" is unavailing. Pertinent case law does not distinguish between unvalidated and validated data for the purposes of discovery. All Sampling Data, regardless of its level of review by the EPA, may be relevant for purposes of Rule 26. If such a distinction were at all material, it would be for purposes of determining admissibility or credibility later in this matter, and the parties would certainly be afforded the ability to explore this distinction during expert discovery. Accordingly, the Sampling Data, validated or unvalidated, is relevant.

## II.     PROPORTIONALITY OF THE SAMPLING DATA

Rule 26 was amended effective December 1, 2015, to require that the discovery be proportional to the needs of the case and take into account the burdens created by the discovery proceedings. See Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment. When considering the proportionality of discovery, courts must consider a number of factors including: (1) the importance of the issues at stake; (2) the amount in controversy; (3) the parties' access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. See Fed. R. Civ. P. 26(b)(1). Proportionality determinations are made on a case-by-case basis. See Employers Ins. Co. of Wausau v. Daybreak Express, Inc., 2017 U.S. Dist. LEXIS 86224, at *5 (D.N.J. June 5, 2017) (quoting Bell v. Reading Hosp., 2016 U.S. Dist. LEXIS 4643, at *2 (E.D. Pa. Jan. 14, 2016)). "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." Id.

Even if discovery is proportional to the needs of the case, courts have the discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit. See Goodman v. Burlington Coat Factory Warehouse Corp., 292 F.R.D. 230 (D.N.J. 2013) (citing Fed. R. Civ. P. 26(b)(2)(C)). Specifically, Rule 26 permits the court to issue a protective order for good cause shown to prevent annoyance, embarrassment, oppression or undue burden or expenses. Id. (citing Fed. R. Civ. P. 26(c)).

Here, the factors of proportionality strongly support production of the unvalidated Sampling Data. This is a complex environmental case, with a timeline of events dating back decades, in which data related to contamination is critical for Plaintiff's affirmative claims and

Defendants' defenses. Moreover, the scope of this case is significant, as evidenced by more than one hundred parties and a purported amount in controversy exceeding $1,000,000,000. Additionally, the data being sought is in Plaintiff's possession and can be produced without great burden. Indeed, Plaintiff has explained that a substantial amount of the unvalidated Sampling Data is in electronic format and can be produced in a matter of weeks. Finally, as Judge Dickson determined in the Scheduling Order, the production of all Sampling Data is important for Defendants to determine whether additional site sampling will be needed.[1] If, after receipt of all Sampling Data, Defendants decide to not proceed with additional sampling, significant time and expense will be avoided. Accordingly, production of the Sampling Data, validated and unvalidated, is proportional to the needs of the case.

However, the Special Master is mindful of Plaintiff's concern that it will be unduly burdened if it is required to review voluminous data simply to determine if Defendants, or their experts, have used or relied on unvalidated data. Such information could be important for Plaintiff to challenge the admissibility or credibility of any opinions or statements premised on unvalidated Sampling Data, and could streamline discovery and save money for the parties. Accordingly, Defendants are required to identify when they use, or rely on, unvalidated Sampling Data in expert reports or submissions to the Court or Special Master.

---

[1] This decision makes no determination regarding the manner in which Defendants' potential additional site sampling may be undertaken. If any issues arise in this regard, such disputes may be raised with the Special Master in accordance with applicable Rules and Protocols, including but not limited to the Joint Sampling Protocol.

**CONCLUSION**

Based on the foregoing, Moving Defendants' Motion to Compel the Production of Sampling Data is hereby granted, and Plaintiff's Motion for a Protective Order is hereby granted in part, and denied in part, as follows:

1. Within thirty (30) days from the date hereof, Plaintiff shall produce all sampling data, validated and unvalidated, taken by Plaintiff, or others, if presently accessible to Plaintiff, including but not limited to data obtained from Tierra Solutions, Inc., associated with the Lower 8.3 miles of the Lower Passaic River or the former Diamond Alkali facility at 80-120 Lister Avenue in Newark, New Jersey ("Sampling Data");

2. Within sixty (60) days from the date hereof, Plaintiff shall produce all data validation reports and other documents evidencing written comments provided by the EPA related to validation of the Sampling Data ("Sampling Data Documentation");

3. Plaintiff shall have a continuing obligation to produce any and all Sampling Data or Sampling Data Documentation within thirty (30) days of receipt;

4. Within thirty (30) days from receipt of all Sampling Data and Sampling Data Documentation being produced in accordance with paragraphs 1 and 2, Moving Defendants, or any other party to this litigation, shall provide Plaintiff written notice, in accordance with applicable Rules and Protocols, whether they intend to conduct additional site sampling and testing; and

5. In the event that Moving Defendants, or any other party to this litigation, intend to use, or rely on, any Sampling Data not validated by the EPA (or its designated

laboratory) in expert reports or submissions to the Court or the Special Master, they shall indicate, in such report or submission, the specific data being used that has not been EPA validated.

*/s/ Thomas P. Scrivo*
**THOMAS P. SCRIVO**
**Special Master**

Dated: October 3, 2019