Scott A. Hall
DUGHI, HEWIT & DOMALEWSKI, P.C.
340 North Avenue
Cranford, New Jersey 07016
(908) 272-0200
*Attorneys for Third Party Defendant,*
*Congoleum Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> 21ST CENTURY FOX AMERICA, INC., *et al.*, <br><br> Defendants. | Civil Action No. 2:18-cv-11273 (MCA)(JAD) <br><br> **ANSWER, DEFENSES AND COUNTERCLAIMS OF THIRD PARTY DEFENDANT CONGOLEUM CORPORATION** |

Third-Party Defendant Congoleum Corporation ("Congoleum"), by way of Answer to the Third Party Complaint of Third Party Plaintiff, Bath Iron Works Corporation ("BIW"), says:

### INTRODUCTION

1.      The allegations in Paragraph 1 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

2.      Congoleum is without sufficient information to form a belief as to the truth or accuracy of the allegations contained in paragraph 2 and leaves BIW to its proofs.

3.      Congoleum denies the allegations in Paragraph 3.

4.      Congoleum admits the first sentence of Paragraph 4 and denies the remaining allegations in Paragraph 4.

5.      Congoleum denies the allegations in Paragraph 5.

6.      Congoleum denies the allegations in Paragraph 6.

7.      Congoleum denies the allegations in Paragraph 7.

8.      Congoleum denies the allegation in the first sentence of Paragraph 8.  The allegations in the second sentence of Paragraph 8 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

## JURISDICTION

9.      The allegations in Paragraph 9 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

10.      The allegations in Paragraph 9 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

11.      The allegations in Paragraph 11 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

## PARTIES

12.      Congoleum is without sufficient information to form a belief as to the truth or accuracy of the allegations contained in paragraph 12 and leaves BIW to its proofs.

13.      Congoleum admits the allegations in Paragraph 13.

## FACTUAL BACKGROUND

14.      Congoleum denies the allegations in Paragraph 14.

15.      Congoleum denies the allegations in Paragraph 15.

16.      Congoleum denies the allegations in the first sentence of Paragraph 16.  Congoleum is without sufficient information to form a belief as to the truth or accuracy of the remaining allegations contained in paragraph 16 and leaves BIW to its proofs.

17.      Congoleum denies the allegations in Paragraph 17.

18.    To the extent that the allegations of Paragraph 18 seek to paraphrase or characterize the contents of the 1986 Merger Agreement, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document.

19.    To the extent that the allegations of Paragraph 19 seek to paraphrase or characterize the contents of the April 1986 Instrument of Assignment and Assumption, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document.

20.    To the extent that the allegations of Paragraph 20 seek to paraphrase or characterize the contents of the 1986 Merger Agreement, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document.

21.    Congoleum admits that it acquired a portion of the Kearny Property on which it operated administrative offices until the property was sold on March 18, 1987.  Congoleum denies the remaining allegations in Paragraph 21.  Congoleum also denies the allegations of Paragraph 21 to the extent they allege or infer that Congoleum is in any way responsible for environmental liability arising in any way from the Kearny Property.

22.    To the extent that the allegations of Paragraph 22 seek to paraphrase or characterize the contents of the 1986 Merger Agreement, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document.

23.    Congoleum denies the allegations in Paragraph 23.

24.    Congoleum denies the allegations in Paragraph 24.

25.    To the extent that the allegations of Paragraph 25 seek to paraphrase or characterize the contents of the February 28, 2002 Amended Answer, the document speaks

for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document.

26.     To the extent that the allegations of Paragraph 26 seek to paraphrase or characterize the contents of the transcripts cited therein, the transcripts speaks for themselves, and Congoleum denies the allegations to the extent that they are inconsistent with the transcripts.

27.     Congoleum admits that it received a letter from the EPA dated December 24, 1996, that Congoleum responded to the EPA's letter on January 15, 1998 and that Congoleum provided the EPA's letter to insurers.  Congoleum denies the remaining allegations in Paragraph 27.

28.     Congoleum admits that it received a letter from the EPA dated September 24, 2003, which speaks for itself, and that Congoleum provided the EPA's letter to insurers. Congoleum denies the remaining allegations in Paragraph 28.

29.     To the extent that the allegations of Paragraph 29 seek to paraphrase or characterize the contents of the March 14, 2007 letter, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document. Congoleum denies the remaining allegations in Paragraph 29.

30.     Congoleum admits that it received a letter from the EPA dated March 31, 2016, which speaks for itself, and that Congoleum provided the EPA's letter to insurers. Congoleum denies the remaining allegations in Paragraph 30.

31.     Congoleum denies the allegations in Paragraph 31.

32.     Congoleum admits the allegations contained in Paragraph 32.

33.     To the extent that the allegations of Paragraph 33 seek to paraphrase or characterize the contents of Occidental's Complaint, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document. Congoleum also denies the allegations of Paragraph 33 to the extent they allege or infer that Congoleum is in any way responsible for environmental liability arising in any way from the Kearny Property.

34.     To the extent that the allegations of Paragraph 34 seek to paraphrase or characterize the contents of Occidental's Complaint, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document. Congoleum also denies the allegations of Paragraph 34 to the extent they allege or infer that Congoleum is in any way responsible for environmental liability arising in any way from the Kearny Property.

35.     To the extent that the allegations of Paragraph 35 seek to paraphrase or characterize the contents of Occidental's Complaint, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document. Congoleum also denies the allegations of Paragraph 35 to the extent they allege or infer that Congoleum is in any way responsible for environmental liability arising in any way from the Kearny Property.

36.     Congoleum admits the allegations set forth in that Paragraph 36 relating to the DVL Lawsuit and DVL Property.  Congoleum denies the allegations in Paragraph 33 to the extent they allege or infer that Congoleum is in any way responsible for environmental liability arising in any way from the Kearny Property.

37.     Congoleum admits that it is engaged in confidential allocation proceedings conducted by David Batson, Esq., AlterEcho, Inc., concerning Lower Passaic River Study Area Operable Unit No. 2.  Congoleum denies the remaining allegations in Paragraph 37.

38.     Congoleum denies the allegations in Paragraph 38.

39.     Congoleum admits that it responded to BIW's request by letter dated April 11, 2019, which speaks for itself.  Congoleum denies the remaining allegations in Paragraph 39.

### CLAIM 1: BREACH OF CONTRACT – DUTY TO DEFEND AND INDEMNIFY

40.     Congoleum repeats and incorporates its responses to the allegations of Paragraphs 1 through 40 as if set forth at length herein.

41.     The allegations in Paragraph 41 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

42.     Congoleum denies the allegations in Paragraph 42.

43.     The allegations in Paragraph 42 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.  To the extent that the allegations of Paragraph 43 seek to paraphrase or characterize the contents of the 1986 Merger Agreement, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document.

44.     Congoleum denies the allegations in Paragraph 44.

45.     Congoleum denies the allegations in Paragraph 45.

46.     Congoleum denies the allegations in Paragraph 46.

### CLAIM 2: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

47.     Congoleum repeats and incorporates its responses to the allegations of Paragraphs 1 through 47 as if set forth at length herein.

48.     The allegations in Paragraph 48 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

49.     Congoleum denies the allegations in Paragraph 49.

50.     Congoleum denies the allegations in Paragraph 50.

51.     Congoleum denies the allegations in Paragraph 51.

52.     Congoleum denies the allegations in Paragraph 52.

## CLAIM 3: CERCLA CONTRIBUTION

53.     Congoleum repeats and incorporates its responses to the allegations of Paragraphs 1 through 53 as if set forth at length herein.

54.     The allegations in Paragraph 54 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

55.     The allegations in Paragraph 55 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

56.     The allegations in Paragraph 56 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

57.     To the extent that the allegations of Paragraph 57 seek to paraphrase or characterize the contents of Occidental's Complaint, the document speaks for itself, and Congoleum denies the allegations to the extent that they are inconsistent with that document. Congoleum also denies the allegations of Paragraph 35 to the extent they allege or infer that Congoleum is in any way responsible for environmental liability arising in any way from the Kearny Property.

58.     Congoleum denies the allegations in Paragraph 58.

59.     The allegations in Paragraph 59 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

60.     Congoleum denies the allegations in Paragraph 60.

61.     The allegations in Paragraph 61 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

62.     Congoleum denies the allegations in Paragraph 62.

## **CLAIM 4: DECLARATORY JUDGMENT UNDER CERCLA**

63.     Congoleum repeats and incorporates its responses to the allegations of Paragraphs 1 through 63 as if set forth at length herein.

64.     The allegations in Paragraph 64 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

65.     The allegations in Paragraph 65 constitute legal claims to which no response is required.  Congoleum respectfully refers all questions of law to the Court.

66.     Congoleum denies the allegations in Paragraph 66.

**WHEREFORE**, Congoleum demands judgement in its favor as follows:

    A.     Dismissal of BIW's Third Party Complaint in full and with prejudice,

    B.     For reasonable attorneys' fees and costs; and

    C.     Any other relief the Court may deem equitable and just.

## **DEFENSES**

The following are defenses that Congoleum may assert based on the facts alleged in the Third Party Complaint or based on facts adduced in discovery.  In disclosing these defenses, Congoleum does not assume any burden of proof not otherwise required by law. Moreover, Congoleum undertakes the burden of proof only as to those defenses deemed "affirmative" defenses by law, regardless of how defenses are denominated herein.  Finally, Congoleum reserves its right to assert further defenses that may become apparent during the course of discovery.

**FIRST SEPARATE DEFENSE**
**(Failure to State a Claim)**

BIW's claims fail to state a claim upon which relief may be granted and therefore

should be dismissed.

**SECOND SEPARATE DEFENSE**
**(Compliance with Law)**

Congoleum complied with all applicable rules and regulations.

**THIRD SEPARATE DEFENSE**
**(Improperly Named Third Party Defendant)**

Congoleum is not a proper third party defendant in any action alleging violation of

the laws referenced in the Third Party Complaint and therefore, the Third Party Complaint in

this action must be dismissed.

**FOURTH SEPARATE DEFENSE**
**(Unclean Hands)**

BIW's claims for relief are barred by the Doctrine of Unclean Hands.

**FIFTH SEPARATE DEFENSE**
**(Failure to Mitigate Damages)**

BIW's claims are barred by reason of BIW's  failure to reasonably mitigate damages.

**SIXTH SEPARATE DEFENSE**
**(Comparative Fault)**

All rights which BIW may have had with respect to the subject matter of this

litigation were waived by their BIW's acts and wrongful conduct.

**SEVENTH SEPARATE DEFENSE**
**(Statute of Limitations)**

BIW's claims are barred by applicable statutes of limitations, statutes of repose, or

other applicable limitations.

**EIGHTH SEPARATE DEFENSE**
**(Laches)**

BIW's claims are barred by the doctrine of laches.

**NINTH SEPARATE DEFENSE**
**(Waiver)**

BIW's claims are barred, in whole or in part, by the doctrine of waiver.

**TENTH SEPARATE DEFENSE**
**(Bad Faith)**

BIW's claims have been instituted in bad faith and solely for the purpose of seeking

an unfair and unsubstantiated settlement.

**TENTH SEPARATE DEFENSE**
**(Estoppel)**

BIW should be estopped from bringing the above-captioned matter due to BIW's own

prior wrongful, negligent and inappropriate acts and conduct with regard to the subject matter

and, accordingly, the Third Party Complaint against Congoleum should be dismissed.

**ELEVENTH SEPARATE DEFENSE**
**(Proximate Cause)**

BIW's claims are barred, in whole or in part, because none of the alleged acts or

omissions of Congoleum proximately caused BIW's alleged damages.

**TWELFTH SEPARATE DEFENSE**
**(Standing)**

BIW lacks standing to assert some or all the claims and the demands for relief in the

Third Party Complaint.

**THIRTEENTH SEPARATE DEFENSE**
**(Assumption of the Risk)**

BIW assumed the risks inherent in the activities engaged in by BIW.

**FOURTEENTH SEPARATE DEFENSE**
**(Corporate Successor)**

Congoleum is not the corporate successor to an entity that is alleged to be a

discharger of hazardous substances to the Passaic River.

## FIFTEENTH SEPARATE DEFENSE
### (CERCLA Defenses)

The release or threat of release of hazardous substances at the Kearny Property, if any, was caused solely by an act of God, an act of war, or an act or omission of third parties as set forth in 42 U.S.C. § 9607(b).

## SIXTEENTH SEPARATE DEFENSE
### (Equitable Allocation)

Pursuant to CERCLA, 42 U.S.C. § 9613(f)(1), this Court is requested to consider such equitable factors as it deems appropriate in resolving BIW's third party claims.  It is Congoleum's position that based on such equitable factors, this Court will determine that Congoleum bears no responsibility for any response costs.

## SEVENTEENTH SEPARATE DEFENSE
### (Failure to Allege Statutory Prerequisites)

BIW's claims are barred, in whole or in part, because BIW failed to allege, and cannot yet allege, the requisite information for its claims.

## EIGHTEENTH SEPARATE DEFENSE
### (Other Defenses)

Congoleum does not waive or relinquish any other available defenses.  Congoleum expressly reserves the right to raise such additional defenses as may be established through discovery, further investigation, or further events with respect to the subject matter of this action.

## COUNTERCLAIM

Third Party Defendant Congoleum Corporation ("Congoleum"), by way of Counterclaim against Third Party Plaintiff Bath Iron Works Corporation ("BIW"), alleges and states as follows:

## JURISDICTION

1.     Congoleum's Counterclaim forms part of the same case or controversy as BIW's claims and, therefore, this Court has jurisdiction over Congoleum's Counterclaim pursuant to 28 *U.S.C.* § 1367(a).

## PARTIES

2.     Congoleum is a corporation formed under the laws of the State of Delaware with its principal place of business at 3500 Quakerbridge Road, P.O. Box 3127, Mercerville, New Jersey 08619-0127.

3.     On information and belief, BIW is a corporation formed under the laws of the State of Maine with its principal place of business at 700 Washington Street, Bath, Maine 04530.

## INTRODUCTION

4.     Congoleum Corporation's Counterclaim is primarily an action for a declaratory judgment that: (a) BIW is the real party-in-interest regarding responsibility for the 66-acre site located in Kearny, NJ—i.e., the entire 66-acre property formerly owned by Congoleum-Nairn, Inc. (the "Kearny Property"), including, but not limited to, an 8-acre portion, located at 160-194 Passaic Avenue in Kearny, New Jersey and currently known as Block 15, Lot 7.01 (the "DVL Parcel"), which is the subject of DVL, Inc. and DVL Kearny Holdings, LLC's (collectively, "DVL") claims against Congoleum and BIW in the substantially overlapping and pending litigation, captioned *DVL, Inc. & DVL Kearny Holdings, LLC v. Congoleum Corp. and Bath Iron Works Corp.*, No. 2:17-cv-04261-KM-JBC (D.N.J.) (the "DVL Lawsuit")[1]; and (b) Congoleum bears no responsibility for the

---

[1] The DVL Lawsuit includes claims asserted by BIW and Congoleum that involve the same corporate successorship and indemnity issues asserted by BIW and Congoleum in this litigation.  The parties in the DVL

alleged environmental conditions at or emanating from the Kearny Property. This is also an action seeking contribution and indemnification for all known and unknown past, present, and future environmental liabilities associated with the Kearny Property, including, but not limited to, any and all liabilities related to any alleged environmental conditions at or emanating from the Kearny Property.

5.      If DVL is successful in recovering any damages or costs from Congoleum related to the DVL Parcel under any statutory or common law theory, then Congoleum shall seek contribution in full from BIW. Congoleum shall similarly seek contribution in full from BIW related to any and all past, present, and future (known and unknown) environmental conditions at or emanating from the Kearny Property, including, but not limited to, the EPA's claims that alleged releases from the Kearny Property somehow impacted the Diamond Alkali Superfund Site, the claims made by Occidental Chemical Corporation ("Occidental") with regard to the Kearny Property in this litigation, and any other similar future environmental actions.

6.      On June 6, 2017, DVL filed the DVL Lawsuit against Congoleum seeking recovery of costs allegedly incurred by DVL in performing certain alleged environmental investigation and remediation activities at 160-194 Passaic Avenue (Block 15, Lot 7.01) in Kearny, New Jersey, a portion of a former Kearny Property (i.e., the DVL Parcel) that DVL alleges was contaminated by Congoleum many decades ago, prior to DVL's purchase of the DVL Parcel in approximately 1960.

---

Lawsuit are currently engaged in expert discovery. Congoleum anticipates that discovery in the DVL Lawsuit will be completed during the first half of 2020. BIW and Congoleum have agreed to submit a stipulation to the Court in this litigation staying their claims against one another in this matter pending resolution of their respective corporate successorship and indemnity claims in the DVL Lawsuit.

7.      The entity now known as Congoleum Corporation and identified by DVL in their Complaint was created in 1986.  Congoleum Corporation is wholly separate and distinct from entities with the same or similar names that owned and/or operated the DVL Parcel prior to DVL's purchase in 1960.

8.      Congoleum never owned the DVL Parcel or any part of the Kearny Property at which manufacturing operations were conducted.  Congoleum did not conduct any historic operations on the DVL Parcel or the larger Kearny Property, and at no point did Congoleum assume any environmental liabilities related to the DVL Parcel or the larger Kearny Property.

9.      As a result, Congoleum is not a proper defendant in this matter.

10.      As set forth herein, liabilities associated with the Kearny Property's ownership or historic operations at the Kearny Property, including any liabilities that may result from any alleged environmental conditions at or emanating from the DVL Parcel, were wholly assumed by BIW following a series of corporate transactions detailed herein.

11.      Accordingly, by way of this Counterclaim, Congoleum seeks a declaratory judgment, indemnification, and contribution from BIW for any and all claims alleged by Occidental, the EPA or DVL relating to the Kearny Property.  Congoleum also seeks a declaratory judgment, indemnification, and contribution from BIW that as the corporate successor to Congoleum Industries, Inc., BIW is liable for any and all liabilities relating to the environmental conditions at or emanating from the entire Kearny Property in addition to its subpart, the 8-acre DVL Parcel—which necessarily includes, but is not limited to, the Diamond Alkali Superfund Site and this lawsuit.

## FACTUAL BACKGROUND

12.     In 1924, a then-existing entity known as Congoleum Corporation ("1911 Congoleum") merged with Nairn Linoleum Company, which owned a portion of the Kearny Property, including the DVL Parcel that is the subject of the DVL Lawsuit.[2]

13.     Following the merger, the combined company became known as Congoleum-Nairn, Inc. ("Congoleum-Nairn").

14.     Part of Congoleum-Nairn's business included the manufacture of resilient flooring materials (the "Resilient Flooring Operations") which took place on portions of the Kearny Property, including, but not limited to, the DVL Parcel.

15.     At its peak, the Kearny Property reached approximately 66 acres.

16.     Congoleum-Nairn sold the DVL Parcel to DVL's predecessors-in-interest in or around 1959 and various portions of the larger 66-acre Kearny Property were sold before and after 1959.

17.     While the current Congoleum Corporation did own a small administrative building on the Kearny Property along Belgrove Avenue in Kearny, New Jersey, but that administrative building was never used for manufacturing operations.  The current Congoleum used that building for administrative purposes only from April 18, 1986 until that property was sold on March 18, 1987.

18.     In 1968, Congoleum-Nairn was merged with and into Bath Industries, Inc., and the surviving entity changed its name to Congoleum Corporation ("1968 Congoleum").

---

[2] DVL recently sold the DVL Parcel to an unrelated party, but the DVL entities remain as plaintiffs in the DVL Lawsuit.

19.     1968 Congoleum was involved in a series of transactions between 1980 and 1984 that re-structured its businesses into different subsidiaries and divisions, including entities affiliated with BIW.

20.     As a result of the aforementioned restructuring, assets and liabilities related to the Resilient Flooring Operations, including historic operations at the Kearny Property, were ultimately transferred to a new Congoleum Corporation ("1984 Congoleum").

21.     Pursuant to an April 18, 1986 Instrument of Assignment and Assumption (the "Resilient Assignment"), 1984 Congoleum transferred the Resilient Flooring Operations to a newly formed entity known as Resilco, Inc. ("Resilco").

22.     Specifically, pursuant to the "Resilient Assignment", 1984 Congoleum transferred to Resilco the "Transferred Assets," defined in the Resilient Assignment as "all of the rights, properties, assets, and contracts of every kind, character and description, whether tangible or intangible whether real, personal, mixed or otherwise, and wheresoever situtated [sic], belonging to [1984] Congoleum and which are utilized in the business conducted by its Resilient Floor Division on the date hereof to have and hold forever."

23.     Pursuant to the Resilient Assignment, Resilco only assumed those assets utilized in the resilient flooring business (the "Business") on April 18, 1986.

24.     The former manufacturing facilities at the Kearny Property, having been sold years prior to the April 18, 1986 Resilient Assignment, were not utilized in the Business as of that date.

25.     Pursuant to the Resilient Assignment, Resilco only assumed those liabilities "directly related to the [Resilient] Transferred Assets as of [April 18, 1986]."

26.     Nearly three decades prior to April 18, 1986, the DVL Parcel at issue in the

DVL Lawsuit had been sold to DVL's predecessor-in-title.  Thus, the DVL Parcel was not a

then existing asset of the Business for which any related liabilities were assumed by Resilco

on April 18, 1986.

27.     After divesting the Business, the remainder of 1984 Congoleum's liabilities—

including liability related to the historic ownership and operation of the Kearny Property—

were transferred to Congoleum Industries, Inc. ("CII"), which was 1984 Congoleum's

corporate parent.

28.     CII later changed its name to BIW Industries, Inc. and through a series of later

transactions, was merged with and into BIW, taking with it any and all liabilities associated

with the Kearny Property, including, but not limited to, the environmental condition of the

Kearny Property.

29.     On April 29, 1986, Resilco changed its name to Congoleum Corporation

("1986 Congoleum").

30.     1986 Congoleum then merged with Resilient Acquisition, Inc. on July 1,

1986, and Congoleum Corporation was the surviving entity.  This 1986 entity is the

Congoleum Corporation that has been identified in BIW's Third Party Complaint and that is

making these counterclaims.

31.     As a result of the foregoing transactions, any claims, costs, or liabilities

concerning the Kearny Property, or any environmental conditions at or emanating from the

Kearny Property are the responsibility of BIW as the proper successor-in-interest to 1984

Congoleum and CII.  This includes all known and unknown past, present, and future

environmental liabilities associated with the Kearny Property, including, but not limited to,

any and all liabilities related to any alleged environmental conditions at or emanating from the Kearny Property.

## COUNT I
## DECLARATORY JUDGMENT PURSUANT TO CERCLA

32.     Congoleum repeats the allegations of Paragraphs 1 through 31 as if fully restated at length herein.

33.     There exists a present and actual controversy between Congoleum and BIW concerning their respective rights and obligations in connection with response costs and contribution claims concerning the Kearny Property.

34.     Congoleum is entitled to judgment under CERCLA § 113(g)(2), 42 *U.S.C.* § 9613(g)(2), and 28 U.S.C. §§ 2201 and 2202 against BIW declaring that BIW is the proper party-in-interest with respect to environmental claims arising from the Kearny Property and shall be liable to Congoleum for any and all costs and for contribution arising from the alleged contamination at or emanating from the Kearny Property, which judgment shall be binding in any subsequent action to recover further costs and/or contribution for environmental claims arising from the Kearny Property.

**WHEREFORE**, Congoleum demands judgment against BIW as follows:

a)     A declaration from the Court that BIW is the proper party-in-interest with respect to the Kearny Property and shall be responsible for all current and future costs arising from the alleged contamination at or emanating from the Kearny Property related to the historic operations of the Kearny Property;

b)     Requiring BIW to reimburse Congoleum for all reasonable costs and expenses, including attorneys' fees; and

c)     Awarding Congoleum such other and further relief as the Court deems just and proper.

## COUNT II
## CONTRIBUTION PURSUANT TO CERCLA

35.     Congoleum repeats the allegations of Paragraphs 1 through 34 as if fully

restated at length herein.

36.     Pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), "[a]ny person may seek

contribution from any other person who is liable or potentially liable under [CERCLA §

107(a)] during any civil action under . . . [CERCLA § 107(a)]."

37.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), liability attaches when:

(a) the defendant is a potentially responsible party under CERLCA; (b) hazardous substances

were disposed of at a facility; (c) there has been a release or threatened release of hazardous

substances from the facility into the environment; and (d) the release or threatened release

has required or will require the plaintiff to incur response costs.

38.     Under CERCLA, potentially responsible parties include: (a) the current owner

or operator or a facility; (b) any person who owned or operated the facility at the time of the

disposal of a hazardous substance; (c) any person who arranged for the disposal or transport

for disposal of hazardous substances at a facility; and (d) any person who accepts hazardous

substances for transport to sites selected by said person.

39.     As alleged by DVL in the DVL Lawsuit, by Occidental in the Occidental

Lawsuit, and letters from the EPA, hazardous substances as defined by CERCLA were

allegedly either (1) disposed of or released at the DVL Parcel by Congoleum-Nairn or (2)

disposed of or released during the time of Congoleum-Nairn's ownership or operation of the

Kearny Property.

40.     BIW is the proper successor-in-interest to any and all liabilities that are

associated with the Kearny Property and any environmental conditions on or emanating from

the Kearny Property from the operations of Congoleum-Nairn or its successors, including, but not limited to, the DVL Parcel, the Diamond Alkali Superfund Site, and the Occidental Lawsuit.

41.     The Kearny Property is a "facility" as defined by CERCLA § 101(9), 42 U.S.C. § 9601(9).

42.     BIW is a potentially responsible party pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a); is liable for "response costs" within the meaning and scope of CERCLA §§ 101(25) and 107(a), 42 U.S.C. §§ 9601(25) and 9607(a), as to the Kearny Property; and is liable under CERCLA § 113(f), 42 U.S.C. 9613(f), as to the DVL Parcel.

43.     In the event that Congoleum is found liable in the DVL Lawsuit or this Lawsuit or is required to pay any portion of the costs allegedly incurred by DVL or Occidental with regard to the investigation or remediation of hazardous substances at or allegedly discharged from any portion of the Kearny Property, then Congoleum will have incurred necessary response costs consistent with the National Contingency Plan.

44.     In the event that Congoleum is found liable in the DVL Lawsuit or this Lawsuit or is required to pay any portion of the costs allegedly incurred by DVL or Occidental with regard to the investigation or remediation of hazardous substances at or allegedly discharged from any portion of the Kearny Property, as the proper successor-in-interest to any and all liabilities associated with the Kearny Property and any environmental conditions on or emanating from the Kearny Property, BIW is liable to Congoleum pursuant to CERCLA § 113(f), 42 *U.S.C.* § 9613(f) — or, in the alternative, CERCLA § 107(a), 42 U.S.C. § 9607(a) — for any and all response costs that Congoleum is ordered to pay.

**WHEREFORE**, Congoleum demands judgment against BIW as follows:

a) Requiring BIW to pay Congoleum an amount equal to any judgment against Congoleum in the DVL Lawsuit or in this Lawsuit;

b) Requiring BIW to pay Congoleum an amount equal to any judgment against Congoleum regarding alleged historical environmental liabilities emanating from the Kearny Property, including all known and unknown past, present, and future environmental liabilities associated with the Kearny Property, including, but not limited to, any and all liabilities related to any alleged environmental conditions at or emanating from the Kearny Property;

c) A declaration from the Court that BIW is the proper party-in-interest with respect to the Kearny Property and shall be responsible for all current and future costs arising from the alleged contamination at or emanating from the Kearny Property related to the historic operations at the Kearny Property, including all known and unknown past, present, and future environmental liabilities associated with the Kearny Property, including, but not limited to, any and all liabilities related to any alleged environmental conditions at or emanating from the Kearny Property;

d) Requiring BIW to reimburse Congoleum for all reasonable costs and expenses, including attorneys' fees; and

e) Awarding Congoleum such other and further relief as the Court deems just and proper.

## COUNT III

## CONTRIBUTION PURSUANT TO THE

## NEW JERSEY SPILL COMPENSATION & CONTROL ACT

45. Congoleum repeats the allegations of Paragraphs 1 through 44 as if fully restated at length herein.

46. The New Jersey Spill Compensation and Control Act (the "Spill Act") provides that: "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred." *N.J.S.A.* 58:10-23.11g(c)(1).

47.     The Spill Act, *N.J.S.A.* 59:10-23.11f(a)(1), provides a right of contribution to persons who incur cleanup and removal costs against those persons in any way responsible for the offending discharges of hazardous substances at a facility.

48.     As alleged by DVL in the DVL Lawsuit and by Occidental in this Lawsuit, hazardous substances as defined by the Spill Act were either (1) discharged at the DVL Parcel by Congoleum-Nairn or (2) discharged during the time of Congoleum-Nairn's ownership or operation of the Kearny Property.

49.     BIW is the successor-in-interest to any and all liabilities associated with the Kearny Property and any environmental conditions on or emanating from the Kearny Property, and as such, BIW is the proper successor-in-interest to any environmental conditions on or emanating from the DVL Parcel.

50.     The Kearny Property is a "facility" as defined in the Spill Act. *N.J.S.A.* 58:10-23.11b.

51.     BIW is a person "in anyway responsible" within the meaning of the contribution provisions of the Spill Act, *N.J.S.A.* 59:10-23.11f(a)(1).

52.     In the event that Congoleum is found liable in the DVL Lawsuit, or is required to pay any portion of the costs allegedly incurred by DVL with regard to the investigation or remediation of hazardous substances at the DVL Parcel, or is required to pay any portion of any costs with regard to the investigation or remediation of hazardous substances on or emanating from the Kearny Property, including, but not limited to, the Kearny Property or the Diamond Alkali Superfund Site, then Congoleum will have incurred cleanup and response costs pursuant to the Spill Act.

53.     In the event that Congoleum is found liable in the DVL Lawsuit or is required to pay any portion of the costs allegedly incurred by DVL with regard to the investigation or remediation of hazardous substances at the DVL Parcel, as the proper successor-in-interest to any and all liabilities associated with the Kearny Property and any environmental conditions on or emanating from the Kearny Property, BIW is accordingly liable to Congoleum pursuant to the Spill Act, for any and all response costs that Congoleum is ordered to pay as to any portion of any costs with regard to the investigation or remediation of hazardous substances on or emanating from the Kearny Property, including, but not limited to, the Kearny Property or the Diamond Alkali Superfund Site.

54.     As the proper successor-in-interest, BIW is also liable under the Spill Act for any and all future cleanup and response costs resulting from the alleged discharge of hazardous substances associated with Congoleum-Nairn's historic operations at the Kearny Property.

**WHEREFORE**, Congoleum demands judgment against BIW as follows:

a)     Requiring BIW to pay Congoleum an amount equal to any judgment against Congoleum and in favor of DVL in the DVL Lawsuit or in this Lawsuit;

b)     A declaration from the Court that BIW is the proper party-in-interest with respect to the Kearny Property and, as such, BIW shall be responsible for all current and future costs arising from the alleged contamination at or emanating from the Kearny Property related to the historic operations at the Kearny Property;

c)     Requiring BIW to reimburse Congoleum for all reasonable costs and expenses, including attorneys' fees; and

d)     Awarding Congoleum such other and further relief as the Court deems just and proper.

## COUNT IV
## INDEMNIFICATION

55.     Congoleum repeats the allegations of Paragraphs 1 through 54 as if fully

restated at length herein.

56.     Congoleum is a wholly separate legal entity, distinct from those entities with

the same or similar names that owned and/or operated the Kearny Property prior to April

1986.

57.     Congoleum has no legal connection to liabilities related to the historic

ownership or operation of the Kearny Property.

58.     As a result of a series of transactions culminating in 1986, any alleged

environmental liabilities associated with the ownership of the Kearny Property or historic

operations thereon were expressly assumed by CII.

59.     CII later changed its name to BIW Industries, Inc. and through a series of later

transactions, was merged with and into BIW, taking with it any and all liabilities associated

with the Kearny Property and any historic operations conducted thereon.

60.     BIW is therefore the successor-in-interest to any and all liabilities associated

with the Kearny Property and any environmental conditions on or emanating from the

Kearny Property.

61.     Without admitting any liability, and while denying all claims by DVL for any

damages alleged in the DVL Lawsuit and by Occidental relating to the Kearny Property in

this Lawsuit, Congoleum asserts that if any liability should be found against it, BIW is

obligated to indemnify, defend, and save harmless Congoleum against all claims asserted

against Congoleum arising from the investigation or remediation of hazardous substances on

or emanating from the Kearny Property, on the basis of contract and common law

indemnification, including for any and all damages, attorneys' fees, costs, and other fees chargeable.

**WHEREFORE**, Congoleum demands judgment against BIW as follows:

a)     Requiring BIW to pay Congoleum an amount equal to any judgment against Congoleum and in favor of DVL in the DVL Lawsuit or in this Lawsuit;

b)     A declaration from the Court that BIW is the proper party-in-interest with respect to the Kearny Property and shall be responsible for all current and future costs arising from the alleged contamination at or emanating from the Kearny Property related to the historic operations at the Kearny Property, including all known and unknown past, present, and future environmental liabilities associated with the Kearny Property, including, but not limited to, any and all liabilities related to any alleged environmental conditions at or emanating from the Kearny Property;

c)     Requiring BIW to reimburse Congoleum for all reasonable costs and expenses, including attorneys' fees; and,

d)     Awarding Congoleum such other and further relief as the Court deems just and proper.

## COUNT V
## CONTRIBUTION

62.     Congoleum repeats the allegations of Paragraphs 1 through 61 as if fully restated at length herein.

63.     Without admitting any liability, and while denying all claims by DVL for any damages alleged in the DVL Lawsuit and by Occidental relating to the Kearny Property in this Lawsuit, Congoleum asserts that if any liability should be found against it, Congoleum is entitled to and hereby demands contribution under all applicable laws, including, but not limited to, the common law, the New Jersey Joint Tortfeasor's Act, *N.J.S.A.* 2A:53A-1, *et seq.*, and the Comparative Negligence Act, *N.J.S.A.* 2A:15-5.1, et seq., with respect to any damages which may be assessed against Congoleum for any alleged environmental conditions at or emanating from the Kearny Property.

**WHEREFORE**, Congoleum demands judgment against BIW as follows:

a)      Requiring BIW to pay Congoleum an amount equal to any judgment against Congoleum and in favor of DVL in the DVL Lawsuit or in this Lawsuit;

b)      A declaration from the Court that BIW is the proper party-in-interest with respect to the Kearny Property and shall be responsible for all current and future costs arising from the alleged contamination at or emanating from the Kearny Property related to the historic operations at the Kearny Property, including all known and unknown past, present, and future environmental liabilities associated with the Kearny Property, including, but not limited to, any and all liabilities related to any alleged environmental conditions at or emanating from the Kearny Property;

c)      Requiring BIW to reimburse Congoleum for all reasonable costs and expenses, including attorneys' fees; and,

d)      Awarding Congoleum such other and further relief as the Court deems just and proper.

## CROSS-CLAIMS AND COUNTERCLAIMS

Congoleum hereby denies any and all cross-claims and/or counter claims filed or to be filed in this matter and reserves the right to assert cross-claims and/or additional counterclaims.

## <u>CERTIFICATION PURSUANT TO L. CIV. R 11.2</u>

I hereby certify to the best of my knowledge that the matter in controversy is also the

subject of claims asserted by Third Party Plaintiff Bath Iron Works Corporation and Third

Party Defendant Congoleum Corporation in the following matters pending before this court:

1. *DVL, Inc. & DVL Kearny Holdings, LLC v. Congoleum Corp. and Bath Iron Works Corp.*, Case No. 2:17-cv-04261-KM-JBC; and

2. *Bath Iron Works Corporation v. Congoleum Corporation*, Case No. 2:19-cv-12517-KM-JBC.

DUGHI, HEWIT & DOMALEWSKI, P.C.
Attorneys for Third Party Defendant,
Congoleum Corporation

s/ Scott A. Hall
SCOTT A. HALL, ESQ.
shall@dughihewit.com

Dated: January 9, 2020

## **CERTIFICATE OF SERVICE**

I, Scott A. Hall, hereby certify that on January 9, 2020 I caused a copy of the foregoing Answer, Defenses and Counterclaims of Third Party Defendant Congoleum Corporation to be served via electronic filing on all counsel of record.

DUGHI, HEWIT & DOMALEWSKI, P.C.
Attorneys for Third Party Defendant,
Congoleum Corporation


s/ Scott A. Hall
SCOTT A. HALL, ESQ.
shall@dughihewit.com


G:\16762\ANSWER\Final\16762-PLD-SAH-CONGOLEUM ANSWER-COUNTERCLAIMS-1-9-2020.doc