**PretiFlaherty**                                            **SHOOK** HARDY & BACON

January 13, 2020

**VIA EMAIL AND ECF**

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

      Re:    *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.*
               Docket No. 2:18-cv-11273-MCA-JAD

Dear Special Master Scrivo:

We write on behalf of the Small Parties Group ("SPG") in advance of the January 15, 2020 meeting to respectfully request the addition of the following topics to the meeting agenda:

(1) OxyChem's production of sampling data;

(2) Privilege issues; and

(3) Electronically stored information ("ESI") discovery.

**1. OxyChem's Production of Sampling Data**

Despite the SPG's efforts to obtain an EQuIS database of OxyChem's sampling data ("Master Database") over the last two months and OxyChem's representation on November 18 that OxyChem (or its consultant) maintains such a database, OxyChem has failed to produce the Master Database. As discussed at the November 20 meeting with the Special Master, while OxyChem purported to produce its sampling data on November 4, 2019, there are issues with the production that significantly impact its usability. For example, much of the data are not in a format that environmental consultants commonly use, such as EQuIS or Microsoft Access. In addition, the data files were produced in a mixture of file formats and with Bates Numbers as the only file names, rather than with file names or descriptions that would allow someone to review the information in a reasonable manner.

The SPG has sent OxyChem multiple letters regarding this issue[1] and only on January 9, after eight weeks of foot-dragging by OxyChem, did OxyChem provide the SPG with a Microsoft Excel file, identifying folder locations of OU-1 and OU-2 sampling data, and notifying the SPG for the first time that OxyChem cannot produce the full Master Database.[2] OxyChem

---

[1] *See* January 3, 2020 letter from SPG to OxyChem regarding EQuIS database of sampling data (discussing relevant correspondence and SPG's efforts to obtain the Master Database) (attached as **Exhibit A**).
[2] *See* January 9, 2020 letter from OxyChem to SPG regarding ESI and sampling data (attached as **Exhibit B**).

1

did not, however, provide an adequate explanation of why it cannot produce this database, stating only that exporting the database would be "technically impossible" due to its size. OxyChem has proposed certain alternatives to it producing a complete version of the database but is asserting that the SPG should bear the costs associated with each alternative production option. The SPG is currently reviewing the Microsoft Excel file with its consultants and has asked OxyChem to promptly provide a sufficient and detailed explanation as to why it would be "technically impossible" for OxyChem to produce a complete version of the Master Database.[3]

The production of OxyChem's sampling data in a useable format is essential to the SPG's adequate and timely review of the sampling data and is necessary to ensure that the parties timely resolve sampling data issues, including the determination of whether additional site sampling is needed and whether OxyChem has complied with the Special Master's Order granting the SPG's motion to compel sampling data. Accordingly, the SPG respectfully requests that this issue be addressed at the January 15 conference and that OxyChem provide the Master Database as soon as possible.

**2. Privilege Issues**

The SPG would like to discuss the following privilege-related issues at the upcoming conference: (1) OxyChem's failure to timely and fully respond to the SPG's Rule 4.4(b) letters; (2) OxyChem's deficient privilege logs; and (3) OxyChem's production of a privilege log for documents it clawed back in late November.

*A. Rule 4.4(b) Letters*

In late November, the SPG sent OxyChem notice under New Jersey Rule of Professional Conduct 4.4(b) of documents OxyChem may have inadvertently produced. The SPG requested that OxyChem promptly state its position as to whether it intended to assert a claim of privilege or protection over any of the documents identified in the notification. Having not received any response from OxyChem, the SPG sent a follow-up letter nearly one month later requesting that OxyChem re-produce the documents identified in the previous letter (since it did not assert a claim of privilege or protection over any of them) and seeking clarification as to whether OxyChem claimed privilege or protection over any additional documents identified in the December letter.

OxyChem did not respond to either Rule 4.4(b) letter until the evening of January 13— well after the SPG's proposed deadline. Rather than fully respond to the SPG's prior letters, OxyChem's January 13 letter instead alleges that there were errors in the Bates numbers the SPG provided—an issue OxyChem certainly could have raised much sooner. OxyChem's failure to re-produce documents over which it did not assert a claim of privilege or protection is depriving the SPG of documents to which it is entitled. If OxyChem is unwilling to commit to re-producing these documents within a reasonably short time period, the SPG respectfully requests that the Special Master order it do so.

---

[3] *See* January 10, 2020 letter from SPG to OxyChem regarding ESI and sampling data (attached as **Exhibit C**).

### B. OxyChem's Privilege Logs

OxyChem has produced two privilege logs for documents withheld from two production sets. Those privilege logs, however, are deficient because they do not provide the SPG sufficient information to reasonably assess OxyChem's claims of privilege or protection. On January 2, the SPG sent OxyChem a letter explaining those deficiencies and requesting that OxyChem supplement its privilege logs to provide the SPG sufficient information to fully assess OxyChem's claims.[4] On January 9, OxyChem responded to the SPG and asserted that its privilege logs are sufficient but agreed to provide a biographical "key."[5] The SPG responded to OxyChem on January 13, maintaining that OxyChem's privilege logs are deficient and that even if the "key" assists the SPG to assess some of OxyChem's privilege claims, it would not assist with the assessment of many other deficient claims and it would not cure the numerous other deficiencies identified in the SPG's January 2 letter.[6] OxyChem must supplement its privilege logs to provide additional descriptions of the withheld documents beyond this biographical "key" to enable the SPG to assess all of OxyChem's claims.

### C. Clawed-back Documents

On November 25, OxyChem sent the SPG a letter clawing back nearly 1,000 documents from OxyChem's Tierra Iron Mountain hard copy document production. The SPG disputed the privilege claims over those documents but nevertheless complied with its obligations under the Protective Order to delete the documents. It sent OxyChem a letter on December 13 confirming compliance with the Protective Order and making certain reasonable requests regarding OxyChem's privilege log for the clawed-back documents. The SPG requested that OxyChem provide on an expedited basis the privilege log for these documents, which the SPG had already determined are relevant, to efficiently move the process forward.

After not responding for nearly a month, OxyChem notified the SPG in its January 9 letter that it was refusing to produce a privilege log for the clawed-back documents on an expedited basis.[7] Instead, OxyChem stated that it would produce this privilege log "as soon as practicable" but that "it makes no sense to produce that log until the parties resolve the issues" regarding the privilege logs OxyChem has already produced. OxyChem cites no authority to support its suggestion that it should be permitted to withhold production of a privilege log for the clawed-back documents until after the parties resolve issues regarding deficiencies in privilege logs OxyChem has already produced, and the SPG has made OxyChem aware of the deficiencies in the logs so that they can be addressed in the privilege log for the clawed-back documents.

It is unclear to the SPG whether OxyChem intends to produce a privilege log for the clawed-back documents by the deadline established in the Joint Protocol for Production of Documents and Electronically-Stored Information (ECF No. 544). Defendants are entitled to a privilege log with sufficient information to allow them to assess, and potentially challenge, OxyChem's claims of privilege over these documents, *see* Fed. R. Civ. P. 26(b)(5)(A)(ii), and

---

[4] *See* January 2, 2020 letter from SPG to OxyChem regarding OxyChem's privilege logs (attached as **Exhibit D**).
[5] See January 9, 2020 letter from OxyChem to SPG regarding OxyChem's privilege logs (attached as **Exhibit E**).
[6] See January 13, 2020 letter from SPG to OxyChem regarding OxyChem's privilege logs (attached as **Exhibit F**).
[7] *See* **Ex. E**.

OxyChem cannot defer production of its privilege log beyond the established deadline. OxyChem should be ordered to produce a privilege log that complies with the federal rules in a timely manner.[8]

3. **ESI Discovery**

On December 19, the SPG sent OxyChem a letter responding to OxyChem's ESI methodology and proposing a methodology and search terms as a starting point for ESI searches by individual defendants.[9] In addition to proposing specific search terms, the SPG proposed additional qualifications to the three general categories of ESI that could apply broadly but which would, in any event, focus the individual discussion between OxyChem and each Defendant. These proposed qualifications are intended to reduce burden and avoid the collection, review, and production of largely irrelevant materials in the ESI search process. The SPG proposed, *inter alia*, limiting the production of ESI to a facility's operation dates and limiting searches to the eight COCs identified in the OU-2 Record of Decision.

The parties met and conferred on December 20 to discuss the scope of ESI discovery. With respect to whether ESI searches should be limited to the 8 COCs, OxyChem acknowledged that extending ESI searches to all CERCLA-defined hazardous substances was overly broad and unworkable. OxyChem agreed to: (1) notify the SPG in writing of OxyChem's position on the SPG's proposed ESI search terms and limitations; (2) propose an alternative set of terms broader than the eight COCs but less than all hazardous substances; and (3) provide a proposed questionnaire on parties' ESI methodologies so Defendants could review the questionnaire and determine if they agree with the use of such a questionnaire.

The SPG did not hear from OxyChem regarding these items until the afternoon of January 9, when OxyChem sent the SPG a letter following-up on the meet-and-confer.[10] To the SPG's surprise and disappointment, OxyChem's letter did not include an alternative set of terms broader than the eight COCs but less than all CERCLA-defined hazardous substances and, although it enclosed a proposed "ESI Collection Questionnaire," this questionnaire includes over 60 questions and appears to be an attempt by OxyChem to conduct discovery on the Defendants' discovery.

The SPG members are currently reviewing OxyChem's January 9 response and coordinating with liaison counsel to the extent that there are common issues that can be addressed collectively, and liaison counsel did send a preliminary response to OxyChem on January 10.[11] However, because members of the SPG are situated differently, and the history and circumstances of each facility vary widely, OxyChem ultimately will need to reach agreement on ESI search parameters with each member. It is apparent from OxyChem's letter, however, that it is not willing to reasonably negotiate regarding categorical rules about the scope of ESI. Moreover, OxyChem's practice of ignoring the SPG's correspondence for weeks and

---

[8] The SPG will notify OxyChem and the Special Master if additional issues arise from its review of and response to OxyChem's January 9 letter.
[9] *See* December 19, 2019 letter from SPG to OxyChem regarding ESI (attached as **Exhibit G**).
[10] *See* **Ex. B**.
[11] *See* **Ex. C**.

then replying on the eve of a meet-and-confer or status conference with new requests is significantly limiting liaison counsel's ability to perform its function.

* * *

Thank you for your time and consideration. We look forward to discussing these issues further on January 15th.

Respectfully submitted,

*Common Counsel for the Small Parties Group*

| | |
|---|---|
| /s/ Jeffrey D. Talbert | /s/ David R. Erickson |
| **PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP** | **SHOOK, HARDY & BACON, L.L.P.** |
| One City Center | 2555 Grand Blvd. |
| Portland, ME 04101 | Kansas City, MO 64108 |
| Telephone: 207.791.3239 | Telephone: 816.474.6550 |
| Jeffrey D. Talbert, Esq. (admitted *pro hac vice*) | David R. Erickson, Esq. (admitted *pro hac vice*) |
| | Joseph H. Blum, Esq. (NJ Bar No. 010211984) |

15136907.1