**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, | ) Hon. Madeline Cox Arleo |
| | ) Hon. Magistrate Joseph A. Dickson |
| | ) |
| | ) Civil Action No. 2:18-CV-11273 |
| Plaintiff, | ) (MCA-JAD) |
| | ) |
| | ) **BRIEF IN SUPPORT OF THE** |
| v. | ) **SMALL PARTIES GROUP'S** |
| | ) **MOTION FOR PARTIAL** |
| | ) **SUMMARY JUDGMENT ON** |
| 21ST CENTURY FOX AMERICA, | ) **OCCIDENTAL CHEMICAL** |
| INC., *et al.*, | ) **CORPORATION'S SUCCESSOR** |
| | ) **LIABILITY** |
| | ) |
| Defendants. | ) Return Date:  April 6, 2020 |
| | ) |
| | ) Oral Argument Requested |
| | ) |

15309791.1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION ...........................................................................................1

STATEMENT OF UNDISPUTED FACTS ...........................................................2

    A.    OxyChem's Corporate History ........................................................2

    B.    The New Jersey Spill Act Case........................................................3

    C.    OxyChem's Attempt To Relitigate Its Successor Liability .............6

LEGAL STANDARD......................................................................................8

ARGUMENT ...............................................................................................8

I.    OXYCHEM IS DIAMOND SHAMROCK CHEMICALS
COMPANY'S (DSCC'S) CORPORATE SUCCESSOR AND IS
LIABLE FOR THE LISTER PLANT DISCHARGES AS A MATTER OF LAW......8

    A.    OxyChem Succeeded By Operation Of
Law To DSCC's Lister Plant-Related Liabilities ...............................8

    B.    Under CERCLA And General Corporate Law
Principles, OxyChem And Its Predecessors Are One And The Same............10

    C.    DSCC Did Not Free Itself Of
Liabilities Related To The Lister Plant
With Its 1984 Asset Sale To Diamond Shamrock Corporate
Co. Or The Indemnity Provisions In The 1986 Stock Purchase Agreement ...10

II.    OXYCHEM IS PRECLUDED FROM RELITIGATING
THE DETERMINATION IN THE NEW JERSEY SPILL
ACT CASE THAT IT IS LIABLE AS DSCC'S CORPORATE
SUCCESSOR FOR DSCC'S ACTS AND OMISSIONS AND IS
RESPONSIBLE FOR ALL LIABILITIES RELATED TO THE LISTER PLANT...13

    A.    The New Jersey Standard For Issue Preclusion...............................14

    B.    The Elements Of New Jersey's Issue Preclusion Test Are Met ...................15

        1.    The Successor Liability Issue Here Is
Identical To The Issue Decided In The Spill Act Case............................15

        2.    The Successor Liability Issue Was Actually Litigated............................18

        3.    The New Jersey Court Issued A Final Judgment On The Merits ............18

4.      The Determination Of Successor Liability Was Essential
To The New Jersey Court's Partial Summary Judgment Ruling............. 19

5.      The Party Against Whom Issue Preclusion Is
Asserted (OxyChem) Was A Party To The Prior Proceeding ................. 20

C.      Precluding OxyChem From Relitigating The
Successor Liability Issue Would Be Fair And Efficient.................................21

III.    OXYCHEM IS THE SUCCESSOR TO ITS
PREDECESSORS IN ALL RESPECTS, BOTH AT LAW AND IN EQUITY .........22

A.      OxyChem Is Barred From Raising New
Arguments To Contest Its Successor Liability ................................................23

B.      OxyChem Cannot Avoid Its Responsibility For Its
Predecessors' Acts Or Omissions On Equitable Grounds .............................24

IV.     THE COURT SHOULD RESOLVE THE ISSUE
OF OXYCHEM'S SUCCESSOR LIABILITY NOW ................................................26

CONCLUSION.....................................................................................................................27

15309791.1

# TABLE OF AUTHORITIES

CASES

*ADP, LLC v. Trueira*, Civ. No. 18-3666, 2018 WL 3756951 (D.N.J. Aug. 8, 2018).............. 14

*Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240 (6th Cir. 1991) ....................................... 10

*Baker v. Nat'l State Bank*, 161 N.J. 220, 736 A.2d 462 (1999)..................................................... 8

*BCB Bancorp, Inc. v. Progressive Casualty Ins. Co.*, 2017 WL 4155235 (D.N.J. Sept. 18, 2017) ........................................................................................................................................ 10

*Beazer E., Inc. v. Mead Corp.*, 34 F.3d 206 (3d Cir. 1994)......................................................... 11

*Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420 (7th Cir. 1993) ........................................... 12

*Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567 (3d Cir. 2002) ...................... 23

*East/West Venture v. Borough of Fort Lee*, 286 N.J. Super. 311, 669 A.2d 260 (N.J. App. Div. 1996) ....................................................................................................................... 19

*Fields v. City of Salem Hous. Auth.*, 710 F. App'x 567 (3d Cir. 2017) ....................................... 14

*First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 921 A.2d 417 (2007) ................................................................................................................................... 14, 15

*Gould, Inc. v. A & M Battery & Tire Service*, 987 F. Supp. 353 (M.D. Pa. 1997).................... 24

*Grant-Howard Assocs. v. Gen. Housewares Corp.*, 63 N.Y.2d 291, 472 N.E.2d 1, (1984).................................................................................................................................... 12

*Greenleaf v. Garlock, Inc.*, 174 F.3d 352 (3d Cir. 1999).................................................... 18, 19

*Gregory v. Chehi*, 843 F.2d 111 (3d Cir. 1988)..................................................................... 13, 14

*Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341 (7th Cir. 1994) ......................................... 13

*Hobart Corp. v. Dayton Power & Light Co.*, 407 F. Supp. 3d 732 (S.D. Ohio 2019). ............... 11

*In re Brown*, 951 F.2d 564 (3d Cir. 1991)............................................................................ 14, 18

*Konieczny v. Micciche*, 305 N.J. Super. 375, 702 A.2d 831 (App. Div. 1997) ......................... 20

*Lenox Inc. v. Reuben Smith Rubbish Removal*, 91 F. Supp. 2d 743 (D.N.J. 2000) ..................... 24

*Magic Petroleum Corp. v. Exxon Mobil Corp.*, 95 A.3d 175 (N.J. 2014) .................................. 23

*McAndrew v. Mularchuk*, 38 N.J. 156, 183 A.2d 74 (1962)...................................................... 20

*McLaughlin v. Fisher*, 277 F. App'x. 207 (3d Cir. 2007)........................................................... 23

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)........................................... 14

*N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Serv.*, 821 F. Supp. 999 (D.N.J. 1993) ....................................................................................................................................... 16

*Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 897 A.2d 1003 (2006) ...................................... 14

*Pace v. Kuchinsky*, 347 N.J. Super. 202, 789 A.2d 162 (App. Div. 2002)................................ 21

*Read v. Profeta*, 397 F. Supp. 3d 597 (D.N.J. 2019) ................................................................... 8

*Responsible Environmental Solutions v. Waste Management, Inc.* No. 3:04-cv-013, 2011 WL 382617 (S.D. Ohio Feb. 3, 2011) ....................................................................... 25

*SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F. Supp. 1354 (D.N.J. 1996)........................... 16, 17

*Selective Ins. Co. v. McCallister*, 327 N.J. Super. 168, 742 A.2d 1007 (N.J. App. Div. 2000) ............................................................................................................................... 15

*Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86 (3d Cir. 1988).................. 8, 10

*State v. Ventron Corp.*, 94 N.J. 473, 468 A.2d 150 (1983)........................................................... 9

*United States v. Gen. Battery Corp.*, 423 F.3d 294 (3d Cir. 2005).............................................. 15

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245 (D.C. Cir. 1992)................................. 23

iv

STATUTES

28 U.S.C. § 1738 ........................................................................................................ 13
42 U.S.C. § 9607(e)(1) .............................................................................................. 11
Del. Code Ann. tit. 8, § 259(a) .................................................................................. 9
N.J.S.A. 14A:10-6(e) .................................................................................................. 9
N.J.S.A. 58:10-23. 11f(a)(2)(a) ................................................................................ 23
N.Y.  Bus.  Corp.  Law § 906(b)(3) ............................................................................ 9

TREATISES

1 W.  Blackstone, *Commentaries* ............................................................................ 10
15 Fletcher Cyc. Corp. (Sept. 2018 Update) ........................................................ 9, 13
Restatement (Second) of Judgments (1982) ....................................... 15, 18, 19, 21, 23

15309791.1

## INTRODUCTION

Occidental Chemical Corporation ("OxyChem"), after a 1987 merger, became as a matter of law the liable corporate successor to the companies that owned and operated the pesticide manufacturing facility from the mid-1940s until 1971 that was located at 80 and 120 Lister Avenue in Newark immediately adjacent to the Passaic River (the "Lister Plant").  Accordingly, OxyChem is liable for the acts and omissions of those companies, including Diamond Alkali Company, for which the Diamond Alkali Superfund Site is named.  Those acts and omissions include the intentional, flagrant discharge to the river of substantial amounts of the 2,3,7,8-TCDD isomer of dioxin, one of the most toxic substances ever produced, as well as substantial amounts of DDT, dieldrin and other contaminants of concern ("COCs").

OxyChem has already fully litigated, and lost, an attempt to dispute its status as legal successor to its predecessors.  In particular, OxyChem argued in the earlier *NJDEP v. Occidental Chemical Corp.* litigation in New Jersey Superior Court (the "Spill Act case") that it was not the legal successor.  That court (Hon. Sebastian Lombardi) ruled, after fully considering an abundant summary judgment record and hearing extensive oral argument, that under fundamental corporate law principles OxyChem was the legal successor to the entities that discharged hazardous substances from the Lister Plant to the Passaic River.

In this case, in an ever-evolving effort to evade responsibility for decades-long culpable discharges, OxyChem again attempts to argue that it is not liable for all such acts and omissions. In response to a standard interrogatory asking OxyChem (and every other party) whether it disputes its status as legal successor, it tendered a convoluted 531 word response that makes arguments that OxyChem already made and lost in the Spill Act case, as well as arguments that it could have made in that case but did not.  Among other things, despite Judge Lombardi's summary

1

judgment order, OxyChem maintains that it is "not the legal successor for all purposes nor is it a successor in equity or otherwise for all actions taken" by its predecessors.

For the following reasons, the Court should reaffirm now that OxyChem is liable for its predecessors' discharges of dioxin and other COCs from the 1940s through 1971: (1) OxyChem is liable under basic principles of corporate law, and as an independent matter its attempt to relitigate this issue is barred by the doctrine of issue preclusion; (2) OxyChem's new argument (that while it may be liable for certain of its predecessors' acts, it is not liable for others) is without merit, and as an independent matter is barred by issue preclusion; and (3) ruling on this motion now will greatly simplify discovery and promote a more efficient resolution of this action. In fact, OxyChem does not oppose addressing the issues raised by this motion now.

## STATEMENT OF UNDISPUTED FACTS

### A. OxyChem's Corporate History

In 1987, OxyChem merged with Diamond Shamrock Chemicals Company, which was the corporation that in the early 1950s acquired and expressly assumed all liabilities of the Lister Plant's original owner and operator, Kolker Chemical Works, Inc. ("Kolker Chemical"), and then proceeded to operate the Lister Plant until 1969 (and to sell it in 1971 to a third party).

The corporate history underlying OxyChem's status as the legal successor to the entities that owned and operated the Lister Plant until 1971 began in the mid-1940s, and proceeded as follows:

- Mid-1940s: Kolker Chemical manufactured DDT and phenoxy herbicides at the Lister Plant. (SPG Statement of Material Facts ("SMF") ¶ 1.[1])

- 1951-1953: Diamond Alkali Company ("Diamond Alkali") acquired the stock of Kolker Chemical, and then renamed it Diamond Alkali Organic Chemicals Division, Inc. (¶¶ 4–5)

---

[1] Citations to the SMF within the Statement of Undisputed Facts are "(¶ __)." Citations to the SMF elsewhere in this motion are "(SMF ¶ __.)."

- 1954:  Diamond Alkali dissolved Diamond Alkali Organic Chemicals Division, Inc. and expressly assumed its assets and liabilities.  (¶ 6)

- 1951-1969:  Diamond Alkali (which changed its name to Diamond Shamrock Corporation ("DSC I") in 1967) manufactured pesticides and herbicides at the Lister Plant.  (¶¶ 7–9)

- 1969:  DSC I ceased operations at the Lister Plant.  (¶ 9)

- 1971:  DSC I sold the Lister Plant to a third party.  (¶ 9)

- 1983:  DSC I underwent an internal reorganization, after which it continued under the name Diamond Shamrock Chemicals Company ("DSCC").  (¶¶ 10–13)

- 1986:  Oxy-Diamond Alkali Corporation, a subsidiary of OxyChem, acquired all of the shares of DSCC.  (¶ 14)

- 1987:  Both Oxy-Diamond Alkali Corporation and DSCC merged into OxyChem. (¶¶ 15, 17–18)

By virtue of these undisputed facts, OxyChem is the legal successor to the owners and operators of the Lister Plant from the mid-1940s until 1971 and therefore responsible for any obligations flowing from that ownership and operation.[2]  In short, as a matter of legal fact, OxyChem is the same corporation as the Diamond Alkali that assumed Kolker's liabilities in 1954 and proceeded to own and operate the Lister Plant until its closure.  To be consistent with the nomenclature used in the Spill Act case, we refer below to Diamond Alkali, DSC I, and Diamond Shamrock Chemicals Company collectively as "DSCC."

B.    **The New Jersey Spill Act Case**

In 2005, the New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund (collectively, "NJDEP") filed a five-count complaint

---

[2] OxyChem will argue that, by virtue of certain transactions involving DSCC prior to OxyChem's acquisition of that company, the Lister Plant liabilities were transferred out of DSCC before it merged into OxyChem.  Because, as shown below, that argument is without merit and has been rejected by Judge Lombardi in the Spill Act case, facts relating to those transactions are not material.

against OxyChem and six related entities in the Superior Court of New Jersey.  (¶ 21)  Based on the widespread contamination of the Passaic River caused by the Lister Plant's decades of intentional discharges, NJDEP asserted claims for violation of New Jersey's Spill Compensation and Control Act, N.J.S.A.  58:10-23.11a to -23.11z (the "Spill Act"); the New Jersey Water Pollution Control Act, N.J.S.A.  58:10A-1 to -37.23; and New Jersey common law.  (¶ 22)  In 2008, OxyChem filed cross-claims against its co-defendants for contribution under the Spill Act, among other theories of liability.  (¶ 23)

In 2011, NJDEP moved for partial summary judgment against OxyChem, seeking rulings that (1) DSCC "discharged dioxin, DDT and other hazardous substances into the Passaic River;" and (2) "OCC [OxyChem] is DSCC's direct successor by merger and is liable under the Spill Act for cleanup and removal costs associated with DSCC's discharges."  (¶ 25)  NJDEP argued that DSCC discharged dioxin, DDT, and other hazardous substances during the entire period of its plant operations, until 1969; that as DSCC's successor-by-merger, OxyChem was strictly, as well as jointly and severally, liable for DSCC's discharges; and that there was no merit to OxyChem's argument that the Lister Plant liabilities had been transferred out of DSCC before it merged into OxyChem.  (¶ 26)

OxyChem opposed NJDEP's motion in a 51-page brief that included eighteen pages of argument that Maxus Energy Corporation ("Maxus"), not OxyChem, was the successor to DSCC's liabilities related to the Lister Plant.[3]  (¶ 27)

At the July 15, 2011 hearing on NJDEP's motion before Judge Lombardi, NJDEP opened with its argument on successor liability, which spans 29 transcript pages; OxyChem responded

---

[3] DSCC's former parent, which had sold DSCC's stock to OxyChem in 1986, changed its name to Maxus in 1987 after merging its subsidiary into itself.  (¶¶ 14, 16)

15309791.1

over 38 transcript pages; Maxus argued the same issue for 9 pages; and NJDEP then made a rebuttal argument that extended over 21 more pages.  (¶ 28)

On July 15, 2011, ruling from the bench, Judge Lombardi made findings of fact on the relevant corporate history and then on July 19, addressed OxyChem's liability as the successor to DSCC.  (¶ 29)  He rejected OxyChem's argument that further discovery was needed on the issue. *Id*.  He then held that OxyChem is the legal successor to DSCC with respect to the Lister Plant-related liabilities.  (¶¶ 30–33)  He said:

> So I am going to enter an order that OCC [OxyChem] is as the undisputed legal, you know, successor by merger with DSCC, that they are responsible for the liabilities of [DSC I].
>
> So that's my decision in that regard.  And I don't see a reason to delay and complete discovery on these other issues.

(¶ 33)  Judge Lombardi subsequently issued a written order granting NJDEP's motion for partial summary judgment, holding OxyChem fully liable for all of its predecessors' discharges from the Lister Plant:

> Occidental Chemical Corporation is strictly, jointly and severally liable under the Spill Compensation and Control Act for all past cleanup and removal costs incurred by Plaintiffs associated with the discharges of hazardous substances at and from the Lister Plant.

(¶¶ 34–35)  The written order further included a declaratory judgment finding OxyChem "strictly, jointly and severally liable under the Spill Compensation and Control Act for all future cleanup and removal costs that may be incurred by Plaintiffs associated with the discharges of hazardous substances at and from the Lister Plant property."  (¶ 35)  OxyChem did not appeal the order.  (¶ 38)  In 2014, OxyChem agreed to pay $190 million to settle NJDEP's claims.  *Id*.

At the time of the summary judgment order and OxyChem's settlement in the Spill Act case, OxyChem's now pending CERCLA contribution action was foreseeable.  The Lister Plant was part of the Diamond Alkali Superfund Site listed on the National Priorities List in 1984.  (¶

5

19).  With respect to EPA's remedial investigations and response actions on the Passaic River, OxyChem alleges that it has historically taken responsibility for the former operations at the Lister Plant.  (¶ 20)

### C.   OxyChem's Attempt To Relitigate Its Successor Liability

Despite having fully litigated and lost its attempt in the Spill Act case to avoid liability as the legal successor to DSCC and its predecessors, OxyChem is seeking to relitigate the same issue in this case.  In particular, OxyChem's prolix response to Standard Interrogatory No. 4 disputes OxyChem's liability for the intentional discharges of its predecessors.[4]

OxyChem's response initially acknowledges Judge Lombardi's ruling, stating:

> OxyChem acknowledges that, based on its 1986 purchase of the stock of DSCC from Diamond [Alkali] and the 1987 merger of DSCC into OxyChem, a court in New Jersey found that OxyChem is a legal successor to DSCC, and to certain environmental liabilities resulting from Kolker Chemical Works, Inc.'s, Diamond Alkali Company's, and DSCC's historical operations of the Lister Plant from the late 1940s through the 1960s.

(¶ 40)  However, in other portions of its lengthy response, OxyChem attempts to repudiate Judge Lombardi's ruling.  OxyChem argues that as a result of certain transactions undertaken by DSCC prior to OxyChem acquiring DSCC's shares[5] it is not liable for DSCC's and Kolker Chemical's

---

[4] Standard Interrogatory No. 4 asks:

> To the extent You intend to claim You are not the legal successor to the business entity that conducted the Operations described in response to Interrogatory No. 2, Identify and describe any transaction(s) related to the ownership of the business entity that conducted the Operations described in response to Interrogatory No. 2.  The time period for this interrogatory is from the earliest date of Your Operations to the present.

(¶ 39)

[5] OxyChem's interrogatory response references the following transactions: (a) a 1984 Assignment and Assumption Agreement in which DSCC purported to assign and transfer certain assets and liabilities to an entity called Diamond Shamrock Corporate Company; and (b) indemnity provisions in the 1986 Stock Purchase Agreement whereby Oxy-Diamond Alkali Corporation acquired the stock of DSCC.  OxyChem also refers to a New Jersey Superior Court order enforcing an indemnity provision in the 1986 Stock

15309791.1

polluting activities.  These are the same DSCC transactions on which OxyChem based its (losing) argument in the Spill Act case.  In particular, OxyChem argues that it is "not a legal successor for all purposes nor is it a successor in equity or otherwise for all actions taken by DSCC or its predecessors in operating the Lister Plant decades *before* OxyChem bought the stock of DSCC." (emphasis in original) (¶ 41)   OxyChem further attempts to evade responsibility for its predecessors' discharges, arguing that "if there were intentional acts to dispose of hazardous substances in violation of law or regulation by DSCC or its predecessors before OxyChem purchased the stock of DSCC, neither liability for such intentional disposal nor equitable responsibility for such intentional conduct can be attributed to OxyChem." *Id.*

OxyChem also denies its successor liability in its Answer to Defendants' Counterclaims. Specifically, it "denies it is the Diamond Alkali Company or that it is the corporate successor to 'all the liabilities of the Diamond Alkali Company.'" (¶ 47)  Similarly, OxyChem denies in its answer that it "is the corporate successor to the entities that owned and operated the Lister Plant from the mid-1940s through 1969 and is responsible for those entities' conduct and liabilities." *Id.*

\* \* \*

On November 1, 2019, the Small Parties Group ("SPG") counsel informed OxyChem counsel that the SPG intended to file "a motion for partial summary judgment that OxyChem is liable as the successor-in-interest to the Kolker and Diamond entities." (¶ 48) OxyChem's counsel responded that "OxyChem disputes the issues, but does not oppose Defendants' filing their motions." (¶ 49)

---

Purchase Agreement. (¶¶ 42-46)  As shown below, these transactions and the court order did not and could not divest or discharge OxyChem's CERCLA liability.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019).

## ARGUMENT

I.   **OXYCHEM IS DIAMOND SHAMROCK CHEMICALS COMPANY'S (DSCC'S) CORPORATE SUCCESSOR AND IS LIABLE FOR THE LISTER PLANT DISCHARGES AS A MATTER OF LAW**

A.   **OxyChem Succeeded By Operation Of Law To DSCC's Lister Plant-Related Liabilities**

It is a basic principle of corporate law that following a merger of two corporations, the merged entity is liable for all the acts and omissions of the pre-merger entities. Courts adjudicating CERCLA actions have uniformly applied this bedrock legal principle. In *Smith Land & Improvement Corp. v. Celotex Corp.*, the Third Circuit explained, "Congress intended [CERCLA] to impose successor liability on corporations which either have merged with or have consolidated with a corporation that is a responsible party . . . ." 851 F.2d 86, 92 (3d Cir. 1988). As the Third Circuit explained in *United States v. Gen. Battery Corp.*, "CERCLA successor liability is a matter of uniform federal law, as derived from 'the general doctrine of successor liability in operation in most states.'" 423 F.3d 294, 298 (3d Cir. 2005) (quoting *Smith Land*, 851 F.2d at 92). Examination of state law confirms the hornbook principle that a merger transfers all of the liabilities of the merged company to the surviving corporation.

For example, under New Jersey law, "[w]hen . . . a merger or consolidation becomes effective: '[T]he surviving . . . corporation shall be liable for all the obligations and liabilities of each of the corporations so merged,'" and "[p]roof of a merger is sufficient to establish liability . . . ." *Baker v. Nat'l State Bank*, 161 N.J. 220, 228, 736 A.2d 462, 466 (1999) (quoting

8

N.J.S.A. 14A:10-6(e)); *State v. Ventron Corp.*, 94 N.J. 473, 503, 468 A.2d 150, 166 (1983) (affirming trial court judgment, as modified by Appellate Division, that Ventron was jointly and severally liable for cleanup and removal of mercury from the Berry's Creek area, because "[t]hrough the merger of Wood Ridge into Ventron, the latter corporation assumed all of Wood Ridge's liabilities, including those arising out of the pollution of Berry's Creek").

Likewise, under Delaware law, in the event of a merger "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." Del. Code Ann. Tit. 8, § 259(a); *see also* N.Y. Bus. Corp. Law § 906(b)(3) ("The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent entities.").

Lastly, the leading treatise on corporate law distills this black-letter principle: "[i]n the case of a merger of one or more corporations into another, where one or more of the corporations ceases to exist and another continues in existence, the latter corporation is liable for the debts, contracts and torts of the former . . . ." 15 Fletcher Cyc. Corp. § 7121 (Sept. 2018 Update); *see also id.* ("[I]n all jurisdictions today, the surviving corporation in a statutory merger has the statutory obligation to assume the duties and liabilities of a constituent corporation.").

As shown, DSCC succeeded to the Lister Plant-related liabilities from the 1940s to 1954 by acquiring Kolker Chemical and assuming its liabilities, and then owned and operated the Lister Plant from 1954 through 1971. As a result, when DSCC merged with OxyChem in 1987, OxyChem succeeded to all of DSCC's liabilities for the ownership and operations at the Lister Plant for which DSCC had been liable under governing principles of state and federal law.

9

### B.    Under CERCLA And General Corporate Law Principles, OxyChem And Its Predecessors Are One And The Same

Contrary to its modified position in this case, OxyChem is the legal successor for all purposes, in equity, and for all acts and omissions of its predecessors, *i.e.*, the acts and omissions of DSCC, DSC I, Diamond Alkali, and Kolker Chemical.  The Third Circuit has recognized that a corporate successor is the same corporate person as its predecessor.   In recognizing the applicability of corporate successor liability in CERCLA actions, the Third Circuit quoted Blackstone for the proposition that all entities in a line of corporate succession "'are but one person in law, a person that never dies; in like manner as the river Thames is still the same river, though the parts which compose it are changing every instant.'"  *Smith Land*, 851 F.2d at 91 (quoting 1 W. Blackstone, *Commentaries*).   As a result, a successor entity *is* the predecessor entity for all intents and purposes: "For purposes of liability, the surviving corporation and the merged corporation are one and the same."[6]  *Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1245 (6th Cir. 1991).  OxyChem, therefore, is one and the same as DSCC, which expressly assumed Kolker Chemical's liabilities.  As a result, OxyChem is the successor to all of the liabilities of the owners and operators of the Lister Plant from the mid-1940s through 1971.

### C.    DSCC Did Not Free Itself Of Liabilities Related To The Lister Plant With Its 1984 Asset Sale To Diamond Shamrock Corporate Co. Or The Indemnity Provisions In The 1986 Stock Purchase Agreement

OxyChem's efforts to evade or limit its responsibility for the Lister Plant-related liabilities fail as a matter of law.  It asserts that DSCC divested itself of Lister Plant-related liabilities both in a 1984 asset transfer and separately by virtue of an indemnity that the seller of DSCC's stock

---

[6] This is a general principle of corporate law and is not limited to the CERCLA context.  *See, e.g., BCB Bancorp, Inc. v. Progressive Casualty Ins. Co.*, 2017 WL 4155235, at *5 (D.N.J. Sept. 18, 2017) (stating that under New Jersey law "the surviving corporation of a merger in essence steps into the shoes of the merged entity for purposes of the merged entity's rights and liabilities").

15309791.1

provided to OxyChem in 1986 when OxyChem purchased DSCC's stock.  (SMF ¶¶ 42–46.)  However, in enacting CERCLA, Congress expressly codified an established common law principle when it forbade the sort of liability transfers that OxyChem contends these transactions accomplished.  Thus, DSCC did not and could not divest itself of the Lister Plant liabilities—and OxyChem did not and could not avoid assuming those liabilities when it merged with DSCC—even in the absence of the CERCLA proscription.

In accord with common law principle, CERCLA bars parties from divesting CERCLA liability by purporting to transfer it to a third party.  Pursuant to 42 U.S.C.  § 9607(e)(1), "[n]o indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any . . . facility or from any person who may be liable for a release . . . under this section, to any other person the liability imposed under this section."  Consistent with this provision's plain language, the Third Circuit has recognized that "§ 9607(e)(1) renders ineffective any attempt to completely 'transfer' liability."  *Beazer E., Inc. v.  Mead Corp.*, 34 F.3d 206, 210–11 (3d Cir.  1994) (quotation marks omitted).

Other courts have likewise rejected OxyChem's argument.  For example, *Hobart Corp. v. Dayton Power & Light Co.*, involved a CERCLA contribution action related to hazardous substances disposed of at an Ohio dump.  407 F. Supp. 3d 732, 734 (S.D. Ohio 2019).  There, defendant Waste Management of Ohio, Inc. ("WMO") acknowledged that it was the legal successor by merger to a certain waste disposal company but denied that it possessed liability for its predecessor's waste disposal activities.  *Id.* at 735–36.  Specifically, WMO argued that such liability had been assumed by two other entities six years before the merger as part of an asset sale, whereby the predecessors' liability was extinguished and the entities which assumed the liability became the proper successors-in-interest.  *Id.* at 736.  While the court agreed that the asset

11

purchasers expressly assumed the relevant liabilities, it held that those liabilities also remained with WMO's predecessor since CERCLA prohibited it from transferring environmental liability to a third party.  *Id.* at 739-42.  The court held that the buyer's assumption of liability created an additional liability for the buyer but did not extinguish the seller's (WMO's predecessor's) liability, as "[s]uch a *transfer* of liability is prohibited by statute."  *Id.* at 742 (emphasis in original). WMO therefore remained liable as successor in interest for its predecessor's waste disposal activities notwithstanding the indemnification.  *Id.*[7]

Like WMO's predecessor, DSCC could not divest itself of its CERCLA liability by transferring that liability to any other entity.  While the 1984 and 1986 transactions OxyChem cites may have contractually bound *additional* parties to be responsible for Lister Plant-related liabilities, they did not extinguish DSCC's Lister Plant-related liabilities—liabilities that could not be divested by any indemnification and therefore remained resident with DSCC.

This interpretation of Section 9607(e)(1) is consistent with the basic legal principle that a party cannot divest itself of liability to non-parties by agreement.  *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1425 (7th Cir. 1993) ("It is true that a disclaimer of liability is good only against the purchaser, not against a nonconsenting third party.  Assignment makes the assignee another obligor; it does not let the assignor off the hook."); *Grant-Howard Assocs. v. Gen. Housewares Corp.*, 63 N.Y.2d 291, 297, 472 N.E.2d 1, 3 (1984) (stating that, in an asset-sale transaction, "[t]he companies can regulate how such liability will be allocated among themselves, but they cannot affect the rights of a stranger to their contract"); 15 Fletcher Cyc. Corp. § 7123

---

[7] *Hobart* is illustrative of an apparent consensus among federal courts that parties may not transfer or extinguish CERCLA liability by agreement.  That order cited three cases in three different districts that reached the same holding.  407 F. Supp. 3d at 742–44 (citing *United States v. NCR Corp.*, 840 F. Supp. 2d 1093 (E.D. Wis. 2011); *United States v. Lang*, 864 F. Supp. 610 (E.D. Tex. 1994); and *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097 (E.D. Mich. 1997)).

(Sept. 2018 Update) (parties to an asset sale can regulate how "liability will be allocated among themselves" but cannot "vitiate the original company's liability").

The Seventh Circuit recognized that Section 9607(e)(1) is likely intended to preserve this principle in the CERCLA context. *See Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 344 (7th Cir. 1994). It likened the types of agreements allowed by Section 9607(e)(1) to automobile insurance. *Id.* A motorist does not divest herself of liability for automobile accidents by securing insurance; she just "has someone to share the expense with." *Id.* at 343. The same is true when parties contract to allocate CERCLA liability among themselves.

DSCC therefore did not divest itself of Lister Plant-related liabilities by agreement. It could not avoid the operation of corporate law, CERCLA liability, and bedrock principles of successor liability by purporting to transfer its liabilities to another entity. Past agreements to allocate Lister Plant-related liabilities might be enforceable as between contracting parties, but they would not absolve DSCC or its successor, OxyChem, of CERCLA liability to third parties.

## II.   OXYCHEM IS PRECLUDED FROM RELITIGATING THE DETERMINATION IN THE NEW JERSEY SPILL ACT CASE THAT IT IS LIABLE AS DSCC'S CORPORATE SUCCESSOR FOR DSCC'S ACTS AND OMISSIONS AND IS RESPONSIBLE FOR ALL LIABILITIES RELATED TO THE LISTER PLANT

Pursuant to federal statute and the doctrine of issue preclusion, the New Jersey Superior Court's order in the Spill Act case precludes OxyChem from arguing now that it is not the corporate successor of DSCC and Kolker Chemical. The Full Faith and Credit statute, 28 U.S.C. § 1738, requires that federal courts give to state-court judgments the same preclusive effect as would a court in the state in which the judgment was rendered. *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988).[8] New Jersey law on issue preclusion therefore controls whether the judgment

---

[8] 28 U.S.C. § 1738 provides: "judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of

in the Spill Act case should be given preclusive effect.  *See In re Brown*, 951 F.2d 564, 568–69 (3d Cir. 1991) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984))).  New Jersey's standard for issue preclusion mirrors the federal standard and is readily met here.

### A.    The New Jersey Standard For Issue Preclusion

Under New Jersey law, a party asserting issue preclusion (or "collateral estoppel") must establish the following five elements:[9]

(1) the issue to be precluded is identical to the issue decided in the prior proceeding;

(2) the issue was actually litigated in the prior proceeding;

(3) the court in the prior proceeding issued a final judgment on the merits;

(4) the determination of the issue was essential to the prior judgment; and

(5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Fields v. City of Salem Hous.  Auth.*, 710 F. App'x 567, 571 (3d Cir. 2017) (quoting *Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J.  511, 521, 897 A.2d 1003 (2006)).  Issue preclusion serves the salutary purposes of promoting judicial efficiency and avoiding relitigation of matters that have been fully and fairly adjudicated.  *ADP, LLC v.  Trueira*, Civ.  No.  18-3666, 2018 WL 3756951, at *15 (D.N.J.  Aug.  8, 2018).

---

such State . . .."  "This statute supplements the provision found in Article IV, § 1 of the Constitution, which applies full faith and credit only to state courts."  *Gregory*, 843 F.2d at 116 n.3.

[9] New Jersey courts refer to this doctrine alternatively as "collateral estoppel" or "issue preclusion."  *See First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 352, 921 A.2d 417, 423 (2007) (referring to "collateral estoppel or issue preclusion").

**B.** **The Elements Of New Jersey's Issue Preclusion Test Are Met**

1. The Successor Liability Issue Here Is
   Identical To The Issue Decided In The Spill Act Case

OxyChem seeks to relitigate the same issue the court resolved in the Spill Act case: whether OxyChem is the corporate successor to DSCC and is responsible for DSCC's acts and omissions and the liabilities related to the Lister Plant.  For issue preclusion to apply, only the successor liability issues in the two cases—not the specific causes of action—must be the same.  *Selective Ins. Co. v. McCallister*, 327 N.J. Super. 168, 742 A.2d 1007, 1010 (N.J. App. Div. 2000) ("Although collateral estoppel overlaps with and is closely related to *res judicata*, the distinguishing feature of collateral estoppel is that it alone bars relitigation of issues in suits that arise from different causes of action.").  New Jersey courts consider four factors in evaluating whether the issue to be precluded is identical to the issue decided in the prior proceeding:

> [1] whether there is substantial overlap of evidence or argument in the second proceeding; [2] whether the evidence involves application of the same rule of law; [3] whether discovery in the first proceeding could have encompassed discovery in the second; [4] and whether the claims asserted in the two actions are closely related.

*First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 353, 921 A.2d 417, 424 (2007) (citing Restatement (Second) of Judgments § 27 cmt. c (1982)).  Here, all four considerations weigh in favor of finding an identity of the issues.

a.  The Evidence Involves Application Of The Same Rule Of Law

Taking the second factor first, the same legal standard is used to determine successor liability in the merger context under the New Jersey Spill Act and CERCLA.  CERCLA imposes a uniform federal standard for determining corporate successor liability.  *Gen. Battery Corp.*, 423 F.3d at 298 .  That uniform federal standard is governed by "general common law principles," including "the 'general doctrine of successor liability in operation in most states.'"  *Id.*  at 298, 300

15

(quoting *Smith Land*, 851 F.2d at 92).  Under this framework, CERCLA "impose[s] successor liability on corporations which either have merged with or have consolidated with a corporation that is a responsible party."  *Smith Land*, 851 F.2d at 92.  New Jersey applies the same rule of successor liability.  *See Baker*, 736 A.2d at 466 ("When . . . a merger or consolidation becomes effective: '[T]he surviving or new corporation shall be liable for all the obligations and liabilities of each of the corporations so merged or consolidated….' Proof of a merger is sufficient to establish liability under N.J.S.A.  14A:10-6." (quoting N.J.S.A.  14A:10-6(e))).

In the Spill Act case, Judge Lombardi applied the fundamental rule of successor liability that a merged entity succeeds to all liabilities of the pre-merger companies.  (SMF ¶¶ 32–35.)  The court noted that OxyChem offered no reason for it not to decide, under "unchallenged Hornbook law, that based on assuming all the stock and the Certificate of Incorporation, OCC [OxyChem] is the legal successor of DSCC, which was the legal successor of [DSC I]."  (SMF ¶ 32.)  The court concluded that OxyChem is the legal successor to the Lister Plant-related liabilities.  (SMF ¶ 30.)  The state court applied the same legal standard to resolve the same successor liability issue that this case presents.

b.  The Claims Asserted In The Two Actions Are Closely Related

Regarding the fourth factor identified by the *First Union National Bank* court to be considered in evaluating the identity of claims, OxyChem's claims here are unquestionably related to the claims asserted in the Spill Act case.  The Spill Act "is the New Jersey analog to CERCLA." *SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F. Supp. 1354, 1365 (D.N.J. 1996).  "Like CERCLA, the Spill Act prohibits the discharge of hazardous substances and provides for the remediation of spills."  *Id.*  The Spill Act "incorporates CERCLA's definition of hazardous substances."  *N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Serv.*, 821 F. Supp. 999, 1009 (D.N.J. 1993).

15309791.1

"Owing to the strong parallels between these statutes, much of the law developed under the Spill Act is similar to that under CERCLA." *SC Holdings*, 935 F. Supp. at 1365. Since both the claims in the Spill Act proceedings and the CERCLA claims in this matter are based on liability for environmental contaminants released from the Lister Plant from the 1940s to 1971, the claims are clearly related.[10]

### c. There Is A Substantial Overlap Of Evidence And Argument

Regarding the first factor to be considered in evaluating identicality of issues between the cases, because the claims are closely related and the rule of law is the same, it follows that the successor liability issue in this action would be resolved on the same evidence and argument as in the Spill Act case.[11] Indeed, the exhibits supporting this motion are almost exclusively derived from the Spill Act case.

### d. Discovery On Successor Liability In The Spill Act Case Encompassed Discovery On The Same Issue In This Case

Regarding the third identicality factor, Judge Lombardi determined that sufficient discovery had been conducted in the Spill Act case to leave no genuine issue of material fact on the issue of OxyChem's successor liability. (SMF ¶¶ 29, 33.) No different or additional discovery is needed here. As discussed above, the facts and law establishing OxyChem's successor liability were the same in that case as they are here. No further material facts have come into existence since 2011 that would justify further discovery. Given the circumstances of these two cases, all four First Union Nat'l Bank factors favor issue preclusion.

---

[10] Contamination flowing from the Lister Plant since 1971 falls within the liability assumed by OxyChem as it has been caused by the releases that were initiated by the indiscriminate environmental degradation practiced by DSCC throughout its period of ownership and operation of the Lister Plant.

[11] OxyChem seeks to recast its arguments to obtain a different result, but the corporate successor issues remain the same. Regardless, as discussed in Section III.A., *infra*, because OxyChem could have raised its "new" arguments in the Spill Act case, it is barred from raising them now.

15309791.1

### 2.   The Successor Liability Issue Was Actually Litigated

A disposition on summary judgment constitutes the actual litigation of an issue for purposes of issue preclusion.  *See In re Brown*, 951 F.2d at 568–70 (applying New Jersey preclusion law and giving preclusive effect to a state court summary judgment); Restatement (Second) of Judgments § 27 cmt. d (explaining that an issue may be "submitted and determined," and therefore "actually litigated," on a motion for summary judgment).  The issue of successor liability was squarely presented and litigated in the Spill Act case on NJDEP's motion for partial summary judgment and was extensively briefed and argued.  (SMF ¶¶ 25–28.)  The court made findings of fact and addressed and decided the issue of law.  (SMF ¶¶ 29–35.)

### 3.   The New Jersey Court Issued A Final Judgment On The Merits

The state court's summary judgment ruling was a final judgment on the merits.  In analyzing the New Jersey standard on this element of issue preclusion, the Third Circuit has adopted the standard articulated by the Restatement (Second) of Judgments of whether a prior adjudication is "sufficiently firm to be accorded conclusive effect."  *In re Brown*, 951 F.2d at 569 (quoting Restatement (Second) of Judgments § 13).  The second court should consider several factors in determining whether the prior adjudication was sufficiently firm: "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed."  *In re Brown*, 951 F.2d at 569.  For the same reasons that the issue was "actually litigated" in the Spill Act case, *see supra* § II.B.2, the parties were fully heard on the successor liability issue in that case and a reasoned opinion was filed.

OxyChem's decision to settle with NJDEP rather than appeal the Spill Act court's order further qualifies the order as sufficiently firm.  The Third Circuit, in *Greenleaf v. Garlock, Inc.*, recognized that when a party could have appealed a judgment, but decided instead to settle, the judgment is sufficiently firm for issue preclusion to apply.  174 F.3d 352, 359 (3d Cir. 1999).

18

There, the plaintiffs pursued a personal injury action in state court to a reverse-bifurcated trial in which damages were considered in Phase I and liability in Phase II.  *Id.* at 356.  The jury returned a Phase I verdict assessing damages; before the commencement of the liability phase, however, the plaintiff settled with the defendants.  *Id.*  The plaintiffs then reactivated an action in federal court against different defendants.  *Id.*  The district court rejected the federal defendants' argument that issue preclusion barred the plaintiffs from relitigating damages.  *Id.*  The Third Circuit reversed, however, holding that the state court damages verdict had preclusive effect.  *Id.* at 358–61.  The Third Circuit held that the fact that the damages verdict was not appealable before the plaintiffs settled the state court action did not make the verdict any less final.  *Id.* at 359–60.  By settling, the plaintiffs "voluntarily surrendered their right to further review," rendering the damages assessment sufficiently firm to constitute a final judgment.  *Id.* at 359.  As the Third Circuit stated, and as is equally applicable to OxyChem, "[a]ppellate review would have been available had the [plaintiffs] not chosen to settle."  *Id.* at 360; *see also In re Brown*, 951 F.2d at 569 ("[T]he effectiveness of issue preclusion . . . does not require the entry of a judgment, final in the sense of being appealable.").

### 4.   The Determination Of Successor Liability Was Essential To The New Jersey Court's Partial Summary Judgment Ruling

The Spill Act court's determination of successor liability was essential to the summary judgment order in that case.  On this issue, too, New Jersey courts follow the standard articulated in the Restatement (Second) of Judgments: whether the issue was seen as important to the parties and whether it was recognized by the court as necessary to the first judgment.  *See East/West Venture v. Borough of Fort Lee*, 286 N.J. Super. 311, 669 A.2d 260, 332–33 (N.J. App. Div. 1996) (quoting Restatement (Second) of Judgments § 27, cmt. j ("[T]he 'question… is whether the issue

19

was actually recognized by the parties as important and by the trier as necessary to the first judgment.'").

In the Spill Act case, Judge Lombardi recognized the successor liability issue as necessary to his summary judgment order, and the parties recognized its importance.  Judge Lombardi expressly identified the successorship issue as essential to the ultimate issue of liability, framing the question before him as whether, "as the direct legal successor" to DSCC, OxyChem is "considered under the law as liable as a discharger under the Spill Act." (SMF ¶ 36.)[12]  OxyChem's opposition to NJDEP's motion for partial summary judgment acknowledged that a finding that OxyChem was the successor to the Lister Plant liabilities was essential to NJDEP's motion.  (SMF ¶ 37.)  In short, OxyChem, NJDEP, and the New Jersey court were all in agreement that to hold OxyChem liable for the Lister Plant discharges, from the 1940s to 1971, the court first needed to find that OxyChem was DSCC's legal successor.

5.   The Party Against Whom Issue Preclusion Is
Asserted (OxyChem) Was A Party To The Prior Proceeding

OxyChem was a party in the Spill Act case.  It makes no difference that the SPG Defendants were not all parties to the Spill Act case.  "[M]utuality of parties" is not required for issue preclusion, because "'the question to be decided is whether a party has had his day in court on an issue, rather than whether he has had his day in court on that issue against a particular litigant.'" *Konieczny v. Micciche*, 305 N.J. Super. 375, 385, 702 A.2d 831, 836 (App. Div. 1997) (quoting *McAndrew v. Mularchuk*, 38 N.J. 156, 161, 183 A.2d 74 (1962)).  Unless the party against whom preclusion is asserted lacked a full and fair opportunity to litigate the issue in the prior proceeding, or other circumstances justify giving them a chance to relitigate it, a party cannot "avoid the

---

[12]  This is precisely the same issue presented here: whether OxyChem as direct legal successor to DSCC is liable under CERCLA's comparable causes of action.

preclusion bar" by asserting a lack of complete mutuality of parties.  *Konieczny,* 305 N.J. Super. at 386 (citing Restatement (Second) of Judgments § 29).  Here, as explained, OxyChem had a full and fair opportunity to litigate in the prior proceeding.

### C.   Precluding OxyChem From Relitigating The Successor Liability Issue Would Be Fair And Efficient

Principles of fairness and efficiency weigh in favor of precluding OxyChem from relitigating the successor liability issue.  New Jersey law requires a balancing of the efficiency to be gained by preclusion against the fairness of its application.  *See ADP, LLC*, 2018 WL 3756951, at *16 (stating that in addition to the five elements of issue preclusion, New Jersey courts "must consider more generally whether preclusion would be fair").  The New Jersey Supreme Court has recognized the following considerations weighing for and against issue preclusion:

> The factors favoring issue preclusion include: conservation of judicial resources; avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty and inconsistency.  Those factors disfavoring preclusion include: the party against whom preclusion is sought could not have obtained review of the prior judgment; the quality or extent of the procedures in the two actions is different; it was not foreseeable at the time of the prior action that the issue would arise in subsequent litigation; and the precluded party did not have an adequate opportunity to obtain a full and fair adjudication in the prior action.

*Olivieri*, 897 A.2d at 1011  (quoting *Pace v. Kuchinsky*, 347 N.J. Super. 202, 216, 789 A.2d 162 (App. Div. 2002)).

Here, all of the factors favoring issue preclusion are present, and all of the factors disfavoring it are absent.  With respect to factors favoring preclusion, the parties and the court in the Spill Act case expended significant time and resources addressing the successor liability issue, including discovery, extensive briefing, and oral argument.  It would be repetitious and wasteful to undertake the same work again in this action.  The parties should be entitled to rely on the Spill Act court's ruling; relitigating the issue would create uncertainty and risk inconsistency.

OxyChem's assertion of new—albeit meritless—arguments that it could have advanced in the Spill Act case heightens those risks.

None of the factors disfavoring preclusion are present.  OxyChem litigated the identical issue extensively in the Spill Act case, and had every incentive to do so vigorously, as its exposure in that case was in the hundreds of millions of dollars.  Had it not settled, OxyChem would have had an opportunity to appeal the state court's ruling on successor liability.  The quality and extent of procedures available to OxyChem is effectively the same in both actions.  The Spill Act case decided the successor liability issue pursuant to a New Jersey summary judgment procedure that is virtually identical to the federal rule.  *Compare* N.J. Ct. R. 4-46(c) *with* Fed. R. Civ. P. 56.  Given the then-ongoing involvement of the EPA regarding the Lister Site and the Passaic River, OxyChem could have foreseen that the successor liability issue would arise in future proceedings. In particular, the Lister Plant was part of the Diamond Alkali Superfund Site listed on the National Priorities List in 1984.  (SMF ¶ 19.)  Since OxyChem has historically taken responsibility for the former operations at the Lister Plant in connection with the EPA's decades of conducting investigative and response actions on the Passaic River (SMF ¶ 20), it surely knew that the successor liability issue—the very basis for its responsibility for the Lister Plant—would arise in its subsequent CERCLA contribution action.  OxyChem is simply seeking another bite at the apple on the issue of successor liability, and there is no good reason to allow that.

### III.   OXYCHEM IS THE SUCCESSOR TO ITS PREDECESSORS IN ALL RESPECTS, BOTH AT LAW AND IN EQUITY

OxyChem seeks to obfuscate its clear-cut successor liability with a defense raised for the first time in this case: that it is "not a legal successor for all purposes nor is it a successor in equity or otherwise for all actions taken" and is not responsible for its predecessors' intentional conduct.

15309791.1

(SMF ¶ 41.)  Irrespective of the fact that OxyChem is precluded from making this argument under basic principles of issue preclusion, the argument is not supported in law or equity.

### A.      OxyChem Is Barred From Raising New Arguments To Contest Its Successor Liability

OxyChem's interrogatory response shows that it intends to advance new arguments, not previously raised in the Spill Act case, to contest its successor liability.  Basic rules of issue preclusion, however, bar it from doing so.  "Under principles of issue preclusion 'once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular argument raised in support of it in the first case.'"  *McLaughlin v. Fisher*, 277 F. App'x. 207, 213-14 (3d Cir. 2007) (quoting *Yamaha Corp. of Am. v.  United States*, 961 F.2d 245, 254 (D.C.  Cir. 1992)).  If an issue is decided in prior litigation, "new arguments may not be presented to obtain a different determination of that issue."  *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 578 n.22 (3d Cir.  2002) (quotation marks omitted).  Similarly, "new evidentiary facts may not be brought forward to obtain a different determination . . . ."  Restatement (Second) of Judgments § 27 cmt.  c.

OxyChem had a full and fair opportunity to litigate its status as successor to the Lister Plant-related liabilities in the Spill Act case.  It could have argued in that matter that it was not the successor for all purposes nor a successor in equity or otherwise for all actions taken.  The Spill Act, like CERCLA, allows responsible parties to seek contribution from other responsible parties. *See Magic Petroleum Corp. v. Exxon Mobil Corp.*, 95 A.3d 175, 182 (N.J. 2014).  In the Spill Act case, OxyChem brought cross-claims for contribution against other allegedly responsible parties. (SMF ¶ 23.)  Like CERCLA, contribution actions under the Spill Act call for an equitable allocation "using such equitable factors as the court determines are appropriate."  *Id.* at 183 (quoting N.J.S.A. 58:10-23. 11f(a)(2)(a)).  New Jersey courts apply the same "Gore" factors to

23

guide equitable allocations under the Spill Act as do courts in the Third Circuit making equitable allocations under CERCLA. *Compare id.* (applying Gore factors in equitable allocation under the Spill Act), *with Lenox Inc. v. Reuben Smith Rubbish Removal*, 91 F. Supp. 2d 743, 747 (D.N.J. 2000) (observing that New Jersey federal courts "have used the Gore factors to aid in the equitable allocation of contribution costs" under CERCLA). Because it failed to make this argument in the Spill Act case, OxyChem is precluded from raising that argument here. The Spill Act court rendered a final judgment on that issue, and OxyChem may not circumvent that final judgment by presenting new arguments or evidence.

### B. OxyChem Cannot Avoid Its Responsibility For Its Predecessors' Acts Or Omissions On Equitable Grounds

Because OxyChem is the same corporate person as its predecessors, *see supra* § I.B., it cannot avoid responsibility for its predecessors' acts or omissions on equitable grounds. Two district court orders in CERCLA cases analyze arguments similar to OxyChem's and establish that OxyChem, as corporate successor, is legally liable and equitably responsible for all of the acts and omissions of the owners and operators of the Lister Plant from the mid-1940s through 1971. In particular, these courts specifically considered and completely rejected the argument OxyChem appears to make here, that its liability should be reduced because it acquired ownership of its predecessors after they had engaged in the intentional dumping of dioxin, DDT, and other COCs necessitating the cleanup of the Passaic River.

In *Gould, Inc. v. A & M Battery & Tire Service*, a successor to the operator of a facility that reclaimed car batteries brought a CERCLA contribution action against numerous entities responsible for selling batteries to the facility. 987 F. Supp. 353 (M.D. Pa. 1997), *rev'd on other grounds at Gould Inc. v. A & M Battery & Tire Serv.*, 232 F.3d 162 (3d Cir. 2000). The plaintiff had acquired the prior operator of the site at issue and did not dispute that it was the "legal

24

successor" to the prior operator.  *Id.* at 366.  In equitably allocating liability, the court attributed the predecessor's conduct to the plaintiff notwithstanding the plaintiff's relatively benign conduct after acquisition of the predecessor.  Although the plaintiff had "been up front and valiant in accepting responsibility for a bad business deal, and its officers should be commended for their actions," the court held that the plaintiff was nevertheless responsible under the law for the prior operator's actions.  *Id.*  at 372.  As successor, the plaintiff had "to bear the responsibility for its predecessor's actions."  *Id.*  This included an increase in the share of clean-up costs for the predecessor's "lack of care" in "continually refus[ing] to enforce or implement . . .  housekeeping measures" at the site and for its lack of cooperation with authorities.  *Id.*  at 371–72.

The Southern District of Ohio reached the same conclusion on similar facts.  In *Responsible Environmental Solutions v. Waste Management, Inc.*, a group of parties had entered into an administrative consent order with EPA and incurred response costs to fund a remedial investigation/feasibility study for the barrel fill operating unit ("BFOU") at a landfill.  No. 3:04-cv-013, 2011 WL 382617, at *1 (S.D.  Ohio Feb.  3, 2011).  The group brought a CERCLA contribution action seeking to recover response costs from other potentially responsible parties.  *Id.*  Among the defendants were Chemical Waste Management, Inc. ("CWM"), which was the successor by merger to an entity that had owned and operated the BFOU and another that had transported hazardous waste to the BFOU during the relevant time period.  *Id.*  at *1, 6–7.  CWM argued that its share of the equitable allocation should be minimal because it did not become the successor to those entities until after the BFOU had been closed.  *Id.*  at *10.  CWM pointed out that "it was not involved with the preparation of the site for the BFOU, the regulatory permitting for it, or its operation or ownership."  *Id.*  It also noted that "it did not profit from the operation of the BFOU."  *Id.*  The court held that these considerations did not lessen CWM's liability.  *See id.*

15309791.1

Rather, as the corporate successor to responsible parties, CWM "steps into their shoes." *Id.* Accordingly, it was "of no matter" that CWM did not become their corporate successor until after the BFOU had closed, and that fact could not serve as a basis to lower their share of response costs. *Id.*

However similar or different OxyChem's conduct might have been from that of its predecessors has no bearing on whether it is responsible for the latter's conduct. This is consistent with the established principle that corporate successors are the same corporate person as their predecessors and step into their shoes. The Court therefore should not allow hollow appeals to equity to cloud the straightforward determination that OxyChem is the successor for all purposes to DSCC's Lister Plant-related liabilities, notwithstanding its efforts to strip away those known liabilities before acquiring DSCC.

## IV.   THE COURT SHOULD RESOLVE THE ISSUE OF OXYCHEM'S SUCCESSOR LIABILITY NOW

OxyChem's legal successorship to the Lister Plant-related liabilities is a threshold issue that the Court should resolve now. By continuing to relitigate this issue, in an ever-evolving effort to evade responsibility for its predecessors' conduct, OxyChem needlessly attempts to inject confusion and uncertainty about the scope of its responsibility for its predecessors' wrongdoing.

Addressing this issue now will save the parties and the Court substantial time and expense in discovery and future motion practice on an issue not genuinely in dispute. The burden of relitigating OxyChem's successorship is illustrated by the resolution of the same issue in the Spill Act case. There, the issue was not resolved until six years after NJDEP filed its complaint, and then only following extensive briefing, presentation of scores of exhibits, and two days of oral argument. (SMF ¶¶ 21, 25–30.)

15309791.1

Even after all of that, OxyChem argued that further discovery was necessary to determine its legal successorship.  (SMF ¶ 29.)  The New Jersey court rejected OxyChem's argument that further discovery was needed (SMF ¶¶ 29, 33), as the Court should here.  This threshold issue is ripe for resolution and OxyChem does not oppose the Court resolving the issue of legal successorship now.  (SMF ¶¶ 48–49.)

## CONCLUSION

Under basic principles of corporate law and the doctrine of issue preclusion, the Court should rule that OxyChem is responsible for DSCC's acts and omissions and for any and all of DSCC's Lister Plant-related liabilities.

Dated: March 9, 2020                     Respectfully submitted,

**PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP**

By: /s/ Jeffrey D. Talbert
    Jeffrey D. Talbert, Esq. (admitted *pro hac vice*)
    One City Center, PO Box 9546
    Portland, ME 04112
    Telephone: 207.791.3239
    Email: jtalbert@preti.com

**SHOOK, HARDY & BACON L.L.P.**

By: /s/ Joseph H. Blum
    Joseph H. Blum, Esq. (NJ Bar No. 010211984)
    Two Commerce Square
    2001 Market Street, Suite 3000
    Philadelphia, PA 19103-7014
    Telephone: 215.278.2555
    Email: jblum@shb.com

    David R. Erickson, Esq. (admitted *pro hac vice*)
    255 Grand Boulevard
    Kansas City, MO 64108-2613
    Telephone: 816.474.6550
    Email: derickson@shb.com

*Common Counsel for the Small Parties Group*

<u>**CERTIFICATE OF SERVICE**</u>

I, Joseph H. Blum, hereby certify that on March 9, 2020 I caused a copy of the foregoing

**Brief in Support of the Small Parties Group's Motion for Partial Summary Judgment on**

**Occidental Chemical Corporation's Successor Liability** to be served via electronic filing on

all counsel of record.


Dated: March 9, 2020             <u>*/s/ Joseph H. Blum*</u>
                                  **SHOOK, HARDY & BACON L.L.P.**
                                  2555 Grand Blvd.
                                  Kansas City, MO 64108
                                  Telephone: 816.474.6550
                                  David R. Erickson, Esq. (admitted *pro hac vice*)
                                  Joseph H. Blum, Esq. (NJ Bar No. 010211984)

15309791.1