UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>21ST CENTURY FOX AMERICA, INC., *et al.*,<br><br>    Defendants. | Hon. Madeline Cox Arleo<br>Hon. Magistrate Joseph A. Dickson<br><br>Civil Action No. 2:18-CV-11273 (MCA-JAD)<br><br>**STATEMENT OF MATERIAL FACTS IN SUPPORT OF SMALL PARTIES GROUP'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON OCCIDENTAL CHEMICAL CORPORATION'S SUCCESSOR LIABILITY**<br><br>Return Date: April 6, 2020<br><br>Oral Argument Requested |

  The Small Parties Group ("SPG"), through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and D.N.J. L.R. 56.1(a), submits this statement of material facts as to which there is no genuine issue of material fact to be tried.

  1. Starting in the mid-1940s, Kolker Chemical Works, Inc., manufactured DDT and phenoxy herbicides at the chemical manufacturing facility at 80 Lister Avenue in Newark, New Jersey, adjacent to 120 Lister Avenue (collectively, the "Lister Plant"). **Ex. 1** (Occidental Chem. Corp.'s Resps. to Standard Set Interrogs. (hereinafter "OxyChem's Resps. to Interrogs.") at 3–6.)

  2. In 1947, ownership of the real property underlying the Lister Plant was transferred to Kolker Realty Company. **Ex. 2** (Indenture Between Leon Alvin Kolker & Myrtle Kolker & Kolker Realty Co. (Jan. 2, 1947).)

3. In 1950, Kolker Realty Company merged into an affiliated company, Kolker Chemical Works, Inc. **Ex. 3** (Agreement of Merger & Consolidation Between Kolker Chemical Works, Inc. & Kolker Realty Co. (Mar. 1950).)  The surviving corporation was named Kolker Chemical Works, Inc. *Id*.

4. In 1951, Diamond Alkali Company, a firm not affiliated with the Kolker entities, acquired the stock of Kolker Chemical Works, Inc. **Ex. 4** (Escrow Agreement Between Leon A. Kolker, Diamond Alkali Co., & Bankers Trust Co. (Sept. 18, 1951).)

5. In 1953, Kolker Chemical Works, Inc., was renamed Diamond Alkali Organic Chemicals Division, Inc. **Ex. 5** (Certificate of Amendment of Certificate of Incorporation of Kolker Chemical Works, Inc. (Feb. 10, 1953).)

6. In 1954, Diamond Alkali Company dissolved Diamond Alkali Organic Chemicals Division, Inc. (formerly, Kolker Chemical Works, Inc.) into itself and expressly assumed its assets and liabilities. **Ex. 6** (Minutes of Special Meeting of the Board of Directors of Diamond Alkali Organic Chemicals Division, Inc. (Dec. 22, 1954); **Ex. 7** (Daniels Aff., Dec. 31, 1954.)

7. From 1951 to 1967, Diamond Alkali Company manufactured pesticides and herbicides at the Lister Plant. **Ex. 1** (OxyChem's Resps. to Interrogs. at 2 n.2 & 4–5.)

8. In 1967, The Shamrock Oil and Gas Company was merged into Diamond Alkali Company, with the latter the surviving corporation. The company's name was changed to Diamond Shamrock Corporation ("DSC I"). **Ex. 8** (Agreement of Merger Between Diamond Alkali Co. & The Shamrock Oil & Gas Corp. (Sept. 21, 1967).)

9. DSC I owned and operated the Lister Plant until it was shut down in 1969, and sold it in 1971. **Ex. 1** (OxyChem's Resps. to Interrogs. at 2 n.2 & 4–6); **Ex. 9** (Letter from James B.

Worthington, Dir. Envtl. Affairs, Diamond Shamrock Corp., to Michael Catania, New Jersey Dep't Envtl. Prot. (June 10, 1983).)

10. In July 1983, DSC I formed a wholly owned subsidiary named New Diamond Corporation. **Ex. 10** (Certificate of Incorporation of New Diamond Corp. (July 14, 1983)); **Ex. 11** (Def. Occidental Chem. Corp.'s Counterstatement of Material Facts in Opp'n to Pls.' Mot. for Partial Summ. J., ¶ 14, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. June 24, 2011).)

11. In August 1983, DSC I, New Diamond Corporation, and D Sub, Inc. (a wholly owned subsidiary of New Diamond Corporation) entered into an intracorporate reorganization by means of a reverse triangular merger by which D Sub, Inc. merged with and into DSC I, and all shares of DSC I were converted into the shares of New Diamond Corporation, so that New Diamond Corporation became the parent company of DSC I.[1] **Ex. 12** (Plan & Agreement of Merger Between Diamond Shamrock Corp., D Sub, Inc., & New Diamond Corp. (Aug. 31, 1983).)

12. Concurrently with the merger, DSC I changed its name to Diamond Chemicals Company. **Ex. 13** (Certificate of Amendment of Restated Certificate of Incorporation of Diamond Shamrock Corp. (Aug. 31, 1983).)  Further, New Diamond Corporation changed its name to Diamond Shamrock Corporation ("DSC II")—the second entity in this Statement of Material Facts to have that name (the first being DSC I). **Ex. 14** (Certificate of Incorporation as Amended of New Diamond Shamrock Corp. (Aug. 31, 1983).)

---

[1] A reverse triangular merger is a merger in which (1) the buyer creates a merger subsidiary (or uses an existing subsidiary) to acquire the target company; (2) the buyer's merger subsidiary merges with and into the target company; (3) the target company assumes all of the merger subsidiary's assets, rights, and liabilities by operation of law; (4) the merger subsidiary ceases to exist as a separate entity; and (5) the target company survives the merger and becomes the buyer's subsidiary.  4 James D. Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* § 22:15 (3d ed. Dec. 2019 Update).

13. Soon thereafter, in October 1983, Diamond Chemicals Company (formerly DSC I) changed its name again—this time to Diamond Shamrock Chemicals Company ("DSCC"). **Ex. 15** (Restated Certificate of Incorporation of Diamond Chemicals Co. (Oct. 21, 1983).)

14. In September 1986, DSC II sold the stock of DSCC to Oxy-Diamond Alkali Corporation. **Ex. 16** (Stock Purchase Agreement by & Among Diamond Shamrock Corp., Occidental Petroleum Corp., Occidental Chemical Holding Corp., & Oxy-Diamond Alkali Corp. (Sept. 4, 1986).)

15. Later that month DSCC changed its name to Occidental Electrochemicals Corporation. **Ex. 17** (Certificate of Amendment of Restated Certificate of Incorporation of Diamond Shamrock Chemicals Co. (Sept. 23, 1986).)

16. In April 1987, DSC II merged into itself its subsidiary Diamond Shamrock Merger Company and changed its name to Maxus Energy Corporation ("Maxus"). **Ex. 18** (Certificate of Ownership & Merger Merging Diamond Shamrock Merger Co. into Diamond Shamrock Corp. (Apr. 16, 1987).)

17. On November 20, 1987, Oxy-Diamond Alkali Corporation merged into its parent, Occidental Chemical Corporation. **Ex. 19** (Certificate of Ownership & Merger of Oxy-Diamond Alkali Corp. into Occidental Chemical Corp. & Appointment of Agent for Service (Nov. 20, 1987).)

18. On November 25, 1987, Occidental Electrochemicals Corporation was merged with and into its parent, Occidental Chemical Corporation, together with two other subsidiaries. **Ex. 20** (Certificate of Ownership & Merger of Occidental Electrochemicals Corp. into Occidental Chemical Corp. & Appointment of Agent for Service (Nov. 25, 1987)); **Ex. 21** (Def. Occidental Chem. Corp.'s Answers & Objs. to Pls.' Second Set of Reqs. for Admis. to Def. Occidental Chem.

Corp. at 8, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. Dec. 2, 2009).)

19. The Lister Plant was part of the Diamond Alkali Superfund Site listed on the National Priorities List in 1984. (OxyChem Compl. (ECF No. 1) ¶ 14.)

20. With respect to EPA's decades of conducting investigative and response actions on the Passaic River, OxyChem alleges that it has historically taken responsibility for the former operations at the Lister Plant. *Id.* ¶¶ 22–28.

21. In 2005, the New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund (collectively, "NJDEP") filed a five-count complaint against OxyChem and six related entities in the Superior Court of New Jersey. **Ex. 22** (Compl. & Jury Demand for Trial by Jury, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. Dec. 13, 2005).)

22. NJDEP asserted claims for violation of New Jersey's Spill Compensation and Control Act, N.J.S.A. 58:10-23.11a to -23.11z (the "Spill Act"); the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1 to -37.23; and New Jersey common law, based on the widespread contamination of the Passaic River caused by the Lister Plant's decades of intentional discharges and their subsequent migration upstream and downstream. *Id.* ¶¶ 4, 15–32, 52–65 (Spill Act), 66–72 (Water Pollution Control Act), 73–81 (public nuisance), 82–85 (trespass), 86–89 (strict liability).

23. In 2008, OxyChem filed cross-claims against its co-defendants for contribution under the Spill Act, among other theories of liability. **Ex. 23** (Def. Occidental Chem. Corp.'s Answer, Affirmative Defenses and Crossclaims to Pls.' Second Am. Compl., *New Jersey Dep't*

15309816.1

*Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. Oct. 3, 2008).)

24.     In 2010, NJDEP filed a Third Amended Complaint asserting the same five causes of action against OxyChem and asserting two additional causes of action against several other defendants. **Ex. 24** (Third Am. Compl. & Demand for Trial by Jury, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. Aug. 26, 2010).)

25.     In 2011, NJDEP moved for partial summary judgment, seeking judgment as a matter of law that, among other things, (1) DSCC[2] "discharged dioxin, DDT and other hazardous substances into the Passaic River;" and (2) "OCC [OxyChem] is DSCC's direct successor by merger and is liable under the Spill Act for all cleanup and removal costs associated with DSCC's discharges." **Ex. 25** (Br. in Supp. of Pls.' Mot. for Partial Summ. J. Against Occidental Chem. Corp. & Maxus Energy Corp. at 1, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. May 6, 2011).)

26.     NJDEP argued that DSCC discharged dioxin, DDT, and other hazardous substances into the Passaic River during the entire period of its plant operations, *id.* at 13–17; that DSCC was liable for all past and future cleanup and removal costs associated with its discharges, *id.* at 17–18; that OxyChem was strictly, jointly, and severally liable for DSCC's discharges because it was DSCC's successor by merger, *id.* at 18–23; and that OxyChem's argument that the Lister Plant liabilities were transferred out of DSCC before DSCC merged into OxyChem was without merit, *id.* at 23–27.

---

[2] To be consistent with the nomenclature used in the state court litigation, we refer hereinafter to Diamond Alkali and DSC I collectively as "DSCC," the name DSC I had adopted at the time that an OxyChem affiliate acquired it.

27. OxyChem opposed NJDEP's motion in a 51-page brief, which included eighteen pages of argument that Maxus, not OxyChem, was the successor to any Lister Plant-related liabilities. **Ex. 26** (Occidental Chem. Corp.'s Opp'n to Pls.' Mot. for Partial Summ. J. at 8–25, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. June 24, 2011).)

28. On July 15, 2011, the court held a hearing on NJDEP's motion for partial summary judgment. **Ex. 27** (Tr. of Hr'g on Pls.' Mot. for Partial Summ. J. at 1, 5, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. July 15, 2011).) NJDEP opened with its argument on successor liability, which spans 29 transcript pages, *id.* at 5–33; OxyChem then offered its position on the issue, extending over 38 transcript pages, *id.* at 64–102; Maxus argued the same issue over 9 pages, *id.* at 164–72; and NJDEP then made a rebuttal argument on successor liability, which covered 21 more transcript pages, *id.* at 177–97.

29. After making findings of fact on the relevant corporate history on July 15, 2011, (*id.* at 209–13), Judge Lombardi ruled from the bench on July 19, 2011 on the successor liability issue, first considering and rejecting OxyChem's argument that further discovery was needed to resolve the successor liability issue. **Ex. 28** (Tr. of Proceedings, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. July 19, 2011), at 235–36, 242.)

30. Instead, the court concluded as a matter of law that OxyChem is the legal successor of DSCC and its corporate predecessors and that this was true even if Maxus could also be considered a successor under equitable principles. *Id.* at 239–44.

31. Having previously determined that discharges from the Lister Plant gave rise to Spill Act liability, the New Jersey court addressed whether, "as the direct legal successor" to

15309816.1

DSCC, OxyChem is "then considered under the law as liable as a discharger under the Spill Act." *Id.* at 235.

32.  The New Jersey court remarked that OxyChem had offered no reason for it not to decide, under "unchallenged Hornbook law, that based on assuming all the stock and the Certificate of Incorporation, OCC [OxyChem] is the legal successor of DSCC, which was the legal successor of Old Diamond Shamrock [DSC I]." *Id.* at 239–40.

33.  The court said:

So I am going to enter an order that OCC [OxyChem] is as the undisputed legal, you know, successor by merger with DSCC, that they are responsible for the liabilities of the original Diamond Shamrock Corporation [DSC I].

So that's my decision in that regard. And I don't see a reason to delay and complete discovery on these other issues.

*Id.* at 244.

34.  The court also entered a written order granting NJDEP's motion for partial summary judgment on the issue of OxyChem's responsibility for discharges associated with the Lister Plant. **Ex. 29** (Order Partially Granting Pls.' Mot. for Partial Summ. J. Against Occidental Chem. Corp., Maxus Energy Corp. & Tierra Sols., Inc., *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. July 19, 2011).)

35.  The order said:

It is . . .

ORDERED that Plaintiffs' motion for partial summary judgment on Count I of Plaintiffs' Third-Amended Complaint against Defendant[] Occidental Chemical Corporation is hereby GRANTED; that Occidental Chemical Corporation is strictly, jointly and severally liable under the Spill Compensation and Control Act for all past cleanup and removal costs incurred by Plaintiffs associated with the discharges of hazardous substances at and from the Lister Plant property, commonly known to be located at 80 Lister Avenue in Newark, New Jersey, into the Passaic River; IT IS FURTHER,

> ORDERED that a declaratory judgment is hereby entered against Defendant[] Occidental Chemical Corporation, finding it strictly, jointly and severally liable under the Spill Compensation and Control Act for all future cleanup and removal costs that may be incurred by Plaintiffs associated with the discharges of hazardous substances at and from the Lister Plant property, commonly known to be located at 80 Lister Avenue in Newark, New Jersey, into the Passaic River . . . .

*Id.*

36. Judge Lombardi expressly framed the issue before the court as whether, "as the direct legal successor" to DSCC, OxyChem is "then considered under the law as liable as a discharger under the Spill Act." **Ex. 28** (Tr. of Proceedings at 235, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. July 19, 2011).)

37. OxyChem's opposition to the NJDEP's motion for partial summary judgment acknowledged that a finding that OxyChem was the successor to the Lister Plant liabilities was essential to NJDEP's motion. **Ex. 26** (Occidental Chem. Corp.'s Opp'n to Pls.' Mot. for Partial Summ. J. at 10–11, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. June 24, 2011) (arguing that the possibility that an entity other than OxyChem inherited the Lister Plant liabilities was by itself reason to deny NJDEP's motion).)

38. OxyChem did not appeal the court's order finding it liable for the Lister Plant-related liabilities as DSCC's successor, but instead paid $190 million to settle NJDEP's claims against it. **Ex. 30** (Consent J., *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. Dec. 16, 2014)); **Ex. 31** (Order on the Entry & Approval of the Consent J. Between Pls. & Def. Occidental Chem. Corp. & Dismissal of Pls.' Claims & Certification as Final J. Pursuant to R. 4:42-2, *New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp.*, Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div. Dec. 16, 2014).)

39. OxyChem responded to a Standard Set of Interrogatories in this matter, which asked OxyChem, among other things, the following:

> To the extent You intend to claim You are not the legal successor to the business entity that conducted the Operations described in response to Interrogatory No. 2, Identify and describe any transaction(s) related to the ownership of the business entity that conducted the Operations described in response to Interrogatory No. 2. The time period for this interrogatory is from the earliest date of Your Operations to the present.

**Ex. 1** (OxyChem's Resps. to Interrogs. at 6.)

    40.    In response, OxyChem acknowledged its status as legal successor:

> OxyChem acknowledges that, based on its 1986 purchase of the stock of DSCC from Diamond Shamrock Corporation and the 1987 merger of DSCC into OxyChem, a court in New Jersey found that OxyChem is a legal successor to DSCC, and to certain environmental liabilities resulting from Kolker Chemical Works, Inc.'s, Diamond Alkali Company's, and DSCC's historical operations of the Lister Plant from the late 1940s through the 1960s.

*Id.* at 7.

    41.    The response goes on to say that OxyChem is "not a legal successor for all purposes nor is it a successor in equity or otherwise for all actions taken by DSCC or its predecessors in operating the Lister Plant decades *before* OxyChem bought the stock of DSCC." *Id.* at 7 (emphasis in original). It asserts that "if there were intentional acts to dispose of hazardous substances in violation of law or regulation by DSCC or its predecessors before OxyChem purchased the stock of DSCC, neither liability for such intentional disposal nor equitable responsibility for such intentional conduct can be attributed to OxyChem." *Id.*

    42.    OxyChem's interrogatory response cites the following to suggest that OxyChem somehow divested itself of Lister Plant-related liabilities: (a) a 1984 Assignment and Assumption Agreement in which DSCC purported to assign and transfer certain assets and liabilities to an entity called Diamond Shamrock Corporate Company; (b) indemnity provisions in the 1986 Stock Purchase Agreement whereby Oxy-Diamond Alkali Corporation acquired the stock of DSCC; and

(c) a New Jersey Superior Court order enforcing an indemnity provision in the 1986 Stock Purchase Agreement. *Id.*

43. According to OxyChem, "in 1984 . . . DSCC transferred all company assets and liabilities other than those related to DSCC's active Chemicals Business to a separate company, Diamond Shamrock Corporate Company, which was not acquired by OxyChem, but was later merged with Maxus." *Id.*

44. "As a result," OxyChem contends, "the DSCC stock acquired by OxyChem represented assets and liabilities related only to DSCC's active Chemicals Business, and not to the discontinued agricultural chemicals businesses . . . at the long-closed Lister Plant." *Id.*

45. OxyChem further asserts that DSC II "assumed responsibility" "for any possible residual environmental liability from . . . discontinued businesses that somehow remained with the stock of DSCC" through indemnity provisions in the 1986 Stock Purchase Agreement. *Id.*

46. OxyChem says that a New Jersey court found that the Lister Plant-related liabilities were transferred from DSCC to DSC II in 1986 when DSC II sold DSCC's stock to Oxy-Diamond Alkali Corporation. *Id.*

47. OxyChem further denies its successor liability in its Answer to Defendants' Counterclaims (ECF Nos. 763–833). Specifically, it "denies it is the Diamond Alkali Company or that it is the corporate successor to 'all the liabilities of the Diamond Alkali Company.'" Pl. Occidental Chem. Corp.'s Answer & Affirmative Defenses to Consolidated Countercls.' Against All Defs. ¶ 8. And it denies "that OxyChem is the corporate successor to the entities that owned and operated the Lister Plant from the mid-1940s through 1969 and is responsible for those entities' conduct and liabilities." *Id.* at 31.

15309816.1

48. On November 1, 2019, undersigned counsel informed counsel for OxyChem that the SPG intended to file "a motion for partial summary judgment that OxyChem is liable as the successor-in-interest to the Kolker and Diamond entities." **Ex. 32** (Oct. and Nov. 2019 email thread between the SPG's and OxyChem's counsel.)

49. OxyChem's counsel responded that "OxyChem disputes the issues, but does not oppose Defendants' filing their motions." *Id.*

Dated: March 9, 2020                Respectfully submitted,

**PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP**

By: /s/ Jeffrey D. Talbert
 Jeffrey D. Talbert, Esq. (admitted *pro hac vice*)
 One City Center, PO Box 9546
 Portland, ME 04112
 Telephone: 207.791.3239
 Email: jtalbert@preti.com

**SHOOK, HARDY & BACON L.L.P.**

By: /s/ Joseph H. Blum
 Joseph H. Blum, Esq. (NJ Bar No. 010211984)
 Two Commerce Square
 2001 Market Street, Suite 3000
 Philadelphia, PA 19103-7014
 Telephone: 215.278.2555
 Email: jblum@shb.com

 David R. Erickson, Esq. (admitted *pro hac vice)*
 255 Grand Boulevard
 Kansas City, MO 64108-2613
 Telephone: 816.474.6550
 Email: derickson@shb.com

*Common Counsel for the Small Parties Group*

15309816.1

## CERTIFICATE OF SERVICE

I, Joseph H. Blum, hereby certify that on March 9, 2020 I caused a copy of the foregoing **Statement of Material Facts in Support of the Small Parties Group's Motion for Partial Summary Judgment on Occidental Chemical Corporation's Successor Liability** to be served via electronic filing on all counsel of record.


Dated: March 9, 2020                    */s/ Joseph H. Blum*
                                        **SHOOK, HARDY & BACON L.L.P.**
                                        2555 Grand Blvd.
                                        Kansas City, MO 64108
                                        Telephone: 816.474.6550
                                        David R. Erickson, Esq. (admitted *pro hac vice*)
                                        Joseph H. Blum, Esq. (NJ Bar No. 010211984)

15309816.1