UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>                Plaintiff,<br><br>   vs.<br><br>21ST CENTURY FOX AMERICA, INC., *et al.*,<br><br>                Defendants. | **Civil Action No. 18-11273 (MCA)(JD)**<br><br><br>**DECISION OF THE SPECIAL MASTER REGARDING MOTION TO CLARIFY THE SCOPE OF DISCOVERY** |

## INTRODUCTION

This matter comes by way of Motion to Clarify the Scope of Discovery ("Motion") filed by Plaintiff, Occidental Chemical Corporation ("Plaintiff"). The Motion seeks a determination from the Special Master on whether the scope of Electronically Stored Information ("ESI") discovery should include chemicals outside the eight Record of Decision Contaminants of Concern[1] ("ROD COCs") that the United States Environmental Protection Agency ("EPA") identified as likely posing a risk to human health and the environment following a Remedial Investigation and Feasibility Study (RI/FS) conducted on the lower 8.3 miles of the Lower Passaic River Study Area ("LPRSA"). Specifically, Plaintiff requests that ESI discovery be produced relating to the following four categories of chemicals: (1) the eight ROD COCs relating to the OU2 Remedy, including congeners and analytes; (2) precursor chemicals and degradation products of the eight ROD COCs and dioxin-associated compounds; (3) chemicals that require monitoring and potential treatment to comply with New Jersey Department of Environmental Protection

---

[1] The ROD COCs include poly-chlorinated biphenyls, mercury, dioxins and furans, poly-aromatic hydrocarbons, DDT, dieldrin, lead, and copper.

("NJDEP") effluent discharge limits; and (4) chemicals that the EPA requires to be sampled for the OU4 Remedy.  To be clear, while Plaintiff suggests that paper discovery may be incomplete because some Defendants only produced documents related to ROD COCs, the Motion only addresses ESI discovery, and therefore, the findings of this decision shall pertain only to ESI discovery—not paper discovery.  In addition, the findings of this decision are not a determination as to relevance for purposes of trial, which determinations are reserved for the District Court Judge.

Plaintiff argues that the four categories are discoverable under *Rule* 26 of the Federal Rules of Civil Procedure and proportional to the needs of the litigation because they directly relate to the eight ROD COCs, are associated with response costs for the OU2 Remedy, and may demonstrate a nexus to contamination by a party in the LPRSA.  Additionally, Plaintiff argues that Defendants' counterclaims expanded the scope of discovery beyond the eight ROD COCs.  In opposition, Defendants propose the parties commence ESI discovery, and if Plaintiff objects to a Defendants' ESI search and related production, Plaintiff should raise those objections with an individual proffer related to the specific chemicals and operations at issue.

For the reasons set forth herein, Plaintiff's Motion to Clarify the Scope of Discovery is granted with respect to ESI discovery.

## STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY

A.   Commencement of Litigation and Exchange of Paper Discovery

In 2016, Plaintiff entered into an Administrative Settlement Agreement and Order on Consent (the "2016 ASAOC") with the EPA to design the remedy the EPA selected for cleanup of the Lower Passaic River ("River").  Plaintiff is performing remediation sampling under the 2016 ASAOC on behalf of, and as overseen by, the EPA.

2

On June 30, 2018, Plaintiff filed its Complaint in the United States District Court for the District of New Jersey seeking recovery under § 107 and § 113 of CERCLA for contribution and recovery of costs incurred, and to be incurred, in response to releases and threatened releases of chemicals of concern in the LPRSA. On August 14, 2019, Defendants filed counterclaims against Plaintiff, which relate to a 2004 Settlement and 2007 Settlement for remedial investigation/feasibility study for the LPRSA and a 2012 UAO relating to a River Mile 10.9 removal action.

During discovery, Plaintiff and Defendants served Requests for Production under *Rule* 34 and standardized interrogatories. Plaintiff's requests sought, among other things, information regarding the operations conducted at the properties at issue in the Complaint and releases of hazardous substances from Defendants' properties. Plaintiff's requests defined "hazardous substances" as the term is defined by Section 101(14) of CERCLA. CERCLA defines "hazardous substances" as:

> (A) any substance designated pursuant to § 311(b)(2)(A) of the Federal Water Pollution Control Act ("FWPCA"), (B) any element, compound, mixture, solution, or substance designated pursuant to § 9602, (C) any hazardous waste having the characteristics identified under or listed pursuant to § 3001 of the Solid Waste Disposal Act (but not including any waste the regulation of which under the Solid Waste Disposal Act has been suspended by Act of Congress), (D) any toxic pollutant listed under § 307(a) of the FWPCA, (E) any hazardous air pollutant listed under § 112 of the Clean Air Act, and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator of the EPA has taken action pursuant to § 7 of the Toxic Substances Control Act.

In Defendants' omnibus preliminary objections to Plaintiff's First Request for Production of Documents, Defendants' objected to Plaintiff's definition of "Hazardous Substances" as overly broad. However, Defendants' omnibus objections also noted that sampling conducted for purposes of this litigation would be limited to the "eight COCs and any tracers, congeners, or isomers of

3

those COCs, and analytes related to identification of sources of contamination by COCs…." Similarly, in Defendants' First Joint Request for Production of Documents to Plaintiff, Defendants defined COCs as "2,3,7,8-TCDD, copper, Dieldrin, DDT, lead, mercury, PAH, and PCB, and any tracers, congeners, isomers, or analytes of those COCs, as well as raw materials, intermediary materials, products or by-products containing any of these eight substances."

B.    Recent Developments Related to the Production of ESI

In November 2019, Plaintiff moved for an Order of the Special Master directing the immediate production of ESI related to the following: (1) historical operations at all properties at issue; (2) releases and disposals of hazardous substances at or from all properties at issue; (3) remedial and other environmental investigations and actions at all properties at issue; and (4) sampling data at all properties at issue.  At the November 2019 Special Master Conference, the Special Master worked with the parties to formulate an agreement on ESI.  Defendants agreed to circulate a list of proposed custodians and search terms on three core ESI subjects (historical operations, releases of hazardous substances, and remedial investigations) by December 16, 2019. The parties also agreed to meet and confer in good faith on any related issues after the list was circulated.

On December 19, 2019, the Small Parties Group ("SPG") sent Plaintiff a letter proposing an ESI methodology and search terms as a starting point for ESI searches by individual defendants. In addition, the SPG proposed additional qualifications to the three core categories of ESI, including limiting the production of ESI to a facility's operation dates and limiting searches to the eight ROD COCs.

During the January 2020 Special Master Conference, Plaintiff and Defendants discussed whether the scope of ESI discovery should include chemicals outside the eight ROD COCs.

Plaintiff agreed to provide Defendants a list of proposed chemicals that it believed should be included within the scope of ESI discovery.

On February 5, 2020, Plaintiff sent Defendants a list of approximately 1,215 chemicals that it believed were relevant to its claims and defenses. The list included the ROD COCs identified by EPA as driving the OU2 remedy, precursors and degradation products of the ROD COCs, and hazardous substances or chemicals that have been found in Lower Passaic River sediments that may function as markers for releases from Defendants' upland sites and operations.

By order of the Special Master dated February 18, 2020, all ESI searches were to commence by April 1, 2020.[2] Moreover, to resolve the threshold issue regarding relevant hazardous substances and chemicals for ESI discovery, Plaintiff was ordered to file a motion to clarify the scope of discovery by or before February 21, 2020.

C.     <u>Motion to Clarify the Scope of Discovery</u>

On February 21, 2020, Plaintiff filed the Motion to Clarify the Scope of Discovery seeking the production of all responsive, non-privileged documents that relate to the following categories of chemicals:

1. <u>Category 1</u>: The ROD COCs, including congeners, related chemicals and analytes.

2. <u>Category 2</u>: Precursor chemicals and degradation products of the ROD COCs and dioxin-associated compounds.

3. <u>Category 3</u>: Chemicals that may require treatment of wastewater to comply with NJDEP effluent limits during the upland sediment dewatering/cleanup component of EPA's remedy.

---

[2] On March 23, 2020, the Chief United States District Court Judge of the District of New Jersey issued Standing Order 20-04 ("Standing Order"), extending all filing and discovery deadlines in civil matters that occur between March 25, 2020 and April 30, 2020, by 45 days in light of the COVID-19 pandemic. In accordance with the Standing Order, the deadline to commence ESI searches was extended from April 1, 2020 to May 18, 2020.

      4.  <u>Category 4</u>: Other chemicals the EPA requires to be sampled for in Lower Passaic River sediments.

Generally, Plaintiff argues that the four categories of chemicals contained in Exhibit 9 to the Motion ("Chemical List") are relevant either as a chemical that drives response costs or as a chemical that can prove Defendants released hazardous substances into the River. (*See* Chemical List, Exhibit A).

On March 2, 2020, Defendants filed opposition to the Motion. Defendants argue that Plaintiff has not met its burden to establish that chemicals outside the ROD COCs are relevant under *Rule* 26(b)(1), and that ESI discovery related to only the ROD COCs is proportional to the needs of the case. Specifically, Defendants argue, among other things, that the Motion should be denied because (1) the Complaint relates only to the ROD COCs, (2) paper discovery is complete, and (3) the Chemical List is vague, undefined, and unsupported by scientific evidence. In addition, Defendants argue that discovery should be individualized because Defendants are not a class— they are different companies and different businesses with different operations.

Similarly, Defendants Alden Leeds, Inc., Benjamin Moore & Co., and Clean Earth of New Jersey, Inc. filed separate opposition to the Motion and argue that Plaintiff cannot adopt a "one-size fits all" discovery rule as it relates to the voluminous chemicals list. Rather, Plaintiff must engage in individualized discovery with each of the Defendants.

Opposition was also filed by Defendant Pharmacia, LLC ("Pharmacia"). Pharmacia's opposition, however, is limited to addressing the factual statements in the Motion as they relate to Pharmacia's site in Kearny, New Jersey where Monsanto Company operated a chemical manufacturing plant.

None of the submissions by the parties cite to any precedent or persuasive authority analyzing the scope of relevant chemicals in CERCLA matters. The only case set forth by the

parties is *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682 (7th Cir. 2014), which is neither binding nor germane to the present issue.

On March 11, 2020, oral argument was heard on the Motion. During oral argument, in response to Defendants' opposition, Plaintiff confirmed that the Chemical List is <u>not</u> a search term list, but rather the Chemical List includes "categories of chemicals—each directly relevant to the claims at issue—to define which operations, investigations, and remediations are discoverable." In other words, Plaintiff believes that once ESI is obtained from relevant search terms, the Chemical List should be used as a guide to ensure that documents only referencing certain non-ROD COCs are not withheld from production.

## **ANALYSIS**

Pursuant to *Rule* 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Importantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

A.  <u>Relevance of Chemicals Outside the Rod COCs</u>

The purpose of discovery is to investigate the facts about the claims and defenses set forth in the pleadings, and therefore, the boundaries of relevance depend on the context of each matter. *See In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015); *Salamone v. Carter's Retail, Inc.*, Civ. No. 09-5856, 2011 U.S. Dist. LEXIS 41357, 2011 WL 1458063, at *2 (D.N.J. Apr. 14, 2011) (Brown, C.J.); *accord Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct.

385, 91 L. Ed. 451 (1947) (stating "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation). The determination of relevance within the confines of *Rule* 26 is within the court's discretion. *See Salamone*, 2011 U.S. Dist. LEXIS 41357, 2011 WL 1458063, at *2.

Moreover, discovery allows each party to have a fair opportunity to present an effective case at trial. *See Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (citing *Nestle Foods Corp. v. Aetna Cas. And Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). Accordingly, courts construe *Rule* 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978); *see also Nestle Foods Corp.*, 135 F.R.D. at 104 (D.N.J. 1990) (citation omitted).

Based on the broad standard to be applied, it is evident that the chemicals found in Categories 1, 2, 3 and 4 of the Chemical List are relevant to this matter and, at the very least, could reasonably lead to the discovery of ESI relating to the current and historical levels of contamination and corresponding discharges in the River. This information may be critical for the ultimate factfinder to later develop an equitable and fair allocation, and therefore, the Chemical List should be used to identify relevant discovery when searching ESI.

    i.    <u>Categories 1 and 2</u>

The Chemical List defines Category 1 chemicals as the eight ROD COCs and their congeners, related chemicals, and analytes. This definition is substantially similar to the EPA's description in the Record of Decision and that referenced by Defendants in their omnibus objection. Further, despite Defendants' contention that Category 1 is "vague, overbroad, and ambiguous," the Chemical List provides sufficient definition and guidance. Indeed, while

Defendants maintain that Category 1 requires further definition and clarification, Defendants' First Joint Request for Production of Documents to Plaintiff identifies COCs as "2,3,7,8-TCDD, copper, Dieldrin, DDT, lead, mercury, PAH, and PCB, *and any tracers, congeners, isomers, or analytes* of those COCs, as well as raw materials, intermediary materials, products or by-products containing any of these eight substances." (emphasis added). Therefore, not only have Defendants requested the production of relevant documents related to Category 1 chemicals, they have defined them in virtually the same way as Plaintiff. Defendants cannot dispute the description of Category 1 chemicals, nor can they dispute their discoverability or relevance. Thus, the chemicals within Category 1 are relevant for purposes of ESI Discovery.

Next, the Chemical List defines Category 2 chemicals as precursor chemicals and degradation products. Stated simply, precursor chemicals are those that may form one of the ROD COCs, while degradation products are chemicals that may be formed from the breakdown of one of the ROD COCs. The EPA has explained that although "[t]hese precursor chemicals are not themselves contaminated, [they] can, during further processing and under certain reaction conditions, lead to formation of HDDs/HDFs [dioxins and furans] in other chemicals." *Polyhalogenated Dibenzo-p-Dioxins/Dibenzofurans; Testing and Reporting Requirements; Final Rule*," 52 Fed. Reg. 21415 (June 5, 1987). Accordingly, the existence of a precursor chemical or a degradation product increases the likelihood that a ROD COC was produced at a particular site. Moreover, although Defendants argue that the Motion seeks to broaden discovery beyond the scope of the Complaint, the Complaint references Category 2 chemicals in several places, including paragraphs 176, 190, and 263. Given that ROD COCs were identified by the EPA as driving its selected remedy for the River, these identifier chemicals in Category 2 are relevant and discoverable.

ii.     Categories 3 and 4

Categories 3 and 4 of the Chemical List contain non-ROD COCs that (1) may be directly associated with response costs and (2) may indicate a Defendants' nexus to the River. Specifically, Category 3 chemicals include those chemicals required to be monitored as part of the dredged sediment dewatering component of the remedy, while Category 4 includes other chemicals the EPA requires to be sampled for in Lower Passaic River sediments.

First, Category 3 and Category 4 chemicals are relevant based on Plaintiff's affirmative claim related to the design of the remedy. Here, the 2016 ASAOC requires Plaintiff to design for the dewatering of sediments contaminated with Category 3 chemicals. Plaintiff is also required to design for the treatment and discharge of the resulting wastewater associated with the dewatering process. Similarly, Category 4 chemicals are relevant because the EPA has required Plaintiff to sample for Category 4 chemicals in Lower Passaic River sediments. As such, in constructing and designing the remedy, Plaintiff must ensure the capability to monitor Category 4 chemicals.

Second, Category 3 and Category 4 chemicals are also relevant based on their ability to demonstrate a nexus between certain operations or properties and the discharge of ROD COCs into the River, which is critical to proving Plaintiff's claim. For example, showing that non-ROD COCs have entered the River from a Defendants' site where ROD COCs are found would tend to support Plaintiff's claim that ROD COCs also made their way from Defendant's site into the River. Although Defendants argue that Plaintiff's position lacks scientific support, Defendants advanced a similar argument in connection with their counterclaims at the August 27, 2019 status conference. These methodologies will be further advanced at the expert stage of this case; however, the factual information necessary to form the basis for those expert opinions is relevant and discoverable. Of course, the weight of such evidence, if it exists, will be the subject of further

consideration by the Court. The scope of the Motion is merely whether documents that are found using ESI search terms and that do not reference the ROD COCs, but instead reference another chemical on the Chemical List, should be disregarded in ESI productions. Based on all pertinent factors, such documents should not be withheld in discovery based on relevance grounds.

B.  <u>Proportionality of Chemicals Outside the Rod COCs</u>

*Rule* 26 was amended effective December 1, 2015, to require that the discovery be proportional to the needs of the case and take into account the burdens created by the discovery proceedings. *See* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment. When considering the proportionality of discovery, courts must consider a number of factors including: (1) the importance of the issues at stake; (2) the amount in controversy; (3) the parties' access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Proportionality determinations are made on a case-by-case basis. *See Employers Ins. Co. of Wausau v. Daybreak Express, Inc.*, 2017 U.S. Dist. LEXIS 86224, at *5 (D.N.J. June 5, 2017) (quoting *Bell v. Reading Hosp.*, 2016 U.S. Dist. LEXIS 4643, at *2 (E.D. Pa. Jan. 14, 2016)). "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Id.*

Even if discovery is proportional to the needs of the case, courts have the discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit. *See Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230 (D.N.J. 2013) (citing Fed. R. Civ. P. 26(b)(2)(C)). Specifically, *Rule* 26 permits the court to issue a protective order for good cause

shown to prevent annoyance, embarrassment, oppression or undue burden or expenses. *Id.* (citing Fed. R. Civ. P. 26(c)).

Here, the factors of proportionality do not support a limitation of ESI to only information that references the ROD COCs. This is a complex environmental case, with a timeline of events dating back decades, in which identification of hazardous substances related to contamination is critical for Plaintiff's affirmative claims, Defendants' defenses, and Defendants' counterclaims. Moreover, the scope of this case is significant, as evidenced by more than one hundred parties and a purported amount in controversy exceeding $1,000,000,000.

Additionally, the proposed use of the Chemical List will result in limited additional burden to Defendants. It has been made abundantly clear by Plaintiff in its submission and during argument that it is not seeking to have the chemicals on the Chemical List be included as ESI search terms. Rather, the Chemical List is a "guidepost" such that information would not be excluded from production. The purpose of the Chemical List is to assist Defendants in identifying information related to the operations, investigations and remediation activity that should be produced in ESI discovery.

The parties have been ordered to commence ESI discovery by April 1, 2020, which was extended to May 18, 2020, pursuant to the Standing Order. In doing so, Defendants will use either the common search term list proposed by the SPG or their own individualized search terms to identify relevant ESI for production. Presumably, prior to production, Defendants will review their ESI for relevancy and privilege. Simply because certain ESI material that was gathered using search terms does not reference a ROD COC does not mean it should be withheld. To avoid any confusion as to relevancy, the Chemical List should be used by Defendants during its relevancy and privilege review of ESI. If the ESI references a chemical on the Chemical List, but does not

reference a ROD COC, it should still be produced (absent privilege or another protection) for the reasons set forth herein. In reality, the scope of documents that will contain an ESI search term, but have its relevance hinge only on the presence of a chemical on the Chemical List will be minimal. Defendants have several means to ensure this decision is complied with, including but not limited to additional electronic searches, review of only documents that are being withheld on responsiveness grounds, or simultaneous review of documents for existence of chemicals on the Chemical List. In any scenario, the additional burden, if any, is proportional and certainly far less burdensome than duplicating all or a portion of ESI discovery in the future to address these issues and ensure a complete and thorough review by the ultimate factfinder.

Moreover, Defendants' call for an individualized approach is unworkable and unnecessary. For instance, Defendants have already been given the ability to individualize their ESI search terms, thus narrowing the scope of potential documents to be produced. However, only the Defendants are aware of the full extent of their historic operations. Therefore, it is not Plaintiff's burden to identify each property's potential use of chemicals, but rather should be Defendants' responsibility to provide such information. Additionally, individualized inquiries related solely to a list of chemicals in a case containing over 100 Defendants will merely delay discovery and burden the Special Master.

The Special Master is aware of the Defendants' concerns relating to the above approach to ESI discovery. However, the parties' investigation of the facts, claims and defenses at the discovery phase would be incomplete and there is a risk of depriving the ultimate factfinder of the necessary information to develop a fair and equitable remedy if certain documents or information are withheld merely because they do not reference the ROD COCs. Accordingly, use of the Chemical List to identify relevant ESI is proportional to the needs of the case.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Clarify the Scope of Discovery is hereby granted.

>	*/s/ Thomas P. Scrivo*
>	**THOMAS P. SCRIVO**
>	**Special Master**

Dated: April 23, 2020