UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

July 10 2020

VIA ECF

## LETTER ORDER

Re:   Occidental Chemical Corporation v. 21st Century Fox America, et al.,
      Civil Action No. 18-11273

Dear Litigants:

Before the Court is Defendant Chargeurs Inc.'s ("Chargeurs" or "Defendant") Motion to Dismiss Plaintiff Occidental Chemical Corporation's ("OxyChem" or "Plaintiff") Complaint, ECF No. 1, for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 908. Plaintiff opposed the Motion and cross-moved for summary judgment on the issue of whether Chargeurs assumed the liabilities of United Piece Dye Works and UPDW, Inc. ECF No. 921. For the reasons explained below, Defendant's Motion is **DENIED** and Plaintiff's Motion is **GRANTED**.

**I.   BACKGROUND**

Plaintiff filed this action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., for cost recovery and contribution from Chargeurs and numerous other entities based on response costs that it expended and will expend to address "releases and threatened releases of hazardous substances in the Lower Passaic River and elsewhere within the Diamond Alkali Superfund Site [the 'Superfund Site']." Compl. at 4.[1]

As relevant to this dispute, United Piece Dye Works ("United") operated at two locations: (1) 199 and 205 Main Street, Lodi, New Jersey (the "Main Street Property") and (2) 42 Arnot Street, Lodi, New Jersey (the "Arnot Property"). See id. ¶ 180; Def. Answer to Interrogatories at 2-3, ECF No. 921.14. United manufactured textile dyes at the Main Street Property until 1968 and operated a steam plant at the Arnot Property until 1954. Def. Answer to Interrogatories at 4. Plaintiff alleges that "[r]eleases of hazardous substances . . . from the Main Street Property and the

---

[1] On May 20, 2019, the Magistrate Judge ordered that limited jurisdictional discovery could proceed between the parties. See ECF No. 609. Following discovery, the Special Master set a schedule for the instant Motion. See ECF Nos. 877, 890.

Arnot Property have contaminated and continue to contaminate the sediments" in the Superfund Site.  Compl. ¶ 180.

Between 1972 and 1977, three foreign companies (the "Foreign Entities") jointly owned approximately 94% of United's common stock.[2]  Def. Answer to Interrogatories at 5-6.  Each of the Foreign Entities has a complicated corporate history, involving numerous acquisitions, liquidations, and name changes, for the period in question.  See id.  Because these details are irrelevant to the instant dispute, the Court does not recite them here, other than to note that one of the Foreign Entities was Fibag, A.G., a predecessor to Pricel, A.G. and Chargeurs.  See id.

On December 28, 1978, Pricel, Inc. ("Pricel") was incorporated under the laws of Delaware, and on January 18, 1979, UPDW, Inc. ("UPDW") was incorporated under the laws of Delaware.  Id. at 6.  The Foreign Entities then transferred their United stock to UPDW in exchange for 100% of UPDW's common stock.  Id.

On January 26, 1979, following the stock transfer, United "was merged with and into UPDW, with UPDW being the surviving corporation of that merger," and UPDW became "a wholly-owned subsidiary of Pricel."  Id.  On December 21, 1982, Pricel changed its name to Chargeurs, Inc.  Id.; see also December 22, 1982 Minutes of the Special Meeting of the Chargeurs Board of Directors, ECF No. 921.15 (the "Dec. 22, 1982 Chargeurs Minutes").

On December 22, 1982, UPDW's Board of Directors authorized a liquidation plan to transfer all of UPDW's assets to Chargeurs and directed its President and Secretary to file a certificate of dissolution with Delaware's Secretary of State.[3]  December 22, 1982 Minutes of the Special Meeting of the UPDW Board of Directors, Stipulated Ex. 10, ECF No. 908.2 (the "Dec. 22, 1982 UPDW Minutes").  On the same day, Chargeurs "assume[d] the liabilities of UPDW and United not paid or otherwise provided for by UPDW and United, whether or not related to specific assets, and . . . the President and Secretary of [Chargeurs were] . . . authorized to execute such mortgages, indentures, guarantees or other documents as may be required in connection with such assumption of liabilities."  Dec. 22, 1982 Chargeurs Minutes at 4.[4]

## II.   PERSONAL JURISDICTION

### A.   Legal Standard

To survive a Rule 12(b)(2) motion to dismiss, Plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction" over Defendant.  Fatouros v. Lambrakis, 627 F. App'x 84, 86-87 (3d Cir. 2015) (citation omitted).  Plaintiff must make "a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  Plaintiff may not rely on "the bare pleadings alone," but instead must establish its "jurisdictional facts through sworn affidavits or other competent evidence."  Id. at 101 n.6 (internal quotation marks and citation

---

[2] On January 26, 1979, the remaining 6% of United's common stock was cancelled and the shareholders received $8 per share held.  Def. Answer to Interrogatories at 6.

[3] UPDW was dissolved on January 23, 1983.  See Certificate of Dissolution, Stipulated Ex. 8, ECF No. 908.2.

[4] There is no detailed liquidation plan or schedule of liabilities Chargeurs assumed from UPDW in connection with the latter's dissolution.  See Doldan Dep. at 70:5-72:15, 81:20-82:10, Richman Decl., Ex. C, ECF No. 908.3.

omitted). If Plaintiff meets its burden, then Defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation and quotation marks omitted).

>   **B.   Analysis**

Chargeurs argues that the Court should dismiss the Complaint for lack of general or specific personal jurisdiction. See Def. Br. at 12-20, ECF No. 908.4. The Court disagrees.

The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

A party is subject to general personal jurisdiction when its contacts with the forum state are "so continuous and systematic as to render them essentially at home in the forum state." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). It is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or the principal place of business." Chavez v. Dole Food Co. Inc., 836 F.3d 205, 223 (3d Cir. 2016) (alteration and emphasis in original) (internal quotation marks and citation omitted). Here, the Court lacks general jurisdiction because Chargeurs is a Delaware corporation with its principal place of in North Carolina. See Compl. ¶ 180. Accordingly, Chargeurs is not "essentially at home" in New Jersey. Goodyear Dunlop, 564 U.S. at 919.

To determine whether it has specific personal jurisdiction, the Court considers "(1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice." Virginia Street Fidelco, L.L.C. v. Orbis Prods. Corp., No. 11-2057, 2016 WL 4150747, at *7 n.7 (D.N.J. Aug. 3, 2016) (citing O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007)). Here, Chargeurs argues that the Court lacks specific personal jurisdiction because Chargeurs has not directed any activities at New Jersey, and United and UPDW ceased operations at the Main Street and Arnot Properties long before Chargeurs acquired them in 1982. See Def. Br. at 14-19. The Court disagrees.

"Successor jurisdiction 'can be present in the following situations: (1) merger or de facto merger; (2) express or implied assumption of liabilities, including by a ratification of the predecessor's activities; or (3) acquisition of assets or reorganization undertaken to fraudulently avoid jurisdiction." American Estates Wines, Inc. v. Kreglinger Wine Estates Pty, Ltd., No. 07-2474, 2008 WL 819993, at *5 (D.N.J. Mar. 25, 2008) (quoting In re Nazi Era Cases Against German Defendants Litig., 153 F. App'x 819, 823 (3d Cir. 2005)); see also Flagship Interval Owner's Ass'n, Inc. v. Philadelphia Furniture Manuf. Co., No. 09-1173, 2010 WL 1135736, at *6-7 (D.N.J. Mar. 22, 2010) (finding successor jurisdiction based on de facto merger and alter ego theories).

3

Here, Chargeurs "assumed the liabilities of UPDW and United not paid or otherwise provided for" on December 22, 1982, at a special Board meeting whose purpose was "to authorize the liquidation and dissolution of UPDW[,] . . . a wholly-owned subsidiary of [Chargeurs]." Dec. 22, 1982 Chargeurs Minutes at 2-4. This assumption of liabilities is sufficient to impute UPDW's and United's contacts with New Jersey to Chargeurs. See, e.g., Flagship Interval, 2010 WL 1135736, at *7 (noting that plaintiff "ha[d] presented sufficient facts to support a finding that Artone was the jurisdictional successor to Philadelphia Furniture . . . especially in light of their common ownership").

United's contacts with New Jersey, imputed to Chargeurs, adequately support the exercise of personal jurisdiction. First, it is undisputed that United operated at the Main Street and Arnot Properties, releasing substances which may have contributed to contamination at the Superfund Site. See Defendant's Response to Plaintiff's Statement of Material Facts ("Def. Resp. to Pl. SOMF") ¶¶ 1-2, ECF No. 925.2. United therefore "purposefully directed [its] activities at the forum . . . [and] the litigation . . . arise[s] out of or relate[s] to at least one of those activities" such that personal jurisdiction is proper. See O'Connor, 496 F.3d at 317 (internal quotation marks and citations omitted) (first alteration in original). Second, "the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process." Nazi Era Cases, 153 F. App'x at 825. The Court therefore concludes that it may exercise specific personal jurisdiction over Chargeurs, and next turns to the parties' arguments for summary judgment.

### III.  SUMMARY JUDGMENT

#### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

#### B.  Analysis

Chargeurs argues that it is entitled to summary judgment because it did not assume United's and UPDW's alleged CERCLA liabilities. See Def. Br. at 20-39. Plaintiff counters that it is entitled to summary judgment as to successor liability because Chargeurs unambiguously assumed the purported CERCLA liabilities. See Pl. Br. at 12-23, ECF No. 921.1. The Court agrees with Plaintiff.

"CERCLA is a sweeping federal remedial statute, enacted . . . to ensure that everyone who is potentially responsible for hazardous-waste contamination may be forced to contribute to the costs of cleanup." United States v. General Battery Corp., 423 F.3d 294, 297-98 (3d Cir. 2005)

4

(internal quotation marks and citations omitted) (emphasis in original).  Against this backdrop, the Third Circuit has explained that "CERCLA successor liability is a matter of uniform federal law, as derived from 'the general doctrine of successor liability in operation in most states.'"  Id. at 298 (quoting Smith Land & Improvement Corp v. Celotex Corp., 851 F.2d 86, 92 (3d Cir. 1988)).  As such, a successor corporation will not be held liable under CERCLA for the acts of its predecessor unless one of four exceptions are present: "(1) it assumes liability; (2) the transaction amounts to a consolidation or merger; (3) the transaction is fraudulent and intended to provide an escape from liability; or (4) the purchasing corporation is a mere continuation of the selling company."  Id. at 305 (citing Polius v. Clark Equip. Co., 802 F.2d 75, 78 (3d Cir. 1986)).

The only exception at issue here is whether Chargeurs assumed CERCLA liability.  See Def. Br. at 21; Pl. Br. at 12, 14-19.

As previously noted, Chargeurs "assumed the liabilities of UPDW and United not paid or otherwise provided for" and adopted the "plans of liquidation and dissolution for UPDW and United."  Dec. 22, 1982 Chargeurs Minutes at 3-4.  On the same day that the Chargeurs Board adopted these resolutions and plans, UPDW's Board approved an analogous resolution that Chargeurs would "assume the liabilities of United [and UPDW] not paid or otherwise provided for by United [and UPDW]" and a plan of liquidation and dissolution.  See Dec. 22, 1982 UPDW Minutes at 2-3.[5]

Where there is a broad assumption of liability, "it is of no consequence that the specific liability at issue is not enumerated."  See Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 309 (3d Cir. 1985).  The Court concludes that Chargeurs therefore assumed the CERCLA liability of UPDW and United.  See id. at 309-10.  This accords with CERCLA's broad remedial purpose and ensures that United's and UPDW's potential contamination of the Superfund Site remains actionable.  See General Battery Corp., 423 F.3d at 297-98; In re Emoral, Inc., 740 F.3d 875, 881 (3d Cir. 2014) (noting that "the purpose of successor liability is to promote equity and avoid unfairness").

Chargeurs argues that its assumption of liability was not broad enough to encompass CERCLA claims because the UPDW and Chargeurs Board Minutes to not state that Chargeurs would assume "all" liabilities.  See Def. Reply Br. at 31-38, ECF No. 925.  The Court disagrees.

The Chargeurs Board Minutes evince a broad assumption of liabilities, even if they do not use the word "all."  Here, the Boards of Chargeurs and UPDW—which were comprised of the same individuals, namely DeLutio and McPheters—agreed that Chargeurs would assume "the liabilities of UPDW," subject to only one exception: the liabilities "paid or otherwise provided for by UPDW and United."  See Dec. 22, 1982 Chargeurs Minutes at 4; Dec. 22, 1982 UPDW Minutes

---

[5] Richard M. Kart ("Kart"), corporate Secretary, signed the UPDW and Chargeurs Board Minutes. See Dec. 22, 1982 UPDW Minutes at 3; Dec. 22, 1982 Chargeurs Minutes at 5.  Kart, Eugene A. DeLutio ("DeLutio"), and R. Douglas McPheters ("McPheters") attended both Board meetings.  DeLutio and McPheters were "all the directors of [UPDW]," Dec. 22, 1982 UPDW Minutes at 1, and "a majority of the Board of Directors of [Chargeurs]," Dec. 22, 1982 Chargeurs Minutes at 1.  The plan of liquidation and dissolution laid out in the UPDW Minutes does not elaborate upon "the liabilities of United not paid or otherwise provided for."  See Dec. 22, 1982 UPDW Minutes.

at 2-3 (emphasis added).  The plain reading of this term is that Chargeurs unambiguously assumed all UPDW's liabilities, except for those "paid or otherwise provided for by UPDW and United."  At that point, Chargeurs and its predecessors had been involved with UPDW for over a decade.  See supra at 1-2; see also Def. Answer to Interrogatories at 5-6 (explaining corporate histories of UPDW, Chargeurs, and the Foreign Entities, which were intertwined since at least 1972).  Had Chargeurs wanted to exclude additional liabilities, it could have done so explicitly.  Accordingly, because the term is clear and unambiguous, Plaintiff is entitled to summary judgment as to the assumption of liability.  See Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418-19 (3d Cir. 2013) (explaining that summary judgment is appropriate where agreement "is unambiguous—i.e., subject to only one reasonable interpretation") (internal quotation marks and citation omitted); see also United States v. Sterling Centrecorp Inc., 960 F. Supp. 2d 1025, 1036-37 (E.D. Cal. 2013) (noting that "the word 'all' [need not] appear before the word 'liabilities' in order to conclude that all liabilities have been transferred" and concluding that acquisition of a company "subject to its liabilities" was a "broad and unfettered" assumption of all liabilities, including under CERCLA).[6]

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, ECF No. 908, is **DENIED**.  Plaintiff's Cross-Motion for Summary Judgment, ECF No. 921, is **GRANTED** as to Chargeurs' successor liability.

                                      **SO ORDERED.**

                                        */s Madeline Cox Arleo*
                                      **MADELINE COX ARLEO**
                                      **UNITED STATES DISTRICT JUDGE**

---

[6] Chargeurs separately argues that the Board Minutes do not satisfy the statute of frauds because they contemplate a separate, written plan of liquidation and dissolution for UPDW that does not exist.  See Def. Br. at 25-36.  First, the UPDW minutes contain a general plan for liquidation and dissolution, and they are signed by UPDW's and Chargeurs' Corporate Secretary, Kart.  See Dec. 22, 1982 UPDW Minutes at 2-3.  Second, whether a more fulsome, written liquidation plan exists is irrelevant—both Chargeurs' and UPDW's Board Minutes clearly indicate that Chargeurs would assume all UPDW's liabilities, except those "paid or otherwise provided for by" UPDW.  Id.; Dec. 22, 1982 Chargeurs Minutes at 4.  For the reasons explained above, that unambiguous language is sufficient to conclude that successor liability applies to Chargeurs because it expressly assumed all UPDW's liabilities.