

Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

October 12, 2020

<u>Via CM/ECF</u>
Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

Re: *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*,
    Civil Action No. 2:18-cv-11273-MCA-JAD

Dear Special Master Scrivo:

We write in advance of the October 14, 2020 conference to request that the following topics be included on the agenda.

### 1. Deadline for Cross-Claiming Defendants to Identify Response Costs

During the August 12, 2020 conference, the parties discussed with you the SPG defendants' failure to disclose the costs actually incurred by each defendant that has filed counterclaims. This disclosure is required by Fed. R. Civ. P. 26.

OxyChem has not yet received this information, but during a meet and confer teleconference on October 9 the SPG's liaison counsel indicated this information will be disclosed promptly, followed by a rolling production of related documents. OxyChem requests that the Court establish a date certain of November 30 by which all such information must be provided, and all relevant documents must be produced, as this discovery is long overdue.

### 2. Deposition Protocol

The parties have exchanged drafts and made progress on a protocol to govern the scheduling, time limits, and conduct of depositions. Although the parties continue to negotiate a number of the terms, it is clear that the parties disagree about a central issue necessary to schedule and conclude discovery efficiently: reasonable limits on the time and number of depositions.

The presumption in the Federal Rules for any case, including complex environmental and antitrust cases, is that there will be "[n]o more than 10 depositions each for plaintiff, defendants, or third party defendants" without leave of court. Fed. R. Civ. P. 26 (B)(2). This limitation is also per *side*, not per party. *See* Fed. R. Civ. P. 30(a)(2)(A) (leave of court is required where "the

deposition would result in more than 10 depositions being taken under this rule… by the plaintiffs, or by the defendants, or by the third-party defendants."); *see also* Notes of Advisory Committee (providing for the "ten-per-side limit" and explaining this provision was added to Rule 30 in 1993 to "emphasize that counsel have a professional obligation to develop a mutual, cost-effective plan for discovery in the case.").

In an effort to avoid a dispute, OxyChem proposed that each side receive 250 hours of deposition time to use as each side sees fit, with each individual deposition limited to the seven hours provided under Rule 30(d)(1), and Rule 30(b)(6) depositions capped at no more than 10 hours in total. Notably, if every deposition required seven hours, the 250 hour limitation would permit each side to take approximately 35 depositions—for a total of 70 depositions in all. That is an extraordinarily generous allowance and more than any party could reasonably require *if* fact discovery is to be concluded efficiently.

OxyChem believes it can prove its case in this amount of deposition time and Defendants certainly can do so. They have formed a united front against OxyChem by entering into a Joint Defense Agreement. They have also filed an identical counterclaim against a single party, OxyChem, while resisting any and all efforts to set a joinder deadline that might require them to assert cross-claims against each other. Given this 100 vs. 1 dynamic, Defendants cannot credibly argue they need—or are in any way entitled to—*more* time than OxyChem. Nor is there any basis for the more than 700 hours of fact witness depositions Defendants have demanded *plus* potentially hundreds more hours of corporate representative depositions.

To put the point starkly, if the parties did *nothing* but take depositions in this case every day, Defendants' proposal would require the parties to take *at least* eight full months of continuous fact depositions—plus even more time for corporate representatives. This cannot be squared with the Rules' requirement that counsel are obligated to develop a *mutual* and *cost-effective* plan for discovery nor is there any real argument that this staggering investment of time, hours, and money is necessary to prepare this case for trial.

Separately, Defendants' proposal is unworkably complex and ignores both the limitations and the side-based approach of the Federal Rules.

In a typical deposition under the Rules, where both sides want to question a witness, the seven hours of available time would be divided equally between the sides or, in the alternative, disproportionately in favor of the party with the burden of proof: OxyChem. Defendants, in contrast, have proposed a lopsided protocol that would determine deposition time, not by side, but by arbitrary assignment of time to the noticing party (7 hours), liaison counsel (2 hours), plaintiff (2 hours), and non-noticing parties (1 hour each). In total, for a witness of interest to both sides, Defendants contend they should get as many as ten or more hours, while OxyChem gets only *two* hours. But who "notices" a deposition is of no significance under the Rules. And nothing in the Rules would or should permit a "noticing party" *co-Defendant* to thwart and filibuster Oxy's right to discovery by demanding 7 hours with another co-Defendant's witness, leaving OxyChem—the party with the burden of proof—with only two hours to ask its questions. In short, deposition time

limits are not determined by who is the noticing party, but by the sides the parties are on—and the two sides in this case are made clear by the live pleadings at issue.

To be clear, OxyChem is willing to live with the limits of the Federal Rules: 10 depositions per side, 7 hours per deposition. Defendants are free to seek leave to take additional depositions if they wish, but as Magistrate Dickson long ago emphasized, discovery is not a one-way street. If Defendants want more time for fact depositions, Oxy must receive an equal amount of time as Defendants. Moreover, any additional time should be limited strictly by the requirements of reasonableness and cost-efficiency, to ensure that this case—which has already been pending for more than two years, does not continue into the next decade.

OxyChem believes that discussing these central provisions with you at the October 14 conference will help the parties' negotiations move forward efficiently, with any remaining issues to be briefed and decided at the November conference.

### 3. Admissibility Stipulation

OxyChem has repeatedly suggested that the parties stipulate to the admissibility of ancient documents to streamline the proof at trial and avoid wasting time overcoming hearsay objections through document custodian depositions and testimony. The stipulation OxyChem envisioned was not complicated. Federal Rule 803(16) already provides that, "A statement in a document that was prepared before January 1, 1998, and whose authenticity is established," is not hearsay.

The SPG, however, proposed to OxyChem a joint stipulation that was anything but simple and efficient. Far from stipulating what the Federal Rules contemplate, the SPG proposed that the Court create a Rube Goldberg procedural mechanism in which the parties would raise and dispute the ancient document hearsay exception in three or more rounds of litigation. Rather than streamlining the preparation of the case, the SPG's proposal would create collateral, sub-litigation to pre-identify and contest the ancient document status of thousands of documents that—on their face—meet the requirements of Rule 803(16).

The SPG's proposal is wasteful and unnecessary. In an effort to resolve this issue, OxyChem has proposed that the parties stipulate to a *presumption* that documents prepared before January 1, 1998 are ancient documents under the FRE 803(16) hearsay objection. Parties retain the right to contest admissibility, but the contesting party bears the burden of proving the admissibility requirements are not met. Under OxyChem's approach, scores of collateral custodial depositions would be avoided; under the SPG's approach, they would be inevitable. OxyChem's proposal advances the goal of efficiency without denying a party's ability to raise a future, unforeseen objection. If the SPG does not wish to agree to this proposal, it need not do so. But we respectfully submit that the Court should not reward the SPG's recalcitrance with additional deposition time for custodial depositions that the SPG could (and should) avoid through a reasonable stipulation.

Special Master Thomas P. Scrivo, Esq.
October 12, 2020
Page 4

While the parties continue to negotiate the admissibility stipulation, given its relationship to the deposition protocol, OxyChem believes that discussing this issue at the October 14 conference will help clarify the issue for the parties.

### 4. Documents from Defendant Bath Iron Works Corp.

After numerous efforts to resolve an ongoing discovery dispute with SPG defendant Bath Iron Works Corporation (BIW), it appears that your intervention is necessary. OxyChem alleges that BIW is the successor to the liabilities of a manufacturing operation at 160 Passaic Street in Kearny. Environmental contamination from that same operation is the subject of a separate, ongoing litigation (the "DVL Action")[1] in which BIW is also a defendant.

For more than a year, OxyChem has sought production of relevant documents BIW received in discovery in the DVL Action. In response, BIW produced its own production documents from the DVL Action, but has objected and refused to produce documents it received from Congoleum Corporation (a direct defendant in the DVL Action and a third-party defendant BIW has also sued here). BIW does not dispute that the documents are in its possession and are responsive to OxyChem's request, but it continues to insist that it should not bear the burden to review the documents to identify those that are confidential pursuant to a court order.

This claim is nonsense. If the documents are confidential pursuant to a Court Order, they presumably bear legends to that effect. All of this information also appears to be in electronic format, so BIW can readily—if it wishes—exclude from the production any documents marked as confidential. Indeed, BIW's keyword search for "confidential" within the set of documents sought by OxyChem resulted in only about 6,500 hits, a total that could easily be reviewed to separate false hits from documents actually designated confidential and one that demonstrates there is *no* confidentiality impediment to producing the remainder of the documents now. But BIW steadfastly refuses to take these reasonable steps, so the parties are at an impasse. After several attempts to resolve the dispute with BIW,[2] OxyChem propounded requests for production on third-party defendant Congoleum—which, after agreeing to produce the documents being withheld by BIW, promptly filed for bankruptcy.

Both BIW and Congoleum possess these documents. Both are subject to valid requests for production and subpoenas. And both, rather than honor these obligations by producing the documents, have whipsawed OxyChem for more than a year. Since discovery against third-party

---

[1] The DVL Action is captioned *DVL, Inc. and DVL Kearny Holdings, LLC v. Congoleum Corporation*, Civil Action No. 2:17-cv-04261-KM-JBC, in the U.S. District Court for the District of New Jersey.

[2] OxyChem's requests for production were propounded on BIW on July 24, 2019. On August 24, 2019, BIW objected to the production of documents produced by Congoleum in the DVL Action. OxyChem addressed the dispute by letter to BIW on February 27, 2020 and March 3, 2020, then met and conferred with BIW's counsel on March 5, 2020. OxyChem *again* tried to resolve the issue by writing to both BIW and Congoleum on July 10, 2020 and, following Congoleum's bankruptcy, again to BIW on August 19, 2020. BIW has not varied from its position that it would be an undue burden to review the responsive documents to determine which fall within the scope of a protective order.

Special Master Thomas P. Scrivo, Esq.
October 12, 2020
Page 5

defendant Congoleum is now stayed, OxyChem has no source from which to obtain these relevant documents except BIW.  BIW cannot avoid producing these documents because it does not want to do the work to review them.  OxyChem respectfully requests a briefing schedule to move to compel their production by BIW.

      We look forward to addressing these issues with you at the conference on October 14, 2020.

                                          Respectfully submitted,

                                          Kathy D. Patrick

                                          /s/ *John J. McDermott*

                                          John J. McDermott

cc:    All counsel of record

219513123v3