**PretiFlaherty**

Portland, ME

Augusta, ME

Concord, NH

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

Boston, MA

Washington, DC

October 22, 2020

<u>**VIA EMAIL AND ECF**</u>

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

> RE:   **Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.**
>       **Docket No. 2:18-cv-11273-MCA-JAD**

Dear Special Master Scrivo

I write on behalf of the Small Parties Group ("SPG") to follow up on the Special Master's request during the October 14, 2020 status conference for a date to target for completion of ESI productions in this case, to correct the record regarding certain statements made by Occidental Chemical Corporation ("OxyChem") in advance of and during the conference, and to request clarification regarding the rules for preconference communications.

**SPG ESI**

As an initial matter, the SPG parties have conferred on a potential deadline for ESI production and, given the SPG parties' progress to date, expect that productions will be complete or substantially complete by December 31, 2020. As discussed during the conference, some parties may have individual circumstances that warrant some additional time to complete their productions and they can bring those to the Special Master's attention individually. We look forward to discussing an ESI deadline and other ESI issues in a meet and confer with OxyChem before the end of the month.

As to OxyChem's last-second filing hours before the October 14, 2020 Status Conference, protesting that it is "concerned" at the Defendants' "lack of progress" on ESI, several corrections to the record concerning the status of the SPG's ESI productions are necessary. As of the date of the October 14 Status Conference, 4 SPG members had completed ESI productions entirely, many others completed ESI production during paper production earlier in this case, and the vast majority of the rest completed custodian interviews and ESI collections and are in some stage of their final privilege review. As the SPG's ESI update charts show, over a dozen parties estimated they will complete ESI production by the end of October or November. Based on discussions with SPG parties since the status conference, liaison counsel can represent that approximately 30 SPG parties anticipate completing ESI by the end of next month.

Preti Flaherty
Beliveau & Pachios LLP
Attorneys at Law

1717 Pennsylvania Avenue, NW, Suite 1025   |   Washington, D.C. 20006   |   Tel 202.559.8608   |   **www.preti.com**

16178177.2

PRETI FLAHERTY

October 22, 2020
Page 2

        In short, the SPG's ESI discovery is exactly in line with the timeline liaison counsel has discussed with the Special Master and OxyChem since the start of ESI discovery.[1]  OxyChem had no legitimate reason to raise this issue hours before the Conference, especially when it had not even raised these concerns with the parties during their October 9 meet-and-confer the Friday before the Status Conference.  If OxyChem sincerely wanted more details about the scope and status of the SPG members' ESI productions, all it needed to do was ask.

        Instead, however, OxyChem resorted to making a number of misleading assertions in its submittal, knowing full well that liaison counsel would not have time to verify those assertions in advance of the Conference.  For example, OxyChem claims that only 14 SPG parties have made productions to date and have collectively produced only 10,000 ESI documents; however, as shown in the examples below, OxyChem can only arrive at these low numbers by ignoring parties that made (and completed) ESI production during paper discovery and by skipping over some parties that have made ESI productions during ESI discovery.  OxyChem has also insinuated, without support, that SPG parties with little or no ESI are deceiving the Court and the other parties.  This skepticism by OxyChem has been aired many times in this litigation, and SPG parties with little to no ESI in this case have already spent money and time providing OxyChem additional explanations on their ESI status.  OxyChem has been well aware of these representations since at least January and yet, as far as liaison counsel is aware, has not further conferred with any of these parties to better understand their lack of ESI or provide any information that calls these positions into question.

        Finally, OxyChem's October 14 letter wrongly claims (in bold and italics) that 38 SPG parties have "**Provided *no* information**," or "Def. did not contact OxyChem" for a meet and confer.  A cursory review of the parties included in OxyChem's count of 38 reveals that many of those SPG parties in fact reached out to OxyChem, invited OxyChem to participate in meet-and-confers (which were never accepted), or have otherwise agreed with OxyChem that there was no need for a meet-and-confer because the SPG party was not deviating from the SPG search terms list or had otherwise verified it had no ESI.

        To aid the Special Master in evaluating OxyChem's assertions regarding the progress of ESI, the SPG provides the following examples of individual party ESI issues.  These examples show that SPG parties have proactively engaged in the ESI process and have made significant progress in compiling and producing ESI during a summer when innumerable roadblocks have complicated the ability to locate records.

---

[1] *See* Letter Jeffrey D. Talbert to Special Master Thomas P. Scrivo (July 8, 2020) [ECF No. 1075] ("The SPG estimates that it will take several months to complete a pre-production review of these documents."); Letter Jeffrey D. Talbert to Special Master Thomas P. Scrivo (July 13, 2020) [ECF No. 1079] ("[T]he ESI discovery process is moving forward, but it will be several months before it is complete."); July 15, 2020 Status Conf. Tr., at 18:5-11 (Ex. 1) ("[Talbert]: I anticipate that parties, to get everything finished, there will be parties that will be able to produce their ESI, you know, in the near term, but in terms of setting a deadline, a produce-by deadline, I think it would be prudent to set something really six to eight months from now."); *cf.* July 15, 2020 Status Conf. Tr., at 18:25-19:3 ("[McDermott]: My understanding about where the parties fall, the various defendants in the Small Parties Group in particular, is consistent with how Jeff described it.").

PRETI FLAHERTY

October 22, 2020
Page 3

### Stanley Black & Decker ("Stanley")

OxyChem's ESI chart lists zero ESI production for Stanley. However, the entry for Stanley on the SPG ESI Update Chart indicates that by August, Stanley had identified ESI from a consultant and certain employees and had "produced the consultant's ESI and . . . will be producing soon approximately 1220 documents from the client custodian." Then the October SPG ESI Update Chart indicated:

> [Stanley]'s ESI production is substantially complete. Stanley was able to identify all ESI held by a limited number of company custodians and gather ESI from the company's site remediation consultant. Stanley produced the consultant's ESI and . . . [o]n September 15, 2020, Stanley produced documents from the company custodian . . . . Stanley explained its search process and collection and production of ESI to OxyChem in a letter dated March 10, 2020.

### Leemilt's Petroluem ("Leemilt's")

OxyChem's ESI chart lists zero ESI production for Leemilt's and claims that Leemilt's did not meet and confer with OxyChem or disclose custodians or search terms. However, the SPG's ESI Update Chart indicates: "Leemilt's Petroleum, Inc., has already produced ESI related to site investigations and remedial action at the site in the context of paper discovery and has confirmed that it has no ESI for historic operations."

### The Sherwin-Williams Company ("S-W")

OxyChem's ESI chart lists zero ESI production for S-W and states "Def. did not contact OxyChem." However, the SPG ESI Update Chart indicates that S-W is conducting an ongoing review of additional email ESI but "[a]ll remaining relevant ESI has been produced to OCC." And by follow-up after the status conference, and upon seeing Oxy's day-of ESI chart stating S-W had made zero ESI productions, S-W informed liaison counsel it had produced 48,048 pages of ESI, had worked with a Gibbs & Bruns attorney and paralegal on the format of the production—including re-producing the ESI in Logikull format—, and that OxyChem had accepted those submissions.

### E.I. du Pont de Nemours and Company ("DuPont")

OxyChem's ESI chart lists zero ESI production for DuPont and states "Def. did not contact OxyChem." However, DuPont sent OxyChem a letter on January 27, 2020 (Ex. 2) explaining its lack of ESI, the corresponding irrelevance of conferring on search terms, but nonetheless offering to meet and confer:

> I write in response to your correspondence of January 9, 2020 regarding ESI, and also in follow up to Special Master Scrivo's request that the SPG Parties advise you of their positions regarding the common search terms and OCC's proposed January 9, 2020 ESI questionnaire. . . . Please recall that,

16178177.2

PRETI FLAHERTY

October 22, 2020
Page 4

as indicated in my October 29, 2019 letter, DuPont's nexus is attenuated. It did not own or operate the Bayonne Barrel and Drum ("BBD") site, which is the sole basis of the claims against DuPont. Rather, the former operator of the BBD site purchased or accepted empty drums from DuPont for reconditioning or reclamation from the mid to late 1960s through approximately 1981. . . . Thus, no responsive ESI exists related to the Site operations. Similarly, DuPont did not remediate the BBD Site. . . . As noted above, while we are certainly willing to meet and confer regarding e-discovery, there seems to be little point. . . . We trust this addresses OCC's concerns in full. If it does not, then we can certainly arrange a meet and confer session at a mutually convenient time and place.

**Arkema Inc. for its former Wallace and Tiernan division ("Arkema")**

OxyChem's ESI chart lists zero ESI production for Arkema and states "Def. did not contact OxyChem." However, Arkema (for its former Wallace and Tiernan division) also sent OxyChem a letter on January 27, 2020 (Ex. 3) explaining Wallace and Tiernan had sold the property in 1989, had already produced ESI from the remediation during paper discovery, and concluding that a meet and confer on search terms would be unnecessary, but nonetheless offering to meet and confer:

Wallace & Tiernan Inc. operated the Facility from approximately 1921 until it was merged into Pennwalt Corporation (now known as Arkema Inc.) in 1969, and the Wallace & Tiernan Division of Pennwalt Corporation operated the Facility from 1969 until the sale by Pennwalt Corporation of the Wallace & Tiernan Division in or about May of 1989. Arkema remediated the Facility from the time of the 1989 sale through 2002, when [NJDEP] issued a No Further Action letter ("NFA"). During Arkema's 1921-1989 period of ownership/operation, no responsive ESI would have been created that was not already produced as part of prior paper productions. Any potentially responsive ESI that was created post 1989 sale relating to the remediation activities has . . . already been produced as part of the paper production. . . . We have supplied over 50,000 pages of discovery concerning historical operations, remedial activities and sampling information, most recently in December 2019, including reports and appendices, lab data, correspondence to/from NJDEP, and the 2019 Bi-annual certification for Groundwater, and the 2019 Annual Monitoring Report. . . . As noted above, while we are certainly willing to meet and confer regarding e-discovery, there seems to be little point. . . . If you believe a further meet and confer on this issue is warranted, please let me know.

PRETI FLAHERTY

October 22, 2020
Page 5

### Atlantic Richfield Company

OxyChem's ESI chart lists zero ESI production for Atlantic Richfield and states "Def. did not contact OxyChem." However, as with DuPont and Arkema, Atlantic Richfield sent OxyChem a letter on January 27, 2020 (Ex. 4) that explained it has not been involved with the site since 1951 and has little or no ESI, but nonetheless offered to meet and confer:

> Atlantic Richfield's discovery responses make clear that its involvement with the site located at 86 Doremus Ave., Newark, commenced in the 1930s and concluded by 1951. . . . Atlantic Richfield has not been involved with the site since 1951. . . . None of the reasons put forth in OxyChem's letter explaining why it is "skeptical" of the assertion that 65 Defendants have little or no ESI apply to Atlantic Richfield: Atlantic Richfield has not had recent remediation activities on its site; it did not receive a General Notice Letter; . . . and it did not participate in the Spill Act Litigation. We have revisited this issue with our client and stand by our request to Mr. Talbert that Atlantic Richfield be identified as a party with little to no ESI. . . . If you would like to meet and confer regarding this issue, please let me know.

As is clear from the SPG's ESI Update Charts and related correspondence, and contrary to OxyChem's professed concerns, a significant majority of the SPG parties have completed ESI collection, are completing privilege and responsiveness reviews, and have already represented they will complete ESI production by the end of November. Liaison Counsel expects that all remaining SPG ESI productions will be completed by the end of the year, unless individual parties run into specific issues not anticipated at present. If the Special Master believes additional details regarding the parties' production efforts to date would be helpful, the SPG would be happy to provide any such information.

### OxyChem's ESI

The SPG parties progress and transparency on ESI is in contrast with OxyChem's three ESI productions in August and October 2020,[2] when OxyChem represented that its ESI had been collected in September 2019, long before the COVID-19 related roadblocks arose that the SPG members have been diligently dealing with all summer and into this fall. In an effort to understand

---

[2] Since the time period when OxyChem says it began its ESI productions, OxyChem has produced roughly 10,000 ESI documents, as explained in the SPG's submission of October 12. It is unclear why OxyChem takes umbrage with this description because OxyChem itself asserts that it only started ESI discovery in August 2020 and since that time it has produced: two volumes of ESI on the day of the August Status Conference labeled OCC-CER-E001 and OCC-CER-E002 containing 6,601 documents and one additional ESI volume on October 8, 2020 labeled OCC-CER-E003 containing 4,376 documents. The SPG does not dispute that OxyChem has re-produced many more documents from non-parties in this suit, but OxyChem is being less than straight forward when it counts all of this other ESI as its own even though it did not come from its own custodians and instead was produced by non-parties in response to the SPG's document subpoenas or the site transition ESI turned over from OxyChem's former indemnitors.

16178177.2

PRETI FLAHERTY

October 22, 2020
Page 6

the lack of ESI production from OxyChem, the SPG has raised for months that OxyChem has still made zero productions from 18 of its 26 ESI custodians. Far from disputing this, OxyChem acknowledged in a meet and confer on October 9 that it still has not yet produced some volume of email ESI collected by search terms and those productions are forthcoming. So, while OxyChem has already produced at least some emails with its ESI productions, it appears that a significant volume of email ESI still has not been produced even though they were collected by September 2019,[3] had been reviewed for privilege and relevance by at least January 2020,[4] and OxyChem had stated in July 2020 they would soon be produced.[5]

OxyChem is still withholding email ESI production, now 5 months after ESI discovery started, when their previous correspondence indicated that "[w]hen discovery of ESI begins, OxyChem will produce all non-privileged, responsive documents."[6] Why OxyChem has not made these productions is unclear. During the August Status Conference, OxyChem stated it was "processing a number of other volumes right now," and then represented it would make rolling productions "probably every week or so for the next few weeks," with a targeted end date as the end of September.[7] OxyChem's August agenda letter clarifies that "OxyChem is finalizing and its ESI vendor is processing additional ESI production volumes which will be produced in rolling intervals until completed."[8] What actually happened is OxyChem made zero ESI productions following the August Status Conference until October 8, 2020, when it produced a volume from a single custodian, which contained documents from between June 2017 and November 2018. That custodian had been identified as an ESI custodian in September 2019, when it was also represented that this custodian had already been interviewed, his documents had already been collected, and were then being reviewed.

To be clear, the SPG parties are not yet requesting the Special Master's assistance with respect to OxyChem's ESI production efforts. But the SPG did want to underscore that SPG parties are continuing to make productions exactly in line with the timelines liaison counsel previously expressed to the Special Master while OxyChem is not making productions consistent with its representations. In almost every instance, OxyChem's actions in moving discovery along fall well short of its rhetoric during the status conferences. Like the SPG parties, OxyChem should complete its production by the end of the year.

---

[3] Letter Kathy D. Patrick to Liaison Counsel, at 3 (Sept. 26, 2019) (Ex. 5) (indicating that all ESI from employee inboxes and sent mail folder had already been collected and a review by counsel for responsiveness and privilege was in process).
[4] Letter Kathy D. Patrick to Jeffrey D. Talbert, at 3-4 (Jan. 9, 2020) (Ex. 6) (indicating that all ESI from employee inboxes and sent mail folder had already been collected and "were reviewed by counsel for responsiveness and privilege").
[5] Letter Kathy D. Patrick to Special Master Thomas P. Scrivo, at 1-2 (July 8, 2020) [ECF No. 1076] ("OxyChem is prepared to begin producing the responsive and non-privileged ESI identified, collected, and reviewed using the methodology described in OxyChem's September 26, 2019 letter to the defendants . . . .").
[6] Sept. 26, 2019 Patrick Letter at 3.
[7] Aug. 12, 2020 Status Conf. Tr., at 18:9-15 (Ex. 7).
[8] Letter Kathy D. Patrick to Special Master Thomas P. Scrivo, at 2 (Aug. 11, 2020) [ECF No. 1094].

16178177.2

PRETI FLAHERTY

October 22, 2020
Page 7

**Admissibility Stipulation**

Finally, the SPG wants to briefly respond to statements made by OxyChem in its October 12 letter and during the recent conference about the SPG's proposed admissibility stipulation.  As discussed last Wednesday, the SPG provided a proposed stipulation to OxyChem on September 22, 2020 in which the parties would exchange lists of ancient documents and prior testimony that they might use in the litigation.  After receiving such a list, the opposing party would have 45 days to raise hearsay or authenticity objections to the listed documents or transcripts or such objections would be waived (other objections such as to relevance or internal hearsay would be preserved).

The parties discussed the SPG's proposal during their October 9 meet-and-confer.  The next business day, in its October 12 letter to the Special Master, OxyChem claimed that it had "repeatedly suggested" an ancient document stipulation to the SPG and that the SPG had been "recalcitrant[t]" in addressing the issue.  But once again the record does not support OxyChem's rhetoric.  While OxyChem's counsel did explain to Magistrate Judge Dickson in August 2019 that it intended to propose an ancient document stipulation process to the SPG,[9] OxyChem did not make even a single proposal to the SPG in the more than 13 months since that time.  It was the SPG—not OxyChem—that took the step of proposing a stipulation process in advance of this past conference.[10]

And while OxyChem now waxes poetically that the SPG's proposal is a "wasteful and unnecessary" "Rube Goldberg" procedure, this is what OxyChem previously said to the Court about the type of stipulation process it was interested in:

> [A] simple procedure under which, well in advance of fact discovery, *all parties submit lists of documents they contend should be admitted as ancient documents. Parties would have thirty days thereafter to object to the admission* of such documents and to state the basis for any objection. … [D]ocuments not objected to will be deemed authentic and admissible as ancient documents.

Aug. 26 Letter from K. Patrick and J. McDermott, at 3-4 [ECF No. 746] (emphasis added).  Given that the SPG's proposed process is virtually identical to the process previously suggested by OxyChem for ancient documents, OxyChem's complaint about the potential for "collateral, sub-litigation" is difficult to take seriously.

In addition, as explained in the SPG's October 12 letter, the SPG's proposed stipulation provided a similar process for the early resolution of evidentiary issues relating to prior testimony. The idea was not, as OxyChem claims, to create "three or more rounds of litigation" relating to these issues; the idea was to require the parties to exchange lists of specific documents and

---

[9] Aug. 29, 2019 Status Conf. Tr., at 21-22 [ECF No. 752].

[10] Because the SPG's proposal also addresses prior testimony, the SPG had wanted to receive a complete production of Spill Act case deposition transcripts before making its proposal to OxyChem.  Given OxyChem's prolonged delays in producing those transcripts, however, the SPG provided its proposal at a time when OxyChem had continued to withhold more than 50 of those transcripts.

16178177.2

PRETI FLAHERTY

October 22, 2020
Page 8

transcripts to focus their efforts on a limited number of documents and transcripts at a time so that the process itself did not become overly burdensome. The SPG also told OxyChem it was open to alternative approaches to such a process. Rather than constructively propose such an alternative, however, in its October 14 letter, OxyChem chose to cast stones at the SPG for even trying to propose a process, something OxyChem itself had long ago promised to do—but never did. And, then, earlier this week, OxyChem proposed a revised stipulation for prior testimony that also contemplates an exchange of lists similar to that which the SPG proposed.

In the end, the parties may or may not be able to agree on a stipulation process relating to ancient documents and prior testimony. If that is the case, the SPG will present its proposal to the Special Master before the November 6 deadline set in the recent status conference. Ancient documents and prior testimony are going to be an important part of the proof in this case, and all of the parties will benefit from resolving evidentiary issues relating to their use well in advance of trial.

**Request For Updated Procedural Rules For Status Conferences**

During status conferences, OxyChem's counsel frequently talks about discovery needing to be a two-way street. The SPG completely agrees. But so too do the parties need to play by the same set of procedural rules when it comes to the monthly conferences with the Special Master. In August, OxyChem waited until after the SPG submitted its agenda letter and submitted its own letter on August 11, a day after the deadline and including extensive reply argument. This time, OxyChem waited until the day of the conference to submit a supplemental letter, knowing full well that liaison counsel would not be able to address it with SPG members in advance of the conference. As the SPG previously has noted, OxyChem has long appeared to time its status conference filings, communications with liaison counsel, and production of documents strategically so that it has a one-sided opportunity to respond to the SPG's positions while leaving its own unsubstantiated assertions unchecked in advance of the conference.[11]

In light of OxyChem's failure to abide by the rules that already exist, the SPG respectfully requests that the Special Master establish more firm ground rules on the timing of agenda letters and any permissible replies to agenda letters. Specifically, the SPG requests that the Special Master require all agenda letters to be contemporaneously submitted by the parties by noon at least two days before the status conference and that no responsive filings be permitted. The point of the agenda letters should be to notify the Special Master of issues to be discussed or other developments in discovery that may require your attention in the near future, not to devolve into a mini-briefing on the merits of the issues of the day where only one side has an opportunity to respond.

---

[11] *See* SPG Letter to Special Master Thomas P. Scrivo, at 4-5 (Jan. 13, 2020) [ECF No. 920] ("It is apparent from OxyChem's letter, however, that it is not willing to reasonably negotiate regarding categorical rules about the scope of ESI. Moreover, OxyChem's practice of ignoring the SPG's correspondence for weeks and then replying on the eve of a meet-and-confer or status conference with new requests is significantly limiting liaison counsel's ability to perform its function.").

16178177.2

PRETI FLAHERTY

October 22, 2020
Page 9

Thank you for your time and consideration of these issues.


Respectfully Submitted,



*Common Counsel for the Small Parties Group*

/s/ Jeffrey D. Talbert
**PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP**
One City Center
Portland, ME 04101
Telephone: 207.791.3239
Jeffrey D. Talbert, Esq. (admitted *pro hac vice*)

16178177.2