**PretiFlaherty**

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

November 12, 2020

**VIA E-MAIL AND ECF**

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009

tscrivo@oslaw.com

      RE:   *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.*
              Docket No. 2:18-cv-11273-MCA-JAD

Dear Special Master Scrivo:

    The Small Parties Group ("SPG") respectfully requests that the Special Master order Occidental Chemical Corporation, Inc. ("OxyChem") to collect and produce custodian Frank Parigi's documents. Mr. Parigi is listed on OxyChem's Initial Disclosures, verified its interrogatory responses, and, in the Spill Act case, served as OxyChem's corporate representative for four days of Rule 30(b)(6) testimony. Although the SPG specifically requested that OxyChem collect and produce Mr. Parigi's documents back in July 2020, OxyChem has refused to do so.

    OxyChem should collect and produce these documents for at least two reasons: (1) it is fundamentally unfair for OxyChem to identify Mr. Parigi in its Initial Disclosures as an individual upon whom it intends to rely but simultaneously withhold his documents; and (2) the Joint Protocol provision on which OxyChem relies was never intended to prevent the collection of documents from a percipient witness like Mr. Parigi, a company executive (Vice President) who also happens to hold the title of General Counsel.

    **I.**    **The Witness – Frank Parigi**

    For more than a decade, Mr. Parigi has worked at Glenn Springs Holdings, Inc. ("GSH"), an Occidental Petroleum subsidiary and Occidental Petroleum's in-house environmental remediation company. GSH oversees the environmental remediation for Occidental Petroleum's various affiliates, including OxyChem. Mr. Parigi holds two positions at GSH: he is Vice President, and he is General Counsel. Mr. Parigi's Vice President responsibilities appear to extend beyond any legal work that he might perform as General Counsel. According to Alan Mack, former Associate General Counsel at OxyChem, Mr. Parigi assumed the responsibilities of Jo Ellen Drisko, a former GSH President, upon his hire. Dep. Tr. of Alan Mack (March 26, 2015) ("Mack Dep.") (excerpts attached as **Exhibit A**) at 381:14-20. Ms. Drisko described her "job [as] certainly

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
November 12, 2020
Page 2

the highest one in the company for environmental remediation." Dep. Tr. of Jo Ellen Drisko (July 22, 2015) ("Drisko Dep.") (excerpts attached as **Exhibit B**) at 37:10-11. *See* Mack Dep. at 353:11-20 (noting that Ms. Drisko was responsible for the remediation of all the "historical Occidental-Hooker"[1] sites, a responsibility that included "negotiating with government agencies"). Thus, Mr. Parigi's responsibilities include the highest levels of environmental remediation work. Further, Mr. Parigi was involved in at least some tenders related to Maxus' indemnity to OxyChem during his tenure at GSH. *See* Dep. Tr. of Frank Parigi (August 11, 2016) (attached as **Exhibit C**) at 20:4-12. Finally, Mr. Parigi served as OxyChem's Rule 30(b)(6) corporate representative during the Spill Act litigation and has testified before the New Jersey State Legislature about contamination of the Passaic River.

## II. Procedural History

On December 19, 2018, OxyChem submitted its Initial Disclosures. *See* Occidental Chemical Corporation's Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) ("Initial Disclosures") (attached as **Exhibit D**). In its Initial Disclosures, OxyChem listed individuals "likely to have discoverable information that OxyChem may use to support its claims and defenses in this action," as well as the "subject matter" of each individual's discoverable information. Initial Disclosures at 2. OxyChem identified Mr. Parigi as having discoverable information that it may rely upon concerning OxyChem's "Legal Department." Initial Disclosures at 3. OxyChem also dropped a footnote that muddled its "Legal Department" category. *See* Initial Disclosures at 3 n.2. The footnote stated that "*much* of the knowledge possessed by OxyChem's and Glenn Springs Holdings, Inc.'s in-house and external counsel is privileged from discovery under the attorney-client privilege and[/]or immune from discovery under the work product doctrine." *Id.* (emphasis added). This footnote makes clear that at least some of the knowledge possessed by GSH's attorneys is not privileged, but the extent to which that includes Mr. Parigi's knowledge cannot be discerned from the footnote.

On July 21, 2020, the SPG asked OxyChem to produce documents from the eighteen custodians that OxyChem had identified in its September 26, 2019 letter whose documents OxyChem still had not produced. July 21, 2020 SPG Letter to OxyChem (attached as **Exhibit E**) at 2. The SPG noted that OxyChem had listed two custodians, including Mr. Parigi, on its initial disclosures, yet it had not produced documents from those custodians. *Id.* at 2. On August 10, OxyChem responded that it does not have to "search, produce, or include on its privilege logs any responsive documents in Mr. Parigi's custodial file" because a provision in the Joint Protocol for Production of Documents and Electronically-Stored Information (Doc. No. 544) ("Joint Protocol") states that the parties do not have to search, produce, or include in their privilege logs in-house counsel's custodial files. August 10, 2020 OxyChem Letter to SPG (attached as **Exhibit F**) at 3.

On August 17, the SPG responded to OxyChem, asserting that excluding Mr. Parigi's custodial files was improper because: (i) Mr. Parigi is a company executive who has been involved

---

[1] Hooker Chemical operated in the 1950s through 1980s before renaming itself Occidental Petroleum. OxyChem is a subsidiary of Occidental Petroleum.

with Lower Passaic River environmental issues; and (ii) OxyChem identified Mr. Parigi on its Initial Disclosures as a witness with discoverable information upon which OxyChem may rely. August 17, 2020 SPG Letter to OxyChem (attached as **Exhibit G**) at 3. After an additional follow-up from the SPG, *see* September 4, 2020 SPG Letter to OxyChem (attached as **Exhibit H**), OxyChem finally responded to the SPG on September 11, stating only that it would discuss "parameters for OxyChem and the defendants to search the custodian files of counsel in certain circumstances." September 11, 2020 OxyChem Letter to SPG (attached as **Exhibit I**) at 6. In response, the SPG wrote to OxyChem asking whether the parties were at an impasse about the issue. September 24, 2020 SPG Letter to OxyChem (attached as **Exhibit J**) at 2-3. During the parties' subsequent meet and confer on October 9, OxyChem stood by its position that it would not collect any documents from Mr. Parigi.

### III. Argument

OxyChem's categorical withholding of the files of a witness listed on its Initial Disclosures is fundamentally unfair and not excused by the Joint Protocol. Since serving its Initial Disclosures in December 2018, and despite numerous back-and-forth correspondence, OxyChem has refused to produce Mr. Parigi's documents, relying only on a provision from the Joint Protocol for Production of Documents and Electronically-Stored Information to justify its refusal: "No party is required to search, produce, or include in its privilege logs . . . the custodial files of in-house counsel advising in this litigation or with respect to the Diamond Alkali Superfund Site (or their associated attorneys and support staff, including paralegal and secretarial support)." Joint Protocol at 11. As explained further below, OxyChem's reliance on this provision is problematic for two reasons: (i) it would be fundamentally unfair for OxyChem both to rely on information in Mr. Parigi's possession (and potentially call him as a trial witness) while refusing to produce the documents that could be necessary to effectively examine his testimony at trial; and (ii) the Joint Protocol does not contemplate shielding relevant documents of a company executive simply because he or she also happens to hold an attorney's license.

#### A. Fundamental Unfairness

It would be fundamentally unfair for OxyChem to identify Mr. Parigi on its Initial Disclosures as an individual with discoverable information upon which it may rely but refuse to collect his documents. Rule 26 requires OxyChem to release the names of those individuals it may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i). OxyChem made a strategic decision to identify Mr. Parigi on its Initial Disclosures, signaling that it may use him to support its claims or defenses. Despite identifying Mr. Parigi as an individual upon whom it may rely, OxyChem refuses even to collect Mr. Parigi's custodial file. So OxyChem has situated itself to use Mr. Parigi to testify at trial with no obligation to even produce the relevant, non-privileged documents in his possession, custody, or control.[2]

---

[2] To the extent OxyChem is shielding Mr. Parigi's documents on the basis of privilege, such privilege will not apply if OxyChem relies on the documents it is shielding. The "in issue" doctrine establishes an implied

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
November 12, 2020
Page 4

OxyChem's history of using Mr. Parigi as the company's mouthpiece on environmental remediation issues further demonstrates the fundamental unfairness of OxyChem's actions. For example, out of all its employees, OxyChem designated Mr. Parigi to be its Rule 30(b)(6) witness in the state court Spill Act litigation involving contamination in the Passaic River, during which he testified for four days describing nuances of OxyChem's inner workings, its corporate structure, and its environmental remediation. OxyChem further presented Mr. Parigi as a company representative to testify in front of the New Jersey State Legislature about issues relating to the contamination and cleanup of the Passaic. *See* Committee Meeting of Senate Environment and Energy Committee, Assembly Environment and Solid Waste Committee (attached as **Exhibit K**) at 30. And in this case, OxyChem relied on Mr. Parigi to verify its interrogatory answers, knowing full well that by doing so it made it more likely that Mr. Parigi would need to be deposed and his knowledge and investigation probed. *See* July 21, 2020 Interrogatory Responses (attached as **Exhibit L**) at 44. To allow OxyChem to disclose Mr. Parigi as a potential trial witness while withholding his documents is fundamentally unfair.

### B. The Joint Protocol's Application to an Executive

The Joint Protocol generally protects the custodial files of in-house counsel from collection and production. It does not contemplate this protection extending to individuals such as Mr. Parigi, a GSH Vice President who stepped into the former President's role, who carry out business functions in addition to their legal roles. Nor would caselaw support an interpretation of the provision as applying to attorneys acting in executive roles. *See, e.g., JNL Mgmt. LLC v. Hackensack Univ. Med. Ctr.,* No. CIV 18-5221, 2019 WL 2315390, at *7 (D.N.J. May 31, 2019) (citing *Georgia-Pac Corp. v. GAF Roofing Mfg. Corp.*, No. CIV 93-5125, 1996 WL 29392, at *4 (S.D.N.Y. 2001)) (concluding that attorney-client privilege does not apply when an attorney "act[s] in a capacity as a business negotiator and business advisor rather than a legal advisor"); *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98-99 (D.N.J. 1990) (privilege did not protect communications with in-house counsel that related to business matters rather than legal matters).

---

waiver of attorney client-privilege when a party relies on a withheld, privileged document to prove a claim or defense it has asserted. *E.g.*, *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994); *Astrazeneca LP v. Breath Ltd.*, No. CIV 08-1512, 2010 WL 11428457, at *5 (D.N.J. Aug. 26, 2010); *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 370 (D.N.J. 1992). Thus, if OxyChem relies on information or documents in Mr. Parigi's possession, even those documents that the attorney-client privilege protects, such reliance would waive that privilege. Further, Mr. Parigi's attorney license does not in and of itself privilege his custodial documents. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98-99 (D.N.J. 1990) (privilege did not protect the communications with in-house counsel that related to business matters rather than legal matters); *Legends Mgmt. Co., LLC v. Affiliated Ins. Co.*, No. CIV 16-01608, 2017 WL 3605316, at *2 (D.N.J. Aug. 22, 2017), *opinion amended and supplemented*, No. CIV 16-01608, 2017 WL 4227930 (D.N.J. Sept. 22, 2017). *See also* Initial Disclosures at 3 n.2 (noting that "*much*," but not all "of the knowledge possessed by OxyChem's and Glenn Springs Holdings, Inc.'s in-house and external counsel is privileged from discovery under the attorney-client privilege and[/]or immune from discovery under the work product doctrine.").

16252648.2

P<small>RETI</small> F<small>LAHERTY</small>

Special Master Thomas P. Scrivo, Esq.
November 12, 2020
Page 5

Here, the record shows that Mr. Parigi often acted as an executive, and not as an attorney. Mr. Mack's and Ms. Drisko's depositions indicate that, not only does Mr. Parigi's role extend beyond counsel for this case, his role encompasses the "highest" levels of responsibility for GSH's core business purpose, environmental remediation. That Mr. Parigi assumed at least some of these responsibilities from Ms. Drisko, who is an accountant and not an attorney, confirms these responsibilities cannot be categorically considered the work of in-house counsel. *See* Drisko Dep. at 12:12-23 (confirming that she did not receive any other education besides a bachelor's degree in accounting and a master's degree in business administration).

Further, there is ample evidence in the discovery record showing that Mr. Parigi is entangled in environmental remediation work. There are multiple emails cataloging Mr. Parigi's attendance at Academic and Technical team meetings related to the Passaic River Focused Feasibility Study. *E.g.* Passaic River FFS Review Project – Technical Team Meeting (undated) (attached as **Exhibit M**) at 1. He received quarterly environmental remediation site reports. Email from Debbie Lorenzo to Frank Parigi, *et al.* (dated July 18, 2005) (attached as **Exhibit N**) at 1. Several removal-action invoices from the Environmental Protection Agency to Mr. Parigi encourage his involvement in the environmental process: "EPA is prepared to discuss its plans for the oversight of ongoing work at the Site, and to provide you with the opportunity to suggest ways to effectively streamline the work and its oversight." *E.g.* Letter from Michael Sivak to Frank Parigi (dated July 26, 2018) (attached as **Exhibit O**) at 4. He has met with the EPA to discuss the Passaic River. *E.g.* Email from Sarah Flanagan to Ben Lippard (dated April 11, 2016) (attached as **Exhibit P**) (listing Mr. Parigi as an attendee at a meeting at EPA Region 2's headquarters). He, alongside Mike Anderson, President of Glenn Springs Holdings, acted as a Company Representative for OxyChem during the Tierra/Maxus transition. *E.g.* Draft Work Order No. 5 – Critical Documentation Service (dated November 2016) (attached as **Exhibit Q**). All this information shows that Mr. Parigi consistently acted in an executive role, and thus should not be shielded by a provision meant to exclude an in-house counsel's documents from collection. Thus, Mr. Parigi's ESI should be subject to collection in this case.

### IV.   Conclusion

OxyChem seeks to preserve the ability to call as a trial witness a company executive who it acknowledges has information relevant to this case while also withholding all his documents from collection. It refuses to produce his documents, even though Mr. Parigi wears both legal and non-legal hats for the company, served as its 30(b)(6) corporative representative in a related matter, and testified before New Jersey legislators regarding Passaic River contamination. OxyChem's attempt to shield Mr. Parigi's documents from discovery is fundamentally unfair and could prejudice the SPG's ability to effectively examine Mr. Parigi or other company witnesses at trial.

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
November 12, 2020
Page 6

Thus, the SPG respectfully requests that the Special Master order OxyChem to subject Mr. Parigi's documents to collection and production.[3]

                                                   Respectfully Submitted,

                                                   Jeffrey D. Talbert
                                                   *Common Counsel for the Small Parties Group*

JDT:llbw
Attachments – Exhibits A-Q

---

[3] In the alternative, the SPG asks that the Special Master order OxyChem to remove Mr. Parigi from its Initial Disclosures, so it cannot preserve the possibility of using Mr. Parigi as a trial witness while withholding his materials from the SPG for as long as possible.

16252648.2