**PretiFlaherty**

November 16, 2020

**VIA EMAIL AND ECF**

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

> Re:   ***Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.***
>         **Docket No. 2:18-cv-11273-MCA-JAD**

Dear Special Master Scrivo:

I write on behalf of the Small Parties Group ("SPG") regarding your Interim Order of November 4, 2020 (Dkt No. 1124) ("Interim Order"). Thank you for the Interim Order and for deciding to undertake an *in camera* review of a sampling of documents from OxyChem's privilege logs. The SPG seeks clarification, however, regarding the portion of the Interim Order that directed OxyChem to filter the H-1 and H-4 privilege logs to remove entries for documents identified as being "sent to, received by, or drafted by any Outside Counsel and Consultants" and provide updated logs to you and SPG counsel. Specifically, the SPG seeks clarification regarding whether the Special Master has made a determination that any entries that identify Outside Counsel or Consultants (as those terms are defined in the Interim Order) are categorically privileged or otherwise protected. Relatedly, the SPG also submits additional information for the Special Master's consideration in the form of documents produced by OxyChem after the SPG filed its reply brief.

It is axiomatic that documents are not privileged or subject to work-product protection merely because they are prepared by or for an attorney or consultant. *Hoffman-La Roche, Inc. v. Roxane Laboratories, Inc.*, Civil Action No. 09-6335 (WJM), 2011 WL 1792791, at *8 (D.N.J. May 11, 2011) ("Few abuses of privilege claims are more common than the attempt to invest with privilege documents which, standing alone, are not privileged merely by virtue of the fact that they have been transmitted to an attorney"); *In re Human Tissue Products Liability Litigation*, 255 F.R.D. 151, 164 (D.N.J. 2008) ("merely copying a lawyer on an e-mail does not, by itself, make the e-mail privileged"); Fed. R. Civ. P. 26(b)(3)(A) (limiting work-product protection to materials "prepared in anticipation of litigation or for trial by or for another party or its representative"). For example, attorney-client communications regarding non-legal business advice, or that are not made in confidence, are not privileged. *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007).

The SPG has challenged OxyChem's privilege logs not on the grounds that they fail to identify attorneys or representatives but on the grounds that they fail to establish that documents were prepared by or for *OxyChem's* attorneys or representatives or otherwise fail to satisfy the elements of privilege or work-product protection. Because establishing privilege or protection is not as simple as showing who sent and received a document, the Federal Rules "require a detailed and specific showing" that describes the document "'in a manner that . . . will enable other parties

to assess the claim.'" *Schaeffer v. Tracey*, Civil Action No. 2:15-CV-08836-MCA-SCM, 2017 WL 465913, at *3-4 (D.N.J. Feb. 2, 2017) (quoting Fed. R. Civ. P. 26(b)(5)). The analysis is particularly complicated with respect to H-1 since OxyChem claims privilege and protection over communications spanning several decades between *Maxus* and *Maxus's* attorneys, as well as dozens of Maxus consultants that performed work for a variety of purposes.

Documents produced by OxyChem in this case—including some produced on the eve of oral argument on the SPG's motion—further illustrate that not all of the documents exchanged between Maxus's attorneys and consultants should be treated as categorically privileged, as OxyChem suggested during oral argument. Notably, OxyChem has not claimed privilege over a large number of Outside Counsel documents and correspondence. Longtime Outside Counsel Carol Dinkins of Vinson & Elkins is the author, recipient, or subject of over 9,000 documents in OxyChem's productions in this case.[1] The Dinkins productions demonstrate that filtering OxyChem's logs for entries identifying Outside Counsel risk omitting non-privileged attorney communications from the *in camera* review. This risk is exacerbated by the uncertain contours of OxyChem's claimed joint-client and common-interest relationships.

Exempting all entries with Consultants would be even more problematic. Indeed, there are thousands of entries on the H-1 privilege log purportedly prepared by or for Maxus consultants that contain insufficient information to establish work-product protection (or the applicability of any other privileges). In addition to the documents reviewed *in camera* under the process set forth in the Interim Order, the SPG requests that the Special Master also conduct an *in camera* review of a sample of consultant and attorney documents to determine (a) whether they were prepared in anticipation of litigation and (b) whether OxyChem, as opposed to Maxus alone, is entitled to claim such protection.

When hiring consultants, Maxus's counsel advised the consultants that not all of their materials or communications would be protected from disclosure. For example, in an April 1992 letter from Maxus's in-house counsel, Paul Herring, to one of its consultants, Richard Wenning at ChemRisk—a document produced by OxyChem for the first time the day before oral argument on the motion to compel—Mr. Herring advised Mr. Wenning that not all of their communications would be subject to work-product protection.[2] He wrote that "if a communication is <u>not</u> in fact a response to an attorney's request for assistance, or is communicated outside the attorney's litigation team, then it cannot be considered an attorney's work product which was intended to be kept confidential."[3] He added that "purely <u>factual</u> portions (such as analytical data) of a communication may not be privileged in any event."[4] Maxus and its consultants have, therefore, understood from the outset that consultant materials are not categorically protected from disclosure.

Moreover, even when Maxus's consultants prepared materials in anticipation of litigation, they were not always acting as representatives of OxyChem. On the contrary, as explained by the

---

[1] The SPG would be happy to provide a list of these documents upon request.
[2] Letter from Paul W. Herring to Richard J. Wenning, M.E.M. (Apr. 2, 1992) (OCC-CER-SA00036913), attached as **Exhibit 1**.
[3] *Id.* (emphasis in original).
[4] *Id.* (emphasis in original).

SPG in its briefing and at oral argument, Maxus's consultants often acted directly *against* OxyChem.  Documents produced by OxyChem after the SPG's Reply further illustrates this point.

On the day before oral argument, OxyChem finally produced exhibits to depositions in the Spill Act litigation, which the SPG had requested in June 2020.  These documents provide further evidence of the direct adversity between Maxus and OxyChem relating to OxyChem's own direct connection to operations at the Lister Plant.  Among those documents are internal Maxus letters showing an investigation as early as 1990 into whether OxyChem operated the Lister Plant in the 1970s.  The internal Maxus letters show that a Maxus project manager, Hadley Bedbury, primarily conducted that investigation and authored a number of memos between 1990 and 1993 on OxyChem's direct liability.  Mr. Bedbury's investigation is described in a number of documents produced by OxyChem the day before oral argument:[5]

| Date | Author | Recipient | Statement against OxyChem |
|---|---|---|---|
| Feb. 13, 1990 | Hadley Bedbury | Paul Herring | noting that "Occidental was an operator of the site," identifying potential dioxin contamination that is attributable to OxyChem only, and proposing OxyChem pay $3-5 million for their direct conduct |
| Mar. 11, 1991 | Hadley Bedbury | Paul Herring | "we could argue that Oxy was a contributor of dioxin concentration" |
| Nov. 22, 1991 | Hadley Bedbury | Paul Herring | "Based on Oxy's being a generator of listed hazardous waste at the site, I believe that they should pay all costs related to the wastes …" |
| Feb. 12, 1993 | Paul Herring | Michael M. Gordon | "This letter, together with its attachments, summarizes the basis for a potential contribution claim by Maxus against Occidental.  Please consider how we might approach investigating the historical facts in these regards for purposes of evaluating the likelihood of success in pursuing any such claim." (emphasis in original) |

Maxus subsequently reported to EPA that OxyChem's operation of the Lister Plant may have caused releases of dioxin.[6]

---

[5] Letter from Hadley Bedbury to Paul Herring (Feb. 13, 1990) (OCC-CER-SA00019079), attached as **Exhibit 2**; Letter from Hadley Bedbury to Paul Herring (Mar. 11, 1991) (OCC-CER-SA00008627), attached as **Exhibit 3**; Letter from Hadley Bedbury to Paul Herring (Nov. 22, 1991) (OCC-CER-SA00019003), attached as **Exhibit 4**; Letter from Paul Herring to Michael Gordon (Feb. 12, 1993) (OCC-CER-SA00008689-8694), attached as **Exhibit 5**.
[6] Letter from Mel Skaggs, Maxus, to Jonathan Josephs, EPA (Jan. 12, 1993) (OCC-CER-SA00039216), attached as **Exhibit 6**, (Maxus responding to EPA's request for information: "Also, it has been identified that operations subsequent to Diamond, either by Chemicaland up to 1976 or by the former Hooker Chemical/Occidental Chemical Company up to the shutdown of the site in 1977, included the movement of equipment" known to be contaminated with dioxin to processes that didn't have dioxin under Diamond's operation).

16252321.3

Mr. Bedbury's documents and interactions with consultants regarding OxyChem's direct liability were not prepared or carried out in Maxus's capacity as OxyChem's indemnitor, but rather were separate actions Maxus took to develop a case against OxyChem.  And yet the H-1 privilege log contains hundreds if not thousands of entries identified as exchanges between Hadley Bedbury and Maxus technical consultants during this time period.  These raise an obvious concern that OxyChem is claiming privilege over *Maxus* documents that reflect *Maxus's* investigation into OxyChem's direct liability at the Lister Site.

There are over 80 entries between February 1990 and November 1991 between Bedbury and a Maxus technical consultant that appear to be related to this investigation.  The entries are described as relating to hazardous substance analysis the Spill Act litigation.  A spreadsheet containing these entries is attached as **Exhibit 7**, and a small sampling of such entries is below:

| Max Priv Ref No. | Doc Date | Author | TO | Privilege Claimed | Privilege Description |
|---|---|---|---|---|---|
| MaxPriv 032243 | 05/04/1990 | Wenning, Richard, J. "Rick" | Bedbury, Hadley | Work Product | Correspondence prepared in anticipation of litigation and reflecting litigation strategy re: sampling/hazardous substance analysis. |
| MaxPriv 032246 | 05/15/1990 | Bedbury, Hadley | Finley, Brent \| Exponent | Work Product | Correspondence prepared in anticipation of litigation and reflecting litigation strategy re: sampling/hazardous substance analysis. |
| MaxPriv 110121 | 09/28/1990 | Bedbury, Hadley \| Maxus Energy Corporation | Wenning, Richard, J. "Rick" \| ChemRisk | Work Product | Letter prepared in anticipation of litigation re: sampling/hazardous substance analysis. |
| MaxPriv 042068 | 01/15/1991 | Wenning, Richard, J. "Rick" | Bedbury, Hadley \| Maxus Energy Corporation | Attorney-Client | Correspondence reflecting legal advice re: Spill Act litigation. |
| MaxPriv 073278 | 05/13/1991 | Woodward-Clyde Consultants | Bedbury, Hadley \| Maxus Energy Corporation | Work Product | Invoices/Purchase Order/Proposal prepared in anticipation of litigation re: sampling/hazardous substance analysis. |
| MaxPriv 042782 | 08/23/1991 | Bonnevie, Nancy \| ChemRisk | Bedbury, Hadley \| Maxus Energy Corporation | Work Product | Correspondence gathered and compiled at the request of counsel for the purpose of facilitating legal services in anticipation of litigation re: sampling/hazardous substance analysis. |
| MaxPriv 070469 | 09/09/1991 | Bedbury, Hadley \| Maxus Energy Corporation | Nicolette, Joe \| Entrix | Work Product | Letter prepared in anticipation of litigation and reflecting opinions re: sampling/hazardous substance analysis. |
| MaxPriv 022458 | 09/16/1991 | ChemRisk | Hadley Bedbury, Mel Skaggs | Work Product | Correspondence prepared in anticipation of litigation and reflecting opinions re: |

4

16252321.3

| | | | | | sampling/hazardous substance analysis. |
|---|---|---|---|---|---|
| MaxPriv 022446 | 10/21/1991 | Wenning, Richard, J. "Rick" | Bedbury, Hadley | Work Product | Correspondence prepared in anticipation of litigation re: Spill Act litigation. |
| MaxPriv 020999 | 11/01/1991 | Kevin | Bedbury, Hadley | Work Product | Facsimile Cover Sheet gathered and compiled at the request of counsel for the purpose of facilitating legal services in anticipation of litigation re: sampling/hazardous substance analysis. |
| MaxPriv 060483 | 11/15/1991 | Wenning, Richard, J. "Rick" \| ChemRisk | Stoecker, Roy \| EEA, Inc.; Recchia, Nicholas \| EEA, Inc.; Roberts, Alan \| Woodward Clyde Consultants; Bedbury, Hadley \| Maxus Energy Corp | Work Product | Chart/Graph/Table/Drawing/Map prepared in anticipation of litigation and reflecting opinions re: sampling/hazardous substance analysis. |
| MaxPriv 036564 | 11/19/1991 | Wenning, Richard, J. "Rick" | Bedbury, Hadley | Work Product | Correspondence prepared in anticipation of litigation and reflecting litigation strategy re: sampling/hazardous substance analysis. |

***

Based on the foregoing, the SPG respectfully requests that the Special Master clarify that documents withheld on OxyChem's privilege logs are not categorically protected merely because they were prepared, received, or sent by Outside Counsel or Consultants. The SPG further requests that the Special Master's *in camera review* be expanded to also include a sample of documents withheld by entries listing attorneys and/or consultants. To the extent the question before the Special Master with respect to H-1 is whether OxyChem can properly assert and maintain a privilege or protection over documents previously withheld by *Maxus*, the SPG submits that an *in camera* review of these documents should inform the Special Master's final determination.

Thank you for your time and consideration.

Respectfully submitted,

*Common Counsel for the Small Parties Group*

/s/ Jeffrey D. Talbert
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP**
One City Center
Portland, ME 04101
Telephone: 207.791.3239
Jeffrey D. Talbert, Esq. (admitted *pro hac vice*)

16252321.3