


Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

November 24, 2020

*Via ECF*
Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

    Re:    *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*,
                Civil Action No. 2:18-cv-11273-MCA-JAD

Dear Special Master Scrivo:

       The SPG has changed its argument and the relief it seeks three times. It started with a blunderbuss demand for all 30,000 documents from OxyChem's privilege log; at oral argument, SPG floated a request for an *in camera* review of a sample of documents; now, having been granted a limited *in camera* review, SPG shifts its position again, arguing that the Special Master should reconsider his Interim Order and grant relief SPG *never* sought in its motion: wholesale, *in camera* review of a sample of all documents on OxyChem's privilege log. This extraordinary request—and SPG's endless re-litigation by hindsight—should be denied.

    **I.**    **OxyChem Met its Burden to Establish the Underlying Privileges. The Interim Order Appropriately Declined to Order Production of all 30,000 Documents and Excluded, Correctly, Documents Involving OxyChem's Counsel and Consultants from the Limited In Camera Review.**

       The SPG does not dispute there were communications between OxyChem's counsel and its consulting experts. Ignoring the privileges for these communications, in its August 10 motion, SPG tried and failed to persuade the Court that *all* communications with OxyChem's counsel and consulting experts should be produced anyway. SPG argued that *no* privilege applied to *any* of the *30,000 documents* on OxyChem's log and that any privileges OxyChem asserted had been waived.[1] During oral argument, SPG retreated from (but never withdrew) this demand, arguing variously that all of OxyChem's privileged documents should be produced wholesale, then floating

---

[1] *See* SPG Mtn. for Order Compelling Plaintiff to Produce Documents it Has Withheld as Privileged or Protected at 1-2 and *passim.*

Special Master Thomas P. Scrivo, Esq.
November 24, 2020
Page 2

a new request for *in camera* review of a sample of documents, *see* 10/28/20 Hrg. Trans. at 39,[2] a demand it sought to support by quibbling with log entries presented to OxyChem and to the Special Master for the first time at oral argument. *See, e.g.*, 10/28/20 SPG Presentation at 13.

OxyChem defeated SPG's motion to compel. It met its burden to establish the attorney-client privilege and work product doctrine, as well as the non-waiver doctrines of the joint-client privilege and the community of interest. *See* OxyChem's Resp. at IV.A. OxyChem submitted *undisputed*, sworn evidence from its former litigation counsel, Ben Lippard, and from David Rabbe (who oversaw the work of consulting experts who were retained to assist litigation counsel), both of whom confirmed that the documents in question *were* prepared by or for outside counsel and consulting experts to assist, among others, Vinson & Elkins in the defense of regulatory investigations and civil litigation. The SPG has never offered any evidence to dispute these facts.

Having considered the arguments of the parties, and recognizing the shifting SPG arguments, the Special Master appropriately declined to order the relief SPG sought: production of every document on the log. Instead, the Special Master ordered a limited *in camera* review of a sample of 200 documents (along with other discrete categories of documents) and, appropriately, excluded from this review documents involving OxyChem's outside counsel and consultants.

## II. The SPG's Letter is an Improper Motion to Reconsider.

The SPG now urges the Special Master to reconsider the Interim Order, which generously gave SPG an *in camera* review of a sample of documents not involving OxyChem's outside counsel and consultants. Pursuant to the Interim Order, 200 of those documents were to be selected by the parties. OxyChem let SPG pick *all 200* of them. Still not satisfied, SPG now argues with the Court. Its letter second-guesses the Interim Order and urges the Special Master to change his mind and order a sampling of the *entire* 30,000-document log for *in camera* review. The SPG's letter, which is a motion to reconsider in all but name, is barred by Local Rule 7.1 and abundant case law establishing the high burden that must be met to obtain reconsideration.

Local Rule 7.1 sets "a high standard," *Marshak v. Treadwell*, 2008 WL 413312 at *5 (D. N.J. Feb. 13, 2008), and mandates that "[a] motion to reconsider shall … set[] forth concisely the matter or controlling decisions which the party believes the … Magistrate Judge has overlooked," Loc. R. Proc. 7.1(i). "The word 'overlooked' is the operative term in the Rule." *Assisted Living Assoc's of Moorestown, L.L.C., v. Moorestown Tp.*, 996 F.Supp. 409, 442 (D.N.J.1998). The movant "must show that the court overlooked a factual or legal issue that may alter the disposition of the matter, such as when dispositive factual matters or controlling decisions of law were brought to the court's attention, but not considered." *Marshak*, 2008 WL 413312 at *5. Importantly,

> **A judge can only *overlook* matters as to facts and legal arguments which were appropriately presented** to the court at the time the motion on which reargument

---

[2] SPG's counsel argued: "But what we could do is do a sampling of these for an in-camera review for you and then you could make a ruling on not only those documents but things that would help guide OxyChem's review of the remainder of the log."

is sought was initially decided. Therefore, a moving party's **effort to expand the reargument to include matters that were not presented** before the court in the original motion, but that are submitted after the motion has been decided, **have been rejected**.

*United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994) (emphasis added) (citing *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159 (D.N.J. 1988) (reconsideration "does not contemplate a Court looking to matters which were not originally presented, but which have since been provided for consideration")).[3]

A motion for reconsideration may not be used to "ask the Court to rethink what it had already thought through—rightly or wrongly," *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co.*, 744 F.Supp. 1311, 1314 (D.N.J. 1990) (citation omitted). Nor may a motion for reconsideration be used to revisit or raise new issues with the benefit of the "'hindsight provided by the court's analysis.'" *Jones*, 158 F.R.D. at 314 (quoting *United States v. Torres*, Crim. No. 89-240 (D.N.J. slip op. March 30, 1990)).[4] The SPG's motion violates all of these principles.

The Court did not "overlook" anything when it issued its November 4 Order. *Compare* Loc. R. Proc. 7.1. The Special Master considered both parties' evidence and arguments, including the SPG's shift of position during oral argument, after which the Special Master ordered a limited, *in camera* review. The SPG's attempt to "ask the Court to rethink what it had already thought through—rightly or wrongly," *Oritani*, 744 F. Supp. at 1314, should be denied.

The SPG also rests its November 16 letter on facts and arguments it could have raised, but failed to raise, in its original motion. The facts SPG cites are not new: they are mined from the same privilege log the SPG has had for months. The SPG could have sought *in camera* review of a sample of OxyChem's entire log in its motion. It chose instead to seek production of all 30,000 documents outright. The law prohibits the SPG from requesting reconsideration based on "matters that were not presented before the court in the original motion, but that are submitted after the motion has been decided." *Jones*, 158 F.R.D. at 314.

Local Rule 7.1 and the governing authorities cited do not permit the SPG to serially mine OxyChem's privilege log to excavate grounds to relitigate, with the benefit of "hindsight provided by the court's analysis, … issues that should have been raised in the first set of motions." *Id.* SPG has continually morphed its arguments, both during oral argument and since, seeking to obtain

---

[3] *Compare Geneva College v. Sebelius*, 929 F. Supp. 2d 402, 453 (W.D. Pa. 2013) (party seeking reconsideration "must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of *new evidence not previously available*, or 3) need to correct a clear error of law or prevent manifest injustice" (emphasis added)).

[4] *See also Toolaprashad v. Bureau of Prisons*, 2010 WL 715311 (D.N.J. Mar. 1, 2010) ("[M]ere disagreement with the district court's decision is an inappropriate basis for granting a motion for reconsideration….") (citing *Assisted Living Assoc's* 996 F. Supp. at 442; *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.") (citation omitted); *Bermingham v. Sony Corp. of America, Inc.*, 820 F. Supp. 834, 859 n. 8 (D.N.J. 1992), *aff'd*, 37 F.3d 1485 (3d Cir. 1994)) (same).

relief it was denied the first and second time around. The SPG initially sought to compel the production of all documents. Mot. at *passim*. It then retreated to demand *in camera* review of only a *sample* of documents when its first set of arguments failed. 10/28/20 Hrg. Trans. at 39. Now, in its November 16 Letter, the SPG is trying a third time, demanding *in camera* review of a sample of the *full* log.

SPG has also shifted its position whether OxyChem has *any* valid privilege claim, and whether a review of the underlying documents was necessary. In its written motion, SPG argued there was *no common interest* between OxyChem and Maxus—an argument that *did not seek* any *in camera* review because *it did not turn* on what individual documents said.[5] SPG's November 16 letter contradicts this position. SPG now concedes OxyChem *does* have proper privilege and work product claims as to interactions with counsel and consultants working on behalf of OxyChem and its indemnitor,[6] but it urges (without evidence) that *some* of the documents on the log fall outside of those privilege claims—an argument that *must turn* on what the individual documents say. Compare SPG's motion to its most recent letter:

| **Motion to Compel** | **November 16 Letter** |
|---|---|
| "OxyChem *Cannot Assert Privilege* Over Documents That Were Withheld From It By Maxus, Its Former Adversary in the Spill Act Litigation."  Mot. at 7. | "[N]ot *all* of the documents exchanged between Maxus's attorneys and consultants should be treated as *categorically privileged*…."  Ltr. at 2. |

An *in camera* review will not address whether there *was* a joint-client privilege or common interest between OxyChem and Maxus: there was. And the answer to whether it applied is determined by the *time* of the communications, a matter clearly disclosed on the log and in the Lippard and Rabbe Declarations, not the *content* of the documents.  SPG does not dispute this; instead, it demands an *in camera* review to look at *individual* documents to see whether *any* of them fell *outside* of that common interest for reasons *specific to* those documents.  But SPG offers no support for this relief in its letter; instead, it is speculating and doing so *overtly*. "SPG requests that the Special Master also conduct an *in camera* review of a sample of consultant and attorney documents to determine (a) *whether they were prepared in anticipation of litigation* and (b) whether OxyChem, as opposed to Maxus alone, is entitled to claim such protection."  11/16/20 Ltr. at 2 (emphasis added).

---

[5] *See, e.g.*, Mot. at 2 ("Despite the *adversarial relationship* between OxyChem and Maxus during recent years—including over claims of privilege when Maxus withheld the very same documents from OxyChem—OxyChem has made the sweeping contention that it can assert privilege over all of the 30,000-plus documents on the Maxus Log."), 8 ("[T]heir interests indisputably diverged when they became adversaries during the Spill Act.").

[6] *See* Nov. 16 Letter at 4 (attempting to distinguish Bedbury documents by arguing they were not "interactions with consultants…prepared or carried out in Maxus's capacity as OxyChem's indemnitor).

Special Master Thomas P. Scrivo, Esq.
November 24, 2020
Page 5

After OxyChem met its burden to establish the privilege applied and was not waived, SPG had the burden to come forward to show *facts* refuting these privileges. SPG did not meet its burden: it offered, and it continues to offer, no *facts* to support this claim; instead, it *speculates* that such facts *might* exist and demands that the Special Master review *admittedly* privileged documents *in camera* to go and find them. This does not meet SPG's burden to establish OxyChem's work product protections were waived. *See* OxyChem Resp. at "Standard of Review"; *see also Louisiana Mun. Police Emp. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008).

Permitting the SPG to argue with the Special Master over an order—even an Interim Order—that has been entered and allowing it to make shifting, piecemeal, and repetitive arguments will doom the Court and all parties to a ceaseless cycle of reconsideration. In its motion, SPG could have made all of the arguments it waited to make until its November 16 letter. These arguments simply represent a shift in strategy in response to the *failure* of the SPG's first, *in terrorem* motion to compel the production of *all* of OxyChem's privileged documents. This is classic litigation by hindsight: SPG cites *nothing* the Special Master "overlooked" in his Interim Order; instead, SPG raises arguments *after* the Special Master decided on an approach to resolving the SPG's motion (based on no new facts or law) to argue for relief SPG *never sought in the first place*. This sends the Special Master and the parties back to square one: reviewing the entire privilege log yet again, not for evidence of adversity between OxyChem and Maxus, but instead in a snipe hunt for individual defects that would require production of individual documents. This is a waste of the Special Master's time and the parties' resources.

The Interim Order has been issued. The Special Master ordered limited, *in camera* review that protects OxyChem's attorney-client and work product communications with its counsel and consultants. Nothing in the law permits SPG to come back, for the third time, to *argue* with the Court that it should have ordered relief broader than anything the SPG even *sought* in its motion. The Special Master should end this wasteful bait-and-switch. The SPG's request for further *in camera* review states no ground for reconsideration, so its motion should be denied. At minimum, the SPG states *no* basis for any order of broader relief *before* the Special Master concludes the *in camera* review of the hundreds of documents that is already underway. OxyChem is confident the documents already submitted will confirm that OxyChem's privilege claims are proper and that no further *in camera* review is warranted.

### III.  SPG's New Argument Simply Repackages Waiver Arguments that OxyChem Already Refuted.

Months after filing its motion and three weeks after oral argument, SPG mines OxyChem's privilege log to excavate another argument it could have made from the outset. Now, it cites Mr. Bedbury's documents as examples allegedly outside of the common interest. SPG had the log entries that involved Mr. Bedbury. SPG may not seek reconsideration of the Court's Interim Order

based on these materials, which SPG could have presented, but did not present, prior to the Court's decision.[7]

But, fundamentally, SPG knows its argument is red herring: OxyChem has *not* asserted any privilege over documents involving Mr. Bedbury's Chemicaland "investigation." OxyChem has already produced *those* documents, which serve as the SPG's pretext for its late submission.

OxyChem's log properly includes, however, other documents involving Mr. Bedbury that do *not* pertain to the Chemicaland investigation. As a Project Manager for Maxus, Mr. Bedbury worked on behalf of OxyChem pursuant to Maxus's indemnity obligations in the SPA, including implementing the requirements of a settlement with EPA that was negotiated by Vinson & Elkins, which was Maxus's and OxyChem's joint counsel.[8] These documents are, unquestionably, covered by the common interest protection and properly appear on OxyChem's privilege log.

Further, SPG repackages the same adversity argument (related to Maxus's investigation of OxyChem's pre-Stock Purchase Agreement conduct at Lister) that OxyChem already addressed in detail. *See, e.g.*, Resp. at IV.A.4. OxyChem already refuted this argument with blackletter law. The common-interest protection applies as long as the parties have "similar interests"; they do not need to be "perfectly aligned" and may even be "adversarial" in other respects. *See McLane Foodservices, Inc. v. Ready Pac Produce, Inc.*, No. 10-6076, 2012 WL 1981559, at **5-7 (D.N.J. June 1, 2012) ("[D]efendants' interests are not perfectly aligned, [but] they have a common interest in establishing and arguing that lettuce did not cause the outbreak."). Thus, even if Mr. Bedbury's investigation were somehow adverse to OxyChem,[9] it would not extinguish the common interest that existed pursuant to the indemnity agreement and it could not, as a matter of law, render *all* of Mr. Bedbury's documents unprotected, as SPG suggests. *See id.*

### IV. SPG's Pretext For its Belated Letter is Intentionally Misleading.

To justify its belated and improper change of position, the SPG invents a story: that *newly produced* documents somehow call into question the privilege log entries involving Mr. Bedbury and Maxus's consultants, and by extension every document on the log involving consultants.

---

[7] *United States v. Jones*, 158 F.R.D. at 314 (citing *Florham Park Chevron, Inc.*, 680 F. Supp. at 162 (reconsideration "does not contemplate a Court looking to matters which were not originally presented, but which have since been provided for consideration")).

[8] *See, e.g.*, Ex. A (letter to EPA designating Bedbury as project coordinator); Ex. B (4/14/15 Bedbury transcript) at 75:8-17.

[9] The New Jersey Superior Court ruled that Maxus was required to indemnify OxyChem for *all* of OxyChem's pre-SPA conduct at the Lister site. *See* OxyChem Resp., Ex. 10 (April 15, 2016 order granting OxyChem's Motion for Partial Summary Judgment Against Maxus). Additionally, multiple orders in the Maxus bankruptcy proceedings protected against waiver Maxus's transfer of these documents to OxyChem. *See* OxyChem Resp., Ex. 14 (Site Transition Agreement (ECF No. 1208)), *In re Maxus Energy Corp. et al.*, Case No.16-11501 (CSS) (Bankr. D. Del.) at § 3.1.5; OxyChem Resp., Ex. 15 (7/18/17 Consent Order, Maxus Bankruptcy (ECF No. 1704)), ¶ 1.

Special Master Thomas P. Scrivo, Esq.
November 24, 2020
Page 7

SPG's repeated insistence that these documents were "produced the day before oral argument" is false—and SPG knew it was false when it made this claim.

In fact, 4 of the 6 "new" documents were produced by OxyChem to the SPG *on March 15, 2019*—more than 18 months ago.[10] One of these documents has been produced so many times over that SPG defendant Givaudan produced it *back* to OxyChem *in 2019*.[11] In addition, Mr. Bedbury's Spill Act deposition transcript and all the exhibits—including all of the documents the SPG characterizes as "new"—were produced in the Maxus Bankruptcy years ago.[12]

Compounding this misrepresentation is the fact that *none* of these "new" documents show "*interactions with consultants* regarding OxyChem's direct liability," as the SPG claims. *See* 11/16/20 Ltr. To the contrary, not a single consultant is listed or identified as participating in the preparation of these documents. Mr. Bedbury was a Maxus *employee* charged with performing Maxus's indemnity obligations to OxyChem. Despite this fact—which is fully disclosed in Mr. Bedbury's sworn testimony—SPG claims (incredibly) that "over 80 entries between February 1990 and November 1991 between Bedbury and a Maxus technical consultant that *appear* to be related to this [Chemicaland] *investigation*." *See id.* (emphasis added).

This statement is based solely on the fact that the log entries list Mr. Bedbury's name. SPG offers no other evidence to meet its burden to defeat OxyChem's showing that work product applies, because all available evidence demonstrates the opposite. Mr. Bedbury's testimony describing his Chemicaland "investigation" confirmed he communicated only with Maxus employees and counsel—not with the technical consultants listed on these entries nor any other Maxus consultant.[13] And the dozens of non-privileged documents produced by OxyChem reflecting Mr. Bedbury's interactions with those consultants have nothing to do with Chemicaland.[14]

Indeed, in the very next breath, SPG acknowledges that the entries it attacks are, in fact, "described as relating to hazardous substance analysis [or] the Spill Act litigation." SPG bears the burden to show *facts*—not innuendo—demonstrating that the work product privilege does not apply to these communications. *Louisiana Mun. Police Emp. Ret. Sys.*, 253 F.R.D. at 306. There is no basis—none—for SPG's groundless, after-the-fact demand that these documents should now be reviewed, *in camera*, to confirm this is true.

---

[10] OxyChem's March 15, 2019 cover letter producing volume OCC-CER003a, and the versions of the documents at issue within that production volume, are attached as Exhibit C.

[11] *See* Ex. D (version of SPG's Ex. 6 produced by Givaudan).

[12] *See* Ex. E (2/17/17 order of bankruptcy court listing Bedbury deposition transcript and exhibits among materials produced or made available by Debtors).

[13] *See*, *e.g.*, Ex. B (4/14/15 Bedbury transcript) at 70:3-71:7.

[14] *See*, *e.g.*, Ex. F (sampling of documents produced by OxyChem reflecting correspondence during 1990 and 1991 between Mr. Bedbury and consultants retained by Maxus and/or Tierra).

* * * * *

The SPG foreshadowed long ago its intention to leverage privilege disputes to delay progress in this case. It should not be permitted to implement that strategy with serial submissions and endlessly shifting arguments that force OxyChem to expend valuable time and resources *defending* privileges that have already been established, in an effort to harry and delay any forward progress in the prosecution of OxyChem's claims. The SPG's November 16, 2020 requested relief should be denied.

Respectfully submitted,

Kathy D. Patrick

/s/ *John J. McDermott*

John J. McDermott

cc: James DiGiulio, Esq.
All counsel of record

219812693v1