


Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

January 18, 2021

*Via CM/ECF*
Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

      Re:    *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*,
             **Civil Action No. 2:18-cv-11273-MCA-LDW**

Dear Special Master Scrivo:

    We write in advance of the January 20, 2021 conference to request that the following topics be included on the agenda.

**1.    Production of ESI**

    a.  *OxyChem's ESI Production*

    OxyChem's production of ESI is now substantially complete.[1] OxyChem's ESI production covers a range of subjects and custodians. It includes:

- An estimated 100,000 documents related to investigation and remediation in the Passaic River and Newark Bay.
- An estimated 13,000 documents related to remediation at the former Lister Plant site.
- More than 178,000 ESI documents related to the historical discharges of other PRPs at the Diamond Alkali Superfund Site, including summaries of the evidence of discharges at many PRP sites.

In total, whether specific to OxyChem's alleged liability or the liability of the Defendants, OxyChem has produced over 407,615 ESI documents.[2]

---

[1] Since the November conference, OxyChem has produced an additional 58,145 ESI documents.

[2] Many defendants have presented the volume of documents produced in terms of pages. OxyChem has produced 6,030,462 "pages" of ESI.

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 2

In addition to these productions, in due course, OxyChem expects to make supplemental productions of (a) documents generated since the last collection of ESI from certain custodians, and (b) any documents removed from OxyChem's ESI privilege log during its preparation. It would be helpful to discuss with the Special Master a date by which supplemental collections of ESI will end, so that the document production phase of discovery can be concluded.

  b. *Defendants' ESI Productions*

OxyChem has received ESI productions from 48 Defendants.[3] Many of those productions were received in the last 6 weeks, and are being analyzed by OxyChem. Preliminarily, several aspects of the Defendants' productions are worth noting.

First, virtually all Defendants limited their ESI productions to the three subjects discussed during the February 12, 2020 Special Master meeting as priority categories to facilitate the start of Defendants' ESI searches: operations, discharges, and remediation activities.

Second, only 22 Defendants have provided information about their search terms. Of those, 16 culled their collected ESI using only the SPG's "generic" search terms, rather than terms specific to their own operations, discharges, and remediation activities. OxyChem has not yet completed its evaluation of these productions and conferences with those Defendants, but reserves its right to contend that the use of generic search terms is not sufficient *if* a Defendant knows there are other search terms more likely to find potentially responsive ESI.[4]

Third, other than a production of 9,905 documents containing cost-related information, Defendants have not produced any documents pertaining to the Consent Orders and work underlying their ostensible "$100 million" counterclaims against OxyChem. In August 2020, OxyChem served a subpoena on the Cooperating Parties Group (CPG)—an organization of which most Defendants in the SPG continue to be members and through whom they have allegedly incurred these costs and performed this work—to seek relevant documents. The CPG's counsel advised that OxyChem would receive a production this month, but that production is *not* substantially complete.

To ensure all relevant documents *are* produced, OxyChem has also served subpoenas on several of the CPG's consultants.

---

[3] In addition, several Defendants have encountered technical difficulties with their productions, but have communicated with OxyChem regarding the expected timing.

[4] When the SPG proposed those terms, it did so with the expectation that they would be a "starting point" which each Defendant would supplement to ensure it pulled all responsive ESI. *See* December 19, 2019 Letter from SPG to OxyChem, attached as Ex. A ("Individual Defendants are not bound by the suggested search terms, and each facility and company is somewhat unique ***requiring specific unique search terms to capture relevant and responsive*** ESI. Each Defendant will provide requested discovery consistent with any objections it may have and its obligations under the Federal Rules.")

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 3

**2.      Additional discovery sought by the SPG**

The SPG has pursued the production of additional documents, both through a Second Set of Requests for Production to Plaintiff and various subpoenas to third-parties. Many of the documents sought in the 28 additional document requests and 19 subpoenas have already been produced, raising the question of why the SPG is putting OxyChem to the burden of responding a second time. Others seek decades-old information that appears of marginal, if any, relevance.

OxyChem does not dispute that *relevant* information should be produced and it will produce the information requested. At some point, however, the enormous financial burden imposed by a demand for the production of decades-old, marginally relevant information shifts from legitimate discovery to one calculated to inflict delay for the sake of delay, and costs for the sake of costs. An example serves to illustrate this dilemma.

On August 28, 2021 Defendants served a subpoena on Arcadis, a consultant that performs work for OxyChem on the remedial design. The subpoena, however, was *not* limited to inquiring about the remedial design—the Order at issue in this case; instead, it sought information going back to Arcadis's initial retention by Tierra over a quarter of a century ago, long before the Remedial Investigation that led to the Record of Decision for OU2 had even begun. Arcadis has advised it has *3 terabytes* of potentially responsive data, but only a portion of it will be *relevant* to any issue in this case. The example of Arcadis can also be multiplied at least several times, because the SPG has served other, unlimited subpoenas on OxyChem's consultants.

Again, OxyChem does not dispute its obligation to produce relevant information. We have conferred with the SPG to try to narrow these subpoenas to what is relevant and reasonable, and will continue to do so as consultants assess the information in their possession. If, however, the SPG insists on the production of over twenty-five years of largely irrelevant information, OxyChem reserves its right to seek a cost-shifting order. *See* MANUAL COMPLEX LIT. § 11.41 (4th ed.) ("This underlying principle of proportionality means that even in complex litigation, discovery does not require leaving no stone unturned."); *Schick v. Cintas Corp.*, 2020 WL 1873004, at *3 (D.N.J. Apr. 15, 2020) ("A court may limit or deny otherwise appropriate discovery when the information sought is not proportional to the needs of the case when certain factors are considered, including burden and expense.").

**3.      Contention Interrogatories Served by Individual SPG Defendants**

The SPG has also served OxyChem with premature contention interrogatories.

Magistrate Judge Dickson addressed the parties' use of interrogatories in his Second Amended Pretrial Scheduling Order, in which he required the parties to answer a set of Standard Interrogatories. The Order permitted only 5 additional interrogatories without leave and "urged [the parties] to consider the true value and worth of interrogatories and seek to utilize them sparingly after a proper meet and confer conference." *See* Dkt. 550 at 12. Judge Dickson warned of the waste of time and resources that could result unless interrogatories were used cooperatively

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 4

and with care. *See* Jan. 28, 2019 Tr. of Status Conf. at 63:6-8 ("The less use we can make of interrogatories, the happier I'll be and I'm sure the happier all of your associates will be.").

Ignoring this caution, the SPG defendants have collectively served OxyChem with *78* additional contention interrogatories, seeking identification of the facts underlying OxyChem's allegations against the serving Defendant. OxyChem has served objections and responses to these contention interrogatories as those responses have come due. Given the continued influx of such interrogatories—OxyChem has proposed to the SPG that the parties agree to adjourn OxyChem's responses to the Defendants' contention interrogatories until 30 days after the close of fact discovery. This approach is commonly used for contention interrogatories and allows discovery to be completed in the sequence that is most efficient. *See In re. Ridell Concussion Reduction Litigation*, No. 13-7585, 2016 WL 7365508 (D.N.J. Jan. 6, 2016) (deferring responses to contention interrogatories until later in discovery).

If we are unable to reach agreement, OxyChem intends to seek an extension to respond to these interrogatories at the close of fact discovery, as a request for "all facts" necessarily involves a compilation of information learned in discovery. *See Nestle Food Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 110-11 (D.N.J. 1990) ("This Court agrees that judicial economy as well as efficiency for the litigants dictate that contention interrogatories are more appropriate after a substantial amount of discovery has been conducted."); MANUAL COMPLEX LIT. § 11.432 (4th ed.) ("Before allowing contention interrogatories, consider whether they are likely to be useful at that stage of the proceeding. . .").

**4.   Depositions**

Following the November conference, the parties continued to discuss the deposition protocol and the several points of disagreement preventing entry of the protocol at that conference. In an effort to get depositions underway, OxyChem agreed to the Defendants' positions on all issues *except* the duration of depositions. The parties' positions are:

| Party | Length of Deposition | Time Allocated to "Noticing Party" |
|---|---|---|
| OxyChem | 8 hours total | 6 hours |
| SPG | 9 hours total | 7 hours |

Though these differences may seem small, accepting the SPG's proposal would mean *every* deposition would be a two day deposition *by default*—an outcome inconsistent with the Federal Rules. This difference is not cost-free to the parties or their witnesses. If depositions were limited to eight hours, fact depositions could be concluded in two months of efficient work; at nine hours, the time needed to complete discovery more than doubles—in part because partial days otherwise available to depose witnesses will not be used. This overrun into second days also makes it impossible to schedule depositions efficiently, i.e. back to back, because of the risk that *every* deposition will run over or the loss of a day's discovery, when it does not.

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 5

A version of the proposed deposition protocol, with that provision highlighted, is attached as Exhibit B. With your decision on that single paragraph, the protocol is ready for entry.

**5.    SPG's submission regarding the custodial file of Frank Parigi**

In response to OxyChem's offer to remove Frank Parigi, Vice President and General Counsel of OxyChem's affiliate Glenn Springs Holdings, Inc. from its Rule 26 initial disclosures, the SPG has agreed to withdraw its November 12, 2020 letter seeking an order that OxyChem must collect and produce Mr. Parigi's custodial file. OxyChem is preparing an amended initial disclosure that removes Mr. Parigi and updates its damages calculations to reflect response costs incurred to date.

**6.    Discovery Deadlines**

Under the August 3, 2020 Order Extending the Fact Discovery End Date, the operative deadline to complete fact discovery is January 27, 2021. Because that deadline will expire before the next monthly conference on February 17, 2021, and the parties have not yet completed fact discovery, OxyChem proposes a new fact discovery cutoff of June 1, 2021.

As document discovery closes and deposition discovery begins, entry of an expert discovery deadline is important to keep the parties on track. Having an operative expert deadline imposes urgency on the parties to conclude fact discovery.

We look forward to addressing these issues with you at the conference on January 20, 2021.

Respectfully submitted,

Kathy D. Patrick

/s/ *John J. McDermott*

John J. McDermott

cc:    All counsel of record

220136260v1