**PretiFlaherty**

Portland, ME

Augusta, ME

Concord, NH

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

Boston, MA

Washington, DC

January 18, 2021

**VIA EMAIL AND ECF**

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

> RE:   ***Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.***
> **Docket No. 2:18-cv-11273-MCA-LDW**

Dear Special Master Scrivo:

I write on behalf of the Small Parties Group ("SPG") in advance of the January 20, 2021 Status Conference to provide updates on the following topics, which the SPG respectfully requests the Special Master address at the upcoming conference:

> (1) Deposition Protocol and Admissibility Stipulation;
>
> (2) Electronically Stored Information ("ESI") Discovery Status & Frank Parigi;
>
> (3) OxyChem's Responses to Written Discovery;
>
> (4) Status of Responses to SPG Non-Party Subpoenas;
>
> (5) Third Party Joinder; and
>
> (6) Fact Discovery Deadline

**1.   Deposition Protocol and Admissibility Stipulation**

On December 18, 2020, the parties finalized a joint stipulation regarding hearsay objections parties may have to the admissibility of certain transcripts of prior testimony.[1] While the SPG had hoped to come to an agreement regarding the admissibility of ancient documents as well, the parties were not able to agree on the terms of that portion of the stipulation. Pursuant to the joint stipulation regarding transcripts, the SPG served a Notice of Potential Use to OxyChem on January 11, 2021. OxyChem has 45 days from service of that Notice to object to the identified transcripts

---

[1] Joint Stipulations Regarding Admissibility of Prior Dep. and Trial Test., Dec. 18, 2020, attached as **Exhibit 1**.

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 2

on hearsay grounds or such objections will be waived. If OxyChem objects, then the SPG may have to bring any disputes to the Special Master for resolution.

Since the last status conference on November 18, 2020, the parties have made progress regarding a joint deposition protocol. Just one dispute remains regarding the appropriate time limit to allow for questioning during a deposition. The SPG respectfully requests that the Special Master resolve this issue at the upcoming status conference.

The SPG proposes a presumptive time limit of 7 hours per deposition for questioning by a Noticing Party.[2] In contrast to OxyChem's preferred 6 hour limit, the SPG's proposal aligns with Rule 30(d)(1) of the Federal Rules of Civil Procedure, which gives a party noticing a deposition a presumptive time limit of 7 hours, with the option for parties to stipulate to or request additional time.[3] The SPG's proposal also ensures a Noticing Party will not have to seek the Special Master's approval every time the Noticing Party needs the full 7 hours provided for by Rule 30(d)(1), to fairly examine the deponent. To require the Special Master's intervention in every instance would contravene the very purpose of having a protocol and frustrate the main purpose of the Federal Rules of Civil Procedure, "to secure the just, speedy, and inexpensive determination of every action and proceeding."[4]

Under the SPG's proposal, the overall presumptive time limit that a witness may be questioned under the Draft Protocol would be 9 hours (7 hours for the Noticing Party and 2 hours for other parties)—as opposed to OxyChem's proposed 8 hours (6 hours + 2 hours).[5] While both sides acknowledge time limits will be subject to meet and confers as particular deponents are noticed, the SPG continues to believe that the protocol should track the rules as closely as possible (7 hours for Noticing Party) while providing meaningful limits on questioning by other parties (2 hours).  Given OxyChem's decades-long history with the Lister Facility—the plant responsible for almost all of the most toxic contaminant in the Passaic River—the SPG should not have to seek leave from the Special Master to obtain the 7 hours of questioning presumptively available for any civil case.

## 2.  **Status of ESI Production**

### a.  **SPG ESI**

At the November 18, 2020 Status Conference, the Special Master accepted the parties' proposed deadline of December 31, 2020, for substantially completing the production of ESI.[6] In accordance with that deadline, almost all of the SPG members have substantially completed their ESI production in this case. Those members for which production is still ongoing have brought

---

[2] Draft Protocol for Deps. at ¶ C.2, attached as **Exhibit 2**.
[3] Fed. R. Civ. P. 30(d)(1); *see also* Rule 30 Advisory Committee Notes for the 2000 Amendment.
[4] Fed. R. Civ. P. 1.
[5] Draft Protocol for Deps. at ¶ C.2.
[6] Status Conference Tr., 13:6-14, Nov. 18, 2020.

16474262.1

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 3

their particular circumstances to the Special Master's attention or have come to an agreement on an extension with OxyChem. Those parties will address any issues regarding their ESI production at the upcoming status conference as needed. A detailed update on the status of ESI production by SPG members is attached as **Exhibit 3**.

**b.  OxyChem ESI**

Although OxyChem has long said that its ESI production was nearly complete (the SPG sets forth that history below), OxyChem failed to complete its ESI production by the December 31 deadline. On the contrary, OxyChem produced its largest volume of ESI yet—containing 58,138 documents and 459,956 pages—on January 14, 2021. Having just received this substantial production days before the status conference, the SPG is unable to confirm whether OxyChem has completed—or substantially completed—its ESI production. It is similarly not immediately clear whether this production satisfies OxyChem's obligation to produce ESI from many of the ESI custodians it previously identified as relevant in this case, including several on its Initial Disclosures. Pending the SPG's review of these documents, it may need to raise the issue with the Special Master in the future. At this time, the SPG requests that the Special Master require OxyChem to provide a firm date to complete its ESI production.

Given OxyChem's prior representations that it could immediately complete its ESI productions, its delay in production is concerning. In September 2019, OxyChem represented that it was prepared to produce all ESI: "when discovery of ESI begins, OxyChem will produce **all** non-privileged, responsive documents identified within the possession, custody, or control of OxyChem employees."[7] However, it was not until August 2020 that OxyChem produced its first volume of ESI. Once again, OxyChem represented that it would complete its ESI production in short order, by the end of September 2020.[8]

OxyChem did not complete its ESI production by the end of September 2020. Nevertheless, on October 14, 2020, OxyChem requested that the Special Master impose "an Order that the parties must complete ESI production *by November 30, 2020*."[9] The parties subsequently agreed to a December 31, 2020 deadline for ESI production.  On December 31, 2020, OxyChem sent the SPG a letter indicating that it would be producing a sizable production in the future, but did not say when.[10] At this point, it is still unclear if OxyChem has completed its ESI production, but what is clear is that OxyChem's unjustified delay in producing a substantial volume of ESI has adversely impacted the SPG's ability to prepare for the next phase of discovery.

---

[7] Letter from Kathy Patrick to Liaison Counsel (Sept. 26, 2019) (emphasis added).
[8] Letter from Kathy Patrick to Special Master Scrivo, ECF 1094 (August 11, 2020) ("We estimate OxyChem's ESI production will be completed, subject to supplementation as warranted, by the end of September.").
[9] Letter from Kathy Patrick to Special Master Scrivo, ECF 1118 (Oct. 14, 2020) (emphasis added).
[10] Letter from John McDermott to Liaison Counsel (Dec. 31, 2020) (stating that "[t]he processing by OxyChem's vendor of an additional production volume (OCC-CER-E007) remains ongoing as a result of its size, and will be produced upon completion.").

16474262.1

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 4

Although OxyChem has repeatedly complained about the pace and timing of the SPG members' ESI productions, it has ultimately proven to be *OxyChem's* actions that give credence to its claim that "it has been demonstrated repeatedly that progress in this case happens only by Court order…"[11] Therefore, the SPG requests that the Special Master require OxyChem to provide a firm date to complete its ESI production.

### c.  Frank Parigi

The SPG is also still awaiting a response from OxyChem relating to the production of Frank Parigi's documents. As a follow up to the November status conference, on December 14, 2020, the SPG wrote a letter to counsel for OxyChem, offering to withdraw its letter motion to compel production of Frank Parigi's documents if OxyChem removed Mr. Parigi from its Initial Disclosures and agreed not to call him as a witness in this case. At this time, the SPG is waiting for a response from OxyChem. Once the SPG receives OxyChem's confirmation and amended Initial Disclosures, the SPG will withdraw its motion before the Special Master, reserving its right to refile should production of Mr. Parigi's documents later become an issue.

### 3.  OxyChem's Responses to Written Discovery

### a.  OxyChem's Response to the SPG's Second Set of Requests for Production

On January 18, 2021, the SPG filed a letter brief requesting that the Special Master order that OxyChem produce documents it has failed to produce in response to the SPG's Second Set of Requests for Production. Following a meet and confer on December 11, 2020, at which time OxyChem indicated it would provide the SPG with a response to its November 25, 2020 letter raising concerns with OxyChem's responses, the SPG has still received no such letter or further response. Although OxyChem represented that it would send a letter to the SPG by December 18, 2020, it did not do so. Accordingly, the SPG filed its motion to compel so that the parties could make progress in resolving this dispute with the Special Master's assistance.

As detailed in the SPG's letter motion, despite having requested these documents several months ago, OxyChem has not produced documents in response to many of the SPG's requests and has further delayed the discovery process by failing to provide a rational basis for its objections nor any explanation that would warrant the deficiencies in its responses. As a result, the SPG is unable to obtain the information it needs—and is entitled to—in order to adequately prepare for depositions in this case. Despite its diligent efforts to resolve this issue through the meet and confer process, resolution evidently will require the Special Master's assistance.

### b.  OxyChem's Response to the SPG's Second Set of Interrogatories

OxyChem similarly has failed to provide the SPG with basic information requested through written interrogatories. Unable to obtain this information through the meet and confer process, the

---

[11] Letter from Kathy Patrick to Special Master Scrivo, ECF 1118 (Oct. 14, 2020).

16474262.1

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 5

SPG also has filed a short motion to compel related to its Second Set of Interrogatories to obtain the Special Master's assistance on this dispute.

Prompted by OxyChem's incomplete and evasive responses to the SPG's straightforward requests for basic information in its first set of interrogatories, and at OxyChem's suggestion during a meet and confer, the SPG served a Second Set of Interrogatories to OxyChem. As the Special Master may recall, despite several attempts to meet and confer on the issue and address it at the monthly status conferences, OxyChem never amended its response to Interrogatory No. 14, which requested that OxyChem identify certain officers, employees, and agents with relevant information relating to the Lister site. As a result, and to resolve the dispute, the SPG served a limited number of additional interrogatories to OxyChem.

On November 16, 2020, OxyChem served its Objections and Responses to the interrogatories. Two weeks later, the SPG sent a detailed letter requesting that OxyChem amend its Responses to correct the identified deficiencies. On December 11, 2020, the parties held a meet and confer during which counsel for OxyChem acknowledged some of these deficiencies and asserted that it would respond to the SPG's concerns in writing by December 18, 2020. As with the SPG's Second Set of Requests for Production, the SPG has received no additional communication of any kind from OxyChem since that time concerning this dispute.

### c.  OxyChem's Responses to Individual SPG Members' Contention Interrogatories

The SPG also requests the Special Master's assistance to resolve the issue of OxyChem's refusal to reasonably respond to straightforward contention interrogatories served by individual SPG members.[12] Instead of the 116 parties each serving a full set of interrogatories, the parties worked to create a master set of standard interrogatories. This effort was designed to minimize the burden on OxyChem and left each party with only five interrogatories to issue individually, which is not a significant number in a case of this magnitude with hundreds of millions of dollars at stake. OxyChem was involved in drafting the standard interrogatories and was well aware that it incorporated subparts (which should not count against the total or individual party interrogatories).

Now that parties have started serving individual interrogatories, OxyChem has responded with blanket objections to individual parties' ability to issue individual interrogatories and has simply pointed generally to its document production in response. These interrogatories seek basic information about the particularized claims asserted against individual SPG members in this litigation. OxyChem wrongly objects to each interrogatory on the basis that the SPG exceeded the

---

[12] Parties who served OxyChem with contention interrogatories include: Bath Iron Works Corp.; Coats & Clark Inc.; Stanley Black & Decker Inc.; Tate & Lyle Ingredients Americas LLC; Public Service Electric & Gas Co.; Honeywell International, Inc.; STWB Inc.; Chargeurs, Inc.; Revere Smelting & Refining Corp.; Berol Corp.; Newell Brands Inc.; Sunoco; TFCF America; Conopco, Inc.; Safety-Kleen Envirosystems Co.; DII Industries, LLC; Hexcel Corp.; Canning Gumm LLC; Pabst Brewing Co. LLC; Goodrich Corp.; Noveon Hilton-Davis, Inc.; Otis Elevator Co.; MI Holdings, Inc.; Hoffman-LaRoche Inc.; Tiffany and Co.; and The Newark Group Inc.

16474262.1

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 6

number of allowable interrogatories.[13] But the SPG's interrogatories do not impact the number of interrogatories that may be filed by the individual parties. The Second Pretrial Scheduling Order specifically provides that "*a party* may serve no more than five (5) additional interrogatories." (ECF. No. 550 at ¶ 16) (emphasis added). The plain language of the Order makes clear that the intent was not to limit the number of additional interrogatories to five *per side,* as OxyChem claims, but rather to five per party. This is just common sense. Individual parties are entitled to a full and complete response from OxyChem that provides the bases for its claims against each defendant.

Substantively, OxyChem's responses are also plainly deficient. OxyChem does not provide a narrative response and instead attempts to invoke Rule 33(d) by merely referring each party to its own discovery responses and document productions, which often consisted of tens of thousands of documents. The plain language of Federal Rule of Civil Procedure 33(d) is clear: parties responding to interrogatories by reference to documents must specify the documents "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." OxyChem knows this, as it made exactly this same argument in the past. *See, e.g.*, Conf. Tr. Sept. 19, 2019 at 51:12-16 (arguing that "referring to documents that will be produced, but not identifying them with reasonable specificity" violates Rule 33(d)). OxyChem cannot have it both ways, and its attempt to invoke Rule 33(d) by vaguely referring to thousands of documents is inappropriate.

OxyChem sent the SPG a letter on January 18, 2021 proposing an alternative approach to contention interrogatories. While the SPG will need to review and consider its proposal and will meet and confer with OxyChem on the issue, it will likely require the Special Master's assistance in the future.

### 4. <u>Status of Responses to the SPG's Non-Party Subpoenas</u>

Between August and October 2020, the SPG served 17 document subpoenas. All but one of these were served upon current or former consultants to Maxus, Tierra, or OxyChem related to the Diamond Alkali Superfund Site.

The SPG has followed up diligently on the consultant subpoenas, including regular calls with many of the subpoena recipients to discuss the progress and scope of their document collection efforts. While many of the consultants have made progress collecting responsive documents, to date the SPG has only received one document production represented as complete (from a public relations consultant) and a partial production (consisting of only 161 documents) from one of OxyChem's main scientific consultants.

The SPG understands from its discussions with several of the consultants that whatever responsive documents they collect will be (or already have been) provided to OxyChem's counsel

---

[13] By providing a (deficient) written response, OxyChem effectively waived its objection based on exceeding the limit on the number of interrogatories.  An objection based on numerical limits could not justify OxyChem's provision of deficient responses.

16474262.1

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 7

for a privilege review prior to any production. OxyChem's review process is likely to significantly delay production to the SPG of documents responsive to the subpoenas; however, the SPG nevertheless expects to begin receiving rolling productions from a handful of the consultants by the end of January.

### 5. <u>Third Party Joinder</u>

At present, no deadline has been set by which third party claims must be filed in this case. Nonetheless, the SPG would like to ensure that the filing of such claims does not unduly delay this litigation or prejudice any parties. Therefore, despite the SPG's reluctance to file third party claims because it will significantly increase the number of parties in this matter and also likely lead to fourth party practice, the SPG may need to file its third party claims in the near term unless the Special Master finds that there is no need to file such claims now. The filing of third party claims may warrant additional discussion in terms of how it will impact the timing of deposition discovery and the modifications of deadlines and other case management orders and protocols.

### 6. <u>Fact Discovery Deadline</u>

Finally, the SPG would like to address the current fact discovery deadline of January 27, 2021. While this has been understood by the parties and the Special Master to be a largely aspirational deadline, it bears mention as a logistical matter to address at the upcoming conference. The SPG requests that the Special Master extend the deadline by one year to January 27, 2022.

\*   \*   \*

Thank you for your time and consideration. I look forward to discussing these and other matters further with you on January 20, 2021.

Respectfully Submitted,

*Common Counsel for the Small Parties Group*

/s/ Jeffrey D. Talbert
**PRETI, FLAHERTY, BELIVEAU &**
**PACHIOS, LLP**
One City Center
Portland, ME 04101
Telephone: 207.791.3239
Jeffrey D. Talbert, Esq. (admitted *pro hac vice*)

JDT:klo

16474262.1