**PretiFlaherty**

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

January 18, 2021

**VIA E-MAIL AND ECF**

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009
tscrivo@oslaw.com

      RE:    *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.*
                Docket No. 2:18-cv-11273-MCA-LDW

Dear Special Master Scrivo:

      In accordance with the protocol set forth in your letter dated September 6, 2019, (ECF. No. 755), this letter submitted on behalf of the Small Parties Group ("SPG") seeks relief related to Occidental Chemical Corporation ("OCC")'s November 16, 2020, Objections and Responses to the SPG's Second Set of Interrogatories (the "Responses") (attached as **Ex. A**). This is the second time that OCC has given incomplete and evasive responses to the SPG's straightforward requests for basic information. And although OCC has acknowledged some of the deficiencies in its Reponses, OCC has failed to supplement or otherwise amend them. The SPG now respectfully requests that OCC be ordered to provide the complete responses to which the SPG is entitled.

      **I.**      **Procedural Background**

      OCC's deficient responses to the SPG's interrogatories started with its responses to the SPG's First Set of Interrogatories. In particular, Interrogatory No. 14 requested that OCC identify individuals "who played a substantive role or had supervisory responsibilities" at the Lister Site, or who had knowledge of ownership, operations, production, discharges, or response actions. Although the clear purpose of this interrogatory was to obtain information about individuals with knowledge relevant to this litigation, OCC did not fully provide this information. On July 21, 2020, the SPG requested that OCC amend its deficient response to identify each individual with substantive information responsive to Interrogatory No. 14. The parties discussed these issues in the months that followed, and OCC acknowledged the requested information was relevant, but it never amended its response. Instead, it invited the SPG to serve additional interrogatories to obtain that information.

      Rather than bring the discovery dispute to the Special Master at that time, the SPG followed OCC's suggestion and served its Second Set of Interrogatories (attached as **Ex. B**) on October 16, 2020, to obtain this basic information. But OCC's Responses, served on November 16, 2020, continued to suffer from many of the same deficiencies as its response to Interrogatory No. 14. Thus, the SPG sent a letter to OCC on December 2, 2020, requesting that OCC amend its Responses to correct the identified deficiencies. On December 11, 2020, the parties held a meet and confer during which counsel for OCC acknowledged some of the deficiencies and said OCC

Preti Flaherty

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 2

would address the SPG's concerns in writing by the end of the following week. To date, the SPG has received no additional communication of any kind from OCC on these issues.

## II. Argument

OCC has not fully and completely responded to the SPG's interrogatories, which seek basic information related to this litigation. "Interrogatories are a discovery device designed to obtain simple facts and can be a simple mode of obtaining the names and addresses of persons having knowledge of pertinent facts." *Williams v. Acxiom Corp.*, No. 2:15-CV-08464-ES-SCM, 2017 WL 945017, at *2 (D.N.J. Mar. 10, 2017) (alterations and internal quotations omitted). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). The responding party "must make a reasonable effort to respond," and "shall use common sense and reason." *Williams*, 2017 WL 945017, at *2. Where a party knows or should have known that something was responsive and should have been identified, the resulting response is incomplete and incorrect. *Younes v. 7-Eleven Inc.*, 312 F.R.D. 692, 707, 710 (D.N.J. 2015). Where a response is incomplete or incorrect, it must be supplemented. Fed. R. Civ. P. 26(e)(1)(A) (stating that a party who has responded to an interrogatory must supplement its disclosure if it learns that the disclosure is incomplete or incorrect). For the reasons set forth below, each of OCC's Responses are deficient, and its so-called "Preliminary Statement" should also be stricken from its Responses.

### a. OCC's Response To Interrogatory No. 1 Is Deficient Because It Fails To Fully Identify All Individuals That Are Responsive To The Request.

Interrogatory No. 1 seeks identification of all employees, directors, officers, and/or agents of OCC with knowledge of and/or involvement in activities related to operation, closure, and/or cleanup of contamination at or from the Lister Site. As with the SPG's prior Interrogatory No. 14, this is a straightforward interrogatory designed to obtain information about individuals with knowledge relevant to this case. Because OCC failed to identify many such individuals in its response to Interrogatory No. 14—claiming instead that the SPG did not use the precise language necessary to obtain this information—Interrogatory No. 1 specified the exact types of individuals that OCC should identify. Despite this, OCC's Response is still incomplete and evasive.

As an initial matter, OCC's Response to Interrogatory No. 1 is incomplete because OCC fails to properly "Identify" any of the individuals listed. "Identify" is a defined term, requiring OCC to "state the name, business position or title, and most recent contact information (address, email and telephone number) of such Person, Persons, business organization or entity, and to describe the areas of relevant knowledge as requested in the interrogatory." OCC presumably understood this definition when it provided the information for each individual it identified in its Response to Interrogatory No. 14. Indeed, at the December 11, 2020 meet and confer, counsel for OCC acknowledged this deficiency and said it would be fixed, but still has not done so.

In addition to omitting required information for the individuals it does identify, OCC's Response fails to even list many other relevant individuals. One of the ways in which OCC does this is by mischaracterizing Interrogatory No. 1 as containing three discrete subparts. But

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 3

Interrogatory No. 1 plainly requests that OCC identify individuals with relevant knowledge, and the remainder of the Interrogatory merely provides examples of individuals that would fall into this category. It does not create discrete subparts. *See Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 12CV00787FLWLHG, 2017 WL 2371834, at *5 (D.N.J. Feb. 10, 2017), *report and recommendation adopted*, No. CV 12-787 (FLW)(LHG), 2017 WL 2367051 (D.N.J. May 31, 2017) (reasoning that an interrogatory regarding a particular category constitutes one interrogatory even though the category may contain multiple items); Rule 33 Advisory Committee Note, 1993 (explaining that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication"). Given the back-and-forth regarding the specificity of Interrogatory No. 14, as mentioned above, the detail explaining what is requested by Interrogatory No. 1 is appropriate and should not be misconstrued as creating discrete subparts. And OCC should not be able to parse the language of an interrogatory once again to avoid providing key information in the case.

For purposes of clarity when talking about the deficiencies in OCC's Responses, the SPG will separately address each "subpart" identified in its Response. As to subpart (a), operation of the Lister Facility, OCC's Response is incomplete. OCC does provide the names of certain Occidental Chemical Company and Hooker Chemicals & Plastics employees, but it omits other former employees that might have relevant information regarding Hooker's supply of chemicals to the Lister plant in the 1960s, the Chemicaland tolling agreement entered into by OCC in the 1970s, and its direct involvement with and knowledge of Chemicaland operations (*see, e.g.*, **Ex. C** at 2 ("Occidental's Sam Long acted as site plant manager during part of Occidental's support for Chemicaland."); **Ex. D** at 1 (listing names of Diamond Alkali Company and Hooker Chemical Corporation employees with knowledge of Hooker's sale of chemicals)).

Subpart (b) is also incomplete. OCC claims that it is not aware of *any* employees, directors, officers, or agents with knowledge of or involvement in the closure of the Lister Facility. But OCC was the last company to operate the Lister Facility before it was abandoned in 1977, leaving dangerously-contaminated drums and equipment on-site and unattended (*see, e.g.*, **Ex. E** at 3 ("Occidental Chemical Company, formerly Hooker Chemical, was the party that shut down the operation.")). OCC's Response should be supplemented to identify individuals with knowledge of these events. OCC cannot continue to obfuscate its own direct involvement at the Lister Facility by refusing to provide this basic information.

For subpart (c), individuals with knowledge of cleanup activities, OCC responds by generally referring to two documents, one 594 pages long and the other 181. This is not a sufficient response. *See* Fed. R. Civ. P. 33(d)(1) (explaining that the responding party must specify the documents "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could"). Moreover, these documents, along with OCC's initial disclosures, are limited to the time period *after 2016*. However, the cleanup of the contamination related to the Lister Facility has been going on since the early 1980s, and OCC has been ultimately responsible for the cleanup since it became the successor to Diamond Shamrock in the mid-1980s (*see* **Ex. F** at 1 (Occidental Electrochemicals Corporation ("OEC") agreed to clean up Lister Site

16474266.1

Preti Flaherty

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 4

in the 1980s); **Ex. G** at 4 (OEC merged into OCC)). While OCC may wish its involvement at Lister only began in 2016, it did not. And the SPG is entitled to a list of current or former employees, directors, officers and agents of OCC with knowledge of activities going back to the 1980s, including but not limited to those individuals who have knowledge of the 1980s and 1990s investigation and sampling of drums left when OCC ceased operations at the site in 1977 (*see, e.g.*, **Ex. H** at 2 (seeking OCC's records to characterize site materials)), those individuals who had responsibility for overseeing work performed by Maxus and Tierra on OCC's behalf, and those individuals who communicated with regulatory agencies relating to the Diamond Alkali Superfund Site.

Finally, OCC should also be required to provide this information for relevant employees of Maxus or Tierra, as Interrogatory No. 1 specifically requests that OCC identify all agents of OCC, which includes its indemnitors Maxus and Tierra. OCC has claimed it had a "bedrock alliance" with its indemnitors, that Maxus, Tierra, and OCC shared joint counsel for relevant time periods in this case, and that Maxus and Tierra repeatedly represented to government officials that they were acting on OCC's behalf. (ECF No. 1102). Because its indemnitors acted on behalf of OCC under the indemnity agreement, OCC should provide information for current or former Tierra and Maxus employees who were involved in work related to the Passaic under the agreement.

### b. OCC's Response To Interrogatory No. 2 Is Deficient And Incomplete.

Interrogatory No. 2 is similarly straightforward. In it, the SPG requested that OCC identify the contractors and consultants that have performed work on behalf of OCC, Maxus, or Tierra relating to the Site. Instead of fully responding to this, OCC directs the SPG to dig the information out of thousands of pages of documents. Once again, this is not an appropriate use of Fed. R. Civ. P. 33(d), as OCC has not pointed with any specificity to records that will identify the names, roles, and contact information of each relevant individual. OCC does reference Maxus and Tierra's Initial Disclosures, which include contact information for some consultants and contractors, but this document is more than a decade old. OCC should provide the SPG with updated information for these individuals since the burden of deriving this information is not the same for the SPG as it would be for OCC.

Notably, OCC recently submitted a declaration to the Special Master from David Rabbe, (ECF. No. 1102-5), that identified 56 contractors or consultants who have performed work on OCC's behalf related to the Site. This Interrogatory simply requests that OCC describe the work performed by each such consultant or contractor (and any others not identified in Mr. Rabbe's declaration), including any studies or publications that have been prepared relating to the Site, the Lister Facility, and the Lower Passaic, or the human health or environmental effects of 2,3,7,8-TCDD. This information is readily available to OCC.

### c. OCC's Response To Interrogatory No. 3 Is Deficient Because It Fails To Identify Relevant Individuals.

Interrogatory No. 3 seeks identification of individuals with knowledge of settlement agreements related to the Lister Facility, the Lower Passaic River, and Newark Bay. Although

16474266.1

Preti Flaherty

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 5

OCC incorporates by reference the settlement agreements that indicate the signatory for each agreement, it fails to provide all of the information required by the interrogatory for each such individual. Moreover, OCC's Response fails to identify other individuals who may have been involved in the negotiation or implementation of such agreements. OCC admits that unnamed "various current and former members of OCC, Occidental Petroleum Corporation, and Glenn Springs Holdings, Inc. in-house counsel and management have knowledge of certain facts," but says the knowledge is "based on privileged communications with outside counsel." Interrogatory No. 3 does not seek any privileged information—it simply requests that OCC identify all persons with knowledge related to each settlement agreement that it lists in its Response to Interrogatory No. 16. While OCC's Response specifically identified two individuals with knowledge of negotiations relating to the 2016 ASAOC, it has failed to identify even a single individual with knowledge of any of the many other settlement agreements entered into over the years relating to the release of hazardous substances at or from the Lister Facility. The identity of such individuals clearly is discoverable and not privileged.

### d. OCC's Response To Interrogatory No. 4 Is Deficient Because It Fails to Identify Relevant Individuals

Interrogatory No. 4 seeks information—and persons with knowledge—related to OCC's investigations into contamination at the Lister Facility before finalizing the stock purchase agreement that made it ultimately liable for all of Lister's contamination. OCC indicates that its investigations were driven by information provided by Maxus, yet it fails to identify *any* Maxus individuals. And OCC fails to provide all of the relevant contact information for the individuals that OCC does list. Additionally, the SPG disagrees with OCC's assertion that information related to OCC's purchase of the stock of Diamond Shamrock—who was responsible for environmental liabilities at the Lister Facility—is somehow not relevant. This information is plainly relevant, and OCC should supplement its Response to provide a full and complete response.

### e. OCC's "Preliminary Statement" Is An Improper Attempt To Inject Its Themes Into Its Responses And Should Be Stricken.

Lastly, the SPG objects to inclusion of OCC's "Preliminary Statement" in its Responses. As with the "Preliminary Statement" that OCC attempted to include in its Responses to the SPG's First Set of Interrogatories, this "Preliminary Statement" is clearly an improper attempt to inject unresponsive, self-serving material into OCC's Responses, and the SPG requests that the Special Master order OCC to strike it from the Responses. *See Anglin v. Vill. of Washington Park*, No. CIV. 03-846-MJR, 2006 WL 1308579, at *1 (S.D. Ill. May 10, 2006) (determining that a "preliminary statement" prefacing a party's discovery response would be "stricken and without effect," because "[a] party cannot condition its responses to discovery requests").

### III. Conclusion

For the above reasons, the SPG respectfully requests that the Special Master order OCC to supplement its Responses to cure the identified deficiencies and to provide the SPG the basic information that it is entitled to.

16474266.1

Preti Flaherty

Special Master Thomas P. Scrivo, Esq.
January 18, 2021
Page 6

                                                            Respectfully Submitted,

                                                            Jeffrey D. Talbert
                                                            *Common Counsel for the Small Parties Group*

Attachments – Exhibits A-H

16474266.1