



Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

January 26, 2021

*Via CM/ECF*

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

    **Re:**  *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*
       **Civil Action No. 2:18-cv-11273-MCA-JAD**

Dear Special Master Scrivo:

  "Modern federal civil litigation is not designed to be a guessing game, ***nor a war of attrition between the litigants***." *E.E.O.C. v. Ruby Tuesday, Inc.*, No. 2:09-cv-01330, 2012 WL 2116518, at *3 (W.D. Pa. June 11, 2012) (emphasis added).

  The SPG Defendants have *for years* possessed more information than they could possibly need from OxyChem. Beyond the productions they obtained in the Spill Act case and the Maxus/Tierra Bankruptcy—and the productions from OxyChem in this lawsuit starting in March 2019—the SPG Defendants now have OxyChem's extensive ESI production. Despite this mountain of information on every conceivable subject relevant to OxyChem's claims, the SPG now insists it needs a full, *third year* of fact discovery from OxyChem, as well as consultants to OxyChem, Maxus and Tierra. The SPG's Second Requests for Production and its January 18, 2021 letter (ECF 1145) seeking an order compelling production of documents demonstrate how it plans to spend that year, if left unchecked: a strategy of attrition designed to ensure discovery *never* ends.

  And while OxyChem believes the nine requests addressed by the SPG's letter are nothing more than wasteful distractions, if their liaison counsel's motion to compel is successful, each SPG Defendant has put at issue and waived any objection to reciprocal discovery by OxyChem of a range of tangential subjects, including:

  (a) Each SPG Defendant's decision to participate (or not participate) in the Batson allocation process, and its decision regarding which information to share or withhold from Mr. Batson;

(b)  details regarding each SPG Defendant's participation or non-participation in the CPG, including communications with other CPG members regarding their cooperation in cleaning up the Passaic River;

(c)  company-wide waste-disposal and handling practices during the entire period each SPG Defendant operated its facility at the Diamond Alkali Superfund Site, and whether the facility named in OxyChem's Complaint complied with those practices;

(d)  information regarding the financial condition of each SPG Defendant and its affiliated companies;

(e)  each SPG Defendant's experience with or knowledge of remediating ROD COCs at other locations, including (among others) Givaudan's Seveso, Italy disaster; General Electric's remediation of its PCB contamination throughout the Hudson River; and Pharmacia's remediation of PCBs at sites through the country.

These topics far exceed the scope of permissible discovery in this case. This letter response divides the documents sought by the SPG into three categories: (1) documents OxyChem will not produce because they are far outside the scope of discovery; (2) documents OxyChem has produced *but only if* related to the Diamond Alkali Superfund Site; and (3) documents containing information OxyChem has already provided.

**A.   Documents far outside the scope of discovery (Requests 17, 18, 22 and 24).**

In four of its Requests, the SPG seeks to compel documents so far outside the scope of appropriate discovery that OxyChem stands on its objections and will not produce the requested documents—to the extent such documents even exist.

   *i.   Love Canal*

The SPG seeks "documents referring to OxyChem's involvement in and knowledge of Love Canal."[1] Love Canal is a site in Niagara Falls, New York—hundreds of miles away from the Passaic River. The SPG's Request is based on the vague premise that such documents are relevant because OxyChem was a potentially responsive party (PRP) at Love Canal, and dioxin was a contaminant of concern (COC) at both Love Canal and at the Diamond Alkali Superfund Site.

This is an obvious overreach. Love Canal has nothing to do with the Passaic River. To even suggest a factual link, the SPG resorted to misrepresenting a brief passage of deposition testimony as "confirming" that Love Canal somehow factored into an OxyChem predecessor's decision not to purchase a company that operated the Lister Site in the 1970s.[2]

---

[1] *See* Second Request for Production from SPG to OxyChem, SPG Ex. A (ECF 1145-1) ("SPG's Request"), at No. 24.

[2] The SPG attempts to manufacture a link between the two sites, asserting that "Spill Act deposition testimony confirmed that 'Hooker's involvement at Love Canal' was a likely reason" a predecessor of OxyChem decided not to

Special Master Thomas P. Scrivo, Esq.
January 26, 2021
Page 3

Moreover, indulging the SPG's premise that documents from other sites are discoverable because they have similar PRPs and COCs would impermissibly and unnecessarily expand the scope of discovery because each SPG Defendant would have to produce reciprocal discovery regarding its experience at other sites with the same or similar COCs. For example, Givaudan Corporation would be required to produce documents related to its plant in Seveso, Italy, the industrial disaster at that plant in 1976, and the related cleanup.[3] General Electric Corporation would be required to produce the documents related to its extensive cleanup of its PCB contamination in the Hudson River.[4] Pharmacia Corporation would be required to produce the documents related to its investigation and remediation of PCBs at locations throughout the country.[5] This case is a cost recovery and contribution action for response costs incurred at the Diamond Alkali Superfund Site, not these other sites.

> ii. *OxyChem's "decisions" to cease participating in the CPG or participate in the Batson allocation.*

Similarly, the SPG Defendants seek documents from OxyChem relating to what it characterizes as OxyChem's "decision to withdraw and/or cease participating in the Cooperating Parties Group in or about 2012" and "decision not to participate in the allocation being conducted by David Batson of AlterEcho in coordination with USEPA.[6] According to the SPG, this information is relevant to show a lack of cooperation with the government by OxyChem. OxyChem is the only party that stepped up to design OU2 remedy selected by EPA, and the party whose indemnitors spent millions of dollars on EPA-directed investigation and remediation projects at the Diamond Alkali Superfund Site.

The decision of whether to participate in a non-binding allocation process is not evidence of "cooperation" in a remediation. CERCLA gives OxyChem a statutory right to a Section 107 and Section 113 causes of action. Cooperation is evidenced by the dollars and effort that OxyChem is currently expending on the Passaic while the SPG Defendants watch from the sidelines.

---

purchase a company called Chemicaland that operated the Lister Site during the 1970s. But the actual testimony, from a former employee speculating about the meaning of a memo authored by a *different* employee nearly 40 years earlier, says something quite different: "*I don't have a specific knowledge of a direct link*. I assume that that is because of Hooker's involvement at Love Canal. . . I don't recall the timing of the matters at Love Canal. I wasn't involved in any of that. . . . ***That's pure speculation on my part***." *See* Apr. 7, 2015 Dep. Tr. of Robert McIntyre, SPG Ex. H (ECF 1145-8) at 96:17-97:25 (emphasis added).

[3] *See*, *e.g.*, The New York Times: "Dioxin of '76 Italian Incident Reported Destroyed" (available at https://www.nytimes.com/1986/07/14/us/dioxin-of-76-italian-accident-reported-destroyed.html).

[4] *See*, *e.g.*, Hudson River PCBs Site – Record of Decision, at 2 ("The predominant sources of PCB contamination to the Upper Hudson River were two capacitor manufacturing plants owned and operated by [General Electric].").

[5] *See*, *e.g.*, Department of Justice Press Release, "United States Announces Settlement for Comprehensive Study of Comprehensive PCB Contamination in Anniston, Alabama" (available at https://www.justice.gov/archive/opa/pr/2002/October/02_enrd_613.htm).

[6] *See* SPG's Request Nos. 17 and 18.

Special Master Thomas P. Scrivo, Esq.
January 26, 2021
Page 4

Again, the SPG's purported need for documents related to these subjects would require reciprocal discovery by OxyChem, including of each Defendants' decision to participate, and its decisions regarding which documents to provide—and which to withhold—from Mr. Batson.

### iii. The "financial condition" of OxyChem and its affiliates.

The SPG seeks "all documents related to the financial condition" of OxyChem and Glenn Springs Holdings, Inc.  It also seeks this information for Miller Springs Remediation Management, Inc. (an OxyChem affiliate that never had anything to do with the Passaic River) and Conestoga-Rovers Associates (a *third-party* that owned a minority interest in Miller Springs).[7]

The SPG claims it needs this information "to the extent OCC intends to make any equitable arguments based on its financial condition, or its (in)ability to pay for the cleanup of the Passaic River." SPG Ltr. At 4.  But OxyChem has not made such arguments.  And when OxyChem served a Request seeking supporting information for any party *intending* to make an inability to pay claim, the SPG stonewalled.[8]

Absent an inability to pay claim, this information is not relevant.  And, again, this expansion of discovery by the SPG would require reciprocal discovery regarding the same extensive financial information from every SPG Defendant.

### B. Documents that OxyChem has produced—*if related to* the Diamond Alkali Superfund Site (Requests 5 and 28).

### i. Company-wide "waste disposal and handling practices."[9]

Throughout discovery, the SPG Defendants have insisted that the scope of discovery does not extend beyond the specific property or facility named in OxyChem's Complaint.[10] Yet those same Defendants—many of whom operated along the Passaic River for *decades*—seize on a period of *less than four months* in 1976-77 when a predecessor of OxyChem considered purchasing Chemicaland Corporation, a company that operated the Lister Site at that time. According to the SPG, this brief evaluation of a potential acquisition triggers unqualified discovery into "waste disposal and handling practices" at any site, *anywhere*, by OxyChem or any predecessor or affiliate.

---

[7] *See* SPG's Request No. 24.

[8] *See, e.g.,* Ex. A, Defendants' Omnibus Objection to OxyChem's First Request for Production of Documents, at No. 25 ("Defendants object to this Request as overly broad and premature. Moreover, the Request seeks production of documents or information that may relate to expert opinions regarding the subject matter of the Request. Defendants further object to this Request as premature and because it assumes conclusions that have not been reached.")

[9] *See* SPG's Request No. 5.

[10] *See*, *e.g.*, Ex. B, Mar. 8, 2019 Letter from SPG to OxyChem re: Omnibus Objections to OxyChem's First Request for Production of Documents, at 2 ("Defendants will only produce documents related to properties specifically identified in Occidental's Complaint.").

Special Master Thomas P. Scrivo, Esq.
January 26, 2021
Page 5

Discovery into operations and practices at different and geographically remote sites is not relevant or proportionate to this lawsuit.

> ii. *Prior testimony of fact witnesses unrelated to the Diamond Alkali Superfund Site*

The SPG seeks to compel transcripts of prior testimony by individuals OxyChem has identified as having knowledge of facts relevant to this lawsuit. But the SPG does not seek just testimony relevant to this lawsuit—which OxyChem has already produced, or will produce to the extent not already identified. The SPG seeks *all* testimony ever given, anywhere, regarding *any* subject.[11]

The SPG's explanation is that such transcripts are "routinely requested" for purposes of offering into evidence if a witness is unavailable at trial, or to impeach experts with their own prior testimony. Neither explanation makes sense. If the prior testimony has nothing to do with the Diamond Alkali Superfund Site, that testimony would be neither useful nor admissible at trial. And the SPG's Request has nothing to do with experts—the parties have not yet even disclosed their testifying experts.

**C.   Information OxyChem has already provided (Requests 14, 21, and 25).**

Finally, the SPG seeks an order compelling information it claims OxyChem "refuses" to produce. But OxyChem has *already* produced the requested information, and there is no basis for the SPG's open-ended requests for additional, redundant information that is only marginally relevant—if at all.

> i. *Documents related to the transition of documents from the Maxus Liquidating Trust to OxyChem.*

The SPG claims to need all documents related to the transfer of materials from the Maxus Liquidating Trust to OxyChem in the Maxus Bankruptcy Proceeding.[12] But the SPG already has any information it needs regarding these transfers including, among other information: the orders entered by the court in the Maxus Bankruptcy proceeding,[13] which set forth the basis for and scope of those transfers, and information included with those orders, as well as indexes listing thousands

---

[11] *See* SPG's Request No. 28.

[12] *See* SPG's Request No. 14.

[13] *See* OxyChem's Objections and Responses to SPG's Request, at No. 14, SPG Ex. B (ECF 1145-2) ("Plaintiff further objects that information responsive to this request is set forth in orders entered by the court in *In re Maxus Energy Corporation et al.*, which are already in the possession of the SPG Defendants. *See* July 18, 2017 Stipulation and Consent Order Authorizing the Debtors to Provide Certain Potentially Privileged Documents and Communications to the Liquidating Trust and OCC; April 24, 2018 Stipulation and Consent Order Authorizing Liquidating Trust to Provide Potentially Privileged Documents and Communications to OCC, YPF, and Repsol Subject to Non-Waiver and Clawback Agreement.")

Special Master Thomas P. Scrivo, Esq.
January 26, 2021
Page 6

of boxes of files stored in Iron Mountain.[14] The SPG also served a subpoena on the Maxus Liquidating Trust, and received a production of documents in response.[15] Particularly in light of the information the SPG already possesses on this subject, there is no basis for wasteful discovery-on-discovery about the Maxus Bankruptcy proceeding.

   *ii. Employees and Corporate Structure of OxyChem and its affiliates.*

The SPG contends that OxyChem has "flatly refused" to produce information identifying its and its affiliates' employees, and documents showing the corporate structure of various entities.[16] The SPG claims to need this information "to fully unravel the labyrinthine relationships between and among the various parents, subsidiaries, and affiliates that have all been involved in various degrees at various times since the 1986 merger."[17]

This premise—and OxyChem's "flat refusal"—is imagined. OxyChem has already produced extensive information regarding the entities involved in the 1986 purchase of the active chemicals business of DSCC, and subsequent merger.[18] And the substantive documents produced by OxyChem identify any employees relevant to any issues in this case. In addition, although not relevant to any issue in this lawsuit, OxyChem has produced information regarding the formation, structure, function, and employees of its remediation affiliates GSH and Miller Springs. This includes two deposition transcripts of Jo Ellen Drisko, the former president of GSH, in which she testifies at length regarding these issues, and a substantial collection of documents relating to the formation and structure of both companies.[19] In its prior written discovery responses, OxyChem even specifically identified the relevant Bates range of documents—the same documents the SPG now claims OxyChem "flatly refuses" to produce.[20]

* * * * *

---

[14] *See* Ex. C, Letter from OxyChem to all Defendants attaching Tierra's index of files stored at Iron Mountain, dated February 15, 2019.

[15] *See* Ex. D, Subpoena to Produce Documents from the SPG to The Maxus Liquidating Trust, dated March 7, 2019.

[16] *See* SPG's Request Nos. 21 and 25.

[17] SPG's Letter to the Special Master at 2 (ECF 1145).

[18] *See*, *e.g.*, OxyChem's Response to Statement of Material Facts and Counter-Statement of Material Facts (ECF 967-1) and Certification of John J. McDermott, Esq., in Support of OxyChem's Response to the SPG's Motion for Partial Summary Judgment on Successor Liability (ECF 967-2), and Exhibits 1-27 cited therein (ECF 967-3 through ECF 967-6).

[19] The SPG has been in possession of Ms. Drisko's deposition transcript since 2017. *See* Order Establishing Discovery Procedures in *In re: Maxus Energy Corp.*, No. 16-11501 at 5 (ECF 1132-5).

[20] *See* Ex. E, Plaintiff's Response to Defendants First Joint Request for Production, at No. 41. ("Plaintiff states that documents related to the "formation of Glenn Springs Holdings" were produced to defendants within in the Oxy Spill Act Production. *See* HIGHLY CONFIDENTIAL documents Bates stamped OCCNJ-GSH0000001 through OCCNJ-GSH0003340.")

Special Master Thomas P. Scrivo, Esq.
January 26, 2021
Page 7

      The SPG Defendant's January 18, 2021 letter goes far beyond any reasonable interpretation of the scope of discovery in this case. It also disregards the limitations the SPG Defendants have imposed on discovery of their own information, demonstrates a failure to conduct basic diligence regarding what information is already in its possession, and shifts the burden to OxyChem to catalogue that information for the Defendants. The SPG's request for an order compelling OxyChem to produce documents should be denied.

      Respectfully submitted,

      Kathy D. Patrick

      /s/ *John J. McDermott*

      John J. McDermott

cc:    All counsel of record

220207624v3