**PretiFlaherty**

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

February 1, 2021

<u>**VIA E-MAIL AND ECF**</u>

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009

tscrivo@oslaw.com

      RE:    *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.*
                 **Docket No. 2:18-cv-11273-MCA-LDW**

Dear Special Master Scrivo:

      The Small Parties Group ("SPG") simply requested that Occidental Chemical Corporation, Inc. ("OCC") produce clearly relevant documents in response to targeted requests for production. This is hardly unreasonable or fairly described as a "war of attrition between the litigants."[1] Instead of providing these documents, or a straightforward answer to the SPG's requests, OCC refused to engage in significant discussion with the SPG about its objections, necessitating this Motion to Compel.[2]

      The SPG intends to meet and confer with OCC, as the Special Master requested at the January conference, but submits this short letter to briefly address certain statements in OCC's letter regarding the history and substance of the requests.

      The SPG did not simply move to compel; rather, the SPG sent a detailed letter on November 25, 2020, held a meet-and-confer on December 11, 2020 regarding some of the concerns raised in the letter (and the SPG discussed its willingness to narrow its requests), and waited for a detailed written response that OCC promised would be provided a week later but never sent. The SPG then moved to compel on a narrow set of the issues raised in its November letter.[3]

      OCC is the standout party in this litigation (which, after all, concerns a Superfund site literally named for the Diamond Alkali chemical plant—the "Lister Plant"—operated by an entity,

---

[1] OCC Letter to the Special Master, dated January 26, 2021, at 1 (ECF No. 1150) ("Opp.").
[2] This is not the first time OCC has forced the SPG to resort to motion practice to address OCC's evasiveness in discovery. *See* Brief in Support of Defs.' Mot. to Compel Production of Occidental Chem. Corp.'s Sampling Data, ECF No. 624-1; Brief in Support of Mot. by the Small Parties Grp. to Produce Documents it has Withheld as Privileged or Protected, ECF No. 1091-1.
[3] The SPG still has not received answers to its other questions regarding OCC's objections and responses (*see* ECF No. 1145-2), and looks forward to receiving a written response from OCC that will make its responses intelligible, so the SPG can evaluate what OCC will and will not produce in response to all the requests.

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
February 1, 2021
Page 2

the Diamond Shamrock Chemicals Company ("DSCC"), whose liabilities OCC has inherited).[4]  It is beyond dispute that DSCC "intentionally and knowingly discharged hazardous pollutants," including dioxin, "with full awareness of their inevitable migration to and devastating impact upon the environment."[5]  Judge Arleo has already ruled that OCC "may be held liable for . . . costs flowing from DSCC's operation of the Lister Plant."[6]  And OCC itself operated the Lister Plant in the 1970s—a fact that OCC glossed over (*see* Opp. 4).[7]  Given OCC's unique responsibility for the cleanup of one of the most dioxin-contaminated rivers in the world, OCC is simply wrong that the SPG's requests are "far outside the scope of discovery" (Opp. 2).  It is telling that rather than fully respond on the merits to the SPG's arguments, OCC chose to threaten hypothetical future reciprocal discovery (*see* Opp. 1-2), which is neither relevant nor before the Special Master on this Motion.

### Love Canal (Request No. 22):

The SPG does not suggest that Love Canal is *physically* connected to the Passaic River.  But OCC's experiences with dioxin contamination and remediation at this infamous Superfund site are relevant to the degree-of-care factor (which OCC ignores, *see* Opp. 2-3), and informed OCC's decision not to acquire the Lister Plant in the 1970s (which, again, OCC directly operated—another fact to which OCC gives short shrift in opposition).  Opp. 4.  OCC tries to paint a picture that it had nothing to do with the Lister Plant until its indemnitor went into bankruptcy, but the truth is that its connections go back decades to the 1960s, when its predecessor supplied chemicals from its Niagara Falls plant (the location of Love Canal) used in the Lister Plant's manufacturing process.[8]

OCC well knows that the SPG is not seeking these documents merely because dioxin was found at Love Canal and in the Passaic River.  OCC's objection to the request did not state that no such documents existed—it stated that even if documents existed, they would not be produced.[9]

### Refusal To Participate In The CPG And Batson Allocation (Request Nos. 17-18)

OCC—the entity now responsible for all the Lister Plant liabilities—simply asserts, with no citation to authority of any kind, that its refusal to participate in the EPA-convened Batson Allocation, and to leave the *Cooperating* Parties Group, is not relevant to cooperation—one of the applicable factors that the Court is to consider in an equitable allocation of responsibility for such Site-related liabilities.[10]  OCC has repeatedly sought to present itself as the only party that is

---

[4] *See generally* Letter Order, ECF No. 1105.
[5] *Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*, 609 A.2d 440, 454-55 (N.J. Super. Ct. App. Div. 1992).
[6] Letter Order, ECF No. 1105, at 4.
[7] *But see* SPG Letter to the Special Master, dated Jan. 18, 2021, at 4 (ECF No. 1145) ("Mot.") & Ex. E (ECF No. 1145-5).
[8] *See, e.g.*, Aff. of Hadley Bedbury in Support of Plf.'s Mot. for Summ. J. on Phase I Issues (Liability), ¶ 7, dated July 1, 1994 (attached as **Exhibit J**) ("[I]t appears that the TCB received at the Newark Plant from Hooker Chemical Corporation contained significant amounts of TCDDs and, in particular, 2,3,7,8-TCDD.").
[9] Mot. Ex. B, ECF No. 1145-2, at 15.
[10] *See* Mot. 3-4.

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
February 1, 2021
Page 3

cooperating in work at the Site, a position that is belied by the hundreds of millions of dollars spent by SPG members on the Site investigation and cleanup costs. But given OCC's intent to rely on its "cooperation," the SPG is entitled to discovery of information that goes to the issue of the extent to which OCC has in fact "cooperated."

### OCC's Financial Condition (Request No. 24)

The SPG does not seek "extensive financial information" (Opp. 4); rather, as it confirmed in the meet-and-confer, the SPG is willing to narrow the request (*see* Mot. 4), but OCC never responded. OCC is uniquely positioned as the sole party in this case responsible for the Lister Plant's liabilities. OCC's responsibility has been judicially established, and its potential liabilities dwarf those of all the other parties combined. Its financial condition is, therefore, far more relevant to cost allocation than any other party, each of whom bears far less (if any) liability. OCC acknowledges that its financial condition is relevant if it raises its inability to pay for the clean-up—and is *very* careful to avoid stating whether it may do so in the future, Opp. 4—but it did not say it will not do so, nor did OCC address the caselaw cited in the SPG's motion. Mot. 4.

### Waste-Disposal Practices (Request No. 5)

The SPG does not seek "unqualified discovery" about "any site, *anywhere*" at any time. Opp. 4. Rather, the SPG simply wants information about practices that would apply to the Lister Plant (even if such practices were company-wide, rather than site-specific). This narrow request is reasonable. After all, OCC operated the Lister Plant itself, and the Hooker site visit identified "areas of concern" including "nonexistent" "structures to protect the environment" and "Waste Disposal" issues.[11] Instead of simply stating whether or not such documents exist, OCC claimed it would produce materials "*if related* to the Diamond Alkali Superfund Site." Opp. 4. The SPG is entitled to know what this unilateral limitation means, so the SPG can understand whether OCC is withholding documents.

### Fact and Expert Witness Materials (Request No. 28)

Again, the SPG is entitled to information as to what effect OCC's unilateral scope limitation has on the request. It may very well be that OCC does not have any additional transcripts beyond what it has already produced, but the response's strange phrasing makes it impossible to determine if that is the case. OCC is unclear about the meaning of "prior testimony that has nothing to do with the Diamond Alkali Superfund Site." Opp. 5. Prior testimony from an Agent Orange tort case (as one example) is related if it discusses known human health effects and other risks of dioxin. Other dioxin remediations are related if testimony discusses how dioxin and other contaminants are generated, pollute a river system, and so forth. OCC, ignoring the SPG's caselaw (Mot. 3), is simply wrong to suggest that its own, self-serving designation is the only test for relevance in discovery.

---

[11] Mot. Ex. G, ECF No. 1145-7, at 1, 3.

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
February 1, 2021
Page 4

### Transition From Maxus Liquidating Trust To OCC (Request No. 14)

Contrary to its representation (Opp. 5), OCC's response to this request does not state that OCC "already provided" the requested material—it states that OCC "will not produce the documents in its possession, custody, or control that are responsive to this request."[12]

### Basic Organizational Information (Request Nos. 21 and 25)

These requests seek simple information, like org charts for the relevant corporate entities from 1977-present and 1986-present. The SPG did not "imagine[]" (Opp. 6) OCC's refusal to provide this basic information. OCC's position seems to be that, if the SPG simply looks through every document produced to date, it will be able to cobble together an understanding of which people worked for which entities in which capacity and which times, since the "documents produced by [OCC] identify any employees relevant to any issues in this case." (Opp. 6).

OCC could have made clear whether simple org charts for these timeframes have already been produced, or that they do not exist. But instead of a straightforward answer, OCC's responses indicate that because some of this information for some of the entities for some of the time has been produced,[13] OCC "will not produce additional documents."[14]

Respectfully Submitted,

Jeffrey D. Talbert
*Common Counsel for the Small Parties Group*

Attachment – Exhibit J

---

[12] Mot. Ex. B, ECF No. 1145-2, at 11.
[13] The materials to which OCC refers (Opp. 6 nn. 18-20) do not provide this information either—they relate to the 1986 merger and an IRS inquiry into the tax implications of the formation of Miller Springs in the 1990s.
[14] Mot. Ex. B, ECF No. 1145-2, at 15; *see also id.* at 17 (agreeing to produce information for only two entities).

17047171.1