PRETI FLAHERTY BELIVEAU &
PACHIOS LLP
One City Center
PO Box 9546
Portland, ME 04101
Tel: (207) 791-3000
By:    Jeffrey D. Talbert, Esq.
         Benjamin S. Piper, Esq.
         James W. Beers, Esq.

CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ 07052
Tel: (973) 530-2075
By:     Diana L. Buongiorno, Esq.

*Liaison Counsel for the CSG Liaison Group*

SHOOK HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, NO 64108
Tel: (816) 474-6550
By:    David R. Erickson, Esq.
         Joseph H. Blum, Esq.

GORDON & REES SCULLY
MANSUKHANI
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Tel: (973) 549-2520
By:     Lee Henig-Elona, Esq.

*Counsel for the Small Parties Group*

*Liaison Counsel for the Gordon Rees Group*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | | |
|---|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, | ) | Hon. Madeline Cox Arleo |
| | ) | Hon. Magistrate Judge Leda D. Wettre |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:18-CV-11273 (MCA-LDW) |
| | ) | |
| 21ST CENTURY FOX AMERICA, INC., *et al.*, | ) | |
| | ) | **THIRD-PARTY COMPLAINT** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| 21ST CENTURY FOX AMERICA, INC., *et al.*, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PASSAIC VALLEY SEWERAGE | ) | |
| COMMISSIONERS, | ) | |
| BOROUGH OF EAST NEWARK, | ) | |

1

BOROUGH OF EAST RUTHERFORD,    )
BOROUGH OF ELMWOOD PARK,    )
BOROUGH OF FAIR LAWN,    )
BOROUGH OF FRANKLIN LAKES,    )
BOROUGH OF GLEN RIDGE,    )
BOROUGH OF GLEN ROCK,    )
BOROUGH OF HALEDON,    )
BOROUGH OF HASBROUCK HEIGHTS,    )
BOROUGH OF HAWTHORNE,    )
BOROUGH OF LODI,    )
BOROUGH OF NORTH ARLINGTON,    )
BOROUGH OF NORTH CALDWELL,    )
BOROUGH OF NORTH HALEDON,    )
BOROUGH OF PROSPECT PARK,    )
BOROUGH OF RUTHERFORD,    )
BOROUGH OF TOTOWA,    )
BOROUGH OF WALLINGTON,    )
BOROUGH OF WOODLAND PARK, F/K/A    )
BOROUGH OF WEST PATERSON,    )
BOROUGH OF WOOD-RIDGE,    )
CITY OF CLIFTON,    )
CITY OF EAST ORANGE,    )
CITY OF GARFIELD,    )
CITY OF NEWARK,    )
CITY OF ORANGE TOWNSHIP,    )
CITY OF PASSAIC,    )
CITY OF PATERSON,    )
TOWNSHIP OF BELLEVILLE,    )
TOWN OF HARRISON,    )
TOWN OF KEARNY,    )
TOWN OF NUTLEY,    )
TOWNSHIP OF BLOOMFIELD,    )
TOWNSHIP OF CEDAR GROVE,    )
TOWNSHIP OF LITTLE FALLS,    )
TOWNSHIP OF LYNDHURST,    )
TOWNSHIP OF MONTCLAIR,    )
TOWNSHIP OF SADDLE BROOK,    )
TOWNSHIP OF SOUTH HACKENSACK,    )
TOWNSHIP OF SOUTH ORANGE VILLAGE,    )
TOWNSHIP OF WEST ORANGE,    )
VILLAGE OF RIDGEWOOD,    )
    )
    Third-Party Defendants.    )
    )
    )
    )
_____ )

17144838.1

**THIRD-PARTY COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 14, Defendants in the Small Parties Group, the Gordon Rees Group, and the CSG Group (individually and collectively, "Third-Party Plaintiffs") bring this Third-Party Complaint against the Passaic Valley Sewerage Commissioners ("PVSC") and associated municipalities listed herein ("Municipalities").[1]

# I.   LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of PVSC and the Municipalities are as follows:

Passaic Valley Sewerage Commissioners
600 Wilson Avenue, Newark, New Jersey

Borough of East Newark
34 Sherman Avenue, East Newark, New Jersey

Borough of East Rutherford
1 Everett Place, East Rutherford, New Jersey

Borough of Elmwood Park
182 Market Street #2, Elmwood Park, New Jersey

Borough of Fair Lawn
8-01 Fair Lawn Avenue, Fair Lawn, New Jersey

Borough of Franklin Lakes
DeKorte Drive, Franklin Lakes, New Jersey

Borough of Glen Ridge
825 Bloomfield Avenue, Glen Ridge, New Jersey

Borough of Glen Rock
1 Harding Plaza, Municipal Building, Glen Rock, New Jersey

Borough of Haledon
510 Belmont Avenue, Haledon, New Jersey

Borough of Hasbrouck Heights
320 Boulevard, Hasbrouck Heights, New Jersey

---

[1] The names of the Defendants on whose behalf this Third-Party Complaint is filed are listed in Exhibit 1.

17144838.1

Borough of Hawthorne
445 Lafayette Avenue, Hawthorne, New Jersey

Borough of Lodi
1 Memorial Drive, Lodi, New Jersey

Borough of North Arlington
214 Ridge Road, North, North Arlington, New Jersey

Borough of North Caldwell
141 Gould Avenue, North Caldwell, New Jersey

Borough of North Haledon
103 Overlook Avenue, North Haledon, New Jersey

Borough of Prospect Park
106 Brown Avenue, Prospect Park, New Jersey

Borough of Rutherford
176 Park Avenue, Rutherford, New Jersey

Borough of Totowa
527 Totowa Road, Totowa, New Jersey

Borough of Wallington
24 Union Boulevard, Wallington, New Jersey

Borough of Woodland Park, f/k/a Borough of West Paterson
5 Brophy Lane, Woodland Park, New Jersey

Borough of Wood-Ridge
85 Humboldt Street, Wood-Ridge, New Jersey

City of Clifton
900 Clifton Avenue, Clifton, New Jersey

City of East Orange
44 City Hall Plaza, East Orange, New Jersey

City of Garfield
111 Outwater Lane, Garfield, New Jersey

City of Newark
920 Broad Street, Newark, New Jersey

4

City of Orange Township
29 North Day Street, Orange, New Jersey

City of Passaic
330 Passaic Street, Passaic, New Jersey

City of Paterson
155 Market Street, Paterson, New Jersey

Township of Belleville
152 Washington Avenue, Belleville, New Jersey

Town of Harrison
318 Harrison Avenue, Harrison, New Jersey

Town of Kearny
402 Kearny Avenue, Kearny, New Jersey

Town of Nutley
1 Kennedy Drive, Nutley, New Jersey

Township of Bloomfield
1 Municipal Plaza, Bloomfield, New Jersey

Township of Cedar Grove
525 Pompton Avenue, Cedar Grove, New Jersey

Township of Little Falls
225 Main Street, Little Falls, New Jersey

Township of Lyndhurst
367 Valley Brook Avenue, Lyndhurst, New Jersey

Township of Montclair
205 Claremont Avenue, Montclair, New Jersey

Township of Saddle Brook
93 Market Street, Saddle Brook, New Jersey

Township of South Hackensack
227 Phillips Avenue, South Hackensack, New Jersey

Township of South Orange Village
76 South Orange Avenue, South Orange, New Jersey

Township of West Orange

17144838.1

66 Main Street, South Orange, New Jersey

Village of Ridgewood
131 North Maple Avenue, New Jersey

## II.    INTRODUCTION

1.      Occidental Chemical Corporation ("OxyChem") brought contribution claims under CERCLA Sections 107 and 113 against 120 parties for remediation of the Diamond Alkali Superfund Site, despite the fact that substantially all of the 2,3,7,8-Tetrachlorodibenzo-*p*-dioxin ("2,3,7,8-TCDD"), which is driving the remediation and is one of the most toxic "man-made" substances, was discharged directly to the Lower Passaic River ("LPR") from the Diamond Alkali chemical manufacturing facility at 80 and 120 Lister Avenue in Newark, New Jersey (the "Diamond Alkali Plant" or "Facility"), for which OxyChem is liable.

2.      In 1984, the U.S. Environmental Protection Agency ("EPA") identified the lower 17 miles of the Passaic River and Newark Bay as the Diamond Alkali Superfund Site (the "Diamond Alkali Site").

3.      In addition to 2,3,7,8-TCDD, EPA identified seven other Contaminants of Concern ("COCs") for the Diamond Alkali Site.[2]  Discharges from the Diamond Alkali Plant are responsible for nearly all of the 2,3,7,8-TCDD, dichlorodiphenyltrichloroethane ("DDT"), and Dieldrin in the LPR.  As a result of discharges from the Diamond Alkali Plant, the LPR has some of the highest concentrations and greatest mass of 2,3,7,8-TCDD in the world.

---

[2] In its 2016 Record of Decision for the lower eight miles of the LPR, EPA identified eight COCs: polychlorinated dioxins and furans, polychlorinated biphenyls (PCBs), polycyclic aromatic hydrocarbons (PAHs), DDT, Dieldrin, Mercury, Copper, and Lead.  U.S. EPA, *Record of Decision for the Lower 8.3 Miles of the Lower Passaic River Part of the Diamond Alkali Superfund Site, Essex and Hudson Counties, New Jersey* 14-16 (Mar. 3, 2016).  All COCs are Hazardous Substances under 42 U.S.C. § 9601(14).

4.      The Diamond Alkali Site was designated as a Superfund site as a result of discharges from the Diamond Alkali Plant, for which OxyChem is liable.

5.      Notwithstanding OxyChem's overwhelming responsibility for the human health and ecological risks present in the LPR, OxyChem refuses to accept full responsibility for its actions in rendering the LPR one of the most dioxin-contaminated rivers in the world and instead prematurely elected to sue more than 100 parties whose contributions, if any, pale in comparison to its own.

6.      OxyChem's refusal to accept full responsibility for its contributions necessitates this Third-Party Complaint.  To the extent that any Third-Party Plaintiff is found liable for any contributions of COCs to the LPR, the PVSC and Municipalities are also liable and must pay their fair share.

7.      Any contributions of COCs to the LPR allegedly attributable to the Third-Party Plaintiffs were insignificant and were largely the result of diversions to the LPR by PVSC or the municipalities of wastewater flows that had been lawfully discharged to PVSC or municipal sewer systems by Third-Party Plaintiffs as well as by thousands of other entities.  Some Third-Party Plaintiffs' discharges to the PVSC and municipalities' sewer systems were not diverted to the LPR given those Third-Party Plaintiffs' locations in the system.

8.      Wastewater sent to the PVSC via municipally owned sewer systems was generally treated and then discharged to New York Harbor, not the LPR.

9.      Wastewater discharged to PVSC or municipal sewer systems was only discharged to the LPR through bypasses or combined sewer overflows ("CSOs") operated by PVSC or the Municipalities.

17144838.1

10.     Because the PVSC has served thousands of customers since it began operations, among other reasons, the Third-Party Plaintiffs whose wastewaters discharged to the LPR through bypasses or CSOs constitute less than one percent of the potential contributors of COCs to the PVSC system.

11.     The PVSC and Municipalities owning and operating CSOs, not their customers, had control over bypasses and CSOs.  Bypasses and CSOs were the only potential pathways that contaminants sent to the PVSC could have reached the LPR.

12.     Pursuant to Sections 107 and 113 of CERCLA, Third-Party Plaintiffs allege on information and belief as follows:

## III.   BACKGROUND

### A.   <u>Historical Background</u>

13.     EPA declared the Diamond Alkali Site a Superfund site in 1984 due to discharges of dioxin and other hazardous substances from OxyChem's Diamond Alkali Plant.

14.     2,3,7,8-TCDD, the form of dioxin OxyChem discharged into the environment from the Diamond Alkali Plant, is one of the most toxic known chemicals.  The Diamond Alkali Site contains one of the largest environmental accumulations of 2,3,7,8-TCDD in the world.

15.     For more than twenty years, from approximately 1947 to at least approximately 1969, and at other times thereafter, OxyChem disposed of and released 2,3,7,8-TCDD, DDT, and various other pesticides, chemicals, and COCs into the LPR and the surrounding area.  Despite clear responsibility for these releases, OxyChem has never fully remediated the areas that it contaminated with 2,3,7,8-TCDD and other hazardous substances, resulting in continuing and ongoing releases to the LPR and the surrounding area.

17144838.1

16.     This Court found that OxyChem is the legal successor to the entities that owned and operated the Lister Plant during the relevant time period and may be held liable for the CERCLA response costs flowing therefrom.  (Letter Order (ECF No. 1105 at 4).)

17.     In 1983, the New Jersey Department of Environmental Protection ("NJDEP") conducted a dioxin investigation and sampling activities at the Diamond Alkali Plant and along the LPR.  On or around June 2, 1983, in response to high levels and pervasive presence of dioxin , New Jersey Governor Thomas H. Kean issued an executive order declaring a state of emergency due to the threat that dioxin posed to public health.

18.     In 1984, in a document titled "Dioxin Strategy Newark, New Jersey," NJDEP laid out steps New Jersey would take to minimize public exposure to unacceptable levels of 2,3,7,8-TCDD.  In that document, NJDEP concluded that "80 Lister Avenue is . . . the state believes, the source site for all of the dioxin contamination found today in Newark."

19.     In September 1984, Diamond Shamrock Chemicals Company, predecessor-in-interest to OxyChem, sued Aetna Casualty & Surety Company and 125 other insurers in New Jersey Superior Court seeking a declaratory judgment that the insurers were required to pay for OxyChem's past and future remediation of the Diamond Alkali Plant and for third-party bodily injury and property damage claims resulting from dioxin (the "*Aetna* litigation").

20.     After a twenty-day bench trial in the *Aetna* litigation in 1988, Judge Stanton found the insurers were not liable under the policies at issue and concluded that OxyChem "intentionally and continuously discharged highly toxic chemical effluent into the Passaic River," "was conscious that its discharges into the river were illegal," "deliberately concealed [discharges]," "employed an alarm system to warn employees to stop the discharges when . . . inspectors were

on the premises," and "even by the standards of the 1951-1969 period, [OxyChem's] conduct . . . was unacceptably wrong and irresponsible."

21.     In the decades since New Jersey declared a state of emergency and EPA designated the LPR as a Superfund site, OxyChem and its indemnitors have delayed the cleanup in the LPR and sought to offload their responsibility onto others.

22.     In 2005, the State of New Jersey sued OxyChem and its indemnitors and affiliates under *inter alia* the New Jersey Spill Compensation and Control Act to recover costs and damages and to ensure OxyChem was assigned responsibility for remediation in the LPR.[3] The State alleged OxyChem had "orchestrated and implemented a strategy to delay and impede the clean-up and restoration of the Passaic River," and "[a]s a direct result of O[xyChem]'s intentional releases and discharges into the Passaic River, and Defendants' feat of delaying any real solution for another 20-plus years, TCDD has migrated throughout the lower 17 miles of the Passaic River . . . [such that] sediments in the Newark Bay Complex are saturated with TCDD, yet not one teaspoon of TCDD-impacted sediment has been removed as part of a clean-up or restoration effort."

23.     In 2004, OxyChem, as the party responsible for the Diamond Alkali Plant, and other parties, including certain Third-Party Plaintiffs or their predecessors-in-interest or indemnitors, entered into a settlement agreement with EPA ("2004 RI/FS Agreement") under which the parties agreed to fund certain costs to perform the Remedial Investigation and Feasibility Study ("RI/FS") of the 17-mile tidal portion of the Passaic River from the Dundee Dam to the Newark Bay, also known as the Lower Passaic River Study Area ("LPRSA").

---

[3] *Complaint* (Nov. 22, 2005), *NJDEP et al. v. Occidental Chemical Corp., et al.*, Docket No. ESX-L9868-05 (PASR) (Sup. Ct. N.J.).

17144838.1

24.     The 2004 RI/FS Agreement was amended in 2005 and 2007 to include additional settling parties and funding commitments.  A list of Third-Party Plaintiffs that are signatories to the 2004 RI/FS Agreement either in their own names (alone or together with corporate affiliates) or the name of a predecessor-in-interest or indemnitor, including its amendments, is attached as Exhibit 2.

25.     In 2007, OxyChem, as the party responsible for the Diamond Alkali Plant, and other parties, including many Third-Party Plaintiffs, entered into a settlement agreement with EPA ("2007 RI/FS Agreement") under which the parties agreed to perform the RI/FS of the LPRSA. In or around 2012, OxyChem ceased complying with that agreement and has since refused to pay its share of costs incurred by settlement parties for work performed under the 2007 RI/FS Agreement.

26.     In 2017, the 2007 RI/FS Agreement was amended to include additional settling parties.  A list of Third-Party Plaintiffs that are signatories to the 2007 RI/FS Agreement either in their own names (alone or together with corporate affiliates) or the name of a predecessor-in-interest or indemnitor, including its 2017 amendment, is attached as Exhibit 3.

27.     In June 2012, after RI/FS sampling indicated that an approximately five-acre mud flat and point bar near River Mile ("RM") 10.9 was contaminated with high levels of 2,3,7,8-TCDD, the Third-Party Plaintiffs listed in Exhibit 4—either in their own names (alone or together with corporate affiliates) or the name of a predecessor-in-interest, or indemnitor—and other parties, entered into a settlement agreement with EPA ("2012 RM 10.9 Agreement") to remove approximately two feet of sediment (approximately 16,000 cubic yards) from the RM 10.9 Removal Area and cap this area.

17144838.1

28.     In 2016, EPA issued a Record of Decision ("ROD") selecting a remedy for the lower 8.3 miles of the Passaic River to address the risks to human health and the environment posed by eight contaminants of concern (the "8 COCs").

29.     The 8 COCs are dioxins/furans, polychlorinated biphenyls (PCBs), polychlorinated aromatic hydrocarbons (PAHs), DDT, Dieldrin, Copper, Mercury, Lead.

30.     Of the 8 COCs, 2,3,7,8-TCDD poses the most significant risk to human health and the environment and provides the sole or primary justification for EPA's selected remedy.

31.     In the 2016 ROD, EPA concluded that no level of remediation could reduce the level of risk to a degree consistent with the traditional remediation goals EPA has set for all CERCLA sites in the National Contingency Plan ("NCP"): "EPA has concluded that a $10^{-6}$ cancer risk [aspired to by the NCP] for the fish and crab consumption exposure pathway cannot be attained through remediation," and "it is unlikely that the ecological [preliminary remediation goals] could be met under any of the alternatives, even with natural recovery processes." Because the adjusted "acceptable risk range"—which includes risk in excess of the NCP goals for other sites—would not be achieved by the selected remedy, EPA required continued use of fishing prohibitions in the LPR: "in the 26-year period after construction, risks and hazards exceed the acceptable risk range . . . so [the selected remedy] would incorporate institutional controls such as fish and crab consumption prohibitions and advisories enhanced by additional outreach to ensure protectiveness."

32.     Separate from and in addition to the costs incurred pursuant to the 2004 RI/FS Agreement, the 2007 RI/FS Agreement, and the 2012 RM 10.9 Agreement, each Third-Party Plaintiff has incurred additional recoverable costs closely tied to the cleanup of the Lower Passaic River. These costs include but are not limited to legal fees, administrative costs, PRP search costs,

17144838.1

costs of investigation, planning, and technical support, and other indirect costs incurred for work that has significantly benefitted the entire cleanup effort.

## B.    Procedural Background

33.    On June 30, 2018, OxyChem filed its complaint against 120 parties, seeking cost recovery, contribution, and a declaratory judgment against the original Defendants, under CERCLA Sections 107(a) and 113(f), 42 U.S.C. §§ 9607(a), 9613(f), for response costs that OxyChem allegedly has and may incur to remediate hazardous substances at the Diamond Alkali Superfund Site.

34.    On July 31, 2019, U.S. District Judge Honorable Madeline Cox Arleo dismissed OxyChem's CERCLA Section 107(a) claims, 42 U.S.C. § 9607(a), that related to the 2008, 2011, and 2016 Administrative Settlements, and dismissed OxyChem's CERCLA Section 113(f)(1) claims, 42 U.S.C. § 9613(f)(1), that related to the 2012 Unilateral Administrative Order ("UAO").[4]

35.    OxyChem's surviving claims are a CERCLA Section 107(a), 42 U.S.C. § 9607(a), claim relating to the 2012 UAO and CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), claims relating to the 2008, 2011, and 2016 Administrative Settlements.

36.    On or around August 14, 2019, many Third-Party Plaintiffs filed counterclaims against OxyChem for contribution, cost recovery, declaratory judgement and/or breach of contract for costs incurred and to be incurred at the LPRSA portion of the Diamond Alkali Superfund Site,

---

[4] Administrative Settlement Agreement and Order on Consent for Removal Action between the U.S. EPA, OxyChem, and Tierra (June 23, 2008) (the "2008 Settlement"); Administrative Settlement Agreement and Order on Consent for Combined Sewer Overflow/Storm Water Outfall Investigation between the U.S. EPA and OxyChem (Oct. 4, 2011) (the "2011 Settlement"); Unilateral Administrative Order for Removal Response Activities from the Passaic River at River Mile 10.9 between U.S. EPA and OxyChem (June 2012) (the "2012 UAO"); Administrative Settlement Agreement and Order on Consent for Remedial Design for Operable Unit Two of the Diamond Alkali Superfund Site between U.S. EPA and OxyChem (June 2016) (the "2016 Settlement").

including pursuant to the 2004 RI/FS Agreement, the 2007 RI/FS Agreement, and the 2012 RM 10.9 Agreement.

## IV.     JURISDICTION AND VENUE

37.     The Third-Party Claims set forth herein arise out of and are ancillary to the claims set forth in the Complaint.

38.     If jurisdiction is proper with respect to the Complaint, it is proper with respect to the Third-Party Claims.

39.     If venue is proper with respect to the Complaint, it is proper with respect to the Third-Party Claims.

40.     Each Third-Party Defendant named herein is a "person" within the meaning of 42 U.S.C. § 9601(21).

41.     As alleged elsewhere herein, each Third-Party Defendant has conducted activities in the State of New Jersey and has had sufficient contacts with the State of New Jersey to be subject to the jurisdiction of this Court.

## V.     THE PARTIES

42.     Third-Party Defendant the PVSC is a public body politic and corporate authorized by statute with its principal place of business at 600 Wilson Avenue, Newark, New Jersey.

43.     Third-Party Defendant Borough of East Newark is a public body and municipality of the State of New Jersey with its principal place of business at 34 Sherman Avenue, East Newark, New Jersey.

44.     Third-Party Defendant Borough of East Rutherford is a public body and municipality of the State of New Jersey with its principal place of business at 1 Everett Place, East Rutherford, New Jersey.

17144838.1

45.     Third-Party Defendant Borough of Elmwood Park is a public body and municipality of the State of New Jersey with its principal place of business at 182 Market Street #2, Elmwood Park, New Jersey.

46.     Third-Party Defendant Borough of Fair Lawn is a public body and municipality of the State of New Jersey with its principal place of business at 8-01 Fair Lawn Avenue, Fair Lawn, New Jersey.

47.     Third-Party Defendant Borough of Franklin Lakes is a public body and municipality of the State of New Jersey with its principal place of business at Franklin Lakes Municipal Building, DeKorte Drive, Franklin Lakes, New Jersey.

48.     Third-Party Defendant Borough of Glen Ridge is a public body and municipality of the State of New Jersey with its principal place of business at 825 Bloomfield Avenue, Glen Ridge, New Jersey.

49.     Third-Party Defendant Borough of Glen Rock is a public body and municipality of the State of New Jersey with its principal place of business at 1 Harding Plaza, Municipal Building, Glen Rock, New Jersey.

50.     Third-Party Defendant Borough of Haledon is a public body and municipality of the State of New Jersey with its principal place of business at 510 Belmont Avenue, Haledon, New Jersey.

51.     Third-Party Defendant Borough of Hasbrouck Heights is a public body and municipality of the State of New Jersey with its principal place of business at 320 Boulevard, Hasbrouck Heights, New Jersey.

52.     Third-Party Defendant Borough of Hawthorne is a public body and municipality of the State of New Jersey with its principal place of business at 445 Lafayette Avenue, Hawthorne, New Jersey.

53.     Third-Party Defendant Borough of Lodi is a public body and municipality of the State of New Jersey with its principal place of business at 1 Memorial Drive, Lodi, New Jersey.

54.     Third-Party Defendant Borough of North Arlington is a public body and municipality of the State of New Jersey with its principal place of business at 214 Ridge Road, North, North Arlington, New Jersey.

55.     Third-Party Defendant Borough of North Caldwell is a public body and municipality of the State of New Jersey with its principal place of business at 141 Gould Avenue, North Caldwell, New Jersey.

56.     Third-Party Defendant Borough of North Haledon is a public body and municipality of the State of New Jersey with its principal place of business at 103 Overlook Avenue, North Haledon, New Jersey.

57.     Third-Party Defendant Borough of Prospect Park is a public body and municipality of the State of New Jersey with its principal place of business at 106 Brown Avenue, Prospect Park, New Jersey.

58.     Third-Party Defendant Borough of Rutherford is a public body and municipality of the State of New Jersey with its principal place of business at 176 Park Avenue, Rutherford, New Jersey.

59.     Third-Party Defendant Borough of Totowa is a public body and municipality of the State of New Jersey with its principal place of business at 527 Totowa Road, Totowa, New Jersey.

17144838.1

60.     Third-Party Defendant Borough of Wallington is a public body and municipality of the State of New Jersey with its principal place of business at 24 Union Boulevard, Wallington, New Jersey.

61.     Third-Party Defendant Borough of Woodland Park is a public body and municipality of the State of New Jersey with its principal place of business at 5 Brophy Lane, Woodland Park, New Jersey.

62.     Third-Party Defendant Borough of Wood-Ridge is a public body and municipality of the State of New Jersey with its principal place of business at 85 Humboldt Street, Wood-Ridge, New Jersey.

63.     Third-Party Defendant City of Clifton is a public body and municipality of the State of New Jersey with its principal place of business at 900 Clifton Avenue, Clifton, New Jersey.

64.     Third-Party Defendant City of East Orange is a public body and municipality of the State of New Jersey with its principal place of business at 44 City Hall Plaza, East Orange, New Jersey.

65.     Third-Party Defendant City of Garfield is a public body and municipality of the State of New Jersey with its principal place of business at 111 Outwater Lane, Garfield, New Jersey.

66.     Third-Party Defendant City of Newark is a public body and municipality of the State of New Jersey with its principal place of business at City Hall - Room B331F, 920 Broad Street, Newark, New Jersey.

67.     Third-Party Defendant City of Orange Township is a public body and municipality of the State of New Jersey with its principal place of business at 29 North Day Street, Orange, New Jersey.

17144838.1

68.     Third-Party Defendant City of Passaic is a public body and municipality of the State of New Jersey with its principal place of business at 330 Passaic Street, Passaic, New Jersey.

69.     Third-Party Defendant City of Paterson is a public body and municipality of the State of New Jersey with its principal place of business at 155 Market Street, Paterson, New Jersey.

70.     Third-Party Defendant Township of Belleville is a public body and municipality of the State of New Jersey with its principal place of business at 152 Washington Avenue, Belleville, New Jersey.

71.     Third-Party Defendant Town of Harrison is a public body and municipality of the State of New Jersey with its principal place of business at 318 Harrison Avenue, Harrison, New Jersey.

72.     Third-Party Defendant Town of Kearny is a public body and municipality of the State of New Jersey with its principal place of business at 402 Kearny Avenue, Kearny, New Jersey.

73.     Third-Party Defendant Town of Nutley is a public body and municipality of the State of New Jersey with its principal place of business at 1 Kennedy Drive, Nutley, New Jersey.

74.     Third-Party Defendant Township of Bloomfield is a public body and municipality of the State of New Jersey with its principal place of business at 1 Municipal Plaza, Bloomfield, New Jersey.

75.     Third-Party Defendant Township of Cedar Grove is a public body and municipality of the State of New Jersey with its principal place of business at 525 Pompton Avenue, Cedar Grove, New Jersey.

17144838.1

76.     Third-Party Defendant Township of Little Falls is a public body and municipality of the State of New Jersey with its principal place of business at 225 Main Street, Little Falls, New Jersey.

77.     Third-Party Defendant Township of Lyndhurst is a public body and municipality of the State of New Jersey with its principal place of business at 367 Valley Brook Avenue, Lyndhurst, New Jersey.

78.     Third-Party Defendant Township of Montclair is a public body and municipality of the State of New Jersey with its principal place of business at 205 Claremont Avenue, Montclair, New Jersey.

79.     Third-Party Defendant Township of Saddle Brook is a public body and municipality of the State of New Jersey with its principal place of business at 93 Market Street, Saddle Brook, New Jersey.

80.     Third-Party Defendant Township of South Hackensack is a public body and municipality of the State of New Jersey with its principal place of business at 227 Phillips Avenue, South Hackensack, New Jersey.

81.     Third-Party Defendant Township of South Orange Village is a public body and municipality of the State of New Jersey with its principal place of business at 76 South Orange Avenue, South Orange, New Jersey.

82.     Third-Party Defendant Township of West Orange is a public body and municipality of the State of New Jersey with its principal place of business at Town Hall, 66 Main Street, South Orange, New Jersey.

17144838.1

83.     Third-Party Defendant Village of Ridgewood is a public body and municipality of the State of New Jersey with its principal place of business at Village Hall, 131 North Maple Avenue, New Jersey.

## VI.   FACTUAL ALLEGATIONS

84.     The New Jersey Legislature created the PVSC in 1902 with the stated purpose of relieving and preventing pollution in the Passaic River and its tributaries from Great Falls in Paterson to Newark Bay.

85.     In August 1924, the PVSC began operating the Main Interceptor Sewer (also known as "the Trunk Line"), which since that time has collected and continues to collect untreated sewage and industrial wastes from tributary municipal sewer systems that had previously discharged to the Passaic River.

86.     The Trunk Line is 22 miles long, begins at Prospect Street in Paterson, New Jersey and generally follows the alignment of the Passaic River, along the west bank of the Passaic River.

87.     The PVSC designed, constructed, installed, owns, and operates the Trunk Line.

88.     The Trunk Line terminates in the City of Newark at the PVSC's Sewage Treatment Plant Wastewater Reclamation Facility ("WWRF") at about 600 Wilson Avenue, Newark, New Jersey, which began operations circa 1931.

89.     PVSC designed, constructed, installed, owns, and operates the WWRF.

90.     Before the Trunk Line became operational, most municipalities within PVSC's jurisdiction had developed individual sewer systems that discharged directly to the LPR through discharge lines ending in outfalls on or near the banks of the LPR.

91.     After the construction of the Trunk Line, those municipalities who previously discharged directly to the LPR connected directly to the PVSC system.  The PVSC's WWRF

currently receives flow from 48 municipalities through three primary lines that the PVSC designed, constructed, and installed: the Trunk Line, the South Side Interceptor, and the Hudson County Force Main.

92.     The PVSC designed, constructed, installed, owns, operates, and has control over the 59 active regulating chambers, and additional historic chambers not now in use, located within and along the Trunk Line and tributary PVSC sewers through which untreated sewage, industrial wastewater, and stormwater have been and are from time to time directed away from the PVSC WWRF to CSO outfalls and bypasses and discharged into the Passaic River.

93.     The Trunk Line and tributary PVSC and municipal sewers also have approximately 50 active CSO outfalls or bypasses, and additional historic outfalls or bypasses not now in use, through which untreated sewage, industrial wastewater, and stormwater have been and still periodically are discharged into the Passaic River.

94.     For decades, PVSC staff manually opened and closed its bypasses through chains linked to regulator valves or flaps, or through gates operated by hoists.  This allowed the PVSC to choose to bypass the treatment system and discharge untreated sewage, industrial wastewater, and stormwater directly to the Passaic River.

95.     In the mid-1980s, the PVSC designed, constructed, and continues to operate remote controls to allow PVSC to control its bypass gates from a central control facility.

96.     The major bypasses discharged untreated sewage, industrial wastewater, and stormwater from multiple municipalities, including third party defendant Municipalities.

97.     When the Yantacaw Bypass was opened, all wastes upstream of the Third River were sent untreated to the Passaic River, including waste from the municipalities of Paterson,

17144838.1

Haledon, Prospect Park, Hawthorne, Fair Lawn, Elmwood Park, Garfield, Clifton, Lodi, Passaic, Wallington, and East Rutherford.

98.     When the Union Outlet (Second River Bypass) was opened, the entire flow of untreated sewage, industrial wastewater, and stormwater from Montclair, Orange, Glen Ridge, Bloomfield, and East Orange was discharged directly to the Passaic River.

99.     A 1976 report by Killam Associates for the PVSC, *Report Upon Overflow Analysis to Passaic Valley Sewerage Commissioners: Passaic River Overflows* ("1976 Killam Report"), measured flows to the Passaic River from bypasses and 73 CSOs, that were owned and operated by the PVSC at the time.

100.    According to the 1976 Killam Report, approximately 7,600 million gallons of combined stormwater and untreated sewage were discharged into the Passaic River during the study period (1974-1975).

101.    According to his January 6, 1994 Affidavit ("Lubetkin Affidavit"), Seymour A. Lubetkin was the Chief Engineer for the PVSC from 1954 to 1978 and the author of numerous PVSC Annual Reports.

102.    According to the Lubetkin Affidavit, PVSC has admitted that the untreated waste from every municipality connected to sewer lines served by the PVSC was diverted to the Passaic River on a periodic basis through CSOs and bypasses.

103.    Combined stormwater and untreated sewage have been discharged to the Passaic River through some of the PVSC bypasses and/or CSOs for the entire time period of PVSC's operations.

104.    According to a 1980 Heavy Metals Report by Killam Associates, which published the results of sampling for heavy metals at nine manhole locations along the length of the PVSC

system,  heavy metals, including the COCs lead, copper, and mercury, were present in wastewater throughout the PVSC service area.

105.   According to sampling conducted by EPA during rain events in 1981, published in its 1983 CSO Toxic Pollutant Study, CSO discharges to the Passaic River in Newark contained copper, lead, and mercury.

106.   According to samples collected by NJDEP during rain events between 2001 and 2004, the results of which were published in the New Jersey Toxics Reduction Workplan for NY-NJ Harbor, CSO and stormwater discharges to the Passaic River contained all of the 8 COCs.

107.   In 2007 and 2008 as part of EPA's Remedial Investigation for the lower 8.3 miles of the LPR, Malcom Pirnie, Inc. sampled five CSOs during rain events between RM 3.9 and RM 7.8, which represent the largest drainage areas that discharge directly to the LPR.  All 8 COCs were detected in all samples.

108.   Sludge from the PVSC's WWRF was sampled as part of EPA's National Sewage Sludge Survey of 1989.  That sampling showed sludge from the PVSC's WWRF contained 2,3,7,8-TCDD and mercury.

109.   The influent flow from the PVSC's sewers to the WWRF was sampled for a 1978 EPA study seeking to characterize the fate of pollutants in wastewater treatment plants.  That sampling showed the WWRF's influent contained copper, lead, mercury, and PAHs.

110.   The influent flow from the PVSC's sewers to the WWRF was sampled in 1984-1986, for organic priority pollutants.  Publication of the results in 1986 showed the WWRF's influent contained a number of PAHs.

17144838.1

111.    The influent flow from the PVSC's sewers to the WWRF was sampled in 1994 and 1995 for PCBs as part of a study of 26 wastewater treatment plants discharging to the New York/New Jersey Harbor Estuary.  That sampling detected PCBs in the flow entering the WWRF.

112.    The PVSC's annual Pretreatment Program Annual Reports submitted to NJDEP for 2008, 2009, 2010, 2011, 2012, 2013, 2014, and 2015 all show that influent to the WWRF contained copper, lead, and mercury.

113.    The PVSC received a New Jersey Pollution Discharge Elimination System Permit modification in or about November 2007 that required monitoring for PCBs.  That monitoring shows that PCBs are discharged from the PVSC sewer system and its tributary sewers into the Passaic River.

114.    Since the 1920's, the untreated sewage, industrial wastewater, and stormwater that the PVSC has discharged to the Passaic River through some bypasses and/or CSOs has contained and continues to contain Hazardous Substances including all of the 8 COCs.

115.    The City of Paterson, City of Newark, Town of Kearny, Borough of East Newark, and Town of Harrison are served by the PVSC and also own and operate combined sewer systems that receive and carry untreated sewage, industrial wastewater, and stormwater.

116.    The City of Paterson has discharged and continues to discharge untreated sewage, industrial wastewater, and stormwater from twenty-three CSOs into the Passaic River.

117.    The City of Newark has discharged and continues to discharge untreated sewage, industrial wastewater, and stormwater from fourteen CSOs into the Passaic River:  Herbert Place #1, Herbert Place #2, Delavan Avenue, Verona Avenue, Oriental Avenue, Clay Street #1, Clay Street #2, Fourth Avenue, Rector Street, Jackson Street, City Dock, Freeman Street, Polk Street, and Roanoke Avenue.

24

118.    The Town of Kearny has discharged and continues to discharge untreated sewage, industrial wastewater, and stormwater from five CSOs into the Passaic River and Frank's Creek, which discharges to the Passaic River:  Johnston Avenue, Stewart Avenue, Nairn Avenue, Saybrook Place, and Ivy Street.

119.    The Borough of East Newark has discharged and continues to discharge untreated sewage, industrial wastewater, and stormwater from the Central Avenue CSO into the Passaic River.

120.    The Town of Harrison has discharged and continues to discharge untreated sewage, industrial wastewater, and stormwater from seven CSOs into the Passaic River and Frank's Creek, which discharges to the Passaic River:  Worthington Avenue, Bergen Street, Middlesex Street, Dey Street, Harrison Avenue, Cleveland Avenue, Hamilton Avenue.

121.    In the PVSC system, tributary flows from combined sewer systems pass through regulating chambers, where excessive peak flows may be bypassed to the Passaic River in order to avoid surcharging the system capacity.

122.    The untreated sewage, industrial wastewater, and stormwater discharged to the Passaic River through each of the CSOs owned and operated by the City of Paterson, City of Newark, Town of Kearny, Borough of East Newark, and Town of Harrison, contain or contained Hazardous Substances including all of the 8 COCs.

123.    The following municipalities are served by the PVSC and have sewer systems that convey stormwater flow and untreated sewage in separate networks:  Township of Belleville, Township of Bloomfield, Township of Cedar Grove, City of Clifton, City of East Orange, Borough of East Rutherford, Borough of Elmwood Park, Borough of Fair Lawn,  Borough of Franklin Lakes, City of Garfield, Borough of Glen Ridge, Borough of Glen Rock, City of Hackensack,

17144838.1

Borough of Haledon, Borough of Hasbrouck Heights,  Borough of Hawthorne, Township of Little Falls, Borough of Lodi, Township of Lyndhurst, Township of Montclair, Borough of North Arlington, Borough of North Caldwell, Borough of North Haledon, Township of Nutley, City of Orange Township, City of Passaic, Borough of Prospect Park, Village of Ridgewood, Borough of Rutherford, Township of Saddle Brook, Township of South Hackensack, Township of South Orange Borough of Totowa, Borough of Wallington, Township of West Orange, Borough of Woodland Park, and Borough of Wood-Ridge.

124.    According to the 1980 Heavy Metals Report, the wastewater of ten companies connected to the sewer systems owned and operated by the Township of Belleville contained heavy metals, including lead, copper, and mercury.

125.    According to the 1980 Heavy Metals Report, the wastewater of four companies connected to the sewer systems owned and operated by the Township of Bloomfield contained heavy metals, including lead, copper, and mercury.

126.    According to the 1980 Heavy Metals Report, the wastewater of one company connected to the sewer systems owned and operated by the Borough of East Newark contained heavy metals, including lead, copper, and mercury.

127.    According to the 1980 Heavy Metals Report, the wastewater of seventeen companies connected to the sewer systems owned and operated by the City of Clifton contained heavy metals, including lead, copper, and mercury.

128.    According to the 1980 Heavy Metals Report, the wastewater of one company connected to the sewer systems owned and operated by the City of East Orange contained heavy metals, including lead, copper, and mercury.

17144838.1

129.    According to the 1980 Heavy Metals Report, the wastewater of one company connected to the sewer systems owned and operated by the Borough of East Rutherford contained heavy metals, including lead and copper.

130.    According to the 1980 Heavy Metals Report, the wastewater of three companies connected to the sewer systems owned and operated by the Borough of Elmwood Park contained heavy metals, including lead, copper, and mercury.

131.    According to the 1980 Heavy Metals Report, the wastewater of eight companies connected to the sewer systems owned and operated by the Borough of Fair Lawn contained heavy metals, including lead, copper, and mercury.

132.    According to the 1980 Heavy Metals Report, the wastewater of seven companies connected to the sewer systems owned and operated by the City of Garfield contained heavy metals, including lead, copper, and mercury.

133.    According to the 1980 Heavy Metals Report, the wastewater of one company connected to the sewer systems owned and operated by the Borough of Glen Rock contained heavy metals, including lead, copper, and mercury.

134.    According to the 1980 Heavy Metals Report, the wastewater of five companies connected to the sewer systems owned and operated by the Borough of Haledon contained heavy metals, including lead, copper, and mercury.

135.    According to the 1980 Heavy Metals Report, the wastewater of six companies connected to the sewer systems owned and operated by the Town of Harrison contained heavy metals, including lead, copper, and mercury.

17144838.1

136.    According to the 1980 Heavy Metals Report, the wastewater of nine companies connected to the sewer systems owned and operated by the Borough of Hawthorne contained heavy metals, including lead, copper, and mercury.

137.    According to the 1980 Heavy Metals Report, the wastewater of one company connected to the sewer systems owned and operated by the Town of Kearny contained heavy metals, including lead and copper.

138.    According to the 1980 Heavy Metals Report, the wastewater of six companies connected to the sewer systems owned and operated by the Borough of Lodi contained heavy metals, including lead, copper, and mercury.

139.    According to the 1980 Heavy Metals Report, the wastewater of three companies connected to the sewer systems owned and operated by the Township of Lyndhurst contained heavy metals, including lead, copper and mercury.

140.    According to the 1980 Heavy Metals Report, the wastewater of 101 companies connected to the sewer systems owned and operated by the City of Newark contained heavy metals, including lead, copper and mercury.

141.    According to the 1980 Heavy Metals Report, the wastewater of four companies connected to the sewer systems owned and operated by the Township of Nutley contained heavy metals, including lead, copper and mercury.

142.    According to the 1980 Heavy Metals Report, the wastewater of one company connected to the sewer systems owned and operated by the City of Orange Township contained heavy metals, including lead, copper and mercury.

28

143.    According to the 1980 Heavy Metals Report, the wastewater of nine companies connected to the sewer systems owned and operated by the City of Passaic contained heavy metals, including lead, copper and mercury.

144.    According to the 1980 Heavy Metals Report, the wastewater of fifty-six companies connected to the sewer systems owned and operated by the City of Paterson contained heavy metals, including lead, copper and mercury.

145.    According to the 1980 Heavy Metals Report, the wastewater of five companies connected to the sewer systems owned and operated by the Township of Saddle Brook contained heavy metals, including lead, copper and mercury.

146.    According to the 1980 Heavy Metals Report, the wastewater of one company connected to the sewer systems owned and operated by the Borough of Wallington contained heavy metals, including lead, copper and mercury.

147.    Companies that use PCBs are, or have been, located within the following municipalities:  Township of Belleville, Township of Bloomfield, Township of Cedar Grove, City of Clifton, City of East Orange, Borough of East Rutherford, Borough of Elmwood Park, Borough of Fair Lawn, City of Garfield, Borough of Glen Rock, Borough of Haledon, Town of Harrison, Borough of Hawthorne, Town of Kearny, Township of Little Falls, Borough of Lodi, Township of Lyndhurst, Township of Montclair, City of Newark, Borough of North Arlington, Township of Nutley, City of Orange Township, City of Passaic, City of Paterson, Township of Saddle Brook, Borough of Totowa, Borough of Wallington, Township of West Orange, and Borough of Wood-Ridge.

148.    Wastewater containing PCBs has been discharged to the sewer systems owned and operated by the Township of Belleville, Township of Bloomfield, Township of Cedar Grove, City

29

of Clifton, City of East Orange, Borough of East Rutherford, Borough of Elmwood Park, Borough

of Fair Lawn, City of Garfield, Borough of Glen Rock, Borough of Haledon, Town of Harrison,

Borough of Hawthorne, Town of Kearny, Township of Little Falls, Borough of Lodi, Township

of Lyndhurst, Township of Montclair, City of Newark, Borough of North Arlington, Township of

Nutley, City of Orange Township, City of Passaic, City of Paterson, Township of Saddle Brook,

Borough of Totowa, Borough of Wallington, Township of West Orange, and Borough of Wood-

Ridge.

<u>**COUNT I**</u>
**(Contribution Under CERCLA Section 113)**
**(Against All Third-Party Defendants)**

149.    Third-Party Plaintiffs reallege and incorporate by reference paragraphs 1 through

148 above.

150.    Each Third-Party Plaintiff is a "person" as that term is defined in 42 U.S.C. §

9601(21).

151.    Each Third-Party Defendant is a "person" as that term is defined in 42 U.S.C. §

9601(21).

152.    The PVSC system, consisting of the Trunk Line, other intercepting sewers,

regulators, CSOs, WWRF, bypasses and other appurtenances is a "facility" as that term is defined

in 42 U.S.C. § 9601(9).

153.    The PVSC is the owner and operator of a facility from which there has been a

"release" of Hazardous Substances as those terms are defined in 42 U.S.C. § 9601(14) and §

9601(22).

154.    The PVSC is therefore liable under 42 U.S.C. § 9607(a)(1) and/or § 9607(a)(2) for

the costs of response resulting from the release of Hazardous Substances from its facility.

155.    The PVSC designed, constructed, and operated the sewage collection and treatment system in a manner that resulted in the "release" of Hazardous Substances as defined in 42 U.S.C. § 9601(14) and § 9601(22).

156.    The PVSC is therefore liable under 42 U.S.C. § 9607(a)(3) for the costs of response resulting from the release of Hazardous Substances.

157.    The PVSC accepted Hazardous Substances for transport to the WWRF from which there has been a "release" of Hazardous Substances as defined in 42 U.S.C. § 9601(14).

158.    The PVSC is therefore liable under 42 U.S.C. § 9607(a)(4) for the costs of response resulting from the release of Hazardous Substances from the WWRF.

159.    Third-Party Defendants City of Paterson, City of Newark, Town of Kearny, Borough of East Newark, and Town of Harrison each now own and/or operate, or in the past have owned and/or operated combined sewer systems that included CSOs that discharged to the Passaic River.

160.    Each combined sewer system now or formerly owned and/or operated by the City of Paterson, City of Newark, Town of Kearny, Borough of East Newark, or Town of Harrison is a "facility" as that term is defined in 42 U.S.C. § 9601(9).

161.    The facilities now or formerly owned and/or operated by the City of Paterson, City of Newark, Town of Kearny, Borough of Newark, or Town of Harrison were designed, constructed, and operated in a manner that resulted in the "release" of Hazardous Substances as defined in 42 U.S.C. § 9601(14) and § 9601(22).

162.    The City of Paterson, City of Newark, Town of Kearny, Borough of East Newark, and Town of Harrison are each therefore liable under 42 U.S.C. § 9607(a)(1) and/or § 9607(a)(2)

17144838.1

for the costs of response resulting from the release of Hazardous Substances, including all of the 8 COCs, from their respective facilities.

163.    The Township of Belleville, Township of Bloomfield, Township of Cedar Grove, City of Clifton, Borough of East Newark, City of East Orange, Borough of East Rutherford, Borough of Elmwood Park, Borough of Fair Lawn, Borough of Franklin Lakes, City of Garfield, Borough of Glen Ridge, Borough of Glen Rock, Borough of Haledon, Town of Harrison, Borough of Hasbrouck Heights, Borough of Hawthorne, Town of Kearny, Township of Little Falls, Borough of Lodi, Township of Lyndhurst, Township of Montclair, City of Newark, Borough of North Arlington, Borough of North Caldwell, Borough of North Haledon, Township of Nutley, City of Orange Township, City of Passaic, City of Paterson,  Borough of Prospect Park, Village of Ridgewood, Borough of Rutherford, Township of Saddle Brook, Township of South Hackensack, Township of South Orange Borough of Totowa, Borough of Wallington, Township of West Orange, Borough of Woodland Park, and Borough of Wood-Ridge are owners and operators of sewers that transport and arrange for the disposal of Hazardous Substances including the 8 COCs from municipal and industrial dischargers to the PVSC system and to the Passaic River and are therefore each liable under 42 U.S.C. § 9607(a)(3) for the costs of response resulting from the release of Hazardous Substances from the PVSC system.

164.    Each Third-Party Plaintiff has incurred costs and will continue to incur costs as a consequence of the release(s) or threatened release(s) of Hazardous Substances into the environment at and from the PVSC facility.  These response costs are necessary and are consistent with the National Contingency Plan, 40 C.F.R. § 300.

165.    Each Third-Party Plaintiff  has incurred costs and will continue to incur costs as a consequence of the release(s) or threatened release(s) of Hazardous Substances into the

17144838.1

environment at and from the combined sewer systems now or formerly owned and/or operated by the City of Paterson, City of Newark, Town of Kearny, Borough of East Newark, and Town of Harrison.  These response costs are necessary and are consistent with the National Contingency Plan, 40 C.F.R. § 300.

166.    Each Third-Party Plaintiff  has paid more than its equitable share of response costs and is entitled to contribution from each Third-Party Defendant pursuant to 42 U.S.C. § 9613(f) for an equitable share up to 100 percent of the response costs incurred, or to be incurred, as a consequence of the release(s) or threatened release(s) of hazardous substances into the environment at the Diamond Alkali Site, including prejudgment interest.

WHEREFORE, Third-Party Plaintiffs respectfully request that the Court:

a)    Declare that each Third-Party Defendant is liable under 42 U.S.C. § 9613(f) for its share, using such equitable factors as the Court determines are appropriate, of response costs incurred and to be incurred by Third-Party Plaintiffs as a result of releases or threatened releases of hazardous substances at the Diamond Alkali Site;

b)    Award each Third-Party Plaintiff an amount, using such equitable factors as the Court determines are appropriate, to satisfy the obligation of each Third-Party Defendant for all necessary response costs incurred and to be incurred by each Third-Party Plaintiff as a result of releases or threatened releases of hazardous substances at the Diamond Alkali Site;

c)    Award Third-Party Plaintiffs prejudgment interest, costs, and attorney and expert fees as allowed by law; and

d)    Grant such other and further relief as the Court determines is just, equitable, and appropriate.

17144838.1

## COUNT II
**(Declaratory Judgment – CERCLA)**
**(Against All Third-Party Defendants)**

167.    Third-Party Plaintiffs reallege and incorporate by reference paragraphs 1 through 166 above.

168.    An actual controversy exists, within the meaning of 28 U.S.C. § 2201 and CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), between Third-Party Plaintiffs and Third-Party Defendants concerning their respective rights and responsibilities for the response costs incurred and to be incurred with respect to the Diamond Alkali Site.

169.    Each Third-Party Plaintiff has incurred and will continue to incur response costs as a direct consequence of the release(s) or threatened release(s) of Hazardous Substances disposed by the Municipalities into the environment at and from the PVSC system and from CSOs now or previously owned and operated by the City of Paterson, City of Newark, Town of Kearny, Borough of East Newark, and Town of Harrison.  These response costs are necessary and are consistent with the National Contingency Plan, 40 C.F.R. § 300.

170.    Pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 9613(g)(2), Third-Party Plaintiffs are entitled to a declaratory judgment, which will be binding in any subsequent action or actions to recover further response costs, that each Third-Party Defendant is a liable party under 42 U.S.C. § 9607(a)(1) and/or (a)(2) and/or (a)(3) for releases of Hazardous Substances at the Diamond Alkali Site.

WHEREFORE, Third-Party Plaintiffs respectfully request that the Court:

a)   Enter judgment under 42 U.S.C. § 9613 against each Third-Party Defendant, finding that each Third-Party Defendant is liable to Third-Party Plaintiffs for response costs incurred and to be incurred in connection with the release of Hazardous Substances at or

34

to the Diamond Alkali Site, or, in the alternative, for a 100 percent allocation by the Court (using such equitable factors as the Court determines are appropriate);

b)  Enter a declaratory judgment that each Third-Party Defendant is a liable party under 42 U.S.C. § 9607(a)(1) and/or (a)(2) and/or (a)(3) for releases of Hazardous Substances to the LPRSA.

c)  Enter an order awarding Third-Party Plaintiffs prejudgment interest, reasonable costs, and attorney fees; and

d)  Grant such other and further relief as the Court deems just and proper.

**COUNT III**
**(Contribution Under CERCLA Section 113)**
**(Against All Third-Party Defendants)**

171.    Third-Party Plaintiffs reallege and incorporate by reference paragraphs 1 through 170, above.

172.    OxyChem has asserted a claim against Third-Party Plaintiffs pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a) relating to the 2012 UAO.

173.    Third-Party Plaintiffs deny all liability for OxyChem's claim relating to the 2012 UAO.

174.    However, if any Third-Party Plaintiff is found liable for OxyChem's claim relating to the 2012 UAO, such Third-Party Plaintiff is entitled to contribution from each Third-Party Defendant pursuant to 42 U.S.C. § 9613(f) for an equitable share up to 100 percent of that Third-Party Plaintiff's liability for OxyChem's claim relating to the 2012 UAO.

WHEREFORE, Third-Party Plaintiffs respectfully request that the Court:

a)  Declare that each Third-Party Defendant is liable under 42 U.S.C. § 9613(f) for its share, determined by the Court using such equitable factors as it determines are

35

appropriate, for any liability relating to OxyChem's CERCLA section 107(a), 42 U.S.C. § 9607(a) claim relating to the 2012 UAO;

b)  Award each Third-Party Plaintiff an amount determined by the Court, using such equitable factors as it determines are appropriate, to satisfy the obligation of each Third-Party Defendant for its share of any liability relating to OxyChem's CERCLA section 107(a), 42 U.S.C.  § 9607(a) claim relating to the 2012 UAO;

c)  Award Third-Party Plaintiffs prejudgment interest, costs, attorney fees, and expert fees as allowed by law; and

d)  Grant such other and further relief as the Court determines is just, equitable, and appropriate.

## COUNT IV
### (Contribution Under CERCLA Section 113)
### (Against All Third-Party Defendants)

175.    Third-Party Plaintiffs reallege and incorporate by reference paragraphs 1 through 174, above.

176.    OxyChem has asserted contribution claims against Third-Party Plaintiffs pursuant to CERCLA section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B) relating to the 2008, 2011, and 2016 Settlements.

177.    OxyChem has represented during the course of this litigation that Third-Party Plaintiffs can be held liable in contribution for more than their equitable shares of any liability relating to the 2008, 2011, and 2016 Settlements and that Defendants, including Third-Party Plaintiffs, bear the risk of not impleading third parties.

178.    Third-Party Plaintiffs deny all liability for OxyChem's claims relating to the 2008, 2011, and 2016 Settlements.

17144838.1

179.    Furthermore, Third-Party Plaintiffs disagree that a contribution defendant can be held liable for more than its equitable share of any liability relating to the 2008, 2011, and 2016 Settlements.

180.    Nevertheless, if the Court credits OxyChem's position and if any Third-Party Plaintiff is found liable for more than its equitable share of any liability relating to the 2008, 2011, and 2016 Settlements, then such Third-Party Plaintiff  is entitled to contribution from each Third-Party Defendant pursuant to 42 U.S.C. § 9613(f) for an equitable share up to 100 percent of that Third-Party Plaintiff's liability for OxyChem's claim relating to the 2008, 2011, and 2016 Settlements.

WHEREFORE, Third-Party Plaintiffs respectfully request that the Court:

a)  Declare that each Third-Party Defendant is liable under 42 U.S.C. § 9613(f) for its share, determined by the Court using such equitable factors as it determines are appropriate, for any liability relating to OxyChem's CERCLA section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B) claim relating to the 2008, 2011, and 2016 Settlements;

b)  Award each Third-Party Plaintiff an amount, using such equitable factors as the Court determines are appropriate, to satisfy the obligation of each Third-Party Defendant for its share of any liability relating to OxyChem's CERCLA section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B) claim relating to the 2008, 2011, and 2016 Settlements;

c)  Award Third-Party Plaintiffs prejudgment interest, costs, and attorneys' and expert fees as allowed by law; and

d)  Grant such other and further relief as the Court determines is just, equitable, and appropriate.

17144838.1

Date: February 24, 2021        Respectfully submitted,

**PRETI, FLAHERTY, BELIVEAU
  & PACHIOS, LLP**
One City Center, PO Box 9546
Portland, ME 04112
Telephone: 207.791.3239
Jeffrey D. Talbert, Esq. (admitted *pro hac vice*)
Benjamin S. Piper, Esq. (admitted *pro hac vice*)
James W. Beers, Jr., Esq. (admitted *pro hac vice*)

*/s/ Joseph H. Blum*
SHOOK HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, NO 64108
Tel: (816) 474-6550
By:    David R. Erickson, Esq. (admitted *pro hac vice*)
       Joseph H. Blum, Esq. (NJ Bar No. 010211984)

*Counsel for the Small Parties Group*

*/s/ Diana L. Buongiorno*
**CHIESA SHAHINIAN & GIANTOMASI PC**
One Boland Drive
West Orange, NJ 07052
Tel: (973) 530-2075
By:    Diana L. Buongiorno, Esq.

*Liaison Counsel for the CSG Liaison Group*

*/s/ Lee Henig-Elona*
**GORDON & REES SCULLY MANSUKHANI**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Tel: (973) 549-2520
By:    Lee Henig-Elona, Esq.

*Liaison Counsel for the Gordon Rees Group*

17144838.1

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph H. Blum, hereby certify that on February 24, 2021, I caused a copy of the

foregoing document to be served via electronic filing on all counsel of record.

Dated: February 24, 2021          */s/ Joseph H. Blum*
                                              SHOOK HARDY & BACON L.L.P.
                                              2555 Grand Blvd.
                                              Kansas City, NO 64108
                                              Tel: (816) 474-6550

17144838.1