


Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

March 15, 2021

*Via CM/ECF*
Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

   Re: *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*,
      Civil Action No. 2:18-cv-11273-MCA-LDW

Dear Special Master Scrivo:

  We write in advance of the March 17, 2021 conference to request that the following topics be included on the agenda.

**1. SPG's Motions to Compel**

  The SPG insists it is not pursuing a strategy of delay by attrition, but the items for discussion at the March conference tell a different story.

  On Friday evening, the SPG Defendants filed an update to their four recent motions to compel. Dkt. 1178. They request rulings on two of those motions and seek orders compelling OxyChem to produce four categories of documents and to provide immediate, narrative responses to the many contention interrogatories recently served by the Defendants.

  OxyChem's letters to the Special Master on January 26, 2021 (Dkt. 1150) and March 4, 2021 (Dkt. 1175) explain why both of those motions should be denied. The information sought is *far* outside the scope of the information the SPG—either the individual members or as a group—have provided to OxyChem. For example, the SPG claims to need documents related to what they misleadingly characterize as OxyChem's "refusal to participate in the Cooperating Parties Group and EPA-convened allocation," but not a single SPG Defendant has produced documents related in any way to these subjects—such as, for example, information regarding the CPG's decision to cancel an allocation it had initiated in 2015. *See* Ex. A (Aug. 18, 2015 letter from CPG to EPA). And after drawing non-negotiable lines about the scope of their own discovery obligations— repeatedly objecting to any discovery that could implicate any geographic area outside each Defendants' specific upland site named in OxyChem's Complaint—the SPG now seeks discovery about the Love Canal Site in Niagara Falls. *See* Ex. B at pp. 4-8 ¶ 8, 10, 11 (Defendants' Omnibus Objections to OxyChem's First Request for Production). The same about-face is true for the SPG's

Special Master Thomas P. Scrivo, Esq.
March 15, 2021
Page 2

request for documents related to "OxyChem's current financial condition." *See* id. at Obj. to Request 25. The SPG overreaches by seeking documents outside the scope of discovery without any legitimate explanation for how that information is relevant and proportional. *See* Dkt. 1150 (OxyChem letter response re: requests for production).

Similarly, the SPG offers nothing to demonstrate a need for immediate, narrative responses to the contention interrogatories that have been served on OxyChem. To the contrary, the detailed allegations and extensive discovery provided by OxyChem are more than adequate and the SPG's specious claim that OxyChem's allegations are "generalized and vague" is belied by even a cursory look at OxyChem's Complaint. *See* Dkt. 1175 (OxyChem letter response re: contention interrogatories).

While the SPG does not seek rulings on its motion to compel answers to the SPG's Second Set of Interrogatories nor on its motion to compel documents from the custodial file of Frank Parigi, it is only because OxyChem compromised to stem the continuous stream of discovery disputes and motions the SPG Defendants are determined to manufacture through their liaison counsel. In contrast, those individual SPG Defendants continue to demonstrate their unwillingness to abide by the same standards their liaison counsel seeks to impose on OxyChem. *See*, *e.g.*, Ex. C (Mar. 10, 2021 letter from counsel for General Electric Corp. refusing to remove in-house counsel from disclosures or produce custodial file).

Serving its offensive discovery requests through its liaison counsel—whose role has morphed far from the administrative role envisioned by Magistrate Judge Dickson—does not give the SPG Defendants license to conduct one-sided discovery. Dkt. 395 at ¶ 2 (Pre-26(f) Conf. Scheduling Order).

**2.   Consultant Subpoenas**

As with their motions to compel, the SPG Defendants are pursuing an excessively broad scope of discovery against former and current consultants to Maxus, Tierra, and OxyChem. The SPG served subpoenas on approximately 20 such consultants with nearly identical document requests seeking, among other items, "all documents and communications sent to or received from [any party] regarding [consultant's] work on the Site, the Lister Facility, or the LPRSA for OxyChem, Maxus, Tierra, or Diamond Shamrock Chemical Company" and "all documents and communications relating to past costs expended by or estimated future costs that may be expended by [consultant] relating to work on the Site, the Lister Facility, or the LPRSA for OxyChem, Maxus, Tierra, or Diamond Shamrock Chemical Company." *See* Ex. D (Subpoena from SPG to Arcadis). In other words, the SPG seeks from these consultants every tangible thing related to all work on the 17-mile Passaic River over the last 30 years.

The untailored subpoenas covering every aspect of all work performed anywhere on the Passaic River and nearby waterways are disproportionate and unduly burdensome. First, the subpoenas seek information about response actions that are not directly at issue in this case because OxyChem is not seeking costs incurred by Maxus and Tierra before those entities entered

Special Master Thomas P. Scrivo, Esq.
March 15, 2021
Page 3

bankruptcy.  Second, the SPG cannot identify why it needs granular information about these response actions when detailed reporting about the actions is publicly available.

OxyChem's contribution claim is primarily for costs expended under the 2016 ASAOC to design the remedy selected by EPA for the Lower 8.2 miles of the Passaic River.  But the subpoenas seek "all documents" covering numerous historical response actions that would include a 1990 Consent Decree regarding OU1, a 1994 AOC for an RI/FS for six-mile stretch of the Passaic River, the 2008 Tierra Removal ASAOC, the 2011 CSO ASAOC, and the 2007 LPRSA ASAOC, among other historical response actions anywhere "from the Dundee Dam around river mile 17 to its confluence with Newark Bay."  The costs from these response actions are not at issue in this case, yet casting the wide net of "all documents and communications" in the possession of the consultants that performed work on these actions would inject *terabytes* of data and potentially more than a million additional documents into the case.

Second, any potentially relevant information from these prior response actions about the condition of the river is *publicly available.* The work plans, design specifications, interim reports, final reports, regulator comments, and all sampling data from prior response actions is *already available* to the SPG, as well as the public at large.  *See, e.g.*, https://sharepoint.ourpassaic.org.  In addition,  OxyChem has produced to the Defendants information regarding these response actions received from Tierra in the Maxus/Tierra bankruptcy. The SPG cannot identify why every granular day-to-day communication or draft generated during the course of prior response actions is proportionate to the needs of the case, much less identify any potential value or uniqueness of the information sought.

The positions taken by the SPG on the relevance and proportionality of this information are telling.  The SPG's response for why the publicly available information is not sufficient is "we don't know what we don't know" and "there may be communications that contradict the final reports submitted to the regulators."  This conjecture is a patent fishing expedition that defies proportionality and burden rules.  "No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence. … [A] party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case."  *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 2016 WL 146574, at *1 (N.D. Cal. 2016); *see also Conforti v. St. Joseph's Healthcare Sys., Inc.*, 2019 WL 3847994, at *2 (D.N.J. Aug. 15, 2019) (holding that the Court may limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit").  The SPG cannot identify a single benefit to this case from these documents that is not already achieved through the public reporting.  Indeed, if it had specific document needs, it would have sent tailored requests that narrowly target discrete issues.  But the "all documents" subpoenas sent to nearly 20 consultants asking for *everything* related to every minute worked on the Passaic River over the last 30 years is a fishing expedition of diminishing returns.

To be specific, and looking at just two of twenty subpoenas, the SPG would have Arcadis collect, review, and turn over *3 terabytes of data*, and Brown & Caldwell over 87 gigabytes of data, that OxyChem must then load into a review database and review for privilege.  The pre-production costs alone would be in the hundreds of thousands of dollars, which far exceeds any

Special Master Thomas P. Scrivo, Esq.
March 15, 2021
Page 4

unarticulated marginal utility that the documents may have over and above the voluminous documents already available from prior response actions. As propounded, the SPG's subpoenas will not discover new information but will endlessly bog down the case in limitless unnecessary information.

The SPG has effectively conceded the disproportionate burden of this discovery in its objections to 7 subpoenas served by OxyChem on the CPG's consultants:

> The Subpoenas are inappropriately overbroad and seek material that is irrelevant to the claims or defenses of any party to this action and not proportional to the needs of the case. None of the Subpoenas identifies a timeframe for any of the requests. As OxyChem well knows, *the consultants targeted by the instant Subpoenas have provided a variety of services to a variety of clients regarding the Passaic River over a significant time period—in some instances, for decades.* But the subpoenas make no attempt to narrowly target documents or information relevant to the above-captioned litigation (to the extent any of it is not privileged or otherwise immune from discovery).

Ex. E (Nov. 11, 2020 letter from CPG and SPG to OxyChem). OxyChem has made clear it will reduce the scope of the subpoenas it has served on CPG consultants depending on the SPG's agreement to limit to scope of the subpoenas to the Maxus, Tierra, and OxyChem consultants, but to date the SPG's "limitations" have consisted of eliminating from the scope of the requests publicly available information or documents already produced to the Defendants. *See id.* In other words, there has been no meaningful limitation at all.

If permitted to maintain its fishing expedition into a sea of consultant documents, the SPG's subpoenas will have the intended effect on the pace of discovery. OxyChem will be forced to process and undertake a review of thousands of emails, attachments, and documents—more than *300,000* ESI documents have been collected to date from just two consultants—that the Defendants have sought from the Maxus, Tierra, and OxyChem consultants. And that only scratches the surface of the documents sought by the SPG.

OxyChem has had numerous meet-and-confer conferences with the SPG, beginning last December, over the scope of the subpoenas. If the SPG will not agree to meaningfully narrow the scope of these subpoenas, OxyChem will seek a protective order at next month's conference.

3. **ESI**

In contrast to the SPG's effort to expand discovery to the limits of relevance, it has become clear that a number of their constituent Defendants are taking the opposite approach with their own productions. Based on the responses to information provided by Defendants, at least 15 defendants relied entirely on the SPG Common Search Terms, *without modification*, as their only means to identify responsive ESI. When those Common Search Terms were proposed, the SPG indicated

Special Master Thomas P. Scrivo, Esq.
March 15, 2021
Page 5

that each Defendant would modify those terms as appropriate to ensure that a reasonably diligent search was conducted. *See* Ex. F (Dec. 19, 2019 letter from SPG to OxyChem). And adoption of the Common Search Terms does not absolve a Defendant from making a "good faith attempt to ensure their individual ESI production complies with all applicable requirements." *See* Special Master ESI Order ¶ 1 [Dkt. 932]; *Younes v. 7-Eleven*, 312 F.R.D. 692, 709 (D.N.J. 2015) (the Federal Rules "do not and should not require plaintiffs to use 'magic words' to obtain clearly relevant discovery. The obligation on parties and counsel to come forward with relevant documents requested during discovery is 'absolute.'"). Without modification or additional measures to ensure an adequate search, relying entirely on the SPG's Common Search Terms is likely inadequate because its 3-part structure returns only documents containing a term from *all three* parts—including, for example, one of the names of the "8 ROD COCs." Such an approach almost certainly excludes documents within the scope of discovery as determined by the Special Master. *See* Special Master Scope of Discovery Order [Dkt. 959].

Additionally, 21 Defendants have produced ESI but have not provided their search terms or custodians. Despite the SPG's repeated assurance that "most" SPG Defendants have substantially completed their ESI productions, OxyChem is still receiving basic information about those productions. *See*, *e.g.*, Ex. G (correspondence between OxyChem and BASF).

As to OxyChem's ESI, OxyChem is currently working toward finalizing its privilege log for its January production of 58,000 ESI documents, its supplemental productions—and reviewing a substantial amount of ESI received from consultants in response to the SPG's subpoenas.[1]

**4.     Third-Party Joinder**

As originally formulated in the Order Regarding Pleadings (Dkt. 391), the Defendants were permitted to join new parties within 30 days after the Court issued its order on the Defendants' motions to dismiss, and OxyChem was permitted to join new parties within 30 days after that. Those joinder deadlines were stayed until entry of the operative May 31, 2021 joinder deadline.

The Defendants filed a third-party complaint on February 24, 2021, and OxyChem understands that additional third-party complaints may be filed prior to the May 31 deadline. Consistent with the timeline in the Order Regarding Pleadings, and rather than having to serially assert claims within thirty days after each third-party complaint is filed by a Defendant, OxyChem believes it would be efficient to assert its new claims in a single filing within thirty days after the final third-party complaint deadline on May 31, 2021.

---

[1] While OxyChem's ESI production of over 400,000 documents dwarfs that of any Defendant, the SPG continues to raise unsupported "concerns" and improper discovery-on-discovery. *See* Ex. H (Feb. 5, 2021 Letter from OxyChem to SPG).

Special Master Thomas P. Scrivo, Esq.
March 15, 2021
Page 6

      We look forward to addressing these issues with you at the conference on March 17, 2021.

      Respectfully submitted,

*Kathy Patrick*

Kathy D. Patrick


/s/ *John J. McDermott*

John J. McDermott

cc:    All counsel of record

220593319v1