# EXHIBIT C

**Kegan A. Brown**
Direct Dial: 212.906.1224
kegan.brown@lw.com

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

March 10, 2021

<u>**VIA EMAIL**</u>

John J. McDermott, Esq.
Archer & Greiner, P.C.
One Centennial Square
33 East Euclid Avenue
Haddonfield, NJ 08033

Re: <u>*Occidental Chemical Corporation v. 21st Century Fox America, Inc., et al.*
District of New Jersey Case No. 2:18-cv-11273</u>

Counsel –

On behalf of General Electric Company ("GE"), I write in response to Occidental Chemical Corporation's ("OxyChem") February 12, 2021 letter requesting additional information regarding GE's December 31, 2020 production of electronically stored information ("ESI").

At the outset, GE objects to any suggestion that its ESI production was inadequate, including OxyChem's speculation that GE's search terms and list of custodians were "unlikely to have captured all information that is reasonably responsive to OxyChem's document requests." [Letter from J. McDermott to K. Brown at 1 (Feb. 12, 2021).] GE made reasonable efforts to identify, collect, and produce non-privileged, responsive documents in its possession, custody or control. This satisfies GE's discovery obligations. *See, e.g., Boehringer Ingelheim Pharma GMBH & Co. KG v. Teva Pharm. USA, Inc.,* No. CV 14-7811 (MLC), 2016 WL 11220848, at *2-4 (D.N.J. Aug. 5, 2016); *Ford Motor Co. v. Edgewood Props.*, 257 F.R.D. 418, 427 (D.N.J. 2009).

GE's responses to the specific questions in OxyChem's February 12 letter are set forth below.

1. **"Did GE rely only on the Common Terms to identify responsive documents? Was another methodology employed to locate responsive documents, or to cull nonresponsive documents from certain ESI locations?"**

    GE took several steps to locate responsive documents, including: (1) interviewing custodians to identify where potentially responsive information was stored and collecting and searching those files; (2) collecting and searching custodian emails to capture responsive documents; (3) searching non-custodial files where GE reasonably believed responsive information could be stored; (4) reviewing all search results and family members to identify responsive material; and (5) evaluating all responsive documents for

March 10, 2021
Page 2

privilege.  Pursuant to the Special Master's Order, GE used the Common Terms for all searches.  [Dkt. No. 932 at 3 ("Defendants shall either adopt the Common Terms proposed by the Small Parties Group; or modify the Common Terms in a good faith attempt to ensure their individual ESI production complies with all applicable requirements.").]  Notably, GE's operations at its former facility ended *in 1971*, long before ESI even existed.  GE's search of custodial and non-custodial files was more than reasonable and satisfied GE's discovery obligations.  *See Ford,* 257 F.R.D. at 427.

2. **"Does GE know or have reason to believe it possesses responsive ESI that was not collected, reviewed, or produced because it was not captured by the Common Search Terms? GE has an independent duty to produce its relevant information. Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond"); *Younes v. 7-Eleven*, 312 F.R.D. 692, 709 (D.N.J. 2015) ("The Federal Rules do not and should not require plaintiffs to use 'magic words' to obtain clearly relevant discovery. The obligation on parties and counsel to come forward with relevant documents requested during discovery is 'absolute.'"). Please explain the steps GE took to verify that the Common Terms were sufficient to fulfill its obligation to search for all reasonably responsive ESI. If GE does possess responsive ESI that was not captured by the Common Terms, when will it produce this information?"**

   OxyChem misstates GE's discovery obligations.  [Letter from J. McDermott to K. Brown at 1 (Feb. 12, 2021).]  GE is not required to endlessly search for potentially responsive ESI; instead, the lodestar for GE's discovery obligations is reasonableness.  *Boehringer,* 2016 WL 11220848, at *2-4; *Ford,* 257 F.R.D. at 427. The lengthy set of agreed-upon search terms, coupled with the broad site-specific terms that GE provided to OxyChem in its January 19, 2021 correspondence, are more than reasonable to capture potentially responsive ESI.  [Letter from K. Brown to J. McDermott, Appendix A (Jan. 19, 2021) (providing terms); Dkt. No. 932 at 3.]

3. **"Has GE produced all documents from the responsive project files of ESI custodians who work or have worked directly on the remediation of the former GE facility named in OxyChem's Complaint ('5th Street Facility')?"**

   GE has produced all responsive, non-privileged documents it has identified as a result of its good faith, reasonable search.  Contrary to OxyChem's suggestion that GE must produce "all documents" from so-called "responsive project files," the fact that documents are electronically stored in certain files does not make them automatically "responsive."  Surely OxyChem would not agree to the converse:  that if the name of an electronic folder is not responsive, then GE is excused from conducting any further good faith, reasonable inquiry of that electronic folder.  GE, using good faith, reasonable efforts, collected, searched for and reviewed potentially responsive ESI from the identified custodians, and produced responsive, non-privileged ESI to OxyChem.

**LATHAM&WATKINS**LLP

4. **"Will GE produce all non-privileged documents from the responsive files of the relevant individuals identified in GE's written discovery, but not identified as ESI custodians?"**

OxyChem identifies David Mackie and Margaret Carillo-Sheridan as relevant ESI custodians. [Letter from J. McDermott to K. Brown at 3 (Feb. 12, 2021).] As an initial matter, GE objects to OxyChem's claim that it must produce "all non-privileged documents" from "responsive files" to the extent it suggests that certain documents are rendered automatically responsive by virtue of existing in specific folders. That is not how responsiveness is determined. Moreover, these consultants' documents are not in GE's possession, custody or control. Further, parties to this litigation have sought to obtain documents from third parties through subpoenas, not party discovery. GE, of course, reserves the right to object to such a subpoena on the basis of attorney-client privilege, attorney work product protections, and any other applicable privilege or protection. GE's position should come as no surprise, as OxyChem itself has consistently taken the position that its communications with its consultants are protected by attorney-client privilege and work product doctrine. [*See, e.g.*, Dkt. No. 1102 at 14-15, 18 ("Accordingly, the joint-client privilege and work product doctrine, discussed further below, apply to shield from discovery the thousands of documents on which Vinson & Elkins and Drinker Biddle appear, as well documents on which their *consultants* appeared") (emphasis added).]

OxyChem also identifies Roger Florio as a relevant ESI custodian. Roger Florio is formerly in-house counsel at GE who advised "with respect to the Diamond Alkali Superfund Site." [Dkt. No. 544 at 11.] His files are therefore exempt from search, production, and inclusion in GE's privilege logs. [Dkt. No. 544 at 11 ("No party is required to search, produce, or include in its privilege logs . . . custodial files of counsel of record or outside attorneys advising in this litigation or with respect to the Diamond Alkali Superfund Site").]

OxyChem's suggestion that "GE has adopted the position through its liaison counsel that the files of in-house counsel must be searched if identified on a party's Rule 26 disclosures" is incorrect. [Letter from J. McDermott to K. Brown at 3 (Feb. 12, 2021)]. OxyChem's assertion is based on the Small Parties Group's ("SPG") efforts to require that OxyChem produce ESI from its in-house counsel and Vice President, Frank Parigi. The situations between Mr. Florio and Mr. Parigi are easily distinguishable: Mr. Parigi had an *additional* role as a company executive, which included responsibilities beyond any legal work performed as in-house counsel. Indeed, deposition testimony confirmed that Mr. Parigi served in non-legal roles for OxyChem on several occasions, and Mr. Parigi served as OxyChem's corporate representative for four days in the Spill Act litigation. [Dkt. No. 1126 at 1-2; Dkt. No. 1126, Exhibits A-C.] Mr. Florio, by contrast, did not serve in a non-legal capacity while employed by GE. His documents, therefore, remain exempted from searches and production pursuant to the protocol in this case. [Dkt. No. 544 at 11.]

**LATHAM&WATKINS**LLP

5. **"Did GE limit its production to the three categories proposed by its liaison counsel (historical operations, releases of hazardous substances, and remedial investigations)?"**

No, GE did not limit its production to the three categories proposed by its liaison counsel.

If you would like to discuss further, please do not hesitate to contact me.

Sincerely,

Kegan A. Brown
of LATHAM & WATKINS LLP