# Exhibit H




Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

February 5, 2021

<u>Via Email</u>

James W. Beers, Jr., Esq.
Preti Flaherty Beliveau & Pachios LLP
1155 F Street, NW, Suite 1050
Washington, D.C. 20004
jbeers@preti.com

   Re: *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*
      Civil Action No. 2:18-cv-11273-MCA-LDW

Dear James:

  We write in response to your January 22, 2021 letter, which manufactures two "concerns" regarding OxyChem's ESI production and culling methodology in an effort to justify impermissible discovery-on-discovery. Nothing about OxyChem's ESI production warrants such discovery, and the SPG has not met its burden to establish otherwise.

**A.** **The SPG's Concerns are Manufactured**

1. *"[U]ntil now, OxyChem may have been applying search terms that it understood would result in the production of irrelevant information from the files of its previous custodians."*

  This concern does not make sense. OxyChem has explained repeatedly that all ESI produced by OxyChem was manually reviewed for responsiveness.[1] For locations specifically identified by custodians as containing responsive ESI, all collected ESI was subject to a manual, linear review. For locations identified as only possibly containing responsive ESI, the collected ESI was searched before undergoing a manual, linear review.

  While we cannot think of a situation where purposefully searching for *irrelevant* information would *benefit* OxyChem, in any event such information would have been culled by subsequent manual review.

---

[1] Sept. 26, 2019 Letter from OxyChem to Liaison Counsel re: OxyChem's ESI methodology; Nov. 5, 2020 Letter from OxyChem to SPG re: ESI Custodians; Tr. of Feb. 12, 2020 Special Master Meeting at 15:16-16:12; 24:1-25:19.

James W. Beers, Jr., Esq.
February 5, 2021
Page 2

> 2. *"The SPG is concerned that OxyChem chose to vary its review process at this late stage for just a few custodians that were specifically identified by the SPG."*

The SPG did *not* identify individuals who, based on any specific information or evidence, may have relevant ESI. Instead, the SPG compiled a list of 36 names and included them in a series of letters without any explanation of why the SPG believed those employees would be custodians for responsive ESI nor how the SPG reached that conclusion. Some of the SPG's "potential ESI custodians" appear only on a handful of documents from the 1970s, more than a decade before they even could have been ESI custodians. This falls short of meeting the SPG's burden to articulate a basis for their identification of additional ESI custodians. *See In re EpiPen Marketing Sales Practices and Antitrust Litig.*, No. 17-md-2785, 2018 WL 1440923, at *2 (D. Kan. March 15, 2018) ("The party seeking to compel the designation of a particular additional ESI custodian has the initial threshold burden of showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case."). As you point out, review of the ESI from these former employees resulted in a "responsiveness rate of less than 0.02%," which further demonstrates what was already apparent—the scattershot list of names the SPG submitted to OxyChem was compiled without any diligence.

**B.      OxyChem's Review of its Former Employee ESI**

Despite the lack of any basis to second-guess OxyChem's custodian determinations, OxyChem chose to cooperate with the SPG in order to move discovery along and avoid unnecessary disputes. OxyChem undertook the burden of determining whether it possessed ESI from those employees and, if so, searching and reviewing that ESI. OxyChem possessed ESI from 6 of the former employees identified on the SPG's list. The decision to cooperate by searching and reviewing that ESI does *not* alter OxyChem's initial determination that those former employees were unlikely to have been custodians for responsive ESI. The actual roles of these custodians—based on facts, not the SPG's speculation—are entirely consistent with the relatively few number of responsive documents found in their ESI.

You speculate that because "application of the original search terms returned 202,506 documents for review, this seems to confirm the likely relevance of these previously-omitted custodians." But manual review of the 14,951 documents identified by the *narrowed* search term list resulted in a small fraction of those documents being identified as responsive. This confirms Oxy's initial determination that these former employees should *not* be designated ESI custodians.

To remove any doubt regarding the adequacy of OxyChem's approach to culling non-responsive documents from the former employee ESI, OxyChem's ESI vendor randomly selected a sample of about 1% of the documents that did not contain any of OxyChem's narrowed search terms. The random sample set (1,729 documents in total) was reviewed manually and had a 0% responsiveness rate—*none* of the random sample documents were identified as being related to any issue relevant to this lawsuit.

James W. Beers, Jr., Esq.
February 5, 2021
Page 3

### C.    The SPG's Discovery-on-Discovery

> *1. Please provide a list of the custodians whose documents are encompassed by the volumes OCC-CER-S001, OCC-CER-E001 through E007, and OCC-CER012, CER013, and CER018.  We are seeking this information, in part because your January 11 letter indicates that the 91 documents in volume OCC-CER-E006 represent the ESI from at least eight custodians, but the files produced only list three custodians in their metadata.*

To clarify, volume OCC-CER-E006 contained the *responsive, not privileged* documents identified within the ESI of the employees and former employees "identified" by the SPG: Suda Arakere, Colleen Costello, and George Luxbacher.  The ESI of two other custodians (Dennis Blake and John Morgan) did not contain any ESI that was identified as responsive, and all responsive documents identified from the review of Jo Ellen Drisko and David Steele's ESI were identified as privileged.

The custodian for each document in the other production volumes listed is identified in the metadata included with those productions, per the Joint Protocol.

> *2. Please explain what search terms were used for OCC-CER-S001 and OCC-CER-E001 through E007.  Please provide the date searches were run and the responsiveness rates of the search terms in limiting documents from the location searched for OCC-CER-S001 and OCC-CER-E001 through E007.  We are seeking this information to understand how OxyChem's previous use of search terms varied from what it described in you [sic] January 11 letter.*

We provided OxyChem's search terms and how it applied those search terms more than a year ago, in OxyChem's September 24, 2019 ESI letter and its November 5, 2020 letter providing additional information requested by the SPG.  OxyChem's original search terms, and the search terms suggested by the SPG that OxyChem accepted wholesale, were designed to run on ESI collected from custodians with substantial involvement in the facts related to this lawsuit.  When applied to OxyChem's former employee ESI, those search terms had to be narrowed to effectively cull non-responsive documents.

Your subterfuge of "seeking to understand" does not permit discovery-on-discovery.  And the comparison of responsiveness rates you describe would not be useful because OxyChem selected and collected from custodians it determined were likely to possess responsive ESI, while the SPG simply cast a wide net by identifying several dozen current and former employees.

James W. Beers, Jr., Esq.
February 5, 2021
Page 4

> 3. OxyChem indicated that a significant volume of documents returned by OxyChem's search terms and manual review were deemed irrelevant to this suit. The SPG would like information on what criteria were used by OxyChem to determine that these documents were not relevant to this case. Any information relating to the relevance responsiveness rates of other ESI productions (OCC-CER-S001 and OCC-CER-E001 through E007) would be helpful to this discussion.

To arrive at the narrowed set of search terms for the *former* employee list proposed by the SPG, OxyChem reviewed subsets of the documents identified by the larger search term set. The subsets were determined by searching for specific terms that were unlikely to return responsive documents. As one example of many, one of the SPG's terms suggested for OxyChem, "Arcadis," returned 36,999 hits. It was apparent that almost all of them were related to other environmental sites where OxyChem engaged Arcadis for substantive work, and were completely unrelated to the Diamond Alkali Superfund Site. By contrast, the search **Arcadis AND (Lister OR Passaic)** returned only 270 document hits. Of those documents, all were related to other environmental sites in New Jersey, or high-level budgetary and project management documents that rolled up several unrelated environmental projects into one document. All 270 of these documents were captured by the broad terms OxyChem included in its narrowed set of search terms—but even in that limited set many were related to other sites or were privileged. The same outcome resulted when applying many of the SPG's other suggested terms—for example, many of the Defendant names (**3M** took 8,877 hits, mostly related to the abbreviation "PW-3M" for a pumping rate calculation at other sites; **Vulcan** hit on 7,537 unrelated documents about a business deal in Kansas).

To eliminate any doubt, counsel for OxyChem reviewed a randomly selected sample of about 1% (1,729 documents) of the documents that were identified by the initial, larger set of search terms but not the narrowed set of terms. *Zero* responsive documents were found in this sample.

> 4. We are in receipt of production OCC-CER-E007. Please confirm that OxyChem's ESI production is now complete, except for any supplemental productions or any productions required as a result of the resolution of any discovery disputes. We also need additional information on the "supplemental" productions referenced in OxyChem's recent agenda letter to Special Master Scrivo. When does OxyChem anticipate making these productions? From which custodians and for what time period—i.e., when were documents last collected from each custodian? What is the overall anticipated volume of these additional productions?

As explained in OxyChem's January 18, 2021 monthly agenda letter to Special Master Scrivo, OxyChem's ESI production is substantially complete with the exception of supplemental productions from GSH custodians who are actively working on the remedial design at the Diamond Alkali Superfund Site, and any documents produced during completion of OxyChem's privilege log. OxyChem is reviewing these active custodian documents and will produce them on a rolling basis.

James W. Beers, Jr., Esq.
February 5, 2021
Page 5

To the extent the SPG's January 18, 2021 ESI update failed to provide information regarding the SPG Defendants who have not substantially completed ESI, please provide that information along with an accounting of the remaining documents to collect and produce.

5. *Your letter indicates that OxyChem will produce a privilege log associated with production volume OCC-CER-E006 in accordance with the Joint Protocol. We interpret that to mean that such a privilege log will be produced within 120 days from December 31, 2020. Thus far, however, the SPG has not received privilege logs for any documents withheld during the production of volumes OCC-CER-S001, OCC-CER-E001 through E007, OCC-CER-SA002 and SA003, OCC-CER012, CER013 and CER018. Please confirm the schedule for upcoming any [sic] privilege log(s) and which volumes are covered by an anticipated log.*

- OCC-CER-S001: No privileged documents were withheld from this production of sampling data-related documents. *See* OxyChem's November 4, 2019 production letter ("OCC-CER-S001 consists of documents from the Tierra Transition ESI and OxyChem's Diamond Alkali Superfund Site Documents, as defined in OxyChem's December 19, 2018 Initial Disclosures. Note that OxyChem believes all sampling data reflected in OCC-CER-S001 are already in Defendants' possession.").

- OCC-CER-E001 and E002: No privileged documents were withheld from these productions, which consisted of a portion of the ESI collected from the GSH S-Drive, electronic files of GSH employee Brian Mikucki, submissions to EPA, and ESI related to response costs incurred by OxyChem. *See* OxyChem's Aug. 8, 2020 production letter.

- OCC-CER-E003: Under the Joint Protocol, the privilege log for the documents withheld from this production is due today.

- OCC-CER-E004: Under the Joint Protocol, the privilege log for any documents withheld from this production is due February 25, 2021.

- OCC-CER-E005: Under the Joint Protocol, the privilege log for any documents withheld from this production is due April 7, 2021.

- OCC-CER-E006: Under the Joint Protocol, the privilege log for any documents withheld from this production is due April 30, 2021.

- OCC-CER-E007: Under the Joint Protocol, the privilege log for this production is due May 14, 2011.

- OCC-CER-SA002 and SA003: These productions contained depositions transcripts and associated exhibits, including the transcripts previously produced to the SPG in the Maxus/Tierra Bankruptcy in 2017.

James W. Beers, Jr., Esq.
February 5, 2021
Page 6

- <u>OCC-CER012</u>: No privileged documents were withheld from this production. *See* OxyChem's September 18, 2019 production letter ("Production volume OCC-CER012 (containing 4 documents bates stamped OCCCER000405045 through OCC-CER000405062) . . . contains certain documents referenced in OxyChem's Amended Responses to the Standard Interrogatories, served on September 18, 2019.")

- <u>OCC-CER013</u>: No privileged documents were withheld from these productions. OCC-CER013 consisted of 3 document retention policies. *See* OxyChem's Sept. 24, 2019 production letter ("Production volume OCC-CER013 . . . contains three document retention policies dated October 16, 1978, October 14, 1982, and February 8, 1984, respectively."

- <u>OCC-CER017</u>: No privileged documents were withheld from this production, which consisted of deposition exhibits and associated exhibits from the "Dallas I" and "Dallas II" litigations, as requested by the SPG. *See* OxyChem's Oct. 14, 2020 production letter.

We request that in your role as liaison counsel, you also please confirm the schedule for upcoming privilege logs to be produced by the SPG Defendants and which volumes are covered by each anticipated log.

Very truly yours,

*Kathy Patrick*

Kathy D. Patrick


/s/ *John J. McDermott*

John J. McDermott


cc:   Jeffrey D. Talbert, Esq.
      Lee Henig-Elona, Esq.
      Diana L. Buongiorno, Esq.
      Steven M. Richman, Esq.

220190102v3