ARCHER & GREINER, P.C.
One Centennial Square
Haddonfield, NJ 08033
Tel.   (856) 795-2121
By:    John J. McDermott, Esq.
       (jmcdermott@archerlaw.com)

GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel.   (713) 650-8805
By:    Kathy D. Patrick, Esq.
       (kpatrick@gibbsbruns.com)
       Anthony N. Kaim, Esq.

*Attorneys for Plaintiff Occidental Chemical Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION | ) Hon. Madeline Cox Arleo |
| | ) Hon. Leda Dunn Wettre |
| Plaintiff, | ) |
| | ) Civil Action No. 2:18-cv-11273 |
| v. | ) |
| | ) **BRIEF IN SUPPORT OF PLAINTIFF** |
| 21ST CENTURY FOX AMERICA, INC., *et al.* | ) **OCCIDENTAL CHEMICAL** |
| | ) **CORPORATION'S MOTION FOR** |
| Defendants, | ) **PARTIAL SUMMARY JUDGMENT** |
| | ) **ON BATH IRON WORKS** |
| 21ST CENTURY FOX AMERICA, INC., *et al.* | ) **CORPORATION'S SUCCESSOR** |
| | ) **LIABILITY** |
| Third-Party Plaintiffs, | ) |
| | ) Motion Date: September 7, 2021 |
| v. | ) |
| | ) Oral Argument Requested |
| PASSAIC VALLEY SEWERAGE | ) |
| COMMISSIONERS, *et al.* | ) |
| | ) |
| Third-Party Defendants. | ) |
| | ) |

## **TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................5

**STATEMENT OF UNDISPUTED FACTS** ................................................................................5

**LEGAL STANDARD** ...............................................................................................................12

**ARGUMENT** .............................................................................................................................13

    I)   **BIW IS CONGOLEUM CORPORATION'S CORPORATE SUCCESSOR AND IS LIABLE FOR THE CONGOLEUM PLANT DISCHARGES** ..............................................13

        A)   BIW Succeeded by Operation of Law to Congoleum's Congoleum Plant-Related Liabilities ..............................................................................................................13

        B)   BIW And Its Predecessors Are One And The Same ...........................................14

        C)   BIW Did Not Free Itself Of Liabilities Related To The Congoleum Plant With The Resilco Assignment ..........................................................................................15

    II)  **THE COURT SHOULD RESOLVE THE ISSUE OF BIW'S SUCCESSOR LIABILITY NOW** ..............................................................................................................................17

**CONCLUSION** ..........................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242, 247 (1986) .................................................................................................. 13

*Baker v. Nat'l St. Bank*
  161 N.J. 220, 227-28 (1999) ............................................................................................. 15

*Beazer E., Inc. v. Mead Corp.*
  34 F.3d 206, 210–11 (3d Cir. 1994) .................................................................................. 16

*Celotex Corp. v. Catrett*
  477 U.S. 317, 322 (1986) .................................................................................................. 13

*Chaveriat v. Williams Pipe Line Co.*
  11 F.3d 1420, 1425 (7th Cir. 1993) ................................................................................... 17

*Chrysler Corp. v. Ford Motor Co.*
  972 F. Supp. 1097 (E.D. Mich. 1997)). ............................................................................. 17

*DVL, Inc. v. Congoleum Corp.*
  2018 U.S. Dist. LEXIS 143437, *15 (D.N.J. Aug. 23, 2018) ............................................ 13

*Gould, Inc. v. A & M Battery & Tire Serv.*
  987 F. Supp. 353, 372 (M.D. Pa. 1997) ............................................................................ 15

*Grant-Howard Assocs. v. Gen. Housewares Corp.*
  63 N.Y.2d 291, 297, 472 N.E.2d 1, 3 (1984) .................................................................... 18

*Harley-Davidson, Inc. v. Minstar, Inc.*
  41 F.3d 341, 344 (7th Cir. 1994). ...................................................................................... 18

*Hobart Corp. v. Dayton Power & Light Co.*

407 F. Supp. 3d 732, 734 (S.D. Ohio 2019 .......................................................................... 16, 17

*In re Congoleum Corporation*

No. 20-18488 (MBK) (Bankr. D.N.J.). ........................................................................... 6

*Miller v. Ind. Hosp.*

843 F.2d 139, 143 (3d Cir. 1988) .................................................................................... 14

*Occidental Chem. Corp. v. 21st Century Fox Am.*

No. 18-11273 (Sept. 11, 2020) ........................................................................................ 14

*Peters v. Del. River Port Auth.*

16 F.3d 1346, 1349 (3d Cir. 1994) .................................................................................. 14

*Smith Land & Improvement Corp. v. Celotex Corp*

851 F.2d 86, 92 (3d Cir. 1988) ........................................................................................ 14

*State v. Ventron Corp.*

94 N.J. 473, 503, 468 A.2d 150, 166 (1983) ................................................................... 15

*United States v. Gen. Battery Corp.*

423 F.3d 294, 298 (3d Cir. 2005) .................................................................................... 14

*United States v. Lang*

864 F. Supp. 610 (E.D. Tex. 1994) ................................................................................. 17

*United States v. NCR Corp.*

840 F. Supp. 2d 1093 (E.D. Wis. 2011) .......................................................................... 17

**Statutes**

42 U.S.C § 9607 ................................................................................................................... 16, 18

Del. Code Ann. Tit. 8, § 259 ..................................................................................................... 15

N.Y. Bus. Corp. Law § 906 ....................................................................................................... 15

## INTRODUCTION

Bath Iron Works Corporation ("BIW"), after a 1986 merger, became the corporate successor to the companies that owned and operated the manufacturing facility from the 1880s until 1979 that was located at 195 Belgrove Drive (also known as 160 Passaic Avenue) in Kearny, immediately adjacent to the Passaic River (the "Congoleum Plant"). Accordingly, BIW is liable for the acts and omissions of those companies, including Congoleum Corporation. Those acts and omissions include the discharge to the river of PCBs, lead, copper, mercury, and other contaminants of concern ("COCs"). The Court should find that BIW is liable for its predecessors' discharges of PCBs and other COCs into the Passaic River and the Passaic River sediment.

## STATEMENT OF UNDISPUTED FACTS

In 1986, BIW merged with Congoleum Corporation, which was the corporation that in 1984 acquired and expressly assumed the flooring-related liabilities of the Congoleum Plant's original owner and operator, Congoleum-Nairn, Inc., and then proceeded to operate the Congoleum Plant until 1986 (and to sell it to a third party). SMF[1] ¶¶ 1, 2, 9-11, 17-18.

In Congoleum Corporation's 2020 bankruptcy case,[2] BIW made representations in an "Offer of Proof" to the Bankruptcy Court sufficient to establish its successorship to Congoleum Corporation. Initially, BIW admitted:

> Congoleum, through various corporate forms, first began developing flooring products in the 1800s in Scotland. Michael Nairn was the original

---

[1] Statement of Material Facts not in Dispute, filed herewith.
[2] In re Congoleum Corporation, No. 20-18488 (MBK) (Bankr. D.N.J.). The Debtor in that case, the entity now known as Congoleum Corporation, was formed in 1986 and is not the Congoleum Corporation with which BIW merged.

5

> inventor of its first floor covering product. … In 1886, Congoleum established the U.S. headquarters of its business in Kearny, New Jersey and operated its resilient flooring business, the Congoleum Flooring Business, in Kearny, New Jersey. … As a result of various acquisitions in 1924, Congoleum operated under the name Congoleum-Nairn Inc.

SMF ¶ 1. And:

> In 1968, Congoleum-Nairn, Inc., merged with Bath Industries, Inc. … The merged entity changed its name to Congoleum Corporation ("1968 Congoleum"), and continued to own and operate the Kearny Manufacturing Facilities. Between 1980 and 1984, this Bath-Congoleum entity engaged in a series of corporate transactions that re-structured its businesses into different subsidiaries and divisions. As a result of this re-structuring, the assets and liabilities related to the Resilient Flooring Operations, including the liabilities associated with the Kearny Manufacturing Facilities, were transferred to a newly formed entity that was also subsequently named Congoleum Corporation ("1984 Congoleum"). The 1968 Congoleum Corporation (the result of the merger between Congoleum-Nairn, Inc., and Bath Industries, Inc.) changed its name to Congoleum Industries, Inc. ("Congoleum Industries") and remained as the parent corporation of 1984 Congoleum (as well as other subsidiary businesses part of the corporate restructuring).

SMF ¶ 2.

BIW also represented to the Bankruptcy Court that in 1986, Congoleum Industries Inc. (CII), the then-corporate parent of Congoleum Corporation (which in turn was the corporate parent of BIW) "engaged in an internal restructuring." SMF ¶ 3. According to BIW, the corporate structure of CII, Congoleum Corporation and BIW was as follows immediately before the restructuring:



SMF, ¶ 6. This depiction that BIW offered to the Bankruptcy Court shows that in 1986, Congoleum Corporation had two subsidiaries, Curtis Industries and BIW. SMF, ¶¶ 5, 6.

7

According to BIW, the internal restructuring required the creation of two new subsidiaries of Congoleum Corporation: Resilco (sometimes referred to as Resilient) and Kinder Manufacturing Corporation. SMF ¶ 7. Thus:



SMF ¶ 8.

The main purpose of the two new subsidiaries was to receive Congoleum Corporation's assets and liabilities, leaving it an empty "shell" (according to BIW) with no operations and no assets except for its stock in BIW. Shedding liabilities was important, because, as shown later, the "internal restructuring" plan included merging Congoleum Corporation into BIW. Congoleum Corporation tried to cleanse itself of its liabilities (and thereby not affect its subsidiary and prospective merger partner BIW) by entering into an agreement with one of the new subsidiaries, Resilco, Inc., in a document BIW calls the "Resilco Assignment." According to BIW, "Through the Resilco Assignment, it was intended that Resilco would assume 'all of the liabilities associated with the Resilient flooring business[3] . . . It was intended to pick up liabilities, whether [it] knew about them or not.'" SMF ¶ 10. The Resilco Assignment provided:

> Resilient by this Instrument hereby undertakes, assumes and agrees that it will perform, pay or discharge all liabilities and obligations of Congoleum (*known or unknown* and whether absolute, accrued, contingent or otherwise) directly related to the Transferred Assets existing as of the date hereof and the business conducted by Congoleum's Resilient Flooring Division on the date hereof, whether asserted before or after such time.

SMF ¶¶ 9, 12. The Resilco Assignment was signed by the same person on behalf of both Congoleum Corporation and Resilco: Terry Morton. SMF ¶ 13.

The next step, according to the 1986 plan BIW submitted to the Bankruptcy Court, was that "Congoleum will transfer to CII all of its remaining assets, except for the capital stock of Bath [i.e., BIW] and certain of Congoleum's minor subsidiaries.[4] Among the assets to be transferred to CII will be Congoleum's interest in the stock of Kinder, Resilient, and Curtis." SMF ¶ 14. After Congoleum Corporation transferred its Kinder, Resilient, and Curtis stock to

---

[3] The Resilient flooring business was Congoleum's flooring business in Kearny. SMF ¶¶ 1, 11.
[4] The "minor subsidiaries" were not identified in the written plan or in BIW's submissions to the Bankruptcy Court.

9

CII, those entities were no longer subsidiaries of Congoleum, but were direct subsidiaries of CII. Only BIW remained a Congoleum Corporation subsidiary:



SMF ¶ 15.

Then Congoleum Corporation, an "empty shell," merged into its subsidiary, BIW. As BIW put it, "On April 18, 1986 … the middle-tier, 1984 Congoleum,[5] was merged into BIW with BIW as the surviving corporation." SMF ¶¶ 16-17. After the merger of Congoleum Corporation into BIW, CII looked like this:



---

[5] In its Offer of Proof, BIW sometimes referred to the Congoleum Corporation with which it merged as "1984 Congoleum" to distinguish it from both earlier entities and from the Congoleum Corporation that exists today, a separate corporation that was the debtor in the 2020 bankruptcy case. BIW Offer of Proof, ¶¶ EE (p. 22).

SMF ¶ 19.

The "Plan of Merger" of 1984 Congoleum with and into BIW provides that BIW "shall thenceforth be responsible and liable for all debts, liabilities, obligations, duties and penalties of each of the Constituent Corporations, and all said debts, liabilities, obligations, duties and penalties shall thenceforth attach to the Surviving Corporation [i.e., BIW] and may be enforced against it to the same extent as if said debts, liabilities, obligations, duties and penalties had been incurred or contracted by it." SMF ¶ 18.

By virtue of these undisputed facts, BIW is the legal successor to the owners and operators of the Congoleum Plant for a hundred years, from 1886 through 1986, and therefore responsible for any obligations flowing from that ownership and operation. In short, as a matter of legal fact, BIW is the same corporation as the Congoleum Corporation that assumed the Bath-Congoleum liabilities in 1984 and proceeded to own and operate the Congoleum Plant until its sale in 1986.[6]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that

---

[6] BIW will argue that a 2010 Bankruptcy Court order held that the Congoleum Plant liabilities were assumed by the new corporation (also named Congoleum Corporation) in 1986 (i.e., before the bankruptcy), and BIW is therefore immune from the effect of CERCLA § 107(e)(1). Because that argument is without merit for the reasons set forth in Plaintiff's letter to Special Master Scrivo (Document 1266), facts relating to that order are not material. That order addressed the liabilities of debtor Congoleum Corporation and did not (and could not have) foreclosed any independent claims against BIW, which was not a debtor in that case. See also DVL, Inc. v. Congoleum Corp., 2018 U.S. Dist. LEXIS 143437, *15 (D.N.J. Aug. 23, 2018) (McNulty, J.) ("The confirmed plan itself … carves out environmental liability from its scope") (referring to Congoleum's 2010 bankruptcy plan).

12

> would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

Occidental Chem. Corp. v. 21st Century Fox Am., No. 18-11273 (Sept. 11, 2020) (slip op. at 4) (alteration in original).

## ARGUMENT

I. **BIW IS CONGOLEUM CORPORATION'S CORPORATE SUCCESSOR AND IS LIABLE FOR THE CONGOLEUM PLANT DISCHARGES**

   **A. BIW Succeeded by Operation of Law to Congoleum's Congoleum Plant-Related Liabilities**

In this case, the Court has ruled that a merged entity has liability for acts of its predecessor entity. Occidental Chem. Corp. v. 21st Century Fox Am., slip op. at 4-5. In Smith Land & Improvement Corp. v. Celotex Corp., the Third Circuit explained, "Congress intended [CERCLA] to impose successor liability on corporations which either have merged with or have consolidated with a corporation that is a responsible party . . .".  851 F.2d 86, 92 (3d Cir. 1988). As the Third Circuit explained in United States v. Gen. Battery Corp., "CERCLA successor liability is a matter of uniform federal law, as derived from 'the general doctrine of successor liability in operation in most states.'" 423 F.3d 294, 298 (3d Cir. 2005) (quoting Smith Land, 851 F.2d at 92).

General Battery's observation that CERCLA's successor liability principles are derived from state law is consistent with the law of New Jersey, Delaware and New York.   Under New Jersey law, "[w]hen . . . a merger or consolidation becomes effective: '[T]he surviving . . . corporation shall be liable for all the obligations and liabilities of each of the corporations so merged,'" and "[p]roof of a merger is sufficient to establish liability . . . ." Baker v. Nat'l State

13

Bank, 161 N.J. 220, 228, 736 A.2d 462, 466 (1999) (quoting.1 N.J.S.A. 14A:10-6(e)); State v. Ventron Corp., 94 N.J. 473, 503, 468 A.2d 150, 166 (1983) (affirming trial court judgment, as modified by Appellate Division, that Ventron was jointly and severally liable for cleanup and removal of mercury from the Berry's Creek area, because "[t]hrough the merger of Wood Ridge into Ventron, the latter corporation assumed all of Wood Ridge's liabilities, including those arising out of the pollution of Berry's Creek").

Likewise, under Delaware law, upon the effective date of a merger "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." Del. Code Ann. Tit. 8, § 259(a); see also N.Y. Bus. Corp. Law § 906(b)(3) ("The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent entities.").

As the Court put it:

> See, e.g., Baker v. Nat'l St. Bank, 161 N.J. 220, 227-28 (1999) ("When . . . a merger or consolidation becomes effective . . . [t]he surviving or new corporation shall be liable for all the obligations and liabilities of each of the corporations so merged . . . . Proof of a merger is sufficient to establish liability.") (internal quotation marks and citations omitted); Gould, Inc. v. A & M Battery & Tire Serv., 987 F. Supp. 353, 372 (M.D. Pa. 1997) (finding, in CERCLA contribution action, that plaintiff had to "bear the responsibility of its predecessor's actions"), vacated on other grounds 232 F.3d 162 (3d Cir. 2000).

Occidental Chem. Corp. v. 21st Century Fox Am., slip op. at 4-5 (alteration in original).

### B. BIW And Its Predecessors Are One And The Same

Contrary to its position in this case, BIW is the legal successor to the Congoleum Corporation with which it merged, Congoleum Industries, Inc. and Congoleum-Nairn, Inc. The Third Circuit has recognized that a corporate successor is the same corporate person as its predecessor. Smith Land, 851 F.2d at 91 (quoting 1 W. Blackstone, Commentaries). BIW,

14

therefore, is the successor to the Congoleum Corporation with which it merged, which expressly assumed Congoleum-Nairn, Inc.'s liabilities. As a result, BIW is the successor to all of the liabilities of the owners and operators of the Congoleum Plant from 1886 through 1986.

### C.  BIW Did Not Free Itself Of Liabilities Related To The Congoleum Plant With The Resilco Assignment

BIW's efforts to evade or limit its responsibility for the Congoleum Plant-related liabilities fail as a matter of law. It asserts that the Congoleum Corporation with which it merged divested itself of Congoleum Plant-related liabilities in a 1986 asset transfer it calls the Resilco Assignment.  However, in enacting CERCLA, Congress forbade the sort of liability transfers that BIW contends these transactions accomplished. Thus, BIW did not and could not divest itself of the Congoleum Plant liabilities—and BIW did not and could not avoid assuming those liabilities when it merged with Congoleum Corporation — even in the absence of the CERCLA proscription. CERCLA bars parties from divesting CERCLA liability by purporting to transfer it to a third party. Pursuant to 42 U.S.C. § 9607(e)(1), "[n]o indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any . . . facility or from any person who may be liable for a release . . . under this section, to any other person the liability imposed under this section." Consistent with this provision's plain language, the Third Circuit has recognized that "§ 9607(e)(1) renders ineffective any attempt to completely 'transfer' liability." Beazer E., Inc. v. Mead Corp., 34 F.3d 206, 210–11 (3d Cir. 1994) (quotation marks omitted). Other courts have likewise rejected BIW's argument. For example, Hobart Corp. v. Dayton Power & Light Co., involved a CERCLA contribution action related to hazardous substances disposed of at an Ohio dump. 407 F. Supp. 3d 732, 734 (S.D. Ohio 2019). There, defendant Waste Management of Ohio, Inc. ("WMO") acknowledged that it was the legal successor by merger to a certain waste disposal

15

company but denied that it possessed liability for its predecessor's waste disposal activities. Id. at 735–36. Specifically, WMO argued that such liability had been assumed by two other entities six years before the merger as part of an asset sale, whereby the predecessors' liability was extinguished and the entities which assumed the liability became the proper successors-in-interest. Id. at 736. While the court agreed that the asset purchasers expressly assumed the relevant liabilities, it held that those liabilities also remained with WMO's predecessor since CERCLA prohibited it from transferring environmental liability to a third party. Id. at 739-42. The court held that the buyer's assumption of liability created an additional liability for the buyer but did not extinguish the seller's (WMO's predecessor's) liability, as "[s]uch a transfer of liability is prohibited by statute." Id. at 742 (emphasis in original). WMO therefore remained liable as successor in interest for its predecessor's waste disposal activities notwithstanding the indemnification. Id.[7]

Like WMO's predecessor, BIW could not divest itself of its CERCLA liability by transferring that liability to any other entity. While the 1986 transactions BIW cites may have contractually bound additional parties to be responsible for Congoleum Plant-related liabilities, they did not extinguish BIW's Congoleum Plant-related liabilities—liabilities that could not be divested by any indemnification and therefore remained resident with BIW. See Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1425 (7th Cir. 1993) ("It is true that a disclaimer of liability is good only against the purchaser, not against a nonconsenting third party. Assignment makes the assignee another obligor; it does not let the assignor off the hook."); Grant-Howard

---

[7] Hobart is illustrative of an apparent consensus among federal courts that parties may not transfer or extinguish CERCLA liability by agreement. That order cited three cases in three different districts that reached the same holding. 407 F. Supp. 3d at 742–44 (citing United States v. NCR Corp., 840 F. Supp. 2d 1093 (E.D. Wis. 2011); United States v. Lang, 864 F. Supp. 610 (E.D. Tex. 1994); and Chrysler Corp. v. Ford Motor Co., 972 F. Supp. 1097 (E.D. Mich. 1997)).

Assocs. v. Gen. Housewares Corp., 63 N.Y.2d 291, 297, 472 N.E.2d 1, 3 (1984) (stating that, in an asset-sale transaction, "[t]he companies can regulate how such liability will be allocated among themselves, but they cannot affect the rights of a stranger to their contract"); 15 Fletcher Cyc. Corp. § 7123 (Sept. 2018 Update) (parties to an asset sale can regulate how "liability will be allocated among themselves" but cannot "vitiate the original company's liability"). The Seventh Circuit recognized that Section 9607(e)(1) is likely intended to preserve this principle in the CERCLA context. See Harley-Davidson, Inc. v. Minstar, Inc., 41 F.3d 341, 344 (7th Cir. 1994). It likened the types of agreements allowed by Section 9607(e)(1) to automobile insurance. Id. A motorist does not divest herself of liability for automobile accidents by securing insurance; she just "has someone to share the expense with." Id. at 343. The same is true when parties contract to allocate CERCLA liability among themselves. BIW therefore did not divest itself of Congoleum Plant-related liabilities by agreement. It could not transfer its liabilities to another entity. Past agreements to allocate Congoleum Plant-related liabilities might be enforceable as between contracting parties, such as in an adversary proceeding in Bankruptcy Court, but they would not absolve Congoleum Corporation (1984 Congoleum) or its successor, BIW, of CERCLA liability to third parties.

## II. THE COURT SHOULD RESOLVE THE ISSUE OF BIW'S SUCCESSOR LIABILITY NOW

BIW's legal successorship to the Congoleum Plant-related liabilities is a threshold issue that the Court should resolve now. By continuing to relitigate this issue, in an ever-evolving effort to evade responsibility for its predecessors' conduct, BIW needlessly attempts to inject confusion and uncertainty about the scope of its responsibility for its predecessors' wrongdoing. Addressing this issue now will save the parties and the Court substantial time and expense in discovery and future motion practice on an issue not genuinely in dispute. This threshold issue

17

is ripe for resolution and BIW does not oppose the Court resolving the issue of legal successorship now.

## **CONCLUSION**

Under basic principles of corporate law, the Court should rule that BIW is responsible for Congoleum Corporation's acts and omissions and for any and all of Congoleum Corporation's Congoleum Plant-related liabilities.

Dated:  August 2, 2021                             /s/ *John J. McDermott*
                                              John J. McDermott, Esq.
                                              (jmcdermott@archerlaw.com)
                                              ARCHER & GREINER, P.C.
                                              One Centennial Square
                                              Haddonfield, NJ 08033
                                              Tel. (856) 795-2121


                                              GIBBS & BRUNS, LLP
                                              1100 Louisiana Street, Suite 5300
                                              Houston, TX 77002
                                              Tel. (713) 650-8805
                                              By:     Kathy D. Patrick, Esq.
                                                        (kpatrick@gibbsbruns.com)
                                                        Anthony N. Kaim, Esq.

                                              *Attorneys for Plaintiff Occidental Chemical Corporation*