ARCHER & GREINER, P.C.
One Centennial Square
Haddonfield, NJ 08033
Tel. (856) 795-2121
By: John J. McDermott, Esq.
      (jmcdermott@archerlaw.com)

GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel. (713) 650-8805
By: Kathy D. Patrick, Esq.
      (kpatrick@gibbsbruns.com)
      Anthony N. Kaim, Esq.

*Attorneys for Plaintiff Occidental Chemical Corporation*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# NEWARK VICINAGE

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION | ) Hon. Madeline Cox Arleo |
| | ) Hon. Leda Dunn Wettre |
| Plaintiff, | ) |
| | ) Civil Action No. 2:18-cv-11273 |
| v. | ) |
| | ) **PLAINTIFF OCCIDENTAL** |
| 21ST CENTURY FOX AMERICA, INC., *et al.*; | ) **CHEMICAL CORPORATION'S** |
| | ) **[CORRECTED] ANSWER,** |
| Defendants, | ) **ADDITIONAL DEFENSES, AND** |
| | ) **AMENDED COUNTERCLAIMS** |
| | ) **AGAINST DEFENDANT FLINT CPS** |
| 21ST CENTURY FOX AMERICA, INC., *et al.*; | ) **INKS HOLDINGS LLC** |
| | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| PASSAIC VALLEY SEWERAGE | ) |
| COMMISSIONERS, *et al.* | ) |
| | ) |
| Third-Party Defendants. | ) |
| | ) |

1

Plaintiff, Occidental Chemical Corporation ("OxyChem"), hereby files the following Answer, Additional Defenses, Amended Counterclaims to Defendant Flint CPS Inks Holdings LLC's ("Defendant") Answer and Defenses to Amended Complaint and Counterclaims (Dkt. 1371).

As a preliminary matter, OxyChem states that Defendant's Amended Counterclaims include a significant definitional error. It alleges repeatedly that "OxyChem is Diamond Alkali Company" or that it is the successor-in-interest to "all the liabilities of" the Diamond Alkali Company or various other companies enumerated by Defendant throughout its Amended Counterclaims. This is not accurate. Accordingly, Plaintiff OxyChem denies this allegation wherever it is made, including where it is embodied (erroneously) in the purported definitional term "OxyChem."

For the avoidance of doubt, as used in this Answer, Additional Defenses, and Amended Counterclaims, Plaintiff uses the term "OxyChem" solely to Occidental Chemical Corporation.

## JURISDICTION AND VENUE[1]

1. OxyChem admits the allegations in Paragraph 1.

2. OxyChem admits the allegations in Paragraph 2.

3. OxyChem admits the allegations in Paragraph 3.

## PARTIES

4. OxyChem denies the allegations as set forth in Paragraph 4.

---

[1] For ease of reference, OxyChem's Answer replicates the headings contained in the Amended Counterclaims. Although OxyChem believes no response is required to such headings, to the extent a response is deemed required and to the extent those headings and titles could be construed to contain factual allegations, those allegations are denied.

5. OxyChem denies it is the Diamond Alkali Company or that it is the corporate successor to "all the liabilities of Diamond Alkali Company" as alleged in this paragraph. OxyChem admits that the Diamond Shamrock Chemicals Company[2] ("DSCC") owned and/or operated the Lister Plant at the time 2,3,7,8-tetrachlorodibenzo-p-dioxin ("2,3,7,8-TCDD") and the other "contaminants of concern" ("COCs"), as defined in OU2 ROD § 5.2, were allegedly disposed and released into the Passaic River and other parts of the Diamond Alkali Superfund Site. OxyChem further denies it is the Successor-in-interest to Kolker Realty Company, Kolker Chemical Works, Inc., Diamond Alkali Organic Chemical Division, Diamond Alkali Company, Diamond Chemicals Company, Diamond Shamrock Chemicals Company, Occidental Diamond Alkali Corporation, and Occidental Agricultural Products, Inc. OxyChem admits it is a successor by merger, but denies it is the Successor-in-interest to all the liabilities of, Occidental Electrochemicals Corporation, Oxy-Diamond Alkali Corporation, and Occidental Chemical Agricultural Products, Inc. OxyChem acknowledges that Defendant asserts that when it uses the term "OxyChem," it is purporting to include within that term other entities that Defendant alleges are OxyChem's predecessors-in-interest, but OxyChem denies it is the Successor-in-interest to those entities and otherwise denies the allegations set forth in Paragraph 5.

## GENERAL ALLEGATIONS

6. OxyChem admits that the Diamond Alkali Superfund Site (the "Site") is defined by the United States Environmental Protection Agency ("EPA") as the former Diamond Alkali facility at 80-120 Lister Avenue in Newark, New Jersey, the Lower Passaic River Study Area ("LPRSA"), and the Newark Bay Study Area. OxyChem admits that EPA's definition of the Site

---

[2] Throughout this Answer, OxyChem will use "DSCC" to refer to Diamond Shamrock Chemicals Company and its corporate predecessors, including Diamond Shamrock Corporation and Diamond Alkali Company.

3

is described at pp. 1-2 Record of Decision, Lower 8.3 Miles of the Lower Passaic River Part of the Diamond Alkali Superfund Site (Mar. 3, 2016) ("OU2 ROD"). OxyChem otherwise denies the allegations in Paragraph 6.

7. Paragraph 7 sets forth conclusions of law to which no response is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 7.

8. Paragraph 8 sets forth conclusions of law to which no response is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 8.

9. Paragraph 9 sets forth conclusions of law to which no response is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 9.

10. Paragraph 10 sets forth conclusions of law to which no response is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 10.

11. Paragraph 11 sets forth conclusions of law to which no response is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 11.

## **FIRST COUNTERCLAIM**

Attorneys' Fees and Costs Pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9607(o)(4) and § 9607(p)(7)

12. Paragraph 12 references the Small Business Liability Protection Act, which speaks for itself. OxyChem otherwise denies the allegations in Paragraph 12.

13. Paragraph 13 references Section 107(o) of CERCLA, which speaks for itself. Paragraph 13 sets forth conclusions of law to which no answer is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 13.

14. Paragraph 14 references Section 107(o) of CERCLA, which speaks for itself. OxyChem admits that Paragraph 14 accurately quotes portions of Section 107(o) of CERCLA, but OxyChem otherwise denies the allegations in Paragraph 14.

4

15. Paragraph 15 sets forth conclusions of law to which no response is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 15.

16. Paragraph 16 sets forth conclusions of law to which no response is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 16.

17. OxyChem denies the allegations in Paragraph 17.

To the extent any further response is necessary to Defendant's prayer for relief for Attorneys' Fees and Costs, OxyChem denies that its claim against Defendant should be dismissed with prejudice. OxyChem further denies that Defendant is entitled to recover any damages on account of this claim, and denies that Defendant is entitled to any award of prejudgment interest, reasonable costs, attorneys fees or other relief on account of this claim. OxyChem demands strict proof of Defendant's claim.

## **SECOND COUNTERCLAIM**

Contribution and Declaratory Judgment Pursuant to the Comprehensive Environmental Response, Compensation and Lability Act, 42 U.S.C. § 9613(f)(1)

18. OxyChem re-alleges and incorporates by reference its responses to Paragraphs 1 through 17 of the Amended Counterclaims as if fully set forth herein.

19. Paragraph 19 sets forth conclusions of law to which no response is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 19.

20. Paragraph 20 sets forth conclusions of law to which no response is required. To the extent any additional response is required, OxyChem denies the allegations in Paragraph 20.

21. OxyChem admits the allegations in Paragraph 21.

22. OxyChem admits that the Diamond Alkali Superfund Site is a "facility" as defined in Section 101(9) of CERCLA. OxyChem admits there have been multiple releases and disposals

of Hazardous Substances[3] into the LPRSA by multiple parties, including all of the Defendants. To the extent Paragraph 22 alleges that OxyChem is liable for response costs and damages pursuant to Section 107(a) of CERCLA, OxyChem denies the allegations in Paragraph 22. To the extent further response is required, OxyChem denies the allegations in Paragraph 22.

23. OxyChem denies the allegations in Paragraph 23.

24. Paragraph 24 contains conclusions of law to which no response is required. To the extent Paragraph 24 alleges that Defendant has incurred or will incur response costs, OxyChem lacks knowledge of or information sufficient to form a belief about the truth of these allegations, so such allegations are denied under Fed. R. Civ. P. 8(b)(5). OxyChem otherwise denies the allegations in Paragraph 24.

25. Paragraph 25 contains conclusions of law to which no response is required. To the extent Paragraph 25 alleges that Defendant has incurred or will incur response costs, OxyChem lacks knowledge of or information sufficient to form a belief about the truth of these allegations, so such allegations are denied under Fed. R. Civ. P. 8(b)(5). OxyChem otherwise denies the allegations in Paragraph 25.

To the extent any further response is necessary to Defendant's prayer for relief for Contribution, OxyChem denies that its claim against Defendant should be dismissed with prejudice. OxyChem further denies that it is a liable party under Section 107, or that OxyChem is liable under Section 113. OxyChem further denies that Defendant is entitled to recover any damages on account of this claim, and denies that Defendant is entitled to any award of

---

[3] Defendant does not define "Hazardous Substances" in its Counterclaim. When referencing "Hazardous Chemicals" in this Answer, OxyChem is referring to the definition found at CERCLA Section 101(14), 42 U.S.C.A. § 9601(14).

6

prejudgment interest, reasonable costs, attorneys fees or other relief on account of this claim. OxyChem demands strict proof of Defendant's claim.

## AFFIRMATIVE DEFENSES

The following are defenses OxyChem may assert based on the facts alleged in the Counterclaim or based on facts adduced in discovery. In disclosing these defenses, OxyChem does not assume any burden of proof not otherwise required by law. Moreover, OxyChem undertakes the burden of proof only as to those defenses deemed "affirmative" defenses by law, regardless of how defenses are denominated herein. OxyChem reserves the right to assert further defenses that may become apparent during the course of discovery.

## FIRST SEPARATE DEFENSE

The Counterclaim fails, in whole or in part, to state a claim upon which relief can be granted.

## SECOND SEPARATE DEFENSE

The Counterclaim is barred, in whole or in part, by the applicable statutes of limitations and/or repose.

## THIRD SEPARATE DEFENSE

Defendant lacks standing to assert some or all the claims and the demands for relief in the Counterclaim.

## FOURTH SEPARATE DEFENSE

Defendant's claims are barred, in whole or in part, by the doctrine of estoppel, quasi-estoppel, and judicial estoppel.

**FIFTH SEPARATE DEFENSE**

Defendant's claims are barred, in whole or in part, because none of the alleged acts or omissions of OxyChem proximately caused Defendant's alleged damages.

**SIXTH SEPARATE DEFENSE**

The claims and/or damages alleged in the Counterclaim are barred, in whole or in part, by Defendant's failure to mitigate Defendant's "necessary response costs," if any.

**SEVENTH SEPARATE DEFENSE**

Defendant cannot recover costs under CERCLA Section 107, 42 U.S.C. § 9607, because Defendant has not incurred any necessary response costs.

**EIGHTH SEPARATE DEFENSE**

Defendant has failed to join parties in whose absence complete relief cannot be accorded among existing parties as required by Fed. R. Civ. P. 19(a)(1).

**NINTH SEPARATE DEFENSE**

Defendant's claims are barred, in whole or in part, by the doctrines of waiver and/or ratification.

**TENTH SEPARATE DEFENSE**

Any recoverable necessary response costs must be allocated among all parties in accordance with those factors recognized under Section 113(f) of CERCLA, 42 U.S.C. §9613(f), and other equitable considerations, including without limitation, Defendant's recalcitrance and intentional conduct.

**ELEVENTH SEPARATE DEFENSE**

Some or all costs alleged in the Counterclaim were or are unnecessary and/or inconsistent with the National Contingency Plan as set forth at 40 CFR § 300, *et seq.,* and are not "necessary

costs of response" as required by CERCLA, and therefore cannot be reimbursed in whole or in part.

## TWELFTH SEPARATE DEFENSE

CERCLA does not permit an award of attorney's fees, experts' fees, consulting fees, costs of litigation, oversight or other costs, or interest, as sought by Defendant.

## THIRTEENTH SEPARATE DEFENSE

Defendant's claims are barred, in whole or in part, by the doctrine of release.

## FOURTEENTH SEPARATE DEFENSE

Defendant's recovery is barred by the doctrine of unclean hands.

## FIFTEENTH SEPARATE DEFENSE

Defendant's claims are barred, in whole or in part, and costs claimed, if any, should be limited, to the extent any fault, negligence, assumption of risk, or other culpable conduct by Defendant caused, proximately caused, and/or contributed to the alleged injuries and damages, or to the extent that the doctrines of contributory negligence, comparative fault, avoidable consequences, and/or other applicable common-law or statutory doctrines apply.

## SIXTEENTH SEPARATE DEFENSE

Defendant's claims are barred by Defendant's own, prior material breach of the contracts at issue in its claims.

## SEVENTEENTH SEPARATE DEFENSE

Defendant's claims are barred, in whole or in part, by the doctrine of laches.

## EIGHTEENTH SEPARATE DEFENSE

OxyChem adopts by reference all affirmative defenses heretofore and hereafter pleaded by the other parties as may be applicable to the facts alleged against OxyChem.

## NINETEENTH SEPARATE DEFENSE

Defendant's claims are barred, in whole or in part, to the extent that the alleged damages in the Counterclaim were proximately caused by persons or entities other than OxyChem, including intervening and/or superseding acts or omissions.

## TWENTIETH SEPARATE DEFENSE

Defendant's causes of action are barred, in whole or in part, because Defendant would be unjustly enriched if it were to prevail on any of the causes of action.

## TWENTY-FIRST SEPARATE DEFENSE

Defendant is not entitled to recover from OxyChem because Defendant has not incurred costs in excess of its fair, equitable and proportionate share of necessary response costs.

## TWENTY-SECOND SEPARATE DEFENSE

OxyChem is not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority or agency.

## TWENTY-THIRD SEPARATE DEFENSE

In the event OxyChem is found to be liable for response costs or response activity costs alleged by Defendant, OxyChem cannot be liable for any costs beyond its proportionate share because the harms alleged by Defendant are distinct and reasonably capable of division, and because there is a reasonable basis for determining the contribution of each party to the alleged harm or harms.

## TWENTY-FOURTH SEPARATE DEFENSE

Defendant is not entitled to recover from OxyChem more than its respective fair, equitable, and proportionate share, if any, of the necessary response costs allegedly expended by Defendant

or to otherwise recover from OxyChem more than the amount of such relief, if any, for which OxyChem is liable.

## TWENTY-FIFTH SEPARATE DEFENSE

To the extent some or all of Defendant's claims relate to COCs that are present in historic fill, such claims are barred in whole or in part under CERCLA.

## TWENTY-SIXTH SEPARATE DEFENSE

OxyChem is entitled to a setoff against Defendant's claims.

## TWENTY-SEVENTH SEPARATE DEFENSE

To the extent Defendant seeks relief regarding alleged future costs, Defendant may only recover, if at all, for future response costs incurred in connection with an existing legal obligation.

## PLAINTIFF OXYCHEM'S AMENDED COUNTERCLAIMS[4]

For its Counterclaims against Defendant Flint CPS Inks Holdings LLC ("Defendant"), Occidental Chemical Corporation ("OxyChem") specifically refers to and incorporates by reference OxyChem's Consolidated Counterclaims and Crossclaims Against All Defendants, Docket No. 763. For the avoidance of doubt, OxyChem reiterates its enumerated Counterclaims in this pleading, as follows:

1.  In its Amended Complaint and Third-Party Complaint (Dkt. 1247), OxyChem principally limited its claims to those related to the Lower 8.3 miles of the Lower Passaic River, based on the EPA's 2016 Record of Decision proposing a remedy for this portion of the river (see, *e.g.*, Doc. 1 ¶ 16 ("This CERCLA action primarily concerns OU2 [Operable Unit 2, the lower 8.3

---

[4] In addition to the Amended Counterclaims against the Direct Defendants pleaded below, OxyChem has asserted in its Amended and Third-Party Complaint (Dkt. 1247) claims against the Third-Party Defendant New Jersey Entities. Those claims allege that, in the event the Direct Defendants show they are entitled to recover anything pursuant to their Counterclaims, the Third-Party Defendants are liable to OxyChem for such costs.

11

miles of the Passaic River]")).  OxyChem realleges and incorporates the allegations and claims in its Complaint as if fully set forth herein.

2. In its Amended Counterclaims, however, Defendant has not limited its claims to OU2, but instead has alleged claims relating to the entire 17-mile Lower Passaic River Study Area ("LPRSA"), identified by the EPA as Operable Unit 3 ("OU3").  *See, e.g.*, Doc. 701, Counts I (CERCLA Section 113 claim for response costs incurred in the LPRSA); II (CERCLA Section 107 claim for joint and several liability for response costs "incurred and to be incurred by Defendant in connection with the LPRSA"), Count III ¶ 1 (Declaratory Judgment under CERCLA Sections 113 and 107 for alleged releases of Hazardous Substances "to the LPRSA (including the RM 10.9 Removal Area), and the Diamond Alkali Superfund Site.").

3. OxyChem reserved "the right to amend to seek additional declaratory or damages relief as to other Operable Units" in its Complaint.  Doc. 1 ¶ 287.  In light of Defendant's broadening of the scope of this litigation to include the entire 17 miles of the LPRSA, OxyChem now asserts its Amended Counterclaims under Section 113, and for declaratory judgment relating to liability for response costs for the entire 17 miles of the LPRSA against Defendant and all other Defendants whom OxyChem originally sued in this matter.[5]

## HISTORY OF THE DISPUTE

4. OxyChem refers to and specifically incorporates by reference Paragraphs 1-59 of its Amended Complaint and Third-Party Complaint with regard to the Introduction, History of the Dispute, and Contaminants of Concern.

---

[5] OxyChem anticipates asserting additional claims against Defendant regarding Newark Bay, but OxyChem is barred by the 2007 Standstill Agreement from bringing them until such time as the EPA has decided the Newark Bay remedy.  Accordingly, under this pleading, OxyChem is limited to giving Defendants' notice that such claims exist, and OxyChem reserves the right to amend its pleading when permitted to do so under the Standstill Agreement.

5. In particular, in 2002, EPA expanded the initial six-mile scope of its investigation (RM 1 to RM 7, as part of the 1994 RI/FS ACO for the Lower 6) to include the full 17 miles of the Lower Passaic River.[6]

6. A group of PRPs eventually organized into the Cooperating Parties Group (CPG). Initially, OxyChem, Maxus, and Tierra were members of the CPG. In 2004, the CPG signed a settlement agreement with EPA in which CPG members agreed to pay for the RI/FS for the entire lower 17-miles of the Lower Passaic River ("2004 RI/FS AOC for the Lower 17"). That settlement was amended in 2005 and 2007 to add more parties, so that a total of more than 70 parties were obligated to make payments to EPA under this settlement with EPA. OxyChem, through its indemnitors Maxus and Tierra, paid significant costs associated with this 2004 RI/FS AOC for the Lower 17. The CPG, including OxyChem, Maxus and Tierra, entered into another agreement ("2007 RI/FS ASAOC") with EPA in 2007 regarding the RI/FS for the lower 17 miles of the Lower Passaic River, in which these parties agreed to perform the RI/FS work. OxyChem, through its indemnitors Maxus and Tierra, paid significant costs associated with the 2007 RI/FS ASAOC until the Maxus bankruptcy filing in June 2016. Since that bankruptcy filing, OxyChem has *itself* incurred response costs related to the 2007 RI/FS ASAOC by paying to EPA its oversight costs in excess of $1.8 million to date, and OxyChem will continue to incur such costs. OxyChem seeks cost recovery and contribution for its payments to EPA pursuant to the 2007 RI/FS ASAOC from Defendants in these Counterclaims.

---

[6] Record of Decision, Lower 8.3 Miles of the Lower Passaic River Part of the Diamond Alkali Superfund Site (Mar. 3, 2016) ("OU2 ROD") § 2.1.2.

## JURISDICTION AND VENUE

7. OxyChem refers to and specifically incorporates by reference Paragraphs 60-65 of its Amended Complaint and Third-Party Complaint with regard to this Court's jurisdiction and the propriety of venue in this District.

## PARTIES

8. OxyChem refers to and specifically incorporates by reference Paragraphs 66-231 of its Amended Complaint and Third-Party Complaint with regard to the Parties to this dispute. For the sake of clarity, in the claims below, Defendant is referred to in this Counterclaim as Counter-Defendant and all other Defendants named in OxyChem's Amended Complaint and Third-Party Complaint are referred to as Counter-Defendants.

9. OxyChem does not withdraw or abandon any of the existing allegations and claims in its Complaint against Defendants that are currently parties to this action.[7] Instead, OxyChem incorporates and realleges against the existing Defendants the existing allegations contained in Paragraphs 1 through 287 of its Complaint, as stated in Paragraph 57 of the Amended Complaint and Third-Party Complaint.

## ALLEGATIONS AGAINST INDIVIDUAL PARTIES BY PRIMARY COC

10. OxyChem refers to and specifically incorporates by reference Paragraphs 232-328 of its original Complaint with regard to the allegations against individual Parties by primary COC and other responsibility for Hazardous Substances.

---

[7] OxyChem voluntarily dismissed claims against eight Defendants. It asserts no claim against these former Defendants in its Amended Counterclaims. OxyChem also acknowledges that, as a result of the Court's rulings on motions to dismiss, Plaintiff OxyChem is permitted to pursue Section 107 claims against the Defendants only on the 2012 UAO and is permitted to pursue Section 113 claims against the Defendants on the 2008 Tierra Removal ASAOC, the 2011 CSO ASAOC, and the 2016 ASAOC. *See* Dkt. No. 647 Order on Motions to Dismiss at 12. OxyChem refers to its remaining claims as the "existing allegations."

## COUNT IV
### (Counterclaim against all Defendants for
### CERCLA Contribution Under Section 113(f))

11. OxyChem re-alleges and incorporates by reference its responses to Paragraphs 1 through 10 of the Counterclaim as if fully set forth herein.

12. Counter-Defendant and all Counter-Defendants are liable for response costs incurred in the entire 17 miles of the LPRSA under CERCLA Section 107(a), 42 U.S.C. § 9607(a), because Counter-Defendant and all Counter-Defendants are persons as defined by CERCLA § 601(21), 42 U.S.C. § 9601(21), who (1) own and operate a portion of the Facility from which there has been a release or threatened release of hazardous substances into the Lower Passaic River, including the entire 17-mile LPRSA; (2) owned or operated a portion of the Facility at the time hazardous substances were disposed of, resulting in a release or threatened release of hazardous substances into the Lower Passaic River, including the entire 17-mile LPRSA; (3) arranged for disposal, treatment, or transport for disposal or treatment of hazardous substances, resulting in a release or threatened release of hazardous substances into the Lower Passaic River, including the entire 17-mile LPRSA; and/or (4) transported hazardous substances to the Facility, having selected it for treatment or disposal of such hazardous substance, resulting in a release or threatened release of hazardous substances into the Lower Passaic River, including the entire 17-mile LPRSA, as described in greater detail above.

13. Each release or threatened release of hazardous substances at the Facility as described above, has caused and will continue to cause Plaintiff to incur necessary response costs consistent with the NCP, through the entire reach of the 17-mile LPRSA.

14. Under CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1), Plaintiff is entitled to cost recovery from Defendant for necessary response costs incurred and to be incurred by Plaintiff

15

consistent with the NCP in connection with the LPRSA and for work performed in identifying other PRPs for such response costs, whether such costs are incurred directly or as a result of any counterclaim or crossclaim filed by any other party in this action.

WHEREFORE, Plaintiff requests that the Court enter a judgment in its favor and against Counter-Defendant and all Counter-Defendants as follows:

(a) declaring that Counter-Defendant and all Counter-Defendants are liable under 42 U.S.C. § 9613(f)(1) for Defendants' shares, determined by the Court using such equitable factors as it determines are appropriate, of response costs incurred or to be incurred by Plaintiff throughout the entire reach of the 17-mile LPRSA as a result of releases or threatened releases of hazardous substances at the Facility, whether such costs are incurred directly or on account of any counterclaim or cross-claim by Defendant or Counter-Defendants;

(b) awarding Plaintiff an amount determined by the Court to satisfy the obligation of Counter-Defendant and all Counter-Defendants for all necessary response costs incurred and to be incurred by Plaintiff in connection with the LPRSA, including response costs within and outside the scope of the 2004 RI/FS AOC for the Lower 17, the 2007 RI/FS ASAOC, and the 2012 RM 10.9 Removal UAO, and work performed in identifying other PRPs for such response costs;

(c) awarding Plaintiff prejudgment interest, costs, and attorneys' and expert fees as allowed by law against Counter-Defendant and all Counter-Defendants and such other and further relief as the Court determines is just, equitable, and appropriate.

## COUNT V
### (Counterclaim against all Defendants for Declaratory Judgment – CERCLA)

15. OxyChem re-alleges and incorporates by reference its responses to Paragraphs 1 through 14 of the Counterclaim as if fully set forth herein.

16. Counter-Defendant and all Counter-Defendants are liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a), because Defendant, and each Counter-Defendant, is a person as defined by CERCLA § 601(21), 42 U.S.C. § 9601(21), who (1) owns and operates a portion of the Facility from which there has been a release or threatened release of hazardous substances into the Lower Passaic River, including the entire 17-mile LPRSA; (2) owned or operated a portion of the Facility at the time hazardous substances were disposed of, resulting in a release or threatened release of hazardous substances into the Lower Passaic River, including the entire 17-mile LPRSA; (3) arranged for disposal, treatment, or transport for disposal or treatment of hazardous substances, resulting in a release or threatened release of hazardous substances into the Lower Passaic River, including the entire 17-mile LPRSA, and/or (4) transported hazardous substances to the Facility, having selected it for treatment or disposal of such hazardous substance, resulting in a release or threatened release of hazardous substances into the Lower Passaic River, including the entire 17-mile LPRSA, as described in greater detail above.

17. Each release or threatened release of hazardous substances at the Facility, as described above, has caused and will continue to cause Plaintiff to incur necessary response costs consistent with the NCP throughout the entire 17-mile reach of the LPRSA.

18. An actual controversy exists, within the meaning of 28 U.S.C. § 2201 and CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), among Plaintiff, Counter-Defendant, and all Counter-Defendants regarding their respective rights and responsibilities for necessary response costs incurred and to be incurred by Plaintiff consistent with the NCP in connection with the entire 17-mile reach of the LPRSA, and work performed in identifying other PRPs for such response costs, and for future necessary response costs to be incurred by Plaintiff in connection with the

contamination at the Facility, whether such costs are incurred directly or as a result of a counterclaim or crossclaim by any other party to this litigation.

19. Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201-2202, Plaintiff is entitled to a declaratory judgment against Counter-Defendant and all Counter-Defendants assessing them liable for response costs and damages under CERCLA Section 107(a), 42 U.S.C. § 9607(a) and/or CERCLA Section 113(f)(1) and (f)(3)(B), 42 U.S.C. § 9613(f)(1) and (f)(3)(B) in a judgment that will be binding in any subsequent action or actions to recover further response costs in connection with the entire 17 miles of the LPRSA, and work performed in identifying other PRPs for such response costs.

WHEREFORE, Plaintiff requests that the Court enter a judgment in its favor and against Counter-Defendant and all Counter-Defendants as follows:

(a) declaring that the Counter-Defendant and all Counter-Defendants are liable for all or their proper shares, determined by the Court using such equitable factors as the Court determines are appropriate, of the response costs incurred and to be incurred by Plaintiff resulting from releases or threatened releases of hazardous substances at the Facility throughout the entire 17 mile reach of the LPRSA;

(b) declaring that the Court's judgment on Counter-Defendant and Counter-Defendants' liability for response costs and/or damages is binding on any subsequent action or actions to recover further response costs or damages in the entire 17-mile reach of the LPRSA;

(c) awarding Plaintiff an amount determined by the Court to satisfy the obligation of Counter-Defendant and all Counter-Defendants for all necessary response costs incurred and to be incurred by Plaintiff in connection with the LPRSA, and work performed in identifying other PRPs

18

for such response costs, whether such costs are incurred directly or as a result of counterclaims or cross-claims by other parties to this litigation; and

(d) awarding Plaintiff prejudgment interest, costs, and attorneys' and expert fees against Counter-Defendant and all Counter-Defendants as allowed by law, and such other and further relief as the Court determines is just, equitable, and appropriate.

Dated: August 31, 2021

Respectfully submitted,

/s/ *John J. McDermott*
John J. McDermott, Esq.
(jmcdermott@archerlaw.com)
ARCHER & GREINER, P.C.
One Centennial Square
Haddonfield, NJ 08033
Tel. (856) 795-2121

GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel. (713) 650-8805
By: Kathy D. Patrick, Esq.
(kpatrick@gibbsbruns.com)
Anthony N. Kaim, Esq.

*Attorneys for Plaintiff Occidental Chemical Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 31, 2021, a copy of Plaintiff Occidental Chemical Corporation's [Corrected] Answer, Additional Defenses, and Amended Counterclaims was served on counsel via electronic filing.

Dated:  August 31, 2021                    By:   /s/ *John J. McDermott*
                                                  John M. McDermott, Esq.