


Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

September 17, 2021

<u>Via CM/ECF</u>
Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

  Re: *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*,
     **Civil Action No. 2:18-cv-11273-MCA-LDW**

Dear Special Master Scrivo:

  The SPG Defendants claim to have incurred $166 million dollars in costs to conduct response actions in the Lower Passaic River Study Area. They have sued OxyChem and 42 public entities to recover those alleged costs and bear the burden to demonstrate that their claimed costs were not only incurred, but that they were reasonable and necessary to comply with the National Contingency Plan. *See Cooper Industries, inc. v. Aviall Svcs, Inc.*, 543 U.S. 157, 161 (2004) (CERCLA Section 113 plaintiff must prove it incurred "other *necessary* costs of response *consistent with* the National Contingency Plan) citing 42 U.S.C. § 9607(a)(4)(B). *See also Burlington Northern & Santa Fe R.R. v. United States*, 556 U.S. 599, 609, n.6 (2009).

  For months, the SPG Defendants have assured the parties and the Special Master that their document productions are "substantially complete." But behind these vague assurances are entire categories of documents missing from the SPG's productions pertaining to the costs at issue in their counterclaims. When asked whether those documents are being withheld on the basis of a joint defense or another privilege—or whether they *even exist*—the SPG has responded with either silence or obfuscation. More recently, the SPG Defendants have asserted they are not required to produce such documents (if they exist) because all of the work at issue in their counterclaims was performed under the supervision of counsel to the Cooperating Parties Group (the "CPG") and is, they assert, subject to a joint interest privilege.

  The SPG's refusal to answer these basic inquiries cannot continue. Preoccupied with collecting every page and byte ever generated by OxyChem and its indemnitors, pursuing far-fetched theories of relevance and filing serial appeals instead of moving on with discovery, the SPG has ignored its own obligations. Now, three years into this lawsuit and with the close of fact

Special Master Thomas P. Scrivo, Esq.
September 17, 2021
Page 2

discovery looming, the SPG must either produce the documents relating to its counterclaims or face a motion to preclude it from offering that evidence at trial.

OxyChem respectfully requests entry of an Order under Rule 37(a) compelling the SPG Defendants to (a) state plainly, within 10 days, whether there *are* additional documents relating to the SPG's response costs that have not yet been produced, and (b) whether any such documents are being withheld on the basis of a joint defense or other privilege. If there are, then OxyChem requests that the Court order the SPG to produce within 30 days all responsive documents related to the SPG Defendants' response costs, whether in the possession of individual Defendants or the CPG; and serve a privilege log within 30 days after that production.

Timely production of these materials is essential: the depositions of the Defendants are slated to begin in November. To ensure timely compliance, OxyChem requests that the Order further provide, as permitted by Fed. R. Civ. P. 37(c), that if the Defendants fail to provide this information, then they shall be precluded from using any such information (or any witness with knowledge of that withheld information) at any hearing or at trial. *Compare Allstate Life Ins. Co. v. Stillwell*, 2020 WL 832898 at *5 (D.N.J. Feb. 20, 2020) (parties may not rely upon information not produced in discovery).

### A. The SPG's Response Costs and Production of Counterclaim Documents

On August 14, 2019, Defendants expanded the scope of this lawsuit by filing counterclaims against OxyChem seeking response costs allegedly incurred by the SPG Defendants associated with two settlements executed through the CPG: the 2007 RI/FS and the 2012 RM 10.9 ASAOC.[1] *See, e.g.,* Ex. A (Pitt-Consol's July 14, 2020 Supplemental Responses to Standard Interrogatories). According to the SPG Defendants, performing the work required under those settlements involved at least ten environmental consulting firms over more than a decade at a cost alleged to exceed $100 million. *Id.* The work at issue was overseen by the SPG Defendants themselves, who directed the work performed by these consultants through the CPG Steering Committee and CPG Technical Committee. *See*, *e.g.*, Ex. B (project organizational chart). Together, those committees and the CPG's consultants prepared, revised, and finalized the reports submitted to EPA as required by the ASAOC's. *Id.*

In addition to those publicly available submissions, compliance and performance of the obligations embodied in the orders necessarily would have generated an enormous record of emails and other communications, meeting agendas and notes, presentations, drafts, revisions, and other working documents—none of which are publicly available—and *all of which* are relevant to assess whether (as the SPG must prove) the costs they incurred were reasonable, necessary, and consistent with the National Contingency Plan as required by CERCLA Section 113. OxyChem therefore sought discovery of all relevant documents, electronically stored information, and communications

---

[1] Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, *In the Matter of: Lower Passaic River Study Area of the Diamond Alkali Superfund Site*, EPA, CERCLA Docket 02-2007-2009 (May 11, 2007); Administrative Settlement Agreement and Order on Consent for Removal Action, *In the Matter of Lower Passaic River Study Area portion of the Diamond Alkali Superfund Site*, EPA, CERCLA Docket 02-2012-2015 (June 18, 2012).

Special Master Thomas P. Scrivo, Esq.
September 17, 2021
Page 3

through Rule 34 document requests, a subpoena to the CPG, and subpoenas to the CPG's consultants. *See* Ex. C (subpoena to CPG); *see, e.g.*, Ex. D (OxyChem requests for production); Ex. E (subpoena to Anchor QEA).

In response, the SPG Defendants—through their liaison counsel and the CPG—have produced just 17,197 documents to purportedly justify their $160 million claim. These productions consisted of the following:

- 9,508 invoices to individual CPG members and bank statements (48% of the production);
- 5,333 publicly available correspondence, routine submissions and final reports to EPA (31% of the production);
- 1,885 publicly available documents received in response to FOIA/OPRA requests (11% of the production); and
- 1,739 invoices from consultants (10% of the production).

*See* Ex. F (summary of SPG/CPG document production and list of filepaths).

These documents only scratch the surface. Projects of this nature and magnitude generate tens of thousands of documents a year. By way of comparison, OxyChem's production of information relevant to its similarly-sized claim for $165 million in incurred and anticipated response costs for the 2016 ASAOC is *at least* several times the size of the SPG's production for their claimed work in OU4 that started more than decade earlier, *in 2004*.

OxyChem is not speculating that additional documents exist. The bare invoices the SPG Defendants *have* produced contain countless references to communications with and presentations to the CPG's Technical Committee, drafts and working versions of reports ultimately submitted to EPA, and many other communications the CPG must be maintaining on behalf of the SPG Defendants. *See, e.g.,* Ex. G (Nov. 24, 2014 Anchor invoice) at SPG-FED-PC000018624 (time entries include "Develop slides for Nov [Technical Committee] meeting" and "RI themes response doc for TC"). *None* of those documents have been produced.

**B. The SPG is hiding its Counterclaim Documents behind improper and unsubstantiated claims of privilege.**

OxyChem has endeavored repeatedly to confer with the SPG Defendants about the existence of these materials, their expected volume, and when they might be produced. Inexplicably, the SPG Defendants refused even to acknowledge that these documents *exist*. *See* Ex. H (June 3, 2021 letter from OxyChem to SPG); Ex. I (July 20, 2021 letter from OxyChem to Defendants); Ex. J (July 23, 2021 email from K. Patrick to J. Talbert); Ex. K (Aug. 18, 2021 letter from OxyChem to SPG); Ex. L (Aug. 23, 2021 letter from OxyChem to Special Master); Ex. M (Aug. 26, 2021 letter from OxyChem to SPG). This is not a *new* topic, either. OxyChem raised this concern at the start of ESI discovery in this case, asking the SPG Defendants *more than a year*

Special Master Thomas P. Scrivo, Esq.
September 17, 2021
Page 4

*ago* to identify what documents are in the CPG's possession, what they intend to produce and when, and what they are withholding from production:

> [The CPG] has long had a stable of environmental consultants who perform work and analysis on its behalf. This is not conjecture; that work has been filed with EPA on the 17-mile investigation. Given this, there *must* be identifiable folders, electronic media, or other repositories that consist almost entirely of relevant, discoverable information responsive to OxyChem's discovery requests.

Ex. N (Feb. 5, 2020 letter from OxyChem to Defendants).

The SPG finally responded on September 15, 2021, but its response is more of the same. *See* Ex. O (Sept. 15, 2021 email from B. Piper to K. Patrick). Seeking to obfuscate the lack of any *substance* to its production, the SPG Defendants claimed to have produced "hundreds of gigabytes" and "tens of thousands of pages," ignoring that all of this adds up to just the 17,197 documents described above and *nothing more*. As to the rest of the communications and other documents in the files that the CPG maintains on behalf of the SPG Defendants, including those documents whose existence is *confirmed* in the invoices the SPG has produced, the SPG stated only that it has now "identified additional CPG documents to review for privilege and responsiveness"—but it still will make no commitment regarding what these documents are, how many of them there are, or what documents or categories of documents are being withheld from production based on a joint defense privilege or some other basis. Instead, the SPG said only that "it is likely that many [documents] will be subject to joint-client privilege, work-production protection, or both" and notes that the ESI Protocol does not require parties to search, produce, or privilege log documents in the custodial files of counsel. *Id.* The SPG's intention to assert a joint interest privilege is irrelevant because the law is clear: a party may not refuse to disclose *any relevant fact within his knowledge* merely because he incorporated a statement of fact into his communication with an attorney." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994) *quoting Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).

### C. The SPG should be compelled to produce the withheld CPG documents or their counterclaims should be dismissed.

With virtually no information about the scope and basis of the SPG's privilege claims, neither OxyChem nor the Special Master can evaluate their veracity or validity as to any particular document. And the SPG's reliance on the ESI Protocol to avoid collecting or producing the CPG's documents is specious and opportunistic: nothing in the ESI Protocol permits the CPG and SPG to prevent the discovery of facts relevant to the necessity, reasonableness, and NCP consistency of the response costs they seek to recover through the contrivance of funneling all relevant communications about response costs through the CPG or outside counsel. In reality, the CPG is

Special Master Thomas P. Scrivo, Esq.
September 17, 2021
Page 5

an unincorporated association formed by contract whose "custodial file" only exists to the extent maintained by its "Common Counsel."[2]

In short, if there is to be no discovery *from* the CPG, then there can be no proof *by* or *from the files of* the CPG, either. The SPG defendants cannot withhold the CPG's documents *and* maintain their counterclaims. It is fundamentally unfair to allow the Defendants to cherry-pick for their own use documents from the CPG's files while they refuse to produce the related, discoverable documents that shed light on reasonableness, necessity, and consistency from those files to OxyChem. *See*, *e.g.*, Ex. P (Initial Disclosures of BASF) (identifying "Documents concerning the investigation and remediation activities performed in the LPRSA by the Lower Passaic River Study Area Cooperating Parties Group" among the "documents and categories of documents in BASF Corporation's possession, custody, or control [that] may be used to support BASF Corporations claims or defenses.").

It is beyond dispute that the documents and communications OxyChem seeks to discovery contain information that is *relevant* to the claims and defenses of all parties; the discussions they reflect are, as stated in the invoices, the *basis* and *reasoning* and *factual support for* those claimed costs. Without those communications—and with only the bare invoices the SPG Defendants have deigned to produce—OxyChem is without *any* information to assess whether the costs the SPG Defendants allegedly incurred through the CPG meet CERCLA's requirements to recover response costs. "A plaintiff can obtain contribution from a PRP under § 113(f)(3)(B) of CERCLA only if it demonstrates a prima facie case of liability under $ 107(a)," which requires the plaintiff to demonstrate that it incurred "necessary response costs consistent with the National Contingency Plan." *Trinity Indus.*, *Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 355-56 (3d Cir. 2018) (citations omitted). "A cost is considered 'necessary' and hence subject to shared liability if there is 'some nexus between it and an actual effort to respond to environmental contamination." *Id.* (quoting *Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005)). Neither OxyChem nor the Court can assess whether the work underlying the SPG Defendants' claims for costs meets these requirements unless the SPG Defendants provide the information necessary to do so, which is reflected in the documents being withheld. *See Cameron v. Navarre Farmers Union Co-op. Ass'n*, 76 F.Supp. 2d 1178, 1182 (D. Kan. 1999) ("A 'fully developed record' must exist before the court is able to determine consistency with the NCP.").

The SPG's limited production to date suggests that many of the alleged "response costs" are not recoverable. For example, the SPG Defendants seek to recover **nearly $25 million** allegedly paid by the CPG to its consultant Windward Environmental, but portions of those costs were incurred for "CPG Strategic Support" and appear to include fees for activities unrelated to any cleanup—like discussing "publication ideas" with litigation counsel. *See* Ex. Q (Jan. and Feb. 2017

---

[2] This subterfuge is also apparent from the way the SPG Defendants structured their response actions in OU4. For example, project organization charts submitted to EPA show that the CPG's Steering Committee and Technical Committee shared—with two CPG Consultants and USEPA—responsibility to oversee implementation of the technical work being performed in OU2.  Ex. B (AECOM, Quality Assurance Project Plan, Lower Passaic River Restoration Project, RI Water Column Monitoring/Small Volume Chemical Data Collection, Revision 3, July 2012), at SPG-NJDEP-001585557.

Special Master Thomas P. Scrivo, Esq.
September 17, 2021
Page 6

Windward invoices). Such costs are likely not recoverable. *See, e.g., Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 297-98 (3d Cir. 2000) (consultant fees not recoverable because they did not pertain to a removal or remedial action on the contaminated property). To defend against the SPG Defendants' claims for the fees paid to Windward and the other CPG consultants, OxyChem is entitled to receive the documents in the SPG Defendants' possession—whether maintained individually or by the CPG—that relate to and reflect the work underlying those invoices, and the SPG Defendants have an obligation to produce those documents. They should be compelled to do so or their counterclaims should be dismissed.

For all these reasons, OxyChem respectfully requests entry of an Order under Rule 37(a) compelling the SPG Defendants to (a) state plainly, within 10 days, whether there are additional documents relating to the SPG's response costs that have not yet been produced, and (b) whether any such documents are being withheld on the basis of a joint defense or other privilege. If there are, then OxyChem requests that the Court order the SPG to produce within 30 days all responsive documents related to the SPG Defendants' response costs, whether in the possession of individual Defendants or the CPG; and serve a privilege log within 30 days after that production. OxyChem requests that the Order further provide, as permitted by Fed. R. Civ. P. 37(c), that if the Defendants fail to provide this information, then they shall be precluded from using any such information (or any witness with knowledge of that withheld information) at any hearing or at trial.

Respectfully submitted,

Kathy D. Patrick

 /s/ *John J. McDermott*

John J. McDermott

cc:     All counsel of record (via CM/ECF)
222059680v5