# Exhibit A



**U.S. Department of Justice**

Environment and Natural Resources Division

90-11-3-07683/1

---

*Environmental Enforcement Section*  
*P.O. Box 7611*  
*Washington, DC  20044*

*Telephone: (202) 616-8763*

*laura.rowley@usdoj.gov*

January 13, 2022

**Via Email**

Jeffrey D. Talbert  
Preti Flaherty Beliveau & Pachios LLP  
One City Center  
Portland, ME 04101

　　　　Re: Diamond Alkali Superfund Site

Dear Jeff:

　　　As requested, this will provide a status report on the settlement discussions between and among the U.S. Department of Justice (DOJ), the U.S. Environmental Protection Agency (EPA), and most of the parties that participated in the EPA-sponsored allocation for the lower 8.3 miles of the Lower Passaic River, which is Operable Unit 2 (OU2) of the Diamond Alkali Superfund Site (the Site). Nearly all of the allocation parties are also defendants in *Occidental Chemical Corporation v. 21st Century Fox America, Inc, et al.*, Civ. No. 2:18-CV-11273 (D.N.J.).

　　　By way of background, on March 3, 2016, EPA issued a Record of Decision (ROD) for OU2, selecting a remedy to address human health and environmental risks posed by contaminated sediments found in the lower 8.3 miles of the Lower Passaic River, an area from the river's confluence with Newark Bay to River Mile 8.3. In March 2016, EPA notified over 100 parties that they were potentially responsible parties (PRPs) under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (CERCLA), 42 U.S.C. § 9607(a), with respect to OU2 of the Site.

　　　On September 28, 2021, EPA issued a ROD selecting an interim remedy for OU4, which is the 17-mile Lower Passaic River, including OU2 and the upper 9 miles of the Lower Passaic River from River Mile 8.3 to the Dundee Dam. The OU4 interim remedy addresses contaminated sediments in the upper 9 miles. Issuance of the OU4 interim ROD caused the United States to expand its enforcement and settlement efforts to encompass OU4 as well as OU2.

　　　In accordance with the strong policy preference for settlements with responsible parties under CERCLA to avoid spending resources on litigation rather than on cleanup,[1] EPA

---

[1] *See* H.R. Rep. No. 99-253, pt. 1, at 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835. As the court noted in *United States v. Charter Intl Oil Co.,* 83 F.3d 510, 520 (1st Cir. 1996), "[p]erhaps mindful of the huge resources going into the transaction costs of CERCLA litigation, rather than to remediating the sites,

developed and pursued a settlement framework designed to identify parties to implement and/or fund the selected remedy and parties that can appropriately be cashed out. To that end, EPA, through its prime contractor CSRA (later, Eastern Research Group), retained AlterEcho as a third-party neutral to perform an allocation that would assign non-binding shares of responsibility to the private parties identified by EPA as OU2 PRPs. EPA also asked AlterEcho to determine relative groupings, or tiers, of responsibility (logical groupings of parties with similar responsibility and shares). EPA invited the private PRPs it had noticed to participate in the allocation. For clarity, these are denominated as "allocation parties." The vast majority of the invited PRPs agreed to participate in the allocation, denominated as "participating allocation parties" (i.e., a subset of the group of allocation parties), but Occidental Chemical Corporation and nine other allocation parties declined the invitation.

AlterEcho began work in the fall of 2017 and issued a Final Allocation Recommendation Report (Report) at the end of December 2020. The Report recommends relative shares of responsibility for each participating allocation party's facility or facilities that was/were evaluated in the allocation. The Report also recommends relative shares for facilities of those allocation parties that declined to participate in the allocation.

EPA and DOJ reviewed the Report and identified parties that were eligible for a cashout settlement (the "eligible parties"). The United States and the eligible parties have participated in settlement negotiations for several months and we are hopeful that a cashout settlement with these parties is possible.

As noted, most of the eligible parties are also defendants in *Occidental Chemical Corporation v. 21st Century Fox America, Inc, et al.*, Civ. No. 2:18-CV-11273 (D.N.J.). Besides the eligible parties, that litigation includes a number of defendants that did not receive EPA notices of potential liability under CERCLA and were not evaluated in the allocation. EPA and DOJ understand that a number of those defendants, while not participants in the cashout negotiations described above, may be interested in engaging in discussions with the United States concerning an additional, separate settlement, potentially utilizing the methodology that underlies the AlterEcho allocation and the proposed cashout settlement. While EPA and DOJ cannot yet commit to engage in that process, you may inform those non-participants that the United States is willing to consider such a proposal after a potential cashout settlement with the eligible parties has been finalized and judicially-entered.

Sincerely,

*/s/ Laura J. Rowley*

Laura J. Rowley
Senior Trial Attorney

cc:   Brian Donohue, DOJ (via email)
      Andrew Keir, DOJ (via email)
      Sarah Flanagan, EPA Region 2 (via email)

---

Congress sought to encourage earlier resolutions by agreement." These settlements serve to "reduce excessive litigation expenses and transaction costs, thereby preserving scarce resources for CERCLA's real goal: the expeditious cleanup of hazardous waste sites." *United States v. DiBiase,* 45 F.3d 541, 546 (1st Cir. 1995).

Juan Fajardo, EPA Region 2 (via email)
Kate DeLuca, EPA Region 2 (via email)
Frances Zizila, EPA Region 2 (via email)