<206>Case 2:18-cv-11273-MCA-LDW   Document 1953   Filed 01/21/22   Page 1 of 6 PageID: 56415</206>




Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

January 21, 2022

<u>Via CM/ECF</u>

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court, District of New Jersey
MLK Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

    **Re:** ***Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*,**
       **Civil Action No. 2:18-cv-11273-MCA-LDW**

Dear Judge Wettre:

  As directed by the Court's January 19, 2022 Order (ECF No. 1951), Plaintiff Occidental Chemical Corporation ("OxyChem") files this response to the Defendants' request for leave to file a motion for stay (ECF No. 1943).

  Defendants have repeatedly urged the Special Master to delay their depositions, which are scheduled to commence in March. He has rejected their arguments, ruling that depositions should proceed without delay. Unable to persuade the Special Master to relieve them of their obligation to testify under oath about their own pollution of the Passaic River, Defendants now seek to circumvent the Special Master's authority to manage discovery by urging the Court to stay not just their own depositions, but all proceedings. The reasons they conjure, which were never presented to the Special Master, are ephemeral. They claim that *some* parties in this action *hope* to be able to settle their liability to the United States, a non-party, at *some* point in the future, in negotiations ongoing for at least a year that have yet to yield *any* settlement. None of this states any ground on which the Court should grant leave to file a motion to stay this case. Doing so would undermine the Special Master's authority to manage discovery. It would seriously prejudice Plaintiff OxyChem. And it offers no genuine hope that this case can or will be "narrowed" as a result. For all these reasons, OxyChem opposes the request for leave.[1]

---

[1] If the Court concludes leave should be granted to file a motion for stay, OxyChem reserves its right to file a fulsome response explaining, on the merits, why no stay can or should be granted.

<206>Archer & Greiner, P.C. · 1025 Laurel Oak Road · Voorhees, New Jersey 08043 · T 856.673.3902 · F 856.673.7023 · jmcdermott@archerlaw.com
Gibbs & Bruns LLP · 1100 Louisiana · Houston, Texas 77002 · T 713.650.8805 · F 713.750.0903 · www.gibbsbruns.com</206>

Hon. Leda Dunn Wettre, U.S.M.J.
January 21, 2022
Page 2

### 1. The Motion should have been directed to the Special Master.

The Court granted Special Master Thomas P. Scrivo the full authority of a Magistrate Judge, mandating that he "shall oversee the schedule for completion of discovery and all discovery disputes and motions related thereto pursuant to procedures for practice that the special master may establish and modify as necessary." ECF No. 646. Disregarding this Order, Defendants filed a 22-page Motion to Stay with the Court, without seeking leave under Local Rule 16(f) and without first presenting their request to the Special Master. Defendants' disregard of this Order and the Local Rule warrants denial of leave to file their motion for stay, which should be presented to the Special Master for his consideration, if at all.

The Special Master has repeatedly ordered Defendants to cooperate and schedule their depositions. *See, e.g.*, **Ex. A** (Hrg. Tr. 7/13/2021) at 63-70 ("I want to see the deposition protocol followed and get depositions scheduled… Let's just get to scheduling depositions under the protocol. Let's get along and let's do that."). The Special Master has full authority to "facilitate the progression of discovery *without delay*." ECF No. 646 at 2 (emphasis added). Here, his directions to "get depositions scheduled" reflect his first-hand observation of the Defendants' consistent efforts to avoid their own depositions. He knows what Defendants fail to disclose to the Court: that OxyChem sought agreement to proceed with depositions for months, noticed depositions in July 2021, noticed them again in November 2021, and that—following the Special Master's rulings—key parties' depositions are scheduled to begin in March. If not impeded by a stay, these pivotal depositions will be concluded by the end of June.

Defendants know the Special Master has authority to consider whether their depositions should proceed. When Defendants filed their proposed motion with the Court, they were also urging the Special Master to delay their depositions. *See* ECF No. 1926 at 3 ("Defendants respectfully request . . . an order: (1) protecting Defendants from and staying depositions currently noticed for January, February, and March 2022"); *see also* ECF No. 1944 at 4 ("[W]e request that depositions not be scheduled until late April"). Defendants never urged the Special Master to stay the entire case based on their year-long settlement discussions with the government. Instead, they sought a complete stay *only* in their filing with the Court, failing to tell the Court of the Special Master's rulings *denying* their repeated and continuous efforts to prevent their depositions.

The Defendants' improper attempt to end-run the Special Master's authority and rulings is more than enough reason to deny leave to file their motion for stay.

### 2. OxyChem will be severely prejudiced if a stay is ordered.

Considered against the backdrop of the Special Master's rulings, Defendants' claim that their testimony under oath might impede their settlement efforts is pernicious. *See* ECF No. 1943-3 at 13 (claiming "denial of a stay would jeopardize the contemplated settlement" and result in "clear, measurable, and direct harm"). What "clear, measurable, and direct harm" could Defendants possibly suffer from being compelled to testify truthfully about their pollution of the Lower Passaic River? None. No court has ever rewarded a party with a stay because, as here, the

party claimed it was "too burdensome" to tell the truth under oath. Equally cynical is the SPG's invocation of the interests of "the communities impacted by the contamination of the Lower Passaic." *Id.* These affected communities are *not helped* by allowing Defendants to avoid testifying about their polluting activities. Defendants' tacit threat that they might be deterred from performing remedial work if they are deposed now, *see id.*, is beyond repugnant.

Defendants will suffer *no* harm if the Special Master's rulings that they must appear for deposition are enforced. But their stay motion, if leave is granted to file it, seeks to impose a prejudicial and permanent information deficit on OxyChem. Defendants waited to file their stay motion until *after* OxyChem had produced millions of pages of documents, an entire sampling database, and a library of more than 100 prior depositions; answered reams of burdensome paper discovery; and litigated multiple privilege motions. In fact, Defendants did not seek a stay of this *case* until their own depositions were imminent and the Special Master ordered them to admit the existence of critical documents they failed to produce. See ECF No. 1933.

In contrast, OxyChem will be severely prejudiced by a stay. Twenty-six depositions of defendants and defendants' consultants are now scheduled over the next 120 days. OxyChem is not limited to demonstrating prejudice by showing that a particular individual "witness will not be available for questioning in six months." ECF No. 1943 at 13. As the Special Master knows, every scheduled deposition is a Rule 30(b)(6) *corporate* deposition that allows OxyChem to take comprehensive discovery of each *Defendant's* operations, use of hazardous substances, pollution of the river, and remedial actions. The Federal Rules require discovery to be "reciprocal" to "avoid unnecessary surprise and to level the playing field. *N. Jersey Media Group, Inc. v. United States*, 836 F.3d 421, 434 (3d Cir. 2016). There is nothing level about permitting the Defendants to *obtain* enormous discovery from OxyChem, then arguing for a stay that would prevent OxyChem from completing its own discovery.[2] This is not *minimal* harm, ECF No. 1943 at 13, it is profound, irreparable, and permanent harm.

### 3. Some parties' desire to pursue settlement is not a ground on which *all* proceedings should be stayed.

OxyChem's claims will proceed in this Court *regardless* of any settlements between some defendants and the United States. No purpose is served, therefore, by delaying OxyChem's duly noticed depositions because *some* defendants seek to settle with the United States. In the unlikely event those "hoped for" settlements are achieved, the discovery OxyChem takes now will also be available as evidence the Court can consider in assessing whether to approve those settlements.

Parties remain free to discuss settlement at any time. In fact, as the Special Master is aware, OxyChem sought to open settlement discussions with several defendants and was rebuffed. Notably, OxyChem did not seek a stay when it sought to discuss settlement because none was

---

[2] In contrast to their argument that a stay is appropriate and no depositions are required where their own potential settlements and 30(b)(6) depositions are at issue, Defendants demanded in the Protocol for Depositions *40* fact witness depositions, and now Third-Party Defendants demand they, too, be allotted *40* fact witness depositions. *See* ECF No. 1167 at 4; 1949 at 2.

necessary. Nor does CERCLA mandate entry of a stay for this purpose. "If courts were to impose a stay whenever a defendant was negotiating a potential settlement with the EPA, CERCLA litigation could be prolonged indefinitely and a claim for contribution by a party with substantial cleanup costs could easily be frustrated." *Keystone Coke Co. v. Pasquale*, No. CIV. A. 97-6074, 1999 WL 126917, at *5 (E.D. Pa. Mar. 9, 1999). "[T]here is nothing extraordinary regarding the occurrence of an EPA enforcement proceeding progressing parallel to Plaintiff's cost recovery action." *NL Indus., Inc. v. Old Bridge Twp.*, No. CIV.A. 13-3493 MAS, 2015 WL 3452909, at *2 (D.N.J. May 29, 2015). "[U]nder CERCLA's statutory scheme, it is entirely appropriate, if not encouraged, for a party to voluntarily incur response costs and to commence suit to recover those costs." *Id.* Here, the Special Master has overseen discovery from the outset. He is fully informed and authorized to consider whether Defendants' sworn testimony under oath in scheduled depositions will impede some Defendants' desire to continue year-long settlement discussions that have yet to yield even one significant settlement.[3] *Compare* ECF No. 646 at 4 ("special master shall … conduct all settlement conferences at such time and manner as he deems appropriate.").

Other facts set out in Defendants' proposed motion refute any need for a stay. The four-year old allocation process conducted in Operable Unit 2 by a former EPA employee, David Batson, involves only some (but not all) parties, and concerns their liability to the United States, *not* to Plaintiff OxyChem. *See* ECF No. 1943-4 at 2 (Jan. 13, 2022 letter from L. Rowley stating that Mr. Batson "began work in the fall of 2017" and acknowledging that the case pending in this Court "includes a number of defendants that did *not* receive EPA notices of potential liability under CERCLA and *were not evaluated in the allocation*" (emphasis added)). Fewer than *half* the parties in this case are participating in those discussions. *See* ECF 1943-3 at 14 (acknowledging that only "three quarters of the defendants" and *none* of the 45 third-party defendants are engaged in those discussions). While "hopeful" that it will achieve settlements with *some* parties, the non-party United States provides *no* timetable at which any settlement with any party will be concluded. *See* ECF 1943-4 (Rowley letter) at 2. And it "cannot yet commit to engage" in settlement discussions with any other parties, including Plaintiff OxyChem, even now. *Id*.

The proposed motion admits that ten primary parties, including OxyChem, declined to participate in those discussions, *id.*, but fails to explain why. Those declining to participate, as well as others, cited profound concerns that EPA's contemplated allocation process was unfair, rested on an incomplete record, could be too easily manipulated by parties that stood to benefit from information deficits, and was unauthorized by CERCLA. *See, e.g.*, **Ex. B** (Feb. 13, 2018 letter from Benjamin Moore & Co. to EPA) at 1; **Ex. C** (Oct. 12, 2017 letter from OxyChem to EPA); **Ex. D** (Jan. 30, 2018 letter from SPG Parties to EPA).

Here, EPA admits the informal allocation conducted by its former employee is non-binding. ECF No. 1943-5 at 5 ("the proposed allocation *is non-binding*" (emphasis added)). EPA also has no jurisdiction to adjudicate OxyChem's contribution and cost recovery claims, nor does it purport to do so. *Id.* ("participation in the allocation does not require any party to forgo its right to contribution or its cost recovery rights."). CERCLA, in fact, prohibits the admission of Mr.

---

[3] EPA undertook cash out administrative settlements with *de minimis* parties long ago.

Batson's allocation in any court proceeding. Ex. B (Benjamin Moore letter) at 1 (citing CERCLA Section 122(e)(3)). This catalog of problems refutes Defendants' suggestion that the Court should stay its hand because its own, *evidence-based* allocation might reach a different result than the unsworn, secret, and *inadmissible* allocation Mr. Batson conducted. Mr. Batson's allocations have twice been rejected as unreliable by other courts.[4] Here, his work was also severely limited. EPA limited the information he could review. It also allowed him to consider only the liability of *some* parties in Operable Unit 2. Mr. Batson did not consider all relevant evidence. He did not assess the liabilities of the *dozens* of parties that did not participate in the Operable Unit 2 allocation. And he did not address the hundreds of millions of dollars of claims and counterclaims pertaining to Operable Unit 4 that are also pending in this action.[5] This Court, in contrast, must resolve the liability of all parties, in both Operable Units 2 and 4, after considering all relevant and admissible evidence.

If anything, this litany of damaging facts confirms that what really underlies the Defendants' demand for a stay is not a desire for a *fair* settlement. Rather, it is their very real fear that timely depositions will contradict the blinkered information Mr. Batson was permitted to consider, undermining the *unfair* settlements they hope to achieve *without* providing timely discovery. This does not support entry of a stay; it refutes it.

Granting leave to consider a stay on this basis is a recipe for indefinite delay. *Cf. Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (stay should be granted "only in rare circumstances.") If some parties settle *with* the United States that will at most resolve *their* liability *to* the United States, not to OxyChem. No settlement with the United States, even if it survives judicial scrutiny, can extinguish Defendants' liability to OxyChem on its contribution or cost recovery claims, all of which the Court has already sustained. *See* ECF No. 1167 (upholding OxyChem's claims for contribution for work performed in Operable Unit 2, for a declaratory judgment regarding future work in the Site, for cost recovery under Section 107, and for recovery of costs it has incurred in Operable Unit 4).

All of which leads us to end where we began. The Court appointed the Special Master to oversee discovery. He is well-positioned to consider whether the parties' and the Court's resources should be diverted from making progress on discovery to spend time arguing about whether a temporary stay should be granted to permit some, but not all, parties to continue a year-long, thus far unproductive effort to settle their liability to the United States. For these reasons, OxyChem respectfully submits that the Court should deny leave to file the motion and should direct the Defendants to submit any further arguments about the scheduling, sequence, and progress of discovery, to the Special Master for his consideration.

---

[4] *See Columbia Falls Aluminum Co., LLC v. Atl. Richfield Co.*, 2021 U.S. Dist. LEXIS 160987 (D. Mont. Aug. 25, 2021) (reducing a third of Batson's allocation to one party because his method differed from the trial evidence); *El Paso Natural Gas Co., LLC v. United States*, 390 F.Supp.3d 1025 (D. Ariz. 2019) (reducing Batson's allocation to one party by more than 50% because of Batson's improper reliance on another expert and lack of evidence to support his assumptions).

[5] *See* **Ex. E** (Sept. 18, 2017 letter from EPA to PRPs re: "Allocation for Operable Unit 2 Remedial Action"). Mr. Batson's contract confirms his work was limited to assessing some parties' responsibility in OU2 only. *See* **Ex. F**.

        Respectfully submitted,

        *Kathy Patrick*

        Kathy D. Patrick


        /s/ *John J. McDermott*

        John J. McDermott

cc:    Special Master Thomas P. Scrivo, Esq.
       All counsel of record (via CM/ECF)