# Exhibit A

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------x

OCCIDENTAL CHEMICAL         Civil Action No.
CORPORATION,                2:18-11273(MCA)(JAD)

       Plaintiff,

  v.                        STATUS CONFERENCE

21ST CENTURY FOX AMERICA,
INC., et al.

       Defendants.

---------------------------x

B E F O R E:

  THOMAS P. SCRIVO, ESQ. Special Discovery Master

  O'Toole Scrivo Fernandez Weiner Van Lieu, LLC
  14 Village Park Road
  Cedar Grove, New Jersey  07009


       TRANSCRIPT OF CONFERENCE as

reported by NANCY C. BENDISH, Certified Court

Reporter, RMR, CRR and Notary Public of the

States of New Jersey and New York, conducted

virtually via Zoom Videoconference on Tuesday,

July 13, 2021, commencing at 1:00 p.m.

Page 61

court aptly anticipated, as did we, that the date scramble could become in itself an excuse not to proceed with discovery.

So, some clarity on what the Special Master has in mind there with regard to deposition scheduling is helpful because I don't think it's practical for us to say "Mother, may I" to 155 parties.

MR. SCRIVO: And I think the other issue, and I'll hear from you, Jeff, but I think the other issue at play here is the issue of cross-claims that was raised by Oxy and whether parties that don't have cross-claims against a party whose witness is being deposed have a right to adjourn or say they can't make it and as a result that deposition doesn't take place.

OxyChem has in its submission proposed a date certain by which cross-claims would be asserted. I don't believe that the SPG letter addressed that issue, which is fine, and I don't know if you have a position on that, which I'm not calling on you now to put you on the spot. I think that's tied to this issue as well; maybe not directly, but it's out there.

MS. HENIG-ELONA: May I say

Page 62

something on this issue?

MR. SCRIVO: Yes, Lee.

MS. HENIG-ELONA: I think the Houghton example is a good example of how things are supposed to work. The Houghton deposition did not get scheduled in accordance with the protocol and, therefore, when the defendants said we'd like to participate, they had not been given the opportunity before it was scheduled, as they should have under the protocol, and yet everyone was able to work together to make it happen.

So, you know, if Oxy just follows the deposition protocol, I think it will be fine. We will be able to manage depositions.

MS. PATRICK: Well, in fairness, we followed the deposition protocol, requested a meet and confer on dates, didn't get them and issued notices.

MS. HENIG-ELONA: No, you didn't because no one knew about it except Houghton. And you're supposed to notice liaison counsel --

MS. PATRICK: Lee, I was talking about as to these 14 depositions.

MS. HENIG-ELONA: Oh, yeah, no, I

Page 63

was talking about Houghton still.

MR. McDERMOTT: I would note for the record, Lee, that we got dates from Houghton, which is in your group. We picked one of those dates. You, liaison counsel for Houghton, were one of the counsel to object to the date going forward.

We can't make sure the defendants are communicating within their own liaison groups, as well as select the date that's convenient to us and basically do every part of the scheduling. We can pick from the dates that are provided to us.

MS. HENIG-ELONA: Yeah, but that's not what the protocol says. You have to do what the protocol says, regardless of whether a party says I'm available May 1st. That doesn't mean liaison counsel is, and you need to involve us regardless of whether the date is good for you and the witness.

So the point is that if we just follow the protocol, I think we're going to be okay.

MR. SCRIVO: I think we all agree that the protocol has to be followed.

Page 64

Regardless of what occurred with Houghton or these others, the protocol has to be followed. I think I've made myself clear on that. People can't seek refuge behind the new parties so as to not follow the protocol.

There needs to be -- and look, it's written, as Kathy said, there'll be hearings or there won't be, but there will be depositions that are be scheduled. I'm certain that at the next conference, if we have depositions that are scheduled, there might be some parties who weigh in and say it's not yet ripe, we've done this, we've done that, we filed this motion or that motion, and we can address that as it comes. But I want to see the deposition protocol followed and get depositions scheduled.

MR. TALBERT: Special Master, if I may, I don't have an answer to you right now on the cross-claim deadline. That was just in the agenda letter, so I haven't had a chance to confer with my clients on that.

I will tell you that OxyChem is not following the protocols and Ms. Patrick has already misstated what the protocols require, in

Page 65

1  probably more ways than I'm able to go through
2  just in this oral presentation.  I can follow up
3  by letter, if that's helpful.  But they also
4  have misstated PBSC's position with respect to
5  their involvement in meet and confers and these
6  depositions go forward.
7          The reason that's important
8  substantively is that for a significant number
9  of the parties, their tie to the river is
10 derivative of PBSC and the municipalities.  And
11 the allegations that are made in the third-party
12 complaint relate to claims of discharges to the
13 PBSC or municipalities; and then combine sewer
14 overflows or bypasses from those municipalities
15 or PBSC, which is how the material would then
16 reach the river.  And so that's why PBSC is
17 interested in being involved in these
18 depositions.
19         I think it's important for you
20 just to understand the way this is played out
21 and why it has rubbed parties the wrong way and
22 they're upset by the way that this has played
23 out.  PBSC and the municipalities right now, by
24 stipulation, are supposed to respond to the
25 complaint on August 15th.  So they will be in

Page 66

1  the case shortly, you know, within the next 30
2  days or so.
3          Once they're in the case,
4  obviously the protocols require consultation
5  with them.  Section A-2 requires consultation
6  with the parties, either by liaison counsel or,
7  if they're unrepresented by liaison counsel, to
8  include them in the conversation, the reason for
9  scheduling.
10         What happened was Oxy sent a
11 letter on June 21st.  What they said was they
12 would give dates for parties to consider by June
13 30th.  And then they asked for a meet and confer
14 on July 6th.
15         So, true to form, July 30th came
16 and there were no dates provided.  On July 2nd,
17 Friday before the 4th of July weekend, they sent
18 dates over.  We considered canceling the call or
19 moving it because of the late notice, but
20 decided that it made sense to have some
21 conversation about scheduling and the way that
22 the protocols work because many of the dates
23 that Oxy put in their proposed dates did not
24 comply with the protocol.
25         They also misstated that in their

Page 67

1  addenda letter, which is confusing because
2  obviously they're smart lawyers, they know what
3  the protocol says.  It says 90 days from the
4  notices, when the notices are issued.  That's
5  not September 20th, as they said in their agenda
6  letter.
7          There was also no indication in
8  the letters themselves for that meet and confer
9  that they had, in fact, conferred with
10 third-party defendants which, you know, coming
11 into the case the interest by the rest of the
12 parties is to not reopen depositions, right, to
13 do this once and coordinate.  Especially since
14 they're coming in within the next 30 days or so.
15         There's also significant
16 outstanding discovery, as you know.  So we are
17 waiting for responses to these discovery ESI
18 requests and instead of that got a request to
19 meet and confer on depositions.
20         When we got on the call, counsel
21 for Oxy started cross-examining SPG members
22 about the dates and when the response was, hey,
23 we need to confer with our clients, there was
24 literally screaming that the parties were
25 blocking and stonewalling OCC from taking

Page 68

1  discovery.  And then when OCC was asked as a
2  threshold matter whether they'd included all the
3  parties that were supposed to be included in the
4  protocol, including PBSC and the municipalities,
5  there was a representation that they had spoken
6  with PBSC counsel and PBSC did not object to
7  completing moving forward with defendant-focused
8  discovery and that the clock is ticking, we need
9  to move on.
10         We subsequently understand that
11 that was not accurate.  PBSC counsel stated
12 that, in contrast, they object to the
13 depositions being scheduled without them at
14 least having an oar in the water and being
15 involved so that they can participate
16 meaningfully.  And, instead, Oxy doubled down.
17         Once they heard that, they went
18 ahead and issued the notices to parties on July
19 12th.  And then PBSC responded again, as you
20 know, on July 12th saying that they wanted to be
21 clear that they opposed that discovery before
22 they're even in the case and had any opportunity
23 to be consulted.
24         That's not to say that, you
25 know -- my understanding of their basic request

Page 69

is that they be included and involved in the process and have an ability to meaningfully participate.

So, what we think is most appropriate at this point in time, given what's happened -- and, you know, we're concerned by the failure to follow the rules, we're concerned about the representations that were made that we subsequently learned were not accurate, and we think that these things should be done right and in accordance with the protocol, and that means including the parties that come into the case. Not indefinitely, but at least including them in the scheduling process.

MR. SCRIVO: Well, look, I'm not going to get involved in what conversation occurred between Mr. (Inaudible) and Ms. Patrick on a phone call that's been clarified by PBSC's counsel in a subsequent letter and all of that. I'm not getting involved.

Counsel for PBSC did request that this issue be visited once all the parties have at least appeared or had the opportunity to appear by August 15th, so sometime after August 16th. We certainly know that there is a

Page 70

scheduled conference on August 25th. I suspect that this issue of depositions will be something that is discussed in terms of a global discussion. Don't want to get into the nitty-gritty as to whether deposition protocol has been complied with, hasn't been complied with, whether the notices were held, whether the timing was such that it was sent out on the Friday before 4th of July.

Let's just get to scheduling depositions under the protocol. Let's get along and let's do that. And then when the parties all get in, if there is some issue that's going to be raised by PBSC, the municipal parties, as to why depositions should not take place, then I'll hear it. But until then, let's follow the protocol and get the depositions going.

MS. WILMS: Special Master, this is Nancy Wilms. I have never spoken on one of these before. I just would really appreciate some clarity, because I've heard a couple of different things.

My understanding of the protocol is that it allows dates to be provided within 15 days from the meet and confer. So that's 15

Page 71

days from July 6th, not 15 days from June 21st. So that goes out to July 21st.

And so we received a letter, as did other people who received the subpoenas, a couple days ago, and let me just read you something from the letter. So it says, this is from Ms. Patrick:

"OxyChem remains willing to discuss timely, agreeable alternative dates with any defendant whose deposition has been noticed. Accordingly, if any defendant noticed for deposition agrees to provide an alternative and mutually agreeable convenient date for its deposition by July 21st, 2021, OxyChem will substitute that date. Otherwise all parties should expect these depositions will proceed on the dates selected in the enclosed notice."

That is fine with me as far as scheduling. What I heard today, and I just want to seek clarity, is now we have like two days to bring an issue before the Special Master, and I just would like clarity on which one of those two things. Do we have the ability to try to agree on dates or provide alternate dates before July 21st, or do we have two days to bring like

Page 72

an impasse thing before the Special Master? That's all I want to know.

MR. SCRIVO: That's a fair question, Nancy. I thought Kathy you said -- obviously your letter says what it says. I thought I heard you say July 21st, but why don't you just clarify.

MS. PATRICK: Our position is that the notices, once issued, they have five days to raise it. But we also said in the letter that if people give us mutually agreeable dates by July 21st, we will substitute those. So, I'm not going to tell Ms. Wilms or anybody else that if they don't, in the next two days, file something with the Special Master that we will not talk about them with regard to mutually agreeable dates by July 21st.

So, to those defendants who have received notices, my cell number is 281-935-8223. You have my email address. Please contact me and provide me with mutually convenient dates when you are available. I will notify other parties of that process, but we had the meet and confer, and it failed.

So now I am in a circumstance