

**Dykema Gossett PLLC**
400 Renaissance Center
Detroit, MI 48243

WWW.DYKEMA.COM

Tel:  (313) 568-6800
Fax: (313) 568-6893

**Grant P. Gilezan**
Direct Dial: (313) 568-6789
Direct Fax: (855) 255-4351
Email: GGilezan@dykema.com

February 11, 2022

Special Master Thomas P. Scrivo
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

Re: *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*
   **United States District Court, District of New Jersey**
   **Civil Action No. 2:18-cv-11273**

Dear Special Master Scrivo:

Please accept this letter on behalf of Third-Party Defendant Passaic Valley Sewerage Commissioners, with support by all other Third-Party Defendants in this case (collectively "TPDs").

This letter identifies topics for further discussion during the February 16, 2022 status conference.

**TOPIC #1: Deposition Schedule**

The TPDs maintain their position that all depositions should be paused while the joint motion to stay is pending before the Court.  In the event, however, all depositions are not paused, the TPDs believe it is critical that depositions not begin before May 31.[1]

On February 4, the Primary Defendants and the TPDs submitted a joint letter attaching a proposed timeline for the necessary predicates to depositions to occur. (Dkt. 1969).  Specific to TPDs:

- The Primary Defendants and OxyChem began exchanging documents in this case in March 2019.  In the two and a half years since that time, the parties have produced over ***three million*** unique documents.  To facilitate and expedite the production and review of these documents, the TPDs requested the formation of a global document repository.  OxyChem refused.

- After several months of OxyChem-caused delay, in December 2021, the Small Parties Group ("SPG") and the TPDs began working to finalize the terms and mechanics for a shared database, which should be finished shortly.

---

[1] On January 31, the Primary and Third-Party Defendants jointly filed a response to OxyChem's January 21, 2022 letter opposing the Moving Parties' Motion for Leave to File their Motion for a Stay of Proceedings. (Dkt. 1962). The parties are still awaiting a decision from the Court.

**Dykema**

Special Master Thomas P. Scrivo
February 11, 2022
Page 2

- The TPDs will need a reasonable opportunity to review the millions of documents produced in this case. Working very diligently, this could be completed in 60 to 90 days, by the **end of April or May.**

- The TPDs will also need an opportunity to prepare, serve, and receive responses to their own written discovery requests, followed by review of any responses and productions. The TPDs could be ready to begin serving such requests by the **end of February,** with a deadline for responding at the **end of March,** and a goal of completing such discovery by the **end of May.**

The TPDs recently submitted a letter requesting that the Court avoid imposing potentially unnecessary burdens on the TPDs given their public entity status, and noting that OxyChem's proposed deposition schedule creates an unacceptable risk that the TPDs could incur significant costs preparing for depositions later deemed to be unnecessary by the Court's decision on the motion to stay. (Dkt. 1971). For example, as discussed below, it is estimated that the TPDs will need to incur $26,000 to $32,000 in costs merely for the initial setup of the shared document database with the SPG that will allow them to access documents produced in the case thus far.

OxyChem remains indifferent to whether resources are wasted or the parties are properly prepared for depositions, insisting that depositions begin in March and ramp up significantly in April. In sum, the TPDs believe all discovery should be held in abeyance pending the decision on the motion for stay, but if not, at the very least, the schedule proposed by the TPDs and the SPG should be adopted.

**TOPIC #2: Deposition Protocol Amendments**

The parties are working on amendments to the original deposition protocol, as well as a supplemental remote deposition protocol. The primary unresolved issue is how many fact witness depositions the TPDs should be entitled to take. The original protocol provided that OxyChem and the Primary Defendants were allowed 40 depositions each. The TPDs believe they too should be entitled to 40, such that parties on each side of the "v" are entitled to the same number. OxyChem disagrees, claiming that the TPDs should only be entitled to 15, and that OxyChem should be entitled to 55 (to make its number "reciprocal" to the total number allowed by both the TPDs and Primary Defendants). OxyChem has yet to explain why the TPDs should be provided such a smaller allocation than OxyChem and the Primary Defendants.

**TOPIC #3: Shared Document Database**

The TPDs have received digital copies of existing document productions from other parties. This enormous discovery covers many decades of activity by the numerous corporate parties in this case. For example, OxyChem's productions alone constituted over 2 million documents (10 million pages) and more than 5 terabytes of data. It took over 80 hours for our electronic discovery team to simply transfer the data from the external hard drive provided by OxyChem to another hard drive. And then there are the previous document productions shared by the primary defendants, and the fact that both OxyChem and the primary defendants continue to make additional document productions. With a few exceptions, the TPDs do not have the means to process the initial transfer of such a large quantity of digital data. Moreover, it is important to understand that possessing the production material in raw digital form does not enable the review of the documents. Rather, that requires a database for hosting the produced material.

As explained previously, OxyChem offered the TPDs access to its document database, but the TPDs did not view the offer to be in good faith, as OxyChem's proposal would impose significant costs on the TPDs, and it would not account for basic functions like exporting a document from the database (which would be necessary to participate in depositions).

Dykema

Special Master Thomas P. Scrivo
February 11, 2022
Page 3

Separately, the SPG offered the TPDs access to its database through a more cost-effective (yet still substantial) arrangement that the TPDs believe will serve their functionality needs.  The TPDs have requested a proposed service agreement from SPG's vendor, which must be finalized before the TPDs can access documents.  The prices proposed by the vendor include approximately $26,000 to $32,000 for the initial setup and access to the database.  Additionally, there will be tens of thousands of dollars per month in hosting costs merely to keep the documents in a platform where they can be reviewed.  These are some of the document management costs at risk of being wasted if depositions proceed prior to the Court's decision on the motion to stay, without considering marking, processing, downloading and reviewing costs associated with properly preparing for depositions.

Thank you for your attention to and consideration of these positions.

Sincerely,

**DYKEMA GOSSETT PLLC**

Grant P. Gilezan

118755.000001  4895-2410-0365.1