**PretiFlaherty**

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

February 15, 2022

**VIA ECF AND E-MAIL**

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009

tscrivo@oslaw.com

      RE:    *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.*
                Docket No. 2:18-cv-11273-MCA-LDW

Dear Special Master Scrivo:

The SPG seeks a protective order relating to certain Requests for Production ("RFPs") that OxyChem served that seek CPG documents (including internal allocations) that are plainly privileged and/or outside the scope of discovery. (ECF No. 1959.) In its letter response ("Response"), (ECF No. 1965), OxyChem fails to address—and thus concedes—that materials it seeks are privileged and instead focuses on waiver arguments that are legally and factually unsupported. The SPG briefly responds below.

**1. CPG Documents: RFP Nos. 1, 2, 6**

RFP Nos. 1, 2, and 6 seek internal joint-defense CPG documents that are protected by multiple privileges, including the confidentiality provisions of the CPG membership agreement ("AROA"), federal and/or state settlement and mediation privileges, dispute resolution laws, joint-client and common interest privileges. (ECF No. 1959, at 2-3.) These documents also fall outside the scope of what must be searched for or logged under the ESI protocol in this case. *Id*. Tellingly, OxyChem addresses none of these privileges or the ESI protocol in its Response. Instead, OxyChem claims that any privileges were waived because the SPG parties put them "at issue" (they did not) and that the Special Master already ruled the documents were discoverable (he did not). These arguments are without merit.

    *a. The CPG documents are protected by multiple privileges.*

The CPG documents plainly fall within the scope of the joint-client and community-of-interest privileges as defined by the Special Master in this case. The joint-client privilege "may apply when 'two or more people consult a single attorney' and, as co-clients, 'convey their desire for representation, and the lawyer consents.'" (ECF No. 1185, at 12-13.) The community-of-interest privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *Id.* at 13 (quoting *In re Teleglobe*

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
February 15, 2022
Page 2

*Commcn's Corp.*, 493 F.3d 345, 364 (3d Cir. 2007)). In this case, the Special Master held that the joint-client and community-of-interest privileges protected documents shared between OxyChem, Tierra and Maxus because they were represented by the same law firm and retained consultants for their joint defense.

Under the law of the case, communications between CPG members, who were jointly represented by the law firm K&L Gates and retained consultants such as FTI to further their joint defense, are also protected. Indeed, OxyChem has already admitted that under the AROA "all members of the CPG were required to protect the confidentiality of information exchanged ***for purposes of the joint defense arrangement created under that agreement***." (ECF No. 1959-6 (emphasis added).) Furthermore, joint defense documents do not even need to be logged under the ESI protocol.

    b. *OxyChem's "at issue" waiver theory is inapposite.*

OxyChem inappropriately invokes the inapplicable legal doctrine of implied waiver.[1] To support its waiver argument, OxyChem relies on *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.,* 32 F.3d 851 (3d Cir. 1994). In that case, the Third Circuit did note the general proposition that a party can waive attorney-client privilege by "asserting claims or defenses that put his or her attorney's advice in issue in the litigation." *Id.* at 863. But the Court explained exactly what that meant:

> Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and ***attempts to prove that claim or defense <u>by disclosing or describing an attorney client communication</u>***.

*Id.* (emphasis added); *see also id.* (citing cases in which "reliance on counsel" was an essential element of the claim). While privileged information is undoubtedly relevant to any claim or defense, the mere *existence* of such information does not automatically place it into issue. The doctrine requires a very specific showing—a party who affirmatively injects legal advice into litigation.

Here, OxyChem does not even attempt to make such a showing. OxyChem identifies no "advice of counsel" that SPG parties have supposedly put at issue. Nor does OxyChem point to any attempt by the SPG to prove its claims by disclosing privileged communications. OxyChem's implied waiver argument is makeweight.

---

[1] According to OxyChem, SPG parties must produce privileged CPG communications because they somehow put them "at issue" by asserting a breach of contract claim. (Response at 4.) OxyChem further claims that its waiver theory is buttressed because of its own rank speculation that the CPG members conspired to "forc[e] OxyChem and its indemnitors out of the CPG." (Id. at 3-4.) OxyChem's argument is legally unsupported and counterfactual.

OxyChem's telling of the facts is also wrong. OxyChem withdrew from the CPG on May 29, 2012, after refusing to enter into the Administrative Settlement Agreement and Order on Consent for Removal Action ("AOC") with EPA. The CPG reported to EPA on the same day, May 29, 2012, that, "after completing a significant mediation effort, . . . the members voted in favor of entering the AOC and adopting an allocation of financial responsibility for costs incurred under the AOC."[2] The letter further explained, "[u]nfortunately, the vote was not unanimous." *Id.* OxyChem and its indemnitors, unhappy with the result of the mediation effort and allocation of responsibility for costs, refused to enter into the AOC. That is why OxyChem withdrew from the CPG, not because of any actions by SPG parties.

    c. *The Special Master's Prior Rulings Do Not Support Production of CPG documents.*

Finally, OxyChem misleadingly suggests that the Special Master's prior order on the SPG's motion to compel, (ECF No. 1380), means that CPG documents are "discoverable" and must be produced regardless of whether they are privileged. (Response at 3.) Not so. RFP Nos. 1, 2, and 6 seek internal CPG joint-defense materials. Even if these types of documents were somehow relevant, the fact remains that they are both privileged and outside the scope of the ESI protocol. A privileged document does not become discoverable just because it is relevant. *See Rhone-Poulenc Rorer Inc*, 32 F.3d at 861 ("relevant but privileged matters are not discoverable"). The Special Master should grant the SPG the relief requested on RFP Nos. 1, 2, and 6.

**2. Batson Allocation: RFP No. 4**

As to RFP No. 4, OxyChem similarly argues that the Special Master's prior order, (ECF No. 1380), establishes the relevance of SPG parties' decisions to participate in EPA's allocation. But the SPG's request at issue in that order addressed OxyChem's noncooperation based on its refusal to participate in the EPA allocation. Why OxyChem opted *not to cooperate* with the EPA's settlement process[3] and filed this costly litigation instead is a very different proposition than agreeing to the government's request. That a party participated in EPA's allocation is alone sufficient to establish its cooperation.

In any event, to the extent OxyChem seeks documents relating to decisions to cooperate with the government, such documents—if any existed—would also likely be privileged. The parties should not have to waste the time and money to go through a privilege logging exercise for documents that have little or no relevance to begin with.

---

[2] *See* Letter from William H. Hyatt, Jr. to Raymond Basso (May 29, 2012), attached as **Exhibit A**.

[3] On OxyChem's own account, it did not participate because it did not trust the government to provide a fair process. OxyChem's rationale is the epitome of noncooperation. And its decision to file this litigation and divert resources away from cleaning up the site flies in the face of longstanding EPA policy under CERCLA.

Preti Flaherty

Special Master Thomas P. Scrivo, Esq.
February 15, 2022
Page 4

      For these reasons and those explained in the SPG's initial letter brief, the Special Master should grant the SPG's motion for a protective order on RFP Nos. 1, 2, 4, and 6.

      Respectfully submitted,

/s/ Jeffrey D. Talbert
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP**
One City Center
Portland, ME 04101
Tel: 207.791.3239
*Liaison Counsel for the Small Parties Group*

Attachment: Exhibit A