**PretiFlaherty**

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

February 15, 2022

**VIA ECF AND E-MAIL**

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009

tscrivo@oslaw.com

      RE:   *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.*
              Docket No. 2:18-cv-11273-MCA-LDW

Dear Special Master Scrivo:

     OxyChem's letter (Dkt. 1983) ignores the undeniable fact that a settlement with the United States will have a substantial impact on this case warranting a stay. Contrary to OxyChem's assertion, the plain language of CERCLA, long-standing EPA policy, and decades of jurisprudence all incentivize settlements with the United States by providing protection to settlers from private party litigation like this one. Section 113(f)(2) of CERCLA provides:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.

42 U.S.C. § 9613(f)(2).[1] Entry of a consent decree would bar all contribution claims by any party—including OxyChem—against the settling defendants for any costs covered in the matters addressed by the consent decree.

     Understanding this reality, OxyChem filed this lawsuit in June 2018 as an attempted end-run around EPA's allocation process (started in 2017), conducted by a neutral allocator with expertise in CERCLA cases. OxyChem's litigation was premature to begin with, has wasted

---

[1] *See also, e.g.,* 42 ECF No. 1943-4 (EPA developed and pursued this allocation process and settlement framework "[i]n accordance with the strong policy preference for settlements with responsible parties under CERCLA to avoid spending resources on litigation rather than on cleanup"); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1184 (3d Cir. 1994) ("Congress created CERCLA to encourage settlement, thereby reducing the time and expense of enforcement litigation that necessarily diverts time and money from cleanup and restoration." (quotation marks omitted)). In fact, the case cited by OxyChem, *American Thermoplastics*, makes this clear: "[Section 113(f)(2)] leaves PRPs who do not join in a first-round settlement with the risk of bearing a disproportionate share of liability, a technique which promotes early settlements and deters litigation for litigation's sake." *New Jersey Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 490 (3d Cir. 2020) (cleaned up).

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
February 15, 2022
Page 2

judicial resources, and undeniably continues to divert funds away from cleaning up the Lower Passaic River.

It should be no surprise, then, that OxyChem now wants to ignore the CERCLA provisions providing protection from suits like this one to parties that settle with the United States. *See* 42 U.S.C. § 9613(f)(2). It also should be no surprise that OxyChem would try to justify the continuation of this litigation by cherry-picking issues with two of the over 100 parties it sued. But unlike OxyChem, these two parties have cooperated with the government allocation and settlement process. And these parties have already provided and will continue to provide responses to OxyChem's purported issues.

In short, the Special Master should take OxyChem's letter yesterday for what it really is: a desperate last-minute attempt to impede the United States' settlement process.

I look forward to further discussing these issues with you tomorrow.

Sincerely,

Jeffrey D. Talbert

cc: Counsel of Record via ECF

18713897.2