**PretiFlaherty**

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

February 22, 2022

**VIA ECF AND E-MAIL**
Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009

tscrivo@oslaw.com

   RE: *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.*

Dear Special Master Scrivo:

  Attached please find the SPG, CSG, and GRG Defendants (collectively "Defendants") two-page supplemental submission in support of their request for a brief stay of proceedings. The record for purposes of the motion to stay should include: Defendants' Motion for a Stay of Proceedings and for Leave to File Same, along with the supporting briefs and exhibits filed therewith (ECF No. 1943 – ECF No. 1943-9); Defendants' Letter Responding to OxyChem's Opposition to Motion for Leave to File Motion for Stay (ECF No. 1962); and the portions of the agenda letters to the Special Master addressing the Motion for a Stay (ECF No. 1944, at 1–2; ECF No. 1982, at 1; ECF No. 1987).

                 Sincerely,

                 Jeffrey D. Talbert

cc: Counsel of Record via ECF

Preti Flaherty
Beliveau & Pachios LLP
Attorneys at Law

One City Center, Portland, ME 04101 | PO Box 9546, Portland, ME 04112-9546 | Tel 207.791.3000 | www.preti.com

# DEFENDANTS' SUPPLEMENT TO MOTION TO STAY

1. The United States and the overwhelming majority of primary defendants ("settling parties") have reached an agreement in principle on a settlement that will significantly impact—and should ultimately end—this litigation. *See* ECF No. 1943-3, at 14–15. All material terms of the settlement have been agreed upon, and the parties are now in the process of formalizing the agreement into a "cashout" consent decree ("CD").

2. As detailed in the U.S. Department of Justice's January 13, 2022, letter, (ECF No. 1943-4), the settlement will cover the full 17 miles of the river (OU2 and OU4). Because it is a "cashout" settlement, the parties will make a monetary payment to address their potential share of responsibility at the Site.[1]

3. To provide parties with finality, cashout settlements include contribution protection. Contrary to OxyChem's repeated assertions, "contribution protection" is not unconstitutional. ***It is specifically provided by the language of CERCLA itself***. 42 U.S.C. § 9613(f)(2) ("A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."). OxyChem made this very same argument when it challenged earlier cashout settlements, and EPA rejected it, explaining that OxyChem's position was "not accurate or supported by CERCLA." EPA Resp. to Comments on 2nd Cashout Settlement (Ex. 1), at 4 (citing 42 U.S.C. § 9613(f)(2)).

4. In terms of process, after the United States enters into a CD in CERCLA cases, the CD is lodged with the Court and subject to a public comment period before it may be entered by the Court. 42 U.S.C § 9622(d)(2)(A)-(B); 28 CFR § 50.7. During that process, any party that opposes the settlement has an opportunity to file objections.

5. The standard of review for the Court in deciding whether to approve a CD is whether it is "fair, reasonable, and consistent with CERCLA's goals." *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003). Courts generally "afford[] deference to the government agency's judgment in entering into a consent decree." *United States v. NCR Corp.*, No. 1:19-CV-1041, 2020 WL 8574835, at *3 (W.D. Mich. Dec. 2, 2020). "[W]here a settlement is the product of informed, arms-length bargaining by the EPA, an agency with the technical expertise and the statutory mandate to enforce the nation's environmental protection laws, in conjunction with the Department of Justice . . . a presumption of validity attaches to [such] agreement." *United States v. Rohm and Haas*, 721 F. Supp. 666, 681 (D.N.J. 1989).

6. The Special Master need not grapple with the scope of "contribution protection" or standards of review now. These issues can be addressed by the Court after the United States moves for entry of the CD. But it is important to understand that this is the statutory scheme provided by Congress for CERCLA settlements. The United States and the settling parties are not treading new ground; this is a well-worn path that incentivizes settlement over litigation.[2] As the United States

---

[1] "Some settlements between PRPs and EPA . . . involve agreements to do work, while others are 'cash out' settlements in which a party pays a portion of the past, or future, response costs in exchange for a release from liability." *United States v. Occidental Chem. Corp.*, 200 F.3d 143, 147 (3d Cir. 1999) (citing 42 U.S.C. § 9622(g), (h)). EPA publishes model "cashout" CDs on its website: https://cfpub.epa.gov/compliance/models/.

[2] *United States v. Occidental Chem. Corp.*, 200 F.3d 143, 150 n.8 (3d Cir. 1999) (§ 113(f)(2)'s contribution protection is "the result of a deliberate policy choice made by Congress in order to encourage settlements").

## DEFENDANTS' SUPPLEMENT TO MOTION TO STAY

recently explained,"[t]hese settlements serve to 'reduce excessive litigation expenses and transaction costs, thereby preserving scarce resources for CERCLA's real goal: the expeditious cleanup of hazardous waste sites.'" ECF No. 1943-4, at 2 n.1 (quoting *United States v. DiBiase*, 45 F.3d 541, 546 (1st Cir. 1995)); *see also United States v. Kramer*, 770 F. Supp. 954, 961 (D.N.J. 1991) ("[B]y saving the litigation costs associated with formal discovery, all of the defendants ought to have more money available to pay as part of a negotiated settlement."). This is the case for all Defendants, including Third-Party Defendants, as specifically highlighted by the burden on Third Party public entities.[3]

7. The settlement will dramatically alter and ultimately end this litigation because: (1) the scope of the settlement will cover the claims at issue in this case; (2) the settlement and allocation will provide a framework that EPA (or the Court) can use to determine the potential responsibility of the handful of parties/facilities not invited to the allocation process and therefore ineligible for this initial settlement;[4] and (3) the settlement and allocation results will make clear that OxyChem has not spent anywhere near its fair share of costs at the Site and therefore cannot maintain a CERCLA contribution action, warranting immediate dismissal of its claims. *Sea-Land Serv., Inc. v. United States*, 874 F.2d 169, 171 (3d Cir. 1989) (recognizing that a party must pay more than its fair share of costs to have a cause of action for contribution); *Reichhold, Inc. v. U.S. Metal Refining Co.*, 2004 WL 3312831, at *5 (D.N.J. Oct. 27, 2004) (same).

8. At this point, the United States and the settling parties are working to finalize the CD terms as expeditiously as possible. The SPG expects to be able to finalize the CD within 4 to 6 months, if not earlier. A brief pause in the litigation is necessary to allow the parties to finalize this document. In the meantime, the SPG can provide monthly reports to the Special Master (including in-camera) or any other information that the Special Master finds helpful.

9. Finally, OxyChem's assertion that it is prejudiced by anything short of full-blown discovery now ignores Congressional policy favoring settlement over litigation, the fact that it will have an opportunity to object to any CD and request any relief it deems appropriate after lodging, and that the standard for evaluating an allocation in the context of a settlement with the U.S. is very different than if the Court were performing its own evaluation. *Compare United States v. Se. Penn. Transp. Auth.*, 235 F.3d 817, 823 (3d Cir. 2000) (setting forth standard for approval of CERCLA consent decree), *with Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 355–56 (3d Cir. 2018) (setting forth standard for district court allocation of CERCLA response costs). Unfocused discovery will do nothing but waste judicial and party resources.

10. OxyChem made a strategic decision not to participate in EPA's allocation and settlement process. EPA was transparent about the purpose of that process. The Special Master should grant the short stay to allow the U.S. and settling parties to finalize that settlement.

---

[3] At the past conference, OxyChem cited § 5-12.613 of U.S. Department of Justice Manual, which is an inapposite policy that advises that U.S. Attorneys may leverage more favorable settlements by continuing to prosecute their case during "settlement discussions." The guidance is discretionary, only applies where the U.S. is a plaintiff, and references only "settlement discussions" in general **not** an "agreement in principle" as here.

[4] The US has reached an agreement in principle with an overwhelming majority of Defendants and stated it would review and consider settlement with the others. OxyChem has already expressed a willingness to dismiss PVSC and municipal party claims.