

**Dykema Gossett PLLC**
400 Renaissance Center
Detroit, MI 48243

WWW.DYKEMA.COM

Tel:  (313) 568-6800
Fax: (313) 568-6893

**Grant P. Gilezan**
Direct Dial: (313) 568-6789
Direct Fax: (855) 255-4351
Email: GGilezan@dykema.com

February 22, 2022

Special Master Thomas P. Scrivo
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

**Re: *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*
    United States District Court, District of New Jersey
    Civil Action No. 2:18-cv-11273**

Dear Special Master Scrivo:

Please accept this letter on behalf of all third-party defendants ("TPDs"), which consist of 41 municipalities and a sewer authority funded entirely by municipal constituent members.

This letter supports the Motion for a Stay of Proceedings and for Leave to File Same, along with the supporting briefs and exhibits filed therewith, submitted jointly by the primary defendants and the TPDs (ECF No. 1943-1949); the Letter Responding to OxyChem's Opposition to Motion for Leave to File Motion for Stay submitted jointly by the primary defendants and the TPDs (ECF No. 1962); and primary defendants' February 22, 2022 supplemental submission supporting a stay of the case.

The purpose of this supplemental letter is to emphasize the critical basis for a six-month stay at this particular time, which is unique to the TPDs.  Basically, the TPDs are currently in a position of having only a few months to catch up on three years of active litigation, involving millions of pages of discovery, necessitating the setting up of an expensive document repository, using limited financial resources, while simultaneously facing the prospect of funding the cost of settling with the US EPA in one of the largest CERCLA cases in U.S. history, in a financially insecure environment due to the Covid pandemic.

From a case management standpoint, it is very important that the burdens imposed on the TPDs by this litigation are minimized to the extent practicable and protect the TPDs against any prejudice from being added some three years into the case, but before US EPA was ready to engage with the TPDs on settlement issues.

The US EPA did not invite the TPDs to participate in the allocation process (as it did with plaintiff and most of the primary defendants) because the US EPA did not identify the TPDs as potentially responsible parties under CERCLA at that time.  Efforts by the TPDs to engage in settlement discussions with the US EPA prior to being added to this case did not progress because the US EPA wanted to complete its allocation process and then proceed with a comprehensive settlement process, which it first announced to the TPDs in December 2021 with discussions resuming.  This was only a couple months after the parties' stipulated date for deeming all cross-claims and counterclaims associated with the TPDs first responsive pleadings as asserted and denied.

**Dykema**

Special Master Thomas P. Scrivo
February 22, 2022
Page 2

From a financial standpoint, the TPDs are public entities operating on lean taxpayer funded budgets, which are already stressed by environmental litigation of this scale and complexity. The still to be seen financial fall out from Covid, combined with the current rising inflation rate and the lifting of the eviction moratorium (and the resulting backlog in Landlord-Tenant Court), has created uncertainty in the tax collection rate. Fiscal conservation has been, and continues to be, critically necessary in order to maintain public services.

The industrial primary defendants in this case have had over three years to pursue settlement with the US EPA and secure protection against plaintiff's CERCLA claims without any depositions taking place. In stark contrast, despite having significantly less financial means and not being alleged to have operations which generated any of the hazardous substances in the river, the public entity TPDs will have only a few months (unless a stay is imposed) before having to incur substantial costs to prepare for and attend numerous depositions.

It works against public financial interests and basic fairness to press the municipal TPDs to engage in extensive discovery at a greatly accelerated pace (compared to the industrial parties) and with far less opportunity to engage with the US EPA to secure protections for the TPDs against claims in this case by plaintiff and the primary defendants.

In light of the foregoing, a short stay of six months before starting depositions would afford the TPDs the opportunity to engage with the US EPA on settlement options. This will allow the municipalities to prioritize limited public resources for advancing cleanup work, instead of expending limited funds to try and catch up on three years of litigation at breakneck speed, as well as pay for subsequent long-term litigation activity, which is not aligned at all with facilitating expeditious and efficient settlement and cleanup activity.

Specifically, without a stay, each of the TPDs will need to begin incurring tens of thousands of dollars in costs per month for the initial setup of a digital document repository and rights to access those documents. This is on top of the costs the municipalities will incur for attorney/expert review of the documents, and preparation and attendance at depositions.

For these reasons, in addition to the various other bases raised by the primary defendants and the TPDs in their prior submissions in support of their Motion to Stay, the TPDs respectfully request that you stay the case for six months. In the event you decide not to stay the case at this time, the TPDs request that such determination be without prejudice to a future application by the TPDs to seek leave to sever and stay and/or stay the third party action.

Thank you very much for your consideration of this position.

Sincerely,

**DYKEMA GOSSETT PLLC**

Grant P. Gilezan

118755.000001  4866-7501-4928.1