John J. McDermott, Esq.
(jmcdermott@archerlaw.com)
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
Tel. (856) 795-2121

GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel. (713) 650-8805
By: Kathy D. Patrick, Esq.
    (kpatrick@gibbsbruns.com)

*Attorneys for Plaintiff Occidental Chemical Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION | Hon. Madeline Cox Arleo |
| | Hon. Leda Dunn Wettre |
| Plaintiff, | |
| | Civil Action No. 2:18-cv-11273 |
| v. | |
| | **OCCIDENTAL CHEMICAL** |
| 21ST CENTURY FOX AMERICA, INC., et al.; | **CORPORATION'S BRIEF IN** |
| | **SUPPORT OF MOTION FOR** |
| Defendants and Third-Party Plaintiffs, | **PROTECTIVE ORDER AND** |
| | **OPPOSITION TO THE SMALL** |
| v. | **PARTIES GROUP'S MOTION FOR** |
| | **A DETERMINATION OF THE** |
| PASSAIC VALLEY SEWERAGE | **SUFFICIENCY OF AMENDED** |
| | **RESPONSES TO REQUESTS FOR** |
| Defendants and Third-Party Defendants. | **ADMISSION** |

Plaintiff Occidental Chemical Corporation ("OxyChem") submits this brief in support of

its Motion for Protective Order and Opposition to the Small Parties Group's ("SPG") Motion for

a Determination of the Sufficiency of OxyChem's Amended Responses to the Requests for

Admission (Dkt. 1945) (hereinafter, "SPG's Motion" or "Motion").

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

RELEVANT PROCEDURAL HISTORY ............................................................... 2

LEGAL STANDARDS ......................................................................................... 4

I.     STANDARD FOR MOTION FOR PROTECTIVE ORDER. .......................... 4

II.    STANDARD FOR DETERMINING VALIDITY OF OBJECTIONS AND SUFFICIENCY OF RFA RESPONSES. ................................................. 5

ARGUMENT ......................................................................................................... 6

I.     THE SPECIAL MASTER SHOULD GRANT A PROTECTIVE ORDER. ...... 6

    A.    OxyChem's Request for a Protective Order is Not Moot. ...................... 6

    B.    The RFAs Are Oppressive and Unduly Burdensome By Sheer Number. ......................................................................................... 7

    C.    The RFAs Are Oppressive and Unduly Burdensome By Form and Subject. ...................................................................................... 8

         1.    The Instructions Substantially Increase OxyChem's Burden.………………………………………………………… 8

         2.    The RFAs Are Improperly Compound, Not Readily Admitted or Denied, and Require Qualifications. ........... 9

         3.    The RFAs Involve or Assume Disputed Facts................. 9

         4.    The RFAs Improperly Call for Interpretations of Documents, Legal Conclusions, and Disputed Scientific Principles…………... ..................................... 10

II.    THE SPECIAL MASTER SHOULD DENY THE SPG'S MOTION TO DETERMINE SUFFICIENCY OF OXYCHEM'S RESPONSES. ................... 12

    A.    The SPG's *Ad Nauseam* Attacks on OxyChem's Objections Ignores the *Substantive Answers* for *92* of the 99 RFAs at Issue. ......... 13

    B.    Rule 36 Expressly Allows OxyChem's Decision to Rest on Objections For Seven of the 99 RFAs at Issue. .................................... 15

    C.    OxyChem's Substantive Answers Comply with Rule 36 and Caselaw. ............................................................................. 15

ii

1.     OxyChem Properly Qualified Admissions to RFAs 120 and 197…………………….................................. 16

2.     OxyChem Properly Denied Nearly Thirty, and Properly Provided Partial Admissions/Denials to Roughly Half of the RFAs at Issue....................................................... 17

3.     For Just 10 RFAs, OxyChem was Unable to Admit or Deny the Request…………............................................ 18

D.     OxyChem's Answers Are Not "Evasive". ............................................ 20

E.     OxyChem Provided Qualifications and Explanations Where Necessary. ...................................................................................... 21

1.     OxyChem Properly Qualified Answers About Contaminants of Concern. .............................................. 21

2.     OxyChem Appropriately Qualified Answers Related to Successorship……....................................................... 23

3.     OxyChem Appropriately Qualified Answers Related to the Batson allocation process and "Cooperating Parties Group" (aka "CPG")…………….................................. 25

F.     If the Special Master Finds Any of OxyChem's Responses Insufficient, the Proper Relief is to Order OxyChem to Amend the Responses.......................................................................................... 25

CONCLUSION.................................................................................................. 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beazer E., Inc. v. Mead Corp.*,
   34 F.3d 206 (3d Cir. 1994)................................................................................24

*Bernstein v. Principal Life Ins. Co.*,
   No. 09 Civ. 4925(CM)(HBP), 2010 WL 4922093 (S.D.N.Y. Dec. 2, 2010) .........................25

*In re: Certain Consol. Zoledronic Acid Cases*,
   No. 2:12-CV-3967, 2015 WL 12844402 (D.N.J. Mar. 16, 2015) ...........................................12

*Chao v. Doyle*,
   No. 05-2264, 2008 WL 11518765 (D.N.J. Oct. 20, 2008) ......................................................25

*Dassault Sys., SA v. Childress*,
   No. 09-10534, 2013 WL 12181775 (E.D. Mich. Sept. 5, 2013)................................................7

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Transit Auth.*,
   234 F.R.D. 1 (D.D.C. 2006)...........................................................................................11, 13

*Dubin v. E.F. Hutton Grp., Inc.*,
   125 F.R.D. 372 (S.D.N.Y. 1989) ..............................................................................................9

*Ebert v. Township of Hamilton*,
   Civ. No. 15-7331, 2016 WL 6778217 (D.N.J. Nov. 15, 2016) ...........................................9, 15

*Gov't. Emps. Inc. Co. v. Benton*,
   859 F.2d 1147 (3d Cir. 1988).................................................................................................11

*Greenway Ctr., Inc. v. Essex Ins. Co.*,
   475 F.3d 139 (3d Cir. 2007)....................................................................................................24

*Harris v. Koenig*,
   271 F.R.D. 356 (D.D.C. 2010)..................................................................................................2

*Havenfield Corp. v. H & R Block, Inc.*,
   67 F.R.D. 93 (W.D. Mo. 1973).................................................................................................25

*Hayes v. Bergus*,
   No. 2:13-CV-4266-SDW-SCM, 2015 WL 5666128 (D.N.J. Sept. 24, 2015) ........................13

*Herrera v. Scully*,
   143 F.R.D. 545 (S.D.N.Y. 1992) .............................................................................12, 17, 24, 25

*Joseph L. v. Conn. Dep't of Child. & Fams.*,
225 F.R.D. 400 (D. Conn. 2005)............................................................7

*Josephs v. Harris Corp.*,
677 F.2d 985 (3d Cir. 1982)...............................................................14

*Kendrick v. Sullivan*,
No. 83-3175(CRR), 1992 WL 119125 (D.D.C. May 15, 1992)................................12, 19, 25

*Lakehead Pipe Line Co. v. Am. Home Assurance Co.*,
177 F.R.D. 454 (D. Minn. 1997)....................................................... *passim*

*Langer v. Monarch Life Ins. Co.*,
966 F.2d 786 (3d Cir. 1992).................................................................2

*McNeil v. AT&T Universal Card*,
192 F.R.D. 492 (E.D. Pa. 2000)............................................................21

*Merck Sharp & Dohme Corp. v. Pfizer Inc.*,
No. 19-2011, 2021 WL 2646943 (E.D. Pa. June 28, 2021)...............................9, 10

*Stokes*: *United States ex rel. Minge v. Tect Aerospace, Inc.*,
No. 07-1212-MLB, 2012 WL 1631678 (D. Kan. May 8, 2012) ...............................8

*N.J. Dep't of Envtl. Prot. v. Occidental Chem. Corp.*,
Nos. A-2036-17, A-2038-17, 2021 WL 6109820 (N.J. Super. Ct. App. Div.
Dec. 27, 2021).............................................................................23

*Perez v. Miami-Dade Cty.*,
297 F.3d 1255 (11th Cir. 2002) ............................................................6

*Phillips Petrol. Co. v. N. Petrochem. Co.*,
No. 84 C2028, 1986 WL 9186 (N.D. Ill. Aug. 19, 1986)......................................7

*Piskura v. Taser Int'l*,
No. 1:10-cv-248, 2011 WL 6130814 (S.D. Ohio Nov. 7, 2011) ............................12

*Pittsburgh Hotels Ass'n v. Urban Redev. Auth.*,
29 F.R.D. 512 (W.D. Pa. 1962) ...........................................................10, 11

*R.C. Olmstead, Inc. v. CU Interface, LLC*,
No. 5:08CV234, 2008 WL 11381842 (N.D. Ohio Dec. 12, 2008)...................................10, 11

*Republic of Turkey v. Christie's, Inc.*,
326 F.R.D. 394 (S.D.N.Y. 2018) ..........................................................9, 10, 13

*Richard v. Dignean*,
332 F.R.D. 450 (W.D.N.Y. 2019)...........................................................10, 18

*Robinson v. Stanley*,
    No. 06 C 5158, 2009 WL 3233909 (N.D. Ill. Oct. 8, 2009) ......................................................7

*Rowe v. E.I. DuPont De Nemours & Co.*,
    Nos. 06-1810-RMB-AMD, 06-3080-RMB-AMD, 2008 WL 4514092 (D.N.J.
    Sept. 30, 2008) ..........................................................................................................22, 23, 26

*S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*,
    No. 01-0702 (FLW), 2005 WL 8177284 (D.N.J. May 27, 2005).............................................4

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Svc.*,
    No. Civ. S-06-2845, LKK/JFM, 2008 WL 11400759 (E.D. Cal. Dec. 23,
    2008) .....................................................................................................................................14

*Smith v. Director's Choice, LLP*,
    No. 15-81, 2018 WL 11356705 (D.N.J. 2018) ...............................................................15, 17

*Stokes v. Interline Brands Inc.*,
    No. C-12-05527 JSW (DMR), 2013 WL 6056886 (N.D. Cal. Nov. 14, 2013)................6, 7, 8

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*,
    No. 8:06CV458, 2009 WL 1616629 (D. Neb. June 4, 2009) .................................................24

*Tamas v. Family Video Movie Club, Inc.*,
    301 F.R.D. 346 (N.D. Ill. 2014)............................................................................................7

*Tri-State Hosp. Supp. Corp. v. United States*,
    226 F.R.D. 118 (D.D.C. 2005).............................................................................................20

*United Coal Cos. v. Powell Constr. Co.*,
    839 F.2d 958 (3d Cir. 1988).......................................................................................*passim*

*United States v. Abbot Laboratories*,
    No. 09-CV-4264, 2016 WL 2621669 (E.D. Pa. Jan. 15, 2016).............................................23

*United States v. Lorenzo*,
    No. 89-6933, 1990 WL 83388 (E.D. Pa. Jun. 14, 1990).......................................................19

*United States v. Operation Rescue Nat'l*,
    111 F.Supp.2d 948 (S.D. Ohio 1999) ..................................................................................24

*United States v. Raytheon Co.*,
    No. 08-10341-DPW, 2013 WL 5348571 (D. Mass. Sept. 23, 2013)...........................16, 21, 25

*United States v. Watchmakers of Switzerland Info. Ctr.*,
    25 F.R.D. 197 (S.D.N.Y. 1989) ...........................................................................................10

*In re: Valeant Pharm. Int'l, Inc. Secs. Litig.*,
No.3:15-cv-07658, 2021 WL 2164108 (D.N.J. Apr. 12, 2021)........................5, 19

*Vernet v. Serrano-Torres*,
No. 00-2559(DRD), 2013 WL 12350557 (D.P.R. Jan. 30, 2013) ..........................11

**Other Authorities**

8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS,
FEDERAL PRACTICE & PROCEDURE § 2259 (3d ed. Apr. 2021 Update) ..............5, 15

FED. R. CIV. P. 26(c)(1)(A) & (B) ..................................................................................4

FED. R. CIV. P. 36(4) ....................................................................................................22

FED. R. CIV. P. 36(a)(5)................................................................................................15

Federal Rule of Civil Procedure 36 ................................................................. *passim*

Rule 26(e)........................................................................................................................7

Rule 36(a)..........................................................................................................18, 19, 24

Rule 36(a)(4)..........................................................................................3, 15, 16, 18

## INTRODUCTION

The SPG's *449* requests for admission ("RFAs" or "Requests") are textbook discovery abuse. In number, form, and substance, these requests violate the requirements and purpose of Federal Rule of Civil Procedure 36. The resulting burden, cost, and delay has been compounded through the SPG Defendants' refusal to modify or withdraw a *single request* and further increases by their Motion.

The *99* responses the SPG takes issue with[1]—of which 92 incorporate direct, substantive answers and just *seven* rest on objections only—are within the parameters of Rule 36 and caselaw. Indeed, *nearly thirty* of the responses challenged by the SPG are clear denials, demonstrating that the SPG's arguments are ill-founded, harassing, and—at their core—grousing about factual disagreements that should be resolved at trial or by summary judgment motion.

Beyond the SPG's vitriol, their brief's content and organization—including *not once* quoting OxyChem's *complete* response; cherry-picking arguments that are null in light of these *actual responses*; and describing specific RFAs as applicable to various sections of the brief only to include the same argument for a much larger number of responses in their "Appendix A"— exemplifies the harassing and unduly burdensome nature of the SPG's RFAs. OxyChem should not be forced to amend responses to RFAs improperly used as discovery tools, and it certainly

---

[1] The SPG's brief (Dkt. 1945-3, hereinafter "SPG Brief") states that the accompanying Appendix A lists "each response [they are] challenging." SPG Brief at 7 n.17. Recently, SPG's counsel clarified that they are also challenging four RFA responses not listed in that appendix: RFAs 150, 237, 366, and 367. *See* **Ex. A** (Feb. 18, 2022 Email from James W. Beers, Jr. to John McDermott). Thus, while Appendix A lists 95 RFAs, there are *99* RFAs at issue.

OxyChem is mindful of the work involved in deciding the sufficiency of 99 RFAs. OxyChem has amended *20* of the RFAs to clarify certain denials/admissions OxyChem *believed were already clear*; to correct the inadvertent use of "could have access"; and to admit that certain invoices *were received*. *See* **Ex. B** (Excerpts from "Occidental Chemical Corporation's Second Amended Objections and Responses to the Small Parties Group's Requests for Admission") (amending RFAs 178, 183, 188, 193, 332, 333, 341, 343, 345, 347, 349, 351, 353, 355, 357, 359, 361, 363, 365, and 367).

should not be bullied into admissions.

The RFAs' myriad deficiencies, and the SPG's unreasonable insistence that clearly denied requests be "deemed admitted," create precisely the scenario that causes Courts to express concern over RFAs, because rather than "expedite the litigation" as RFAs are meant to do, the SPG's RFAs have created "additional litigation because one party is dissatisfied with the answer of the other."[2] But dissatisfaction and disagreement with an RFA response *is not* a proper basis for declaring a response insufficient, and certainly is not grounds for deeming requests admitted.

For the reasons below, OxyChem requests that the Special Master *deny* the SPG's Motion and *grant* a protective order relieving OxyChem from any further obligation of amending its RFA responses and declaring that the SPG may not serve any additional RFAs on OxyChem.

## RELEVANT PROCEDURAL HISTORY

On July 13, 2021, the SPG served OxyChem with 449 RFAs.[3] The Requests' sheer number and timing—just two weeks after the Special Master deferred contention interrogatory answers to avoid "unnecessarily delay[ing] this matter further" and to ensure "depositions get underway"—raised questions regarding the SPG's purpose. *See* Dkt. 1249 at 9. Those questions were answered when the SPG refused to withdraw or modify a *single* request or engage in any meaningful efforts to meet and confer, exposing the SPG's goal of imposing burden and cost on OxyChem and delaying discovery of the Defendants' own operations.

After securing an agreed extension to serve its objections and responses, OxyChem promptly initiated the process of conferring in good faith regarding its objections to the

---

[2] *Harris v. Koenig*, 271 F.R.D. 356, 372 (D.D.C. 2010); *see also Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992) (Rule 36 requests for admission have two purposes— "both of which are designed to *reduce* trial time." (quoting FED. R. CIV. P. 36 Advisory Committee Notes on 1970 Amendment) (emphasis added)).

[3] *See* **Ex. C** ("The Small Parties Group's Request for Admissions").

Requests. In an August 13 letter, OxyChem explained those objections and sought a call with the SPG to meet and confer to avoid moving to quash or for a protective order.[4] OxyChem's letter asked the SPG to, among other things, cure improper instructions[5] and amend or withdraw RFAs seeking compound admissions or embedding speculation, hearsay, or clearly disputed facts.

The SPG did not respond to the substance of OxyChem's letter, but waited instead for the September 2 meet-and-confer call to refuse outright any compromise or effort to cure *any* of its improper requests. The SPG's position was non-negotiable: OxyChem must "respond or object to them, then we will review them and move to compel."

The following week, OxyChem wrote to the Special Master describing the improper nature of the SPG's Requests and seeking leave to file a motion to quash or for protection that would be heard before any motion to compel, if necessary. Dkt. 1504 (9-7-2021 Letter from OxyChem to Special Master). The SPG did not respond to this initial letter.

OxyChem served its objections and answers to the SPG's 449 Requests on September 10, 2021, and the parties addressed the dispute with the Special Master during the September 22, 2021 status conference. OxyChem recited its efforts to reach some reasonable compromise, notwithstanding the undue burden it had already incurred by objecting and responding to all 449 Requests. *See* **Ex. E** (Tr. of Sept. 22, 2021 Status Conf.) at 53:2-54:3. OxyChem again requested that its motion to quash or for protection be considered *before* any motion the SPG might file. *Id*. The Special Master made clear that after OxyChem—at the SPG's insistence—served responses to the RFAs, the SPG should not use those answers as a waiver "gotcha." *Id.* at 55:17-24.

---

[4] **Ex. D** (August 13, 2021 Letter from OxyChem to the SPG).

[5] For example, the SPG's Instruction 3 purported to direct that "In the event that OxyChem objects to or denies any Request or portion of a Request, OxyChem must state the reasons for its objection or denial." *See* **Ex. C** at 7 ¶ 3. This violates Rule 36(a)(4), which does *not* require any explanation if a request is denied. The SPG withdrew Instruction 3, its lone concession, but nevertheless complains in its Motion that OxyChem did not explain denials.

Following the September conference, the SPG maintained its refusal to withdraw or modify a single request and instead sought amended responses to *267* of its original 449 RFAs. Meanwhile, the SPG steadfastly claimed *they* could not engage in meaningful discovery of *their* Passaic River pollution. *See, e.g.*, Dkt. 1471 (Aug. 23, 2021 SPG Letter) at 8 ("[T]hese depositions should not proceed until January or February 2022 at the earliest . . . ."); Dkt. 1896 (Nov. 15, 2021 SPG Letter) at 8 ("deposition schedules and topics" should be "revisit[ed]" in "March of 2022"); Dkt. 1944 (Jan. 14, 2022 SPG Letter) at 4 ("it is more realistic to target late April/May/June for . . . depositions"). The SPG even argues for a six-month stay to allow *some* defendants to try to settle with *non-party* United States, citing the "risk" of discovery.[6]

OxyChem served amended RFA responses on December 8, 2021. *See* Dkt. 1907 (11/19/2021 OxyChem Letter to Special Master Scrivo). The next day OxyChem requested that the Special Master rule on its motion for protection and reiterated that request on January 14, 2022. Dkt. 1922 & Dkt. 1941. Later that night, the SPG filed its Motion. Dkt. 1945.

## LEGAL STANDARDS

### I.    STANDARD FOR MOTION FOR PROTECTIVE ORDER.

"The court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding the discovery or "specifying terms" for discovery. FED. R. CIV. P. 26(c)(1)(A) & (B); *see also S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, No. 01-0702 (FLW), 2005 WL 8177284, at *6 (D.N.J. May 27, 2005) (Court has "broad authority to prevent discovery or to restrict its scope.").

---

[6] *See* Dkt. 1993 (Feb. 2, 2022 OxyChem Letter to Special Master Scrivo). The SPG Defendants' insistence on serving and seeking responses, then amended responses, and then *compelled* responses to *449 deficient RFAs* cannot—as with their insistence that they need 95 depositions— be squared with their contention that *no depositions* or other discovery is necessary for a settlement they allege (incorrectly) will fairly allocate and *bar OxyChem's claims against them*.

Protective orders are equally available for RFAs. 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2259 (3d ed. Apr. 2021 Update) (moving for a protective order is one response available to party on whom RFAs are served). A protective order is proper where the RFAs are "so voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome." *See* Fed. R. Civ. P. 36 Advisory Committee Notes on 1970 Amendment.

## II.   STANDARD FOR DETERMINING VALIDITY OF OBJECTIONS AND SUFFICIENCY OF RFA RESPONSES.

When determining the validity of an objection to an RFA, a court must "take into consideration the 'phraseology of the Requests as carefully as that of the answers or objections." *In re: Valeant Pharm. Int'l, Inc. Secs. Litig.*, No.3:15-cv-07658, 2021 WL 2164108, at *3 (D.N.J. Apr. 12, 2021); *see also United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 968 (3d Cir. 1988) (district court erred in deeming admitted RFAs where it failed to examine requests).

To determine whether an RFA response denying or qualifying a denial is sufficient, a court should consider: "(1) Whether the denial fairly meets the substance of the Request; (2) Whether good faith requires that the denial be qualified; [and] (3) Whether any qualification which has been supplied is a good faith qualification." *In re: Valeant Pharm. Int'l, Inc. Secs. Litig.*, 2021 WL 2164108 at *3.

5

## ARGUMENT

### I.   THE SPECIAL MASTER SHOULD GRANT A PROTECTIVE ORDER.[7]

RFAs are "not to be used in an effort to harass the other side or in the hope that a party's adversary will simply concede essential elements." *Stokes v. Interline Brands Inc.*, No. C-12-05527 JSW (DMR), 2013 WL 6056886, at *2 (N.D. Cal. Nov. 14, 2013) (quoting *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)). "[W]hen a party uses [Rule 36] to establish uncontested facts and to narrow the issues for trial, then the rule functions properly." *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1268 (11th Cir. 2002). But when a party "uses the rule to harass the other side . . . the rule's time-saving function ceases: the rule instead becomes a weapon, dragging out the litigation and wasting valuable resources." *Id*. Yet the volume and framing of the SPG's RFAs indicate this is exactly how they attempt to use them in this case.

#### A.   <u>OxyChem's Request for a Protective Order is Not Moot.</u>

OxyChem's protective-order request is not moot because OxyChem "already answered the RFAs."[8] OxyChem seeks meaningful relief through an order that both *relieves* it of any duty

---

[7] OxyChem incorporates by reference those arguments and legal authorities cited in its letter seeking leave to file a motion for protective order. *See* Dkt. 1504. For ease of reference to RFAs, responses, and the parties' arguments, OxyChem offers its own Appendix, which includes all the information on the SPG's Appendix A, as well as OxyChem's specific responses to each of the SPG's points. *See attached* Appendix ("OxyChem Appendix").

[8] SPG Brief at 5 & 7 n.18. The SPG's argument ignores the Special Master's specific direction, at the September 2021 status conference, that there should not be an attempted "gotcha moment by saying [OxyChem] waived [the] argument if, in fact, you know, it's ruled that they are burdensome." *See* **Ex. E** at 55:21-55:24; *see also id.* at 55:12-55:16 ("I'd like to be sure that there's not going to be this argument that you're making that they have waived their objections on burdensome and other issues as a result . . . of getting those objections in.").

to respond further to the RFAs[9] and *prevents* the SPG from serving any additional RFAs on OxyChem. Equity also supports this request: OxyChem sought leave to move for protection as early as September 2021,[10] but was forced to serve responses when, after a meet-and-confer, the SPG's stance was: "respond or object," "then we will review and move to compel."

### B.   The RFAs Are Oppressive and Unduly Burdensome By Sheer Number.[11]

The sheer number of requests served—449—warrants a protective order.[12] "Courts routinely disallow [RFAs] that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive." *Robinson v. Stanley*, No. 06 C 5158, 2009 WL 3233909, at *2 (N.D. Ill. Oct. 8, 2009); *see also Tamas v. Family Video Movie Club, Inc.*, 301 F.R.D. 346, 346 (N.D. Ill. 2014) (460 requests); *Joseph L. v. Conn. Dep't of Child. & Fams.*, 225 F.R.D. 400, 403 (D. Conn. 2005) (163 requests with subparts on most); *Dassault Sys., SA v. Childress*, No. 09-10534, 2013 WL 12181775, at *5 (E.D. Mich. Sept. 5, 2013) (596 requests); *Phillips Petrol. Co. v. N. Petrochem. Co.*, No. 84 C2028, 1986 WL 9186, at *1 (N.D. Ill. Aug. 19, 1986) (437 requests). Although the SPG cites to *Stokes*, 2013 WL 6056886, for the proposition that "complex lawsuits with multiple parties require more RFAs,"[13] *Stokes* also found "the sheer volume" of RFAs (in that case, 1059) to be "unduly burdensome and oppressive," warranting a

---

[9] Without such an order, OxyChem is required under Rule 26(e) to supplement its RFA responses should "additional or corrective information" come to light. *See also* **Ex. C** at 8 ¶ 4 ("These Requests shall be deemed continuing and supplemental answers shall be required . . . .").
[10] Dkt. 1504 & 1922.
[11] If the Special Master concludes the RFAs are oppressive in their volume, then in the "interest of judicial economy," the Special Master may decline to review each of those RFAs. *Stokes*, 2013 WL 6056886 at *2 & 3 (because the "sheer volume" of RFAs was "unduly burdensome and oppressive," declining in "the interest of judicial economy," "to determine the propriety of each of Defendant's 1059 requests for admission in the 162-page submission.").
[12] *See* **Ex. C**.
[13] SPG Brief at 7 n.18.

protective order.[14] *Id*. at *2-3. Nor is the SPG's "RFA-per-party ratio"[15] argument persuasive. Following that argument's rationale would mean, for example, that the SPG Defendants are *each* entitled to 40 fact-witness depositions, rather than 40 *per side* as mandated. *See* Dkt. 1167 at 4.

###   C.    The RFAs Are Oppressive and Unduly Burdensome By Form and Subject.

The framing of SPG's RFAs—including the instructions accompanying them—also renders the RFAs oppressive and unduly burdensome, because they convert the Requests into *449* interrogatories—violating case limitations on the number of interrogatories.

####    *1.    The Instructions Substantially Increase OxyChem's Burden.*

Instruction 3 to the SPG's RFAs demands OxyChem "state the reasons" for any denial, impermissibly turning the RFAs into contention interrogatories. *Compare* **Ex. C** at 7 ¶ 3, *with United Coal Cos.*, 839 F.2d at 967 ("a denial is a perfectly reasonable response"); *see also id.* at 968 (answers and proposed amended answers "illustrate[d] the difference . . . between [RFAs] and . . . interrogatories"). The SPG said it would *withdraw* Instruction 3, yet Appendix A to its brief demonstrates it *still* improperly *demands* OxyChem explain denials. *See, e.g.*, SPG Brief at App. A, p. 1 ("Impossible to decipher if denial is based on substance of request or stated objections."). Rule 36 does not require parties to *explain* their denials, *United Coal Cos.*, 839 F.2d at 968, and the Court has ruled against answering contention interrogatories before fact discovery ends. *See* Dkt. 1250. The SPG's continued insistence on explanations is harassing, oppressive, and renders the RFAs unduly burdensome.

---

[14] The "2,826 RFAs" referenced as not excessive in the parenthetical of SPG's citation to *Stokes*, SPG Brief at 7 n.18, comes from a different case distinguished by *Stokes*: *United States ex rel. Minge v. Tect Aerospace, Inc.*, No. 07-1212-MLB, 2012 WL 1631678 (D. Kan. May 8, 2012). In *Tect Aerospace, Inc.*, the RFAs were framed into "bite-sized pieces of information," *id.* at *4, unlike the SPG's RFAs, which are rife with compound and assumed facts.
[15] *See* SPG Brief at 7 n.18.

### 2. *The RFAs Are Improperly Compound, Not Readily Admitted or Denied, and Require Qualifications.*

The Requests' compound nature[16] impermissibly converts them into 449 *interrogatories*. Requests should be "in simple and concise terms" so that they "can be denied or admitted with an absolute minimum of explanation or qualification." *United Coal Cos.*, 839 F.2d at 967-68 (quotation marks omitted). Each Request "should be such that it could be answered yes, no, the answerer does not know, or a very simple direct explanation given as to why he cannot answer." *Id*. at 968 (same); *see also Ebert v. Township of Hamilton*, Civ. No. 15-7331, 2016 WL 6778217, at *4 (D.N.J. Nov. 15, 2016) ("A request for admission should be such that it could be answered yes or no." (quotation marks omitted)). It "should not state 'half a fact' or 'half-truths' which require the answering party to qualify responses." *Dubin v. E.F. Hutton Grp., Inc.*, 125 F.R.D. 372, 375-76 (S.D.N.Y. 1989) (quotation marks omitted). Even where a request *appears* to seek a "simple 'yes or no'," if in fact it is "significantly more complicated," it is improper. *See Merck Sharp & Dohme Corp. v. Pfizer Inc.*, No. 19-2011, 2021 WL 2646943, at *3 (E.D. Pa. June 28, 2021) (declining to compel answers to nearly 320 RFAs asking party to "confirm or deny whether [its] trade secrets appear on the population of [defendant's] documents"). Because the SPG's RFAs are improper under this standard, responding is oppressive and unduly burdensome, and the Special Master should relieve OxyChem from any further obligation to respond.

### 3. *The RFAs Involve or Assume Disputed Facts.*

Admissions are also improper when they embed an implicit concession not contained on

---

[16] For example, many Requests use the term "OxyChem," defined to incorporate unidentified "predecessors . . . including, but not limited to," *ten other companies*. *See* **Ex. C** at 5-6 ¶ 35. In *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018), the Court found the term "Turkey," which was defined as "the Republic of Turkey" to be vague and ambiguous because it could be understood to "include all employees, officials and agents of the Republic."

the face of the matter inquired about.[17] *See R.C. Olmstead, Inc. v. CU Interface, LLC*, No. 5:08CV234, 2008 WL 11381842, at \*3, 5 (N.D. Ohio Dec. 12, 2008). "[R]equests for admission are intended to be a 'surgical device' to 'eliminate issues over facts that are not in dispute.'" *Merck Sharp & Dohme Corp.*, 2021 WL 2646943, at \*3 (quoting *Solomon v. East Penn. Mfg. Co.*, No. CV 16-6484, 2018 WL 1740530, at \*2 (E.D. Pa. Apr. 11, 2018)). An RFA is improper if it involves facts as to which there is fundamental disagreement. *See Republic of Turkey*, 326 F.R.D. at 400 (denying motion to compel on two grounds, including that "the RFAs in dispute are not consonant with the purpose of Rule 36" because—rather than "seek[ing] to establish admission of facts about which there is no real dispute"—"they seek information as to fundamental disagreement at the heart of the lawsuit"). The SPG's pursuit of admissions embedding or involving *known* disputed facts is nothing more than harassment and an attempt to impermissibly *bully* OxyChem into making an admission.

### 4. The RFAs Improperly Call for Interpretations of Documents, Legal Conclusions, and Disputed Scientific Principles.

RFAs that "call for interpretation of documents, letters, communications, statutes, and requests for opinions, conclusions of law, conjectures, or suspicions are objectionable."[18] *Pittsburgh Hotels Ass'n v. Urban Redev. Auth.*, 29 F.R.D. 512, 513 (W.D. Pa. 1962). And RFAs inquiring as to every fact contained in a particular document are improper. *See Richard v. Dignean*, 332 F.R.D. 450, 463 (W.D.N.Y. 2019) (an answering party "should not be required to go through the document and assume the responsibility of determining what are 'relevant matters of fact' and then decide what admissions he should make"); *United States v. Watchmakers of Switzerland Info. Ctr.*, 25 F.R.D. 197, 200 (S.D.N.Y. 1989) ("It is unfair to require defendant . . .

---

[17] *See, e.g.*, OxyChem Appendix at RFAs 73, 100, 101, & 218.
[18] *See, e.g.*, OxyChem Appendix at RFAs 235, 237, 256, & 257.

to pick out and describe each fact [in a document] and make an admission or denial as to each. Similarly, it is burdensome for defendant to determine at its own risk the statements or statistical information."). A document "has both context, the writer's intent, and other subjective variables, which cannot be legitimately reduced to matters of fact, of mixed fact and law, or of opinion." *Lakehead Pipe Line Co. v. Am. Home Assurance Co.*, 177 F.R.D. 454, 457 (D. Minn. 1997).

It is also impermissible to seek admissions as to legal conclusions.[19] *Gov't. Emps. Inc. Co. v. Benton*, 859 F.2d 1147, 1148 n.3 (3d Cir. 1988). This includes requests that seek admissions regarding obligations to comply with statutes. *R.C. Olmstead, Inc.*, 2008 WL 11381842 at *3, 5. An admission "may not be applied to a controverted legal issue lying at the heart of the case," *Pittsburgh Hotels Ass'n*, 29 F.R.D. at 513, because it is "inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party has simply attached to operative facts." *Disability Rts. Council of Greater Wash. v. Wash. Metro. Transit Auth.*, 234 F.R.D. 1, 1, (D.D.C. 2006). Thus, "requests for admissions of law which are related to the facts of the case, are considered inappropriate." *Lakehead Pipe Line Co.*, 177 F.R.D. at 458; *see also Vernet v. Serrano-Torres*, No. 00-2559(DRD), 2013 WL 12350557 at *1 (D.P.R. Jan. 30, 2013) (holding improper requests as to causation, mitigation of damages, and interpretation of federal regulations).

Finally, the SPG has served dozens of RFAs regarding scientific evidence contained in hearsay studies or documents published by third parties.[20] These include requests that OxyChem admit isolated statements from publications funded *by the SPG*, and even requests that OxyChem

---

[19] *See, e.g.*, OxyChem Appendix at 195, 196, 218, & 221.
[20] *See, e.g.*, OxyChem Appendix at 148; **Ex. C** at 10-11 (RFAs 22-24); *id.* at 11-12 (RFAs 26-27).

make broad admissions about the chemical composition of the *SPG Defendants' own products*.[21]

But requests may not seek "opinions and interpretations of scientific journal articles and studies by individuals other than plaintiff's retained experts." *Piskura v. Taser Int'l*, No. 1:10-cv-248, 2011 WL 6130814, at *4 (S.D. Ohio Nov. 7, 2011).

## II. THE SPECIAL MASTER SHOULD DENY THE SPG'S MOTION TO DETERMINE SUFFICIENCY OF OXYCHEM'S RESPONSES.

If the Special Master declines to issue a protective order, then he must consider the propriety of *both* the SPG's request *and* OxyChem's response, for each at-issue RFA. *See Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y. 1992) (A "threshold matter" in deciding sufficiency of RFA responses is court's determination of "whether the statements set forth in a request [] satisfy . . . Rule 36.").[22] For any improper requests, SPG's Motion must be denied. *In re: Certain Consol. Zoledronic Acid Cases*, No. 2:12-CV-3967 SDW-SCM, 2015 WL 12844402, at *1 (D.N.J. Mar. 16, 2015) (declining to compel RFAs "improperly used as discovery devices

---

[21] *See, e.g.*, **Ex. C** at RFAs 42, 43, 44, & 47 (seeking admissions regarding statements in SPG-funded publication); *id.* at RFA 79 (requesting admission "that PCB-14 is not found in Aroclor products," which were produced and marketed only by SPG Defendant Pharmacia LLC throughout a four-decade period).

[22] *But see Kendrick v. Sullivan*, No. 83-3175(CRR), 1992 WL 119125, at *1 (D.D.C. May 15, 1992) (concluding—in a "long-standing, complex case": "Given the tremendous number of responses with which the defendant takes issue, it is impossible to consider them individually . . . ."). In *Kendrick*, as here, "even defendant did not attempt to plead the motion with particularity," and instead grouped his complaints about the responses into "general categories" and then provided a "'summary chart' listing which questions are deficient under which categories." *Id*. The Court found the categories "vague, confusing, and overlapping." *Id*.

    Similarly, the SPG's style of addressing its issues is "vague, confusing, and overlapping": the SPG Defendants cherry-pick single objections included within various responses, without attempting to offer a fulsome analysis of the response (which would frequently if not completely negate the need for the Special Master to consider the SPG's argument); they cite specific responses that they claim various sections of their brief relate to, but then list that same complaint for a much larger number of responses in their "Appendix A," making it difficult to determine exactly which complaints relate to which responses; and they even cite to various responses that they have conceded—after prompting—they do not seek relief on. *See* **Ex. A**.

and not to narrow issues"); *see also Hayes v. Bergus*, No. 2:13-CV-4266-SDW-SCM, 2015 WL 5666128, at *7 (D.N.J. Sept. 24, 2015) (improper RFAs are "not subject to enforcement"). The SPG's RFAs are rife with deficiencies, and OxyChem's responses are more than sufficient.

A.   **The SPG's *Ad Nauseam* Attacks on OxyChem's Objections Ignores the *Substantive Answers* for *92* of the 99 RFAs at Issue.**

The SPG's cherry-picked overview of objections—which fails to provide a single *full* recitation of an OxyChem response—is a nullity, and certainly not a basis for deeming admitted, or ordering the amendment of, "[a]ll the requests to which OxyChem proffers" objections.[23] For 92 of the 99 RFAs at issue, even if *all* of OxyChem's objections are overruled, OxyChem's responses are *not* thereby rendered insufficient, because OxyChem has *also* provided a denial, partial denial/admission, or other substantive answer. *See, e.g.*, *Republic of Turkey*, 326 F.R.D. at 400 (because plaintiff denied each of the RFAs at issue "before stating its objections to each," no amended responses were needed); *Disability Rts. Council of Greater Wash.*, 234 F.R.D. at 4-5 (there was "no need to consider the appropriateness of [plaintiffs'] objection" to RFA where "plaintiffs did in fact answer" by stating they could not admit or deny the request); *Lakehead Pipe Line Co., Inc.*, 177 F.R.D. at 457 (D. Minn. 1997) (while responses included objections, they also "included an admission, or a denial, so that the Defendants were not deprived of a competent response").

The SPG's argument that OxyChem's objections are not sufficiently specific, because

---

[23] SPG Brief at 7, 12. It is unclear exactly *which* RFA responses the SPG takes issue with based on objections alone. In footnote 16, the SPG indicate they challenge the sufficiency of 32 responses based on OxyChem's objections. SPG Brief at 7 n.16. But in footnote 17, the SPG assert that "OxyChem has littered each of its responses identified in the Motion with multiple impermissible objections." *Id*. at 7 n.17. Further, Appendix A to the brief lists "each response [the SPG] is challenging and *details the reason* why each response is insufficient." *Id*. (emphasis added). Appendix A complains about alleged "boilerplate" objections for *all but three* RFAs.

"[e]ach objection asserted must have a specific, good-faith basis,"[24] is also misleading.[25] OxyChem lists the specific objections that apply to each RFA, and explains in detail the grounds for and caselaw supporting its objections at the beginning of its responses. *See* **Ex**. **F** (OxyChem Amended Responses) at 1-8 ("Objections to Requests for Admission"). To include them in detail for each of the SPG's 449 RFAs would greatly lengthen OxyChem's already 183-page response.

At the same time the SPG asserts OxyChem should have provided *more information* about its objections, the SPG Defendants also complain that OxyChem has *too many* objections. SPG Brief at 10 ("OxyChem cites to multiple boilerplate objections for single requests."). But nearly every RFA is objectionable in multiple ways, requiring OxyChem to assert multiple objections to preserve those objections for trial. *See* 8B WRIGHT, MILLER & MARCUS, *supra*, §2262 (if a party "thinks a request is improper," that party is "required to object thereto"; failing to object may result in waiver); *see also S. Yuba River Citizens League v. Nat'l Marine Fisheries Svc.*, No. Civ. S-06-2845 LKK/JFM, 2008 WL 11400759, at *12 (E.D. Cal. Dec. 23, 2008) (admissions are "subject to the ordinary rules regarding hearsay").

Perhaps the most telling of the SPG Defendants' arguments about OxyChem's objections is that they "make it difficult for the SPG to obtain clean admissions."[26] This argument wrongly implies, first, that OxyChem is not *allowed* to qualify admissions or denials (but, as explained

---

[24] The SPG complains OxyChem's objections fail to detail "what terms are vague," "how these requests are improper contention interrogatories," and "what disputed scientific principles" are hidden. SPG Brief at 10-11.

[25] SPG Brief at 7. The sole case SPG cites on this point discusses interrogatories—not requests for admission. *See* SPG Brief at 6 & 8 (incorrectly citing *Josephs v. Harris Corp*., 677 F.2d 985, 992 (3d Cir. 1982), as a case from E.D. Pa.); *Josephs*, 677 F.2d at 992 ("[T]he mere statement by a party that the *interrogatory* was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection *to an interrogatory*." (emphasis added)).

[26] SPG Brief at 11.

below, Rule 36 expressly permits qualifications) and, second, that the statements to which OxyChem has objected would otherwise have been admitted. In fact, with or without objections, *none* of the 99 RFA responses challenged by the SPG constitute unqualified admissions. Even if the Special Master overruled OxyChem's objections, the SPG would not get the "clean admissions" they believe they are entitled to. The SPG's wishful thinking otherwise demonstrates that the SPG's Motion is fueled by and based upon their *factual disagreement* with OxyChem—which should be resolved by trial, not a discovery motion.

> **B.     Rule 36 Expressly Allows OxyChem's Decision to Rest on Objections For Seven of the 99 RFAs at Issue.**

For just seven RFAs (RFAs 45, 129, 130, 131, 132, 150, and 244), OxyChem rests on its objections to the SPG's requests. Rule 36 expressly allows this. *See* FED. R. CIV. P. 36(a)(5) (subsection titled "*Objections*"); 8B WRIGHT, MILLER & MARCUS, *supra* § 2259 ("A party on whom a request for admission has been served has a variety of responses available," including: "The party may object . . . ."); *id.* § 2262 ("An objection will [] lie if a request is so defective in form that an answer to it cannot be required."); *see also Smith v. Director's Choice, LLP*, No. 15-81 (JBS/AMD), 2018 WL 11356705, at *3 (D.N.J. 2018) (denying motion to compel where response consisted only of objections sustained by court).

> **C.     OxyChem's Substantive Answers Comply with Rule 36 and Caselaw.**

If OxyChem's RFA objections are sustained, then the Special Master need not analyze OxyChem's RFA answers. *Ebert*, 2016 WL 6778217, at *4 (magistrate judge did not abuse discretion in sustaining objection that RFA was "vague, overly broad and [] not relevant," and therefore it was unnecessary to consider propriety of *answer*). But even if those objections are overruled, the SPG's Motion should still be denied because OxyChem's answers are sufficient.

Rule 36(a)(4) delineates the requirements for an answer, *id.*:

> *Answer*. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonably inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

FED. R. CIV. P. 36(a)(4). OxyChem's answers satisfy this rule.

### 1. OxyChem Properly Qualified Admissions to RFAs 120 and 197.

Consistent with Rule 36(a)(4), OxyChem properly qualified admissions to RFAs 120 and 197. *See United States v. Raytheon Co.*, No. 08-10341-DPW, 2013 WL 5348571, at *5 (D. Mass. Sept. 23, 2013) (qualification addressing "a potentially problematic ambiguity" is proper).

RFA 120 asked OxyChem to "Admit that the Lister Plant was located adjacent to LPR."[27] OxyChem's response, in its entirety, was:

> Objection 1, 2, and 3. As noted in response to other requests, the SPG fails to define what it means by the term "adjacent." Subject to these objections, **OxyChem admits that the Lower Passaic River flows along the riverside boundary of the property at 80-120 Lister Avenue where the Lister Plant is located.**

*See* **Ex**. **F** at 60-61 (emphasis added). OxyChem fairly responded to the request while addressing the ambiguity in "adjacent."[28]

RFA 197 asked OxyChem to "Admit that Maxus performed OxyChem's obligations on OxyChem's behalf under the 1984 Administrative Consent Order,"[29] but failed to provide a time

---

[27] *See* **Ex**. **F** at 60-61.

[28] The specific relative locations of the former Lister Site, the Lower Passaic River, and the boundary between the two are both (i) important, necessitating OxyChem's qualification here and (ii) so basic they would likely qualify for judicial notice. Yet the SPG has raised RFA 120 with the Special Master no less than five times, demonstrating its purpose to use its RFAs as a tool to delay by litigating every conceivable issue. *See, e.g.*, Dkt. 1703 at 3; Dkt 1896 at 5.

[29] *See* **Ex**. **F** at 89.

limitation or otherwise recognize OxyChem's lack of relationship with or obligation to the Diamond Alkali Superfund Site or the Lister Plant until its purchase of Diamond Shamrock Chemicals Company's stock in *1986.* "A responding party cannot simply admit or deny [an RFA] that refers to multiple time periods, because their response might be different for those different time periods." *Smith v. Dir.'s Choice, LLP*, No. CV 15-81 (JBS/AMD), 2018 WL 11356705, at *3 (D.N.J. Jan. 17, 2018). Nevertheless, OxyChem responded fairly, with qualifications addressing the request's problematic verbiage:

> Objection 1, 2, 3, 4, 5, 7, and 8. This request is compound, undefined by time, and calls for a legal conclusion. The 1984 Administrative Consent Order was signed by DSCC before the 1986 Stock Purchase Agreement. During that period, OxyChem had no obligations at all under the 1984 Consent Order. Subject to these objections, ***OxyChem admits Maxus was obligated to and did perform obligations under the 1984 Administrative Consent Order because it was a successor to Diamond Shamrock Chemicals Company when the Order was entered and was obligated, as DSCC's successor, to perform it. After the 1986 Stock Purchase Agreement, OxyChem admits Maxus continued to perform the 1984 Administrative Consent Order pursuant to its contractual obligation to indemnify and hold harmless OxyChem against all environmental liabilities arising from the Lister Plant.***

*See* **Ex**. **F** at 89 (emphasis added).

### 2.    *OxyChem Properly Denied Nearly Thirty, and Properly Provided Partial Admissions/Denials to Roughly Half of the RFAs at Issue.*

OxyChem denied 28 of the 99 RFAs at issue.[30] OxyChem's denials, including those qualified, are an appropriate RFA answer and sufficient on their face. *See United Coal Cos.*, 839 F.2d at 967 (3d Cir. 1988) ("Where, as here, issues in dispute are requested to be admitted, a denial is a perfectly reasonable response."); *Herrera*, 143 F.R.D. at 551 (denying motion for

---

[30] OxyChem denied RFAs 39, 73, 123, 124, 125, 126, 128, 148, 152, 153, 156, 166, 169, 221, 235, 238, 245, 262, 263, 264, 267, 279, 280, 281, 282, 289, 419, & 423. In addition, before making additional amendments to certain RFAs, *see* **Ex. B**, RFAs 332, 333, & 367 (not on Appendix A) constituted denials. These three RFAs are now technically partial admissions/denials and are included in that count, below.

determination of sufficiency of RFA responses, concluding that "it would be premature to assess the sufficiency of [the] denials"). Indeed, "the use of only the word 'denied' is often sufficient." *United Coal Cos.*, 839 F.2d at 967; *see also id.* at 967 (where party on whom RFAs were served denied each of them, Rule 36(a)'s requirement of "a statement or reasons why the party cannot truthfully admit or deny has no application").

Roughly half (52) of the RFA responses at issue constitute partial admissions and denials.[31] This, too, is an appropriate RFA response. *See* FED. R. CIV. P. 36(a)(4) ("[W]hen good faith requires that a party . . . deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."); 8B WRIGHT, MILLER & MARCUS, *supra* § 2260 ("If good faith requires that a party qualify its answer or deny only a part of the requested matter, it must specify so much of the request as is true and deny only the remainder.").

The fact that SPG dislikes OxyChem's denials and partial denials/admissions is irrelevant. *Cf. Richard*, 332 F.R.D. at 462 ("[W]hile Plaintiff 'may disagree with these responses, that disagreement does not render the responses inadequate'" (quoting *Bernstein v. Principal Life Ins. Co.*, No. 09 Civ. 4925(CM)(HBP), 2010 WL 4922093 at *4 (S.D.N.Y. Dec. 2, 2010)); *Lakehead Pipe Line Co., Inc.*, 177 F.R.D. at 458 ("Rule 36(a) does not authorize a Court to prospectively render determinations concerning the accuracy of a denial . . . .").

### 3.     *For Just 10 RFAs, OxyChem was Unable to Admit or Deny the Request.*

For ten of OxyChem's 99 RFA responses, OxyChem stated it was unable to admit or

---

[31] The 52 RFA responses at issue that constitute partial admissions and denials are: 15, 75, 88, 93, 94, 96, 100, 101, 103, 106, 107, 109, 121, 195, 196, 210, 211, 212, 213, 214, 218, 224, 231, 237 (not in Appendix A), 252, 253, 254, 255, 256, 257, 261, 332 (as amended in **Ex. B**), 333 (same), 337, 338, 340, 341, 343, 345, 347, 349, 351, 353, 355, 357, 359, 361, 363, 365, 366 (not in Appendix A), 367 (not in Appendix A, as amended in **Ex. B**), & 375.

deny the request.[32] This type of response is—like OxyChem's other responses—expressly contemplated by Rule 36. *See* FED. R. CIV. P. 36(a) ("The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."); *In re: Valeant Pharm. Int'l, Inc. Secs. Litig.*, 2021 WL 2164108, at *7 ("[T]he plain language of Rule 36" gives a party "the option of answering that he or she cannot truthfully admit or deny.").

While a "general statement" of inability to admit or deny, "*unaccompanied by reasons*, will be held an insufficient response,"[33] Rule 36 "requires only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable." FED. R. CIV. P. 36 Advisory Committee Note to 1970 Amendment. "Rule 36 requires only that the party state that he has taken these steps." *Id*. And even where an answering party's *form* of answer does not "literally comply" with rule 36(a)'s requirements, a court may still deem a party's answer responsive and sufficient. *See United States v. Lorenzo*, No. 89-6933, 1990 WL 83388, at *2 (E.D. Pa. Jun. 14, 1990) (finding responsive answer claiming "lack of knowledge or information sufficient to form a belief as to the truth of the averment"); *see also Kendrick*, 1992 WL 119125, at *5 (where plaintiffs made "a diligent, good faith effort" to indicate "what facts they could fairly admit and what facts they could not," and defendant "was not misled or prejudiced," response was permissible).

For all 10 RFAs that OxyChem was unable to admit or deny, OxyChem explained *why* it

---

[32] The RFAs that OxyChem could not admit or deny are: 82, 149, 155, 159, 160, 178, 183, 188, 193, and 292.

[33] 8B WRIGHT, MILLER & MARCUS, *supra* § 2261.

was unable to do so. OxyChem also explained the "reasonable inquiry" it made.[34]

### D. OxyChem's Answers Are Not "Evasive".

In the seven pages the SPG dedicate to arguing OxyChem's answers are "evasive," the SPG focus once again on cherry-picked objections, ignoring in most cases OxyChem's *actual answer*.[35] For example, the SPG takes issue with OxyChem's objections regarding the terms "waste effluents," "discharges," "hazardous substances,"[36] as well as "pathways,"[37] "historic fill,"[38] "operated," "managed," "contaminated," and "clean up"[39]—and argues that OxyChem attempts to avoid "direct admissions or denials" by qualifying responses to RFAs that have these terms. But a party is not "evasive" when it qualifies an answer relating to a term going to a "key legal issue." *See Tri-State Hosp. Supp. Corp. v. United States*, 226 F.R.D. 118, 138 (D.D.C. 2005) ("nothing 'evasive'" about qualified responses where the "issue of 'payment' [was] a key legal issue in the underlying case"). As the Court in *Tri-State Hosp. Supp. Corp.* explained: "[S]ince the issue of payment is clearly at issue in this litigation, the government should be able to explain its position and *not be bullied into an admission* . . . ." *Id.* (emphasis added). Moreover, the SPG's characterization of OxyChem as "parsing plain words" or "feigning ignorance" is disingenuous. Virtually every SPG Defendant objected to *these same terms* in their written discovery responses. *See, e.g.*, **Ex. G** (Givaudan Fragrances Corporation's Responses to Standard Set of Interrogatories) at No. 14 (". . . Defendant objects to the Interrogatory because it is vague, as the terms 'raw materials,' 'by products,' 'waste generated,' 'waste disposal

---

[34] *See* **Ex. F** at 20 n.2 (explaining use of phrase "reasonable inquiry" in OxyChem's responses).
[35] *See* SPG Brief at 12-19. Many of the responses the SPG takes issue with, for example, contain straightforward denials. *See, e.g.*, RFAs 123-126.
[36] SPG Brief at 13.
[37] *Id.* at 14.
[38] *Id.* at 15.
[39] *Id.* at 18.

practices,' and 'discharge pathways' are undefined . . . .").[40]

By OxyChem's denials and partial denials/admissions, the SPG is on notice that the issues it raises—about discharges and waste handling; Chemicaland; and OxyChem's purported "knowledge"—are disputed. These responses effectuate one of Rule 36's purposes. *See Lakehead Pipe Line Co., Inc.*, 177 F.R.D. at 457 ("[B]y the Plaintiffs' Response, the Defendants are on notice that their interpretation of a given document is inconsistent with the Plaintiffs' [] and, if the document is critical to the case, [] evidence would be required to prove the document's meaning.").

### E.    OxyChem Provided Qualifications and Explanations Where Necessary.

As set forth above, qualifications are permitted by Rule 36 and case law where necessitated by the RFAs themselves. And they are "especially appropriate" where the RFA at issue goes "to the heart of the issue" in the case. *Raytheon Co.*, 2013 WL 5348571, at *5. Although the SPG contends OxyChem has provided "extraneous information," these explanations are necessary and proper qualifications.[41]

#### 1.    OxyChem Properly Qualified Answers About Contaminants of Concern.

The SPG Defendants complain that for ten RFAs—RFAs 88, 93, 94, 96, 100, 101, 103, 106, 107, and 109—OxyChem "adds its own narrative to requests seeking confirmation that [the

---

[40] Such objections are undoubtedly *more* important in RFA responses. "Admissions are conclusively binding on the parties at trial, and carry more weight than a witness statement, deposition testimony, or interrogatories, because once made, admissions cannot be countered by other evidence." *McNeil v. AT&T Universal Card*, 192 F.R.D. 492, 494 n.4 (E.D. Pa. 2000) (citing *Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund of Phila. & Vicinity*, 850 F.2d 1028, 1036 (3d Cir. 1988)).

[41] Moreover, the SPG Defendants themselves asked OxyChem to "state the reasons for [any] objection or denial." **Ex**. **C** at 7 ¶ 3 (emphasis added). *Contra United Coal Cos.*, 839 F.2d at 967 ("the use of only the word 'denied' is often sufficient").

eight COCs at issue] have been detected at the Lister Plant property." *See* Dkt. 1945-3 at 20-21. These RFAs ask OxyChem to admit that certain contaminants were identified, found, or measured in "soil samples," soil, groundwater, or "sediment cores collected from the Phase I Removal Area."[42] These Requests used broad, non-surgical language where precision is particularly important. At trial, *all parties* will use the precise locations, concentrations, and other details of sampling results to support claims and defenses.[43]

OxyChem provided partial admissions/denials and explained context necessitated by the SPG's Requests. *See* FED. R. CIV. P. 36(4) ("[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."). These responses fairly met the substance of the requests. *See*, *e.g.*, *Rowe v. E.I. DuPont De Nemours & Co.*, Nos. 06-1810-RMB-AMD, 06-3080-RMB-AMD, 2008 WL 4514092, at *4 (D.N.J. Sept. 30, 2008) (RFA responses that "contain[ed] objections, then an admission in part with a qualification, then a denial of further implications," were sufficient under Rule 36); *see also id.* at *5 (concluding that, "[a]lthough DuPont qualified its responses to RFAs 64 and 66 by referring to additional studies on the matter, the Court finds that the responses are sufficient under FED. R. CIV. P. 36.").

---

[42] For example, RFA 94 asks OxyChem to admit "mercury has been found on the Lister Plant in soil"; RFA 100 asks it to admit "lead has been found on the Lister Plant in groundwater"; and RFA 109 asks OxyChem to admit "copper was measured in sediment cores collected from the Phase I Removal Area."

[43] OxyChem previously presented examples of this methodology in support of its Chemical List Motion. *See, e.g.*, Dkt. 946-8 (2005 Hexcel Presentation to EPA) at HEXLPROD0012397 (Defendant Hexcel arguing to EPA that despite PCB detections in soil on Hexcel's property, the location, depth, and concentrations of those PCB detections purportedly show no contribution to the Passaic River); *see also* Dkt. 958 (4-24-2020 Opinion of Special Master) at 10 (the "ability to demonstrate a nexus between certain operation or properties and the discharge of ROD COCs into the River, which is critical to proving Plaintiff's claim . . . will be further advanced at the expert stage of this case").

### 2.   *OxyChem Appropriately Qualified Answers Related to Successorship.*

OxyChem's qualified answers to RFAs 218, 221, 224, 237, 244, and 245, which the SPG describes as "specifically about *OxyChem's* successor liability,"[44] are highly appropriate here, where successorship goes to the central issue of who should bear the costs of remediating the Passaic River. *See, e.g.*, *United States v. Abbot Laboratories*, No. 09-CV-4264, 2016 WL 2621669, at *4 (E.D. Pa. Jan. 15, 2016) (holding sufficient response to RFA that included term "non-branded sales aid" and noting that definition of term was not well-defined and "may be an ultimate issue in the case"; "Because of the significance of the definition, Defendant 'should be able to explain its position [through other methods of discovery] and not be bullied into an admission it does not want to make.'" (quoting *Tri-State Hosp. Supply Corp.*, 226 F.R.D. at 138). Whether OxyChem is the *only* successor liable for DSCC's Lister-Plant operations remains an open and important question.[45]

The SPG's reliance on four exhibits—all documents predating the filing of this case[46]—to support its Motion is an improper attempt to dispute the *accuracy* of OxyChem's RFA responses. *See Rowe*, 2008 WL 4514092, at *4 n.5 ("Under FED. R. CIV. P. 36, the Court may determine the **sufficiency** of the responses, *i.e.*, whether the responses comply with the requirements of Rule 36," but "'the right to challenge the '**sufficiency**' of a response' is not 'the

---

[44] *See* Dkt. No. 1945-3 at 21-22 & 21 n.35.

[45] *See* Dkt. 1105 (Sept. 11, 2020 Order) at 5 ("OxyChem may raise the issue of Maxus's successor liability in a subsequent motion . . . ."); *see also N.J. Dep't of Envtl. Prot. v. Occidental Chem. Corp.*, Nos. A-2036-17, A-2038-17, 2021 WL 6109820, at *4 (N.J. Super. Ct. App. Div. Dec. 27, 2021) ("Maxus shared the continuity of management, personnel, physical locations, assets, and general business operations with [Old Diamond], as well as a continuity of ownership and shareholders.").

[46] *See* SPG Brief at 21-22 & Brief Exhibits O-R.

equivalent of the right to challenge the veracity of a denial.'" (quoting *Foretich v. Chung*, 151 F.R.D. 3, 5 (D.D.C. 1993))). The SPG Defendants may rely on these exhibits at trial if they wish (subject to the Rules of Evidence), but RFAs are not the proper vehicle for resolving disputed issues. *See Lakehead Pipe Line Co., Inc.*, 177 F.R.D. at 458 ("Rule 36(a) does not authorize a Court to prospectively render determinations concerning the accuracy of a denial."); *see also United States v. Operation Rescue Nat'l*, 111 F.Supp.2d 948, 968 (S.D. Ohio 1999) ("a party may not seek a pre-trial determination of the accuracy of an opponent's denial of a request for admission"); *Herrera*, 143 F.R.D. at 551 (holding, where plaintiff offered "a variety of documents" to claim denials were "unjustified," that "it would be premature to assess the sufficiency of these denials without giving the [] defendants the opportunity to submit their complete evidence to the Court on a motion for summary judgment or at trial").[47]

Moreover, whether Maxus is also a successor to DSCC's CERCLA liabilities is a question of law and not a proper RFA subject. *See Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007) (state decision "did not decide the *substantive question of law*. . . – i.e., whether . . . GCI is deemed a successor in interest"); *see also Beazer E., Inc. v. Mead Corp.*, 34 F.3d 206, 212 (3d Cir. 1994) (imposition of CERCLA liability on a successor is question of federal law); *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, No. 8:06CV458, 2009 WL 1616629, at *2 (D. Neb. June 4, 2009) ("Even though a request may be phrased to appear factual, if it encroaches on legal turf, . . . the request will be seen as seeking a legal conclusion and cannot be compelled."); *id.* at *2 (whether "a patent is valid calls for a legal conclusion although its answer may depend upon factual inquiries").

---

[47] To the extent the SPG Defendants rely on *any* of their exhibits to challenge the *accuracy* of OxyChem's RFA responses, this is improper.

3.   *OxyChem Appropriately Qualified Answers Related to the Batson allocation process and "Cooperating Parties Group" (aka "CPG").*

The SPG Defendants assert OxyChem's qualified responses to RFAs 332, 333, and 375 provide "extraneous information."[48] Yet the SPG's argument for this assertion—contending that OxyChem's alleged "*lack of cooperation* will be considered in the equitable allocation"[49]— highlights the precise embedded assumption that required OxyChem's qualification in the first place and illustrates the degree to which this RFA goes to a contested issue. The use of qualifications in responding to these RFAs is "especially appropriate." *Raytheon Co.*, 2013 WL 5348571, at *5; *see also Bernstein*, 2010 WL 4922093 at *4 ("Although defendant may disagree with these responses, that disagreement does not render the responses inadequate.").

**F.   If the Special Master Finds Any of OxyChem's Responses Insufficient, the Proper Relief is to Order OxyChem to Amend the Responses.**

"An order deeming matters admitted is a 'severe sanction.'" *Kendrick*, 1992 WL 119125, at *6 (quotation marks omitted). Cases deeming RFAs admitted are distinct from the circumstances here, where OxyChem has in good faith responded to *449* RFAs—many of which are vague, compound, or otherwise improper. *See, e.g.*, *Chao v. Doyle*, No. 05-2264, 2008 WL 11518765, at *1 (D.N.J. Oct. 20, 2008) (granting motion to deem RFAs as admitted where the defendant "never responded," "all of the [RFAs] complied with the scope and form requirements of Rule 36," and defendant admitted "he had never responded"). *Compare Herrera*, 143 F.R.D. at 549-50 (deeming requests admitted where *no responses* had been given), *with id.* at 551 (where defendants "did offer an explanation . . . principles of equity prevent[ed] the Court from deeming [the] statements admitted"). *Cf. Havenfield Corp. v. H & R Block, Inc.*, 67 F.R.D. 93, 97 (W.D. Mo. 1973) (even where court found *all* RFA responses "nonspecific, evasive,

---

[48] SPG Brief at 22-23 & 22 n.41.
[49] SPG Brief at 23 (emphasis added).

ambiguous and appear[ing] to go to the accuracy of the requested admissions rather than the 'essential truth' contained therein," conditioning admission of RFAs on plaintiff's not filing proper answers later); *Rowe*, 2008 WL 4514092, at *4 (ordering supplemental responses where defendant "neither admit[ted] nor denie[d]" requests).

## CONCLUSION

For the above reasons, OxyChem respectfully requests the Special Master (1) grant a protective order, relieving OxyChem from further responding to the SPG's RFAs and ordering that the SPG Defendants collectively or individually may not serve any additional RFAs, and (2) deny the SPG's Motion (Dkt. 1945) or, alternatively, grant OxyChem leave to serve amended responses.

Dated:  February 24, 2022                Respectfully submitted,

/s/ *John J. McDermott*
John J. McDermott, Esq.
(jmcdermott@archerlaw.com)
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
Tel. (856) 795-2121

GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel. (713) 650-8805
By:     Kathy D. Patrick, Esq.
           (kpatrick@gibbsbruns.com)

*Attorneys for Plaintiff Occidental Chemical Corporation*