UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>       Plaintiff,<br><br>  v.<br><br>21ST CENTURY FOX AMERICA, INC., *et al*.,<br><br>       Defendants. | Civil Action No. 18-11273 (MCA)(LDW)<br><br>**DECISION OF SPECIAL MASTER DENYING THE MOTION FOR A STAY OF PROCEEDINGS AND FOR LEAVE TO FILE SAME BY DEFENDANTS AND THIRD-PARTY DEFENDANTS** |

## **INTRODUCTION**

This matter comes by way of a Motion for a Stay of Proceeding and Leave to File Same, filed by members of the Small Parties Group ("SPG"), the Gordon Rees Group, the CSG Group, and members of the PVSC Liaison Group ("PVSC Group") and the Peter King Liaison Group (together, "Third-Party Defendants"), (collectively, "Moving Parties"), on January 14, 2022, seeking an order granting leave to file a motion for a stay, and approving a stay of proceedings (ECF No. 1943) (the "Motion"). The Motion was directed to the Honorable Madeline Cox Arleo, U.S.D.J. and filed under the judicial preferences of the Honorable Leda Dunn Wettre, U.S.M.J.[1] After consultation with the Court, it was determined that the Special Master will decide the Motion.

The Moving Parties seek a six-month stay of this matter to allow most of the Moving Parties to continue and possibly conclude settlement negotiations with the United States Environmental Protection Agency ("EPA"). Plaintiff, Occidental Chemical Corporation

---

[1] As of January 19, 2022, Judge Wettre's Judicial Preferences provide that "[f]ormal motions, other than motions filed in lieu of an Answer under Federal Rule of Civil Procedure 12 and motions seeking remand that must be filed within thirty days of removal under 28 U.S.C. § 1447(c): [s]hall not be filed without prior leave from this Court."

1

("OxyChem"), opposes the Motion, contending that, *inter alia*, a stay of proceedings is not warranted. For the reasons set forth herein, the Motion is denied.

## STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY

**A.     The EPA Invites PRPs to Participate in Allocation Process**

In 2017, the EPA invited the parties it had identified as potentially responsible parties ("PRPs"), including OxyChem, to participate in an allocation (the "Allocation") of responsibility regarding response costs for the lower eight miles of the Lower Passaic River, referred to by the EPA as Operable Unit 2 ("OU2") of the Diamond Alkali Superfund Site. The EPA hired a third-party allocator, AlterEcho (the "Allocator"), who was tasked with collecting evidence on a confidential basis and providing a recommendation based on an EPA-approved methodology regarding the equitable allocation of responsibility. The Allocator was also tasked with the preparation of a final allocation report, which is currently being used as a basis for the EPA's settlement negotiations with those parties who opted to participate in the Allocation. According to the Moving Parties, the negotiations are with many of the Moving Parties in this litigation.

OxyChem and nine other PRPs declined the EPA's invitation to participate in the Allocation. On June 30, 2018, OxyChem filed suit against Defendants pursuant to Sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9607 and 9613 ("CERCLA") for contribution and recovery of response costs in response to releases and threatened releases of hazardous substances in the Passaic River (ECF No. 1). At the time OxyChem commenced suit, the Allocation was underway.

B.   **Status of Settlement Negotiations**

According to the Moving Parties, many parties to this litigation have settled in principle with EPA. While the specific details of the settlement negotiations remain confidential, a significant number of those parties and the EPA are working to finalize a term sheet and are in advanced stages of discussions over the specific terms of a "cash-out" settlement for response costs, or "in-kind" contributions, associated with the entire 17-mile stretch of the Lower Passaic River Study Area (the "LPRSA")—OU2 and Operable Unit 4 ("OU4"). OU4 includes the 17-mile Lower Passaic River Study Area.

According to the Moving Parties, the scope of settlement under discussion would address all of the claims OxyChem asserted in this litigation against the settling parties, which relate to response costs incurred in OU2 and OU4. The Moving Parties report that they have been given indications from the EPA that any settlement would take the form of a consent decree submitted for approval to the Court. Upon entry, settling parties would file a dispositive motion in this case on the basis of contribution protection for matters addressed in the consent decree.

C.   **Moving Parties' Motion Seeking A Stay**

On January 14, 2022, the Moving Parties filed the Motion. In support of the Motion, the Moving Parties contend that a stay of this litigation is appropriate to permit certain Moving Parties to complete settlement discussions with the EPA, and avoid being unencumbered by the time and costs of litigation and discovery that would later be obviated by a settlement. By way of support, the Moving Parties assert that it is well recognized that Congress sought to encourage PRPs to settle with the government rather than engage in protracted litigation to evade responsibility for response costs, which is reflected throughout CERCLA.

The Moving Parties further argue that a stay is warranted to allow the settlement process

to play out as Congress intended, to avoid duplication of an allocation already carried out by the EPA, to avoid unnecessary costs to the Moving Parties, to limit the scope and expense of the litigation and conserve judicial resources by potentially eliminating most of the Moving Parties.

### D.  OxyChem's Opposition to the Motion

On January 21, 2022, OxyChem filed opposition to the Motion (ECF No. 1953). OxyChem contends that because the Moving Parties were unsuccessful in delaying depositions, they are now trying to circumvent the Special Master's authority to manage discovery by urging the Court to stay not just their own depositions, but all proceedings. Moreover, OxyChem argues that the Moving Parties' hope to be able to settle their liability to the EPA, which is a non-party, at some point in the future, is not grounds to stay this matter given the length of time the case has been pending and the upcoming depositions. Finally, OxyChem argues that granting the Motion will cause it severe prejudice.

### E.  The Moving Parties' Response to OxyChem's Opposition

On January 31, 2022, the Moving Parties filed a letter reply to OxyChem's opposition (ECF No. 1962). The Moving Parties reiterate that leave should be granted because a stay is necessary to complete a settlement with the EPA. The Moving Parties note that CERCLA's core goal is to clean up polluted sites, such as the Lower Passaic River. The Allocation and settlement discussions are the next step in achieving that goal.

The Moving Parties also disagree with OxyChem's characterization of the Motion. According to the Moving Parties, the Motion is not a delay tactic, but rather a response to accelerating commitments to fund the cleanup of the Lower Passaic River. The Moving Parties further argue that OxyChem ignores the significant impact that settlement with the EPA would have on this action, including OxyChem's claims. Finally, the Moving Parties state that the scope

of the Special Master's role is limited to discovery scheduling, discovery disputes, and conducting settlement conferences. As such, the Moving Parties argue that, while the Special Master's authority within that scope is coextensive with that of a Magistrate Judge, the Special Master was not tasked with all of the roles of the Magistrate Judge. Thus, according to the Moving Parties, the Motion may not be decided by the Special Master.

### F.     Liaison Counsel for the SPG Provides Subsequent Report on Settlement Negotiations

On February 4, 2022, liaison counsel for the SPG informed the Court and the Special Master that a significant number of the Moving Parties (with no specificity as to identity or number) reached an agreement in principle with the EPA (ECF No. 1981). As a result, the Moving Parties assert that because entry of this settlement should effectively end this litigation for all parties, the Motion should be granted to allow the parties to complete the settlement agreement.

On February 11, 2022, liaison counsel for the SPG again requested that, in light of settlement negotiations, the Special Master should pause all proceedings until the Motion is decided (ECF No. 1982).

On February 14, 2022, OxyChem filed a letter in response to liaison counsel's request for the Special Master to stay all proceedings (ECF No. 1983). In short, OxyChem contended that because the United States does not "own" OxyChem's claims, any settlement reached between the United States and any of the Moving Parties does not trigger an automatic stay of proceedings. OxyChem also asserts that a stay should not be granted because depositions should move forward as scheduled. Finally, OxyChem argues that the proposed settlements will not relieve the Moving Parties of their obligation to OxyChem for costs it incurred to clean up the Moving Parties' pollution of the Lower Passaic River.

G.     **The February Conference**

On February 16, 2022, the Special Master held a status conference with the parties (the "February Conference"). At the February Conference, the Special Master reported that, after discussions with the Court, the Special Master will be deciding the Motion. No party placed an objection on the record regarding the Special Master deciding the Motion.

H.     **Supplemental Party Submissions**

On February 17, 2022, the SPG filed a letter requesting that all parties be permitted to submit a supplemental letter addressing the Motion, limited to no more than two pages, by Tuesday, February 22, 2022 (ECF No. 1991). On February 18, 2022, the Special Master granted the request.

OxyChem's supplemental submission (ECF No. 1993) raises several additional arguments. First, OxyChem asserts that the purported "agreement in principle" between certain Moving Parties and the EPA has no impact on the pending litigation. Second, OxyChem argues that the risk of discovery to the Moving Parties is essentially an empty platitude because uncovering the truth is not a risk of discovery, rather it is the purpose of discovery.

The supplemental submission by the SPG, CSG, and GRG provided an update on their member's agreements in principle with the EPA. According to liaison counsel, certain parties are now in the process of formalizing the agreement into a "cash out" consent decree ("CD"). The expectation is that the CD(s) will be finalized within four (4) to six (6) months, during which time liaison counsel can provide monthly reports to the Special Master. The SPG, CSG, and GRG also assert that OxyChem will not be prejudiced if a stay is granted because it can object to the CD, as well as request any relief it deems appropriate after lodging the same.

The Third-Party Defendants filed its supplemental submission (ECF No. 1995) asserting

6

that, unlike the primary defendants, the Third-Party Defendants, who were joined in the suit by way of third-party complaint (ECF No. 1170) on February 24, 2021, will be prejudiced if a stay is not granted because they have not had the opportunity to review all the discovery that has already been exchanged, and as public entities, they have limited financial resources.[2]

On February 24, 2022, liaison counsel for the SPG submitted an e-mail, without leave, from Brian Donahue of the DOJ (the "DOJ Email"), as a supplement to the Motion. The DOJ Email confirms that: (i) certain defendants have reached an "agreement in principle[;]" (ii) DOJ is presently drafting a proposed CD, and hopes to send the same in the "coming weeks[;]" and that (iii) the terms of the final settlement agreement and final CD "are subject to review and approval by" the EPA and DOJ.

Finally and also without leave, on March 2, 2022, liaison counsel for the PVSC Group submitted a letter from the EPA as a supplement to the Motion. The EPA's letter identified OxyChem, Pharmacia, LLC, Nokia of America Corporation, PMC, Inc., Public Service Electric & Gas Company, and several Third-Party Defendants, as PRPs liable under CERCLA for releases or threatened releases of hazardous substances into the LPRSA. The letter "encourages" those entities identified in the letter to "voluntary finance and perform the remedies selected" for OU2 and OU4. While the letter confirms that certain Moving Parties have been considered for a cash out settlement, the letter does not state that a settlement is already in place. Indeed, the letter asks that those entities identified submit, within forty-five (45) days, a "good faith offer" if interested in a cash out settlement.

---

[2] The New Jersey Office of the Attorney General, on behalf of non-party New Jersey Department of Environmental Protection ("DEP"), submitted a letter on March 7, 2022, requesting that the Special Master accept the position of the Third-Party Defendants regarding a stay of the litigation ("March 7 Letter"). According to the March 7 Letter, DEP has an interest in ensuring the public entities have their litigation costs kept to a minimum in order to have more funds available to contribute toward remediation.

## **LEGAL STANDARD**

Coined by the Third Circuit of Appeals as "an extraordinary measure[,]" a stay is determined at the discretion of the Court. *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). Courts "must weigh competing interests and strive to maintain an even balance . . . mindful that the stay of a civil proceeding constitutes an extraordinary remedy." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 445 (D.N.J. 2014) (citations and internal quotations omitted).

It "is well-established that the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigations." *Power Survey, LLC v. Premier Util. Servs., LLC*, 124 F. Supp. 3d 338, 339 (D.N.J. 2015) (citations and internal quotations omitted). District courts "enjoy wide discretion in determining whether a stay is appropriate, and absent a patent abuse of that discretion, a court's decision of whether to stay a case will seldom be disturbed." *United States v. $1,879,991.64 Previously Contained in Sberbank of Russia's Interbank*, 185 F. Supp. 3d 493, 500 (D.N.J. 2016) (citations and internal quotations omitted). Indeed, courts "have [the] inherent power to manage their dockets and stay proceedings[.]" *Power Survey, LLC*, 124 F. Supp. 3d at 339 (citation omitted). In determining whether a stay is appropriate, courts generally apply a three-part test:

> 1. Whether a stay would unduly prejudice or present clear tactical disadvantage to the nonmoving party;
> 2. Whether a stay will simplify the issues in question and trial of the case; and
> 3. Whether discovery is complete and whether a trial date has been set.

[*Id.* at 339.]

Courts in this District also consider a number of other facts, including: (1) "the length of the stay; (2) the balance of harm to the parties; (3) the interests of the public; and (4) the interests

of judicial economy." *$1,879,991.64 Previously Contained in Sberbank of Russia's Interbank*, 185 F. Supp. 3d at 500 (citations omitted).

## ANALYSIS

**A.    The Special Master's Authority to Decide the Motion**

The Order Appointing Special Master authorized the Special Master to oversee the schedule for completion of discovery and all discovery disputes and motions related thereto (ECF No. 646) (the "Order"). The Order grants the Special Master with authority "coextensive with those of a Magistrate Judge in the District of New Jersey pursuant to Local Civil Rule 72.1[.]"

Pursuant to Local Rule 72.1(a)(1)-(2) and 28 U.S.C. § 636(b)(1)(A)-(C), the Special Master may conduct hearings, including evidentiary hearings and submit proposed findings of fact and recommendations regarding any motion, except for the following: (i) motion for injunctive relief; (ii) motion for judgment on the pleadings; (iii) summary judgment motion; (iv) motion to dismiss or to permit the maintenance of a class action; (v) motion to dismiss for failure to state a claim upon which relief may be granted; (vi) motion to involuntarily dismiss an action; (vii) motion for judicial review of administrative determinations; (viii) motion for review of default judgments; and (ix) motions for review of prisoners' petitions challenging conditions of confinement, and other criminal matters. This is in line with Third Circuit precedent. *In re Hill*, 795 Fed. Appx. 146, 148 n.1 (3d Cir. 2020) (noting Magistrate Judge is authorized to rule on non-dispositive motions subject to District Court's review under § 636(b)(1)(A)); *see also In re United States Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998) ("[A] magistrate judge, without the consent of the parties, has the power to enter orders which do not dispose of the case.")

Based on a review of the pertinent case law and the Order, the Special Master has authority to decide the Motion. Indeed, Magistrate Judges in this District and in the Third Circuit routinely

decide motions to stay. *Maximum Human Performance, Inc. v. Dymatize Enters.*, 2009 U.S. Dist. LEXIS 76994 (D.N.J. Aug. 27, 2009) (denying plaintiff's motion to stay); *see also Vanderwerff v. Quincy Bioscience Holding Co.*, 2018 U.S. Dist. LEXIS 201912 (D.N.J. Nov. 28, 2018) (affirming Magistrate Judge's Order denying Defendants' motion to stay discovery); *Anglin v. Anglin*, 2020 U.S. Dist. LEXIS 112998 (D.N.J. Jun. 29, 2020) (affirming Magistrate Judge's order denying motion to stay); *Giuffre v. N. Am. Spine, LLC*, 2017 U.S. Dist. LEXIS 30083 (D.N.J. Mar. 3, 2017) (holding by Magistrate Judge granting motion to stay); *Touton, S.A. v. M.V. Rizcun Trader*, 30 F. Supp. 2d 508, 510 (E.D. Pa. 1998) (noting that "neither the grant of the stay of proceedings pending arbitration, nor the lift of said stay, constituted injunctive relief in excess of the Magistrate Judge's authority under § 636(b)(1)(A).") (internal quotations omitted).

Therefore, given the authority of the Special Master pursuant to the Order and after consultation with the Court, the Special Master has the authority to rule on the Motion.

**B.     The Moving Parties' Request to Stay of Proceedings**

The Moving Parties have the burden to demonstrate that the circumstances justify a stay of the proceedings. According to the Moving Parties, the purported settlements with the EPA in potentially 4 to 6 months are favorable and impactful to this case because under CERCLA, a parties' settlement with the EPA will confer on the settling parties "contribution protection[,]" which provides a statutory defense against private party CERCLA claims, including this action.[3] When taking into account all factors for consideration of a motion to stay, the Moving Parties have failed to meet their burden of "showing that the circumstances justify an exercise of the Court's discretion to issue a stay." *Kapustin*, 23 F. Supp. 3d at 445 (citations and internal quotations

---

[3] Whether Defendants should be granted "contribution protection" from OxyChem's claims is not presently before the Special Master. Nor is OxyChem's contention that its claims against Defendants will proceed even if Defendants settle with the EPA.

omitted).

### i. Prejudice to OxyChem

It is clear that OxyChem will be unduly prejudiced if a stay is granted. The Moving Parties assert that no prejudice will befall OxyChem because it can simply object to any CD and request any relief it deems appropriate. According to OxyChem, twenty-six (26) depositions of defendants and their consultants are scheduled over the next four months. If a stay were granted, none of those depositions would go forward, and all efforts for OxyChem to obtain relief under CERCLA will be halted.

If a stay were granted, this four-year old litigation would be further delayed and OxyChem would be precluded from pursuing its claims. Also, the passage of time will create further complicate issues such as availability of witnesses. Further, the parties are on the precipice of depositions. If the stay were granted, depositions would not realistically commence until 2023, OxyChem argues that if a stay were granted, it would be prejudiced because it would be unable to obtain further discovery to support its claims, strengthen its defenses, or engage in settlement discussions with Defendants or anyone else.

### ii. Simplification of Issues

Next, the potential for simplification of the issues is uncertain because there is no guarantee that any of the Moving Parties and the EPA will finalize the CD, present the same to the Court, or that the CD will ultimately be approved. *See Cammie's Spectacular Salon v. Mid-Century Ins. Co.*, 2022 U.S. Dist. LEXIS 28741, *4 (D.N.J. Feb. 17, 2022) (noting that "the potential for simplification of the issues is uncertain[,]" in determining whether a stay is appropriate) (citations omitted). There is also no guarantee that defendant parties not originally identified by the EPA as PRPs, will settle their liability through a similar settlement process. Assuming individual

11

defendants do settle, OxyChem will remain entitled to pursue its claims against those non-settling parties and seek discovery, in some form, from settling parties. The Special Master cannot order OxyChem to pause the pursuit of its claims against all Moving Parties because some parties *may* finalize settlements with the EPA. Such a directive is based on too much speculation and assumption.

Although settlements are a favored remedy both with the government and with private parties, *see United States v. Kramer*, 770 F. Supp. 954, 961 (D.N.J. 1991) ("by saving the litigation costs associated with formal discovery, all of the defendants out to have more money available to pay as part of a negotiated settlement"), the Moving Parties' suggestion that a stay is required to finalize such settlements is neither a basis for granting the Motion, nor necessary for any of the Moving Parties to finalize settlement negotiations. Just like OxyChem, the Moving Parties are free to discuss settlement with any party or non-party, such as the EPA.

### iii. <u>Hardship to the Moving Parties</u>

The Moving Parties assert that every day that this litigation continues costs the parties' time, attention, and resources that might otherwise be marshalled to bring about a resolution and fund the cleanup. They argue that requiring the Moving Parties to continue to litigate these claims in the face of potential settlement constitutes a hardship. Simply put, the hardship raised by the Moving Parties is the continuing with litigation that they have been defending (in which they have asserted counterclaims and third-party complaints). Courts in this District have held that the "routine costs of litigation, without more, do not constitute a particular hardship" or inequity, warranting a stay of proceedings. *Mid-Century Ins. Co.*, 2022 U.S. Dist. LEXIS 28741, at *3-4 (citations omitted). The same is true here.

CERCLA permits civil claims, like OxyChem's here, to be made against other private

parties. Costs associated with such claims are not unreasonable or unpredictable, but rather part and parcel of CERCLA. The Moving Parties argue that unless the Special Master grants the Motion, the Moving Parties will be forced to expend costs litigating this matter and negotiating with the EPA. The Special Master does not find the Moving Parties' "cost of litigation" argument persuasive. Under the Moving Parties theory, any prospective settlement would be a basis to stay a case in order to avoid costs of litigation; such theory has no basis in law or precedent.

In addition, the Moving Parties cite to several unpublished cases, and cases outside this District as support for their contention that settlement negotiations with the EPA merit that a stay of proceedings be granted. More specifically, the Moving Parties cite to a case in the District of Oregon, which stayed a civil claim brought pursuant to CERCLA. *Confederated Tribes & Bands of Yakama Nation v. Airgas USA, LLC*, 435 F. Supp. 3d 1103 (D. Or. 2019). In addition to the case being non-binding, the case is factually distinguishable.

In that case, there were two motions to stay filed—one by NW Natural, City of Portland, and Port of Portland—and a second by the United States. *Airgas USA, LLC*, 435 F. Supp. 3d at 1126-27. Here, unlike *Airgas USA, LLC*, the United States has not joined in the Motion, or filed a separate motion for a stay of proceedings in light of settlement negotiations with Defendants. Indeed, neither the EPA nor DOJ have made any individual submissions related to this Motion despite the Special Master welcoming such submissions during the February Conference.

The DOJ Email, which is limited to the ongoing settlement negotiations, also does not support a stay. To be sure, the DOJ Email only confirms that an "agreement in principle" has been reached between the EPA and some defendants, but does not provide a date certain for when settlements and a proposed CD will be finalized. The DOJ Email confirms that the final settlement terms and CD remain "subject to review and approval by" the EPA and DOJ. These steps are prior

13

to the submission of the proposed documents to the Court and the filing of a dispositive motion, which will certainly require additional time.

Further, as noted by the Court in *Airgas USA, LLC*, opposing defendants "do not appear to dispute that the Court should ultimately enter a stay; the only dispute is when that stay should be entered." *Id.* at 1127 (citations and internal quotations omitted). Here, OxyChem has not once conceded that a stay is merited. In fact, OxyChem has maintained its position that a stay is not appropriate since first being presented with the suggestion by liaison counsel at a meet-and-confer held in December 2021. Finally, the Court in *Airgas USA, LLC* granted a stay in a separate civil claim involving many of the same parties, but not the plaintiff, who was not a party in the other case. *Id.* at 1126-27. Unlike in that case, a stay has not been granted by the Court in a separate action that bears upon this matter.

### iv. Length of the Stay

The length of the stay requested by the Moving Parties is concerning. Third Circuit courts have found that excessive or indefinite delays undermine motions for stay. *See Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) ("[T]he clear damage to the plaintiffs is the hardship of being forced to wait for an indefinite and . . . lengthy time before their causes are heard."); *see also Premier Util. Servs.*, 124 F. Supp. 3d at 339 ("[T]here is no evidence . . . that Defendants engaged in any delay tactic in seeking *inter partes* review[,] [and] . . . nor have any dispositive motions been filed.").

While there is no bright line as to the reasonableness of the length of the potential stay, courts in this District have noted that thirty (30) days is "not substantial" in the context of a motion to stay. *See $1,879,991.64 Previously Contained in Sberbank of Russia's Interbank*, 185 F. Supp. 3d at 501. The Moving Parties are not seeking anything close to 30 days. Rather, the Moving

14

Parties have requested six months and have stated it will take anywhere between four to six months for the CD to be finalized and then presented to the Court for approval. Therefore, considering the time for a dispositive motion to be decided, such a stay will certainly exceed the projected six months requested. The length of stay requested is excessive given the posture of the lawsuit and years of involvement in the Allocation and discussions with the EPA.

> v.  **Other Considerations**

Further, this is not a case where a government agency is issuing a decision in a parallel matter that will impact this case. *See Alcon Labs., Inc. v. Akorn, Inc.*, 2016 U.S. Dist. LEXIS 2182 (D.N.J. Jan. 8, 2016) (granting a stay after the matter was selected for *inter partes* review by the Patent Trial and Appeals Board). Here, Moving Parties are free to engage the EPA on settlement, which remain months away from finalizing. However, even if the EPA agreed to settle with all Moving Parties, this would not cause a stay of this matter. The Moving Parties have already stated that after the conclusion of settlement negotiations, a CD will be drafted and submitted to the Court for approval. A dispositive motion will then follow. There is no question that this can take place while proceedings in this matter continue. To be sure, neither the EPA nor the DOJ have made any submissions stating that the Special Master is required to impose a stay in order to finalize settlement. Indeed, the EPA and DOJ communications submitted by liaison counsel do not change this fact.

Next, the Moving Parties argue that if the Motion is granted, this "would not be the first CERCLA case in which OxyChem has been involved that was stayed to facilitate settlement." The difference, however, is that OxyChem opposes a stay here.

As reflected in a January 13, 2022, letter from DOJ to liaison counsel for the SPG (ECF No. 1943-4), OxyChem was not the only party that declined the EPA's invitation to participate in

15

the Allocation. Nine other PRPs declined as well. According to OxyChem, it declined to participate because the Allocation "was unfair, rested on an incomplete record, could be too easily manipulated by parties that stood to benefit from information deficit, and was unauthorized by CERCLA." As such, OxyChem should not be forced to pause its pursuit of its claims while participating parties negotiate with the EPA for six months.

Put simply, the Moving Parties are asking the Special Master to stay the proceedings so that the Moving Parties may explore all available options afforded to them, namely settlements, and have OxyChem sit and wait until a resolution, if any, is reached. Should the vast majority of settlements not be finalized and approved, more than six months of time would be wasted. Moreover, there is no certainty that if most settlements are finalized, this case will be rendered moot. Rather, it is likely to proceed, in some form, even after the settlements. This fact is not in accord with the standard for granting a stay, nor does it serve the interests of all parties. The better option is to allow the Moving Parties to continue to engage in settlement negotiations, allow OxyChem and the Moving Parties to carry on with discovery, and should any of the Moving Parties settle, they can move to be dismissed from this case and OxyChem will be given an opportunity to oppose such application[4].

The Special Master, however, is cognizant of the unique concerns of Third-Party Defendants, including the high costs of defending claims brought by Defendants, the potential cost savings if permitted to marshal their efforts towards finalizing EPA settlements, and that Third-Party Defendants were only joined in this case approximately one (1) year ago. As a result, the Special Master will provide relief that is reasonable and appropriate given the circumstances.

---

[4] The Special Master makes no findings or rulings as to whether a settling party will be able to prevail on a motion to be dismissed from the case if they settle with the EPA. Such determinations are left to the District Court on a complete record.

Indeed, while this matter was initiated by OxyChem in 2018, Third-Party Defendants require more time to prepare for depositions, review paper and electronic discovery, and prepare their defenses. Therefore, to provide all parties with more time to prepare for depositions and allow parties to continue in their parallel settlement negotiations with the EPA, all pending depositions will be rescheduled, with the first deposition taking place no earlier than May 1, 2022. Thus, the parties are hereby directed to meet-and-confer within 30 days to finalize a proposed deposition schedule.

## CONCLUSION

The Moving Parties' motion for a stay of proceedings and for leave to file same is hereby **DENIED** based on the reasons set forth herein. The parties are hereby instructed to coordinate the scheduling of depositions, with the first deposition taking place no earlier than May 1, 2022.

*/s/ Thomas P. Scrivo*
**THOMAS P. SCRIVO**
**Special Master**