UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>*Plaintiff*,<br>v.<br>21ST CENTURY FOX AMERICA, et al.,<br><br>*Defendants.* | Civil Action No. 18-11273<br><br>ORDER |

**THIS MATTER** comes before the Court on the Small Parties Group's ("SPG") Appeal of the Special Master's March 18, 2021 and June 29, 2021 Decisions denying in part the SPG's Motion to Compel Production of Documents Withheld as Privileged or Protected, ECF No. 1268;[1]

and it appearing that Plaintiff Occidental Chemical Corporation ("Plaintiff" or "OxyChem") opposes the Appeal, ECF No. 1365;

and it appearing that Plaintiff filed this action for cost recovery and contribution from multiple defendants based on response costs that it expended and will expend to address "releases and threatened releases of hazardous substances in the Lower Passaic River and elsewhere within the Diamond Alkali Superfund Site," Compl. at 4, ECF No. 1;[2]

and it appearing that OxyChem and its former indemnitors—Maxus Energy Corporation ("Maxus") and Tierra Solutions, Inc. ("Tierra")—participated in related litigation in state court

---

[1] The Third-Party Defendants join the SPG's Appeal, ECF No. 1844. Because they incorporate by reference the arguments of the SPG's Appeal, the Court refers to the SPG and Third-Party Defendants collectively as "Defendants" unless otherwise stated.

[2] The Court has discussed the background of this action at length in its prior orders, see, e.g., ECF No. 1105, and thus this Order discusses the relevant facts only to the extent necessary to resolve the instant Appeal. The Court also incorporates the history and factual findings provided by the Special Master in the March 2021 Decision, including those specifically related to the privilege logs and documents at issue on this Appeal. March 2021 Decision at 2-8.

1

(the "Spill Act Litigation"), in which the state court segregated the claims on which OxyChem's and Maxus/Tierra's interests were aligned (relating to the liability among the parties) and those where they were adverse (the scope of Maxus/Tierra's contractual liability to OxyChem and statutory liability to the New Jersey Department of Environmental Protection), referred to as the "Track III" claims, see ECF No. 1102.3;

and it appearing that with respect to the Track III claims, Maxus served a privilege log (the "Drinker Biddle Log");

and it appearing that on August 10, 2020, the SPG filed a Motion to Compel Plaintiff to produce documents withheld as privileged or protected, ECF No. 1091;

and it appearing that OxyChem opposed the Motion, ECF No. 1102;

and it appearing that the Motion addressed four categories of documents identified from OxyChem's privilege logs: (1) H-1, consisting of 30,468 documents from the Drinker Biddle Log; (2) H-2, a 66-page group of documents that were previously produced; (3) H-3, consisting of 157 documents relating to communications with federal and state regulators; and (4) H-4, containing 732 documents that the SPG claimed were undated or gave dates inconsistent with anticipation of litigation, ECF No. 1091.1 at 5-6;

and it appearing that on November 4, 2020, shortly after holding oral argument, the Special Master issued an interim order on the Motion, directing OxyChem, among other things, to update its privilege log and to select a sample of 200 documents for the Special Master for in camera review; ECF No. 1124;

and it appearing that after the Special Master reviewed the documents produced by OxyChem in compliance with the Interim Order, the Special Master issued his first decision on

2

March 18, 2021, granting in part and denying in part the Motion, ECF No. 1185 (the "March 2021 Decision");

and it appearing that the Special Master first found that OxyChem presented sufficient evidence that the joint-client privilege applied because OxyChem was jointly represented by the same law firms as Maxus and Tierra in response to and in defense of litigation regarding the Diamond Alkali Superfund Site, March 2021 Decision at 12;

and it appearing that in particular, the firms Vinson & Elkins, LLP, Drinker Biddle & Reath, LLP, and Andrews & Kurth, LLP jointly represented Maxus, Tierra, and OxyChem at certain times, and the firms retained a number of consultants and outside counsel for the joint defense as well, id.;

and it appearing that the Special Master therefore found that OxyChem had a basis to withhold certain documents reflecting communications between Maxus, Tierra, and/or OxyChem and the outside counsel and consultants in H-1 through H-4 because the joint-client privilege applied, id. at 13;

and it appearing that the Special Master next found that the community-of-interest doctrine also applied because from 1988 through 2016, Maxus, Tierra, and OxyChem enjoyed a common interest in (1) defending against regulatory investigations and lawsuits regarding environmental liabilities related to the Lister Site; and (2) demonstrating that the Lister Site was not the sole source of contamination in the Lower Passaic River Site, id. at 14;

and it appearing that the Special Master held that there was an uninterrupted and continuous community of interest during this time period such that documents sent to or received by outside counsel or consultants during their representation of the three companies are protected from production, id. at 16-17;

and it appearing that based on the joint-client privilege and community-of-interest doctrine, the Special Master found that any documents in H-1 through H-4 that were "authored by the Outside Counsel and Consultants, sent to the Outside Counsel and Consultants by Maxus, Tierra, and/or OxyChem, and/or sent by the Outside Counsel and Consultants to Maxus, Tierra, and/or OxyChem" were properly withheld because they qualified for attorney-client privilege or are work product, id.;

and it appearing that next, the Special Master found that OxyChem properly withheld documents from H-2 because it clearly reflected attorney work product and H-3 because the documents were authored by the outside counsel and consultants, drafted at the direction of counsel, or were sent to the outside counsel and consultants and thus constituted attorney-client privilege and work product, id. at 18-19;

and it appearing that the Special Master determined that OxyChem did not waive privilege or work-product protection and had no obligation to produce any additional documents from H-2 and H-3, id. at 21;

and it appearing that finally, the Special Master determined that many of the documents reviewed in camera from H-1 and H-4 were properly withheld, but that OxyChem's privilege log was lacking in certain critical respects and ordered it to provide more information, id.;

and it appearing that the Special Master carefully reviewed additional documents produced and made specific findings on privilege, ECF No. 1251 (the "June 2021 Decision");

and it appearing that the Special Master ordered any documents which were not reviewed in camera or otherwise ruled on by the Special Master may be withheld if they are (1) communications between counsel or a litigation consultant and Maxus, Tierra and/or OxyChem within the privileged communication framework; (2) drafts of documents by counsel and/or a

4

litigation consultant specifically for Maxus, Tierra and/or OxyChem eyes only; or (3) prepared in anticipation of litigation and within a reasonable timeframe for which litigation was anticipated, id. at 10-11;

and it appearing that on July 13, 2021, the SPG appealed from the Special Master's Decisions on its Motion to Compel Production of documents withheld as privileged or protected, ECF No. 1268 ("SPG Ap."),[3] and the Third-Party Defendants joined in the SPG's Appeal, ECF No. 1844;

and it appearing that OxyChem opposes the Appeal, ECF No. 1365;

and it appearing that the SPG appeals from three components of the Special Master's decisions and orders, first arguing that the Special Master applied an overly broad application of the joint-client privilege and community-of-interest doctrine, SPG Ap. at 5-12;

and it appearing that the joint-client privilege applies "when multiple clients hire the same counsel to represent them on a matter of common interest," whereas the community-of-interest doctrine comes into play "when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities," Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.), 493 F.3d 345, 359 (3d Cir. 2007);

---

[3] The Court's order appointing the Special Master states that "[t]he authority of the special master hereinunder shall be coextensive with those of a Magistrate Judge in the District of New Jersey pursuant to Local Civil Rule 72.1, and as such, any appeal of an action or a decision made by the special master shall be filed with the Court pursuant to Local Civil Rule 72.1(c)(1)." ECF No. 633.

A district court will only reverse a Special Master's finding if it is "clearly erroneous or contrary to law," and the party filing the notice of appeal bears the burden of so demonstrating. Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). "Where an appeal seeks review of a matter within the exclusive purview of the Magistrate Judge, such as a discovery dispute, the 'abuse of discretion standard' must be applied." Va. St. Fidelco, L.L.C. v. Orbus Prods. Corp., 11-2057, 2018 WL 1399304, at *2 (D.N.J. Mar. 20, 2018); Altana Pharma AG v. Teva Pharms. USA, Inc., 04-2355, 2010 WL 451168, at *1-2 (D.N.J. Feb. 5, 2010) (same). "As a practical matter, abuse of discretion review incorporates clear-error review of factual issues and plenary review of legal questions." In re Mercedes-Benz Emissions Litig., No. 16-881, 2020 WL 487288, at *5 (D.N.J. Jan. 30, 2020) (alterations and internal quotations omitted).

5

and it appearing that this District has recognized that even though the community-of-interest doctrine is treated as a de facto privilege, it actually does not create a new or separate privilege, but instead prevents waiver of the attorney-client privilege and work-product doctrine when otherwise privileged communications are shared with a third party, McLane Foodservice, Inc. v. Ready Pac Produce, Inc., No. 10-6076, 2012 WL 1981559, at *3-4 (D.N.J. June 1, 2012);

and it appearing that in order to establish community of interest, a party must first establish that the communication was shared with the attorney of the member of the community of interest and then must establish that all members of the community share a common legal interest in the shared communication, In re Teleglobe, 493 F.3d at 364;

and it appearing that while the community-of-interest doctrine does not require that the parties' interests be perfectly aligned, it is equally settled that it does not apply when their interests become adverse or are not "substantially similar," see, e.g., In re Duro Dyne Nat'l Corp., No. 18-27963, 2019 WL 4745879, at *10 (D.N.J. Sept. 30, 2019);

and it appearing that the Special Master broadly found that (1) joint-client privilege applies because OxyChem, Maxus, and Tierra were represented at certain times by the same firms and consultants; and (2) the community-of-interest doctrine applies because OxyChem shared a common interest with Maxus and Tierra in defending against the ongoing litigation regarding environmental liabilities at the Lister Site and in demonstrating that the Lister Site was not the sole source of contamination in the Lower Passaic River, March 2021 Decision at 14;

and it appearing that while the parties shared a joint client privilege and a community of interest as it related to defending the Spill Act Litigation and other related claims, it also appears that there may have been periods when they were directly adverse; i.e., relating to indemnification obligations for which neither the joint-client nor the community-of-interest privilege would apply;

6

and it appearing that the Special Master found that several documents in H-1 and H-4 fell under the joint-client and community-of-interest doctrines without considering the context of those documents, i.e., whether the communications concerned issues on which the parties were adverse and were not in furtherance of a shared common legal interest;[4]

and it appearing that to the extent documents were prepared by independent counsel and the community-of-interest or joint-client privilege does not apply, the Court remands to the Special Master to reconsider those documents and make specific findings;[5]

and it appearing that the Court directs OxyChem to present a fully responsive privilege log with all information, including dates, sender, and recipients, to assist the Special Master in evaluating the documents;[6]

---

[4] The parties admit that at certain times, OxyChem was adverse to Maxus and Tierra, particularly in the Spill Act Litigation when the court segregated the claims on which OxyChem's, Maxus', and Tierra's interests were aligned from those on which they were adverse. See, e.g., SPG Ap. at 8, Oxy Opp. at 13-14, ECF No. 1365. By conducting a broad sweep of over 30,000 documents and eliminating all communications between OxyChem, Maxus, and Tierra and outside counsel and consultants under a joint-client or community-of-interest theory without considering the context of the communication, the Special Master did not determine whether those communications were in furtherance of a shared interest. To be sure, communications where OxyChem's and Maxus/Tierra's interests are slightly misaligned may still fall under the community-of-interest exception. See, e.g., McLane Foodservices, 2012 WL 1981559, at *5-*7 ("[D]efendants' interests are not perfectly aligned, [but] they have a common interest in establishing and arguing that lettuce did not cause the outbreak."). For example, to the extent that documents created with respect to litigation on the cross-claim address an issue on which the parties have a joint interest—i.e. defending Spill Act litigation and minimizing liability—those communications may still be protected. However, communications where the parties are clearly adverse and share no common legal interest will not be privileged under either exception. Further review of the documents is necessary to make that distinction.

[5] The Court leaves to the discretion of the parties and Special Master to determine how many representative documents should be further reviewed in camera.

[6] Under Local Civil Rule 34.1, a party asserting privilege must "identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked." See also Torres v. Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996) ("A proper privilege log must include, for each withheld document, the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the document, and the privilege or privileges asserted."); Fed. R. Civ. P. 26(b)(5)(A)(ii). Here, OxyChem's privilege log makes no claim of joint-client privilege or community-of-interest, see, e.g., ECF No. 1091.9, thus it is unclear which documents OxyChem claims are privileged based on either theory. The Special Master appropriately ordered that where OxyChem cannot set forth the author, sender, or recipient of any documents, they must be produced. June 2021 Decision at 11. The Court reiterates that all documents on the privilege log must contain the appropriate information to allow the Special Master to make the necessary ruling and determine on what basis they are protected, otherwise those documents must be produced.

and it appearing that the SPG next argues that the Special Master failed to fully assess whether there is an underlying privilege at all, SPG Ap. at 12-13;

and it appearing that the attorney-client privilege "protects communications between attorneys and clients from compelled disclosure" and "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client,'" In re Teleglobe, 493 F.3d at 359 (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000));

and it appearing that "'privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation," In re Teleglobe, 493 F.3d at 359 (quoting Restatement (Third) of the Law Governing Lawyers § 70 (2000));

and it appearing that the work product doctrine protects materials prepared (1) in anticipation of litigation and (2) primarily for the purpose of litigation, Reckitt Benckiser LLC v. Amneal Pharm. LLC, No. 11-6609, 2012 WL 2871061, at *5 (D.N.J. July 12, 2012);

and it appearing that to the extent the Special Master reviewed the privilege log and found certain communications between lawyer and client during anticipated or actual litigation were protected by attorney-client privilege or as work product, without making explicit findings as to each document, the Court is satisfied that such procedure here was not an abuse of discretion;[7]

---

[7] Notably, the SPG does not challenge any particular document, but instead the failure of the Special Master to make explicit findings with respect to all documents generally.

and it appearing that, finally, the SPG argues that any privilege that may have existed related to the 66-page group of documents is waived notwithstanding any Federal Rule of Evidence 502(d)[8] order, SPG Ap. at 14-15;

and it appearing that the Special Master found the 66-page group of documents was repeatedly produced to hundreds of parties across three court cases, that OxyChem maintains that the documents were previously clawed back pursuant to a protective order entered in the Spill Act Litigation, and that after in camera review of the documents, OxyChem properly withheld the entire group of documents as attorney work product, March 2021 Decision at 18;

and it appearing that the Special Master also determined that SPG has failed to meet its burden to demonstrate that OxyChem waived privilege or work product protection because in the bankruptcy litigation, the bankruptcy judge ordered that any transfer of documents did not waive any applicable privilege or protection, and the SPG and OxyChem agreed to the same in this matter, id. at 20;

and it appearing that the Special Master thus found that OxyChem identified five federal court orders providing for Rule 502(d)[9] or other non-waiver provisions and that the record further shows that OxyChem was not careless or slow to claw back documents, id. at 21;

---

[8] Rule 502(d) provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding."

[9] For example, the parties agreed to a protective order in this action that states:

> Disclosure of Privileged Information. The production of documents or ESI protected by the attorney-client privilege, work product doctrine, or other privilege against disclosure, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

ECF No. 543 at 14; see also March 2021 Decision at 20-21.

and it appearing that the SPG maintains that despite the Rule 502(d) orders in this matter and in the bankruptcy litigation, there is no dispute that the 66-page group of documents in Exhibit H-2 were not clawed back in the Spill Act litigation and thus any privilege is waived notwithstanding any entry of Rule 502(d) in subsequent litigation, SPG Ap. at 14;[10]

and it appearing that the Court remands on this issue and instructs the Special Master to make further factual findings on the record regarding whether the documents at issue were clawed back in the Spill Act litigation and, if they were not, whether any privilege is deemed waived as to the documents;

**IT IS** on this 10th day of March, 2022;

**ORDERED** that Defendants' Appeals, ECF Nos. 1268, 1844, of the Special Master's Decisions, are **GRANTED in part**; and it is further

**ORDERED** that this matter is **REMANDED** to the Special Master for further consideration of the documents in accordance with this Order, and it is further

**ORDERED** that OxyChem should provide amended, fully responsive privilege logs to the Special Master prior to any further ruling or otherwise those documents must be produced.

*/s Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[10] The SPG asserts that the 66-page group of documents was produced around 2010 in the Spill Act litigation, that there was no Rule 502(d) order or any state analogue in place in that litigation, that no party attempted to claw back production of these documents until seven years later and ultimately failed to do so, and that any Rule 502(d) order in the subsequent bankruptcy litigation or this matter does not undo the waiver caused by the production to hundreds of parties in the Spill Act case. See SPG Ap. at 14-15.