## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, | Civil Action No. 18-11273 (MCA)(LDW) |
| Plaintiff, | **SPECIAL MASTER DECISION DENYING SMALL PARTIES GROUP DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND GRANTING PLAINTIFF'S CROSS-MOTION TO COMPEL** |
| v. |  |
| 21ST CENTURY FOX AMERICA, INC., *et al*., |  |
| Defendants. |  |

## <u>INTRODUCTION</u>

This matter comes by way of a Motion, filed by the Small Parties Group Defendants ("SPG Defendants"), on January 29, 2022, for entry of a protective order (ECF No. 1959) ("Motion for Protective Order"), regarding Plaintiff, Occidental Chemical Corporation's ("OxyChem's") Second Request for Production of Documents (the "RFPs"). SPG Defendants contend that the RFPs, specifically RFP Nos. 1, 2, 4, and 6, seek privileged materials, and SPG Defendants would be unduly burdened if compelled to produce the same.

On February 2, 2022, OxyChem filed opposition to the Motion for Protective Order, and a cross-motion to compel production of documents responsive to the RFPs (ECF No. 1965) ("Cross-Motion to Compel"). On February 15, 2022, SPG Defendants filed a reply in further support of the Motion for Protective Order, and in opposition to the Cross-Motion to Compel (ECF No. 1985).

The parties have participated in a meet-and-confer to discuss the dispute over the RFPs and have been unable to come to an agreement. The motions, therefore, are ripe for a decision by the Special Master. For the reasons set forth herein, the Motion for Protective Order is denied and the Cross-Motion to Compel is granted.

<u>**STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY**</u>

**A.      <u>OxyChem's RFPs</u>**

On September 3, 2021, OxyChem served the RFPs on SPG Defendants.  *See* ECF No.

1965-1).[1]  Pertinent here, OxyChem requested production of the following:

- <u>**RFP No. 1.**</u>   All Documents regarding the Fourth Amendment to the ARAO[2], including Communications between You and any Person regarding the Fourth Amendment to the ARAO.

- <u>**RFP No. 2.**</u>   All Communications with FTI[3] regarding the Diamond Alkali Superfund Site[4], including Communications regarding the RM10.9 Recommendation.

- <u>**RFP No. 4.**</u>   If You participated in the Batson Process, all Documents regarding Your Decision to participate in the Batson Process.

- <u>**RFP No. 6.**</u>   All Documents in the possession, custody, or control of You or the CPG[5] regarding the decision to terminate or cease the 2015 Allocation Process[6].  This Request includes Communications with any Person regarding the decision to terminate or cease the 2015 Allocation Process.

On October 15, 2021, SPG Defendants objected to the RFPs. *See* ECF No. 1959-1.

Specifically, SPG Defendants made the following objections: (1) documents are neither relevant

nor proportional to the needs of the case; (2) SPG Defendants would be unduly burdened; (3) the

---

[1] These exemplar RFPs were directed to Defendant Arkema, Inc., and concern the RFPs at issue.
[2] "Fourth Amendment to the Amended and Restated Organization Agreement" means the amendment, approved by the CPG in May 2012, to the CPG's 2007 Amended and Restated Organization Agreement ("AROA").
[3] "FTI" means FTI Consulting, Inc. and its predecessors or successor in interest, including the Agents, employees, officers, and directors of FTI Consulting, Inc. and those of its predecessors or successors in interest.
[4] "Diamond Alkali Superfund Site" means the superfund site designated by the EPA and consists of four operable units, including 01, 02, 03, and 04, and the areal extent contamination.
[5] "CPG" means the Lower Passaic River Study Area Cooperating Parties Group, its Agents, and its predecessors.
[6] "2015 Allocation Process" means the U.S. Environmental Protection ("EPA") sponsored "allocation effort" described in the letter from William Hyatt to Sarah Flanagan, attached as Exhibit "A" to the RFPs.

RFPs seek information in the possession of CPG, not SPG Defendants; (4) OxyChem seeks Electronically Stored Information ("ESI") discovery on new topics; and (5) the RFPs call for the production of privileged and confidential information under the AROA or the CPG Joint Defense Agreement, and confidential communications between SPG Defendants and government entities.

On October 22, 2021, OxyChem sent a letter to SPG Defendants requesting to meet and confer on the RFPs (the "Oct. 22 Letter"). *See* ECF No. 1959-2. The Oct. 22 Letter noted that if SPG Defendants did not withdraw the objections, OxyChem would move to compel.

On November 8, 2021, SPG Defendants submitted a letter in response to the Oct 22 Letter, proposing a meet and confer in November 2021. *See* ECF No. 1959-3.

On November 16, 2021, the parties held a meet and confer where OxyChem agreed to narrow the scope of some RFPs.

On January 11, 2022, SPG Defendants sent a follow-up letter to OxyChem confirming that OxyChem planned to submit revised RFPs. *See* ECF No. 1959-4.

On January 14, 2022, OxyChem sent SPG Defendants a letter that confirmed OxyChem revised the RFPs, including limiting the scope of RFP No. 1 to documents generated on or before May 29, 2012. *See* ECF No. 1959-5. OxyChem also agreed to revise RFP No. 2 by requesting only documents concerning the RM 10.9 Recommendation.

**B.    SPG Defendants' Motion for a Protective Order**

Despite the revised RFPs, SPG Defendants argue that OxyChem continues to seek privileged materials, and/or SPG Defendants would be unduly burdened to produce the same. As a result, on January 29, 2022, SPG Defendants filed the Motion for Protective Order. In support of the motion, SPG Defendants contend that a protective order should be granted because: (1) the RFPs seek documents that are allegedly protected by multiple privileges; and (2) producing the

requested documents would be unduly burdensome, particularly since numerous documents are already in OxyChem's possession.  SPG Defendants also rely heavily on an unpublished District Court case, *Gregory v. Gregory*, 2016 U.S. Dist. LEXIS 144554 (D.N.J. Oct. 18, 2016), for the proposition that a protective order should be entered because the requested documents are privileged and/or SPG Defendants would be unduly burdened if required to produce the same.

On February 2, 2022, OxyChem filed the Cross-Motion to Compel.  OxyChem asserts that SPG Defendants' participation in the Batson allocation process does not shield related documents and communications from production. The Batson allocation process refers to the U.S. Environmental Protection Agency's ("EPA's") sponsored allocation that was led by a third-party neutral selected by the EPA to assign shares of responsibility to potentially responsible parties. OxyChem also argues that because SPG Defendants purportedly put at issue OxyChem's level of cooperation with the EPA, and OxyChem's decision to participate in the Batson Process, reciprocal materials from the SPG Defendants are discoverable.  Finally, OxyChem contends that the requested materials are not in its possession, custody, or control, even though SPG Defendants believe otherwise.

On February 15, 2022, SPG Defendants filed a letter reply brief in further support of the Motion for a Protective Order.  SPG Defendants assert that the documents should not be produced because SPG Defendants did not put the Batson Process at issue. Moreover, the requested documents are purportedly outside the ESI Protocol.  Lastly, documents related to EPA-sponsored allocations, if they exist, are privileged because they concern SPG Defendants' decision to cooperate with the government.

## LEGAL STANDARD

**A.    Requested Information Must be Relevant and Proportional**

*Federal Rule of Civil Procedure* 26 provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

[FED. R. CIV. P. 26(b)(1).]

"Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "The purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings and thus the boundaries of relevance under [*Federal Rule of Civil Procedure*] 26 depend on the context of each action." *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015). Therefore, courts construe *Federal Rule of Civil Procedure* 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253, 265 (1978); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (citation omitted).

Courts have the discretion to determine the scope of discovery. *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. at 528; *see also Salamone v. Carter's Retail, Inc.*, 2011 U.S. Dist. LEXIS 41357, at *9-10 (D.N.J. Apr. 14, 2011) (affirming decision of Magistrate Judge "limiting the geographic scope of the discovery"). Indeed, "[a] court may limit or deny otherwise appropriate discovery when the information sought is not proportional to the needs of the case when certain factors are considered, including burden and expense." *In re EthiCare Advisors, Inc.*,

2020 U.S. Dist. LEXIS 144816, at *6 (D.N.J. Aug. 12, 2020) (citations omitted).

Accordingly, courts must determine if non-privileged matters are relevant and proportional to the needs of the case when analyzing motions to compel.

## B.     Protective Orders May be Entered if Good Cause Shown

*Federal Rule of Civil Procedure* 26(c)(1) provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses, including . . . (A) forbidding the disclosure or discovery; . . . [or, *inter alia*, ] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .

> [FED. R. CIV. P. 26(c) (1)(A)-(D).]

"If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." FED. R. CIV. P. 26(c)(2).

A "court may issue a protective order to regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 159712, *5 (D.N.J. Nov. 24, 2015) (citations omitted).  Indeed, the "objective" of *Federal Rule of Civil Procedure* 26 is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Notes of Advisory Committee on 1983 amendments, Note to Subdivision (b)*.  To that end, the "grounds" for "limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c)." *Id.*

The *Rule* "places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  "To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a

particular need for protection."  *Cipollone*, 785 F.2d at 1121; *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone*.785 F.2d at 1121. (citations omitted).  Indeed, the "harm must be significant, not a mere trifle."  *Id*. (citations omitted).

"Good cause" is defined as a "showing that disclosure will work a clearly defined and serious injury to the party seeking closure."  *Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir. 2007) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1986)).  To that end, "good cause" is established based on "balancing a number of considerations."  *Arnold*, 477 F.3d at 108 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)).  The factors, include but are limited to: "(1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public."  *Arnold*, 477 F.3d at 108 (citations omitted).  Courts apply those factors that it believes are most important to the facts of a given case. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (stating court is "best situated to determine what factors are relevant to any given dispute.")(citation and internal quotations omitted).  Therefore, whether a protective order is warranted turns on a finding that the moving party has established good cause based on an analysis of pertinent factors.

## ANALYSIS

**A.    Certifications Required under Federal Rules of Civil Procedure and the Local Rules for the District of New Jersey**

The *Federal Rules of Civil Procedure* and the *Local Rules for the District of New Jersey* require that discovery motions include certifications that the parties attempted to resolve the matter prior to engaging in motion practice.  *See* FED. R. CIV. P. 26(c) (stating motions for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."); FED. R. CIV. P. 37(a)(1) (stating motions to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); *Local Civ. R.* 37.1(a)(1) (imposing obligation on parties to confer to resolve any discovery dispute prior to presenting it to the Magistrate Judge); *Local Civ. Rule* 37.1(b) (stating "[d]iscovery motions must be accompanied by an affidavit, or other document . . . certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and the parties have been unable to reach agreement.")

Here, the Motion for Protective Order and Cross-Motion to Compel are procedurally defective on their face because the motions lack the required certification.  Indeed, courts have denied motions that similarly failed to include the required certification.  *See City of Atl. City v. Zemurray St. Capital, LLC*, 2019 U.S. Dist. LEXIS 206046 (D.N.J. Oct. 18, 2019); *Ciarrocchi v. Unum Grp.*, 2010 U.S. Dist. LEXIS 152134 (D.N.J. May 6, 2010); *Hall v. Cole*, 2009 U.S. Dist. LEXIS 88635 (D.N.J. Sept. 25, 2009).  However, as the Special Master has noted in a previous opinion, the failure to submit a certification does not automatically warrant the denial of a motion. *See*, *e.g.*, *Smith v. County of Monmouth*, 2006 U.S. Dist. LEXIS 45967, *3-4 (D.N.J. July 7, 2006)

(requiring parties to confer to "attempt to resolve the discovery deficiencies as required by *Local Civil Rule* 37.1(b)(1)[,]" after a motion was filed).

Based on the parties' submissions and discussions during monthly conferences, it is clear that the parties have attempted to meet-and-confer on this issue prior to engaging in motion practice.  More pointedly, both SPG Defendants and OxyChem set forth their efforts to resolve this issue in their submissions and correspondence, and as evidenced in the meet-and-confer that took place prior to the filing of the Motion for Protective Order and Cross-Motion to Compel.

Accordingly, the Special Master is satisfied that the parties attempted to resolve the matter prior to making formal requests to the Special Master.  However, the Special Master restates the parties' continued obligation to meet-and-confer to resolve discovery disputes prior to filing motions, and, if unable to reach a resolution, the requirement to annex a certification to all discovery motions.

**B.**     **Good Cause Does Not Exist to Warrant Issuance of a Protective Order**

    **a)**     **The RFPs Seek Relevant and Discoverable Materials**

       **1.**     **RFP No. 1.**     **All Documents regarding the Fourth Amendment to the ARAO, including Communications between You and any Person regarding the Fourth Amendment to the ARAO.**

There is no genuine disagreement between the parties about relevance and discoverability of documents responsive to RFP No. 1.  As such, the only issue regarding RFP No. 1 is whether good cause exists to warrant a protective order.

The first argument of SPG Defendants is that documents responsive to RFP No. 1 are documents that OxyChem has access to or are already in OxyChem's possession.  However, this issue has been rendered moot because OxyChem has already advised SPG Defendants during the meet-and-confer, and again through motion practice that, OxyChem is not requesting the

production of documents it already has.

SPG Defendants also argue that certain responsive documents are privileged and/or confidential. SPG Defendants have not produced any privilege log that would identify the information and state the basis for withholding documents as required by *Rule* 26.

It appears that SPG Defendants do not believe a privilege log is required to analyze its claim that materials responsive to RFP No. 2 are privileged or protected.  Indeed, the only reference to a privilege log in the Motion for Protective Order concerns SPG Defendants' contention that under the ESI Protocol, SPG Defendants do not need to search, provide, or include in their privilege logs: (i) custodial files of counsel and outside attorneys advising in this litigation; (ii) custodial files of in-house counsel advising in this litigation; and/or (iii) joint defense communications.  A privilege log, however, is necessary for the Special Master and OxyChem to confirm SPG Defendants' assertion that these materials are privileged and, thus, can be withheld in discovery.  Similarly, SPG Defendants have not provided any other notice with sufficient detail to enable the Special Master to understand the basis for a claim of privilege or confidentiality sufficient to completely withhold documents.

Further, SPG Defendants have not set forth an express argument regarding their interest in privacy or that the information is being requested for any illegitimate or improper purpose.  Along the same vein, SPG Defendants have not stated there is any potential for embarrassment or concern for public health and safety. Finally, sharing the information among the parties would promote fairness and efficiency given OxyChem has already made clear it is only seeking documents that it does not have.

Accordingly, SPG Defendants have not demonstrated good cause to warrant a protective order for documents responsive to RFP No. 1.

2.      **RFP No. 2.**    **All Communications with FTI regarding the Diamond Alkali Superfund Site, including Communications regarding the RM10.9 Recommendation.**

The parties dispute whether the documents responsive to RFP No. 2 are discoverable.  SPG Defendants argue that the documents are privileged because they are joint defense documents related to internal allocations regarding settlements with the government and are further protected by the attorney-client privilege and work product doctrine.  By way of support, SPG Defendants assert that FTI is a consulting firm that was hired by the CPG, and as a result, if FTI drafted a report regarding an allocation of costs related to performance and funding obligations under a settlement with EPA, that consultant's work and analyses are entitled to protection.

*Rule* 26(b)(5) permits a party to withhold information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material.  To assert a privilege or protection, the party must

> (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

[FED. R. CIV. P. 26(b)(5)(A)(i)-(ii).]

The party asserting a claim of privilege or protection must give notice to the receiving party that is "as specific as possible in identifying the information and stating the basis for the claim." FED. R. CIV. P. 26, Advisory Committee Note to Subdivision (b)(5).  The notice "should be sufficiently detailed so as to enable the receiving party and the court to understand the basis for the claim and to determine whether waiver has occurred."  *Id.*  Accordingly, the party asserting a privilege or protection bears the burden of establishing its applicability on a document-by-document basis.  *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) (stating

"privilege must be asserted" on "document-by–document" basis); *In re Human Tissue Prod. Liab. Litig.*, 255 F.R.D. 151, 163 (D.N.J. 2008) (same). Therefore, the burden is on the moving party to demonstrate that a particular privilege attaches and, thus, a protective order should be entered.

Here, SPG Defendants have not produced any privilege log that would identify the information and state the basis for withholding documents as required by *Rule* 26. Similarly, SPG Defendants have not provided any other notice with sufficient detail to enable OxyChem and the Special Master to understand the basis for the claim of privilege. Instead, SPG Defendants have only presented the Motion for Protective Order as its basis for withholding documents. Ordinarily, the Special Master would be compelled to rule against SPG Defendants since it has failed to comply with the notice requirement pursuant to *Rule* 26 and baldly asserts that documents are privileged. However, as SPG Defendants point out, the issue of documents from and with FTI has already been the subject of discussions and an agreement between the parties.

On September 11, 2019, OxyChem and SPG Defendants submitted a joint report to the Special Master on the status of the parties' efforts to resolve outstanding discovery issues ("September 2019 Joint Report"). Specifically, the parties reported on the production of documents responsive to subpoenas served on The Intelligence Group and FTI. As set forth in the September 2019 Joint Report, the parties agreed to produce documents in FTI's possession, but further agreed that certain documents would be withheld from production on the basis of the attorney-client privilege or work product protection.

SPG Defendants argue that despite the agreement set forth in the September 2019 joint Report, OxyChem, by way of the Cross-Motion to Compel, seeks FTI documents related to a government settlement. Simply put, OxyChem cannot circumvent the agreement between the parties' and representations to the Special Master about the production and applicable privilege to

FTI documents.  Notwithstanding, there does not appear to be any good cause (*e.g.*, privacy, legitimate purpose, embarrassment, public health and safety concerns, fairness and efficiency, etc.), to warrant a protective order, particularly given that the parties have previously agreed to produce documents relating to FTI.  Indeed, the Special Master fails to see how the requested FTI documents cannot be withheld or redacted for privilege and work product, if any, and then produced in discovery.  *See Kopacz v. Del. River & Bay Auth.*, 225 F.R.D. 494, 497 (D.N.J. 2004) (stating party "resisting discovery must show specifically how" the requested information "is not relevant or . . . is overly broad, burdensome[,] or oppressive")  (citations and internal quotations omitted).  Therefore, the Motion for Protective Order is denied as to RFP No. 2.

As a result, to the extent SPG Defendants have a basis to withhold documents responsive to RFP No. 2, they can do so pursuant to the parties' agreement and applicable law.  More specifically, SPG Defendants shall redact any applicable privilege and work product for materials responsive to RFP No. 2 and, thereafter, produce those materials with redactions.  Further, SPG Defendants shall include any responsive materials withheld in discovery in a privilege log, as appropriate.

###### 3.      <u>RFP No. 4.</u>     If You participated in the Batson Process, all Documents regarding Your Decision to participate in the Batson Process.

SPG Defendants contend that information regarding the Batson Process is privileged, and/or not relevant because OxyChem refused to participate in the allocation process. SPG Defendants further state that their participation in the Batson Process alone is sufficient to demonstrate adequate cooperation for purposes of the Gore factors and no further discovery is necessary on this issue.

In its opposition, OxyChem argues that the Special Master has previously decided that the circumstances of OxyChem's departure from the CPG and its decision to not participate in the

Batson Process are relevant and proportional to the needs of this case. Thus, according to OxyChem, information related to the Batson Process is discoverable, including SPG Defendants' participation, or lack thereof, in the same.  OxyChem also asserts that, like OxyChem, SPG Defendants' cooperation with government entities is discoverable.

The Special Master has already decided that certain documents related to the Batson Process are relevant and proportional to the needs of the case—specifically documents demonstrating cooperation with the government.  This is true even though SPG Defendants make a distinction between OxyChem's decision to not cooperate in the allocation process from SPG Defendants' decision to cooperate.  Therefore, under the broad standard applied to discovery, such a distinction, alone, does not entitle SPG Defendants to relief. here. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d at 671 (Court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled.") (citation and internal quotations omitted).  Likewise, SPG Defendants have not provided any law for the proposition that participation in an allocation process, by itself and without consideration of surrounding facts, is dispositive of cooperation for purposes of a Gore factor analysis.

Indeed, on August 11, 2021, the Special Master granted in part and denied in part SPG Defendants' motion to compel responses to fourteen of twenty-eight requests in SPG Defendants' Second Request for Production of Documents (ECF No. 1380 and 1381) ("Special Master Decision").  In that motion, SPG Defendants' Request Nos. 17 and 18 concerned OxyChem's departure from the CPG, and refusal to participate in the EPA–sponsored allocation process. Pertinent here, the Special Master concluded that "[t]his is a complex environmental case, with a timeline of events dating back decades and involving significant government participation and communications" and "documents sought in Requests 17 and 18 are relevant and could reasonably

lead to the discovery of information relating to the degree of cooperation with authorities by OxyChem." (Special Master Decision at 7-8)   As a result, the Special Master stated that the "requested information may lead to evidence that is pertinent for an allocation analysis." (Special Master Decision at 7-8).   The same holds true for documents responsive to RFP No. 4.

SPG Defendants have similarly cited the Special Master Decision in respect of Requests No. 17 and 18 in filings to the Court. *See* SPG Defs.' App. Br. at 2 n.1 ("Those requests included two document requests regarding OxyChem's non-cooperation with the CERCLA process (its decision to withdraw from the *Cooperating* Parties Group and not to participate in the EPA-sponsored allocation process designed to facilitate settlement outside of litigation) . . . ."). Put simply, SPG Defendants' cooperation with the government and the extent of their participation in the Batson Process is relevant and proportional to the needs of the case.

SPG Defendants' privilege argument is also unpersuasive based on SPG Defendants' submissions related to the Special Master Decision. By way of example, SPG Defendants have represented to the Court that:

> not to participate in the EPA-ordered Batson allocation (Request 18).[1] The SPG understands that these Requests may implicate privilege, but OCC cannot simply dodge these topics altogether. Any responsive, non-privileged materials are directly relevant to developing an understanding of OCC's degree of cooperation with the federal and state governments and should be produced; any

> responsive, privileged materials should be logged. Furthermore, these Requests may shed light on any number of other significant issues, such as OCC's understanding of its own liability for the Site, the nature and extent of OCC's oversight and direct involvement in Maxus's and Tierra's remedial strategy and decisions, and OCC's direct costs related to the Site.

[(ECF No. 1145, at 3-4).]

In short, despite SPG Defendants' acknowledgment that their discovery demands may implicate privilege, they nonetheless moved to compel the production of the same.  Therefore, if RFP No. 4 seeks documents that may implicate privilege, SPG Defendants have failed to

demonstrate that the production of documents, which concern similar issues raised by SPG Defendants' motion to compel as to Requests 17 and 18, should not be compelled here.

Moreover, OxyChem's statement, roughly three years ago, that it would not seek information related to the Batson Process is of no consequence.  SPG Defendants object to RFP No. 4 because "OxyChem previously stated that it believes the Administrative Dispute Resolution Act ("ADR Act") protects submissions to Batson and agreed that OxyChem would not seek information related to the Batson allocation process[,]" *See* ECF No. 1959-1 at 10 (citing *Occidental Chem. Corp. v. 21st Century Fox Am., Inc., No.*, 2019 U.S. Dist. LEXIS 231774 (D.N.J. March 4, 2019)).  It is true that the Magistrate Judge stated that OxyChem "acknowledged that the ADR Act protects submissions made by the allocation participations to the allocator, and has affirmed that it 'has not sought, and does not intend to seek in this litigation, information regarding the Batson Process.'" *Occidental Chem. Corp.*, 2019 U.S. Dist. LEXIS 231774 at *134 (citing Pl. Opp'n Br. at 1-2, ECF No. 449). The Magistrate Judge, however, noted, "until [OxyChem] actually attempts to seek discovery in this case which Defendants object to, the Court views the SPG's protective order as a preemptive measure not based on a present controversy in this case." *Id.* at *134-35.

In other words, the court did not find that OxyChem's purported acknowledgement was a bar to seeking discovery of the Batson Process.  To be sure, SPG Defendants' previous motion for a protective order, which was denied, was decided more than three years ago. Since that time, paper and ESI discovery have been exchanged, and depositions are scheduled to begin. Accordingly, OxyChem is free to seek discovery of Batson Process materials, and SPG Defendants are free to object on the basis of any applicable privilege or protection.

Finally, SPG Defendants fail to show, with any specificity, good cause or the basis that

they would be unduly burdened to produce the requested materials to warrant a protective order. *See Adesanya*, 2015 U.S. Dist. LEXIS 159712 at \*5.  Indeed, the purported "injury must be shown with specificity."  *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d at 671 (citation and internal quotations omitted).  Specificity is also required when determining whether good cause is met to warrant the entry of a protective order.  *See Arnold*, 477 F.3d at 110 ("[W]hen parties do not describe their harm other than in generalized allegations of injury to reputation and to relationships with clients, they have not satisfied the embarrassment factor in the good cause analysis.") (citations and internal quotations omitted).  As a result, since SPG Defendants failed to set forth facts showing that they would be unduly burdened, and/or good cause, SPG Defendants similarly failed to meet their burden for a protective order as to RFP No. 4.

      **4.**    <u>**RFP No. 6.**</u>    **All Documents in the possession, custody, or control of You or the CPG regarding the decision to terminate or cease the 2015 Allocation Process.  This Request includes Communications with any Person regarding the decision to terminate or cease the 2015 Allocation Process**.

SPG Defendants argue that documents responsive to RFP No. 6 would implicate numerous privilege concerns. And, if any non-privileged documents responsive to RFP No. 6 exist, then they would have already been produced to OxyChem by the CPG. Thus, a protective order should purportedly be entered.

As previously set forth, *Rule* 26(b)(5) permits a party to withhold information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material.  The party asserting privilege or protection must give sufficient notice to the receiving party to enable the receiving party and the court to understand the basis and validity for the claim.  *See Rockwell Int'l*, 897 F.2d at 1265.

SPG Defendants failed to provide adequate notice under *Rule* 26 to allow OxyChem and

the Special Master to determine the sufficiency of its claim of privilege.  SPG Defendants state in their response to RFP No. 6, and again in the Motion for Protective Order that, RFP No. 6 requests documents that are subject to confidentiality requirements in the AROA, settlement privileges and protections, attorney-client privilege, joint defense privilege, common interest privilege, and work product protection and/or documents that have been or will be produced by CPG.

Based on the submissions presented, and the facts as they are presently known, SPG Defendants have neither presented sufficient information to determine whether documents responsive to RFP No. 6 are in fact subject to any privilege or protection, and whether good cause exists to warrant the issuance of a protective order.  The Special Master cannot determine based on conclusory and non-descriptive statements about the general character of categories of documents whether a document, if any exist, is privileged or subject to protection.  Similarly, SPG Defendants do not even discuss any good cause factors (*e.g.*, privacy, legitimate purpose, embarrassment, public health and safety concerns, fairness and efficiency, etc.) in support of their request for a protective order as to RFP No. 6.  Instead, SPG Defendants merely state that the documents, if any exist, would have been produced to OxyChem by the CPG already.  To that end, the Special Master agrees that SPG Defendants should not be required to produce any documents that SPG Defendants are specifically aware are already in OxyChem's possession, custody, or control.

In short, because SPG Defendants failed to show that responsive documents, if they exist, are in fact privileged or protected, SPG Defendants' burden is similarly not met as to RFP No. 6. However, to the extent SPG Defendants can confirm OxyChem has previously received certain documents from the CPG, they are not required to re-produce those materials.

b)      **SPG Defendants Failed to Carry Their Burden of Demonstrating Materials
are Subject to Privilege or Protection**

SPG Defendants' privilege and protection argument is painted with a wide brush.  Indeed,
SPG Defendants assert that RFP Nos. 1, 2, and 6 "implicate *multiple* layers of privilege issues,
including the confidentiality requirements of the AROA, federal and/or state settlement and/or
mediation privileges, dispute resolution communication laws, and attorney-client privilege, joint-
client privilege, common interest privilege, and work product protection."  *See* Motion for
Protective Order at 3. SPG Defendants, however, fail to show that responsive materials are
privileged to shield the production of the same.

The *Federal Rules of Civil Procedure* are clear.  The burden is on the moving party to
demonstrate that a particular privilege attaches to warrant the entry of a protective order.  *Rockwell
Int'l*, 897 F.2d at 1265; *In re Human Tissue Prod. Liab. Litig.*, 255 F.R.D. at 163.  SPG Defendants
did not do so here.  The Motion for Protective Order is lacking in specifics, and heavily relies on
vague and conclusory assertions of privilege. Further, although the Cross-Motion to Compel is
limited largely to relevance and discoverability, and does not address SPG Defendants' privilege
argument, it is SPG Defendants', not OxyChem's, burden to show that materials sought by
OxyChem are privileged or protected. Moreover, while OxyChem's cursory argument that SPG
Defendants waived any applicable privilege has no merit, the Special Master agrees that it is SPG
Defendants' burden to demonstrate that materials sought by RFP Nos. 1, 2, and 6 are privileged or
protected.  SPG Defendants failed to carry their burden at this stage.

1.      *Gregory* **Case Does Not Apply.**

The Motion for Protective Order rests entirely on the District Court's non-binding decision
in *Gregory v. Gregory*.  Indeed, other than citing to cases in the Ninth Circuit and the Western
District of New York, SPG Defendants assert that a protective order should be entered because,

like in *Gregory*, the documents are privileged, and/or SPG Defendants would be unduly burdened. Both arguments are unavailing.

In *Gregory v. Gregory*, the Magistrate Judge reviewed several discovery motions, including a motion to compel documents withheld in part on privilege, and a cross-motion for a protective order regarding the same documents. That case, however, does not warrant the entry of a protective order here because the facts here are clearly distinguishable. In *Gregory*, the court analyzed whether a protective order should be entered regarding four (4) different sets of documents. As to the first set, the court determined that the work product doctrine applied to shield those documents, "but only to the extent that those documents concern" the topic at issue. *Id.* at *18-19. As a result, the court ordered that the materials be redacted and, then, produced. *Id.* at *19. Importantly, and unlike here, the court in that case reviewed privilege logs submitted by defendant as part of its motion.

As to the second set of documents, the court found that the defendant waived the attorney-client privilege, but that the work product doctrine shielded these documents from production. *Id.* at *19-20. Thus, the court, again, ordered that the documents be produced after redacted. *Id.* at *20.

The court also ordered that the third set of documents be produced because the attorney-client privilege had been waived, and the documents were not work product. *Id.* at *20-22. Finally, the court ordered that the final set of documents be produced "or [the opposing party] certify that none [of the requested documents] exist." *Id.* at *22.

To the extent *Gregory* applies here, the case supports the production of materials responsive to the RFPs because SPG Defendants have failed to satisfy their burden to show that the materials are indeed privileged, and if they are, whether the documents can be produced in

redacted form.  As stated herein, the Special Master is unable to make such a finding because SPG Defendants have not even acknowledged the existence of responsive materials, and did not submit a privilege log, or a set of documents for *in camera* review.

Accordingly, the *Gregory* case does not support a finding of good cause for a protective order because it is distinguishable.

### 2.    RFPs Are Not Outside the ESI Protocol.

SPG Defendants assert that the requested information is outside the ESI Protocol.  The Joint Protocol for Production of Documents and Electronically-Stored Information (ECF No. 544), provides that "[n]o party is required to search, produce, or include in its privilege logs: . . . joint defense communications pursuant to a joint defense agreement, provided that the date of the joint defense agreement and the parties to it are disclosed . . . ." *Id.* at 11.  There appears to be no dispute that communications related to the CPG were subject to a joint defense agreement.  In fact, a March 13, 2019 letter annexed to the Motion for Protective Order (Exhibit F), shows OxyChem understand that it remained "subject to the obligation to protect the confidentiality of" information exchanged "for purposes of the joint defense arrangement[,]" even after OxyChem's withdrawal from the CPG.  *See* (ECF No. 1959-6).  To that end, SPG Defendants assert that the requested information is covered by a joint defense agreement and/or contain communications related to a joint defense agreement and, thus, they do not need to identify, review, and produce such materials. Such assertions, alone, are not enough.

The Special Master cannot confirm the veracity of SPG Defendants' assertions without a review of the documents at issue and/or receipt of a privilege log.  If SPG Defendants believe that documents responsive to this RFP are subject to joint-defense communications, they should have provided the required details about the agreement, the parties, and clearly show that the

communications are indeed privileged communications.  SPG Defendants did not do so here.

Finally, SPG Defendants argue that the RFPs seek to reopen ESI discovery three years into the case.  ESI discovery is not closed, and the fact discovery end-date was extended to January 15, 2023 (ECF No. 2012).  As a result, the parties have a continued obligation to make ESI discovery.

> ### 3.    SPG Defendants Shall Produce Responsive Documents and a Privilege Log.

The *Federal Rules of Civil Procedure* "embrace a liberal policy for providing discovery . . . ."  *Carver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  On a motion to compel, "[t]he party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence."  *Carver*, 192 F.R.D. at 159 (citation omitted).  "The scope of discovery does, however, have ultimate and necessary boundaries."  *Id.* (citations and internal quotations omitted).

Because SPG Defendants failed to demonstrate good cause for entry of a protective order, SPG Defendants are hereby ordered to produce, within 30 days, all non-privileged responsive materials in their possession, custody, or control that are responsive to RFP Nos. 1, 2, 4, and 6.  In addition, the Special Master is aware that by not having the benefit of a privilege log, and/or reviewing the documents *in camera*, some responsive materials may include information that implicate privilege and/or other protection.  Thus, SPG Defendants shall produce redacted versions of the responsive materials subject to the Joint Protocol, or a privilege log in conjunction with its production.

## <u>CONCLUSION</u>

SPG Defendants' motion for a protective order is **DENIED** and OxyChem's cross-motion

to compel is **GRANTED**.


_/s/ Thomas P. Scrivo_
**THOMAS P. SCRIVO**
**Special Master**