## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, | **Civil Action No. 18-11273 (MCA)(LDW)** |
| Plaintiff, | **SPECIAL MASTER DECISION GRANTING IN PART AND DENYING IN PART SMALL PARTIES GROUP DEFENDANTS' MOTION FOR A DETERMINATION OF PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMISSION AND DENYING PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER** |
| v. | |
| 21ST CENTURY FOX AMERICA, INC., *et al*., | |
| Defendants. | |

## <u>INTRODUCTION</u>

This matter comes by way of a Motion, filed by the Small Parties Group Defendants ("SPG Defendants") on January 14, 2022, pursuant to *Federal Rule of Civil Procedure* 36(a)(6), for a determination regarding Plaintiff, Occidental Chemical Corporation's ("OxyChem's"), amended answers to SPG Defendants' Requests for Admission (the "RFAs") (ECF No. 1945) (the "RFA Motion"). SPG Defendants contend that OxyChem's amended responses are insufficient and, thus, seek an Order deeming the amended responses to the RFAs admitted.

On February 24, 2022, OxyChem filed opposition to the RFA Motion and, pursuant to *Federal Rule of Civil Procedure* 26(c) and *L.Civ.R.* 7.1(h), a cross-motion for a protective order (ECF No. 1997) ("Cross-Motion"). OxyChem asserts that the RFAs violate the purpose of *Federal Rule of Civil Procedure* 36 because the RFAs are oppressive and unduly burdensome.

On March 28, 2022, SPG Defendants' filed a reply in further support of the RFA Motion and in opposition to the Cross-Motion (ECF No. 2011) (the "Reply").

The parties have participated in several meet-and-confers to resolve the discovery dispute over the RFAs, but were unable to come to a full resolution. However, the parties have agreed

that the dispute is limited to 267 RFAs identified in Exhibit A to OxyChem's November 19, 2021, letter to SPG Defendants (ECF No. 1907) (the "Nov. 19 Letter"). The motions, therefore, are ripe for a decision by the Special Master. For the reasons set forth herein, the RFA Motion is granted in part and denied in part, and the Cross-Motion is denied. The Special Master's Findings as to all disputed RFAs are detailed in Exhibit A to this Decision and OxyChem has 30 days to provide amended answers as required in Exhibit A.

## **BACKGROUND**

### A.   **SPG Defendants' RFAs**

On July 13, 2021, SPG Defendants served 449 RFAs on OxyChem (ECF No. 1504) (the "July 13 Letter"). *See* July 13 Letter at 1; *see also* Exhibit A to the RFA Motion.[1]

On August 13, 2021, OxyChem sent a letter to SPG Defendants to request a meet-and-confer to discuss the RFAs. *See* ECF No. 1945-9.

On August 23, 2021, OxyChem sent a letter to SPG Defendants wherein OxyChem: (i) objected to the RFAs as unduly burdensome; (ii) proposed a meet-and-confer to discuss the RFAs; and (iii) requested that the Special Master grant leave to file a motion to quash or for protection. *See* July 13 Letter.

On September 2, 2021, the parties held a meet-and-confer on the RFAs. *See* ECF No. 1997-4.

On September 10, 2021, OxyChem provided its initial responses to the RFAs. *See* ECF No. 1945-3 at 4.

On October 13, 2021, SPG Defendants sent a letter to OxyChem stating that OxyChem's initial responses to the RFAs were improper and included inappropriate answers and/or denials.

---

[1] SPG Defendants served the RFAs prior to the parties' agreement that the universe of RFAs is limited to 267 RFAs.

*See* ECF No. 1945-10 ("Oct. 13 Letter").  SPG Defendants also requested a meet-and-confer to discuss the responses.  OxyChem did not respond to the Oct. 13 Letter.

On October 27, 2021, SPG Defendants sent a follow up letter to OxyChem.  *See* ECF No. 1945-11.

On November 10, 2021, the parties held a second meet-and-confer to discuss OxyChem's initial responses to the RFAs.  *See* ECF No. 1945-2.

On November 17, 2021, the Special Master held a status conference (the "November Status Conference").  At the November Status Conference, OxyChem reported that it agreed to provide amended responses to the RFAs on or about December 8, 2021.  Prior to doing so, however, OxyChem requested that SPG Defendants submit correspondence detailing which, if any, of the 449 RFAs SPG Defendants planned to withdraw.

On November 19, 2021, OxyChem filed the Nov. 19 Letter wherein OxyChem requested confirmation that the discovery dispute was limited to the 267 RFAs listed in Exhibit A to the Nov. 19 Letter.

On November 30, 2021, SPG Defendants confirmed that the dispute was limited to the 267 RFAs identified in Exhibit A, and that any motion practice related to the RFAs would not include RFAs outside the 267.  *See* ECF No. 1910.

On December 8, 2021, OxyChem served amended answers and objections to the RFAs (the "Amended Responses").  *See* ECF No. 1945-12.

On December 9, 2021, OxyChem filed a letter to the Special Master to provide an update on the dispute.  *See* ECF No. 1922 at 1.

On December 15, 2021, SPG Defendants filed a letter stating that SPG Defendants planned to file a motion to determine the sufficiency of the Amended Responses.  *See* ECF No. 1929.

**B.      SPG Defendants' RFA Motion**

On January 14, 2022, SPG Defendants filed the RFA Motion.  SPG Defendants contend

that the Amended Responses should be deemed admitted, or alternatively, OxyChem should be

directed to serve additional amended responses for failing to properly admit or deny the RFAs.

To that end, SPG Defendants set forth three arguments in support of the RFA Motion: (i)

OxyChem relied on boilerplate objections; (ii) OxyChem provided evasive answers to

straightforward requests; and (iii) OxyChem offers irrelevant, self-serving explanations.  SPG

Defendants also rely on unpublished cases from the Eastern District of Pennsylvania for the

proposition that responses, which do not go to the truth contained in the RFAs and purportedly

frustrate the purpose of *Federal Rule of Civil Procedure* 36, require that the responding party

submit amended responses.  *See United States v. Lorenzo*, 1990 U.S. Dist. LEXIS 7362 (E.D. Pa.

June 14, 1990); *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2021 U.S. Dist. LEXIS

64382 (E.D. Pa. April 1, 2021).

**C.      OxyChem's Cross-Motion for a Protective Order**

On February 24, 2022, OxyChem filed the Cross-Motion.  By way of support, OxyChem

asserts that a protective order should be entered because: (i) the RFAs are oppressive and unduly

burdensome by sheer number, form, and subject; (ii) the Amended Responses are not evasive; and

(iii) OxyChem provided qualifications and explanations where necessary.

In citing to a decision from the District for the District of Columbia, *Harris v. Koenig*, 271

F.R.D. 356, 372 (D.D.C. 2010), OxyChem asserts that the propounding parties' disagreement with

an answer is neither a proper basis for finding a response insufficient, nor grounds for deeming

requests admitted. OxyChem also cites to an unpublished decision from this District for the

proposition that whether OxyChem properly denied an RFA requires an analysis of the denial and

qualification, if any. *In re Valeant Pharms. Int'l Secs. Litig.*, 2021 U.S. Dist. LEXIS 108161, *50 (D.N.J. April 1, 2021) (citations omitted).

Finally, OxyChem asserts that should the Special Master find any of the Amended Responses insufficient, the proper relief is to order OxyChem to submit additional amended responses.

**D.     SPG Defendants' Reply**

On March 28, 2022, SPG Defendants filed the Reply.   SPG Defendants set forth two arguments in support of granting the RFA Motion and denying the Cross-Motion.   First, SPG Defendants argue that OxyChem improperly seeks to relieve itself of its obligation to further amend its Amended Responses.   Second, SPG Defendants argue that OxyChem failed to show significant harm or that the RFAs are unduly burdensome and/or oppressive.

## LEGAL STANDARD

**A.     Requests for Admission Are Used to Admit the Truth of Matters Pertinent to the Case**

*Federal Rule of Civil Procedure* 36 governs requests for admission.   *Shelton v. Fast Advance Funding,* LLC, 805 Fed. Appx. 156, 158 (3d Cir. 2020).   The *Rule* provides in pertinent part:

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents.
>
> [FED. R. CIV. P. 36(a)(1)(A)-(B).]

Requests for admission "serve[] two vital purposes, both of which are designed to reduce trial time." *Notes of Advisory Committee on 1970 Amendments*.   First, "to facilitate proof with respect to issues that cannot be eliminated from the case," and second, "to narrow the issues by

eliminating those that can be." *Ibid.*

*Federal Rule of Civil Procedure* 36 "give[s] an admission a conclusively binding effect, for purposes only of the pending action, unless the admission is withdrawn or amended." *Note to Subdivision (b)*; *see also Shelton*, 805 Fed. Appx. at 158-59 ("An admission is . . . an unassailable statement of fact and is binding on the non-responsive party unless withdrawn or amended.") (citations omitted); *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992) ("[A]dmissions are conclusive for purposes of the litigation and are sufficient to support summary judgment.") (citation omitted).

If a "matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." FED. R. CIV. P. 36(a)(4). When denying a request for admission, the "use of only the word denied is often sufficient under the [R]ule." *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967 (3d Cir. 1988) (citations and internal quotations omitted).

The propounding party "may move to determine the sufficiency of an answer or objection." FED. R. CIV. P. 36(a)(6). "Unless the court finds an objection justified, it must order that an answer be served." *Id.* Upon "finding that an answer does not comply with" *Federal Rule of Civil Procedure* 36, the "court may order either that the matter is admitted or that an amended answer be served." *Id.*

Accordingly, on a motion pursuant to *Federal Rule of Civil Procedure* 36(a)(6), the court must analyze each of the requests of admission, and the response thereto, to determine if the responding party must submit amended answers and/or if any answer should be deemed admitted.

B.      **Good Cause Must Be Demonstrated to Warrant Entry of a Protective Order**

*Federal Rule of Civil Procedure* 26(c)(1) provides in pertinent part that:

> A party or any person from whom discovery is sought may move for
> a protective order in the court where the action is pending . . . The
> court may, for good cause, issue an order to protect a party or person
> from annoyance, embarrassment, oppression, or undue burden or
> expenses, including . . . (A) forbidding the disclosure or discovery;
> . . . [or, *inter alia*, ] (D) forbidding inquiry into certain matters, or
> limiting the scope of disclosure or discovery to certain matters . . . .

[FED. R. CIV. P. 26(c) (1)(A)-(D).]

"If a motion for a protective order is wholly or partly denied, the court may, on just terms,

order that any party or person provide or permit discovery." FED. R. CIV. P. 26(c)(2).

A "court may issue a protective order to regulate the terms, conditions, time or place of

discovery." *Adesanya v. Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 159712, *5 (D.N.J. Nov.

24, 2015) (citations omitted).  Indeed, the "objective" of *Federal Rule of Civil Procedure* 26 is "to

guard against redundant or disproportionate discovery by giving the court authority to reduce the

amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry."

*Notes of Advisory Committee on 1983 amendments, Note to Subdivision (b)*.  To that end, the

"grounds" for "limiting discovery reflect the existing practice of many courts in issuing protective

orders under Rule 26(c)."  *Id.*

## DISCUSSION

A.      **The Motions Are Not Procedurally Defective**

Several procedural arguments are raised by the parties that must be initially addressed.

First, it is undeniable that the RFAs at issue here are the 267 RFAs identified by OxyChem and

confirmed by SPG Defendants.  Therefore, the Special Master's Findings apply only to the 267

RFAs.  This Decision has no bearing on any of the 182 other RFAs not identified in Exhibit A to

the Nov. 19 Letter, and does not bar any party from serving requests for admission on any other party at a later date.

Second, OxyChem was required to respond to the RFAs within thirty-days, but failed to do so. *See* Fed. R. Civ. P. 36(a)(3); *see also Certain Underwriters at Lloyd's of London v.* Alesi, 843 F. Supp. 2d 517, 532 (D.N.J. Dec. 30, 2011) (citations omitted). However, upon receipt of the RFAs, OxyChem requested an extension of time to respond. *See* ECF No. 1945-8 at 6. The parties also held their first meet-and-confer prior to the due date. Finally, OxyChem submitted its initial responses to the RFAs on the requested date. As a result, neither OxyChem's initial responses nor the Amended Responses are untimely.

Third, contrary to SPG Defendants' assertion, OxyChem's motion for leave to file a motion to quash or protective order is of no consequence. On September 22, 2021, the Special Master held a status conference. At the September Status Conference, the Special Master stated that motion practice related to the RFAs would be decided on "the merits of the issue as opposed to any procedural wranglings[,]" and not on whether OxyChem purportedly waived its "burden objection by answering" the RFAs. *See* ECF No. 1997-10, Tr. of September Status Conference at T54:25-T56:1. Therefore, the Special Master does not accept SPG Defendants' contention that OxyChem's motion to quash or for a protective order is moot because of OxyChem's responses to the RFAs.

Fourth, *Federal Rule of Civil Procedure* 36 permits OxyChem to qualify its answer. *See* Fed. R. Civ. P. 36(a)(4) (A denial "must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer to deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."). SPG Defendants' arguments to the contrary do not bar OxyChem from qualifying its Amended Responses, where appropriate. The

appropriateness of each of OxyChem's qualified responses is addressed in Exhibit A.

Fifth, *Federal Rule of Civil Procedure* 36 provides that "a denial is a perfectly reasonable response[,]" *United Coal Cos.*, 839 F.2d at 967. The denial, however, "must fairly respond to the substance of the matter; and when good faith requires that a party qualify or an answer to deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. FED. R. CIV. P. 36(a)(4). The Special Master agrees that OxyChem does not need to "explain" the reasons for every one of its Amended Responses, *see* ECF No. 1504 n.1, but may need to explain certain denials, as detailed herein. Accordingly, the Special Master will not strike all RFA responses that contain a mere denial. Instead, the *Rule* requires an analysis of each RFA and the Amended Response thereto.

Accordingly, the RFA Motion and Cross-Motion are not procedurally defective, and thus, the motions will be decided on the merits.

**B.**   **Good Cause is Not Demonstrated to Trigger Entry of a Protective Order**

Before the Special Master are two interrelated issues: (i) whether OxyChem carried its burden to warrant entry of a protective order; and (ii) whether the Amended Responses comply with *Federal Rule of Civil Procedure* 36. OxyChem failed to carry its burden to trigger entry of a protective order regarding the RFAs. OxyChem is directed to comply with the Special Master's Findings for each individual RFA and Amended Response as set forth in Exhibit A, which is annexed to this Decision.

*Federal Rule of Civil Procedure* 26 requires that the movant demonstrate, with specificity, the purported harm that will occur if a protective order is not entered. FED. R. CIV. P. 26(c)(1); *see also Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir. 2007) ("Good cause" is defined as "showing that disclosure will work a clearly defined and serious injury to the party seeking

closure.") (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1986)).  Failure to meet this burden is detrimental to the protective order application. *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are not enough) (citations omitted).  The harm, if any, must also "be significant." *Id.* (citations omitted).  The "burden of persuasion is on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  Indeed, "[t]o overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection." *Cipollone*, 785 F.2d at 1121; *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted).

"Good cause" is established based on "balancing a number of considerations." *Arnold*, 477 F.3d at 108 (citations omitted); *see also In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (citation and internal quotations omitted).  Thus, whether a protective order is warranted turns on a finding that the moving party has established good cause based on an analysis of pertinent factors.  Courts in this District have denied motions for protective orders when movants fail to set forth the grounds "constituting good cause," and information sought by way of requests for admission is relevant under *Federal Rule of Civil Procedure* 26.  *See Del Monte Fresh Produce N.A. v. M/V Tundra Consumer*, 2005 U.S. Dist. LEXIS 54188, *3-5 (D.N.J. April 19, 2005).  Instead, courts have opted to make specific determinations regarding the scope of individual RFAs and the appropriateness of the responses thereto. *Mickley v. Sunrise Senior Living*, 2010 U.S Dist. LEXIS 152819, *5-7 (D.N.J. May 10, 2010).

OxyChem has not carried its burden for entry of a protective order. OxyChem failed to demonstrate that the RFAs are oppressive and/or unduly burdened by sheer number, form, and subject. Specifically, OxyChem contends that SPG Defendants' initial 449 RFAs are oppressive

and unduly burdensome.  Whether true or not is not pertinent to the Cross-Motion.  It is undisputed that SPG Defendants withdrew 182 of its initial RFAs (449 RFAs to 267 RFAs).  While certain of the disputed 267 RFAs are improper, they are not sufficiently oppressive or burdensome to warrant a protective order. *Federal Rule of Civil Procedure* 36 is clear "that a reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process." *Note to Subdivision (a)*.  In light of the scope of OxyChem's claims, responding to 267 RFAs is not unduly burdensome. In fact, responses to RFAs may well ease the trial process and resolve certain facts currently in dispute.[2]  Instead of entering a protective order, the Special Master has undertaken a detailed review of all disputed RFAs to determine the appropriateness of the requests and OxyChem's responses.  Accordingly, OxyChem's Cross-Motion for entry of a protective order is denied.

**C.** **Special Master Finds That Not All of The Amended Responses Comply with *Federal Rule of Civil Procedure* 36**

As a threshold matter, the Special Master finds that OxyChem's general objections serve no legitimate purpose. *Harding v. Dana Transp.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996).  As such, they are stricken.

As required by applicable law, the Special Master has made a specific finding in respect of each disputed RFA, analyzing OxyChem's response and the specific and particularized objections to each RFA. *See* Exhibit A. As set forth in Exhibit A, the Special Master has made one of the following findings regarding the RFAs and the Amended Responses:

(1)     The Amended Response complies with *Federal Rule of Civil Procedure* 36 and no further action is required;

---

[2] It is noted that the Cross-Motion does not include a good cause analysis. Instead, OxyChem asserts in conclusory fashion that the RFAs are oppressive and unduly burdensome without any specific factual basis.  The relevant case law is clear that this basis is insufficient.

(2)     The Amended Response does not comply with *Federal Rule of Civil Procedure* 36 and requires an amended response;

(3)     The Amended Response does not comply with *Federal Rule of Civil Procedure 36* and the request is deemed admitted; or

(4)     The RFA is improper and no further action is required.

## **<u>CONCLUSION</u>**

SPG Defendants' motion for a determination of the Amended Responses is **GRANTED** in part and **DENIED** in part, and OxyChem's cross-motion for a protective order is **DENIED**. OxyChem shall provide any required amended answers within 30 days from the date hereof.

*/s/ Thomas P. Scrivo*
**THOMAS P. SCRIVO**
**Special Master**

# **EXHIBIT A**

## **Special Master's Findings**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| **(15)** Admit that in 1984, DSCC signed an Administrative Consent Order with NJDEP regarding contamination at the Site. (OCC-CER000226082). | Objection 1, 2, 3, 4, and 5. This request seeks an admission regarding an administrative consent order, which document speaks for itself. Subject to these objections, admitted in part and denied in part. OCC admits that on March 8, 1984, Diamond Shamrock Chemicals Company and Marisol, Inc. signed an Administrative Consent Order with NJDEP pertaining to the property at 80 Lister Avenue; denied that this was an order pertaining to "contamination at the Site," because the Diamond Alkali Superfund Site was not added to the National Priorities List until September 21, 1984. | • Boilerplate objections that are inapplicable to request <br> • "Document speaks for itself" is inappropriate objection. <br> • Denial does not fairly meet substance of the request; OxyChem does not address whether the Administrative Consent Order relates to contamination of the Lister property | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental admits that Diamond Shamrock Chemicals Company ("DSCC") signed the subject Administrative Consent Order. This response fairly meets the substance of the request. Moreover, Occidental's objection to the term "contamination" is appropriate and contains a factual basis for the objection. |
| **(39)** Admit a 2002 study by William Hansen concluded that sediment sample immediately offshore of the Lister Plant contained the highest concentration of TCDD ever recorded in ambient environment (5 ppm). (William J. Hansen, A Statistical and Spatial Analysis of Dioxin-Furan Contamination in the Hudson Estuary, 24 Northeastern Geology & Envtl. Sci. 159, 169 (2002)). | Objection 1, 2, 3, 4, 5, 7, and 8. This request does not accurately recite the referenced document. Subject to these objections, denied. | • Boilerplate objections that are inapplicable to request <br> • Request does not quote document, so objection that request "does not accurately recite the referenced document" is inapposite <br> • Request accurately summarizes the referenced conclusion in the document <br> • Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which addresses the basis for the statement that the request does not accurately recite the contents of the referenced document. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| **(45)** Admit that in November 2013, NJDEP Site Remediation Program employee Anne Hayton referred to 2,3,7,8-TCDD in sediment as 'the pervasive, continuing source of risk' until remediated. (SPG-NJDEP-000019136). | Objection 1, 2, 3, 4, 5, 7, and 8. | • Boilerplate objections that are inapplicable to request and do not provide a basis for not responding | The Special Master finds that the response does not comply with Rule 36 as it merely contains objections with no admission, denial, or explanation. The Special Master orders that an amended answer be served. |
| **(73)** Admit that PCBs were generated at the Lister Plant as byproducts during the manufacture of chlorinated benzenes. | Objection 1, 2, 3, 4, and 7. Subject to and without waiving these objections, denied. | • Boilerplate objections that are inapplicable to request<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which addresses the basis for the denial. |
| **(75)** Admit that PCBs have been found in sediments adjacent to the Lister Plant. | Objection 1, 2, 3, and 4. The request is impermissibly vague and unlimited as to time. It does not define what the SPG considers to be "adjacent" to the Lister Plant. Subject to these objections, admitted in part and denied in part. Admitted that the riverside boundary of the Lister Plant property abuts the Lower 8.3 Miles of the Passaic River, which EPA has described as "ubiquitously" contaminated, bank to bank, with chemicals of concern including PCBs, and further admitted that properties owned by Defendant Sherwin Williams at 40, 60, and 62 Lister Avenue, which are located next door to the Lister Plant property, are contaminated with PCBs. Denied as to any implication that the Lister Plant is the source of PCBs on neighboring properties or | • Boilerplate objections that are inapplicable to request<br>• Objecting to word "adjacent" to evade responding directly to request<br>• Inappropriate extraneous narrative to avoid providing clean admission | The Special Master finds that this is an attempt to evade the substance of the request and orders that it be admitted that PCBs have been found in sediments on the riverside boundary of the Lister Plant. Occidental's objection to the term "adjacent" was appropriate, but Occidental clarified the term, as it understood it, in its response. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | in the Lower Passaic River because no operational or other evidence indicates the Lister Plant used or generated PCBs in any of its manufacturing processes. | | |
| **(82)** Admit that PCBs were detected in sumps and tanks at the Lister Plant. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is compound and vague. It fails to define what is meant by "detected" or to identify how, when, or where PCBs were allegedly "detected" in both "sumps and tanks" at some point in the decades-long operating history of the Lister Plant or during its subsequent remediation. OxyChem cannot, with reasonable inquiry and without undue burden, admit or deny this request. | • Boilerplate objections that are inapplicable to request<br>• Objecting to word "detected" to evade responding directly to request<br>• The request does define "where" PCBs were detected: "in sumps and tanks at Lister Plant"<br>• Request does not need to specify "how and "when" to be answerable.  If PCBs ever detected in sumps and tanks, OxyChem need only answer yes<br>• Hyper-technical objection to request as compound. | The Special Master finds that Occidental's response does not comply with Rule 36 and orders that an amended answer be served. The objection to the term "detected" is not proper and Occidental's grounds for refusing to respond is simply that "without reasonable inquiry and without undue burden," Occidental cannot admit or deny this request. Rule 36 requires that a party must affirmatively state that it lacks knowledge sufficient to respond only after it has made reasonable inquiry. |
| **(88)** Admit that in or about1984 Diamond identified PAHs in soil samples taken from locations onshore at the Lister Plant. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is compound and vague and fails to define what is meant by "Diamond" and how, when, or at what specific "locations" PAHs were "identified." It also fails to define the term "onshore." Subject to and without waiving these objections, admitted in part and denied in part. Admitted that the Lister Plant property, like other upland industrial areas throughout the Lower Passaic watershed, has background levels of PAHs. Denied as to any implication that the Lister Plant is the source of those PAHs | • Boilerplate objections that are inapplicable to request<br>• The request does define "locations" where PAHs were identified: soil onshore the Lister Plant<br>• Request does not need to specify "how and "when" to be answerable.  If PAHs ever identified in soil samples, OxyChem need only answer yes<br>• Extraneous narrative to avoid providing clean admission that "Lister Plant property. . . has background levels of PAHs." | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that samples from the Lister Plant site identified PAHs.  Occidental's response makes this admission, but in uncertain terms. Occidental's objection to the term "onshore" is appropriate, but is not sufficient to avoid responding to the request. Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | because: a) no known manufacturing or other process of the Lister Plant used or generated PAHs; and b) the Phase I Removal Area is a known depositional area that collects sediments transported there from elsewhere by the hydrodynamics of the Lower 8.3 Miles of the Passaic River, which the EPA has described as "ubiquitously" contaminated with chemicals of concern, bank to bank, including PAHs. | • Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | |
| **(93)** Admit that mercury has been found on the Lister Plant in soil. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague, compound, and unlimited as to time. It fails to state where, when, or in what samples "mercury has been found on the Lister Plant in soil." Subject to these objections, admitted in part and denied in part. Admitted that trace amounts of mercury have been found in some soil samples collected at or near the Lister Plant property but denied to the extent this request implies the source of this mercury was the Lister Plant itself because: a) no known industrial process of the Lister Plant generated or used mercury; b) the riverside boundary of the Lister Plant property abuts a portion of the Lower 8.3 Miles of the Passaic River, which EPA has described as "ubiquitously" contaminated with chemicals of concern, bank to bank, including | • Boilerplate objections that are inapplicable to request<br>• The request does define where the mercury was found: in the soil at the Lister Plant<br>• Request does not need to specify "how and "when" to be answerable.   If mercury ever detected in soil samples, OxyChem need only answer yes<br>• Extraneous narrative to avoid providing clean admission that "trace amounts of mercury have been found in some soil samples collected at. . . the Lister Plant Property"<br>• Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that mercury has been found in soil samples collected at the Lister Plant site. Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

4

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | mercury; and, c) mercury is transported freely through ground and floodwaters, including through the hydrodynamics of the Lower Passaic River which have created a depositional area abutting the riverside boundary of the Lister Plant property that contains sediments transported there from elsewhere. | | |
| **(94)** Admit that mercury has been found on the Lister Plant in groundwater. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague, compound, and unlimited as to time. It fails to state where, when, or in what samples "mercury has been found on the Lister Plant in soil." Subject to these objections, admitted in part and denied in part. Admitted that trace amounts of mercury have been found in some groundwater at or near the Lister Plant property but denied to the extent this request implies the source of this mercury was the Lister Plant itself because: a) no known industrial process of the Lister Plant generated or used mercury; b) the riverside boundary of the Lister Plant property abuts a portion of the Lower 8.3 Miles of the Passaic River, which EPA has described as "ubiquitously" contaminated with chemicals of concern, bank to bank, including mercury; and, c) mercury is transported freely through ground and floodwaters, including through | • Boilerplate objections that are inapplicable to request<br>• The request does define where the mercury was found: in the groundwater at the Lister Plant<br>• Request does not need to specify "how and "when" to be answerable.  If mercury ever found in groundwater, OxyChem need only answer yes<br>• Extraneous narrative to avoid providing clean admission that "trace amounts of mercury have been found in some groundwater at. . . the Lister Plant Property"<br>• Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that mercury has been found in the groundwater at the Lister Plant site. Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | the hydrodynamics of the Lower Passaic River which have created a depositional area abutting the riverside boundary of the Lister Plant property that contains sediments transported there from elsewhere. | | |
| **(96)** Admit that mercury was measured in sediment cores collected from the Phase I Removal Area. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague, compound, unduly burdensome, and unlimited as to time. It fails to identify the particular sediment core samples from the Phase I Removal Area about which it inquires, or to state where or when they were collected. Subject to these objections, admitted in part and denied in part. Admitted that trace amounts of mercury have been found in some sediment cores collected in the Phase I Removal Area but denied as to any implication that the Lister Plant is the source of this mercury because: a) no known industrial process of the Lister Plant generated or used mercury; b) the riverside boundary of the Lister Plant property abuts a portion of the Lower 8.3 Miles of the Passaic River, which EPA has described as "ubiquitously" contaminated with chemicals of concern, bank to bank, including mercury; and, c) mercury is transported freely through ground and floodwaters, including through the hydrodynamics of the Lower | • Boilerplate objections that are inapplicable to request <br> • The request does define where the mercury was collected: in the sediment cores from the Phase I Removal Area <br> • Request does not need to specify "how and "when" to be answerable.  If mercury ever measured in sediment cores collected from the Phase I Removal Area, OxyChem need only answer yes <br> • Extraneous narrative to avoid providing clean admission that "trace amounts of mercury have been found in some sediment cores collected in the Phase I Removal Area" <br> • Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that mercury has been found in sediment cores collected in the Phase I Removal Area.  Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | Passaic River, which have created a depositional area abutting the riverside boundary of the Lister Plant property that contains sediments transported there from elsewhere. | | |
| **(100)** Admit that lead has been found on the Lister Plant in groundwater. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague, compound, and unlimited as to time. It fails to state where, when, or in what samples "lead has been found on the Lister Plant in groundwater." Subject to these objections, admitted in part and denied in part. Admitted that trace amounts of lead have been found in some groundwater samples collected at or near the Lister Plant property, but denied as to the embedded assumption that the traces of lead in groundwater are from the Lister Plant itself because: a) no known industrial process at the Lister Plant generated or used lead; b) the riverside boundary of the Lister Plant property abuts a portion of the Lower 8.3 Miles of the Passaic River, which EPA has described as ubiquitously contaminated with chemicals of concern, including lead, that were transported to that depositional area by the hydrodynamics of the Passaic River from other locations; and, c) the Lister Plant property is also near the New Jersey Turnpike, a heavily trafficked area that—like others in | • Boilerplate objections that are inapplicable to request<br>• The request does define where the lead was found: in groundwater at the Lister Plant<br>• Request does not need to specify "how and "when" to be answerable.  If lead ever found in groundwater at the Lister Plant, OxyChem need only answer yes<br>• Extraneous narrative to avoid providing clean admission that "trace amounts of lead have been found in some groundwater samples collected at or near the Lister Plant property"<br>• Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that lead has been found in groundwater samples collected at the Lister Plant site. Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---------|---------------------|---------------|-------------------------|
|  | the state—received leaded gasoline fallout that contaminated nearby soils and is a known source of contamination of groundwater. |  |  |
| **(101)** Admit that lead has been found on the Lister Plant in soil. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague, compound, and unlimited as to time. It fails to state where, when, or in what samples "lead has been found on the Lister Plant in soil." Subject to these objections, admitted in part and denied in part. Admitted that trace amounts of lead have been found in some soil samples collected at or near the Lister Plant property, but denied as to the embedded assumption that the traces of lead in soils are from the Lister Plant because: a) no known industrial process at the Lister Plant generated or used lead; b) the riverside boundary of the Lister Plant property abuts a portion of the Lower 8.3 Miles of the Passaic River, which the EPA has described as ubiquitously contaminated with chemicals of concern, including lead, that were transported to that depositional area by the hydrodynamics of the Passaic River from other locations; and, c) the Lister Plant property is also near the New Jersey Turnpike, a heavily trafficked area that—like others in the state—received leaded gasoline fallout that contaminated nearby soils. | • Boilerplate objections that are inapplicable to request<br>• The request does define where the lead was found: in soil at the Lister Plant<br>• Request does not need to specify "how and "when" to be answerable.  If ever found in soil at the Lister Plant, OxyChem need only answer yes<br>• Extraneous narrative to avoid providing clean admission that "trace amounts of lead have been found in some soil samples collected at or near the Lister Plant property"<br>• Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that lead has been found in soil samples collected at the Lister Plant site. Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---------|---------------------|---------------|-------------------------|
| **(103)** Admit that lead was measured in sediment cores collected from the Phase 1 Removal Area. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague, compound, unduly burdensome, and unlimited as to time. It fails to identify the particular sediment core samples from the Phase 1 Removal Area about which it inquires, or to state where or when they were collected. Subject to these objections, admitted in part and denied in part. Admitted that trace amounts of lead have been in some sediment cores collected in the Phase 1 Removal Area but denied as to any implication that the Lister Plant is the source of this lead because: a) no known industrial process of the Lister Plant generated or used lead; b) the riverside boundary of the Lister Plant property abuts a portion of the Lower 8.3 Miles of the Passaic River, which EPA has described as "ubiquitously" contaminated with chemicals of concern, bank to bank, including lead; c) lead is transported freely through ground and floodwaters, including through the hydrodynamics of the Lower Passaic River, which have created a depositional area abutting the riverside boundary of the Lister Plant property that contains sediments transported there from elsewhere; and c) the Phase I Removal Area is also near the New | • Boilerplate objections that are inapplicable to request <br> • The request does define where the lead was measured: in sediment cores collected from the Phase 1 Removal Area <br> • Request does not need to specify "how and "when" to be answerable.  If lead ever measured in sediment cores collected from the Phase 1 Removal Area, OxyChem need only answer yes <br> • Extraneous narrative to avoid providing clean admission that "trace amounts of lead have been found in some sediment cores collected in the Phase 1 Removal Area" <br> • Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that lead has been found in sediment cores collected from the Phase I Removal Area. Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

9

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---------|--------------------|--------------|-----------------------|
| | Jersey Turnpike, a heavily trafficked area that—like others in the state—received leaded gasoline fallout that contaminated nearby soils, surface waters, and groundwater that flowed into the Passaic River. | | |
| **(106)** Admit that copper has been found on the Lister Plant in soil. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague, compound, and unlimited as to time. It fails to state where, when, or in what samples "copper has been found on the Lister Plant in soil." Subject to these objections, admitted in part and denied in part. Admitted that trace amounts of copper have been found in some soil samples collected at or near the Lister Plant property but denied as to any implication that the Lister Plant was the source of any copper because: a) no known industrial process of the Lister Plant used or generated copper, b) the Lister Plant property is located near the facilities of Defendant Benjamin Moore, which used copper in its manufacturing processes and generated copper-contaminated stormwaters and compressor blowdowns that it disposed of directly in the Passaic River near the Lister Plant and is also next door to Defendant Sherwin Williams, whose facility has soil contaminated with copper, whose employees observed the dumping of process waste and other products into the Passaic | • Boilerplate objections that are inapplicable to request<br>• The request does define where the copper was found: in soil at the Lister Plant<br>• Request does not need to specify "how and "when" to be answerable.  If copper ever found in soil at the Lister Plant, OxyChem need only answer yes<br>• Extraneous narrative to avoid providing clean admission that "trace amounts of lead have been found in some groundwater samples collected at or near the Lister Plant property"<br>• Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that copper has been found in soil samples collected at the Lister Plant site. Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

10

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | River, and that had seven outfall pipes that discharged directly into the River; c) the riverside boundary of the Lister Plant property abuts a portion of the Lower 8.3 Miles of the Passaic River, which the EPA has described as "ubiquitously" contaminated with chemicals of concern, bank to bank, including copper; and, d) copper is a substance that is transported freely through ground and floodwaters, including through the hydrodynamics of the Passaic River which have created a depositional area abutting the riverside boundary of the Lister Plant that contains sediments transported there from elsewhere. | | |
| **(107)** Admit that copper has been found on the Lister Plant in groundwater. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague, compound, and unlimited as to time. It fails to state where, when, or in what samples "copper has been found on the Lister Plant in groundwater." Subject to these objections, admitted in part and denied in part. Admitted that trace amounts of copper have been found in some groundwater samples collected at or near the Lister Plant property but denied as to any implication that the Lister Plant was the source of any copper because: a) no known industrial process of the Lister Plant used or generated copper, b) the Lister Plant property is located near the facilities of | • Boilerplate objections that are inapplicable to request<br>• The request does define where the copper was found: in groundwater at the Lister Plant<br>• Request does not need to specify "how" and "when" to be answerable.  If copper ever found in groundwater at the Lister Plant, OxyChem need only answer yes<br>• Extraneous narrative to avoid providing clean admission that "trace amounts of copper have been found in some groundwater samples collected at or near the Lister Plant property"<br>• Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that copper has been found in groundwater samples collected at the Lister Plant site. Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | Defendant Benjamin Moore, which used copper in its manufacturing processes and generated copper-contaminated stormwaters and compressor blowdowns that it disposed of directly in the Passaic River near the Lister Plant and is also next door to Defendant Sherwin Williams, whose facility has soil contaminated with copper, whose employees observed the dumping of process waste and other products into the Passaic River, and that had seven outfall pipes that discharged directly into the River; c) the riverside boundary of the Lister Plant property abuts a portion of the Lower 8.3 Miles of the Passaic River, which the EPA has described as "ubiquitously" contaminated with chemicals of concern, bank to bank, including copper; and, d) copper is a substance that is transported freely through ground and floodwaters, including through the hydrodynamics of the Passaic River which have created a depositional area abutting the riverside boundary of the Lister Plant that contains sediments transported there from elsewhere. | | |
| **(109)** Admit that copper was measured in sediment cores collected from the Phase 1 Removal Area. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague, compound, and unlimited as to time. It fails to state where, when, or in what sediment cores "copper was measured" in the | • Boilerplate objections that are inapplicable to request<br>• The request does define where the copper was measured: in sediment cores | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that copper has been found in sediment cores in the Phase I Removal Area. Occidental's extraneous explanation regarding an "implication," |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | Phase I Removal Area. Subject to these objections, admitted in part and denied in part. Admitted that trace amounts of copper have been found in some sediment cores in the Phase I Removal Area, but denied as to any implication that the Lister Plant was the source of any copper in any sediment cores because: a) no known industrial process of the Lister Plant used or generated copper, b) the Lister Plant property is located near the facilities of Defendant Benjamin Moore, which used copper in its manufacturing processes and generated copper-contaminated stormwaters and compressor blowdowns that it disposed of directly in the Passaic River near the Lister Plant and is also next door to Defendant Sherwin Williams, whose facility has soil contaminated with copper, whose employees observed the dumping of process waste and other products into the Passaic River, and that had seven outfall pipes that discharged directly into the River; c) the Phase I Removal Area is in the Lower 8.3 Miles of the Passaic River, which EPA has described as "ubiquitously" contaminated with chemicals of concern, bank to bank, including copper; and, d) copper is a substance that is transported freely through ground and floodwaters, including through the hydrodynamics | collected from the Phase 1 Removal Area<br>• Request does not need to specify "how and "when" to be answerable. If copper ever detected in sediment cores at the Lister Plant, OxyChem need only answer yes<br>• Extraneous narrative to avoid providing clean admission that "trace amounts of copper have been found in some sediment cores collected at or near the Lister Plant property"<br>• Denial is about implication injected by OxyChem and thus denial does not fairly meet substance of request | which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | of the Passaic River which have created a depositional area that abuts the riverside boundary of the Lister Plant property, and e) the Phase I Removal Area that abuts the riverside boundary of the Lister Plant, as noted, contains sediments transported there from elsewhere. | | |
| **(120)** Admit that the Lister Plant was located adjacent to LPR. | Objection 1, 2, and 3. As noted in response to other requests, the SPG fails to define what it means by the term "adjacent." Subject to these objections, OxyChem admits that the Lower Passaic River flows along the riverside boundary of the property at 80-120 Lister Avenue where the Lister Plant is located. | • Boilerplate objections that are inapplicable to request <br> • Objects to "adjacent" to evade directly responding | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's objection to the term "adjacent" is appropriate and Occidental's response fairly meets the substance of the request. |
| **(121)** Admit that the Lister Plant had trenches and drainpipes leading directly to LPR. (Deposition of John Burton at 50–54, Mar. 18, 1987 (Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co., N.J. Super. Ct. Law Div.) ("Burton Dep. I") | Objection 1, 2, and 3. This request is vague, compound, unlimited as to time, and misleads by failing to acknowledge the limitations, qualifications, and assumptions included by the witness in the referenced deposition testimony. Subject to and without waiving these objections, admitted in part and denied in part. Admitted that this request purports to paraphrase the testimony of witness John Burton, but denied that the paraphrase is accurate or that this accurately describes the layout or disposal practices of the Lister Plant at all times during its operation. As noted above, the Lister Plant was | • Boilerplate objections that are inapplicable to request <br> • Request need not specify time to be answerable; the request is asking about any time in the Lister Plant's history <br> • OxyChem is distracting from the request by stating that the SPG needed to specify "limitations" of the witness testimony. The referenced testimony is provided for convenience but does not obviate OxyChem's obligation to respond to the factual assertion. <br> • Improper denials that do not go to substance of request: (1) the testimony is paraphrased accurately; (2) even if it wasn't the question stands on its own apart from document referenced for OxyChem's convenience so OxyChem | The Special Master finds that the response complies with Rule 36 and no further response is needed. The Request attempts to paraphrase deposition testimony rather than ask Occidental to admit to the authenticity of the actual deposition testimony, a common and fair use of a request for admission. Occidental has appropriately set forth the basis for its objection to the accuracy of the paraphrasing. |

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | connected to the Passaic Valley Sewerage Commission sewer line in 1956. | needs to address request; (3) request does not ask OxyChem about its layout at all time during Lister Plant's operation<br>• Extraneous narrative ("As noted above…") that does not answer question<br>• Hyper-technical objection to "trenches and drainpipes" as "compound" should not eliminate obligation to respond. | |
| **(123)** Admit that waste effluents discharged from the Lister Plant to LPR contained hazardous substances. | Objection 1, 2, and 3. This request is vague, compound, and unlimited as to time. It also fails to define the terms "waste effluents," "discharged," or "hazardous substances." Subject to these objections, denied. As noted above, the Lister Plant was connected to the Passaic Valley Sewerage Commission sewer line in 1956. | • Boilerplate objections that are inapplicable to request<br>• Objecting to "waste effluents" "discharged" and "hazardous substances" to evade responding directly to request<br>• Need not define time to be answerable; request wants to know if this is true for any point in Lister Plant's history<br>• Extraneous information ("As noted above…") that does not answer question generally and specifically avoids answering question as to the period before 1956 | The Special Master finds that the response complies with Rule 36 and no further response is needed. The request is marginally complex and compound and contains vague terminology that is not appropriate for a request for admission.  Occidental's response fairly meets the substance of the request. |
| **(124)** Admit that waste effluents discharged from the Lister Plant to LPR contained contaminants. | Objection 1, 2, and 3. This request is vague, compound, and unlimited as to time. It also fails to define the terms "waste effluents," "discharged," or "contaminants." Subject to these objections, denied. As noted above, the Lister Plant was connected to the Passaic Valley Sewerage Commission sewer line in 1956. | • Boilerplate objections that are inapplicable to request<br>• Objecting to "waste effluents" "discharged" and "contaminants" to evade responding directly to request<br>• Need not define time to be answerable; request wants to know if this is true for any point in Lister Plant's history<br>• Extraneous information ("As noted above…") that does not answer question generally and specifically avoids | The Special Master finds that the response complies with Rule 36 and no further response is needed. The request is marginally complex and compound and contains vague terminology that is not appropriate for a request for admission.  Occidental's response fairly meets the substance of the request. |

15

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | | answering question as to the period before 1956 | |
| **(125)** Admit that waste effluents discharged from the Lister Plant to LPR contained COCs. | Objection 1, 2, and 3. This request is vague, compound, and unlimited as to time. It also fails to define the terms "waste effluents" and "discharged." In addition, the request fails to define where, when, or how the undefined "waste effluents" were allegedly discharged. Subject to these objections, denied. As noted above, the Lister Plant was connected to the Passaic Valley Sewerage Commission sewer line in 1956. After reasonable inquiry, OxyChem is aware of no operational or other evidence indicating the Lister Plant is the source of all COCs in the Lower Passaic River, but it is aware that the Lower Passaic River is an area of deposition where sediments containing COCs from other locations are transported by the River, by sheet flow, and by floodwaters from elsewhere and deposited in river sediments in the Lower Passaic River | • Boilerplate objections that are inapplicable to request <br> • Objecting to "waste effluents" and "discharged" to evade responding directly to request <br> • Even if SPG did not define where, when, or how, waste effluents were discharged, OxyChem is required to admit to what it can admit <br> • Extraneous information ("As noted above…") that does not answer question generally and specifically avoids answering question as to the period before 1956 <br> • Improper qualification; SPG did not ask for operational or other evidence that the Lister Plant is the source of all COCs in the Lower Passaic River | The Special Master finds that the response complies with Rule 36 and no further response is needed. The request is marginally complex and compound and contains vague terminology that is not appropriate for a request for admission. Occidental's response fairly meets the substance of the request. |
| **(126)** Admit that Diamond Alkali directly discharged waste effluents from the Lister Plant to LPR. | Objection 1, 2, and 3. This request is vague, compound, and unlimited as to time. It also fails to define the terms "waste effluents" and "discharged." Subject to these objections, denied. As noted above, | • Boilerplate objections that are inapplicable to request <br> • Objecting to "waste effluents" and "discharged" to evade responding directly to request | The Special Master finds that the response complies with Rule 36 and no further response is needed. The request is marginally complex and compound and contains vague terminology that is not appropriate for a request for admission. Occidental's response fairly meets the substance of the request. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
|  | the Lister Plant was connected to the Passaic Valley Sewerage Commission sewer line in 1956. | • Need not specify time period to be answerable; if true for any point for Diamond Alkali, OxyChem needs to admit<br>• Extraneous information ("As noted above…") that does not answer question generally and specifically avoids answering question as to the period before 1956 |  |
| **(128)** Admit that pathways of TCDD discharges from the Lister Plant to LPR included waste trichloroethane sludge and unrecycled trichloroethane. (Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co., 609 A.2d 440, 463 (N.J. Super. Ct. App. Div. 1992) ("Both the air and ground, inside and outside of the [Lister Plant], were regularly subjected to dioxin emissions through venting, and contamination from spills, leaks, and 'sloppy practice' in and around the plant")). | Objection 1, 2, and 3. This request is vague, compound, and unlimited as to time. It fails to define either the alleged "pathways" inquired about or the term "discharges" as used in this request. Subject to these objections, denied. The language quoted in the request contains no reference to TCDD, trichloroethane, discharges, or pathways, nor does it state that "pathways of TCDD discharges from the Lister Plant to LPR included waste trichloroethane sludge and unrecycled trichloroethane." | • Boilerplate objections that are inapplicable to request<br>• Objecting to "waste effluents" and "discharged" to evade responding directly to request<br>• Need not specify time period to be answerable; if true for any point for Diamond Alkali, OxyChem needs to admit<br>• Denial does not meet substance of request because request does not purport to excerpt directly from referenced document<br>• Document is provided for convenience and the request stands independent from document. OxyChem must answer request, not shift focus to referenced document | The Special Master finds that the response complies with Rule 36 and no further response is needed. The request is complex and compound and contains vague terminology that is not appropriate for a request for admission. Occidental's response fairly meets the substance of the request. Moreover, the Request attempts to paraphrase a document rather than ask Occidental to admit to the authenticity of the document Occidental has appropriately set forth the basis for its objection to the accuracy of the paraphrasing. |
| **(129)** Admit that pathways of TCDD discharges from the Lister Plant to LPR included washing of equipment utilized in the TCP/2,4,5-T processes. | Objection 1, 2, and 3. This request is vague, compound, and unlimited by time. It also fails to define either the alleged "pathways" inquired about or the term "discharges" as used in this request. | • Boilerplate objections that are inapplicable to request<br>• Objecting to "pathways" and "discharged" to evade responding directly to request | The Special Master finds that the response does not comply with Rule 36 as Occidental has failed to admit, deny, or provide sufficient basis to not response substantively to the Request. However, no further response is necessary because the request is complex and compound and contains vague |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | | • Further the request is defining a pathway: the washing of equipment utilized in the TCP/2,4,5-T processes | terminology that is not appropriate for a request for admission. |
| **(130)** Admit that pathways of TCDD discharges from the Lister Plant to LPR included wastewater from the manufacture of TCP. | Objection 1, 2, and 3. This request is vague, compound, and unlimited by time. It also fails to define either the alleged "pathways" inquired about or the term "discharges" as used in this request. | • Boilerplate objections that are inapplicable to request<br>• Objecting to "pathways" and "discharged" to evade responding directly to request<br>• Further the request is defining a pathway: the wastewater from the manufacture of TCP | The Special Master finds that the response does not comply with Rule 36 as Occidental has failed to admit, deny, or provide sufficient basis to not response substantively to the Request. However, no further response is necessary because the request is complex and compound and contains vague terminology that is not appropriate for a request for admission. |
| **(131)** Admit that pathways of TCDD discharges from the Lister Plant to LPR included wastewater from the manufacture of 2,4,5-T. | Objection 1, 2, and 3. This request is vague, compound, and unlimited by time. It also fails to define either the alleged "pathways" inquired about or the term "discharges" as used in this request. | • Boilerplate objections that are inapplicable to request<br>• Objecting to "pathways" and "discharged" as undefined terms to evade responding directly to request<br>• Further the request is defining a pathway: the wastewater from the manufacture of 2,4,5-T | The Special Master finds that the response does not comply with Rule 36 as Occidental has failed to admit, deny, or provide sufficient basis to not response substantively to the Request. However, no further response is necessary because the request is complex and compound and contains vague terminology that is not appropriate for a request for admission. |
| **(132)** Admit that pathways of TCDD discharges from the Lister Plant to LPR included autoclave blowdown sump. | Objection 1, 2, and 3. This request is vague, compound, and unlimited by time. It also fails to define either the alleged "pathways" inquired about or the term "discharges" as used in this request. | • Boilerplate objections that are inapplicable to request<br>• Objecting to "pathways" and "discharged" to evade responding directly to request<br>• Further the request is defining a pathway: the wastewater from the manufacture of TCP<br>• The request is defining a pathway: autoclave blowdown sump<br>• Objecting to "discharges" to evade directly responding | The Special Master finds that the response does not comply with Rule 36 as Occidental has failed to admit, deny, or provide sufficient basis to not response substantively to the Request. However, no further response is necessary because the request is complex and compound and contains vague terminology that is not appropriate for a request for admission. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| **(148)** Admit that in approximately 1960, a massive explosion resulted in high concentrations of COCs, including TCDD, entering LPR. (OCC-MAXUS0296071.; William J. Hansen, A Statistical and Spatial Analysis of Dioxin-Furan Contamination in the Hudson Estuary, 24 Northeastern Geology & Envtl. Sci. 159, 169 (2002)). | Objection 1, 2, 3, 4, 5, 7, and 8. This request is impermissibly vague and compound because terms "massive" and "high concentrations" are undefined and subject to multiple interpretations, and the request seeks admissions regarding multiple unspecified COCs. In addition, this request refers to OCC-MAXUS0296071, which has not been produced to OxyChem, and Hansen 2002, a graduate school dissertation authored without first-hand knowledge of or citation to any source for statements regarding the subject matter of this request. Subject to these objections, denied. | • Boilerplate objections that are inapplicable to request<br>• Admitted there was a massive explosion in 1960 in Response to RFA 147; must admit this request to the extent possible<br>• Referenced document irrelevant to OxyChem's response to request; OxyChem evading response by focusing on referenced document | The Special Master finds that the response complies with Rule 36 and no further response is needed. The request is complex and compound and contains vague and inflammatory terminology that is not appropriate for a request for admission. Occidental's response fairly meets the substance of the request. |
| **(149)** Admit that the 1960 autoclave explosion disturbed historic fill containing the eight COCs. | Objection 1, 2, 3, 4, 5, 7, and 8. Without defining the location or nature of the "historic fill," and because the request is compound and refers to all eight COCs, six of which were not associated with operations of the Lister Plant, OxyChem is unable to admit or deny this request. | • Boilerplate objections that are inapplicable to the request<br>• OxyChem is required to admit to extent it can do so | The Special Master finds that the response complies with Rule 36 and no further response is needed. The request is complex and compound and contains vague terminology that is not appropriate for a request for admission. Occidental's response fairly meets the substance of the request. |
| **(152)** Admit that the Lister Plant discharged all its untreated plant effluents into LPR until about 1956. (Burton Dep I. at 156-58). | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to these objections, denied that the request accurately recites the referenced testimony of Mr. Burton. | • Boilerplate objections that are inapplicable to the requests<br>• Denial does not fairly meet substance of request; OxyChem is denying question of its own making, not the question asked | The Special Master finds that the response does not comply with Rule 36 and a further response is needed. The Request may not accurately quote the cited testimony, but the Request, standing alone, is plain enough to be answered directly. |

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | | • Impossible to decipher if denial is based on substance of request or stated objections | |
| **(153)** Admit that in or about 1956, PVSC officially objected to Diamond Alkali's illegal discharges and instructed Diamond Alkali to connect the entire plant to the PVSC building. (MAXUS3791783). | Objection 1, 2, 3, 4, 5, 6, 7, and 8. Subject to these objections, denied because the referenced document does not say this and, after reasonable inquiry, OxyChem is unable to identify any document containing an instruction to connect the Lister Plant to "the PVSC building." | • Boilerplate objections that are inapplicable to the requests <br> • Basis of denial is unclear. If OxyChem denying based on the "PVSC building," that is impermissible parsing | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental states that after reasonably inquiry it cannot locate a document that responds to the Request. The term "PVSC building" was used in the Request and Occidental is not required to imply definitions that do not exist. Occidental's response fairly meets the substance of the request. |
| **(155)** Admit that Diamond Alkali decided to connect the Main Building to the sewer to save money. (Burton Dep. I at 158-64). | Objection 1, 2, 3, 4, 5, and 8. This request does not accurately recite the referenced deposition testimony. Subject to these objections, after reasonably inquiry, OxyChem is unable to otherwise admit or deny the reason or reasons Diamond Alkali connected the Main Building to the PVSC system. | • Boilerplate objections that are inapplicable to the requests <br> • Request does not quote referenced testimony <br> • Referenced testimony supports request <br> • OxyChem must detail reasonable inquiry | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental states that after reasonably inquiry it cannot locate a document that confirms Diamond Alkali decided to connect the Main Building to the sewer to save money. |
| **(156)** Admit that from in or about 1956 until operations were ceased in or around 1969, Diamond Alkali discharged untreated industrial waste into LPR. (MAXUS0046461). | Objection 1, 2, 3, 4, 5, 7, and 8. This request is unlimited as to time, does not define what is meant by "untreated industrial waste,' nor does it define the terms "discharged," which could include transportation by sheet flow, stormwater flow, and/or floodwaters. Subject to and without waiving these objections, this request is denied. The Lister Plant was connected to the sewer line of | • Boilerplate objections that are inapplicable to the requests <br> • Objecting to "untreated industrial waste" and "discharged" to evade responding directly to request <br> • OxyChem uses "discharge" without definition in its response <br> • Need not specify time period to be answerable; if true for any point for Diamond Alkali, OxyChem needs to admit | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | the Passaic Valley Sewerage Commission in 1956, at which point plant process wastes were discharged through the PVSC treatment line. | • Is OxyChem admitting that it discharged after the sewer line was hooked up in 1956? If so, it needs to say that. Otherwise this is an extraneous qualification. | |
| **(159)** Admit that John Burton, the Lister Plant Manager, acknowledged that effluents were harmful to LPR. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is vague and unlimited as to time. The request fails to define either what is encompassed in the term "effluents" or what is meant by "harmful." Subject to and without waiving these objections, OxyChem cannot neither admit nor deny this request. | • Boilerplate objections that are inapplicable to the requests<br>• Objecting to "effluents" and "harmful" to evade responding directly to request<br>• Need not specify time period to be answerable; if true for any point, OxyChem needs to admit<br>• OxyChem needs to specify reasonable inquiry it took | The Special Master finds that the Request is objectionable as presented and the term "harmful" is vague. However, Occidental is required to undertake a reasonable inquiry to determine if such an admission did occur using that specific term. Therefore, a further response is required from Occidental. |
| **(160)** Admit that John Burton, the Lister Plant Manager, recommended avoiding spending money to construct a larger sanitary sewer to neutralize the effluent through pretreatment, despite his acknowledgment that effluents were harmful to LPR. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is compound, vague, and unlimited as to time. The request also fails to define either what is encompassed in the term "effluents" or what is meant by "harmful." Subject to and without waiving these objections, OxyChem can neither admit nor deny this request. | • Boilerplate objections that are inapplicable to the requests<br>• Objecting to "effluents" and "harmful" to evade responding directly to request<br>• Need not specify time period to be answerable; if true for any point, OxyChem needs to admit<br>• OxyChem needs to specify reasonable inquiry it took | The Special Master finds that the Request is objectionable as presented and the term "harmful" is vague. However, Occidental is required to undertake a reasonable inquiry to determine if such an admission did occur using that specific term. Therefore, a further response is required from Occidental. |
| **(166)** Admit that employees at the Lister Plant began experiencing chloracne shortly after TCP production began in 1949. | Objection 1, 2, 3, 4, 5, and 7. This request does not identify which "employees" it refers to, nor does it define what it means by "shortly after." Subject to and without waiving these objections, denied. | • Boilerplate objections that are inapplicable to the requests<br>• Objecting to "employees" and "shortly defined" to evade responding directly to request<br>• OxyChem can answer to the extent that it knows | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request. |

21

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | | • Impossible to decipher if denial is based on substance of request or stated objections | |
| **(169)** Admit that, as early as 1956, Diamond Alkali knew its TCP process was the source of employees' chloracne. (Burton Dep. II at 265–67; Aetna Cas. & Sur. Co., 609 A.2d at 447 ("[A]t a relatively early date, Diamond became aware of the dangerous propensities of dioxins and chose to disregard methods designed to diminish their production.")). | Objection 1, 2, 3, 4, 5, 7, and 8. The request is compound, does not identify which "employees" are referenced, and fails to define the nature of what "Diamond Alkali knew" and the basis of that purported knowledge. The request also fails to accurately recite the referenced deposition testimony. Subject to and without waiving these objections, this request is denied. | • Boilerplate objections that are inapplicable to the requests<br>• Objecting to "employees" and "Diamond Alkali knew" to evade responding directly to request<br>• Does not have to define the basis of knowledge; OxyChem can answer request regardless<br>• The request does not recite the referenced document and the referenced document supports the request<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request. |
| **(178)** Admit that Oxy-Diamond Alkali was aware of Administrative Order No. EO 40-6 at the time it entered into the 1986 Merger. | Objection. The request includes two vague and undefined terms—"Oxy-Diamond Alkali" and "the 1986 Merger." The Requests for Admission do not define either term, but there was no 1986 Merger of which OxyChem is aware. In addition, if the term "Oxy-Diamond Alkali" is intended to refer to Oxy-Diamond Alkali Corporation, OxyChem is after reasonable inquiry unable to admit or deny whether Oxy-Diamond Alkali Corporation could have accessed Administrative Order No. EO-40-6 in September of 1986 when it acquired the stock of | • Objecting to "Oxy-Diamond Alkali" and "the 1986 Merger" to evade responding directly to request<br>• Further "the 1986 Merger" is first term defined in RFAs<br>• OxyChem is required to detail inquiry if it neither admits nor denies a request<br>• Oxy-Diamond Alkali Corporation is a predecessor of OxyChem (it acquired Diamond Shamrock Chemicals Company from Diamond Shamrock Corporation, then the name was changed to Occidental Electro Chemical Corporation, then name changed to Occidental Chemical Corporation), so a | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request. |

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | Diamond Shamrock Chemicals Company via a Stock Purchase Agreement with Diamond Shamrock Corporation. | reasonable inquiry by OxyChem includes Oxy-Diamond Alkali Corporation's knowledge<br>• Answering question of its own making—whether Oxy-Diamond Alkali "could have accessed" the Order, instead of the question asked—whether OxyChem was aware of the Order | |
| **(183)** Admit that Oxy-Diamond Alkali knew about Administrative Order No. EO-40-1 at the time of the 1986 Merger. | Objection 1, 2, and 3. The request includes two vague and undefined terms—"Oxy-Diamond Alkali" and "the 1986 Merger." The Requests for Admission do not define either term, but there was no 1986 Merger of which OxyChem is aware. In addition, if the term "Oxy-Diamond Alkali" is intended to refer to Oxy-Diamond Alkali Corporation, OxyChem is after reasonable inquiry unable to admit or deny whether Oxy-Diamond Alkali Corporation could have accessed Administrative Order No. EO-40-1 in September of 1986 when it acquired the stock of Diamond Shamrock Chemicals Company via a Stock Purchase Agreement with Diamond Shamrock Corporation. | • Objecting to "Oxy-Diamond Alkali" and "the 1986 Merger" to evade responding directly to request<br>• "The 1986 Merger" is first term defined in RFAs<br>• OxyChem is required to detail inquiry if it neither admits nor denies a request<br>• Oxy-Diamond Alkali Corporation is a predecessor of OxyChem (it acquired Diamond Shamrock Chemicals Company from Diamond Shamrock Corporation, then the name was changed to Occidental Electro Chemical Corporation, then name changed to Occidental Chemical Corporation), so a reasonable inquiry by OxyChem includes Oxy-Diamond Alkali Corporation's knowledge<br>• Answering question of its own making—whether Oxy-Diamond Alkali "could have accessed" the Order, instead of the question asked—whether OxyChem knew about the Order | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request. |
| **(188)** Admit that Oxy-Diamond Alkali was aware of Administrative Order No. EO- | Objection 1, 2, and 3. The request includes two vague and undefined terms—"Oxy-Diamond Alkali" and | • Boilerplate objections<br>• "The 1986 Merger" is first term defined in RFAs | The Special Master finds that the response complies with Rule 36 and no further response is needed. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| 40-19 at the time of the 1986 Merger. | "the 1986 Merger." The Requests for Admission do not define either term, but there was no 1986 Merger of which OxyChem is aware. If the term "Oxy-Diamond Alkali" is intended to refer to Oxy-Diamond Alkali Corporation, OxyChem is after reasonable inquiry unable to admit or deny whether Oxy-Diamond Alkali Corporation could have accessed Administrative Order No. EO-40-19 in September of 1986 when it acquired the stock of Diamond Shamrock Chemicals Company via a Stock Purchase Agreement with Diamond Shamrock Corporation. | • Oxy-Diamond Alkali Corporation is a predecessor of OxyChem (it acquired Diamond Shamrock Chemicals Company from Diamond Shamrock Corporation, then the name was changed to Occidental Electro Chemical Corporation, then name changed to Occidental Chemical Corporation), so a reasonable inquiry by OxyChem includes Oxy-Diamond Alkali Corporation's knowledge<br>• Answering question of its own making—whether Oxy-Diamond Alkali "could have accessed" the Order, instead of the question asked—whether OxyChem was aware of the Order | Occidental's response fairly meets the substance of the request. |
| **(193)** Admit that Oxy-Diamond Alkali was aware of Administrative Order No. EO-40-17 at the time of the 1986 Merger. | Objection 1, 2, and 3. The request includes two vague and undefined terms—"Oxy-Diamond Alkali" and "the 1986 Merger." The Requests for Admission do not define either term, but there was no 1986 Merger of which OxyChem is aware. In addition, if the term "Oxy-Diamond Alkali" is intended to refer to Oxy-Diamond Alkali Corporation, OxyChem is after reasonable inquiry unable to admit or deny whether Oxy-Diamond Alkali Corporation could have accessed Administrative Order No. EO-40-17 in September of 1986 when it acquired the stock of Diamond Shamrock Chemicals Company via a Stock Purchase | • Objecting to "Oxy-Diamond Alkali" and "the 1986 Merger" to evade responding directly to request<br>• "The 1986 Merger" is first term defined in RFAs<br>• OxyChem is required to detail inquiry if it neither admits nor denies a request<br>• Oxy-Diamond Alkali Corporation is a predecessor of OxyChem (it acquired Diamond Shamrock Chemicals Company from Diamond Shamrock Corporation, then the name was changed to Occidental Electro Chemical Corporation, then name changed to Occidental Chemical Corporation), so a reasonable inquiry by OxyChem includes Oxy-Diamond Alkali Corporation's knowledge | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | Agreement with Diamond Shamrock Corporation. | • Answering question of its own making—whether Oxy-Diamond Alkali "could have accessed" the Order, instead of the question asked—whether OxyChem was aware of the Order | |
| **(195)** Admit that OxyChem was legally obligated to comply with the 1984 Administrative Consent Order as DSCC's successor. | Objection 1, 2, 3, 4, 5, 6, 7, and 8. This request is vague, compound, undefined by time, and calls for a legal conclusion. The 1984 Administrative Consent Order was signed by DSCC before the 1986 Stock Purchase Agreement. During that period, OxyChem had no obligations at all under the 1984 Consent Order. Subject to these objections, OxyChem admits it is a successor to DSCC after April of 1987, but denies that it was the sole successor to DSCC because Maxus was also a successor to DSCC. The request otherwise calls for a legal conclusion and requires no response. | • Boilerplate objections that do not apply to the request <br> • The Third Circuit permits RFAs asking about legal obligations; this is not an impermissible legal conclusion. <br> • OxyChem is being evasive by answering its own question about whether Maxus was a successor to DSCC. <br> • OxyChem does not answer the question. It admits only that it is a legal successor to DSCC (already established and not in question here) and does not admit whether it was legally complied to comply with the Order after 1987 <br> • OxyChem inserts extraneous narrative to relitigate established facts | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which clearly addresses whether Occidental was legally obligated to comply with the 1984 Administrative Consent Order as DSCC's successor after the 1986 Stock Purchase Agreement was executed.  Good faith qualifications to such a response are clearly permitted, but an objection that the request calls for a legal conclusion is not appropriate because this request is not objectionable even if it requires opinions or conclusions of law because the legal conclusions relate to the facts of the case. |
| **(196)** Admit that OxyChem, as successor to DSCC, was legally required to perform all of DSCC's obligations to regulatory authorities regarding environmental contamination. | Objection 1, 2, 3, 4, 5, 6, 7, and 8. This request is compound, undefined by time, and calls for a legal conclusion. The 1984 Administrative Consent Order was signed by DSCC before the 1986 Stock Purchase Agreement. During that period, OxyChem had no obligations at all under the 1984 Consent Order. Subject to these objections, OxyChem admits it is a successor to | • Boilerplate objections that to not apply to the request <br> • The Third Circuit permits RFAs asking about legal obligations; this is not an impermissible legal conclusion <br> • OxyChem is being evasive by answering its own question about whether Maxus was a successor to DSCC. Regardless, OxyChem is legally DSCC's successor. <br> • OxyChem does not answer the question. It admits only that it is a legal successor | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which clearly addresses whether Occidental, as a successor to DSCC, was legally required to perform all of DSCC's obligations to regulatory authorities regarding environmental contamination.  Appropriate qualifications, made in good faith, including those related to the terms "regulatory authorities" and "environmental contamination" are permitted, but an objection that the request calls for a legal conclusion is not |

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | DSCC after April of 1987, but denies that it was the sole successor to DSCC because Maxus was also a successor to DSCC. The request otherwise calls for a legal conclusion and requires no response. | to DSCC (already established and not in question here) and does not admit whether it was legally complied to comply with the Order after 1987<br>• OxyChem inserts extraneous narrative to relitigate established facts | appropriate because this request is not objectionable even if it requires opinions or conclusions of law because the legal conclusions relate to the facts of the case. |
| **(197)** Admit that Maxus performed OxyChem's obligations on OxyChem's behalf under the 1984 Administrative Consent Order. | Objection 1, 2, 3, 4, 5, 7, and 8. This request is compound, undefined by time, and calls for a legal conclusion. The 1984 Administrative Consent Order was signed by DSCC before the 1986 Stock Purchase Agreement. During that period, OxyChem had no obligations at all under the 1984 Consent Order. Subject to these objections, OxyChem admits Maxus was obligated to and did perform obligations under the 1984 Administrative Consent Order because it was a successor to Diamond Shamrock Chemicals Company when the Order was entered and was obligated, as DSCC's successor, to perform it. After the 1986 Stock Purchase Agreement, OxyChem admits Maxus continued to perform the 1984 Administrative Consent Order pursuant to its contractual obligation to indemnify and hold harmless OxyChem against any environmental liabilities arising from the Lister Plant. | • Boilerplate objections that do not apply to the request<br>• The Third Circuit permits RFAs asking about legal obligations; this is not an impermissible legal conclusion<br>• OxyChem is being evasive by answering its own question about whether Maxus was a successor to DSCC.  Regardless, OxyChem is legally DSCC's successor.<br>• OxyChem inserts extraneous narrative to relitigate established facts | The Special Master finds that the response complies with Rule 36 and no further response is needed. The request is complex and compound and contains vague terminology that is not appropriate for a request for admission.  Occidental's response fairly meets the substance of the request as Occidental, in good faith, parsed the request based on specific timeframes. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| **(210)** Admit that at the time of the 1986 Merger, Oxy-Diamond Alkali knew that DSCC had discharged hazardous substances into LPR. | Objection 1, 2, 3, 4, 5, 7, and 8. The request includes four vague and undefined terms: "Oxy-Diamond Alkali," "the 1986 Merger," "discharged," and "hazardous substances." The Requests for Admission do not define any of these terms, but there was no 1986 Merger of which OxyChem is aware. The request also fails to identify when any of the undefined "hazardous substances" were "discharged" into the Lower Passaic River. Subject to these objections, admitted in part and denied in part. Admitted that Oxy-Diamond Alkali knew as of the 1986 Stock Purchase Agreement that the Lister Plant was included within the Diamond Alkali Superfund Site, because Oxy-Diamond Alkali is indemnified against all environmental liabilities associated with that Superfund Site in the agreement. OxyChem is otherwise unable to respond to this request because it does not define the information that is sought in simple facts that can be, as the Third Circuit requires, admitted or denied without explanation. | • Boilerplate objections that to not apply to the request<br>• "The 1986 Merger" is the first term defined in the RFAs<br>• Objecting to "discharged" and "hazardous substances" to evading directly responding<br>• The admission does not actually answer the RFA; OxyChem's "admission" about whether Oxy-Diamond Alkali knew that the Lister Plant was included in the Diamond Alkali Superfund Site is evasive | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request as Occidental admits Oxy-Diamond Alkali knew of environmental contamination at the time of the 1986 Stock Purchase Agreement and the qualification of the denial was made in good faith and is appropriate based on the use of vague terms in the Request. |
| **(211)** Admit that at the time of the 1986 Merger, Oxy-Diamond Alkali knew that | Objection 1, 2, 3, 4, 5, 7, and 8. The request includes four vague and undefined terms: "Oxy-Diamond | • Boilerplate objections that do not apply to the request | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| DSCC had discharged contaminants into LPR. | Alkali," "the 1986 Merger," "discharged," and "contaminants." The Requests for Admission do not define any of these terms, but there was no 1986 Merger of which OxyChem is aware. It also fails to identify when any of the undefined "contaminants" were "discharged" into the Lower Passaic River. Subject to these objections, admitted in part and denied in part. Admitted that Oxy-Diamond Alkali knew as of the 1986 Stock Purchase Agreement that the Lister Plant was included within the Diamond Alkali Superfund Site, because Oxy-Diamond Alkali is indemnified against all environmental liabilities associated with that Superfund Site in the agreement. OxyChem is otherwise unable to respond to this request because it does not define the information that is sought in simple facts that can be, as the Third Circuit requires, admitted or denied without explanation. | • "The 1986 Merger" is the first term defined in RFAs <br> • Objecting to "discharged" and "hazardous substances" to evade directly responding to the request <br> • The admission does not actually answer the request; OxyChem's "admission" about whether Oxy-Diamond Alkali knew that the Lister Plant was included in the Diamond Alkali Superfund Site is evasive | the request as Occidental admits Oxy-Diamond Alkali knew of environmental contamination at the time of the 1986 Stock Purchase Agreement and the qualification of the denial was made in good faith and is appropriate based on the use of vague terms in the Request. |
| **(212)** Admit that at the time of the 1986 Merger, Oxy-Diamond Alkali knew that DSCC had discharged waste into LPR. | Objection 1, 2, 3, 4, 5, 7, and 8. The request includes four vague and undefined terms: "Oxy-Diamond Alkali," "the 1986 Merger," "discharged," and "waste." The Requests for Admission do not define any of these terms, but there was no 1986 Merger of which OxyChem is aware. It also fails to identify when | • Boilerplate objections that do not apply to the request <br> • The RFAs define "the 1986 Merger"; it is the first definition on page 2. <br> • Objecting to "discharged" and "hazardous substances" to evade directly responding <br> • The admission does not actually answer the RFA; OxyChem's "admission" about | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request as Occidental admits Oxy-Diamond Alkali knew of environmental contamination at the time of the 1986 Stock Purchase Agreement and the qualification of the denial was made in good faith and is appropriate based on the use of vague terms in the Request. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | any of the undefined "waste" was "discharged" into the Lower Passaic River. Subject to these objections, admitted in part and denied in part. Admitted that Oxy-Diamond Alkali knew as of the 1986 Stock Purchase Agreement that the Lister Plant was included within the Diamond Alkali Superfund Site, because Oxy-Diamond Alkali is indemnified against all environmental liabilities associated with that Superfund Site in the agreement. OxyChem is otherwise unable to respond to this request because it does not define the information that is sought in simple facts that can be, as the Third Circuit requires, admitted or denied without explanation. | whether Oxy-Diamond Alkali knew that the Lister Plant was included in the Diamond Alkali Superfund Site is evasive | |
| **(213)** Admit that at the time of the 1986 Merger, Oxy-Diamond Alkali knew that the Lister Plant was contaminated with dioxin. | Objection 1, 2, 3, 4, 5, 7, and 8. The request includes three vague and undefined terms: "Oxy-Diamond Alkali," "the 1986 Merger," and "contaminated." The Requests for Admission do not define any of these terms, but there was no 1986 Merger of which OxyChem is aware. Subject to these objections, admitted in part and denied in part. Admitted that Oxy-Diamond Alkali knew as of the 1986 Stock Purchase Agreement that the Lister Plant was included within the Diamond Alkali Superfund Site, because Oxy-Diamond Alkali is indemnified against all | • Boilerplate objections that do not apply to the request<br>• The RFAs define "the 1986 Merger"; it is the first definition on page 2<br>• Objecting to "contaminated" to evade directly responding to request; OxyChem does not object to "contaminated" in very next RFA (214)<br>• The request is a simple fact, not complex or compound. OxyChem is being evasive by citing a requirement for the information being sought to be a simple fact<br>• OxyChem is being evasive by admitting something that the RFA does not ask | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request as Occidental admits Oxy-Diamond Alkali knew Oxy-Diamond Alkali knew of environmental contamination at the time of the 1986 Stock Purchase Agreement and the qualification of the denial was made in good faith and is appropriate based on the use of vague terms in the Request. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | environmental liabilities associated with that Superfund Site in the agreement. OxyChem is otherwise unable to respond to this request because it does not define the information that is sought in simple facts that can be, as the Third Circuit requires, admitted or denied without explanation. | • OxyChem says it is denying the request in part, but does not specifically deny anything. Denial does not fairly meet substance of request | |
| **(214)** Admit that at the time of the 1986 Merger, Oxy-Diamond Alkali knew that the Lister Plant was contaminated with hazardous substances. | Objection 1, 2, 3, 4, 5, 7, and 8. The request includes three vague and undefined terms: "Oxy-Diamond Alkali," "the 1986 Merger," and, "hazardous substances." The Requests for Admission do not define any of these terms, but there was no 1986 Merger of which OxyChem is aware. Subject to these objections, admitted in part and denied in part. Admitted that Oxy-Diamond Alkali knew as of the 1986 Stock Purchase Agreement that the Lister Plant was included within the Diamond Alkali Superfund Site, because Oxy-Diamond Alkali is indemnified against all environmental liabilities associated with that Superfund Site in the agreement. OxyChem is otherwise unable to respond to this request because it does not define the information that is sought in simple facts that can be, as the Third Circuit requires, admitted or denied without explanation. | • Boilerplate objections that do not apply to the request<br>• The RFAs do define "the 1986 Merger"; it is the first definition on page 2<br>• Objecting to "hazardous substances" to evade responding directly to request<br>• The request is a simple fact, not complex or compound. OxyChem is being evasive by citing a requirement for the information being sought to be a simple fact<br>• OxyChem is being evasive by admitting something that the RFA does not ask<br>• OxyChem says it is denying the request in part, but does not specifically deny anything. Denial does not fairly meet substance of request | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request as Occidental admits Oxy-Diamond Alkali knew of environmental contamination at the time of the 1986 Stock Purchase Agreement and the qualification of the denial was made in good faith and is appropriate based on the use of vague terms in the Request. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| **(218)** Admit that, in the course of her representation of OxyChem, Ms. Dinkins wrote a letter to EPA regarding the 1984 Administrative Consent Order in which she told EPA that OxyChem was the "successor to Diamond Shamrock Chemicals Company". (NJDEP00175450). | Objection 1, 2, 3, 4, 5, 6, 7, and 8. This request seeks an admission regarding a letter, which document speaks for itself. It is also vague, ambiguous, and compound as it falsely characterizes the referenced document as asserting that OxyChem is the only successor to DSCC and is therefore misleading, misrepresents the referenced document, and improperly asserts a legal conclusion. Subject to and without waiving these objections, admitted in part and denied in part. Admitted that the referenced document contains the quoted language, but denied as to any implication (not stated in the document) that OxyChem is the sole successor to DSCC because it is not: Maxus is also a successor to DSCC. | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• Extraneous information ("Maxus is also…") that does not answer question<br>• Denies an implication it injected itself | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request as the qualification of the denial was made in good faith and is appropriate. |
| **(221)** Admit that on or about July 26, 1989, Michael J. Rudick, Vice President and General Counsel for OxyChem, wrote a letter to Paul W. Herring, Associate Counsel for Maxus, in which he noted that OxyChem was the successor to DSCC. (OCC-CER-SA00025699). | Objection 1, 2, 3, 4, 5, 6, 7, and 8. This request seeks an admission regarding a letter, which document speaks for itself. It is also vague, ambiguous, and compound as it falsely characterizes the referenced document as asserting that OxyChem is the only successor to DSCC and is therefore misleading, misrepresents the referenced document, and improperly asserts a legal conclusion. Subject to and without waiving these objections, denied as to any implication (not stated in the document) that OxyChem is the sole | • Boilerplate objections that do not apply to the request<br>• Extraneous information ("Maxus is also…") that does not answer question<br>• Denies an implication it injected itself<br>• There is not an improper legal conclusion here—Judge Arleo has already concluded that OxyChem is successor to DSCC | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which addresses whether the document contains a statement that Occidental is a successor to DSCC, subject to any qualification that there may be other successors to DCSS not referenced. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | successor to DSCC because it is not: Maxus is also a successor to DSCC. If any further response is required, the document speaks for itself. | | |
| **(224)** Admit that OxyChem signed the 1990 AOC as successor to DSCC. | Objection 1, 2, 3, 4, 5, 6, 7, and 8. This request is vague, ambiguous, and compound as it falsely characterizes the referenced document as asserting that OxyChem is the only successor to DSCC and is therefore misleading, misrepresents the referenced document, and improperly asserts a legal conclusion. Subject to and without waiving these objections, admitted in part and denied in part. Admitted that OxyChem signed the 1990 Administrative Order on Consent as a successor to DSCC, but denied as to any implication (not stated in the document) that OxyChem is the sole successor to DSCC because it is not: Maxus is also a successor to DSCC. | • Boilerplate objections that do not apply to the request<br>• Extraneous information ("Maxus is also…") that does not answer question<br>• Denies an implication it injected itself<br>• There is not an improper legal conclusion here—Judge Arleo has already concluded that OxyChem is successor to DSCC | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request as the qualification of the denial was made in good faith and is appropriate. |
| **(231)** Admit that OxyChem executed the 1994 AOC knowing that it would be legally responsible for performing the obligations under the 1994 AOC. | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to these objections, admitted in part and denied in part. OxyChem admits it was aware that—by signing the 1994 Administrative Order on Consent— it was obligating itself to perform the obligations contained in the Order; denied, however, to the extent the request implies that OxyChem alone was obligated to perform those obligations because Maxus, as a successor to DSCC and | • Boilerplate objections that do not apply to the request<br>• Extraneous information ("Maxus is also…") that does not answer question<br>• Denies an implication it injected itself | The Special Master finds that this is an attempt to evade the substance of the request and orders that it be admitted that Occidental was aware when it signed the 1994 Administrative Order on Consent that it was obligating itself to perform the obligations contained therein. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | as OxyChem's indemnitor, was also obligated to perform them. | | |
| **(235)** Admit that in its Environmental Management Services Agreement with Glenn Springs Holdings, Inc., OxyChem agreed that it is legal successor to Diamond Shamrock Chemicals Company with respect to the "Newark Plant Site." | Objection 1, 2, 3, 4, 5, 6, and 7. This request seeks an admission regarding an agreement, which document speaks for itself. It is also vague, ambiguous, and compound as it falsely characterizes the referenced document as asserting that OxyChem is the only successor to DSCC and is therefore misleading, misrepresents the referenced document, and improperly asserts a legal conclusion. Subject to and without waiving these objections, denied as to any implication (not stated in the document) that OxyChem is the sole successor to DSCC because it is not: Maxus is also a successor to DSCC. To the extent that any additional response is required, the agreement speaks for itself. | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• Extraneous information ("Maxus is also…") that does not answer question<br>• Denies an implication it injected itself<br>• There is not an improper legal conclusion here—Judge Arleo has already concluded that OxyChem is successor to DSCC | The Special Master finds that this is an attempt to evade the substance of the request and orders that it be admitted that Occidental is a legal successor to Diamond Shamrock Chemicals Company with respect to the "Newark Plant Site." |

33

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| **(238)** Admit that on or about November 16, 2003 Occidental Chemical Corporation Associate General Counsel and Assistant Secretary, Robert D. Luss, made a sworn affidavit admitting that Occidental Chemical Corporation is the successor by merger to Diamond Alkali, which was later known as DSCC and Occidental Electrochemicals Corporation. | Objection 1, 2, 3, 4, 5, 6, 7, and 8. The request seeks an admission regarding an affidavit, which document speaks for itself. It is also vague, ambiguous, and compound as it falsely characterizes the referenced document as asserting that OxyChem is the only successor to DSCC and is therefore misleading, misrepresents the referenced document, and improperly asserts a legal conclusion. Subject to these objections, and to the fact that the request paraphrases and does not quote the affidavit in question, denied. The Affidavit of Mr. Luss speaks for itself, is not quoted accurately and nowhere states, as the request implies, that OxyChem is the sole successor to Diamond Alkali because it is not: Maxus is also a successor to DSCC. | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• Extraneous information ("Maxus is also…") that does not answer question<br>• Denies an implication it injected itself<br>• There is not an improper legal conclusion here—Judge Arleo has already concluded that OxyChem is successor to DSCC | The Special Master finds that the response complies with Rule 36 and no further response is needed. Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and the denial was sufficient as this request seeks an admission that Occidental is the sole successor. |
| **(244)** Admit that on or about November 2, 2004, Michael M. Gordon, as counsel for OxyChem, made a sworn affidavit admitting that OxyChem is the successor by merger to the manufacturer of Agent Orange at 80 Lister Avenue in Newark, New Jersey. | Objection 1, 2, 3, 4, 5, 6, 7, and 8. The request seeks an admission regarding an affidavit, which document speaks for itself. The request is also vague, ambiguous, and compound in that it paraphrases the affidavit in a misleading manner to suggest that OxyChem is the only successor to DSCC (if that is what is meant by the term "manufacturer of Agent Orange"), because OxyChem | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• Extraneous information ("Maxus is also…") that does not answer question<br>• Denies an implication it injected itself | The Special Master finds that the response complies with Rule 36 and no further response is needed. Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and the denial was sufficient as this request seeks an admission that Occidental is the sole successor. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | is not the sole successor to DSCC: Maxus is also a successor to DSCC. If a further response is required, the document speaks for itself. | | |
| **(245)** Admit that on or about November 2, 2004, Michael M. Gordon, as counsel for OxyChem made a sworn affidavit admitting that neither Maxus nor Tierra were proper parties to a lawsuit concerning Agent Orange manufactured at 80 Lister Avenue. | Objection 1, 2, 3, 4, 5, 7, and 8. The request seeks an admission regarding an affidavit, which document speaks for itself. Subject to these objections, denied. | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• Extraneous information ("Maxus is also…") that does not answer question<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and this denial was sufficient. |
| **(252)** Admit that on or about July 25, 1973, Diamond Shamrock Corporation and Chemicaland Corporation entered into a Processing Agreement for Chemicaland Corporation to produce 2,4-D exclusively for Diamond Shamrock Corporation. (MAXUS0479199). | Objection 1, 2, 3, 4, 5, 7, and 8. This request seeks an admission regarding an agreement, which document speaks for itself. Subject to and without waiving these objections, admitted there was an agreement bearing that date between Diamond Shamrock Corporation and Chemicaland; denied that this request accurately summarizes its terms. | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• OxyChem is not responding fairly to substance of request; admitting only that there was an agreement but not admitting that the agreement was a processing agreement<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and this denial was sufficient. |
| **(253)** Admit that Occidental Chemical Company entered into a tolling agreement with Chemicaland Corporation for the production and/or supply of 2,4-D. | Objection 1, 2, 3, 4, 5, 7, and 8. This request seeks an admission regarding an agreement, which document speaks for itself. Subject to and without waiving these objections, and to the failure of this request to specify any particular date at issue, admitted there was an agreement between Occidental | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• OxyChem needs to detail the reasonable inquiry it undertook<br>• OxyChem is evading answer by not actually answering the question asked; admitting only to "an agreement" | The Special Master finds that the response complies with Rule 36 and no further response is needed. Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and this denial was sufficient. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | Chemical Company and Chemicaland; denied that this request accurately summarizes its terms because, after reasonable inquiry, OxyChem has not located a copy of this document. | • Impossible to decipher if denial is based on substance of request or stated objections | |
| **(254)** Admit that Occidental Chemical Company entered into a Tolling Agreement with Chemicaland Corporation on August 20, 1975 for the production of 2,4-D. | Objection 1, 2, 3, 4, 5, 7, and 8. This request seeks an admission regarding an agreement, which document speaks for itself. Subject to and without waiving these objections, admitted there was an agreement between Occidental Chemical Company and Chemicaland; denied that this request accurately summarizes its terms because, after reasonable inquiry, OxyChem has not located a copy of this document. | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• OxyChem needs to detail the reasonable inquiry it undertook<br>• OxyChem is evading answer by not actually answering the question asked; admitting only to "an agreement"<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and this denial was sufficient. |
| **(255)** Admit that Occidental Chemical Company entered into a Tolling Agreement with Chemicaland Corporation on September 11, 1975 for the production of 2,4-D. | Objection 1, 2, 3, 4, 5, 7, and 8. This request seeks an admission regarding an agreement, which document speaks for itself. Subject to and without waiving these objections, admitted there was an agreement between Occidental Chemical Company and Chemicaland; denied that this request accurately summarizes its terms because, after reasonable inquiry, OxyChem has not located a copy of this document. | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• OxyChem needs to detail the reasonable inquiry it undertook<br>• OxyChem is evading answer by not actually answering the question asked; admitting only to "an agreement"<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and this denial was sufficient. |
| **(256)** Admit that Occidental Chemical Company entered | Objection 1, 2, 3, 4, 5, 7, and 8. This request seeks an admission | • Boilerplate objections that do not apply to the request | The Special Master finds that the response complies with Rule 36 and no further response is needed. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| into an operation and management agreement with Chemicaland Corporation in or around 1976. | regarding an agreement, which document speaks for itself. Subject to and without waiving these objections, admitted in part and denied in part. Admitted there was an agreement in or about 1976 between Occidental Chemical Company and Chemical and Corporation; otherwise, denied that this request summarizes accurately the terms of that agreement. | • "Document speaks for itself" is improper objection<br>• OxyChem needs to detail the reasonable inquiry it undertook<br>• OxyChem is evading answer by not actually answering the question asked; admitting only to "an agreement"<br>• Impossible to decipher if denial is based on substance of request or stated objections | Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and this denial was sufficient. |
| **(257)** Admit that in or around 1976, Occidental Chemical Company operated at the Lister Plant pursuant to the operation and management agreement with Chemicaland Corporation. (OCC-CER-SA00028830). | Objection 1, 2, 3, 4, 5, 7, and 8. This request seeks an admission regarding an agreement, which document speaks for itself. The request is also vague and ambiguous because it fails to define what is meant by the term "operated at." Subject to and without waiving those objections, admitted there was an agreement in or about 1976 between Occidental Chemical Company and Chemicaland Corporation; otherwise, denied. | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• Objecting to "operated" to evade responding directly to request<br>• OxyChem is evading answer by not actually answering the question asked; admitting only to "an agreement"<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and this denial was sufficient.. |
| **(261)** Admit that Occidental Chemical Company entered into an agreement with Chemicaland Corporation on or about December 10, 1975 to provide Chemicaland Corporation with funds to operate the Lister Plant. | Objection 1, 2, 3, 4, 5, 7, and 8. This request seeks an admission regarding an agreement, which document speaks for itself. The request is also vague and ambiguous because it fails to define what is meant by the term "provide . . . funds to operate." Subject to and without waiving these objections, admitted there was an agreement in or about 1976 between Occidental Chemical | • Boilerplate objections that do not apply to the request<br>• "Document speaks for itself" is improper objection<br>• Objecting to "provide funds to operate" to evade responding directly to request<br>• OxyChem is evading answer by not actually answering the question asked; admitting only to "an agreement"<br>• OxyChem needs to detail the reasonable inquiry it undertook | The Special Master finds that the response complies with Rule 36 and no further response is needed. Though Occidental did assert that the agreement "speaks for itself," which is an improper objection, Occidental also denied the request, and this denial was sufficient. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | Company and Chemicaland Corporation; otherwise, denied. | • Impossible to decipher if denial is based on substance of request or stated objections | |
| **(262)** Admit that Occidental Chemical Company operated the Lister Plant between in or around November 1976 and in or around February 1977. | Objections 1, 2, and 3. The request is vague and ambiguous because it fails to define what is meant by the term "operated." Subject to and without waiving these objections, denied. | • Boilerplate objections that do not apply to the request<br>• Objecting to "operated" to evade responding directly to request<br>• Notably does not question "in or around" here as it did previously<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which addresses the basis for the denial as good faith requires the denial be qualified. |
| **(263)** Admit that Occidental Chemical Company managed the Lister Plant between in or around November 1976 and in or around February 1977. | Objection 1, 2, and 3. The request is vague and ambiguous because it fails to define what is meant by the term "managed." Subject to and without waiving these objections, denied. | • Boilerplate objections that do not apply to the request<br>• Objecting to "managed" to evade responding directly to request<br>• Notably does not question "in or around" here like it did above<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which addresses the basis for the denial as good faith requires the denial be qualified. |
| **(264)** Admit that Occidental Chemical Company was responsible for the operation of the Lister Plant between in or around November 1976 and in or around February 1977. | Objection 1, 2, and 3. The request is vague and ambiguous because it fails to define what is meant by the term "responsible for." To the extent this implies "liability for," it also calls for a legal conclusion. Subject to and without waiving these objections, denied. | • Boilerplate objections that do not apply to the request<br>• Objecting to "responsible for" to evade responding directly to request<br>• The Third Circuit permits requests about legal obligations<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which addresses the basis for the denial as good faith requires the denial be qualified. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| **(267)** Admit that soil at the Lister Plant was contaminated with dioxin during the time period Occidental Chemical Company operated the Lister Plant between in or around November 1976 and in or around February 1977. | Objection 1, 2, 3, 4, 7, and 8. This request fails to define the terms "contaminated" and "operated." Subject to and without waiving these objections, denied. | • Boilerplate objections that do not apply to the request<br>• Objecting to "contaminated" and "operated" to evade responding directly to request<br>• OxyChem does not take issue with "in or around" here as it does in other RFAs<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which addresses the basis for the denial as good faith requires the denial be qualified. |
| **(279)** Admit that Occidental Chemical Company shut down operations at the Lister Plant on or about February 24, 1977. (OCC_MAXUS0053854; OCC-CER-SA00008677; OCC-CER-SA00018574). | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiving these objections, denied. | • Boilerplate objections<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. |
| **(280)** Admit that Occidental Chemical Company was the last company to operate the Lister Plant before it ceased operations on or about February 24, 1977. | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiving these objections, denied. | • Boilerplate objections<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. |
| **(281)** Admit that Occidental Chemical Company was the last company to engage in commercial operations at the Lister Plant before it ceased operations on or about February 24, 1977. | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiving these objections, denied. | • Boilerplate objections<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. |
| **(282)** Admit that when the Lister Plant was shut down on or about February 24, 1977, | Objection 1, 2, 3, 4, 5, 7, and 8. The phrase "clean up" is vague and undefined, and mischaracterizes the | • Boilerplate objections that do not apply to the request | The Special Master finds that the response complies with Rule 36 and no further response is needed. The request contains vague terms like "clean up" and |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---------|---------------------|--------------|-------------------------|
| Occidental Chemical did not clean up the plant. (OCC_MAXUS0381768). | record by suggesting that "Occidental Chemical" shut down the Lister Plant or was able or responsible to "clean up the plant." Subject to and without waiving these objections, denied. | • Objecting to "clean up" to evade responding directly to request<br>• Impossible to decipher if denial is based on substance of request or stated objections | Occidental's response fairly meets the substance of the request. |
| **(289)** Admit that when the Lister Plant was shut down on or about February 24, 1977, Occidental Chemical Company did not empty any of the process lines at the Lister Plant. | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiving these objections, denied. Occidental Chemical Company did not own or operate the Lister Plant at the time Chemicaland ceased operations. | • Boilerplate objections<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request and denies that Occidental emptied the process lines at the Lister Plant because it did not operate the Lister Plant at the applicable time. |
| **(292)** Admit that leaving chemical waste and/or process material in drums at the Lister Plant posed a threat to the environment. | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiving these objections, and subject to the further objection that this request is compound and fails to define the terms "chemical waste" and "process material," when any such waste was placed in drums at the Lister Plant, or the circumstances in which waste was "left" in drums at the Lister Plant. Process material is often placed in drums temporarily before the drums are transported elsewhere for further processing. Given the compound nature of the request, its vagueness, and the fact that it is not specific as to the time or circumstances in which process materials or wastes were placed in drums, OxyChem is unable after | • Boilerplate objections that do not apply to the request<br>• Objecting to "chemical waste" and "process material" to evade responding directly to request; OxyChem uses "process material" itself in the second to last sentence<br>• Extraneous information ("Process materials…") that does not answer question asked | The Special Master finds that the Request is compound, contains numerous vague terms and is ambiguous. No further response is required. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | reasonable inquiry to admit or deny this request. | | |
| **(332)** Admit that OxyChem ceased participating in the CPG in 2012. | Objection 1, 2, 3, 4, 5, and 7. The term "ceased participating" is vague and does not accurately describe the record, which shows that members of the Cooperating Parties Group (who are now Defendants in this action): colluded to avoid paying their share of the costs to fund the River Mile 10.9 removal; breached the terms of the CPG's 2007 Amended and Restated Organization Agreement by holding on short notice a predetermined "vote" to force on OxyChem and its indemnitors Maxus and Tierra a disproportionate share of the costs to fund the River Mile 10.9 removal based on an unfair and unscientific allocation on threat of expulsion from the CPG; then, after executing that scheme, entering into their own ASAOC; all of which left OxyChem to resolve the matter separately and voluntarily with EPA, which it did by accepting the RM 10.9 UAO. Subject to and without waiving those objections, denied. | • Boilerplate objections that do not apply to the request<br>• Objecting to "ceased participating" to evade responding directly to request<br>• Extraneous information ("which shows that…") that does not respond to request<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response does not comply with Rule 36 and orders that an amended answer be served which either admits or denies that Occidental ceased participating in the CPG in 2012 without extraneous objections and narratives. The current response does not clearly explain the basis for the denial. |
| **(333)** Admit that since OxyChem ceased participating in the CPG in 2012, it has refused to pay interim allocation payments. | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiving these objections, OxyChem responds as follows: the CPG breached the Cooperating Parties Group Agreement and wrongly expelled | • Boilerplate objections that do not apply to the request<br>• Extraneous information ("the CPG breached…") that does not answer request | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request as the term "refused" is argumentative and Occidental has set forth the basis for its response. |

41

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---------|---------------------|--------------|-------------------------|
| | OxyChem, Maxus, and Tierra from the Group. As a result of the CPG's prior material breach of the agreement, OxyChem is under no further obligation to pay any amounts to the CPG and has not "refused" to pay anything because it does not owe anything; to the contrary, prior to the CPG's 2012 breach, OxyChem's indemnitors submitted on its behalf interim allocation payments that far exceeded OxyChem's fair and equitable share of responsibility. | | |
| **(337)** Admit that OxyChem has received invoices from the CPG for work performed under the 2007 ASAOC. | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiver of these objections, admitted in part and denied in part. Admitted that the CPG has purported to issue invoices to OxyChem but, denied that any such invoices are owed. In addition, after reasonable inquiry, OxyChem is unable to state whether the work in question was necessary to the performance of obligations under the 2007 ASAOC because the SPG defendants have improperly shielded the details and reasons for such work through an improper invocation of the joint interest privilege. | • Boilerplate objections<br>• Extraneous information ("whether the work in question…") that does not answer request<br>• Additionally, OxyChem is not actually admitting the response: it admits that the CPG has *purported* to issue invoices, and not that the CPG *has issued* invoices | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request because the Request relies on an underlying fact that the invoices are for work performed under the 2007 ASAOC, for which Occidental states it cannot admit or deny, even after reasonably inquiry and has explained the basis for that statement. |
| **(338)** Admit that the invoices that OxyChem has received from the CPG for work performed under the 2007 ASAOC total $16,550,976.09. | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiver of these objections, admitted in part and denied in part. Admitted that the CPG has purported to issue invoices | • Boilerplate objections that do not apply to the request<br>• OxyChem admits to a question not asked—whether the CPG "purported" to issue invoices instead of the question | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that Occidental has received invoices from the CPG for work performed under the 2007 ASAOC that total $16,550,976.09. Occidental's |

| Request | Occidental Response | SPG Response | Special Master Findings |
|---|---|---|---|
| | in this amount to OxyChem but, denied that any such invoices are owed. In addition, after reasonable inquiry, OxyChem is unable to state whether the work in question was necessary to the performance of obligations under the 2007 ASAOC because the SPG defendants have improperly shielded the details and reasons for such work through an improper invocation of the joint interest privilege. | asked—whether the CPG has issued these invoices | extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |
| **(340)** Admit that OxyChem has not paid the invoices OxyChem has received from the CPG for work performed under the 2007 ASAOC | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiver of these objections, OxyChem admits it has not paid the invoices submitted to it by the CPG for work purportedly performed under the 2007 ASAOC, but denied that any such invoices are owed because, as stated in response to Request 333, the CPG breached the Cooperating Parties Group Agreement and wrongly expelled OxyChem, Maxus, and Tierra from the Group. As a result of the CPG's prior material breach of the agreement, OxyChem is under no further obligation to pay any amounts to the CPG and has not "refused" to pay anything because it does not owe anything. | • Boilerplate objections that do not apply to the request <br> • OxyChem admits to a question not asked—whether the CPG "purported" to issue invoices instead of the question asked—whether the CPG has issued these invoices <br> • OxyChem evades direct response by answering questions of its own making instead of question asked | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request. |
| **(341, 343, 345, 347, 349, 351, 353, 355, 357, 359, 361, 363, 365)** <br> Admit that OxyChem has received invoice number | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiver of these objections, admitted in part and denied in part. Admitted that the CPG has purported to issue invoice | • Boilerplate objections <br> • OxyChem admits to a question not asked—whether the CPG "purported" to issue invoices instead the question | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that Occidental received the subject invoices from the CPG. Occidental's extraneous explanation regarding an "implication," which is |

43

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG Response | Special Master Findings |
|---------|--------------------|--------------|-----------------------|
| [XYZ] from the CPG in the amount of $[ABC] | number XYZ to OxyChem in the amount of $ABC, but denied that any such invoices are owed due to the prior material breach of the CPG. | asked—whether OxyChem has received these invoices<br>• It then denies something it was not asked (whether it owed money)<br>• It then says that it cannot answer a question that was not asked after an unspecified reasonable inquiry | found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |
| **(375)** Admit that OxyChem did not participate in the Batson allocation. | Objection 1, 2, 3, 4, 5, 7, and 8. Subject to and without waiver of these objections, admitted in part and denied in part. Admitted that OxyChem ultimately declined to participate in the Batson allocation but denied as to any implication that OxyChem refused or was unwilling to participate; to the contrary, OxyChem corresponded repeatedly with EPA to express its concerns about the truncated, unfair, and unscientific process contemplated by Mr. Batson, urging EPA to allow the parties adequate time to gather and submit evidence relevant to a fair and equitable allocation and to afford Mr. Batson sufficient time and resources to consider that evidence, but EPA refused. It limited Mr. Batson to considering no more than 150,000 pages of documents and 10 pages from each party. As is evident from the 100 pages of OxyChem's complaint and the 150+ pages of just these responses to requests for admission, no part of the Batson process was designed to arrive at a | Boilerplate objections<br>• OxyChem admits matter but then obfuscates its admission with denial of question not asked<br>• Extraneous narrative to further its own argument | The Special Master finds that this an attempt to evade the substance of the request and orders that it be admitted that Occidental did not participate in the Batson allocation. Occidental's extraneous explanation regarding an "implication," which is found in many of its responses is not appropriate or contemplated by the Federal Rules of Civil Procedure. |

**Exhibit A to June 13, 2022 Special Master Decision**

| Request | Occidental Response | SPG  Response | Special Master Findings |
|---|---|---|---|
| | fair and equitable allocation based on the limited, blinkered record EPA permitted Mr. Batson to consider. | | |
| **(419)** Admit that OxyChem is not subject to any obligation requiring OxyChem to incur response costs associated with OU3. | Objection 1, 2, 3, 4, and 6.  This request fails to define "any obligation requiring OxyChem to incur response costs associated with OU3." Subject to these objections, denied. | • Boilerplate objections that do not apply to the request<br>• Objecting to purported lack of definition of a phrase that requires no definition<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request. |
| **(423)** Admit that OxyChem is not subject to any obligation requiring OxyChem to incur response costs associated with OU4. | Objection 1, 2, 3, 4, 5, and 6.  This request fails to define "any obligation requiring OxyChem to incur response costs associated with OU4." Subject to these objections, denied. | • Boilerplate objections that do not apply to the request<br>• Objecting to a purported lack of definition of a phrase that requires no definition<br>• Impossible to decipher if denial is based on substance of request or stated objections | The Special Master finds that the response complies with Rule 36 and no further response is needed. Occidental's response fairly meets the substance of the request. |

**Exhibit A to June 13, 2022 Special Master Decision**