# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | | |
|---|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, | ) ) ) | Hon. Madeline Cox Arleo Hon. Magistrate Leda D. Wettre |
| | ) | |
| Plaintiff, | ) ) | Civil Action No. 2:18-CV-11273 (MCA-LDW) |
| | ) | |
| v. | ) ) ) ) | **BRIEF IN SUPPORT OF THE SMALL PARTIES GROUP'S MOTION FOR RECONSIDERATION AND** |
| 21ST CENTURY FOX AMERICA, INC., *et al.*, | ) ) ) ) | **CLARIFICATION OF THE SPECIAL MASTER'S DECISION DENYING MOTION FOR** |
| Defendants and Third Party Plaintiffs, | ) ) ) | **PROTECTIVE ORDER AND GRANTING MOTION TO COMPEL** |
| v. | ) ) | |
| PASSAIC VALLEY SEWERAGE COMMISSIONERS, et al., | ) ) ) | |
| Third-Party Defendants. | ) ) | |

i

**Table of Contents**

**INTRODUCTION** ..................................................................................................1

**PROCEDURAL HISTORY** .....................................................................................2

**LEGAL STANDARD** .............................................................................................6

**ARGUMENT** .........................................................................................................6

I.      **THE GOOD CAUSE REQUIREMENT IS SATISFIED BY ESTABLISHING THE PRIVILEGED NATURE OF THE EVIDENCE ALONE** ........................................6

II.    **THE ESI PROTOCOL DICTATES THAT ALL CPG DOCUMENTS SOUGHT IN RFP NOS. 1, 2, AND 6 ARE PRIVILEGED AND EXEMPT FROM SEARCHING AND PRIVILEGE LOG REQUIREMENTS**.....................8

      A.  **The ESI Protocol Governs**..........................................................8

      B.  **The ESI Protocol Applies to RFP Nos. 1, 2, and 6** .......................9

      C.  **Alternatively, the RFP Decision Requires Clarification** ....................13

III.   **THE BATSON ALLOCATION DOCUMENTS REQUESTED IN RFP NO. 4 ARE CATEGORICALLY PRIVILEGED PURSUANT TO THE ADR ACT, AMONG OTHER PRIVILEGES**...................14

**CONCLUSION** .....................................................................................................18

## Table of Authorities

**CASES**

*Asymmetrx Med., Inc. v. McKeon*, 2013 WL 2181084 (D. Mass. May 16, 2013) .........................7

*Barten v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 12639915 (D. Ariz. Feb. 5, 2014)...............12

*Chartwell Therapeutics Licensing, LLC v. Citron Pharma, LLC*,
2018 WL 7290830 (E.D.N.Y. Dec. 18, 2018) ....................................................................8

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108 (3d Cir. 1986) ....................................... 6-7

*Citizens Dev. Co. v. Cnty. of San Diego*, 2019 WL 172469 (S.D. Cal. Jan. 11, 2019) ................16

*Cole v. Guardian Life Ins. Co. of Am.*, 594 F. App'x 752 (3d Cir. 2014) ......................................6

*Deveraux v. Sison*, 2020 WL 5725183 (D. Ariz. Sept. 23, 2020)........................................... 11-12

*In re Dow Corning Corp.*, 261 F.3d 280 (2d Cir. 2001)....................................................................7

*Garcia v. Corr. Med. Serv., Inc.*, 2018 WL 1317867 (D.N.J. Mar. 14, 2018) ..............................6

*Liberty Mut. Ins. Co. v. Ward Trucking Corp.*,
1994 WL 111374 (E.D. Penn. Mar. 31, 1994)................................................................12

*Mamman v. Chao*, 2008 WL 1995127 (D.N.J. May 7, 2008) ..........................................................6

*N.J. Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*,
2017 WL 498710 (D.N.J. Feb. 7, 2017) ...........................................................................16

*N.Y. Sec. & Tr. Co. v. Equitable Mortg. Co.*, 71 F. 556 (W.D. Mo. 1896) ...................................12

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994) ...............................5

*Rigsby v. State Farm Fire & Cas. Co.*, 2012 WL 12543030 (S.D. Miss. Apr. 24, 2012) ..............8

*Sheldone v. Pa. Tpk. Comm'n*, 104 F. Supp. 2d 511 (W.D. Pa. 2000) ........................................16

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
2008 WL 199537 (S.D.N.Y. Jan. 22, 2008) .....................................................................7

*In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011)...........................................................................16

**STATUTES**

5 U.S.C.A. § 551(1) (Westlaw through Pub. L. No. 117-148) ......................................................15

5 U.S.C.A. §§ 571-584 (Westlaw through Pub. L. No. 117-148)....................................... 2, 14-17

**RULES**

Fed. R. Civ. P. 16(b)(3)(B)(iv) ...................................................................................................8

Fed. R. Civ. P. 26(b)(1)...............................................................................................................6

Fed. R. Civ. P. 26(b)(5)(A)(ii) ...................................................................................................8

Fed. R. Civ. P. 26(c) ...................................................................................................................6

Fed. R. Civ. P. 26(f)(3)(D)...........................................................................................................8

Fed. R. Civ. P. 53(c) ...................................................................................................................6

Fed. R. Evid. 502(e) ................................................................................................................... 8

L. Civ. R. 7.1(i) ........................................................................................................................... 1

L. Civ. R. 34.1.............................................................................................................................8

L. Civ. R. 72.1(c)(1)(A) ..............................................................................................................6

In accordance with Local Civil Rule 7.1(i), the Small Parties Group Defendants (the "SPG") respectfully moves for reconsideration and clarification of the Special Master's Order and Decision Denying Small Parties Group Defendants' Motion for Protective Order and Granting Plaintiff's Cross-Motion to Compel regarding four topics in Occidental Chemical Corporation's ("OxyChem's") Second Request for Production of Documents ("RFPs") (the "RFP Decision").[1]

## INTRODUCTION

The RFP Decision directly conflicts with—and effectively undoes—a prior order entered by the Court with the agreement of the parties to efficiently manage discovery in this case and protect well-recognized privileges.  To the extent that responsive documents might not be covered by that prior order, they would nevertheless be protected from discovery by federal statute. Although the RFP Decision purports to preserve SPG Defendants' privileges, it requires searching for, compiling, and logging materials that the parties agreed should, and the Court agreed will, be exempt from these onerous tasks because such materials are clearly and categorically privileged. Contrary to the imperative to move discovery forward, the RFP Decision would undermine prior steps taken to streamline discovery, contrary to prior orders and in violation of federal law.

The SPG therefore seeks reconsideration and clarification on grounds that the RFP Decision (1) directly contradicts a prior order of this Court that excuses all parties in the litigation from searching for, producing, and logging the documents requested by OxyChem and (2) violates the Alternative Dispute Resolution Act (the "ADR Act"), 5 U.S.C.A. §§ 571-584 (Westlaw through Pub. L. No. 117-148).  Because the documents requested in the RFPs at issue are categorically privileged, that privilege has not been waived,[2] and that privilege constitutes the

---

[1] ECF Nos. 2080, 2081 (entered June 13, 2022).
[2] The Special Master has already determined that "OxyChem's cursory argument that SPG Defendants waived any applicable privilege has no merit."  ECF No. 2080 at 19.

requisite good cause to obtain a protective order, the SPG respectfully requests that the Special Master reconsider the RFP Decision and grant the SPG protective relief from the four RFPs, as discussed in further detail below.

## PROCEDURAL HISTORY

On September 9, 2021, OxyChem served on seventy-one SPG Defendants a series of supplemental RFPs, including four categories of documents that are—and that OxyChem had already recognized as—privileged:

- **RFP No. 1.** All Documents regarding the Fourth Amendment to the ARAO [sic], including Communications between You and any person regarding the Fourth Amendment to the ARAO [sic].

- **RFP No. 2.** All Communications with FTI regarding the Diamond Alkali Superfund Site, including Communications regarding the RM10.9 Recommendation.

- **RFP No. 4.** If You participated in the Batson Process, all Documents regarding Your Decision to participate in the Batson process.

- **RFP No. 6.** All Documents in the possession, custody, or control of You or the CPG regarding the decision to terminate or cease the 2015 Allocation Process. This Request includes Communications with any Person regarding the decision to terminate or cease the 2015 Allocation Process.[3]

The significance of these four RFPs is made plain by examining a few key events and processes that occurred outside of this litigation. In 2004, the Cooperating Parties Group (the "CPG") was created, comprising a number of entities—including OxyChem—that had been identified as potentially responsible parties ("PRPs") in relation to the Lower Passaic River Study Area (the "LPRSA") of the Diamond Alkali Superfund Site.[4] The CPG's purposes include carrying out a common response to certain environmental claims related to the LPRSA, investigating other PRPs, negotiating with governmental entities, pooling resources, and hiring

---

[3] ECF No. 1965-1 at 7-8.
[4] Affidavit of Dawn Lamparello, attached as **Exhibit 1**.

consultants.  In 2007, the members of the CPG—including OxyChem—executed an Amended and

Restated Organization Agreement (the "AROA"), to memorialize the parties' agreement.[5]  The

AROA contains a confidential joint defense agreement that, *inter alia*, renders confidential all

information shared between and among CPG members—both current and former, coordinating or

common counsel, and any technical consultant.[6]  About the AROA, OxyChem's counsel, Kathy

D. Patrick, has agreed, "Section 13 of the CPG Agreement, titled 'Confidentiality and Use of

Information,' provided that all members of the CPG were required to protect the confidentiality of

information exchanged for purposes of the joint defense arrangement created under that agreement.

The agreement also provides that OxyChem (as a withdrawn member) remains subject to the

obligation to protect the confidentiality of such shared information even after its withdrawal."[7]

In 2012, the CPG again reached a settlement with the EPA, this time regarding costs

associated with River Mile 10.9 ("RM 10.9") within the LPRSA.[8]  To aid in its settlement efforts,

the CPG hired FTI Consulting, Inc. ("FTI")[9] to consult regarding the RM 10.9 agreement with the

EPA.  The Fourth Amendment to the AROA, executed in 2012, relates to an internal allocation

among CPG members as to costs associated with the RM 10.9 settlement.  OxyChem, in lieu of

participating in the settlement as to RM 10.9, withdrew from the CPG in 2012, while the remainder

of the CPG continued to cooperate with the EPA.[10]  The CPG's additional cooperation efforts

---

[5] *Id.*

[6] The precise language of the AROA is not reproduced here because the AROA is itself confidential. *Id.* Should the Special Master determine that an inspection of the AROA is necessary to a decision on this motion, the SPG will submit the AROA for *in camera* review.

[7] ECF No. 1959-6 at 1; *see* Ex. 1.

[8] Ex. 1**.**

[9] *Id.*

[10] *Id.*; *see* ECF No. 1959-6 at 1 (consisting of a letter dated March 13, 2019, from Kathy D. Patrick to David R. Erickson in which Ms. Patrick stated, "Prior to May 29, 2012, OxyChem, Maxus Energy Corporation (Maxus) and Tierra Solutions, Inc. (Tierra) were members of the CPG.").

included a 2015 allocation process among the CPG members, by which the CPG initiated—but eventually discontinued—an internal allocation of costs related to the LPRSA.[11]

The CPG's cooperation with the EPA later culminated in an EPA allocation of responsibility for the LPRSA by a neutral third-party mediator—the Batson allocation—which laid the groundwork for the current settlement discussions between the EPA and a group of parties deemed potentially responsible for the LPRSA. Rather than participate in the Batson allocation, OxyChem once again chose a different path, electing instead to sue more than one hundred other parties for costs related to the LPRSA.[12]

To facilitate an efficient and effective discovery process in a litigation of this magnitude and complexity, the parties negotiated at length to reach an agreement as to the collection and production of documents. The resulting document, the Joint Protocol for Production of Documents and Electronically-Stored Information (the "ESI Protocol"), was entered as an order of the Court in 2019, and the parties have been searching for and disclosing materials according to its terms for more than three years.[13] One of the "Privilege and Confidentiality" terms of the ESI Protocol is a provision categorically deeming certain documents as privileged and relieving the parties of any obligation to search for, produce, or include entries as to such documents in their privilege logs:

> ***No party is required to search, produce, or include in its privilege logs***: (1) the ***custodial files of counsel of record or outside attorneys*** advising in this litigation or with respect to the Diamond Alkali Superfund Site (or their associated attorneys and support staff, including paralegal and secretarial personnel); (2) the ***custodial files of in-house counsel*** advising in this litigation or with respect to the Diamond Alkali Superfund Site (or their associated attorneys and support staff, including paralegal and secretarial personnel); (3) ***joint defense communications*** pursuant to a joint defense agreement, provided that the date of the joint defense agreement and

---

[11] Ex. 1.

[12] ECF No. 1.

[13] ECF No. 544 (entered Feb. 8, 2019). OxyChem itself has relied on the ESI Protocol, citing it, for example, to obtain protection from disclosing in discovery the files of Frank Parigi. ECF No. 1130 at 2. OxyChem has also gone so far as to refer to the ESI Protocol as a "cornerstone[] of how discovery has proceeded thus far," 9/22/21 Status Conf. Tr. at 103:19-23, and, in its standard RFP instructions, OxyChem reminds the SPG Defendants, "Defendant shall comply with any ESI Protocol entered by the Court," ECF Nos. 878-1 Ex. A at 1, 1238-5 at 3.

the parties to it are disclosed; and (4) privileged communications between counsel and clients created or received for purposes of the Spill Act Litigation during the time of the Spill Act Litigation.[14]

(Emphases added.)  At the time the ESI Protocol was entered, OxyChem was well aware that it would protect CPG documents and communications, having been a party to the AROA itself.[15]

It is against this backdrop of settlement and court-sanctioned confidentiality that OxyChem now impermissibly seeks privileged documents in the four RFPs at issue.  When the SPG's multiple efforts to address these privilege issues with OxyChem were unsuccessful, the SPG was left with no choice but to file the underlying motion for protection from these RFPs.[16]  OxyChem opposed the motion, though, notably, it did so primarily on grounds that the requested documents were relevant, as if relevance alone dictates discoverability.[17]  *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994) (agreeing that a document does not become discoverable just because it is relevant).  As the SPG explained in its reply and opposition to OxyChem's motion to compel, the SPG Defendants' objection to production of the documents at issue was chiefly based on concerns of privilege rather than relevance, and thus, OxyChem's opposition was largely nonresponsive to the crux of the SPG's motion for protection.[18]  Doubling down on its efforts to obtain privileged materials, however, OxyChem further requested an order compelling the SPG to produce materials responsive to the challenged RFPs.[19]  By decision entered on June 13, 2022, the Special Master denied the SPG's motion for protection as to all four RFPs and granted OxyChem's motion to compel the SPG to respond to the four RFPs.[20]

---

[14] ECF No. 544 § 4(c) at 11.
[15] *See* ECF No. 1959-6 at 1.
[16] ECF No. 1959 (filed Jan. 29, 2022).
[17] ECF No. 1965 at 2-4 (filed Feb. 2, 2022) (discussing the requested documents as "relevant," "pertinent," and "at issue").
[18] ECF No. 1985 (Feb. 15, 2022).
[19] ECF No. 1965 at 2.
[20] ECF Nos. 2080, 2081.

## LEGAL STANDARD

The SPG moves for reconsideration and clarification of the Special Master's RFP Decision pursuant to L. Civ. R. 7.1(i), which requires the SPG to "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked."  *See* Order Appointing Special Master, ECF No. 633, at 3-4 (June 21, 2019); L. Civ. R. 72.1(c)(1)(A); Fed. R. Civ. P. 53(c); *see also Cole v. Guardian Life Ins. Co. of Am.*, 594 F. App'x 752, 756 (3d Cir. 2014) (noting that a motion for reconsideration is properly filed based on a "need to correct a clear error of law or fact or to prevent manifest injustice" (quotation marks omitted)); *Garcia v. Corr. Med. Serv., Inc.*, 2018 WL 1317867, at *1 (D.N.J. Mar. 14, 2018) (discussing motions for clarification according to a similar standard).

## ARGUMENT

By this motion, the SPG seeks to elucidate the grounds for its motion overlooked by the Special Master and to distinguish more fully the documents at issue in these RFPs from those that are subject to privilege log requirements.   Before addressing the bases of privilege, however, the SPG addresses the improper application of the good cause standard in the RFP Decision, which constitutes an error of law.

### I.     THE GOOD CAUSE REQUIREMENT IS SATISFIED BY ESTABLISHING THE PRIVILEGED NATURE OF THE EVIDENCE ALONE.

 Protective relief is necessary where one party seeks privileged or otherwise non-discoverable information.   Fed. R. Civ. P. 26(b)(1) (limiting discoverable evidence to "nonprivileged matter"); *see Mamman v. Chao*, 2008 WL 1995127, at *2 (D.N.J. May 7, 2008). Alternatively, such relief is appropriate to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c); *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1112 & n.3 (3d Cir. 1986).  As the party seeking protection, it

is the SPG's burden to demonstrate that good cause exists for obtaining such protection. *Cipollone*, 785 F.2d at 1121.

Contrary to the analysis undertaken in the RFP Decision,[21] however, if the moving party demonstrates that protection is necessary on privilege grounds, the moving party need not *also* demonstrate that disclosing those materials compromises a privacy interest, is not requested for a legitimate purpose, causes embarrassment or concern for public health or safety, affects the fairness and efficiency of the proceeding, or is unduly burdensome.  Rather, the good cause standard is met without further inquiry when the materials at issue are privileged, and where privilege exists, disclosure is not discretionary.  *See, e.g.*, *Asymmetrx Med., Inc. v. McKeon*, 2013 WL 2181084, at *2 (D. Mass. May 16, 2013) ("[P]rivilege constitutes such good cause, [and] the party resisting discovery bears the burden of establishing that the privilege is applicable."); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 2008 WL 199537, at *5 (S.D.N.Y. Jan. 22, 2008) ("[A] valid assertion of privilege constitutes good cause . . . ."); *In re Dow Corning Corp.*, 261 F.3d 280, 284 (2d Cir. 2001) (concluding that privileged materials could not be ordered disclosed because there could be no "surrogate for the privilege").

In the RFP Decision, however, the Special Master essentially held the SPG to a double good-cause burden, requiring the SPG to establish the applicable privilege *and then* to establish some other ground for good cause, such as privacy, fairness, efficiency, embarrassment, public health or safety, or the like.[22]  The Special Master's application of such considerations to matters of privilege constitutes an error of law.

---

[21] *See* ECF No. 2080 at 10, 17, 18.

[22] *See id.*

## II.  THE ESI PROTOCOL DICTATES THAT ALL CPG DOCUMENTS SOUGHT IN RFP NOS. 1, 2, AND 6 ARE PRIVILEGED AND EXEMPT FROM SEARCHING AND PRIVILEGE LOG REQUIREMENTS.

### A.  The ESI Protocol Governs

Although the rules of discovery generally require a party to substantiate its privilege claims with a privilege log, Fed. R. Civ. P. 26(b)(5)(A)(ii); L. Civ. R. 34.1, parties may agree to alter these default requirements, and the Court may enter such party agreements as orders, *see* Fed. R. Civ. P. 16(b)(3)(B)(iv) (authorizing the Court to "include any agreements the parties reach for asserting claims of privilege" into pretrial orders); Fed. R. Civ. P. 26(f)(3)(D) (discussing the court's inclusion in a discovery plan the terms of the parties' agreement "on a procedure to assert these claims [of privilege] after production"); Fed. R. Evid. 502(e) (allowing the parties to reach—and the court to incorporate into an order—a binding agreement "on the effect of disclosure [of privileged information] in a federal proceeding"); *see also Chartwell Therapeutics Licensing, LLC v. Citron Pharma, LLC*, 2018 WL 7290830, at *2 n.2, 6 (E.D.N.Y. Dec. 18, 2018) (enforcing the parties' privilege agreement, entered as an order of the court); *Rigsby v. State Farm Fire & Cas. Co.*, 2012 WL 12543030, at *1-2 (S.D. Miss. Apr. 24, 2012) (applying the parties' "privilege log agreement").

The ESI Protocol in this case, which was negotiated and consented-to by the parties and then entered as an order of the Court, constitutes just such an agreement; as such, its terms—rather than the general procedural rules—govern assertions of privilege for documents within its scope. The rationale for the parties' agreement to this portion of the ESI Protocol is self-evident; the ESI Protocol was intended to wholly prevent the parties from being required to search for, locate, catalog, redact, sort, or organize—or create privilege logs for—documents that are so obviously

privileged and therefore non-discoverable that to impose such requirements would constitute an enormous waste of resources with no corresponding benefit.

### B.  The ESI Protocol Applies to RFP Nos. 1, 2, and 6

RFP Nos. 1, 2, and 6 exclusively seek materials that are *exempt from searching and logging according to the ESI Protocol*.  Those requests seek documents regarding the activities of and communications between and among the CPG,[23] including CPG's common counsel, individual CPG members' outside and in-house counsel, CPG members, and/or CPG consultants, in connection with, and in anticipation of litigation concerning, the Diamond Alkali Superfund Site:

- RFP No. 1 requests documents regarding the Fourth Amendment to the AROA, i.e., that portion of the CPG agreement discussing and allocating costs for the 2012 RM 10.9 settlement with the EPA;

- RFP No. 2 requests communications with FTI, a consultant hired by the CPG in its settlement efforts with regard to the 2012 RM 10.9 settlement with the EPA; and

- RFP No. 6 requests documents regarding the CPG's 2015 discontinued allocation process.

All responsive materials are privileged and exempt from search, production, and privilege logging requirements according to the plain language of the Court-approved ESI Protocol.

As an initial matter, to the extent that OxyChem seeks any materials in "the custodial files of counsel of record or outside attorneys advising in this litigation or with respect to the Diamond Alkali Superfund Site" or "in the custodial files of in-house counsel advising in this litigation or with respect to the Diamond Alkali Superfund Site," the ESI Protocol obviates any necessity to "search, produce, or include in . . . privilege logs" any of those materials.[24]

---

[23] As the Special Master has already found and concluded, the CPG and the SPG are distinctly different groups. 5/18/22 Status Conf. Tr. at 70-71 ("[The SPG] is seeking [an] order with respect to the CPG and the SPG as distinct groups. . . . I feel as if I've been clear on this point.  I think we all know who the parties are. . . . I'm happy to say it, repeat that again.  They're different groups.").

[24] ECF No. 544 § 4(c) at 11.

Any remaining documents that fall within the scope of RFP Nos. 1, 2, and 6 are protected by that portion of the ESI Protocol that unequivocally excepts from all discovery obligations—including any obligation to create or maintain privilege logs—documents that constitute "*joint defense communications pursuant to a joint defense agreement*."[25]  That the CPG is a joint defense group with a joint defense agreement (the 2007 AROA) is beyond question[26] and, in fact, OxyChem itself has referenced the CPG's "joint defense arrangement" and the "joint interest privilege imposed by the 2007 [AROA]."[27]  The Special Master reached the same conclusion in the RFP Decision, confirming, "*There appears to be no dispute that communications related to the CPG were subject to a joint defense agreement*."[28]  Nevertheless, should there remain any questions on this point, the attached affidavit of Dawn Lamparello, the CPG's common counsel, provides ample additional factual support for the SPG's claims of privilege guaranteed by section 4(c) of the ESI Protocol.[29]  In it, Ms. Lamparello again attests to what the record already establishes: that the CPG is a joint defense group; the names of the CPG members; and that the CPG's 2007 AROA constitutes a joint defense agreement.[30]  RFP Nos. 1, 2, and 6 seek nothing but the CPG's work-product and privileged joint-defense communications.

RFP Nos. 1, 2, and 6 seek communications within and among CPG members and their hired consultants—RFP Nos. 1 and 2 regarding the 2012 RM 10.9 settlement and RFP No. 6 regarding an intra-CPG allocation attempt—all in joint defense of the EPA's identification of CPG

---

[25] *Id.*(emphasis added).
[26] Ex. 1.
[27] ECF No. 1959-6 at 1.
[28] ECF No. 2080 at 21 (emphasis added).  The RFP Decision irreconcilably finds that CPG documents are part of a joint defense agreement *and* that the SPG should have provided details about those communications in a privilege log. *Id.* at 21-22; *see id.* at 10 (acknowledging that the ESI Protocol applies to counsel files and joint defense communications but stating that a privilege log is nevertheless "necessary . . . to confirm . . . that these materials are privileged").  The fact that CPG communications were indisputably subject to a joint defense agreement *is precisely why* no such privilege log is required.
[29] *See* Ex. 1.
[30] *See id.*

members as PRPs as to the LPRSA.  Because, by their plain terms, RFP Nos. 1, 2, and 6 seek "joint defense communications pursuant to a joint defense agreement," section 4(c) of the ESI Protocol shields the parties from having to search for responsive documents or to produce privilege logs for those documents.  Indeed, that was the whole point of the pertinent provision in the ESI Protocol: to avoid wasting time and resources by absolving the parties of any obligation to search for or log such obviously-privileged documents.  The *only* documents that could be responsive to RFP Nos. 1, 2, and 6 are those between and among one or more CPG members; FTI, CPG's consultant; CPG's common counsel; or individual CPG members' counsel, *all of which* are within the scope of section 4(c) of the ESI Protocol and therefore outside the scope of any permissible discovery.  In this way, the ESI Protocol is consistent with the parties' understanding and intent, as memorialized in the 2007 AROA (to which OxyChem itself was a party), that all communications and work-product prepared under the auspices of the CPG would be privileged and protected by the CPG joint defense arrangement;[31] simply put, CPG documents were never meant to be discoverable.  OxyChem is acutely aware of this fact, which is no doubt why it agreed to the applicable provision in the ESI Protocol in the first place.

Notwithstanding this long-standing directive in the 2007 AROA as entered by a Court order in the ESI Protocol, the RFP Decision not only renders such joint defense communications discoverable, but also requires the SPG to complete *the exact tasks* that the ESI Protocol was intended to avoid: searching for and logging privileged joint defense communications.  In doing so, the RFP Decision places the SPG in an impossible position: comply with the ESI Protocol entered by the Court more than three years ago or comply with the RFP Decision.  *See Deveraux v. Sison*, 2020 WL 5725183, at *3 (D. Ariz. Sept. 23, 2020) (stating that the entry of a judgment

---

[31] *See* Ex. 1.

contradicting a prior judgment "would be unseemly and possibly absurd"); *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 1994 WL 111374, at *3-4 (E.D. Penn. Mar. 31, 1994) (cautioning against the entry of "contradictory orders and varying interpretations"); *Barten v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 12639915, at *2 (D. Ariz. Feb. 5, 2014) ("The court is not in the habit of issuing self-contradictory orders."); *N.Y. Sec. & Tr. Co. v. Equitable Mortg. Co.*, 71 F. 556, 559 (W.D. Mo. 1896) (discussing the "intolerable confusion which would result from contradictory orders").

Taken at face value, the RFP Decision appears to be based on an interpretation of the ESI Protocol that would shield the parties from searching, producing, or logging documents but only unless and until a party seeks production of those documents.[32]  Such an interpretation would completely vitiate section 4(c) of the ESI Protocol, impose significant unnecessary burdens on the SPG to undertake these substantial tasks from scratch, and reward OxyChem's untoward attempts to obtain materials that it knows and has itself regarded as protected by the ESI Protocol.

To that point, compliance with the RFP Decision would certainly cause undue burden and would likely have the effect of substantially delaying otherwise-proceeding fact-discovery efforts. The SPG has reasonably requested that ESI searching be conducted only once.[33]  The Special Master has also expressly addressed this point: "I understand the expense associated with searching, and I also understand the hope to avoid duplication of that,"[34] and has also acknowledged that additional ESI searches will affect depositions.[35]  As discussed in the SPG's

---

[32] Any assertion by OxyChem that it requires a privilege log to understand the basis of the SPG's claim of privilege as to CPG documents is belied by OxyChem's agreement that CPG materials are privileged.  *E.g.*, ECF No. 1959-6 at 1.  The parties have what they need to assess these claims of privilege; they did not come to this litigation as complete strangers, but rather they understood the decades of privileged communications and work-product materials generated by the CPG.  The parties chose to protect specific materials from discovery, and the Court has blessed that decision in the ESI Protocol.  Undertaking search and logging tasks in this instance would constitute superfluous make-work conducted at great time and expense.

[33] *See* 3/11/20 Status Conf. Tr. at 80:16-21.

[34] 1/15/20 Status Conf. Tr. at 115:10-12; *see* ECF No. 1959-3 at 2-3.

[35] 9/22/21 Status Conf. Tr. at 36:16-37:17.

corresponding Motion to Stay, the SPG has never searched for, reviewed, redacted, or logged documents responsive to RFP Nos. 1, 2, and 6 because such documents are within the scope of the ESI Protocol's protections.  To begin doing so now will require seventy-one SPG Defendants to essentially begin significant discovery efforts anew.

Because the RFP Decision is squarely at odds with the terms of the ESI Protocol entered by the Court in 2019 (and as reflected in the confidentiality provisions of the 2007 AROA), the SPG respectfully seeks reconsideration of the RFP Decision and, based on the terms of the Court-issued ESI Protocol, reasserts its request for protection from RFP Nos. 1, 2, and 6 without any requirement to search for or log responsive materials.

### C.  Alternatively, the RFP Decision Requires Clarification

To the extent that the SPG's request for reconsideration is denied, the SPG alternatively seeks clarification of the RFP Decision on two grounds.

First, the RFP Decision notes that OxyChem agreed to "limit[] the scope of RFP No. 1 to documents generated on or before May 29, 2012,"[36] representing the date that OxyChem withdrew from the CPG.[37]  In another portion of the RFP Decision, however, the Special Master confirmed that the SPG has no obligation to produce to OxyChem materials that OxyChem already has in its possession.[38]  Given that OxyChem withdrew from the CPG on May 29, 2012, OxyChem has in its possession all materials distributed to CPG members on or before that date.[39]  Thus, the import of this ruling, in conjunction with the narrowed scope of RFP No. 1, is that OxyChem already has all responsive documents that were distributed to the CPG as a whole by virtue of its former membership in the CPG up until that date, and there are no additional such documents for the SPG

---

[36] ECF. No. 2080 at 3; *see* ECF No. 1959-5 at 1.
[37] ECF No. 1956-6 at 1; Ex. 1.
[38] ECF No. 2080 at 9-10.
[39] *See* Ex. 1.

to produce. The SPG therefore seeks clarification that it is not required to produce responsive documents distributed to the CPG in response to RFP No. 1.

Second, notwithstanding those portions of the RFP Decision that require the SPG to produce documents responsive to the challenged RFPs, the RFP Decision also authorizes the SPG to "withhold documents responsive to RFP No. 2 . . . pursuant to the parties' agreement and applicable law."[40] It is unclear, however, which "agreement" and what "applicable law" are at issue. The ESI Protocol and the 2007 AROA are agreements, both of which absolve the SPG of any obligation to respond to RFP No. 2 (and RFP Nos. 1 and 6), and yet the Special Master has nonetheless required the SPG to respond to those RFPs. The SPG therefore seeks clarification on the meaning and scope of the provision allowing the SPG to withhold documents based on "agreement" and "applicable law."[41]

### III. THE BATSON ALLOCATION DOCUMENTS REQUESTED IN RFP NO. 4 ARE CATEGORICALLY PRIVILEGED PURSUANT TO THE ADR ACT, AMONG OTHER PRIVILEGES.

In requesting the production of documents related to the Batson allocation, RFP No. 4 seeks categorically confidential and privileged information as well. Aside from the several other grounds of privilege that apply to Batson allocation documents, the Special Master need look no further than the ADR Act applicable to the EPA's administrative proceedings. 5 U.S.C.A. §§ 571-

---

[40] ECF No. 2080 at 13.

[41] To the extent that the Special Master refers to the agreement reached by the parties in 2019, which provides for searching and logging—but not the production—of certain materials responsive to consultant subpoenas, ECF No. 760, that agreement provides no basis for the Special Master's order for the SPG Defendants to search, redact, and log the communications with FTI that OxyChem seeks in RFP No. 2, *see* ECF No. 2080 at 12-13. The 2019 agreement related only to specified information sought *from the consultants themselves*, ECF No. 760 at 1, whereas RFP No. 2 seeks FTI communications *from the SPG Defendants* who are or were also CPG members, ECF No. 1965-1. The 2019 agreement also maintained the parties' right to otherwise withhold consultant documents on privilege grounds. ECF No. 760 at 1. Just such a privilege applies to the particular FTI documents sought in RFP No. 2, that is, via the ESI Protocol, which expressly states that the parties need not search, redact, or log such privileged information. ECF No. 544 § 4(c) at 11. For that subset of materials to which the ESI Protocol applies, including the FTI communications that OxyChem seeks in RFP No. 2, the ESI Protocol governs.

584; *see* 5 U.S.C.A. §§ 551(1), 571(1) (Westlaw through Pub. L. No. 117-148).  The ADR Act unequivocally prohibits a party to an administrative dispute resolution proceeding from disclosing communications according to the following terms:

> **(b)** A party to a dispute resolution proceeding shall not voluntarily disclose or through discovery or compulsory process be required to disclose any dispute resolution communication, unless—
>
>> **(1)** the communication was prepared by the party seeking disclosure;
>>
>> **(2)** all parties to the dispute resolution proceeding consent in writing;
>>
>> **(3)** the dispute resolution communication has already been made public;
>>
>> **(4)** the dispute resolution communication is required by statute to be made public;
>>
>> **(5)** a court determines that such testimony or disclosure is necessary to--
>>
>>> **(A)** prevent a manifest injustice;
>>>
>>> **(B)** help establish a violation of law; or
>>>
>>> **(C)** prevent harm to the public health and safety,
>>>
>>> of sufficient magnitude in the particular case to outweigh the integrity of dispute resolution proceedings in general by reducing the confidence of parties in future cases that their communications will remain confidential;
>>
>> **(6)** the dispute resolution communication is relevant to determining the existence or meaning of an agreement or award that resulted from the dispute resolution proceeding or to the enforcement of such an agreement or award; or
>>
>> **(7)** except for dispute resolution communications generated by the neutral, the dispute resolution communication was provided to or was available to all parties to the dispute resolution proceeding.

5 U.S.C.A. § 574(b).  A "dispute resolution communication" is "any oral or written communication prepared for the purposes of a dispute resolution proceeding, including any memoranda, notes or work product of the neutral, parties or a nonparty participant."  5 U.S.C.A. § 571(5). A "dispute resolution proceeding" is "any process in which an alternative means of dispute resolution is used

to resolve an issue in controversy in which a neutral is appointed and specified parties participate." 5 U.S.C.A. § 571(6).

There can be no argument but that the Batson allocation—an EPA-sponsored allocation by a neutral third-party mediator completed in the context of regulatory settlement proceedings—and all related documents and communications of the parties who participated[42] in the Batson allocation fall within the ambit of the ADR Act's confidentiality protection and therefore also fall outside the ambit of permissible discovery.[43]  The protections of the ADR Act must equally extend to parties' "memoranda, notes or work product" in preliminary decisions regarding their participation in the Batson allocation process.  5 U.S.C.A. § 571(5).  Unless and until the confidentiality afforded by the ADR Act is properly waived by one of the means for which 5 U.S.C.A. § 574(b) provides, none of those materials may be the subject of discovery in this matter.

Nor is the creation of a privilege log useful in this exercise.  Privilege logs are intended to provide basic minimum information about materials when it is not discernable to other parties or to the Court whether privilege might apply to all or some portion of those materials. The very nature of any of the Batson allocation participants' documents, however, renders them categorically privileged and confidential as a matter of law.   Requiring the SPG Defendants to search for and create privilege logs on such matters would be akin to requesting that OxyChem

---

[42] It is the party/participation requirement that distinguishes the SPG's claim of privilege regarding its participation in the Batson allocation from OxyChem's claim of privilege regarding its decision *not* to participate in the Batson allocation.  *See* ECF Nos. 1380, 1965.  As a non-party and non-participant to the Batson allocation, OxyChem enjoys no protection from the ADR Act.  *See* 5 U.S.C.A. § 571(5) (protecting "memoranda, notes or work product of the neutral, parties or nonparty participant").

[43] In addition, federal courts recognize a common law mediation privilege to prevent parties from using an alleged admission made in the mediation process that otherwise may not have been made.  *N.J. Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*, 2017 WL 498710, *3 (D.N.J. Feb. 7, 2017).  The privilege extends to all written and oral communications made in connection with or during a mediation conducted before a neutral mediator, and its purpose is to prevent such communications from being used for any purpose in a civil action or other proceeding.  *Sheldone v. Pa. Tpk. Comm'n*, 104 F. Supp. 2d 511, 517 (W.D. Pa. 2000); *see also Citizens Dev. Co. v. Cnty. of San Diego*, 2019 WL 172469, at *6-7 (S.D. Cal. Jan. 11, 2019).  Confidentiality is a critical feature of mediation and other alternative dispute resolution processes because it "promotes the free flow of information that may result in the settlement of a dispute." *In re Teligent, Inc.*, 640 F.3d 53, 57 (2d Cir. 2011) (quotation marks omitted).

produce a privilege log for each and every communication it has had with outside counsel representing it during litigation over a period of years, a task that no reasonable party would request.  Moreover, most if not all of the parties' Batson allocation-related materials are in the custodial files of counsel of record, outside attorneys, or in-house counsel for SPG Defendants and, as such, those documents are equally exempt from search, production, or logging requirements pursuant to section 4(c) of the ESI Protocol.[44]

OxyChem itself has already agreed to the confidentiality of documents related to the Batson allocation on several occasions across a host of litigation events, and it should not now be permitted to revisit its representations on which the SPG has relied in declining to produce those materials. For example, OxyChem has made the following representations to the Court:

- "Defendants and OxyChem agree that the ADR Act provides confidentiality protection to 'dispute resolution communications' that occur in the Batson process or any mediated settlement.  *See* 5 U.S.C.A. § 574.  OxyChem acknowledges that the statute applies to the Batson proceedings and has informed Defendants' counsel that it does not intend to seek discovery of documents protected by the Act, including information communicated by any party to any mediator, in any mediated settlement process, whether conducted by David Batson of AlterEcho or anyone else.  No additional protective order is necessary to confirm what the statute already provides.  Still, OxyChem offered to agree to a reasonable protective order confirming that no party would be entitled to seek discovery of party submissions to or communications with a mediator. . . . The only documents Defendants' letter specifically identifies—'submissions to Mr. Batson and his team'—are already confidential under both the ADR Act and would be confidential under the protective order proposed by OxyChem.  There is no dispute over this central issue."[45]

- "OxyChem has repeatedly acknowledged to Defendants that the Batson allocation—along with any mediated settlement communications—is covered by existing statutory confidentiality protections, such as the Administrative Dispute Resolution Act (ADR Act), as discussed below.  Accordingly, OxyChem offered to enter into a protective order confirming those protections, in which it would agree that 'submissions to Mr. Batson'— the only category of documents identified in Defendants' letter—are entitled to confidentiality."[46]

---

[44] ECF No. 544 § 4(c) at 11.
[45] ECF No. 284 at 2.
[46] *Id.*

- "Defendants assert an alleged urgency based only on upcoming 'submissions of materials and documents to Mr. Batson.' As discussed, there is no dispute that party submissions in a mediation are confidential."[47]

- "The information they seek to protect in this case is already protected by the [ADR Act], [and OxyChem] has agreed that the Court can and should enter the District's standard protective order. Moreover, there is no live controversy: OxyChem has not sought, and does not intend to seek in this litigation, information regarding the Batson Process."[48]

- "[W]e do not intend to request submissions they make to Mr. Batson or to one another. Perfectly fine. That's all covered by the ADR Act. And we have not agreed – and we've said that the standard protective order can apply and the ADR Act can apply."[49]

The Court itself has also recognized OxyChem's representations regarding the application of the ADR Act to Batson allocation materials: "Notably, Plaintiff has acknowledged that the ADR Act protects submissions made by the allocation participants to the allocator, and has affirmed that it 'has not sought, and does not intend to seek in this litigation, information regarding the Batson Process.'"[50] Because any request for production relating to Batson allocation materials improperly seeks patently privileged and confidential documents according to the ADR Act, the Special Master should reconsider its decision denying the SPG a protective order as to RFP No. 4 and should instead grant the requested protection.

## CONCLUSION

Rather than adhering to the standards ordered in the ESI Protocol and the ADR Act, the RFP Decision requires the SPG to respond to OxyChem's RFP Nos. 1, 2, 4, and 6 and to otherwise create privilege logs where privilege logs have no place. Because the ESI Protocol and the ADR Act prohibit any disclosure of responsive materials—and obviate any need to search for or create privilege logs regarding those materials—the Special Master should reconsider its decision and—

---

[47] *Id.* at 3.
[48] ECF No. 449 at 1.
[49] 1/28/19 Status Conf. Tr. at 64:17-21.
[50] *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, 2019 WL 9078432, at *2 (D.N.J. Mar. 4, 2019).

using the good cause standard properly applicable to privilege—grant a protective order to the

SPG for RFP No. 1, 2, 4, and 6.


Date: June 27, 2022                     Respectfully submitted,

                                        */s/ Jeffrey D. Talbert*
                                        **PRETI, FLAHERTY, BELIVEAU**
                                        **& PACHIOS, LLP**
                                        One City Center, PO Box 9546
                                        Portland, ME 04112
                                        Telephone: 207.791.3239
                                        Jeffrey D. Talbert, Esq. (NJ ID No. 333512021)
                                        James W. Beers, Jr., Esq. (admitted *pro hac vice*)
                                        Benjamin S. Piper, Esq. (admitted *pro hac vice*)

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey D. Talbert, hereby certify that on June 27, 2022, I caused a copy of the foregoing

document to be served via electronic filing on all counsel of record.


Dated: June 27, 2022                              */s/ Jeffrey D. Talbert*
                                                  **PRETI, FLAHERTY, BELIVEAU**
                                                  **& PACHIOS, LLP**
                                                  One City Center, PO Box 9546
                                                  Portland, ME 04112
                                                  Telephone: 207.791.3239