## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>                      Plaintiff,<br><br>    v.<br><br>21ST CENTURY FOX AMERICA, INC., *et al*.,<br><br>                      Defendants. | Civil Action No. 18-11273 (MCA)(LDW)<br><br>**SPECIAL MASTER DECISION DENYING PITT-CONSOL CHEMICAL COMPANY'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH A SUBPOENA** |

## **INTRODUCTION**

This matter comes by way of a motion (the "Motion") filed by Pitt-Consol Chemical Company ("Pitt-Consol") on April 20, 2022, seeking a protective order and order quashing a subpoena (the "Geosyntec Subpoena") served by Plaintiff, Occidental Chemical Corporation ("OxyChem"), on Pitt-Consol's consultant, Geosyntec Consultants, Inc. ("Geosyntec"). Pitt-Consol contends that the Motion should be granted because the Geosyntec Subpoena violates the Order of the Special Master Regarding Electronically Stored Information (the "ESI Order").

On May 4, 2022, OxyChem filed opposition to the Motion. OxyChem argues that the Motion mischaracterizes the factual record, lacks a legal foundation, and is an attempt by Pitt-Consol to delay the *Rule* 30(b)(6) deposition of Pitt-Consol. OxyChem asserts there is no good cause for a protective order or any grounds for an order to quash.

The Motion is fully briefed by the parties and, therefore, is ripe for a decision by the Special Master. For the reasons set forth herein, the Motion is denied, and the parties will meet-and-confer to resolve all open matters related to the Geosyntec Subpoena.

1

## BACKGROUND

A.  **Special Master's ESI Order**

On February 18, 2020, the Special Master entered the ESI Order, which set forth the parameters for the parties to search for and produce ESI. The ESI Order provides in pertinent part:

1. Defendants shall either adopt the Common Terms proposed by the Small Parties Group; or modify the Common Terms in a good faith attempt to ensure their individual ESI production complies with all applicable requirements.

2. Defendants may seek to negotiate modified Common Terms and custodian lists with Plaintiff in advance of searching ESI in an effort to reach an agreement. As is always required, parties shall negotiate in good faith and make every effort to timely respond to each other. If no agreement is reached by April 1, 2020, the parties reserve all rights to challenge and defend any modified Common Terms and custodian lists following the production of documents. In reviewing such challenges and defenses, the Special Master will consider the efforts made prior to April 1, 2020 to come to an agreement.

3. All parties shall provide a complete list of search terms and custodians utilized in their ESI searches when their production is made.

4. The parties have leave to directly communicate with the Special Master related to ESI and negotiations of search terms and custodians.

5. Nothing in this Order shall restrict the ability of any party to make additional inquiries regarding the amount and scope of ESI in a party's possession or the manner in which ESI searches were conducted.

[ECF No. 932].

On February 12, 2020, prior to issuing the ESI Order, the Special Master held a status conference with the parties (the "February Status Conference") during which the forthcoming ESI Order was discussed. The Special Master stated that ESI searches were to begin April 1, 2020, but noted that during the interim period individual defendants were free to negotiate search terms and other protocols that were different from the Common Terms proposed by the SPG Defendants. *See* Ex. 1 to Motion at T66:7-11. In response to a request for meet and confers to take place prior

2

to ESI searches, the Special Master stated, "I think that's absolutely part and parcel of what I envision, and what I will order for this process[,]" specifically, "meaningful meet and confers, agreements, [and] good faith on both sides getting responses[.]" *Id.* at T70:8-16.

In accordance with the ESI Order, on May 4, 2020, Pitt-Consol notified OxyChem that if it had "any concerns regarding Pitt-Consol's proposed ESI approach," to advise Pitt-Consol. *See* Ex. 2 to Motion. On May 11, 2020, OxyChem agreed to Pitt-Consol's ESI search and collection process as well as to Pitt-Consol's custodian list, which included custodians, e-mails and project files from Geosyntec. *See* Ex. 3 to Motion.

**B.      Joint Stipulation and Order Regarding Production of Documents and Communications with Non-Party Consultants**

On October 12, 2021, a Joint Stipulation and Order Regarding Production of Documents and Communications with Non-Party Consultants ("Stipulation") was entered. ECF No. 1865. The Stipulation sets forth procedures for responses to subpoenas served on Consultants of the Parties. Paragraph 3 provides that a consultant may opt-in to the Stipulation by executing the Acknowledgment and Agreement to be Bound. If a Consultant opts-in to the Stipulation, the Party that employed the Consultant shall provide the initial response to the Consultant Subpoena. Thereafter, the Stipulation sets forth detailed protocols for productions in response to a Consultant Subpoena. To date, Geosyntec has not opted into the Stipulation.

**C.      The Geosyntec Subpoena**

On July 27, 2021, OxyChem served on Geosyntec the Geosyntec Subpoena. *See* Ex. 4 to Motion. The Geosyntec Subpoena requested the production of the following:

>  1.   All Documents in Your possession, custody, or control relating to the Site, including, but not limited to: (a) all groundwater, surface water, soil, sediment, or other sampling data; (b) site characterization reports; (c) remediation investigation reports; (d) ecological or human health risk assessment reports; (e) remedial action workplans; (f) remedial action

   reports; (g) baseline ecological evaluations; (h) Phase I or Phase II reports; (i) site history reports; or (j) other environmental reports or submissions.

2.  All Communications between You and Pitt-Consol regarding the Site[1] or the Diamond Alkali Superfund Site.

3.  All Communications Between You and any Governmental Entity regarding the Site or the Diamond Alkali Superfund Site.

4.  All Communications between You and the CPG regarding the Site or the Diamond Alkali Superfund Site.

On August 18, 2021, the parties held a meet-and-confer to discuss the Geosyntec Subpoena. *See* ECF No. 2041-4, P. 8. During the meet and confer, counsel for Pitt-Consol stated that the Geosyntec Subpoena was inappropriate because Geosyntec's documents were already reviewed and produced pursuant to the agreement reached between OxyChem and Pitt-Consol under the ESI Order. *Id.*

On August 29, 2021, Pitt-Consol requested that OxyChem either withdraw the Geosyntec Subpoena or advise when it was available for a follow-up meet and confer. *Id.* at 17. OxyChem refused to withdraw the Geosyntec Subpoena. *See* Opp. at 1.

On September 8, 2021, Pitt-Consol served objections to the Geosyntec Subpoena. *See* Motion at Ex. 5. The objections included that the documents sought in the Geosyntec Subpoena were duplicative, cumulative, unduly burdensome, protected by contractual confidentiality provisions, and/or not within the control of Pitt-Consol. *Id.*

On January 27, 2022, Pitt-Consol produced additional documents from Geosyntec. *See* Opp. at 2. On March 15, 2022, Pitt-Consol wrote to OxyChem indicating that it received Geosyntec's documents in several of Pitt-Consol's document productions and supplements, including two since OxyChem terminated the parties' meet and confer, and asked that OxyChem

4

provide dates to meet and confer or withdraw the subpoena. *See* Motion at 3. On March 31, 2022, OxyChem advised Pitt-Consol that it had questions about the adequacy of Pitt-Consol's collection and production methodology. *See* ECF No. 2041-3. On April 14, 2022, Pitt-Consol inquired with OxyChem about continuing to meet and confer on efforts regarding the Geosyntec Subpoena. *See* Motion at Ex. 9.

### D. **Pitt-Consol's Motion**

On April 20, 2022, Pitt-Consol filed the Motion. Pitt-Consol asserts that a protective order should be entered pursuant to *Rule* 26(c)(1)(C) because the parties agreed that Geosyntec's ESI would be produced through Pitt-Consol, and any supplemental production would follow the same procedure. Pitt-Consol asserts that the Special Master should also enter a protective order because the requested documents are already in OxyChem's possession.

In addition, Pitt-Consol contends that because it expended time and monies "negotiating its document production and ESI scope with OxyChem, then collecting, reviewing, and producing documents from various sources[,]" the Geosyntec Subpoena should be quashed, or a protective order should be entered since it is inconsistent, repetitive, and onerous supplement discovery requests.

On May 4, 2022, OxyChem filed opposition to the Motion. OxyChem argues that Pitt-Consol failed to meet its burden to quash the Geosyntec Subpoena under *Rule* 45 and/or demonstrate good cause for a protective order under *Rule* 26. By way of support, OxyChem contends that the Motion does not demonstrate that the Geosyntec Subpoena falls within one of *Rule* 45's enumerated categories to trigger an order to quash, and does not show that the Geosyntec Subpoena will subject Pitt-Consol to annoyance, embarrassment, oppression, or undue burden or expense to warrant a protective order. Finally, OxyChem argues that the ESI Order does not entitle

Pitt-Consol to the relief it requests and points out that the Geosyntec Subpoena is to Geosyntec, not Pitt-Consol.

## LEGAL STANDARD

**A.      Standard for Entry of a Protective Order**

*Federal Rule of Civil Procedure* 26(c)(1) provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses, including . . . (A) forbidding the disclosure or discovery; . . . [or, *inter alia*, ] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .

[FED. R. CIV. P. 26(c) (1)(A)-(D).]

"If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." FED. R. CIV. P. 26(c)(2).

A "court may issue a protective order to regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 159712, *5 (D.N.J. Nov. 24, 2015) (citations omitted). Indeed, the "objective" of *Rule* 26 is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Notes of Advisory Committee on 1983 amendments, Note to Subdivision (b)*.

*Rule* 26 "places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection." *Cipollone*, 785 F.2d at 1121; *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted). "Broad allegations of harm,

unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone*.785 F.2d at 1121. (citations omitted). Indeed, the "harm must be significant, not a mere trifle." *Id.* (citations omitted).

**B.      Standard for Entry of an Order to Quash or Modify a Subpoena**

*Rule* 45(d)(3) governs requests to quash or modify a subpoena and provides:

> On timely motion, the court . . . where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.
>
> [FED. R. CIV. P. 45(d)(3)(A)(i)-(iv).]

An undue burden exists where the subpoena is "unreasonable or oppressive." *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011) (citation omitted). Courts have used several factors in determining whether a subpoena is unreasonable or oppressive including: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed party. *Id.*

The burden for quashing a subpoena is on the movant. *See Mondis Tech. Ltd. v. LG Elecs., Inc.*, 2017 U.S. Dist. LEXIS 151418, *6 (D.N.J. Sep. 19, 2017).  Ultimately, the court has authority to quash or modify a subpoena on a timely motion if the movant demonstrates that the subpoena "falls outside the scope of permissible discovery, requires disclosure of privileged or other protected matter, or subject a person to undue burden." *N.J. Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*, 2021 U.S. Dist. LEXIS 191911, *19 (D.N.J. Oct. 5, 2021) (citing FED. R. CIV. P. 45(d)(3)) (internal quotations omitted).

7

## DISCUSSION

A. **Certification Requirement under Federal Rules of Civil Procedure and the Local Rules for the District of New Jersey**

The *Federal Rules of Civil Procedure* and the *Local Rules for the District of New Jersey* require that discovery motions include certifications stating that the parties attempted to resolve the matter prior to engaging in motion practice. *See* FED. R. CIV. P. 26(c) (stating motions for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."); *Local Civ. R.* 37.1(a)(1) (imposing obligation on parties to confer to resolve any discovery dispute prior to presenting it to Magistrate Judge); *Local Civ. R.* 37.1(b) (stating "[d]iscovery motions must be accompanied by an affidavit, or other document . . . certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and the parties have been unable to reach agreement.")

Here, OxyChem contends in a footnote that Pitt-Consol "failed to provide the appropriate certification with its motion[,]" and that Pitt-Consol's "partial list of the parties' communication on the matter . . . is insufficient to meet Rule 26(c)(1)'s requirements." *See* Opp. at 3, FN 1. While Pitt-Consol clearly failed to provide the appropriate certifications, the failure to submit a certification does not automatically warrant the denial of a motion. *See, e.g.*, *Smith v. County of Monmouth*, 2006 U.S. Dist. LEXIS 45967, *3-4 (D.N.J. Jul. 7, 2006) (requiring parties to confer to "attempt to resolve the discovery deficiencies as required by *Local Civil Rule* 37.1(b)(1)[,]" after a motion was filed). Based on the parties' submissions, Pitt-Consol has demonstrated that it made numerous attempts to engage in the meet-and-confer process without any response from OxyChem. Indeed, on December 20, 2021, March 15, 2022, and April 14, 2022, Pitt-Consol

8

attempted to coordinate additional meet-and-confers with OxyChem. *See* Motion at Ex. 7, 8, 9. Prior to these attempts, the parties had already participated in the meet-and-confer process and later engaged in significant letter writing. Both Pitt-Consol and OxyChem set forth their efforts to resolve this issue in their submissions.

Accordingly, the Special Master is satisfied that the parties attempted to resolve the matter prior to making the Motion to the Special Master, however, as set forth herein, the parties are directed to further discuss the open issues related to the Geosyntec Subpoena. Moreover, the Special Master restates the parties' continued obligation to meet-and-confer to resolve discovery disputes prior to filing motions, and, if unable to reach a resolution, the requirement to annex a certification to all discovery motions.

**B.** **Pitt-Consol Has Not Demonstrated A Valid Basis to Quash the Subpoena**

*Rule* 45 sets forth four circumstances under which an order to quash a subpoena may be warranted: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in *Rule* 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(i)-(iv).

The Motion makes no reference to the standard for entry of an order to quash, cites to no controlling case law regarding the issue, and fails to provide any analysis of the basis under *Rule* 45 it relies. The Geosyntec Subpoena allowed a reasonable time to comply and did not require compliance beyond the geographical limits. FED. R. CIV. P. 45(d)(3)(A)(i)-(ii). Pitt-Consol does not argue that the Geosyntec Subpoena requires disclosure of privileged or other protected matter that sufficiently warrant an order to quash. FED. R. CIV. P. 45(d)(3)(A)(iii). Finally, the Geosyntec Subpoena does not appear to subject Geosyntec to any undue burden. FED. R. CIV. P.

9

45(d)(3)(A)(iv). Neither OxyChem nor Pitt-Consol dispute the need for production, nature and importance of the production to the litigation, the relevance of the material, the breadth or particularity of the requested production, or time period covered by the request. Rather, the dispute between the parties appears to be: (i) Pitt-Consol's contention that OxyChem agreed to the scope of documents to be produced by Geosyntec; (ii) OxyChem already has the documents requested; and (iii) OxyChem's concern about the adequacy of Pitt-Consol's production of Geosyntec's documents.

Any suggestion that compliance with the Geosyntec Subpoena would create an unnecessary expense is unpersuasive for purposes of the motion to quash. A non-party expending time and money to review, analyze, collate, and produce responsive, relevant, and discoverable materials, which it would otherwise have to do for compliance, is not enough. Pitt-Consol is entitled to review the materials for privilege, but Pitt-Consol's expenses in doing so are of no consequence. Rather, it is the expense of Geosyntec that is pertinent, and there is nothing in the record that demonstrates complying with the Geosyntec Subpoena will impose any significant expense on Geosyntec. As such, Pitt-Consol has failed to meet its burden for entry of an order to quash the Geosyntec Subpoena.

**C.    Good Cause Does Not Exist to Warrant Issuance of a Protective Order**

In general, parties are entitled to investigate the facts about the claims and defenses set forth in the pleadings. *See In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015); *Salamone v. Carter's Retail, Inc.*, 2011 U.S. Dist. LEXIS 41357, 2011 WL 1458063, at *2 (D.N.J. Apr. 14, 2011). Discovery allows each party to have a fair opportunity to present an effective case at trial. *Halpin v. Barnegat Bay Dredging Co.*, 2011 U.S. Dist. LEXIS 68828, 2011 WL 2559678, at *10 (D.N.J. June 27, 2011). Therefore, courts construe the scope of

discovery under *Rule* 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (citation omitted).

Whether a protective order is warranted turns on a finding that the moving party has established good cause based on an analysis of pertinent factors. "Good cause" has been viewed as a balancing test of the following factors: (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *See Arnold v. Pennsylvania*, 477 F.3d 105, 109 (3d Cir. 2007); *see also Schaeffer v. Tracey*, 2017 U.S. Dist. LEXIS 15708, *5 (Feb. 2, 2017).

Here, Pitt-Consol requests that OxyChem's ability to investigate the facts through discovery be limited by way of a protective order. Specifically, Pitt-Consol requests that the Special Master enter a protective order enforcing a procedure that if further discovery is required from Geosyntec, then OxyChem must meet-and-confer with Pitt-Consol and obtain the documents through Pitt-Consol, rather than pursue the discovery independently from Geosyntec. In support, Pitt-Consol argues that it has complied with its ESI obligations, which by agreement with OxyChem, included a search of Geosyntec documents.

Pitt-Consol's argument fails to acknowledge that the Geosyntec Subpoena was directed to

Geosyntec, not Pitt-Consol. Moreover, it is undisputed that Geosyntec has decided not to enter into the Stipulation, which provides specific procedures for parties, like Pitt-Consol, to respond on behalf of their consultants, like Geosyntec. Therefore, absent an agreement by Geosyntec to opt-in to the Stipulation, it remains Geosyntec's obligation to comply with the subpoena, not Pitt-Consol's. The May 4, 2020, correspondence from Pitt-Consol provided for ESI searches of Geosyntec documents, which were agreed to by OxyChem on May 11, 2020. However, this agreement did not limit OxyChem's ability to seek additional documents from Geosyntec by way of subpoena, nor did it govern the scope of such a subpoena. Geosyntec is not a party to the ESI Order or the Stipulation. Geosyntec was not involved in negotiation of production protocols, scope of discovery, ESI terms, or custodians for ESI searches. Despite Geosyntec's lack of involvement in the discovery process, Pitt-Consol is essentially asking the Special Master to impose a third set of rules on OxyChem, outside of the ESI Order and the Stipulation. Without the Stipulation being triggered by Geosyntec, it is Geosyntec's obligation to respond to the Subpoena in the normal course.

Therefore, the only remaining issue is whether Geosyntec's obligation to fully respond to the Geosyntec Subpoena will cause an undue burden sufficient for entry of a protective order. Based on the record before the Special Master, including Pitt-Consol and Geosyntec's own representations, it will not. On March 31, 2022, OxyChem acknowledged that Geosyntec need not re-produce non-privileged responsive documents already produced by Pitt-Consol. In this Motion, Pitt-Consol asserts that it "already produced documents maintained by Geosyntec that are not privileged or otherwise subject to objection or duplicative of documents produced by Pitt-Consol." In a September 8, 2021 correspondence, Geosyntec similarly represented that "Geosyntec has no responsive documents that are not within the control of Pitt-Consol…." *See* Motion at Ex. 5. Based

on these representations, if Pitt-Consol has already produced all non-privileged responsive documents to the Geosyntec Subpoena, responding to the Geosyntec Subpoena should be straightforward and would appear to be complete.

Accordingly, there is no basis to enter a protective order, particularly as OxyChem is not demanding the re-production of documents already produced by Pitt-Consol. Instead, Geosyntec must demonstrate that it has fully complied with the Geosyntec Subpoena and produced all non-privileged responsive documents.  Unfortunately, the parties have failed to fully meet-and-confer on this issue to determine the scope of documents that remain outstanding, if any. In order to efficiently resolve this matter, Pitt-Consol, Geosyntec, and OxyChem shall meet and confer within ten (10) days. If the parties are unable to resolve Geosyntec's response to the Subpoena, OxyChem is free to move to compel compliance with the Geosyntec Subpoena.

## CONCLUSION

For the foregoing reasons, Pitt-Consol's Motion is **DENIED**.

*/s/ Thomas P. Scrivo*
**THOMAS P. SCRIVO**
**Special Master**
