**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>                      Plaintiff,<br><br>v.<br><br>21ST CENTURY FOX AMERICA, INC., *et al.*,<br><br>                      Defendants. | Civil Action No. 18-11273(MCA)(LDW)<br><br>**SPECIAL MASTER DECISION DENYING DEFENDANT TFCF AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER** |

## **INTRODUCTION**

       This matter comes by way of a Motion, filed by TFCF America, Inc. ("TFCFA" formerly known as 21st Century Fox America, Inc.), on June 3, 2022, for entry of a protective order (ECF No. 2075) ("Motion"), with respect to Plaintiff, Occidental Chemical Corporation's ("OxyChem") Amended Notice of Rule 30(b)(6) Deposition of TFCFA ("Amended Rule 30(b)(6) Notice").

       On June 2, 2022, TFCFA filed a letter brief in support of the Motion. TFCFA contends that OxyChem should be required to accept portions of the *de bene esse* deposition testimony of Benjamin Rothberg ("Rothberg Deposition") from prior litigation in lieu of a live witness in response to the Amended Rule 30(b)(6) Notice.

       On June 10, 2022, OxyChem filed a brief in opposition to the Motion. OxyChem argues that a protective order would deprive it the opportunity to cross examine a live witness regarding documents and events, and therefore, prejudice it in the litigation.

       The parties have participated in meet and confers to discuss the dispute over the Amended Rule 30(b)(6) Notice and have been unable to reach agreement. The Motion, therefore, is ripe for a decision by the Special Master. For the reasons set forth herein, the Motion is denied.

**STATEMENT OF PERTINENT FACTS AND PROCDURAL HISTORY**

A. **Benjamin Rothberg's 2011 Deposition**

On February 23, 2011, Benjamin Rothberg was deposed in connection with the litigation captioned *New Jersey Department of Environmental Protection v. Occidental Chemical Corporation*, Docket No. ESX-L-9868-05, in the New Jersey Superior Court, Law Division, Essex County ("New Jersey Spill Act Litigation"). Mr. Rothberg was not deposed as a designated corporate witness. Mr. Rothberg, who is now deceased, was the assistant general manager, production manager and technical director at the Site[1] and was responsible for overseeing all production during Montrose Chemical Company's operation of the Site.

The same law firm that currently represents OxyChem also represented it at Mr. Rothberg's deposition. OxyChem asserts that Mr. Rothberg acknowledged a "big loss [to his memory] in the last ten years." *See* ECF. No. 2077 at 4.

B. **OxyChem's Request for Live Deposition**

On July 9, 2021, OxyChem served a Notice of Rule 30(b)(6) Deposition on 21st Century Fox America, Inc. OxyChem's notice listed eight deposition topics:

- **TOPIC 1:** The ownership and/or Operation of the Site during all time periods that TFCF owned and/or Operated the Site, including all Operations that used or produced Hazardous Substances, and the Hazardous Substances that were used or produced in those Operations.

- **TOPIC 2:** TFCF's storage, releases and disposals of Hazardous Substances at or from TFCF's Site.

---

[1] The "Site" refers to 100 Lister Avenue Newark, New Jersey, which was the location of a chemical manufacturing facility that was owned and operated by TFCFA's predecessor, Montrose Chemical Company ("MCC"). OxyChem alleges that MCC discharged various contaminants to the Lower Passaic River between 1939-1972 and thus TFCFA should be responsible for their contribution to the contamination.

- **TOPIC 3:** Any potential discharge routes from TFCF's Site to the Passaic River, including direct stormwater outfalls, process water discharge outfalls, process sewer and storm sewers.

- **TOPIC 4:** TFCF's reporting or submission of data to EPA, including to EPA's Toxic Release Inventory, regarding Operations at TFCF's Site.

- **TOPIC 5:** Remedial and other environmental investigations and actions at TFCF's Site.

- **TOPIC 6:** Sampling data and collection of samples at TFCF's Site.

- **TOPIC 7:** Any communications to or from TFCF and any Governmental Agency regarding the TFCF's actual or asserted liability to the United States associated with any operable unit of the Diamond Alkali Superfund Site.

- **TOPIC 8:** Any policies of insurance potentially applicable to TFCF's Site, any communications with insurers, notices of claims, reservation of rights letters, and any litigation over insurance coverage regarding TFCF's actual or asserted liability to the United States associated with any operable unit of the Diamond Alkali Superfund Site.

On July 19, 2021, TFCFA proposed to designate portions of Mr. Rothberg's deposition testimony to satisfy Topics 1-3 in the deposition notice. That same day, TFCFA sent a letter to OxyChem identifying specific pages and lines where Mr. Rothberg addressed certain topics outlined in the Rule 30(b)(6) Notice ("July 19 Letter"). The July 19 Letter also stated that Topics 4-8 were overly broad, vague, and ambiguous.

By letter to multiple Defendants, including TFCFA, dated December 6, 2021, OxyChem stated that it would unilaterally select deposition dates in March or April 2022 if Defendants did not provide proposed dates ("December 6 Letter"). Following the December 6 Letter, TFCFA and OxyChem discussed TFCFA's proposal to designate Mr. Rothberg's deposition and OxyChem's lack of response. According to TFCFA, OxyChem advised that it would revert on the proposal. By letter dated December 23, 2021, OxyChem sent a letter to various Defendants regarding depositions, but did not specifically address TFCFA or its proposal.

By letter dated December 24, 2021, TFCFA stated that it had elected to designate portions of Mr. Rothberg's deposition as the corporate representative testimony of TFCFA regarding Topics 1-3 ("December 24 Letter").  TFCFA agreed to be bound by Mr. Rothberg's testimony as outlined in the July 19 Letter and stated that the Rule 30(b)(6) Deposition on 21st Century Fox America, Inc. was therefore moot.

By letter dated March 28, 2022, OxyChem objected to TFCFA's proposal and requested a meet and confer ("March 28 Letter").  By letter dated March 31, 2022, TFCFA stated that OxyChem's lack of response to the July 19 Letter and December 24 Letter constituted an acceptance of TFCFA's election to designate portions of Mr. Rothberg's deposition as responsive to the Rule 30(b)(6) notice.

By letter dated April 11, 2022, OxyChem again rejected TFCFA's proposal and demanded that TFCFA produce a corporate representative for deposition. OxyChem stated that a single witness's testimony from a separate litigation taken in that witness's personal capacity and without the benefit of documents produced in the current litigation is insufficient to discharge TFCFA's obligation to present a witness.

On April 20, 2022, TFCFA requested to meet and confer regarding the objection to the designation.  On April 26, 2022, the parties held a meet and confer where OxyChem repeated its request to take a Rule 30(b)(6) deposition of TFCFA.  At this meeting, OxyChem stated it would follow up with a compromise.

By letter dated April 29, 2022, OxyChem rejected TFCFA's designation of Mr. Rothberg's deposition.  OxyChem agreed to: (1) provide a reasonable list of documents on which OxyChem intended to question TFCFA ten days prior to the deposition; and (2) provide a preliminary identification of chemicals of concern and other hazardous substances forty-five days prior to the

deposition ("April 29 Letter"). On May 10, 2022, TFCFA rejected OxyChem's proposal. TFCFA also requested that OxyChem identify the areas of testimony that OxyChem contended are not covered by Mr. Rothberg's deposition.

On May 13, 2022, OxyChem served by email the Amended Rule 30(b)(6) Notice with eleven topics and unilaterally set the deposition for August 24, 2022. OxyChem's Amended Notice listed deposition topics which included the following:

- **TOPIC 1**: The ownership and/or Operations at the Montrose Site, including without limitation all Operations that used or produced Hazardous Substances, and the Hazardous Substances that were used or produced in those Operations.

- **TOPIC 2:** Fox America's storage, releases, and disposals of Hazardous Substances at or from the Montrose Site during the years 1939 to 1972.

- **TOPIC 3:** Remedial or other environmental investigations and actions pertaining to Hazardous Substances used, located, or found at the Montrose Site, excluding air quality matters.

- **TOPIC 4:** In connection with any sampling of soil, water, sediment, or wastes at the Montrose Site, the existence, scope, and results of such sampling, including the reason why samples for particular Hazardous Substances were or were not collected, and the content of the reports of that sampling.

- **TOPIC 5 :** The use, manufacture, storage, and/or handling of DDT, 2,4,5-T, benzene hexachloride (lindane), hexachlorobenzene, trichlorobenzene, propanil, tetrachlorobenzene, dichlorobenzenes, dichlorophenol, phthalic anhydride, pentachlorophenol, PCBs, mercury, dieldrin, lead, copper, PAHs, and any ROD COCs, at the Montrose Site during the years 1939 to 1972.

- **TOPIC 6:** Any discharge routes from the Montrose Site to the Passaic River, including but not limited to direct stormwater outfalls, process water discharge outfalls, process water sewers, and storm sewers.

- **TOPIC 7:** Excluding reports regarding air quality, Fox America's reporting or submission of data to EPA regarding the presence, use, or discharge of Hazardous Substances during the period of Operations at the Montrose Site, including, without limitation, the Toxic Release Inventory, materials handling inventories, or investigations in connection with the closure of any portion of the facility.

5

- **TOPIC 8:** Any Communications between Fox America and any Governmental Agency regarding Fox America's actual or possible liability to the United States associated with any operable unit of the Diamond Alkali Superfund Site, including without limitation Fox America's response to any requests for information by any Governmental Agency for information about the Montrose Site.

- **TOPIC 9:** Any policies of insurance potentially applicable to Montrose Site, any Communications with insurers, notices of claims, reservation of rights letters, and any litigation over insurance coverage regarding Fox America's actual or asserted liability to the United States associated with any operable unit of the Diamond Alkali Superfund Site.

- **TOPIC 10:** Fox America's current and prospective use, if any, of the Navigation Channel.

- **TOPIC 11:** Information pertaining to Fox America's participation in the Batson Process and any communications with EPA pertaining to that process before Fox America agreed to participate in it.

C. **TFCFA's Motion for a Protective Order**

Despite the numerous letters and meet and confers between OxyChem and TFCFA, the parties are unable to come to a compromise. On June 3, 2022, TFCFA filed the Motion. TFCFA argues that Topics 1, 2, and 6 in the Amended Notice were the subject of extensive deposition testimony by Mr. Rothberg in the New Jersey Spill Act Litigation. TFCFA claims that Mr. Rothberg's testimony covers the entirety of TFCFA's extant knowledge and that no current TFCFA employee testimony could add anything to that testimony. TFCFA maintains that OxyChem attended Mr. Rothberg's deposition and had the opportunity to examine him, but chose not to. Moreover, according to TFCFA, OxyChem itself has designated portions of Mr. Rothberg's deposition for use in this litigation.

TFCFA also argues that it should not be required to produce a witness to testify regarding Topics 3-4 and 7-9 of the Amended Notice because they are "merely document requests disguised as Rule 30(b)(6) topics." TFCFA claims it has produced all documents in its possession responsive

to Topics 3-4 and 7-9. Additionally, TFCFA argues that these Topics do not meet the reasonable particularity standard required by Rule 30(b)(6).

Finally, TFCFA argues that three new topics included in the Amended Rule 30(b)(6) Notice (Topic 5, 10 and 11) were added at the last minute in an attempt to bolster the need for a live deposition. TFCFA claims that these topics were never discussed by the parties and were not the subject of any meet and confers.

## LEGAL STANDARD

*Federal Rule of Civil Procedure* 26(c)(1) provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses, including . . . (A) forbidding the disclosure or discovery;
> . . . [or, *inter alia*, ] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .

[FED. R. CIV. P. 26(c) (1)(A)-(D).]

"If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." FED. R. CIV. P. 26(c)(2). A "court may issue a protective order to regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 159712, *5 (D.N.J. Nov. 24, 2015) (citations omitted). Indeed, the "objective" of *Federal Rule of Civil Procedure* 26 is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Notes of Advisory Committee on 1983 amendments, Note to Subdivision (b)*. To that end, the "grounds"

7

for "limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c)." *Id.*

The *Rule* "places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To overcome the presumption, the party seeking the protective order must show good cause by demonstrating particular need for protection." *Cipollone*, 785 F.2d at 1121; *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone*.785 F.2d at 1121. (citations omitted). Indeed, the "harm must be significant, not a mere trifle." *Id*. (citations omitted).

"Good cause" is defined as a "showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir. 2007) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1986)). To that end, "good cause" is established based on "balancing a number of considerations." *Arnold*, 477 F.3d at 108 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)). The factors, include but are limited to: "(1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Arnold*, 477 F.3d at 108 (citations omitted). Courts apply those factors that it believes are most important to the facts of a given case. *See In re Avandia Mktg., Sales*

*Practices & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (stating court is "best situated to determine what factors are relevant to any given dispute.") (citation and internal quotations omitted). Therefore, whether a protective order is warranted turns on a finding that the moving party has established good cause based on an analysis of pertinent factors.

## ANALYSIS

### A. Good Cause Does Not Exist to Warrant Issuance of a Protective Order for Topics 1, 2 and 6.

The significant difference between individual fact witnesses and Rule 30(b)(6) witnesses ("corporate witnesses") is that individual witnesses are acting in their individual capacity and corporate witnesses are acting in a corporate capacity as a representative of the entity. *See Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 393 (D.N.J. 2011). The entity is not bound by the individual's testimony when they are only a fact witness. *See id.*

Courts have rejected the argument that "prior deposition testimony from individual fact witnesses relieves a corporation from designating a corporate spokesperson in response to a Rule 30(b)(6)." *Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*, 2011 U.S. Dist. LEXIS 41826, at *80 (D.N.J. Apr. 18, 2011) (quoting *Smith v. Gen. Mills, Inc.*, 2006 U.S. Dist. LEXIS 19093, at *15 (S.D. Ohio Apr. 13, 2006)). In very specific instances courts have allowed parties to waive a Rule 30(b)(6) deposition request. *Id.* at 81. The circumstances under which a court has allowed fact witness testimony in lieu of Rule 30(b)(6) testimony are when a party has: (1) offered to be bound by an individual testimony previously provided; (2) produced significant discovery to the extent that deposition of a corporate designee would be unduly burdensome; and (3) agreed to allow individuals who were deposed in the absence of any additional corporate designee to testify as to corporate knowledge. *Id*. at 81.

TFCFA relies on *Novartis Pharmaceuticals Corp. v. Abbot Laboratories,* which has been distinguished by other courts for its unique fact pattern. In *Novartis,* the Court found that a party's offer to be bound by prior fact testimony satisfied their obligation under Rule 30(b)(6) to produce a witness because the prior witness would have been the designee for a 30(b)(6) deposition and was the most knowledgeable witness on the subject. *Novartis Pharm. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001). In *Novartis*, the opposing party rejected the offer to be bound by prior testimony because it had not elicited sufficient testimony from the witness and had not deposed the witness in an official capacity. *Id.* at 162. The Court reasoned that, because the opposing party already had eighty pages of testimony, another round of testimony from the same witness in an official capacity would be cumulative. *Id.* at 163.

Similar to *Novartis*, TFCFA offered to be bound by Mr. Rothberg's testimony, but OxyChem refused to accept the offer. However, in *Novartis,* the witness was alive, and therefore, the party retained the right of cross examination at trial. Here, Mr. Rothberg is deceased and OxyChem would have no witness to cross-examine regarding TFCFA's interpretation of documents and events.

Furthermore, in *Novartis*, the witness had testified *in the same case.* The court deemed this fact persuasive in ruling that additional testimony would be duplicative. Here, the witness testified in a separate litigation and the Special Master has no clear way of determining whether the testimony in the prior litigation would be sufficient to answer the questions on the topics for these depositions.

Moreover, there is no way for the Special Master to predict that the planned questioning of the corporate designee would be adequately satisfied by the prior deposition of Mr. Rothberg. As Mr. Rothberg has only testified in a separate proceeding more than ten (10) years ago, the Special

10

Master cannot identify with certainty whether subject matter of the testimony will be the same as covered in the prior deposition. Similarly, the Special Master has not been provided with the documents that OxyChem intends to present and is therefore unaware whether the documents are the same as those presented to Mr. Rothberg at his deposition.

Although OxyChem claims that Mr. Rothberg's deposition is inconsistent with witness statements and sworn testimony of former MCC employees, as well as documentation about the operations at the Site, OxyChem has failed to provide specific references or examples of these inconsistencies. Despite this, the burden for a protective order falls on TFCFA. TFCFA has not shown any clearly defined or serious injury in complying with the Amended Rule 30(b)(6) Notice. To that end, there does not appear to be any interest in privacy, public health or safety, or illegitimate purpose, embarrassment, unfairness, confidentiality issue that warrants a protective order in favor of TFCFA. Accordingly, there is not appear good cause for a protective order on Topics 1, 2 and 6.

    **B. <u>Good Cause Does Not Exist to Warrant Issuance of a Protective Order for Topics 3, 4, 7, 8, and 9.</u>**

        **1. Production of Documents is Not Sufficient to Satisfy a Rule 30(b)(6) Deposition Notice.**

TFCFA's production of documents relating to the Amended Rule 30(b)(6) Notice deposition topics is not a sufficient basis for the entry of a protective order. TFCFA argues that many of the topics in the initial and Amended Rule 30(b)(6) Notices are "document requests disguised as Rule 30(b)(6) topics." TFCFA argues that it has produced documents that are responsive to these topics. However, "[p]roducing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008) (stating "the two forms of discovery are not equivalent"); *James Lee Constr., Inc. v. Gov't Emples Ins. Co.*, 339 F.R.D. 562,

11

569 (D. Mont. 2021) (stating document discovery does not prohibit Rule 30(b)(6) deposition); *Murphy v. Kmart*, 255 F.R.D. 497, 507 (D.S.D. 2009) (stating "producing documents and responding to written discovery is not a substitute for providing" a Rule 30(b)(6) witness); *see also Nat'l Life Ins. Co. v. Hartford Acci. & Indem. Co.*, 615 F.2d 595, FN 5 (3d Cir. 1980) (finding propounding party, not witness, has option on means of conducting discovery). Thus, TFCFA cannot preclude a deposition simply on the basis that it has produced relevant documents.

The Special Master disagrees with TFCFA's characterization of Topics 3, 4, 7, 8 and 9. These topics appear to put TFCFA on notice that OxyChem intends to question TFCFA on remediation and environmental investigations and actions, the existence, scope and results of sampling, reporting and communications with the Environmental Protection Agency and other governmental agencies, and insurance procured for the Site. Merely providing documents on these topics does not satisfy TFCFA's obligation to produce a witness pursuant to Rule 30(b)(6).

Accordingly, TFCFA has not shown good cause for the entry of a protective order on Topics 3, 4, 7, 8 and 9 based solely on its production of documents in discovery.

### 2. Topics 3, 4, 7, 8, and 9 Satisfy the Reasonable Particularity Standard.

In a notice pursuant to Rule 30(b)(6), "a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination."[2] FED. R. CIV. P. 30(b)(6). The party noticing a deposition pursuant to the Rule has the initial burden to identify topics of examination "with reasonable particularity." *Yerkes v. Weiss*, 2019 U.S. Dist. LEXIS 237760, at

---

[2] The scope of topics on which a corporate designee can be expected to testify is defined by Rule 26(b)(1). *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 393 (D.N.J. 2011). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1).

12

*5 (D.N.J. Sep. 30, 2019) (citing *Alexander v. F.B.I.*, 186 F.R.D. 137, 140 (D.D.C. 1998)). After this initial burden is met, the burden shifts to the deponent to produce a witness with knowledge of the subject matter. *Id.* at *6 (citations omitted).

The reasonable particularity requirement is meant to inform the company, the witness and counsel of the level of specificity required to identify the outer limits of inquiry. *See FTC v. AM. Future Sys.*, 2022 U.S. Dist. LEXIS 81708, at *3 (E.D. Pa. Apr. 8, 2022) (citing J.C. Wang, D. Lambrinos, M.L. Murphy, *Speak for Yourself: The 30(b)(6) Deposition* (Sept. 19, 2016) and *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005)); *see also Mullenix v. Univ. of Tex.*, 2021 U.S. Dist. LEXIS 79965, at *19 (W.D. Tex. Apr. 26, 2021) (stating requirement met if notice enable entity to adequately fulfill its obligations to choose and prepare deponent); *TERA II, LLC v. Rice Drilling D, LLC*, 2020 U.S. Dist. LEXIS 179619, at *11 (S.D. Ohio Sep. 29, 2020) (stating notice must describe matters sufficient to enable corporation or business to produce witness who can testify to entity's knowledge on topics identified).

TFCFA objects to the Amended Rule 30(b)(6) Notice on grounds that Topics 3, 4, 7, 8, and 9 are overly broad, vague, and ambiguous. Contrary to TFCFA's assertion, the Special Master finds these topics to be particular enough to place TFCFA on notice of the topics to prepare its designated witness. These topics are particularized as to location (*e.g.* "at the Montrose Site"), specific hazardous substances (*e.g.* "pertaining to Hazardous Substances" as defined), and time period (*e.g.* "during the period of Operations at the Montrose Site"). Likewise, there appears to be no dispute concerning the relevance of information being sought through Topics 3, 4, 7, 8, and 9. As such, there is no overarching factor in considering whether good cause to require a protective order on these topics. Therefore, TFCFA has not demonstrated good cause for a protective order on Topics 3, 4, 7, 8 and 9.

13

### C. The Parties Must Meet and Confer on Topics 5, 10, and 11

As set forth in the Protocol for Motions, parties are to make a good faith effort to resolve any discovery dispute prior to making application to the Special Master. TFCFA notes that Topics 5, 10, and 11 are new topics in the Amended Rule 30(b)(6) Notice and not the subject of any meet-and-confer. This contention is confirmed in Appendix A to the Motion, which provides a comparison of the initial notice and the Amended Rule 30(b)(6) Notice. Accordingly, the Motion is denied without prejudice regarding Topics 5, 10, and 11. The parties are directed to meet and confer within seven (7) days to discuss Topics 5, 10, and 11. If the parties cannot resolve their dispute over these topics, they are to advise the Special Master, and TFCFA shall be entitled to renew the Motion regarding Topics 5, 10 and 11.

## CONCLUSION

Defendant, TFCFA's motion for a protective order is **DENIED**.

*/s/ Thomas P. Scrivo*
**THOMAS P. SCRIVO**
**Special Master**