# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>21ST CENTURY FOX AMERICA, INC., *et al.*,<br><br>    Defendants. | Civil Action No. 18-11273 (MCA)(LDW)<br><br>**SPECIAL MASTER DECISION GRANTING OCCIDENTAL CHEMICAL CORPORATION'S MOTION TO COMPEL AND DENYING IN PART AND GRANTING IN PART STWB INC.'S CROSS-MOTION FOR A PROTECTIVE ORDER** |

## INTRODUCTION

This matter comes by way of a motion (the "Motion") filed by Plaintiff, Occidental Chemical Corporation ("OxyChem") on June 22, 2022, seeking to compel Defendant, STWB, Inc. ("STWB"), to designate a representative and appear for its noticed deposition pursuant to Fed. R. Civ. P. 30(b)(6).

On June 27, 2022, STWB filed opposition to the Motion and a cross-motion for a protective order (the "Cross-Motion") seeking to bar OxyChem from pursuing a live deposition witness from STWB on topics and requiring STWB and OxyChem to stipulate to the relevant testimony of Paul B. Thomasset from his June 22, 2011, deposition (the "Thomasset Deposition") in the litigation captioned *New Jersey Dep't of Environmental Prot. v. Occidental Chem. Corp., et al.* ("New Jersey Spill Act Litigation"), for the topics sought by OxyChem's deposition notice.

On June 30, 2022, OxyChem filed a reply (the "OxyChem's Reply") opposing the Cross-Motion and in support of the Motion.

The Motion is fully briefed by the parties and, therefore, is ripe for a decision by the Special Master. For the reasons set forth herein, the Motion is granted, the Cross-Motion is denied in part

1

and granted in part, and the parties will meet-and-confer to resolve all open matters related to the deposition.

## BACKGROUND

On July 20, 2021, OxyChem requested dates for the Rule 30(b)(6) depositions of STWB and others.  In response, in August of 2021, STWB proposed designating the testimony from the Thomasset Deposition in lieu of producing a live witness.  According to STWB, in 2011, as part of the New Jersey Spill Act Litigation, OxyChem's counsel, Archer & Greiner, P.C., attended the Thomasset Deposition. STWB claims that Mr. Thomasset is and was the person most knowledgeable of the historic operations at the STWB site and was examined regarding that knowledge.  Counsel for OxyChem agreed to consider STWB's proposal.

On December 6, 2021, OxyChem requested deposition dates for a Rule 30(b)(6) witness from STWB. Shortly thereafter, on at least two occasions, STWB states it called OxyChem to discuss this matter, but never received a response. By letter dated December 21, 2021, STWB reiterated its proposal for OxyChem to accept the transcript of Mr. Thomasset's prior testimony as STWB's Rule 30(b)(6) testimony, at least in part, because "no one at STWB has any knowledge of any of the topics outlined in the deposition notice and any witness designated by STWB would simply be providing information based on Mr. Thomasset's prior testimony."  In this same letter, STWB requested an opportunity to meet and confer to facilitate a mutually agreeable resolution to this issue.

On March 29, 2022, OxyChem requested that STWB provide a date for the deposition of STWB's Rule 30(b)(6) witness and a meet-and-confer.  By letter dated March 30, 2022, STWB stated it was willing to meet and confer with OxyChem to discuss deposition scheduling and STWB's proposal.

On May 5, 2022, STWB and OxyChem engaged in a meet-and-confer via videoconference. During the meet-and-confer, OxyChem demanded STWB produce a "live" witness for the Rule 30(b)(6) deposition. STWB explained its inability to produce a witness who could offer any further testimony or information than what was covered in the Thomasset Deposition. STWB further argued that the transcript of the Thomasset Deposition was the only source of information from which a potential witness will prepare and offered to submit written interrogatories if there were discrepancies between the testimony and documents.

On May 9, 2022, OxyChem noticed STWB's Deposition for August 16, 2022 ("Deposition Notice"). Accompanying the Deposition Notice was a letter from OxyChem rejecting STWB's request to designate the testimony from the Thomasset Deposition. The deposition topics in the Deposition Notice were as follows:

**Topic 1:** The ownership and/or Operations at the STWB Site, including without limitation all Operations that used or produced Hazardous Substances, and the Hazardous Substances that were used or produced in those Operations.

**Topic 2:** The ownership and/or Operations at the L&F Site, including without limitation all Operations that used or produced Hazardous Substances, and the Hazardous Substances that were used or produced in those Operations.

**Topic 3:** The ownership and/or Operations at the L&F Site, including without limitation all Operations that used or produced Hazardous Substances, and the Hazardous Substances that were used or produced in those Operations.

**Topic 4:** STWB's storage, releases, and disposals of Hazardous Substances at or from the STWB Site during the years 1986 to present.

**Topic 5:** STWB's storage, releases, and disposals of Hazardous Substances at or from the L&F Site during the years 1925 to 1965.

**Topic 6:** Remedial or other environmental investigations and actions pertaining to Hazardous Substances used, located, or found at the STWB Site, excluding air quality matters.

**Topic 7:** Remedial or other environmental investigations and actions pertaining to Hazardous Substances used, located, or found at the L&F Site, excluding air quality matters.

**Topic 8:** In connection with any sampling of soil, water, sediment, or wastes at the STWB Site, the existence, scope, and results of such sampling, including the reason why samples for particular Hazardous Substances were or were not collected, and the content of the reports of that sampling.

**Topic 9:** In connection with any sampling of soil, water, sediment, or wastes at the L&F Site, the existence, scope, and results of such sampling, including the reason why samples for particular Hazardous Substances were or were not collected, and the content of the reports of that sampling.

**Topic 10:** The use, manufacture, storage, and/or handling of dioxins/furans, hexachlorobenzene, dichlorobenzene, trichlorobenzene, PAHs, PCBs, PAHs, lead, copper, mercury, and any ROD COCs at the STWB Site during the years 1986 to present.

**Topic 11:** The use, manufacture, storage, and/or handling of PAHs and any ROD COCs at the L&F Site during the years 1925 to 1965.

**Topic 12:** Any discharge routes from the STWB Site to the Passaic River, including but not limited to direct stormwater outfalls, process water discharge outfalls, and sewers.

**Topic 13:** Any discharge routes from the L&F Site to the Passaic River, including but not limited to direct stormwater outfalls, process water discharge outfalls, and sewers.

**Topic 14:** Excluding reports regarding air quality, STWB's reporting or submission of data to EPA regarding the presence, use, or discharge of Hazardous Substances during the period of Operations at the STWB Site, including, without limitation, the Toxic Release Inventory, materials handling inventories, or investigations in connection with the closure of any portion of the facility.

**Topic 15:** Excluding reports regarding air quality, STWB's reporting or submission of data to EPA regarding the presence, use, or discharge of Hazardous Substances during the period of Operations at the L&F Site, including, without limitation, the Toxic Release Inventory, materials handling inventories, or investigations in connection with the closure of any portion of the facility.

**Topic 16:** Any Communications between STWB and any Governmental Agency regarding STWB's actual or possible liability to the United States

>  associated with any operable unit of the Diamond Alkali Superfund Site, including without limitation STWB's response to any requests by any Governmental Agency for information about the STWB Site or the L&F Site.

**Topic 17:** Any policies of insurance potentially applicable to the STWB Site, any Communications with insurers, notices of claims, reservation of rights letters, and any litigation over insurance coverage regarding STWB's actual or asserted liability to the United States associated with any operable unit of the Diamond Alkali Superfund Site. 17. Any policies of insurance potentially applicable to the L&F Site, any Communications with insurers, notices of claims, reservation of rights letters, and any litigation over insurance coverage regarding STWB's actual or asserted liability to the United States associated with any operable unit of the Diamond Alkali Superfund Site.

**Topic 18:** STWB's current and prospective use, if any, of the Navigation Channel.

**Topic 19:** Information pertaining to STWB's participation in the Batson Process and any communications with EPA pertaining to that process before STWB agreed to participate in it.

On May 12, 2022, STWB replied and proposed:

> [Oxychem provide] (1) a list of any and all topics OxyChem believes are not covered by Mr. Thomasset's deposition testimony; (2) a list of any and all topics that [OxyChem] believes are not adequately covered by Mr. Thomasset's deposition testimony; and (3) a list of any and all documents which [OxyChem] intends to use to question any STWB 30(b)(6) designee, and any and all information you expect to elicit from the said designee.

On May 31, 2022, OxyChem proposed a briefing schedule for STWB to file a motion for a protective order regarding the Deposition Notice. STWB rejected the briefing schedule and urged OxyChem "to engage in a meaningful meet and confer to resolve this dispute." By letter dated June 10, 2022, OxyChem stated that it believed the parties were at an impasse since STWB had no intention of voluntarily providing a live witness and otherwise complying with its obligations under Rule 30(b)(6). In the same letter, OxyChem notified STWB of its intent to file a motion to compel if STWB did not agree to produce a live witness.

On June 22, 2022, OxyChem filed the Motion.

## LEGAL STANDARD

"The purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings and thus the boundaries of relevance under [*Federal Rule of Civil Procedure*] 26 depend on the context of each action." *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015). To that end, *Federal Rule of Civil Procedure* 26 provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.
>
> [FED. R. CIV. P. 26(b)(1).]

"Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Courts construe *Federal Rule of Civil Procedure* 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253, 265 (1978); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (citation omitted). However, courts have the discretion to determine the scope of discovery. *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. at 528.

*Federal Rule of Civil Procedure* 37 affords a party the right to move to compel designation or discovery, providing in pertinent part:

> On notice to other parties and all affected persons, a party . . . may move for an order compelling an answer, *designation*, production, or inspection. This motion may be made if:…(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6). . .;

[FED. R. CIV. P. 37(a)(1) & 37(a)(3)(B)(ii).] (emphasis added).

The proponent of a motion to compel "bears the initial burden of proving that the information sought is relevant." *Clifford v. Church Mut. Ins. Co.*, 2014 U.S. Dist. LEXIS 149224, at *11 (S.D. Ohio Oct. 21, 2014) (citing *Guild Assocs. v. Bio-Energy (Wash.) LLC*, 2014 U.S. Dist. LEXIS 82990, at *37 (S.D. Ohio June 18, 2014)).

Accordingly, the Special Master is to determine whether OxyChem has met its burden to show whether the topics in the Amended Rule 30(b)(6) Notice are relevant and proportional to the needs of the case when analyzing the Motion.

A "court may issue a protective order to regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 159712, *5 (D.N.J. Nov. 24, 2015) (citations omitted). *Federal Rule of Civil Procedure* 26(c)(1) provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses, including . . . (A) forbidding the disclosure or discovery; . . . [or, *inter alia*, ] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .

[FED. R. CIV. P. 26(c) (1)(A)-(D).]

Indeed, the objective of *Federal Rule of Civil Procedure* 26(c) is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Notes of Advisory Committee on 1983 amendments, Note to Subdivision (b)*; *see also In re EthiCare Advisors, Inc.*, 2020 U.S. Dist. LEXIS 144816, at *6 (D.N.J. Aug. 12, 2020) (stating that courts may limit or deny otherwise appropriate discovery when the information sought is not proportional to the needs of the case when certain factors are considered, including burden and expense). To

that end, the grounds for "limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c)." *Id*.

The *Rule* "places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To overcome the presumption, the party seeking the protective order must show *good cause* by demonstrating particular need for protection." *Cipollone*, 785 F.2d at 1121 [emphasis added]; *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone*.785 F.2d at 1121. (citations omitted). Indeed, the "harm must be significant, not a mere trifle." *Id*. (citations omitted).

"Good cause" is defined as a "showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir. 2007) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1986)). Good cause is established based on "balancing a number of considerations." *Arnold*, 477 F.3d at 108 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)). The factors, include but are limited to: "(1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Arnold*, 477 F.3d at 108 (citations omitted). Therefore, whether a protective order is warranted turns on a finding that the moving party has established good cause

based on an analysis of pertinent factors.

## ANALYSIS

### A. STWB Failed to Show Good Cause and Must Designate a Corporate Witness Pursuant to Rule 30(b)(6)

*Rule* 30(b)(6) is explicit that a noticed corporation "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." FED. R. CIV. P. 30(b)(6). A corporation appears vicariously through its representative. *See Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 393 (D.N.J. 2011).

Courts have rejected the argument that "prior deposition testimony from individual fact witnesses relieves a corporation from designating a corporate spokesperson in response to a Rule 30(b)(6)." *Id.* (quoting *Smith v. Gen. Mills, Inc.*, 2006 U.S. Dist. LEXIS 19093, at *15 (S.D. Ohio Apr. 13, 2006)). In very specific instances courts have allowed parties to waive a Rule 30(b)(6) deposition request. *Id.* at 81. The circumstances under which a court has allowed fact witness testimony in lieu of Rule 30(b)(6) testimony are when a party has: (1) offered to be bound by an individual testimony previously provided; (2) produced significant discovery to the extent that deposition of a corporate designee would be unduly burdensome; and (3) agreed to allow individuals who were deposed in the absence of any additional corporate designee to testify as to corporate knowledge. *Id.* at 81.

Similar to a prior motion by another party in this matter, STWB relies on *Novartis Pharmaceuticals Corp. v. Abbot Laboratories* in support of the position that OxyChem should be precluded from deposing a Rule 30(b)(6) witness of STWB and forced to accept the testimony from the Thomasset Deposition as the testimony of STWB. As previously explained by the Special Master, the court in *Novartis* had a unique and distinguishing set of circumstances. In *Novartis,* the Court found that a party's offer to be bound by prior fact testimony *in the same case* satisfied

9

their obligation under Rule 30(b)(6) to produce a witness because *the prior witness would have been the designee for a 30(b)(6) deposition* and was the most knowledgeable witness on the subject. *Novartis Pharm. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001) [emphasis added]. In *Novartis*, the opposing party rejected the offer to be bound by prior testimony because it had not elicited sufficient testimony from the witness and had not deposed the witness in an official capacity. *Id*. at 162. The Court reasoned that, because the opposing party already had eighty pages of testimony, another round of testimony from the same witness in an official capacity would be cumulative. *Id*. at 163.

Relying on *Munich Reinsurance Am., Inc.* 2011 U.S. Dist. LEXIS at *80, STWB argues that a fact witness's prior deposition testimony can be used in lieu of a Rule 30(b)(6) deposition when a party has offered to be bound by that testimony. *Id*. There, the Court noted that courts have also rejected the use of a fact witness's prior deposition testimony to relieve a corporation from designating a corporate spokesperson under *Rule* 30(b)(6). *Id*. Citing *Novartis Pharmaceuticals Corp.* 203 F.R.D. at 163, the Court held that "the fact that individually named witnesses have testified concerning a subject is generally no obstacle to a 30(b)(6) deposition on the same subject. *Id*.

Similar to *Novartis*, STWB offered to be bound by Mr. Thomasset's testimony, but OxyChem refused to accept the offer. However, in *Novartis*, the witness was alive, and therefore, the party retained the right of cross-examination at trial. Here, Mr. Thomasset, is deceased and OxyChem would have no witness to cross-examine regarding STWB's interpretation of documents and events.

Furthermore, in *Novartis,* the witness had testified *in the same case*. The court deemed this fact persuasive in ruling that additional testimony would be duplicative. Here, the witness testified

in a separate litigation, and the Special Master has no clear way of determining whether the testimony in the prior litigation would be sufficient to answer the questions on the topics for these depositions.

Mr. Thomasset was an *individual* witness, rather than a designated representative in the New Jersey Spill Act Litigation. As noted by OxyChem, Mr. Thomasset testified about his personal knowledge and not the knowledge of STWB. Indeed, Mr. Thomasset was under no obligation to prepare for his deposition in 2011 and did not have the benefit of discovery produced in this case, which STWB's designee will likely need to review to the extent required for preparation on the Deposition Notice topics. It is very well possible, and in fact likely, that Mr. Thomasset's testimony and memory in 2011 did not include knowledge regarding documents he never reviewed or had access to, which OxyChem may use at the Rule 30(b)(6) deposition of STWB.[1]

Finally, there is no way for the Special Master to predict that the planned questioning of the corporate designee would be adequately satisfied by the prior deposition of Mr. Thomasset. As Mr. Thomasset has only testified in another proceeding more than ten (10) years ago, the Special Master cannot identify with certainty whether the subject matter of the testimony will be the same as covered in the prior deposition. Similarly, the Special Master has not been provided with the documents that OxyChem intends to present and is therefore unaware whether the documents are the same as those presented to Mr. Thomasset at his deposition.

The burden of proof for a protective order lies with STWB. STWB has not shown any clearly defined or serious injury, undue burden, or expense in complying with the Deposition

---

[1] OxyChem has previously represented during Monthly Meetings that it would provide the documents it intends to use for 30(b)(6) depositions prior to the deposition, which mitigates certain of STWB's concerns.

11

Notice. Along the same vein, there does not appear to be any interest in privacy, public health or safety, illegitimate purpose, embarrassment, unfairness, or confidentiality issue that warrants a protective order in favor of STWB. Accordingly, there has not been a showing of good cause for a protective order on the topics in the Deposition Notice by STWB.

**B.     STWB Failed to Show that OxyChem Has Had or Will Have An Opportunity to Obtain Information by Other Means**

STWB argues that the topics in the Deposition Notice: (1) are unclear and not stated with particularity; (2) request confidential information; and (3) could be addressed through written discovery as opposed to deposition. For these reasons, STWB asserts that OxyChem can or should obtain this information differently than through a live witness deposition.

In a notice pursuant to Rule 30(b)(6), "a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination."[2] FED. R. CIV. P. 30(b)(6). The party noticing a deposition pursuant to the Rule has the initial burden to identify topics of examination "with reasonable particularity." *Yerkes v. Weiss*, 2019 U.S. Dist. LEXIS 237760, at *5 (D.N.J. Sep. 30, 2019) (citing *Alexander v. F.B.I.*, 186 F.R.D. 137, 140 (D.D.C. 1998)). After this initial burden is met, the burden shifts to the deponent to produce a witness with knowledge of the subject matter. *Id.* at *6 (citations omitted).

The reasonable particularity requirement is meant to inform the company, the witness and counsel of the level of specificity required to identify the outer limits of inquiry. *See FTC v. AM. Future Sys.*, 2022 U.S. Dist. LEXIS 81708, at *3 (E.D. Pa. Apr. 8, 2022) (citing J.C. Wang, D.

---

[2] The scope of topics on which a corporate designee can be expected to testify is defined by *Rule* 26(b)(1). *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 393 (D.N.J. 2011). *Rule* 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1).

Lambrinos, M.L. Murphy, *Speak for Yourself: The 30(b)(6) Deposition* (Sept. 19, 2016) and *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005)); *see also Mullenix v. Univ. of Tex.*, 2021 U.S. Dist. LEXIS 79965, at *19 (W.D. Tex. Apr. 26, 2021) (stating requirement met if notice enable entity to adequately fulfill its obligations to choose and prepare deponent); *TERA II, LLC v. Rice Drilling D, LLC*, 2020 U.S. Dist. LEXIS 179619, at *11 (S.D. Ohio Sep. 29, 2020) (stating notice must describe matters sufficient to enable corporation or business to produce witness who can testify to entity's knowledge on topics identified).

Some courts have strictly enforced the reasonable particularity requirement, mandating the topics be set forth "with painstaking specificity." *See British Telcoms. PLC, v. IAC/Interactivecorp*, 2020 U.S. Dist. LEXIS 37271, at *4 (D. Del. Mar. 4, 2020) (citations omitted). Other courts, including courts within the Third Circuit, have said that deposition topics that lack all metes and bounds are facially overbroad and unduly burdensome. *See Fifth Third Bank v. Westwood Zamias Ltd. P'Ship*, 2019 U.S. Dist. LEXIS 59512, at *4 (W.D. Pa. Feb. 6, 2019); *FTC v. Am. Future Sys.*, 2022 U.S. Dist. LEXIS 81708, at *5 (E.D. Pa. Apr. 8, 2022) (stating proposed topics that require witness to master unreasonably large body of knowledge or leave without in doubt about metes and bounds of subject matter fail reasonable particularity test); *Pres. Techs. Llc v. Mindgeek United States*, 2020 U.S. Dist. LEXIS 258315, at *14-15 (C.D. Cal. Oct. 19, 2020) (stating "deposition topic lacking all metes and bounds is facially overbroad and unduly burdensome").

The Special Master finds that the subject topics are limited in subject matter and time and are described with reasonable enough particularity to place STWB on notice of the topics to prepare its designated witness. These topics are particularized as to location (*e.g.* "at the L&F

Site"), specific hazardous substances (*e.g.* "pertaining to Hazardous Substances" as defined), and time period (e.g. "during the period of Operations at the STWB Site").

The Special Master also finds no merit in the blanket assertion that OxyChem is seeking protected, confidential or privileged materials. On their face, the topics do not raise any outright concerns regarding privilege or confidentiality. At this stage, OxyChem has only proffered deposition topics required by Rule 30(b)(6). Issues regarding privilege and confidentiality can only be adequately addressed once a question is posed and privileged or confidential information is required to be disclosed to respond. The Federal Rules of Civil Procedures and the Orders in this matter govern such situations and the parties are more than capable of addressing these issues at the appropriate time.

Finally, STWB's argument that the deposition topics can be addressed through document requests is insufficient to warrant the issuance of a protective order. STWB states:

> If OxyChem provides proper written discovery requests, STWB is more than willing to produce any non-privileged information in its possession not already disclosed through the discovery process. However, identifying a series of broad topics without "reasonable particularity" is not suitable for a 30(b)(6) deposition. Fed. R. Civ. P. 30(b)(6).

[*See STWB* at 10].

This argument is contrary to well-settled law: "[p]roducing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.,* 251 F.R.D. 534, 541 (D. Nev. 2008) (stating "the two forms of discovery are not equivalent"); *James Lee Constr., Inc. v. Gov't Emples Ins. Co.*, 339 F.R.D. 562, 569 (D. Mont. 2021) (stating document discovery does not prohibit Rule 30(b)(6) deposition); *Murphy v. Kmart*, 255 F.R.D. 497, 507 (D.S.D. 2009) (stating "producing documents and responding to written discovery is not a substitute for providing" a Rule 30(b)(6) witness).

Thus, STWB cannot seek to preclude a deposition simply based on its subjective belief that another method of discovery can be used, especially since the propounding party is the one that may choose the means of discovery. *See Nat'l Life Ins. Co. v. Hartford Acci. & Indem. Co.*, 615 F.2d 595, FN 5 (3d Cir. 1980) (finding propounding party, not witness, has option on means of conducting discovery).

For all of these reasons, STWB's Cross-Motion for a Protective Order is denied.

C. **OxyChem and STWB Must Designate a Mutually Agreeable Date for Same.**

The parties have exchanged correspondence for almost a year and have met and conferred with respect to this deposition. Nevertheless, this Motion was required to resolve the parties remaining dispute. The parties are hereby required to meet and confer once more within ten (10) business days to determine a mutually agreeable date for the Rule 30(b)(6) deposition to take place. If a date is not agreed to within this time period, the parties will contact the Special Master for a conference to resolve the matter. This portion of the Cross-Motion is granted.

## CONCLUSION

For the foregoing reasons, OxyChem's Motion is **GRANTED**, STWB's Cross-Motion is **DENIED IN PART** and **GRANTED IN PART.**

*/s/ Thomas P. Scrivo*
**THOMAS P. SCRIVO**
Special Master

15