# CLARK HILL

Steven  M.   Richman
T   609.785.2911
F   609.785.2971
Email:  SRichman@ClarkHill.com

Clark  Hill  PLC
210  Carnegie  Center
Suite  102
Princeton,  NJ  08540
T   609.785.2900
F   609.785.2999

**clarkhill.com**
Resident  Member
Steven  M.  Richman,  Esq.

August 18, 2022

**VIA ECF**

Thomas P. Scrivo, Special Master
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009

> Re:    Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.
>         Civil Action No. 2:18-cv-11273 (U.S.D.C. D.N.J.)

Dear Special Master Scrivo:

We represent Chargeurs Inc. ("Chargeurs") and write in reply to the opposition submitted by Plaintiff Occidental Chemical Corporation ("OxyChem") on August 15, 2022 [ECF 2132], in response to our motion for protective relief [ECF 2130]. Because the discovery sought by OxyChem is not relevant to any claim or defense in this action as required by Fed.R.C.P. 26(b), Chargeurs' motion should be granted. We request oral argument.

First, OxyChem tries to make something of the fact that Chargeurs has still not filed its summary judgment motion three months after receiving the Court's permission to do so on May 17, 2022. During the conference call with Magistrate Judge Wettre on August 5, 2022, she noted that her order [ECF 2058] deliberately did not include a deadline for Chargeurs to file its motion. The motion was also delayed when, having told Magistrate Judge Wettre that it wanted depositions from Chargeurs' parent, Chargeurs Textiles SAS [ECF 2010], OxyChem then reversed course and told Chargeurs' counsel it wanted to take the deposition of Martin Doldan of Chargeurs and then sent a deposition notice for Martin Doldan of Chargeurs [ECF 2093], resulting in more correspondence to the Court [ECF 2094, 2110, 2120, 2121], with the Court setting a conference and precluding any further submissions until that conference [ECF 2122] and final clarification on August 5, 2022 [ECF 2128].

268289651

Special Master Thomas Scrivo
August 18, 2022
Page 2

OxyChem has dawdled for years and now seeks to harass Chargeurs on the eve of its summary judgment motion. By letter dated November 12, 2020, four months prior to its motion for leave to amend its complaint, Chargeurs proposed a settlement. While Rule 408 precludes the use of such a letter for establishment of liability, it does not preclude the use of such letters for other purposes. Of relevance is that over a year and a half ago, OxyChem was on notice that

> Regardless of the legal status of successor, Chargeurs is no longer a necessary part of the entire Chargeurs set of companies.  There was a business reason for it to exist until 1983, but once its subsidiary, UPDW, Inc., ceased operations, Chargeurs remained active for the purpose of collecting on various notes or other receivables or holding stock in other companies.  Those purposes ceased as monies were collected and the shares of stock sold.  By 2006, it was looking to dissolve as its purpose no longer existed, but on receipt of the EPA's General Notice Letter, it put that decision on hold.

Second, OxyChem asserts that Chargeurs' "filing for Chapter 7 bankruptcy and filing for dissolution … have put at issue whether it is an alter ego or mere instrumentality of its corporate parent and sole shareholder, the French corporation Chargeurs Textiles SAS."

The mere fact that Chargeurs has disclosed facts that it would not be able to pay any judgment that OxyChem might get against Chargeurs does not put alter ego or mere instrumentality at issue in this case. There is no claim or defense in this case relating to alter ego or mere instrumentality, and OxyChem has not articulated any legal or factual basis for its unpled theory.

The United States Supreme Court has expressly held that CERCLA does not override basic corporate law with regard to the separateness of corporate identity and independence, and that absent direct participation in the operations of a subsidiary's facility by the parent, the parent has no direct liability. *United States v. Bestfoods*, 524 U.S. 51 (1998). The Court expressly held that a parent "that actively participated in, and exercised control over, the operations of a subsidiary" may not "be held liable as an operator of a polluting facility owned or operated by the subsidiary" without more, "unless the corporate veil may be pierced." *Id.* at 55.

*Bestfoods* reinforced the integrity of corporate status, noting the extreme exception to the principle of corporate independence, where "the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, inter alia, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Id.* at 62.

The Third Circuit has delineated the discrete theories on which a corporate affiliate may be held liable under veil-piercing theories. These are (1) alter ego, where the courts "look to the following factors: gross undercapitalization, failure to observe corporate formalities, nonpayment

268289651

Special Master Thomas Scrivo
August 18, 2022
Page 3

of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder;" (2) "integrated enterprise" test where the court "looks to four labor-related characteristics of affiliated corporations: interrelation of operations; common management; centralized control of labor relations; and common ownership or financial control;" and (3) "direct liability" where "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management, and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." *Pearson v. Component Tech. Corp*., 247 F.3d 471, 484–87 (3d Cir. 2001).

In a comparable situation, the Third Circuit, applying *Bestfoods* and *Pearson*, rejected an attempt to pierce the corporate veil through alter ego and get to a parent corporation that was actually pleaded in the suit. *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333 (3d Cir. 2018). Plaintiff sued Greenlease Holding Co. as well as its parent, Ampco-Pittsburgh Corporation, for allocation of remediation costs. Id. at 341. Greenlease had actually conducted and expanded manufacturing activities on the site that it acquired from another entity. Id. at 342. Subsequently, Ampco acquired Greenlease, though there had been a prior relationship with overlapping board members, a shared officer, but no other common employees. Id. at 342-43. There was even a corporate resolution of Greenlease that declared that actions taken by Ampco that Ampco deemed necessary on behalf of Greenlease were deemed to be an action of the Greenlease board. Id. at 343.

Notably, under *Bestfoods*, the *Greenlease* court rejected direct liability of Ampco, finding it did not operate the facility, and held that overlapping officers or board members were not enough: "Trinity cannot hold Ampco liable for the environmental cleanup costs merely by showing that dual officers and directors made policy decisions and supervised activities at the facility." Id.at 363. It was simply not involved in day to day operations. Further, the court refused to pierce the corporate veil and find Ampco derivatively liable under the Pearson tests, noting the "notoriously difficult" burden under a "clear and convincing evidence" standard. Id. at 365-66. It found no undercapitalization, no siphoning of funds, and a typical parent-subsidiary relationship, and applying Pennsylvania law (similar to New Jersey law), found that "[t]o permit Trinity to pierce the corporate veil in this instance, in the face of all the objective criteria favoring Ampco, would, in essence, result in rendering useless Ampco's legitimate use of the corporate form when setting up Greenlease as a subsidiary. The record is devoid of evidence that Ampco misused separate corporate entities for some nefarious purpose." Id. at 368. Finally, as a matter of policy, "both federal and Pennsylvania law favor maintaining the legal fiction of separate corporate entities. Because the evidence does not suggest that there was fraud or an attempt to use a corporate façade as an alter ego, public policy first favors upholding the integrity of the corporate form. Trinity has not presented any public policy consideration sufficiently compelling to overcome the strong presumption against veil piercing." Id. at 368.

Special Master Thomas Scrivo
August 18, 2022
Page 4

Third, OxyChem attempts to distinguish our three cases holding that that the kind of discovery OxyChem is seeking is proper only after judgment is entered, unless plaintiff has pleaded alter ego/mere instrumentality allegations in the complaint, on the basis that it was Chargeurs that presented facts (that it has no assets) that raised the issues of alter ego and mere instrumentality. The cases OxyChem cites relate to the alter ego discovery on the specific transactions involved in the underlying case. That is not the issue here, where it is a side issue in the case. By OxyChem's own admission, the discovery sought does not relate to Chargeurs activity on the site. In fact, these cases actually fall in line with the cases cited by Chargeurs that the veil piercing is relevant only if plead. They are also consistent with the *Bestfoods* analysis.

In *Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1359 (2d Cir. 1991), the plaintiffs (after consolidation of a few suits) sued three companies Ektrans, Ekco, and Ekinciler, for damages related out of the purchase of steel that was never delivered. The plaintiffs won summary judgment on the issue of liability against Ektrans. However, the order ambiguously stated the following: "Ekco, Ektrans and Ekinciler are so interrelated as to be alter egos, under common control and ownership such that the acts of one are the acts of all," although granting judgment only against Ektrans. Significantly, Ecko, Ektrans and Ekinciler were all defendants in the case, and not a nonparty like Chargeurs' parent.

Thus, the companies appealed. The Second Circuit affirmed the summary judgment and awarded damages against Ektrans, however, the court stated that it could not determine what the district court intended when it stated that Ekco and Ekinciler were alter egos. Thus, the case was remanded for clarification. On remand the plaintiffs served Ekco with Rule 30(b)(6) corporate representative deposition notices. There are some intervening facts, but essentially Ekco and Ekinciler refused to respond to discovery and would not produce documents.

Thus, the Second Circuit found that "it was reasonable to conclude, as the district court did, that information from subsequent years could help piece together the earlier picture. We are persuaded that information concerning financial transactions and movements of corporate assets subsequent to the transaction giving rise to this litigation was "reasonably calculated to lead to the discovery" of evidence admissible on the issue of alter ego liability within the meaning of Rule 26(b)(1)."

The Second Circuit also stated that plaintiffs had the burden of establishing an alter ego relationship, thus, it appears plaintiff had pled an alter ego claim in *Daval*. Specifically, the Court stated: "Plaintiffs-appellees were precluded from any attempt to prove the elements of "alter ego" liability by Ekco's willful failure to comply with discovery orders. It is the relationship between this misconduct and plaintiffs-appellees "alter ego" claim that provides the rationale for the Rule 37(b)(2) sanctions imposed by the district court."

In fact, *Daval* was cited by a court that nonetheless denied the request for alter ego discovery because it had not been alleged in the complaint and therefore "would not have assisted in clarifying the issues that the court must eventually decide in this case." *Home*

Special Master Thomas Scrivo
August 18, 2022
Page 5

*Gambling Network, Inc. v. Piche,* No. 2:05CV00610 DAE/LRL, 2008 WL 11452568, at *2 (D. Nev. February 12, 2008).

Alter ego discovery also was permitted in *Wells Fargo Bank, N.A v. Konover*, No. 3:05CV1924 CFD/WIG, 2009 WL 585429, at *5 (D. Conn. Mar. 4, 2009) because the Plaintiff asserted a veil piercing claim.

Regarding *Arrowood*, the court specifically stated: " . . . and the Court noting that discovery concerning an opposing party's assets is not ordinarily permitted ... unless such discovery is relevant to the merits of the pending claim ... or in response to a defense." *Arrowood Indem. Co. v. Metallo Gasket Co.*, No. CIV.A. 09-4814 AET, 2011 WL 4950200, at *1 (D.N.J. Oct. 18, 2011). The key word phrase here is "party's assets." The *Arrowood* court allowed discovery of the assets of the party to the litigation, similar to Chargeurs producing financial records in response to OxyChem's discovery requests and through the bankruptcy schedules that were filed. Significantly, OxyChem has not cited any cases which allowed prejudgment discovery against the corporate party concerning unpled alter ego/mere instrumentality liability of a nonparty, even if affiliated. As the cases cited by OxyChem note, the alter ego/mere instrumentality was directly at issue and appears to have been alleged by the plaintiff. OxyChem is not entitled to fish for alter ego—none of the other Chargeurs family entities ran the site, and they are only entitled to pursue Chargeurs and a judgment against it.  The *Arrowood* case OxyChem cites asked for financial records; Chargeurs has produced such records to OxyChem. The *Wells Fargo* case, despite the representations from OxyChem, actually stands for the proposition that the discovery was necessary to resolve  the pleaded claims (i.e. alter ego) against the party—that is not the issue here. Instead, OxyChem has stated it is relevant to look for other potential defendants. OxyChem cites *Daval* for the proposition that the alter ego discovery was relevant to the transactions at issue in the suit. A main distinguishing feature is that all of this is not relevant to the liability issue in the instant case. The discovery sought here is one step removed from the issues in the case, whereas the cases cited by OxyChem involved alter ego claims.

Fourth, OxyChem argues that the scope of examination under Bankruptcy Rule 4002(b) [sic][1] is limited and that "Chargeurs cites no authority for the proposition that discovery in bankruptcy would have allowed OxyChem to get the discovery it seeks here." The scope of discovery permitted under Rule 2004(b) is sufficiently broad ("the acts, conduct, or property or to the liabilities and financial condition of the debtor") to include inquiries regarding whether Chargeurs is the alter ego or mere instrumentality of Chargeurs Textiles, SAS. In fact, discovery of "the debtor" could include a broad category of issues bearing upon the estate upon an appropriate showing that discovery was otherwise stayed against the debtor and the discovery relates to the administration of the estate. *In re Mavashev,* 559 B.R. 332, 336 (Bankr. E.D.N.Y. 2016) ("Bankruptcy Rule 2004 allows the Court, on motion of any party in interest to order the examination of any entity. Rule 2004 discovery is broader than discovery under the Federal

---

[1] OxyChem miscited to Rule 4002(b) instead of Rule 2004(b).

Special Master Thomas Scrivo
August 18, 2022
Page 6

Rules of Civil Procedure, and has fewer procedural safeguards. It can be legitimately compared to a fishing expedition. The purpose of such a broad discovery tool is to assist the Trustee in revealing the nature and extent of the estate; ascertaining assets; and discovering whether any wrongdoing has occurred.") (internal quotations and citations omitted). *In re International Fibercom, Inc.,* 283 B.R. 290, 293, 40 Bankr. Ct. Dec. (CRR) 55 (Bankr. D. Ariz. 2002). While it is inappropriate to use the rule to circumvent discovery mechanisms in a pending case, where the purpose is proper and the information at the time is otherwise unascertainable, a court may grant the relief. *See generally. Bankruptcy Rule 2004 examinations and collateral litigation, 1 Bankruptcy Litigation § 4:27.*

       In conclusion, the sought deposition of Mr. Doldan for purposes unrelated to the activity by Chargeurs or its predecessors as to the site, are not relevant and premature. The deposition notice should be quashed.

                             Respectfully submitted,

                             CLARK HILL PLC

                             By: *s/Steven M. Richman/*

Cc: All counsel of record via ECF

268289651