**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>21ST CENTURY FOX AMERICA, INC., *et al*.,<br><br>      Defendants. | Civil Action No. 18-11273 (MCA)(LDW)<br><br>**SPECIAL MASTER DECISION DENYING IN PART AND GRANTING IN PART DEFENDANT SMALL PARTIES GROUP DEFENDANTS' MOTION FOR A PROTECTIVE ORDER** |

## INTRODUCTION

This matter comes by way of a motion (the "Motion") filed by Small Parties Group Defendants ("SPG Defendants") on April 19, 2022, seeking a protective order regarding depositions of the Cooperating Parties Group ("CPG") and certain consultants on topics that SPG Defendants assert are overly broad and impermissibly seek testimony concerning privileged and confidential information.

On May 3, 2022, Plaintiff, Occidental Chemical Corporation ("OxyChem") filed opposition to the Motion, asserting that the deposition topics for the CPG and certain consultants seek testimony related to SPG Defendants' counterclaim and facts surrounding their cooperation with the U.S. Environmental Protection Agency ("EPA").

The Motion is fully briefed by the parties, and therefore, is ripe for a decision by the Special Master. For the reasons set forth herein, the Motion is denied in part and granted in part.

1

## BACKGROUND

On December 23, 2021, OxyChem served notices of subpoena seeking Rule 30(b)(6) depositions of the CPG and CPG consultants, AECOM Technology Corporation ("AECOM"), Anchor QEA, DE Maximis, and FTI Consulting ("FTI"), in March, April, and May 2022.

On January 4, 2022, OxyChem sent amended deposition notices for AECOM, Anchor QEA, and De Maximis, to take depositions in April 2022 (collectively "Deposition Notices"). The pertinent topics in the Deposition Notices were:

**FTI Topic 4:** All Communications and work relating to the RM10.9 Recommendation, including all Communications with the CPG or any CPG Defendant regarding the RM10.9 Recommendation.

**FTI Topic 5:** All communications between FTI and any Government Entity relating to the Diamond Alkali Superfund Site.

**CPG Topic 4:** Allocation(s) among members of the CPG of costs incurred in connection with the Diamond Alkali Superfund Site.

**CPG Topic 9:** The decision to terminate or cease the 2015 Allocation Process, including Communications among CPG Members and Communications between the CPG and any Person regarding the decision to terminate or cease the 2015 Allocation Process.

**CPG Topic 10:** The allocation of costs initiated by the CPG in 2015 and the reasons that process did not proceed, including any Communication with members of the CPG regarding the Fourth Amendment to the ARAO.

**CPG Topic 11:** The Fourth Amendment to the ARAO, including Communications among CPG members regarding the Fourth Amendment to the ARAO.

**AECOM Topic 2:** Communications between [Consultant] and any Person, including without limitation the CPG, any CPG Defendant, any CPG Consultant, or any Government Entity, relating to work performed by [Consultant] for the CPG relating to the Diamond Alkali Superfund Site, the LPRSA, or any OU4 Order.

On February 11, 2022, the SPG Defendants objected to several of the topics in the notices. Specifically, the SPG Defendants asserted that several of the topics were overbroad and vague,

and sought information that was protected by the attorney-client privilege, work product doctrine, and/or constituted protected settlement communications.

On April 1, 2022, counsel for OxyChem and liaison counsel for the SPG Defendants participated in a meet-and-confer regarding the Deposition Notices. The parties were not able to reach an amicable resolution.

On April 19, 2022, the SPG Defendants filed the Motion.

## **LEGAL STANDARD**

"The purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings and thus the boundaries of relevance under [*Federal Rule of Civil Procedure*] 26 depend on the context of each action." *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015). To that end, *Federal Rule of Civil Procedure* 26 provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.
>
> [FED. R. CIV. P. 26(b)(1).]

"Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Courts construe *Federal Rule of Civil Procedure* 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253, 265 (1978); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (citation omitted).

However, courts have the discretion to determine the scope of discovery. *In re Gerber*

*Probiotic Sales Practices Litig.*, 306 F.R.D. at 528.  A "court may issue a protective order to regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 159712, *5 (D.N.J. Nov. 24, 2015) (citations omitted).  *Federal Rule of Civil Procedure* 26(c)(1) provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses, including . . . (A) forbidding the disclosure or discovery; . . . [or, *inter alia*, ] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .
>
> [FED. R. CIV. P. 26(c) (1)(A)-(D).]

Indeed, the objective of *Federal Rule of Civil Procedure* 26(c) is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Notes of Advisory Committee on 1983 amendments, Note to Subdivision (b); see also In re EthiCare Advisors, Inc.*, 2020 U.S. Dist. LEXIS 144816, at *6 (D.N.J. Aug. 12, 2020) (stating courts may limit discovery when information sought is not proportional to needs of case considering burden and expense). To that end, the grounds for "limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c)." *Id.*

The *Rule* "places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To overcome the presumption, the party seeking the protective order must show good cause by demonstrating particular need for protection." *Cipollone*, 785 F.2d at 1121; *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."

*Cipollone*.785 F.2d at 1121. (citations omitted). Indeed, the "harm must be significant, not a mere trifle." *Id*. (citations omitted).

"Good cause" is defined as a "showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir. 2007) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1986)). Good cause is established based on "balancing a number of considerations." *Arnold*, 477 F.3d at 108 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)). The factors, include but are limited to: "(1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Arnold*, 477 F.3d at 108 (citations omitted). Issuance of a protective order will depend on whether the moving party has established good cause based on an analysis of the pertinent factors.

## ANALYSIS

**A.     FTI Topic 4 and CPG Topics 4, 9, 10, and 11**

The SPG Defendants argue that FTI Topic 4 and CPG Topics 4, 9, 10, and 11 seek testimony that is protected by the attorney-client privilege, the work-product doctrine, federal protections over dispute resolution communications, and mediation privileges. The SPG Defendants' contend that these topics seek communications between CPG members, mediators, consultants, and counsel, and therefore, testimony covered by these topics runs afoul of the asserted privileges.

5

In opposition, OxyChem argues that, while communications may be subject to protection, the facts are not protected. OxyChem argues that the privilege being asserted by the SPG Defendants covers communications, not facts. The facts underpinning the SPG Defendants' $150 million counterclaim cannot be protected by any privilege according to OxyChem. OxyChem argues that the SPG Defendants have either not established that the protections apply, or have waived the privileges that they now seek to assert.

The assertion of privilege obstructs the search for the truth and must be strictly confined within the narrowest possible limits consistent with the logic of its principle. *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979) (citations omitted). The burden of demonstrating the existence of a privilege is on the party asserting it. *In re Grand Jury Empanelled February 14*, 603 F.2d 469, 474 (3d Cir. 1979) (citing *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978)). There is no bright-line rule governing the applicability of a privilege and courts are required to determine the applicability of a privilege on a communication-by-communication basis. *See Upjohn Co. v. United States*, 449 U.S. 383, 399-97, 101 S. Ct. 677, 685, 66 L. Ed. 2d 584 (1981); *see also United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990).

It is well settled that a court may issue an order to protect privileged information from disclosure. *See Bright v. Tyson*, 2017 U.S. Dist. LEXIS 74824, at *8 (D.N.J. May 16, 2017) (citing *Cipollone*, 785 F.2d at 1121). However, a court's issuance of a protective order can only be applicable to the privileged communication, but not the underlying facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S. Ct. 677, 685, 66 L. Ed. 2d 584 (1981) (citations omitted); *see also In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 156 (D.N.J. 2008) (stating privilege is limited to communication, not underlying facts); *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (stating privilege protects disclosure of protected document but not disclosure of

6

underlying facts contained in document); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 121-22 (D.N.J. 2002) (stating work-product doctrine protects against disclosure of protected documents or communications but does not protect underlying facts).

Unfortunately, the Special Master has not been presented with any specific communications to consider. The SPG Defendants ask the Special Master to create a bright-line rule for all topics in the Deposition Notices, including communications between CPG members, mediators, consultants, and counsel, that may fall within the scope of FTI Topic 4 and CPG Topics 4, 9, 10, and 11 under attorney-client, work product, and mediation privileges.[1] The SPG Defendants request that the Special Master speculate about all possible questions that may be asked at a deposition and consider whether each question would constitute a privileged communication under any of the privileges cited in the Motion.

While the Special Master understands the SPG Defendants' concerns regarding potential questioning, a blanket rule cannot be set without knowing the specific questions posed to the deponent. The SPG Defendants have already successfully challenged the Special Master's authority to impose a blanket application of privilege through an appeal to the District Judge. *See* ECF 1268-1 (stating "the Special Master's blanket application of the joint-client privilege. . . was clearly erroneous" and contrary to law). Accordingly, the Special Master will not impose a blanket rule regarding privilege, and given this, the Special Master need not consider whether any privilege was waived, or the applicability of the joint-client privilege or community-of-interest, without first being presented with specific questions or documents.

---

[1] Although there is an interpreted federal mediation privilege, its scope and application has been questioned in this jurisdiction. "Many federal courts have recognized a federal mediation privilege of some nature that is rooted in the imperative need for confidence and trust. *N.J. Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*, 2017 U.S. Dist. LEXIS 16743, at *48-49 (D.N.J. Feb. 7, 2017) (citation omitted). The privilege does not "require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." *Sheldone v. Pennsylvania Tpk. Comm'n*, 104 F. Supp. 2d 511 (W.D. Pa. 2000) aff'd (Aug. 8, 2000). Specifically, "document[s] which otherwise exist[], or existed independent of the mediation . . . [are] not subject to this privilege." *Id.*

7

Nevertheless, the Special Master cautions that OxyChem has the right to question AECOM, Anchor QEA, DE Maximis, and FTI about underlying facts, but not related privileged communications to the extent they exist (*see Upjohn Co.*, 449 U.S. at 395). OxyChem should be cognizant of the privilege issues that exist in this action due to the commonality of parties and the issues between this case and prior proceedings.

This ruling should not be interpreted to mean that the SPG Defendants' privilege and protection claim will fail. Rather, at this juncture, the SPG Defendants have not met their burden to obtain a protective order. Rule 30 should quell the SPG Defendants' concerns about the disclosure of privileged communications. The SPG Defendants, at the time of the deposition, have the ability to object on the basis of the privileges. FED. R. CIV. P. 30(c)(2); *see also Otsuka Pharm. Co. v. Apotex Corp.*, 310 F.R.D. 256, 260 (D.N.J. 2015). Further, as the Special Master has previously reiterated in the May 2022 Monthly Conference, the deposition is limited in both time and scope, thereby minimizing the potential privilege issues that could arise:

> The other thing I would say is it is just a seven-hour deposition under the Federal Rules, so there's only so much that can be done in those seven hours and I would suspect that Oxy will attempt to use that time efficiently.

[May 2022 Status Conference at T42:16-21].

For all these reasons, the SPG Defendants' broad assertion of privilege is denied without prejudice. This Decision is not meant to bar the SPG Defendants' right to assert a privilege during the deposition, including to question within the topics set forth in the Deposition Notices.

**B.     The SPG Defendants' Objection of Certain Deposition Topics**

The SPG Defendants argue that FTI 5 and Topic 2 for AECOM in the Deposition Notices are overly broad and not proportional to the needs of the case. OxyChem argues that the SPG

8

Defendants' proportionality objection is untenable since the SPG Defendants are seeking limitless and broad ranges of discovery from OxyChem.

The party noticing a Rule 30(b)(6) deposition has the initial burden to identify topics of examination "with reasonable particularity." *Yerkes v. Weiss*, 2019 U.S. Dist. LEXIS 237760, at *5 (D.N.J. Sep. 30, 2019) (citing *Alexander v. F.B.I.*, 186 F.R.D. 137, 140 (D.D.C. 1998)). After this initial burden is met, the burden shifts to the deponent to produce a witness with knowledge of the subject matter. *Id.* at *6 (citations omitted).

The reasonable particularity requirement is meant to inform the company, the witness, and counsel of the level of specificity required to identify the outer limits of inquiry. *See FTC v. AM. Future Sys.*, 2022 U.S. Dist. LEXIS 81708, at *3 (E.D. Pa. Apr. 8, 2022) (citing J.C. Wang, D. Lambrinos, M.L. Murphy, *Speak for Yourself: The 30(b)(6) Deposition* (Sept. 19, 2016) and *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005)); *see also Mullenix v. Univ. of Tex.*, 2021 U.S. Dist. LEXIS 79965, at *19 (W.D. Tex. Apr. 26, 2021) (stating requirement met if notice enables entity to adequately fulfill its obligations to identify and prepare deponent); *TERA II, LLC v. Rice Drilling D, LLC*, 2020 U.S. Dist. LEXIS 179619, at *11 (S.D. Ohio Sep. 29, 2020) (stating notice must describe matters sufficient to enable business to produce witness who can testify to entity's knowledge on topics identified).

Some courts have strictly enforced the reasonable particularity requirement, mandating the topics be set forth "with painstaking specificity." *See British Telcoms. PLC, v. IAC/Interactivecorp*, 2020 U.S. Dist. LEXIS 37271, at *4 (D. Del. Mar. 4, 2020) (citations omitted). Other courts, including courts in the Third Circuit, have ruled that deposition topics lacking any metes and bounds are facially overbroad and unduly burdensome. *See Fifth Third Bank v. Westwood Zamias Ltd. P'Ship*, 2019 U.S. Dist. LEXIS 59512, at *4 (W.D. Pa. Feb. 6, 2019);

9

*FTC v. Am. Future Sys.*, 2022 U.S. Dist. LEXIS 81708, at \*5 (E.D. Pa. Apr. 8, 2022) (stating proposed topics that require witness to master unreasonably large body of knowledge or leave in doubt metes and bounds of subject matter fail reasonable particularity test); *Pres. Techs. Llc v. Mindgeek United States*, 2020 U.S. Dist. LEXIS 258315, at \*14-15 (C.D. Cal. Oct. 19, 2020) (stating "deposition topic lacking all metes and bounds is facially overbroad and unduly burdensome").

FTI Topic 5 states: "All communications between FTI and any Government Entity relating to the Diamond Alkali Superfund Site." The Special Master finds that FTI Topic 5 is described without reasonable particularity to permit a corporate witness to adequately prepare for deposition testimony. As written, FTI Topic 5 has limitless metes and bounds and will leave a witness in doubt about the subject matter. The topic, as proposed, is extraordinarily broad as it would require a witness to review and master an unreasonably large amount of knowledge.  And the potential recipients of these communications ("any Government Entity") is open ended, contains no time limit, and too broadly defines communications. It would require the witness to be conversant in any communication (over no specified time period) with any government entity relating to anything regarding the Diamond Alkali Superfund Site.  Simply put, FTI Topic 5 is not particularized in subject matter or time limitation and subjects a witness to an unlimited scope of questioning.

On the other hand, AECOM Topic 2 is not overly broad.  AECOM Topic 2 states:

> Communications between [Consultant] and any Person, including without limitation the CPG, any CPG Defendant, any CPG Consultant, or any Government Entity, relating to work performed by [Consultant] for the CPG relating to the Diamond Alkali Superfund Site, the LPRSA, or any OU4 Order.

This topic is restricted to communications about the work performed by the consultant for the CPG relating to the Diamond Alkali Superfund Site, the LPRSA, or any OU4 Order, which necessarily has limits in time and scope. This topic is also limited in subject matter (i.e. work for the CPG) sufficient to put a witness on notice of the outer limits of the areas of inquiry.

Accordingly, the Special Master grants the Motion regarding FTI Topic 5 as proposed; however, OxyChem may amend FTI Topic 5 to satisfy the reasonable particularity test within fourteen (14) days of this decision, and any amended topic must clearly define the time period and subject matter limitations. Should a further dispute arise regarding an amended topic, the parties should request a conference with the Special Master.

## CONCLUSION

For the foregoing reasons, SPG Defendants' Motion is **DENIED IN PART** and **GRANTED IN PART.**

*/s/ Thomas P. Scrivo*
**THOMAS P. SCRIVO**
**Special Master**