## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> 21ST CENTURY FOX AMERICA, INC., *et al.*, <br><br> Defendants. | **Civil Action No. 18-11273(MCA)(LDW)** <br><br> **DECISION OF SPECIAL MASTER DENYING IN PART AND GRANTING IN PART SMALL PARTIES GROUP DEFENDANTS' MOTION FOR RECONSIDERATION AND CLARIFICATION OF THE SPECIAL MASTER'S JUNE 10 DECISION DENYING THE MOTION FOR A PROTECTIVE ORDER AND GRANTING THE MOTION TO COMPEL** |

## INTRODUCTION

This matter comes by way of motion (the "Motion") by Small Parties Group Defendants ("SPG Defendants") (ECF No. 2091), seeking reconsideration and clarification of the June 10 Decision denying SPG Defendants' Motion for a Protective Order and Granting Occidental Chemical Corporation's ("OxyChem") Cross-Motion to Compel (the "RFP Decision").

SPG Defendants filed a motion for a protective order on January 29, 2022 (ECF No. 1959), contending that numbers 1, 2, 4, and 6 of OxyChem's Second Request for Production of Documents ("RFP") sought privileged materials. The Special Master denied SPG Defendants' motion for a protective order because SPG Defendants failed to establish that all responsive documents were privileged and no other good cause for a protective order existed.

SPG Defendants seek reconsideration of the RFP Decision on the grounds that it contradicts a prior order excusing all parties from searching for, producing, and logging documents requested by OxyChem, and because it violates the Alternative Dispute Resolution Act ("ADR Act"). In the alternative, SPG Defendants seek clarification of the RFP Decision on two points: (1) whether SPG Defendants are required to produce documents distributed to the Cooperating

Parties Group ("CPG") in response to RFP No. 1; and (2) the definition of the terms "agreement" and "applicable law."

OxyChem filed opposition (ECF No. 2109) arguing that the RFP Decision mandates that SPG Defendants comply with the most basic requirements of the Federal Rules of Civil Procedure governing document discovery, and SPG Defendants have not met the standard for reconsideration.

For the reasons set forth herein, the Motion is **DENIED IN PART** (reconsideration) and **GRANTED IN PART** (clarification).

## I.    STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY

On September 9, 2021, OxyChem served seventy-one SPG Defendants with a series of supplemental requests for production ("RFPs"), including four categories of documents:

- **RFP No. 1.**    All Documents regarding the Fourth Amendment to the ARAO [sic], including Communications between You and any Person regarding the Fourth Amendment to the ARAO.

- **RFP No. 2.**    All Communications with FTI regarding the Diamond Alkali Superfund Site, including Communications regarding the RM10.9 Recommendation.

- **RFP No. 4.**    If You participated in the Batson Process, all Documents regarding Your Decision to participate in the Batson Process.

- **RFP No. 6.**    All Documents in the possession, custody, or control of You or the CPG regarding the decision to terminate or cease the 2015 Allocation Process. This Request includes Communications with any Person regarding the decision to terminate or cease the 2015 Allocation Process.

On October 15, 2021, SPG Defendants objected to the RFPs, arguing that they: (1) are neither relevant nor proportional to the needs of the case; (2) unduly burdensome; (3) seek information in the possession of the CPG, not SPG Defendants; (4) related to Electronically Stored Information ("ESI") discovery on new topics; and (5) call for the production of privileged and

confidential information under the Amended and Restated Organization Agreement, the CPG Joint Defense Agreement, or are confidential communications between SPG Defendants and government entities.

On October 22, 2021, OxyChem sent a letter to SPG Defendants requesting to meet and confer on the RFPs and objections.  The October 22 Letter noted that if SPG Defendants did not withdraw the objections, OxyChem would move to compel.

On November 8, 2021, SPG Defendants submitted a letter in response to the October 22 Letter, proposing a meet-and-confer in November 2021.

On November 16, 2021, the parties held a meet-and-confer where OxyChem agreed to narrow the scope of some of the RFPs.

By letter dated January 14, 2022, OxyChem notified SPG Defendants that it had revised the RFPs, including limiting the scope of RFP No. 1, to documents generated on or before May 29, 2012. OxyChem also agreed to revise RFP No. 2 by requesting documents concerning only the RM 10.9 Recommendation.

On January 29, 2022, SPG Defendants filed a Motion for Protective Order regarding OxyChem's RFPs, contending RFP Nos. 1, 2, 4 and 6 requested privileged materials and were unduly burdensome.  On February 2, 2022, OxyChem filed opposition to the Motion for Protective Order and cross-moved to compel production of documents responsive to the RFPs (the "Cross-Motion"). On February 15, 2022, SPG Defendants filed a reply in further support of the Motion for Protective Order and in opposition to the Cross-Motion.

On June 10, 2022, the Special Master issued the RFP Decision. SPG Defendants filed this Motion on June 27, 2022.

## II.   **LEGAL STANDARD**

A party moving for reconsideration must "set[ ] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]" L. CIV. R. 7.1(i).  "The only proper ground for granting a motion for reconsideration, therefore, is that the matters or decisions overlooked, if considered by the court, 'might reasonably have altered the result reached. . .'" *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (citation omitted).

To prevail on a motion for reconsideration, the moving party must show at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Cole v. Guardian Life Ins. Co. of Am.*, 594 F. App'x 752, 756 (3d Cir. 2014).  "Motions for clarification and reconsideration are often evaluated under the same standard." *Garcia v. Corr. Med. Serv.*, 2018 WL 1317867, *1 (D.N.J. March 14, 2018).

## III.   **ANALYSIS**

SPG Defendants do not present any intervening change in controlling law or new evidence for consideration.  The crux of SPG Defendants' argument relates to an alleged error in the application of the standard for a protective order and the ESI Protocol agreed to between the parties excusing all parties in the litigation from searching for, producing, and logging certain documents, and purported violations of the ADR Act.

### a)  **Whether the Special Master Needs to Correct a Clear Error of Law**

SPG Defendants argue that the Special Master did not consider the correct standard for a protective order.  According to SPG Defendants, the Special Master held SPG Defendants to a "double" good-cause standard by requiring SPG Defendants to establish: (1) the applicable

privilege; and (2) an additional reason for good cause, such as a privacy interest, undue burden, or embarrassment. In opposition, OxyChem argues that the Special Master considered both grounds for a protective order *separately*, rather than as a "double" burden.  OxyChem also points out that SPG Defendants must actually prove the applicability of privilege and not merely state it.

The Special Master found in the RFP Decision that SPG Defendants failed to argue that the information was being requested for an improper purpose.  SPG Defendants also did not state any potential risk of embarrassment or concern for public health and safety to warrant a protective order.  Instead, SPG Defendants requested that the Special Master find that a protective order was warranted because certain documents were categorically privileged.

As noted in the RFP Decision, "[t]he *Federal Rules of Civil Procedure* are clear.  The burden is on the moving party to demonstrate that a privilege attaches to warrant the entry of a protective order.  *Rockwell Int'l*, 897 F.2d at 1265; *In re Human Tissue Prod. Liab. Litig.*, 255 F.R.D. at 163.  SPG Defendants did not do so here." *RFP Decision* at 19. Simply put, SPG Defendants did not satisfy this burden.  Nothing was presented to the Special Master other than briefing. SPG Defendants presented neither a privilege log nor exemplars to consider.  Given that SPG Defendants failed to provide sufficient detail to support a claim of privilege or confidentiality and withheld general categories of documents, the Special Master was unable to find whether specific documents were privileged.

Accordingly, the Special Master considered whether SPG Defendants properly established the privilege, and when a privilege was not found, the Special Master considered the factors of good cause.  At no point did the Special Master state that SPG Defendants would need to prove the privilege asserted and then meet a separate burden associated with good cause. SPG Defendants' argument amounts to disagreement with the Special Master's ruling. The proper

5

standard of review was applied by the Special Master.  On this basis, the RFP Decision will not be disturbed.

   b)  **Whether the ESI Protocol Conflicts with the Decision.**

SPG Defendants argue that the ESI Protocol dictates that all responsive materials to RFP Nos. 1, 2 and 6 are privileged and exempt from search, production, and privilege logging requirements. SPG Defendants suggest that the responsive materials would include custodial files of counsel of record, outside attorneys and/or in-house attorneys regarding this litigation or the Diamond Alkali Superfund Site. SPG Defendants suggest that the responsive materials outside of these categories would remain protected under the ESI Protocol as joint defense communications.

OxyChem argues that SPG Defendants regurgitate arguments previously made and rejected.  OxyChem further argues that SPG Defendants misread the ESI Protocol to include a provision categorically deeming certain documents as privileged even though the ESI Protocol only exempts joint defense communications from privilege log requirements. OxyChem contends that the joint defense does not apply because: (1) OxyChem was part of the CPG through May 29, 2012; and (2) CPG members have sued each other, which destroys the joint defense privilege.

The purpose of the ESI Protocol, as SPG Defendants correctly assert, is to avoid wasting time and resources in the production of documents that are obviously privileged. The ESI Protocol provides: "[n]o party is required to search, produce, or include in its privilege logs:. . . joint defense communications pursuant to a joint defense agreement, provided that the date of the joint defense agreement and the parties to it are disclosed." *ESI Protocol* at 11. As explained in the RFP Decision, there is no dispute that communications related to the CPG were subject to a joint defense agreement. The core issue is that OxyChem was a party to the CPG through May 29, 2012. In accordance with *Katz v. AT&T Corp.,* 191 F.R.D. 433, 437 (E.D. Pa. 2000), a party is required

to demonstrate an attorney-client privilege to substantiate a claim of joint-client privilege. If there is no underlying attorney-client privilege, the document is not privileged. Considering OxyChem was a party to the CPG until May 29, 2012, there is no attorney-client privilege during that period, and thus, SPG Defendants must produce responsive documents prior to May 29, 2012. There is no new evidence or change in the law cited by SPG Defendants that requires reconsideration of the RFP Decision.

The ESI Protocol does not overrule laws of privilege. The RFP Decision addressed these arguments and will not be reconsidered on this basis.

**c) Whether the Decision Conflicts with the ADR Act.**

The ADR Act prohibits a party to an administrative dispute resolution proceeding from disclosing communications as follows:

> (b) A party to a dispute resolution proceeding shall not voluntarily disclose or through discovery or compulsory process be required to disclose any dispute resolution communications, unless—
>
> > (1) the communication was prepared by the party seeking disclosure;
> >
> > (2) all parties to the dispute resolution proceeding consent in writing;
> >
> > (3) the dispute resolution communication has already been made public;
> >
> > (4) the dispute resolution communication is required by statute to be made public;
> >
> > (5) the dispute resolution that such testimony or disclosure is necessary to—
> >
> > > (A) precent a manifest injustice
> > >
> > > (B) help establish a violation of law; or
> > >
> > > (C) prevent harm to the public health and safety, of sufficient magnitude in the particular case to outweigh the integrity of dispute resolution proceedings in general by reducing the confidence of parties in future cases that their communications will remain confidential;

(6) the dispute resolution communication is relevant to determining the existence or meaning of an agreement or award that resulted from the dispute resolution proceeding or to the enforcement of such an agreement or award; or

(7) except for dispute resolution communications generated by the neutral, the dispute resolution communication was provided to or was available to all parties to the dispute resolution proceeding.

[5 U.S.C. 574(b)]

A "dispute resolution communication" is "any oral or written communication prepared for the purposes of a dispute resolution proceeding, including any memoranda, notes or work product of the neutral, parties or a nonparty participant." 5 U.S.C. 571(5). A "dispute resolution proceeding" is "any process in which an alternative means of dispute resolution is used to resolve an issue in controversy in which a neutral is appointed and specified parties participate." 5 U.S.C. 571(6).

According to SPG Defendants, RFP No. 4 seeks documents that are privileged under the ADR Act. By way of background, the Batson allocation is an EPA-sponsored allocation by a neutral third-party mediator completed in the context of regulatory settlement proceedings. SPG Defendants argue that all related documents and communications of the parties who participated in it fall within the ADR Act's confidentiality protection, and therefore, fall outside permissible discovery. SPG Defendants rehash the same arguments made in the original Motion for Protective Order and present no new evidence or law that was overlooked by the Special Master.

OxyChem argues that RFP No. 4 is not seeking dispute resolution communications, but rather, discovery on why SPG Defendants did (or did not) decide to participate in the Batson allocation. OxyChem states that SPG Defendants are conflating the "dispute resolution communications" covered by the ADR Act (which are not sought by RFP No. 4) with documents

regarding a party's *decision to* participate in the Batson allocation, which are not covered by the ADR Act.

The parties disagree on the discovery being sought by OxyChem. This issue should have been resolved in a meet-and-confer.  OxyChem seeks information about the decision by any of SPG Defendants to participate in the Batson allocation.  OxyChem does not seek dispute resolution communications made during or in connection with the Batson allocation proceedings. This information does not fall within the definition of "dispute resolution communications," and the Special Master has previously ordered OxyChem to produce similar documents regarding its decision to not participate. Therefore, reconsideration of the RFP Decision regarding RFP No. 4 is denied.

To the extent SPG Defendants believe that the information sought in RFP No. 4 is within the definition of dispute resolution communications, SPG Defendants are free to object on the basis of any applicable privilege. If SPG Defendants object, it will be incumbent on SPG Defendants to satisfy the burden of demonstrating privilege, which the Special Master may review.

**d)  Clarifications of the Decision**

As an alternative to reconsideration, SPG Defendants seek clarification of the RFP Decision.  Specifically, SPG Defendants state that "the RFP Decision notes that OxyChem agreed to "limit[] the scope of RFP No. 1 to documents generated on or before May 29, 2012" but then state "the Special Master confirmed that SPG has no obligation to produce to OxyChem materials that OxyChem already has in its possession." SPG Defendants contend that OxyChem has already received all responsive documentation for RFP No. 1.   If OxyChem already has in its possession the documents it seeks from SPG Defendants, then SPG Defendants should not have the burden to reproduce such materials. SPG Defendants should not assume OxyChem has everything provided

to CPG while it was a member. The parties should meet and confer to clarify what OxyChem has and does not have.

SPG Defendants also seek clarification of the definition of "agreement" in the RFP Decision as used on pages 12 and 13 in reference to RFP No. 2. On September 11, 2019, OxyChem and SPG Defendants submitted a joint report to the Special Master on the status of the parties' efforts to resolve outstanding discovery issues ("September 2019 Joint Report"). The parties reported on the production of documents responsive to subpoenas served on The Intelligence Group and FTI. The parties agreed to produce documents in FTI's possession and withhold documents on the basis of the attorney-client privilege or work product protection. By way of clarification, the Special Master was referring to the agreement between the parties as reported in the September 2019 Joint Report. *RFP Decision* at 11 - 13. SPG Defendants attempt to parse the difference between documents in FTI's possession and communications from SPG Defendants to FTI. This argument is unavailing as there is no difference between the two. When SPG Defendants communicate with FTI, those communications become documents within FTI's possession and are subject to the September 2019 Joint Report. Documents outside of the September 2019 Joint Report are governed by the ESI Protocol.

Furthermore, SPG Defendants requested clarification regarding the definition of "applicable law" referenced on page 13 of the RFP Decision. The Special Master refers generally to all precedent and the Federal Rules of Civil Procedure as it relates to withholding documents on the grounds of privilege.

IV.     **<u>CONCLUSION</u>**

Based on the foregoing reasons and cited authority, the Motion is **DENIED IN PART**

(reconsideration) and **GRANTED IN PART** (clarification).


October 7, 2022                           *<u>/s/ Thomas P. Scrivo</u>*
                                          **THOMAS P. SCRIVO**
                                          **Special Master**

11