**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>                    Plaintiff,<br><br>        v.<br><br>21ST CENTURY FOX AMERICA, INC., *et al*.,<br><br>                    Defendants. | **Civil Action No. 18-11273 (MCA)(LDW)**<br><br><br>**SPECIAL MASTER DECISION GRANTING DEFENDANT CHARGEURS, INC.'S MOTION FOR A PROTECTIVE ORDER** |

## INTRODUCTION

This matter comes by way of a motion (the "Motion") filed by Defendant, Chargeurs, Inc. ("Chargeurs") on August 10, 2022, seeking a protective order and quashing Occidental Chemical Corporation's ("OxyChem") notice to take the deposition of Martin Doldan ("Deposition Notice") (ECF 2130).

OxyChem seeks to depose Mr. Doldan on whether Chargeurs is the alter ego and/or a mere instrumentality of its corporate parent, Chargeurs Textiles SAS. Chargeurs argues that: (1) the scope of the deposition is not reasonably calculated to lead to relevant or admissible evidence; (2) the prior bankruptcy proceeding was the proper forum for such discovery; and (3) the discovery is untimely because OxyChem can pursue this information in post-judgment discovery in the event of a judgment against Chargeurs.

On August 15, 2022, OxyChem filed opposition to the Motion (ECF 2132), claiming that Chargeurs has put its viability at issue, rendering the deposition relevant and timely. OxyChem further argues that the bankruptcy court was not the correct forum to seek this discovery.

On August 18, 2022, Chargeurs filed its reply.

1

On September 21, 2022, the Special Master conducted oral argument on the Motion.

The Motion is fully briefed and has been argued by the parties, and therefore, is ripe for decision.  For the reasons set forth herein, the Motion is granted.

## BACKGROUND

On February 18, 2019, Chargeurs filed a request for leave to file a motion to dismiss for lack of personal jurisdiction, or alternatively, for summary judgment (ECF 545). OxyChem filed opposition to Chargeurs' request on February 28, 2019 (ECF 554). The Magistrate Judge denied Chargeurs' request without prejudice so that the parties could conduct further discovery (ECF 566).

On March 14, 2019, Chargeurs filed a motion for reconsideration requesting that the Magistrate Judge set a schedule for that portion of its motion based on lack of personal jurisdiction (ECF 573). On March 20, 2019, OxyChem filed opposition to Chargeurs' motion for reconsideration (ECF 574).

On May 7, 2019, the Magistrate Judge entered a text order directing OxyChem and Chargeurs to meet and confer and either propose a schedule for limited discovery on personal jurisdiction or file a letter setting forth their respective positions on, or objections to, taking limited discovery on personal jurisdiction by May 17, 2019. Chargeurs filed a proposed scheduling order for jurisdictional discovery (including depositions) that was agreed on by the parties (ECF 603). On May 20, 2019, the Magistrate Judge entered the scheduling order (ECF 609). On August 28, 2019, OxyChem took the deposition of Mr. Doldan on Chargeurs' jurisdictional argument.

On December 16, 2019, Chargeurs filed a motion to dismiss for lack of personal jurisdiction, or alternatively, for summary judgment (ECF 908). OxyChem filed opposition and a cross-motion for summary judgment, arguing that Chargeurs expressly assumed its former

subsidiaries' liabilities with respect to its predecessor's operations and alleged pollution of the Passaic River (ECF 921). On July 10, 2020, the Court denied Chargeurs' motion and granted OxyChem's motion for summary judgment (ECF 1077). On July 24, 2020, Chargeurs filed a motion for reconsideration, which the Court denied on February 23, 2021 (ECF 1081 and 1168).

On July 12, 2021, Chargeurs informed the Court that it had filed a Chapter 7 bankruptcy petition (ECF 1265).  On September 28, 2021, the United States Bankruptcy Court for the District of Delaware entered an order closing Chargeurs' bankruptcy proceeding (ECF 1832). On October 28, 2021, Chargeurs informed the Court that it filed articles of dissolution with the Delaware Secretary of State (ECF 1884).

On November 16, 2021, Chargeurs requested permission to file a motion for summary judgment on whether it was a person for the purposes of CERCLA liability (ECF 1902). On November 23, 2021, OxyChem responded to Chargeurs' letter (ECF 1908). On November 24, 2021, Chargeurs replied to OxyChem's letter (ECF 1909). On December 6, 2021, the Magistrate Judge entered a text order that denied as premature Chargeurs' request for leave to file a motion for summary judgment.

On January 18, 2022, Chargeurs renewed its request to file a motion for summary judgment on whether it is a legal person under CERCLA following its bankruptcy and dissolution (ECF 1948). On January 27, 2022, OxyChem filed opposition to Chargeurs' renewed request (ECF 1957) and sought discovery regarding whether Chargeurs was an alter ego or mere instrumentality of its corporate parent, Chargeurs Textiles SAS. On January 28, 2022, Chargeurs filed a reply (ECF No. 1958), arguing that OxyChem's discovery request was speculative because there is no judgment against Chargeurs and irrelevant because there was no allegation in the pleadings regarding Chargeurs relationship with its parent. On February 9, 2022, the Magistrate Judge

entered a text order directing the parties to submit a joint letter detailing sought discovery (ECF 1977).

On March 21, 2022, the parties filed a joint letter in which OxyChem set forth its desire for discovery from Chargeurs' corporate parent, Chargeurs Textiles SAS (ECF 2010).

On May 17, 2022, the Magistrate Judge entered a text order granting Chargeurs' request for leave to file a motion for summary judgment (ECF 2058).

On June 28, 2022, OxyChem served Chargeurs with a deposition notice for Martin Doldan.

On July 5, 2022, Chargeurs filed a letter with the Magistrate Judge, seeking a conference (ECF 2093).

On August 5, 2022, the Magistrate Judge conducted a telephonic conference and entered a text order granting Chargeurs' leave to file a motion for summary judgment and denying a request to stay discovery. The Magistrate Judge directed that all discovery concerns are within the purview of the Special Master.

On August 10, 2022, Chargeurs filed the Motion. On August 15, 2022, OxyChem filed opposition, and on August 18, 2022, Chargeurs filed a reply. On September 21, 2022, the Special Master held oral argument on the Motion.

## **LEGAL STANDARD**

"The purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings and thus the boundaries of relevance under [*Federal Rule of Civil Procedure*] 26 depend on the context of each action." *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015).  To that end, *Rule* 26 provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

4

access to relevant information, the parties' resources, the importance
of the discovery in resolving the issues, and whether the burden or
expense of the proposed discovery outweighs its likely benefit.

[FED. R. CIV. P. 26(b)(1).]

"Information within this scope of discovery need not be admissible in evidence to be

discoverable." *Id.* Courts construe *Rule* 26 "broadly to encompass any matter that bears on, or that

reasonably could lead to other matters that could bear on, any issue that is or may be in the case."

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253, 265

(1978); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)

(citation omitted).

However, courts have the discretion to determine the scope of discovery. *In re Gerber*

*Probiotic Sales Practices Litig.*, 306 F.R.D. at 528.  A "court may issue a protective order to

regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*,

2015 U.S. Dist. LEXIS 159712, *5 (D.N.J. Nov. 24, 2015) (citations omitted).  *Federal Rule of*

*Civil Procedure* 26(c)(1) provides in pertinent part:

A party or any person from whom discovery is sought may move for
a protective order in the court where the action is pending . . . The
court may, for good cause, issue an order to protect a party or person
from annoyance, embarrassment, oppression, or undue burden or
expenses, including . . . (A) forbidding the disclosure or discovery;
. . . [or, *inter alia*, ] (D) forbidding inquiry into certain matters,  or
limiting the scope of disclosure or discovery to certain matters . . . .

[FED. R. CIV. P. 26(c) (1)(A)-(D).]

Indeed, the objective of *Federal Rule of Civil Procedure* 26(c) is "to guard against redundant

or disproportionate discovery by giving the court authority to reduce the amount of discovery that

may be directed to matters that are otherwise proper subjects of inquiry." *Notes of Advisory*

*Committee on 1983 amendments, Note to Subdivision (b); see also In re EthiCare Advisors, Inc.*,

5

2020 U.S. Dist. LEXIS 144816, at *6 (D.N.J. Aug. 12, 2020) (stating courts may limit discovery when information sought is not proportional to needs of case considering factors including burden and expense). To that end, the grounds for "limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c)." *Id.*

The *Rule* "places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To overcome the presumption, the party seeking the protective order must show good cause by demonstrating particular need for protection." *Cipollone*, 785 F.2d at 1121; *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone.*785 F.2d at 1121 (citations omitted). The "harm must be significant, not a mere trifle." *Id.* (citations omitted).

"Good cause" is defined as a "showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir. 2007) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1986)). Good cause is established based on "balancing a number of considerations." *Arnold*, 477 F.3d at 108 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)). The factors include but are not limited to: "(1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues

6

important to the public." *Arnold*, 477 F.3d at 108 (citations omitted). Issuance of a protective order will depend on whether the moving party has established good cause based on an analysis of pertinent factors.

## ANALYSIS

**A.**     **Discovery of Alter Ego or Mere Instrumentality Liability is Irrelevant to the Current Claims or Defenses in this Litigation.**

Chargeurs argues that the Deposition Notice should be quashed because alter ego/mere instrumentality liability does not relate to an allegation contained in the pleadings. OxyChem asserts that Chargeurs has brought up the issue of alter ego/mere instrumentality of its corporate parent. Based on a review of the submissions, discovery about whether Chargeurs is an alter ego/mere instrumentality of its corporate parent is irrelevant to the claims in this litigation. Moreover, Chargeurs has not put alter ego/mere instrumentality liability at issue.

*Rule* 26(b)(1) states "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to *any party's claim or defense* and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1) (emphasis added). Further, *Rule* 26(b)(1) also provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." While relevancy is broadly construed, "parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *See Kontonotas v. Hygrosol Pharm. Corp.*, 2009 U.S. Dist. LEXIS 52214, at *4 (E.D. Pa. Jun. 18, 2009). Put another way, discovery may not be used as a "fishing expedition." *See Wells Fargo Bank, N.A. v. Konover*, 2009 U.S. Dist. LEXIS 19112, at *13 (D. Conn. Mar. 4, 2009).

The cases cited by Chargeurs in support of its argument demonstrate that discovery is limited to the allegations pled. *See United States v. Mottolo*, 629 F. Supp. 56, 60 (D.N.H. 1984)

(holding discovery was prohibited where complaint makes no allegation of fraud); *Wells Fargo Bank, N.A,* 2009 U.S. Dist. LEXIS 19112, at \*38 (D. Conn. Mar. 4, 2009) (granting discovery of parties, and denying discovery of a non-party relating to piercing of corporate veil); *Daval Steel Prods., Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1360 (2d Cir. 1991) (holding financial transactions of prior years were relevant where plaintiffs were not only named in complaint, but also had judgments against them); *United States v. Alcan Aluminum, Inc.*, 1989 U.S. Dist. LEXIS 11592, at \*5 (E.D. Pa. Sep. 29, 1989) (holding relevancy is not construed beyond allegations in complaint and plaintiff's pursuit of alter ego theory was not relevant where not pled).

OxyChem argues that it did not plead the allegations because alter ego/mere instrumentality liability was discovered *after* the complaint was filed. OxyChem cites *Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine* for the proposition that discovery of financial transactions and movements of corporate assets were post-complaint, rather than pre-complaint. In *Daval*, the plaintiffs sued three companies, Ektrans, Ekco, and Ekinciler, for damages arising from the purchase of steel that was never delivered. *Daval Steel*, 951 F.2d at 1358. The district court awarded the plaintiffs summary judgment only against Ektrans, even though the court found that Ecko, Ektrans and Ekinciler were alter egos. *Id.* at 1360. The companies appealed. *Id.* The Second Circuit affirmed summary judgment against Ektrans but remanded the case for an interpretation of the district court's reference to alter ego liability of Ecko and Ekinciler. *Id.*

The case returned to the Second Circuit by Ecko and Ekinciler's appeal of a sanctions order for failure to comply with discovery. *Id.* at 1362. The court ruled against Ecko and Ekinciler explaining that it was "persuaded that information concerning financial transactions and movements of corporate assets subsequent to the transaction giving rise to this litigation was reasonably calculated to lead to the discovery of evidence admissible on the issue of alter ego

liability within the meaning of Rule 26(b)(1)." *Id.* at 1368. Further, the Court referenced that the plaintiff alleged alter ego liability in the complaint and Ekco's failure to comply with discovery precluded plaintiff's attempts to prove the elements of alter ego liability. *Id.*

Chargeurs distinguishes *Daval* by asserting that the financial transactions and movements related to the alter ego allegation were contained in the complaint, whereas here, the bankruptcy of Chargeurs does not relate to the sole allegation of successor liability against Chargeurs. Further, in *Daval*, Ecko, Ektrans and Ekinciler were all named in the suit, whereas here, Chargeurs Textiles SAS is not.

Similar arguments were made with respect to the decisions of *Wells Fargo Bank, N.A v. Konover*, and *Arwood Indem. Co. v. Metallo Gasket Co.*, 2011 WL 4950200 (D.N.J. Oct. 18, 2011). In *Wells Fargo Bank, N.A*, the special master granted a motion to compel discovery from a party regarding its relationship with a non-party alleged to be its alter ego. *Id.* at 5. The special master determined that the non-party discovery was sufficiently relevant to the pleaded alter ego liability. *Id.* OxyChem contends that *Wells Fargo Bank, N.A.* supports its position that discovery of a non-party is acceptable in relation to an alter ego/mere instrumentality argument. Chargeurs argues that *Wells Fargo Bank, N.A* stands for the proposition that the discovery was necessary to resolve the claims against the parties, whereas here, the deposition of Martin Doldan does not relate to an existing claim. Moreover, the alter ego/mere instrumentality claim was pleaded in *Wells Fargo Bank, N.A*, unlike here.

In *Arrowood*, the plaintiff filed a motion to compel seeking production of sale and/or purchase agreements, corporate financial information and accounting of assets and liabilities. *Arrowood Indem. Co.*, 2011 U.S. Dist. LEXIS at *2. The court noted that "discovery concerning an opposing party's assets is not ordinarily permitted...unless such discovery is relevant to the

9

merits of the pending claim...or in response to a defense." *Id.* at \*9 (internal citations omitted). The court allowed the discovery of assets of a party claimed to be an alter ego/mere instrumentality. OxyChem argues that *Arrowood* supports its argument that discovery is allowed where a company is on the verge of bankruptcy and will be unable to satisfy a judgment. Chargeurs distinguishes *Arrowood* arguing that discovery of assets was the only portion of discovery allowed, and Charguers has produced its financial records to OxyChem. Further, Chargeurs argues that alter ego/mere instrumentality was at issue in the case and appears to have been pled.

The cases *Daval*, *Wells Fargo Bank, N.A.*, and *Arrowood* do not convince the Special Master to deviate from the principle that discovery is limited to the allegations pled. OxyChem has failed to show that the discovery is relevant to the allegations. The Amended Complaint is against Chargeurs. No parent of Chargeurs is a party to this case, including Chargeurs Textiles SAS. OxyChem admitted during oral argument that the Complaint does not allege that Chargeurs acted as an alter ego or mere instrumentality of a parent corporation. (Oral Argument Transcript ("Tr.") 6:20-24). While there is an allegation in paragraph 238 of the Amended Complaint that Chargeurs is successor to United Piece Dye Works which operated two sites on the Passaic River, this allegation does not pertain to the alter ego/mere instrumentality liability issue. There is no allegation that Chargeurs' parent or subsidiary operated, expressed control over, or actively participated in the operations of a subsidiary or facility. For all these reasons, Chargeurs has met its burden that the Deposition Notice is not relevant to the claims and defenses in the litigation.

OxyChem does not adequately explain why Chargeurs' having no assets necessitates discovery of alter ego/mere instrumentality liability. OxyChem, at oral argument, stated that Chargeurs has "advertised to us[] that they have no assets." (Tr. 5:19-21). According to OxyChem, "if Chargeurs was merely an artifact of a business that closed 20 years ago, there would be no

reason for it to exist [. . .] The only reason for it to exist would be mere instrumentality." (Tr. 7:7-12).  OxyChem does not support such an argument with legal authority. Chargeurs agrees that it has no assets, but that fact does not mean that discovery into alter ego is justified.

Moreover, liability for a parent corporation attaches when (1) "a corporate parent actively participated in, and exercised control over, the operations of the facility itself," or (2) "the parent corporation actively participated in, and exercised control over, the operations of a subsidiary. . . [and] the corporate veil [is] pierced." *United States v. Bestfoods*, 524 U.S. 51, 55, 118 S. Ct. 1876, 1881 (1998). For piercing the corporate veil, courts consider the following factors:

> [a] failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Am. Bell, Inc. v. Fed'n of Tel. Workers*, 736 F.2d 879, 886 (3d Cir. 1984).

OxyChem does not allege that Chargeurs has committed any of the foregoing. While Chargeurs admits in its second motion for summary judgment that some transactions were made by Chargeurs through affiliates, those transactions were limited to payment of legal fees for the bankruptcy proceeding and this litigation. The transactions were made through affiliates only because Chargeurs had no bank account. When Chargeurs disclosed the transactions in the bankruptcy proceeding, OxyChem did not ask any questions of the witness in the 341 Meeting of the Creditors.

For all these reasons, Chargeurs has not put alter ego/mere instrumentality liability at issue by declaring its lack of assets.

### B.  OxyChem Failed to Obtain Discovery in a Relevant Forum.

OxyChem admits that in 2019, it had inklings that Chargeurs may have no assets (Tr. 12:21-22). Yet, that OxyChem took no action to pursue this concern for the last three years is telling. OxyChem had the opportunity to question a witness at a 341 Meeting of the Creditors, serve subpoenas on suspected parent corporations, and examine the entity in accordance with FED. R. BANKR. P. 2004.  OxyChem did not take any action until June 28, 2022, when it served a deposition notice for Martin Doldan.

OxyChem argues that the Chapter 7 bankruptcy of Chargeurs was not the proper forum for discovery as it "didn't get to file any discovery […] didn't get documents [… and] didn't get a deposition." (Tr. 9:9-11). However, *Rule* 2004 states, in relevant part:

> The examination of any entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.
>
> [FED. R. BANKR. P. 2004(b)]

While OxyChem asserts that there is a limitation of scope to a bankruptcy discovery process, bankruptcy courts have found discovery under FED. R. BANKR. P. 2004 is far broader than discovery under *Federal Rules of Civil Procedure*. *See In re VOX II, LLC*, 2008 Bankr. LEXIS 556 (Bankr. D. Md. Mar. 4, 2008). Further, alter ego liability claims are to be addressed as property of the bankruptcy estate and are subject to an automatic stay. *See In re Charles Edwards Enterprises, Inc.* 344 B.R. 788 (Bankr. N.D.W. Va. 2006). OxyChem made no effort in the bankruptcy proceeding to obtain this discovery information even though it was a proper forum.

### C.    OxyChem is Not Prejudiced by the Protective Order.

In the event it obtains a judgment against Chargeurs, OxyChem has the option to pursue

12

post-judgment discovery on the issue of alter-ego liability. *Rule* 69(a)(2) states:

> In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

Further, Fed. R. Civ. Pro. 69(a), states:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

OxyChem would have the right to seek this information in execution of a judgment. *See Daval Steel*, 951 F.2d at 1360. For now, Chargeurs is protected from OxyChem's request for discovery on whether Chargeurs is an alter ego/mere instrumentality of its parent company, Chargeurs Textiles SAS.

**CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED**, and the Deposition Notice is hereby quashed.

Dated: October 7, 2022             */s/ Thomas P. Scrivo*
                                    **THOMAS P. SCRIVO**
                                    **Special Master**

13
