John J. McDermott, Esq.
(jmcdermott@archerlaw.com)
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08034
Tel. (856) 795-2121

GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel. (713) 650-8805
By: Kathy D. Patrick, Esq.
    (kpatrick@gibbsbruns.com)

*Attorneys for Plaintiff Occidental Chemical Corporation*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# NEWARK VICINAGE

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION | ) Hon. Madeline Cox Arleo |
| | ) Hon. Leda Dunn Wettre |
| Plaintiff, | ) |
| | ) Civil Action No. 2:18-cv-11273 |
| v. | ) |
| | ) **OCCIDENTAL CHEMICAL** |
| 21ST CENTURY FOX AMERICA, INC., *et al.*; | ) **CORPORATION'S OPPOSITION** |
| | ) **TO THE SPG DEFENDANTS'** |
| Defendants and Third-Party Plaintiffs, | ) **APPEAL OF THE SPECIAL** |
| | ) **MASTER'S DENIAL OF MOTION** |
| v. | ) **FOR PROTECTIVE ORDER AND** |
| | ) **DENIAL OF MOTION FOR** |
| PASSAIC VALLEY SEWERAGE | ) **RECONSIDERATION OF SAME** |
| COMMISSION, *et al.*, | ) |
| | ) |
| Third-Party Defendants. | ) |
| | ) |

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**
INTRODUCTION ...............................................................................................................1
FACTUAL AND PROCEDURAL BACKGROUND......................................................................2
STANDARD OF REVIEW .....................................................................................................5
ARGUMENT.......................................................................................................................6
   A.  The Special Master Did Not Err by Holding the SPG's Categorical Privilege Claims Are Not Good Cause for Entry of a Protective Order. ............................................6
      1.  *The Special Master Correctly Held That the SPG Defendants Must Substantiate Their Privilege Claims.* ......................................................................6
      2.  *The Special Master Was Within His Discretion to Interpret the ESI Protocol as Not Providing the SPG an Exception from Substantiating Its Privilege Claims.*..............................................................................................8
   B.  The Special Master's Application of the Law of Privilege Is Consistent with the Law. ........................................................................................................................8
      1.  *The Law Requires the SPG to Substantiate Its Privilege Claims.* ..........................9
      2.  *The SPG Mischaracterizes the Special Master's Rulings to Create a False Impression of Error.*..............................................................................................10
   C.  The Special Master's Clarification of His Decision Regarding RFPs 1 and 2 Does Not Conflict with His Discretionary Interpretation of the ESI Protocol ...........................12
CONCLUSION...................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Banner Life Ins. Co.*,
    340 F.R.D. 232 (D.N.J. 2022) ................................................................................................. 5

*Altana Pharma AG v. Teva Pharms. USA*, Inc., No. 04-2355, 2010 WL 451168
    (D.N.J. Feb. 5, 2010) ............................................................................................................. 5

*Cardona v. Gen. Motors Corp.*,
    942 F. Supp. 968 (D.N.J. 1996) ............................................................................................. 5

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan*,
    183 F.R.D. 135 (D.N.J. 1998) ............................................................................................. 11

*Glenmede Trust Co. v. Thompson*,
    56 F.3d 476 (3d Cir. 1995) .................................................................................................... 6

*In re Grand Jury Empaneled Feb. 14, 1978*,
    603 F.2d 469 (3d Cir. 1979) .................................................................................................. 8

*Katz v. AT&T Corp.*,
    191 F.R.D. 433 (E.D. Pa. 2000) ................................................................................. 8, 9, 13

*La. Mun. Emp. Ret. Sys. v. Sealed Air Corp.*,
    253 F.R.D. 300 (D.N.J. 2008) ............................................................................................... 7

*Marks v. Struble*,
    347 F. Supp. 2d 136 (D.N.J. 2004) ....................................................................................... 5

*In re Mercedes-Benz Emissions Litig.*,
    No. 16-881, 2020 WL 487288 (D.N.J. Jan. 30, 2020) .......................................................... 5

*United States v. Stepney*,
    246 F. Supp. 2d 1069 (N.D. Cal. 2003) ................................................................................ 9

*In re Sunrise Secs. Litig.*,
    130 F.R.D. 560 (E.D. Pa. 1989) .......................................................................................... 10

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007) ............................................................................................ 9, 10

*Va. St. Fidelco, L.L.C. v. Orbus Prods. Corp.*,
    No. 11-2057, 2018 WL 1399304 (D.N.J. Mar. 20, 2018) .................................................... 5

**Other Authorities**

Federal Rule of Civil Procedure 26 ...............................................................................................7

Federal Rule of Civil Procedure 26(c)(1) .....................................................................................5

Local Civil Rule 72.1....................................................................................................................5

Plaintiff Occidental Chemical Corporation ("OxyChem") respectfully submits this brief in opposition to the SPG Defendants' Appeal of the Special Master's Denial of Motion for Protective Order and Denial of Motion for Reconsideration of Same (Dkt. 2204).

## **INTRODUCTION**

The Special Master's June 13, 2022 (Dkt. 2081)[1] and October 11, 2022 (Dkt. 2189)[2] Orders denying the SPG's motion for protection from OxyChem's requests for production require nothing more than compliance with the Federal Rules: if those Defendants have documents responsive to OxyChem's discovery requests, they must produce the documents to OxyChem and—if any are withheld—provide a log substantiating the privilege claimed.

The SPG's claim that these rulings are "clearly erroneous and contrary to law" is as implausible as it sounds. Dkt. 2204-1. The Special Master correctly ruled that basic participation in document discovery does not warrant a protective order and was well within his discretion in declining to reconsider that ruling. The SPG's appeal—its *third* attempt to avoid complying with document requests served more than a year ago—amounts to mere disagreement with the Special Master's Orders. Accordingly, the outcome should be the same: the Court should deny the SPG's appeal and order its member Defendants to comply with both the June 13 Decision and the October 11 Decision by producing documents responsive to OxyChem's Second Requests for Production Nos. 1, 2, and 6, and provide a log for any material withheld as privileged.

---

[1] Special Master Order Denying SPG Defendants' Motion for Protective Order and Granting Plaintiff's Cross-Motion to Compel.

[2] Special Master Order Denying in Part SPG Defendants' Motion for Reconsideration and Clarification of the Special Master's June 10 Decision Denying the Motion for a Protective Order and Granting the Motion to Compel.

1

## FACTUAL AND PROCEDURAL BACKGROUND

OxyChem's Second Requests for Production served on the SPG Defendants included requests for production of:

- Documents and communications among members of the "Cooperating Parties Group" ("CPG") relating to an amendment to its joint defense agreement which resulted in OxyChem's forced departure from the CPG on May 29, 2012. *See* RFP 1 ("[a]ll Documents regarding the Fourth Amendment to the [Amended and Restated Organization Agreement, or 'AROA'], including Communications between You and any Person regarding the Fourth Amendment to the [AROA]");

- Communications between CPG members and FTI, a CPG consultant that was retained while OxyChem was a member of the CPG. See RFP 2 ("[a]ll Communications with FTI regarding the Diamond Alkali Superfund Site, including Communications regarding the R[iver] M[ile] 10.9 Recommendation"); and

- Documents regarding the CPG's decision to terminate in 2015 a process to allocate response costs. *See* RFP 6 ("[a]ll Documents in the possession, custody, or control of You or the CPG regarding the decision to terminate or cease the 2015 Allocation Process. This Request includes Communications with any Person regarding the decision to terminate or cease the 2015 Allocation Process"). Dkt. 1959-1 at 5, 7, 12.

The SPG objected to these RFPs on privilege and confidentiality grounds, asserting that responsive documents were shielded from discovery by the CPG's joint defense agreement, called the Amended and Restated Organization Agreement ("AROA") and executed in 2007 to memorialize a common interest among its members. *Id.* The SPG also argued the Joint Protocol for Production of Documents and Electronically-Stored Information (Dkt. 544) ("ESI Protocol") obviated its obligation to search for or produce any responsive documents. *See, e.g.*, Dkt. 1959-3 at 3-4.

The SPG moved for protection before the Special Master regarding RFPs 1, 2, and 6[3] on January 28, 2022. Dkt. 1959. The SPG did not challenge the relevance or discoverability of the

---

[3] The SPG also moved for protection regarding RFP 4 ("If You participated in the Batson Process, all Documents regarding Your Decision to participate in the Batson Process."). The Special Master denied that motion as well, but the SPG has not appealed that portion of the Special Master's orders. *See* Dkt. 2204-1.

documents OxyChem requested, but simply argued that these RFPs sought "impermissibly … privileged material or otherwise impose[d] an undue burden." *Id.* at 1. OxyChem opposed the SPG's motion and filed a countermotion to compel those SPG Defendants that are current or former members of the CPG to produce materials responsive to the challenged RFPs. Dkt. 1965.

The Special Master granted OxyChem's motion to compel and denied the SPG's motion for protection on June 13, 2022. Dkts. 2080 ("June 13 Decision"), 2081. The Special Master found that the SPG failed to demonstrate good cause to warrant a protective order over any of the challenged RFPs, and noted that the SPG had failed to produce a privilege log or any other information corroborating their claims of privilege over the challenged documents. Dkt. 2080 at 19. The Special Master accordingly rejected the SPG's "vague and conclusory assertions of privilege" and ordered the SPG Defendants to produce responsive documents and a privilege log. *Id.* at 19, 22.

The SPG moved for reconsideration and/or clarification of the Special Master's Order on July 27, 2022. Dkt. 2091-1. The SPG argued the Special Master's June 13 Decision held the SPG to a "double good-cause burden" that required the SPG to establish both an applicable privilege and another ground for "good cause" to grant the motion for protection. *Id.* at 7. The SPG also argued the June 13 Decision conflicted with the previously entered ESI Protocol that excused parties in the litigation from searching for, producing, and logging documents that included joint defense communications pursuant to a joint defense agreement. Dkt. 2091-1 at 4 (citing Dkt. 544 § 4(c) at 11). Alternatively, the SPG asked for clarification of the June 13 Decision on two issues: (1) whether SPG Defendants were required to produce documents distributed to the CPG in response to RFP 1; and (2) the definition of the terms "agreement" and "applicable law" as pertaining to potential limitations on RFP 2. *Id.* at 13-14; *see also* Dkt. 1288 at 1-2.

The Special Master denied the SPG's motion for reconsideration on October 11, 2022. Dkts. 2188 ("October 11 Decision"), 2189. The Special Master rejected the SPG's argument that it was being held to a "double" good-cause standard and reiterated that the SPG needed to provide "sufficient detail to support a claim of privilege or confidentiality," which it did not do, and that without which the SPG could not establish good cause for a protective order. Dkt. 2188 at 4-6. The Special Master further found no conflict between the ESI Protocol and his Order because OxyChem was a party to the CPG until May 29, 2012, and arguments about joint-defense privilege prior to this date are moot. *Id.* at 6-7.

The Special Master granted the SPG's request for clarification and explained that the SPG would not need to produce any documents responsive to RFP 1 generated on or before May 29, 2012 that OxyChem already has in its possession, but that "SPG Defendants should not assume OxyChem has everything provided to CPG while it was a member." *Id.* at 9-10. The Special Master also clarified that the "agreement" the June 13 Decision referred to with respect to RFP 2 was a joint report OxyChem and the SPG submitted to the Special Master on September 11, 2019 (Dkt. 760) ("September 2019 Joint Report") in which the parties agreed to produce documents in FTI's possession except for any withheld for attorney-client privilege or work-product protection. Dkt. 2188 at 10. The Special Master noted that the SPG's effort to differentiate documents in FTI's possession from communications from the SPG to FTI was "unavailing as there is no difference between the two. When SPG Defendants communicate with FTI, those communications become documents within FTI's possession and are subject to the September 2019 Joint Report." *Id.*

Despite losing twice before the Special Master, the SPG filed this appeal on October 25, 2022. Dkt. 2204-1 ("Appeal").

4

**STANDARD OF REVIEW**

The Special Master's authority is "coextensive" with that "of a Magistrate Judge in the District of New Jersey pursuant to Local Civil Rule 72.1." Dkt. 633. A district court will only reverse a Special Master's finding if it is "clearly erroneous or contrary to law," and the party filing the notice of appeal bears the burden of so demonstrating. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). "Where an appeal seeks review of a matter within the exclusive purview of the Magistrate Judge, such as a discovery dispute, the 'abuse of discretion standard' must be applied." *Va. St. Fidelco, L.L.C. v. Orbus Prods. Corp.*, No. 11-2057, 2018 WL 1399304, at *2 (D.N.J. Mar. 20, 2018); *Altana Pharma AG v. Teva Pharms. USA*, Inc., No. 04-2355, 2010 WL 451168, at *1-2 (D.N.J. Feb. 5, 2010) (same). "As a practical matter, abuse of discretion review incorporates clear-error review of factual issues and plenary review of legal questions." *In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2020 WL 487288, at *5 (D.N.J. Jan. 30, 2020) (alterations and internal quotations omitted).

A ruling by the Special Master is "clearly erroneous when, although there is evidence to support it, the reviewing Court is left with a definite and firm conviction that a mistake has been made." *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996) (internal marks and citations omitted). "A ruling is 'contrary to law' when the [Special Master] has misinterpreted or misapplied the applicable law." *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 236 (D.N.J. 2022). "The party filing the notice of appeal bears the burden of demonstrating that the [Special Master]'s decision was clearly erroneous or contrary to law." *Cardona*, 942 F. Supp. at 971. "Unless that burden is met, the [Special Master]'s findings should not be rejected even if the district court could have decided the matter differently." *Allen*, 340 F.R.D. at 237.

Federal Rule of Civil Procedure 26(c)(1) governs a party's ability to obtain a protective order from a federal court. "The party seeking the protective order has the burden of demonstrating

5

'good cause' by showing a particular need." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). "'Good cause' is shown when it is specifically established that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples will not suffice." *Id.* at 483 (internal marks and citation omitted).

## ARGUMENT

### A. The Special Master Did Not Err by Holding the SPG's Categorical Privilege Claims Are Not Good Cause for Entry of a Protective Order.

The Special Master correctly exercised his discretion in determining that the SPG lacked any basis—in the ESI Protocol or otherwise—to "opt out" of document discovery based on bare, categorical assertions of privilege. Rather, the SPG must either produce the responsive documents at issue, or substantiate in a privilege log the basis for withholding any such documents. These are exactly the case management and discovery issues the Special Master was appointed to address, and there is no basis to claim the Special Master abused his discretion in making those rulings.

#### 1. *The Special Master Correctly Held That the SPG Defendants Must Substantiate Their Privilege Claims.*

In the June 13 Decision, the Special Master's ruling was clear: the "SPG Defendants failed to demonstrate good cause for entry of a protective order[.]" Dkt. 2080 at 22. The Special Master's October 11 Decision was equally clear: the SPG failed to carry their burden of establishing that "certain documents were categorically privileged" such that a protective order could be entered allowing the Defendants in possession of those documents to simply decline to produce or serve a privilege log for such documents. Dkt. 2188 at 5. In reaching those conclusions, the Special Master twice considered the SPG's argument that their requested protective order was warranted because the documents responsive to each of OxyChem's RFPs are categorically protected from disclosure by one or more privileges.

As to each of the RFPs at issue, the Special Master expressly held that the SPG did not establish, as the SPG had argued in its motion, that its member Defendants are entitled to withhold all responsive documents based on claims of categorical assertions of privilege:

- RFP No. 1: "A privilege log, however, is necessary for the Special Master and OxyChem to confirm SPG Defendants' assertion that these materials are privileged and, thus, can be withheld in discovery. Similarly, SPG Defendants have not provided with sufficient detail to enable the Special Master to understand the basis for a claim of privilege or confidentiality sufficient to completely withhold documents." Dkt. 2080 at 10.

- RFP No. 2: "SPG Defendants have not produced any privilege log that would identify the information and state the basis for withholding documents as required by Rule 26. Similarly, SPG Defendants have not provided any other notice with sufficient detail to enable OxyChem and the Special Master to understand the basis for the claim of privilege." *Id.* at 12.

- RFP No. 6: "Based on the submissions presented, and the facts as they are presently known, SPG Defendants have neither presented sufficient information to determine whether documents responsive to RFP No. 6 are in fact subject to any privilege or protection, and whether good cause exists to warrant the issuance of a protective order. The Special Master cannot determine based on conclusory and non-descriptive statements about the general character of categories of documents whether a document, if any exist, is privileged or subject to protection." *Id.* at 18.

Given the SPG's complete lack of any basis to substantiate a claim of privilege as to any particular document, the Special Master was correct in rejecting the SPG's argument that broad, "categorical" privilege claims constituted good cause to enter a blanket protective order for all documents responsive to these requests. *Id.* at 19 ("The burden is on the moving party to demonstrate that a particular privilege attaches to warrant the entry of a protective order. . . . SPG Defendants did not do so here.").

The Special Master's ruling that a party who seeks to withhold documents on the ground of privilege bears the burden to establish the privilege is not contrary to the law of privilege. It *is* the law. *See, e.g., La. Mun. Emp. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008) ("The party asserting the attorney-client privilege bears the burden to show that it applies.") (citing

7

*In re Grand Jury Empaneled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979)). This Court should affirm the Special Master's orders denying the SPG's motion for protection based on unsupported, non-specific, categorical assertions of privilege.

> 2. *The Special Master Was Within His Discretion to Interpret the ESI Protocol as Not Providing the SPG an Exception from Substantiating Its Privilege Claims.*

For the third time, the SPG attempts to use the ESI Protocol as a shield to protect it from producing (or logging as privileged) purported joint-defense protected documents that the Special Master has twice determined do not qualify for protection based on the evidence the SPG has presented. *See* Appeal at 6-7; *see also* Dkt. 2080 at 21 ("RFPs are not outside the ESI Protocol. … SPG Defendants assert that the requested information is covered by a joint defense agreement and/or contain communications related to a joint defense agreement and, thus, they do not need to identify, review, and produce such materials. Such assertions, alone, are not enough."); Dkt. 2188 at 6 ("The ESI Protocol does not overrule laws of privilege."). The Special Master was well within his discretion to analyze the ESI Protocol in conjunction with the law of privilege and determine that the SPG's bare claim of "categorical" privilege was insufficient. His orders should be affirmed.

**B.   The Special Master's Application of the Law of Privilege Is Consistent with the Law.**

The Special Master's ruling concerning the applicability of joint-defense privilege to the documents at issue correctly applies the law of privilege even when reviewed for clear error. *See Katz v. AT&T Corp.*, 191 F.R.D. 433, 436 (E.D. Pa. 2000) ("[T[he applicability of the attorney-client privilege is a factual question and the scope of a privilege is a question of law. Thus, the findings of the Special Master with respect to the applicability of the common interest doctrine are reviewed under a clearly erroneous standard."). The Special Master correctly recognized that the SPG mischaracterized the ESI Protocol as categorically exempting from discovery the documents

responsive to OxyChem's requests without establishing an underlying basis of privilege for withholding the documents. *See* Dkt. 2188 at 6-7 ("In accordance with *Katz ...*, a party is required to demonstrate an attorney-client privilege to substantiate a claim of joint-client privilege. If there is no underlying attorney-client privilege, the document is not privileged.").

### 1. The Law Requires the SPG to Substantiate Its Privilege Claims.

A communication is not a "joint defense communication" without a valid, underlying attorney-client privilege attaching to the communication at issue. *See Katz*, 191 F.R.D. at 437. This is true no matter what the CPG Agreement says about the intention of the parties to treat certain documents as "confidential" or as related to the joint defense:

> Joint defense agreements are not contracts which create whatever rights the signatories choose, but are written notice of defendants' invocation of privileges set forth in common law. *Joint defense agreements therefore cannot extend greater protections than the legal privileges on which they rest*. A joint defense agreement which purports to do so does not accurately set forth the protections which would be given to defendants who sign.

*United States v. Stepney*, 246 F. Supp. 2d 1069, 1080-81 (N.D. Cal. 2003) (emphasis added). The acronym "CPG" and the phrase "joint defense" are not magic words allowing the SPG to shield all relevant information from discovery based solely on the SPG's *ipse dixit*. The law (and the ESI Protocol) imposes a burden on each SPG Defendant to establish an attorney-client privilege to substantiate any claim of a joint interest privilege. *Katz*, 191 F.R.D. at 437; *see also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 362 (3d Cir. 2007) ("[C]lients of the same lawyer who share a common interest are not necessarily co-clients. Whether individuals have jointly consulted a lawyer or have merely entered concurrent but separate representations is determined by the understanding of the parties and the lawyer in light of the circumstances."); *id.* at 364 ("Thus, the community of interest privilege allows attorneys representing different *clients* with similar legal interests to share information without having to disclose it to others.… [T]o be eligible for

9

continued protection, the communication must be shared with the attorney of the member of the community of interest.") (emphasis original).

Most importantly, the Special Master correctly held that the SPG Defendants cannot withhold "joint-defense communications" from OxyChem when those communications occurred *while OxyChem was a member* of the joint defense group. "When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable." *Teleglobe*, 493 F.3d at 366; *see also In re Sunrise Secs. Litig.*, 130 F.R.D. 560, 573 (E.D. Pa. 1989) (party may not later withhold joint defense communications "where one of the joint defendants becomes an adverse party in a litigation"). OxyChem was a member of the CPG until May 29, 2012. Communications prior to that date were either (a) made for the purpose of furthering the common interest memorialized in the CPG Agreement, (b) were made to further some other common interest that has not been asserted, or (c) were made for some other, non-privileged purpose. In any case, the documents cannot be withheld from OxyChem unless the SPG has some other basis on which they claim they are privileged. But the SPG has not presented any specific evidence supporting its categorical privilege claims. Accordingly, the Special Master's holding that the SPG must articulate with specificity—and a log—facts showing the existence of any claimed privilege over the documents at issue is consistent with the law *and* the ESI Protocol, and should be affirmed. *See* Dkt. 2080 at 21-22. ("If SPG Defendants believe that documents responsive to this RFP are subject to joint-defense communications, they should have provided the required details about the agreement, the parties, and clearly show that the communications are indeed privileged communications.").

        2. *The SPG Mischaracterizes the Special Master's Rulings to Create a False Impression of Error.*

The SPG argues that the Special Master failed to address CPG documents dated on or after May 29, 2012 in his October 11 Decision and only clarified that "SPG Defendants must produce responsive documents prior to May 29, 2012," the date that OxyChem withdrew from the CPG. Appeal at 12 (quoting October 11 Decision at 7). This issue has already been resolved: as noted in its brief in opposition to the SPG's Motion for Reconsideration, in response to the SPG Defendants' objections OxyChem narrowed its request to seek only documents prior to May 29, 2012:

> OxyChem seeks discovery regarding the other CPG members' breach of the 2007 CPG Agreement and their breach of the covenant of good faith and fair dealing by unilaterally adopting a purported amendment to the CPG Agreement *before* OxyChem ceased to be a member of the CPG. Also relevant to this breach claim are the CPG members' dealings with FTI, the shared consultant as to all CPG members—including OxyChem—relating to the RM 10.9 allocation prior to May 29, 2012.

Dkt. 2109-1 at 9; *see also* Dkt. 1959-5 at 1 ("In response to the SPG's objection that Request 1 was unbounded by time, OxyChem agreed to limit the scope of that request to documents generated on or before May 29, 2012."). The Special Master did not need to address the documents dated on or after May 29, 2012 in his October 11 Order because he correctly recognized that those documents were *no longer at issue* in OxyChem's requests.

To the extent the SPG's disagreement with the Special Master's order concerns the potential impact of producing these documents to parties besides OxyChem (Appeal at 11-12), that has no impact on their obligation to produce the documents at issue *to OxyChem*.[4] Regardless of the merit to the SPG's argument that CPG documents produced to third parties would waive their

---

[4] In addition, that argument was not raised before the Special Master and is not properly before this Court on appeal. *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 135, 142 (D.N.J. 1998) ("[P]arties who litigate before a Magistrate Judge must raise any and all arguments before the Magistrate Judge, or waive their right to assert the arguments before the district court on appeal.").

11

joint-client privilege, that issue is not before the Court today. This Court should affirm the Special Master's decision and direct the SPG to comply with the Special Master's Order to produce *to OxyChem* any relevant CPG documents dated on or before May 29, 2012.

### C. The Special Master's Clarification of His Decision Regarding RFPs 1 and 2 Does Not Conflict with His Discretionary Interpretation of the ESI Protocol

The Special Master's October 11 Decision properly clarified his June 13 Decision with respect to the issues the SPG raised regarding the scope of production for RFPs 1 and 2. The request for clarification as to RFP 1 has already been discussed: the SPG must produce responsive documents dated on or before May 29, 2012, but does not need to reproduce any material that OxyChem has in its possession. *See supra* Section A.3.

The SPG argues that the Special Master's clarification of the June 13 Decision with respect to RFP 2 conflicts with the ESI Protocol governing document production. Specifically, the SPG contends the Special Master erred in referring to a September 2019 Joint Report submitted by the parties to illustrate the fallacy of the SPG's attempt to distinguish consultant communications from communications *to* a consultant. Appeal at 14. On appeal, the SPG continues to insist that the existence of the ESI Protocol means that it does not need to produce a single document from the CPG to FTI (or vice versa) regarding FTI's River Mile 10.9 Recommendation despite the fact that, by definition, any communication from the SPG to FTI becomes a document within FTI's possession subject to production if it is not otherwise shielded by attorney-client privilege or work product protection.

Contrary to the SPG's assertion, the Special Master did not inappropriately "apply" the parties' September 2019 Joint Report. Rather, the Special Master acknowledged that the documents in question were already subject to production as part of the September 2019 Joint Report and therefore had no basis for being shielded by the privilege protections underlying the

12

ESI Protocol. *Katz*, 191 F.R.D. at 437 (joint-defense privilege "does not create an independent privilege, but depends upon a proper showing of the other elements of the attorney-client privilege").

The SPG's argument defies common sense and is a fig leaf for its bare refusal to comply with its discovery responsibilities and respond to document requests served over a year ago. This Court should hold the SPG to its obligations to produce to OxyChem non-privileged documents responsive to RFPs 1 and 2 and deny the SPG's Appeal.

## CONCLUSION

For the above reasons, OxyChem respectfully requests the Court deny the SPG's Appeal and affirm the Special Master's June 13, 2022 Order (Dkt. 2080) denying the SPG's motion for protective order, and the Special Master's October 11, 2022 Order (Dkt. 2188) denying the SPG's motion for reconsideration of the June 13 Order.

Dated: November 7, 2022         Respectfully submitted,

/s/ *John J. McDermott*
John J. McDermott, Esq.
(jmcdermott@archerlaw.com)
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08034
Tel. (856) 795-2121

GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel. (713) 650-8805
By:   Kathy D. Patrick, Esq.
      (kpatrick@gibbsbruns.com)

*Attorneys for Plaintiff Occidental Chemical Corporation*

13

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 7, 2022, a copy of Occidental Chemical Corporation's Brief in Opposition to the SPG's Appeal of the Special Master's Denial of Motion for Protective Order and Denial of Motion for Reconsideration of Same was served on all parties via ECF.

Dated:  November 7, 2022

                                          By:   /s/ *John J. McDermott*
                                                  John J. McDermott, Esq.