**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>                     Plaintiff,<br><br>   v.<br><br>21ST CENTURY FOX AMERICA, INC., *et al.*,<br><br>                     Defendants. | Civil Action No. 18-11273(MCA)(LDW)<br><br>**SPECIAL MASTER DECISION DENYING PLAINTIFF OCCIDENTAL CHEMICAL CORPORATION'S MOTION TO COMPEL AND GRANTING DEFENDANT ASHLAND LLC'S CROSS-MOTION** |

## INTRODUCTION

This matter comes by way of a motion (the "Motion") filed by Plaintiff, Occidental Chemical Corporation ("OxyChem"), on September 9, 2022, against Defendant, Ashland LLC ("Ashland"), seeking to compel the production of unvalidated sampling data related to Ashland's former facility in Kearny, New Jersey, known as the Drew Chemical Site (ECF No. 2149).

On September 14, 2022, Ashland filed opposition and cross-moved for a protective order contending that documents relating to the unvalidated sampling data are irrelevant and production is precluded by the Joint Sampling Protocol (ECF 585) because validated data is available from the same sampling event (ECF 2157) ("Cross Motion").

On September 19, 2022, OxyChem filed opposition to the Cross Motion. The parties notified the Special Master of a dispute regarding OxyChem's opposition at the monthly status conference on September 21, 2022. The parties conferred, and OxyChem consented to a supplemental filing by Ashland, which was submitted on September 26, 2022.

On November 17, 2022, the Special Master conducted oral argument on the Motion.

1

The Motion is fully briefed, and the parties have been heard. Therefore, the Motion is ripe for a decision by the Special Master. For the reasons set forth herein, the Motion is denied and the Cross Motion is granted.

**STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY**

**A.    The Joint Sampling Protocol**

On March 25, 2019, Magistrate Judge Dickson entered the Joint Sampling Protocol, which is an agreement reached by the parties governing discovery of sample collection and handling, analytical testing, and geophysical investigations of environmental media. The Joint Sampling Protocol applies to all sampling performed "after the filing of the litigation for purposes of proving or defending a claim in the litigation." *See* ECF 585, ¶ 1.

Generally, the Joint Sampling Protocol requires that a "Requesting Party," which is defined as a party seeking to sample a site, provide notice to an Upland Site property owner, referred to as a "Recipient," notice of intent to obtain a sample. *See* ECF 585, ¶ 6. Thereafter, the Joint Sampling Protocol provides for specific procedures for the procurement of a sample, including creation of a Workplan. *Id.* at ¶¶ 7-16. Five days prior to the agreed date to implement the Workplan, interested parties are required to provide notice if they want a split sample. The Joint Sampling Protocol provides that interested parties have a right to obtain a split sample to "verify the Results obtained from analysis of Samples taken by the Requesting Party pursuant to the Workplan." *Id.* at ¶ 18. Upon the taking of the sample, the recipient of a split sample is "solely responsible for preparation and handling" of the sample, for arranging "timely laboratory analysis of the split samples (if it so chooses)[,]" and for "costs for [s]ample analysis and reporting." *Id.* at ¶ 18.

The Joint Sampling Protocol then imposes different obligations on Requesting Parties and other interested parties.  Within 30 days of receipt, the Requesting Party shall provide copies of all

2

field notes, chain of custody documents, and analyzed and validated results ("Results") to all parties to the litigation. *See* ECF 585, ¶ 19. If the Results are validated, only copies of the validated Results will be produced by the Requesting Party. However, if no validation occurs or validation otherwise fails, then the unvalidated results shall be produced by the Requesting Party. *Id.*

Unlike a Requesting Party, any other party receiving a split sample has no obligation to analyze the split sample or validate its split sample results. Any non-requesting party that receives a split sample and has them analyzed shall, within 30 days of receiving the validated Results from the Requesting Party, provide all such Results, which is defined as analyzed and validated results (*id.* at ¶ 7), to the Requesting Party and all other parties. *Id.* at ¶ 19.

**B.     Sampling of the Drew Chemical Site**

On August 8, 2020, OxyChem collected sediment samples from the Drew Chemical Site and provided split samples to Ashland's consultant, EHS Support ("EHS"). OxyChem's consultants validated its collected samples. Ashland had the sample analyzed, but did not validate its results.

OxyChem sent a letter to Ashland on January 28, 2022, asserting that Ashland's response to OxyChem's Requests for Production referenced a lab analysis of the split samples, but it had not been produced. On February 9, 2022, Ashland responded confirming that it had caused a laboratory to analyze the split samples, but declined to produce any related documents because: (1) it did not have any documents; and (2) the Joint Sampling Protocol did not require Ashland to produce unvalidated split sample data. Specifically, Ashland stated in its response that it "has not withheld any documents relating to that sampling" and it already "produced the only document that is within its custodian's possession, custody or control, related to the analyses of these split samples." ECF 2149-4. Moreover, Ashland stated that "even if Ashland was in possession of lab

3

reports[,]" Ashland believed that it was "under no obligation to produce such material as the Protocol only requires production of validated data for split sampling." *Id.*

On March 14, and March 24, 2022, OxyChem sent letters requesting that Ashland provide the unvalidated sampling data and related documents or meet-and-confer to resolve the dispute. The parties met and conferred on April 1, 2022, but did not reach an agreement. OxyChem filed a letter on May 13, 2022, notifying the Special Master that the parties disputed whether production of unvalidated sampling data was required under the Joint Sampling Protocol and the parties may require the assistance of the Special Master to resolve the dispute.

On August 24, 2022, OxyChem sent a letter to Ashland requesting that Ashland produce unvalidated sampling data and related documentation showing detections of 2,3,7,8-TCDD on the Drew Chemical Site. On August 31, 2022, Ashland responded by asserting that the prior response to the Requests for Production complied with the Joint Sampling Protocol and no further production was forthcoming.

On September 9, 2022, OxyChem filed the Motion seeking to compel the production of documents from Ashland. Ashland filed the Cross Motion seeking a protective order on September 14, 2022. OxyChem filed opposition to the Cross Motion on September 19, 2022. With the consent of the parties, Ashland submitted a reply brief on September 26, 2022.

C.  **Oral Argument**

On November 17, 2022, the Special Master conducted oral argument on the Motion. During oral argument, OxyChem's counsel conceded that under the plain language of the Joint Sampling Protocol, Ashland was not obligated to produce unvalidated split sample data. Instead, OxyChem's counsel argued that the Joint Sampling Protocol did not relieve Ashland from its general discovery obligations, which would require production of unvalidated split sampling data.

In response, Ashland argued that the Joint Sampling Protocol is a stipulated agreement between the parties, entered by the Court, which exclusively governs the parties' discovery obligations related to post-litigation sampling. Therefore, because there is no dispute regarding the terms of the Joint Sampling Protocol, the sole issue presented is whether the Joint Sampling Protocol exclusively governs the parties' discovery obligations for samples taken after the filing of this litigation.

## ANALYSIS

### The Joint Sampling Protocol Exclusively Governs Discovery Regarding Post-Litigation Sampling and Limits Ashland's Obligation to Produce Unvalidated Split Sample Data

Federal Rule of Civil Procedure 29 governs stipulations regarding discovery and provides that the parties may stipulate to procedures governing or limiting discovery, except for a stipulation extending the time for any form of discovery, which requires court approval. FED. R. CIV. PRO. 29(b); *see also OHC Liquidation Tr. v. Credit Suisse First Bos. (In re Oakwood Homes Corp.)*, 340 B.R. 510, 540 (Bankr. D. Del. 2006).

"Normally a party is bound by his stipulations as a stipulation . . . is akin to a contract." *United States v. Morales*, 684 F.3d 749, 755 (8th Cir. 2012) (citing *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d 249, 262 (5th Cir. 2010)). Therefore, "[s]tipulations are enforceable 'absent circumstances tending to negate a finding of informed and voluntary assent of a party to the agreement.'" *MDT Corp. v. New York Stock Exch., Inc.*, 858 F. Supp. 1028, 1034 (C.D. Cal. 1994) (quoting *United States v. McGregor*, 529 F.2d 928, 931 (9th Cir. 1976)). The binding nature of stipulations "serve[s] both judicial economy and the convenience of the parties." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999). "Allowing parties to easily set aside or modify stipulations would defeat this purpose, wasting judicial resources and undermining future

confidence in such agreements." *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998); *Orvosh v. Program of Grp. Ins. for Salaried Emples. of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 n.7 (3d Cir. 2000). Thus, "it is a well-recognized rule of law that valid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside." *Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 307 (3d Cir. 1972), *partially overruled on other grounds en banc by Kershner v. Mazurkiewicz*, 670 F.2d 440, 448 (3d Cir. 1982).

Here, the Joint Sampling Protocol is a stipulation agreed to by the parties and approved by the Court to govern the discovery procedures for post-litigation sample collection and handling, analytical testing, and geophysical investigations of environmental media. The Joint Sampling Protocol is a clear agreement that altered the parties' discovery obligations as contemplated by *Rule* 29(b).

OxyChem's argument that the Joint Sampling Protocol merely sets a floor for discovery contravenes applicable law and the plain language and purpose of the Joint Sampling Protocol. The parties would have limited, if any, need for a detailed Joint Sampling Protocol if the intent was to still require them to produce all materials in accordance with the Federal Rules of Civil Procedure. Accordingly, the Joint Sampling Protocol exclusively governs the parties' discovery obligations related to post-litigation sampling.

As conceded by OxyChem, and clearly set forth in the Joint Sampling Protocol, Ashland, a non-requesting party, has no obligation to analyze or validate split samples. Indeed, the purpose of the split sample procedure is to allow parties, like Ashland, to confirm or challenge the Requesting Party's results, if they so choose. The Joint Sampling Protocol expressly provides that a non-requesting party that receives a split sample and has it analyzed, like Ashland, need only produce validated results. (Joint Sampling Protocol at ¶19). However, in the same paragraph, the

Joint Sampling Protocol expressly requires only a Requesting Party, that did not validate results, to produce its unvalidated results. This demonstrates clear intent to treat unvalidated results differently as between Requesting Parties and recipients of split samples. Therefore, under the Joint Sampling Protocol, Ashland, a non-requesting party who has not obtained validated results from a split sample has no obligation to produce unvalidated results and related documents under the Joint Sampling Protocol. Accordingly, OxyChem's motion to compel the production of unvalidated split sample results from Ashland contravenes the express terms of the Joint Sampling Protocol and is denied and Ashland's motion for a protective order is granted.

## CONCLUSION

Based on the foregoing reasons and cited authority, the Motion is hereby **DENIED**, and the Cross Motion is **GRANTED.** Ashland is granted a protective order from the production of unvalidated split sample results and related documents.

November 29, 2022    */s/ Thomas P. Scrivo*
**THOMAS P. SCRIVO**
**Special Master**