

Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

December 2, 2022

<u>*Via CM/ECF*</u>
Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

Re:   *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*
      Civil Action No. 2:18-cv-11273-MCA-LDW

Dear Special Master Scrivo:

Occidental Chemical Corporation ("OxyChem") respectfully requests protection from the SPG's notices of Rule 30(b)6 deposition of OxyChem. *See* **Ex. A** (Oct. 6, 2022 Rule 30(b)6 Notice 1 of Oral Deposition to OxyChem); **Ex. B** (Oct. 6, 2022 Rule 30(b)6 Notice 2 of Oral Deposition to OxyChem). OxyChem is ready, willing, and able to give *relevant* testimony through a Rule 30(b)(6) witness or witnesses. But, as demonstrated below, the SPG's Notices exceed the scope of discovery, are oppressive, and impose an undue burden on OxyChem far in excess of the reasonable discovery required to prepare this case for trial. Under Federal Rule of Civil Procedure 26(c)(1), the Special Master should grant OxyChem protection and quash the Notice.[1]

After the SPG's months-long chorus of objections to the "impossible" burdens of preparing for *single day* Rule 30(b)(6) depositions on their *own* sites and operations, the SPG demands **five days** to depose OxyChem's representatives regarding a combined **forty topics**—implicating facts across more than 80 years[2], dozens of entities, and a broad range of complex and overlapping issues. Many of these topics are plainly improper. Others seek discovery the Court has already ruled cannot be had. In addition, the SPG seeks to depose OxyChem about not just Diamond Alkali's operations at the Lister Site but also *every SPG Defendant's* site and operations, a matter *uniquely* within the knowledge of the Defendants themselves and emphatically *not* within the

---

[1] Due to the number of topics in the SPG's notices, OxyChem's request for a protective order cannot be presented within the 5-page limit under the Protocol for Motions (Dkt. 755). OxyChem requests the Special Master's permission to exceed that limit in this letter.

[2] *See* Definition of "Relevant Time Period" from 1940 to present; Topic 1.03 (document preservation from 1940 to present); Topic 1.05 (consultants from 1940 to present); 2.01 operations from 1940-1977).

Special Master Thomas P. Scrivo, Esq.
December 2, 2022
Page 2

corporate knowledge of OxyChem, which never owned, operated, or controlled Defendants' plants.

During the meet-and-confer process, the SPG refused to modify the noticed topics to eliminate their improper scope—including by removing topics that are plainly improper according to the SPG's own *objections* to OxyChem's prior requests and/or the Special Master's prior rulings. Incredibly, though it insisted preparation for a Rule 30(b)(6) deposition was impossible unless OxyChem provided advance notice of exhibits it intended to use in deposing each SPG Defendant, the SPG has categorically refused to provide that same accommodation to OxyChem.

Magistrate Judge Dickson ruled long ago that discovery is a two-way street. The rules and limitations the Defendants have obtained for themselves, and the prior rulings by the Court establishing the bounds of reasonable discovery, must apply equally to *both sides*. Defendants' demand for one set of favorable rules that apply to them, while pursuing scorched earth discovery against OxyChem, should be rejected as a matter of basic fairness and the requirements of applicable law. Accordingly, for the reasons stated below, Defendants notices of deposition to OxyChem should be quashed or, in the alternative, limited to topics *reasonably* within the knowledge of OxyChem, that are *relevant* to this case, and that *conform* to the Court's existing rulings.

1.    **Factual Background**

On April 1, the SPG sent two draft Rule 30(b)(6) deposition notices to OxyChem. **Ex. C** (Draft Notice 1); **Ex. D** (Draft Notice 2). The notices spanned 40 topics, across 82 years, and demanded six days of deposition. *Id.* OxyChem responded by offering, without prejudice to its objections to the SPG's draft deposition notices, to produce 30(b)(6) designees on July 18, 19, or 20, 2022. **Ex. E** (5/26/22 ltr. from OxyChem to SPG). The SPG responded by requesting that OxyChem instead make its designee(s) available on August 2, 3, and 4, 2022, to testify regarding 19 topics listed in "Notice 1," and on September 14, 15, and 16, 2022, for 21 topics listed in "Notice 2."

In a May 26, 2022 letter, OxyChem declined to the SPG's request to schedule *six* days of deposition because that request violated the deposition protocol and because the SPG improperly claimed to need the extra deposition days to cover topics that the Special Master had already ruled were out of bounds. **Ex. E**. OxyChem specifically explained in detail both the proposed topics that were wholly improper and the grounds for its objections to those topics. *See id.* OxyChem also offered dates in September on which it would present a witness on certain topics and indicated it would make its representatives available for the number of deposition dates provided by the protocol. *See id.*

During a July 1 meet and confer, OxyChem agreed it would revisit its objections to four of the topics addressed in its May 26 letter, while the SPG agreed it would revisit the remaining three topics. **Ex. F** (9/20/22 ltr. from SPG).

OxyChem followed up in mid-September in a letter reiterating the concerns it had previously raised, but offering to compromise on several issues. **Ex. G** (9/14/22 ltr. from OxyChem). Among other things, OxyChem stated it would produce a witness to testify on many topics, including some of its document collection procedures; databases regarding environmental information; certain document retention practices; transfers of documents to OxyChem regarding the Diamond Alkali Superfund Site. *See id.* at 1–2. OxyChem also set forth other specific objections and requested that SPG identify potential exhibits 10 days before the deposition to help OxyChem prepare its witness for the broad noticed topics, consistent with OxyChem's disclosure of potential exhibits before its depositions of SPG Defendants. *See id.* at 3–4. On September 29, 2022, OxyChem and the SPG again conferred regarding the SPG's proposed topics and OxyChem's objections. *See* **Ex. H** (9/23/22 email from SPG to OxyChem).

On October 6, 2022, the SPG served four formal deposition notices, including two notices for a Rule 30(b)(6) deposition of OxyChem, *see* **Ex. A**; **Ex. B**. Across two notices, the SPG seeks to depose OxyChem for five days regarding a combined *forty* topics—implicating facts across more than 80 years, dozens of entities, and a broad range of complex and overlapping issues.

OxyChem served formal objections to the SPG's Notices on November 9, 2022. *See* **Ex. I** (11/9/2022 OxyChem Objections to SPG Notices).[3]

## 2. Legal Standard

Under Fed. R. Civ. P. 26(c), the Court may, for good cause, issue an order protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1112 n.3 (3d Cir. 1986). Grounds for granting a protective order include requests that are overbroad or seek to invade legal privileges. *See, e.g.*, *Mamman v. Chao*, 2008 WL 1995127 (D. N.J. 2008) (granting motion for protective order limiting depositions to non-privileged communications); *Sheldone v. Penn. Turnpike Comm'n*, 104 F. Supp. 2d 511 (W.D. Pa. 2000) (granting motion for protective order to prevent the plaintiff from examination regarding mediation of an employment grievance); *Smith v. Navient Solutions*, 2018 WL 5846809 (W.D. Pa. 2018) (finding that deposition topics were overly broad, not proportional to the needs of the case, and unlikely to yield relevant information).

The Court has authority to protect a party from unduly burdensome or oppressive discovery. FED. R. CIV. P. 26(c)(1); *see also Younes v. 7-Eleven, Inc.*, No. 13-3500 (JS), 2015 WL 12843884, at *2 (D.N.J. Mar. 11, 2015) (When a party moves for protection from a deposition of its counsel, "[i]t is well settled that care must be taken to assure" that the deposition is "necessary and appropriate and proportional to the needs of the case.").

---

[3] The SPG's complaints about the timing of OxyChem's formal objections are disingenuous. OxyChem's objections were served 34 days after service of the SPG's formal deposition notices. By comparison, OxyChem first provided Rule 30(b)(6) topics to SPG Defendants on June 21, 2021 and served formal deposition notices on July 9, 2021. **Ex. J** (6/21/2021 ltr. from OxyChem to SPG Defendants); **Ex. K** (7/9/2021 ltr. serving deposition notices). The SPG served its first objections to the topics in those notices six months later on December 21, 2021. *See* **Ex. L** (12/21/2021 ltr. from SPG to OxyChem).

Special Master Thomas P. Scrivo, Esq.
December 2, 2022
Page 4

### 3. Argument

#### a. The SPG is not Entitled to Five Days to Depose OxyChem's Representatives.

The SPG first sought six days to depose OxyChem's representatives; SPG's formal notices now seek five days of deposition. *See* Exs. A, B. OxyChem has offered to present witnesses for the duration provided by the deposition protocol—i.e., if OxyChem designates two witnesses to address the SPG's topics, the SPG will have two days to complete the deposition of OxyChem. The parties have been unable to resolve this timing dispute, and OxyChem therefore asks the Special Master to grant OxyChem protection limiting its deposition to the time limits provided in the protocol.

Under Federal Rule of Civil Procedure 30(d)(1), "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Here, the Protocol imposes a presumptive limit of 8 hours on the record for each witness presented in response to a Rule 30(b)(6) deposition notice. *See* Dkt. 2060 (Amended Protocol for Depositions) ¶ D(4). OxyChem has complied with the Protocol's direction to "meet and confer regarding applicable time limits for questions regarding party-specific topics" and has not "unreasonably with[e]ld consent" to requests for additional time. *Id.*

The SPG has not identified a legitimate need for more time—let alone a need for *five times* the presumptive time limit under both the Rules and the Protocol. None of the SPG's noticed topics are specific to any particular Defendant; rather, the interests of all SPG parties are aligned with respect to the broad array of topics on which they seek to depose OxyChem. Indeed, just as those Defendants have for all discovery against OxyChem in this lawsuit, the individual SPG parties have charged the group's liaison counsel with pursuing their Rule 30(b)(6) deposition of OxyChem. There is no need for each SPG Defendant to individually question OxyChem, and the SPG's unsubstantiated claim to need serial questioning by multiple Defendants in their own liaison group cannot justify its excessive request for five days of deposition testimony of one party.

#### b. The SPG Improperly Seeks Testimony on All SPG Defendants' Operations.

The Special Master should grant OxyChem's motion for protection as to Topic 1.16, which seeks testimony regarding all SPG Defendants' operations:

> 1.16.  Factual bases for Your claims in this litigation against each of the SPG defendants for contribution or cost recovery related to costs involving the 2016 ASAOC, the 2008 Tierra Removal ASAOC, the 2011 CSO ASAOC, the 2012 RM 10.9 UAO, and PRP search costs.

During the meet-and-confer process, counsel for the SPG Defendants stated that Topic 1.16 should be interpreted to include "OxyChem's contentions" about the facts relating to the operational histories at the Defendants' own sites, discharges at or from those sites, and environmental investigations and remediations at those sites. Applying this interpretation, Topic 1.16 is overbroad and unduly burdensome because it seeks to depose OxyChem about the

Special Master Thomas P. Scrivo, Esq.
December 2, 2022
Page 5

*Defendants' own sites* while fact discovery is ongoing and after only certain Defendants have produced a designee for deposition.

Further, the SPG Defendants' own submissions to the Special Master regarding the burden of preparing a designee regarding each Defendant's individual site(s) establish the undue burden imposed on OxyChem to designate a witness to testify about *all* Defendants' sites.

The Special Master's Order on Defendants' contention interrogatories, Dkt. 1249, is instructive here. The SPG argued that the Special Master should enter an early deadline for OxyChem to serve responses to contention interrogatories because "in complex cases, like this one, courts encourage the use of contention interrogatories in lieu of a Rule 30(b)(6) deposition." *Id.* at 5–6. The Special Master instead ruled that OxyChem must respond to Defendant's contention interrogatories only at the end of fact discovery. Since the contention interrogatories are intended to *replace* 30(b)(6) deposition testimony, it follows that OxyChem should be protected from Topic 1.16 until after the deadline for responding to the Defendant's contention interrogatories.

OxyChem has offered to designate a witness to testify as to non-privileged information in the possession of or reasonably available to OxyChem regarding facts relating *to the response costs* it seeks to recover against each of the SPG Defendants. It should not also have to prepare testimony against each individual SPG Defendant. The Special Master should enter an order of protection consistent with this limitation.

### c. *The SPG Seeks Overbroad and Unduly Burdensome Testimony About Facilities and Operations Not Relevant Here.*

Consistent with prior rulings limiting the scope of discovery, the Special Master should grant OxyChem protection as to SPG Topics 1.18, 2.10, 2.18, and 2.19 because they seek testimony on irrelevant sites not at issue in this litigation.

> 1.18. Your activities and expenditures related to the DASS or Lister Property other than the activities and resulting costs You have claimed in this litigation, including activities and expenditures related to projects not approved by EPA or NJDEP under any administrative agreement or order, including (1) public relations or lobbying activities and expenditures and (2) **studies, research, publications**, or presentations commissioned by OCC and **relating to dioxin or other COCs**, the Lower Passaic River, the Lister Property, or **environmental remediation of contaminated sediment sites**.
>
> 2.10. **Any litigation** in which OCC, Maxus, or Tierra have been involved r**elating to** the Lister Property, the DASS, or **Dioxin**, including but not limited to those identified in Your Amended Response to Interrogatory No. 16 in the above-

Special Master Thomas P. Scrivo, Esq.
December 2, 2022
Page 6

captioned litigation (including worker compensation claims) and with respect to each, information about outcomes, allegations, arguments, and appeals.

2.18.   Your **general experience with and knowledge of Dioxin**, including its generation in manufacturing processes, its toxicity and/or effects on human health or the environment, and approaches to removing or remediating Dioxin-contaminated soil and/or sediments in bodies of water.

2.19 The name, location, and general description of **any other facilities and/or Superfund Sites involving Dioxin** contamination at which You have been considered a responsible or liable party or otherwise been involved in removal or remedial activities.

2.20.   **Studies, reports, papers, and presentations** offered by You or on Your behalf between 1980 and the present **related to Dioxin in any way**, including but not limited to environmental contamination, toxicity, and/or fate and transport.

1.13. All Communications, litigation, releases, proposals or offers to renegotiate terms, and all claims for indemnification under the SPA indemnification agreement and the DASS **or other contaminated sites**, including the number of claims filed each year, the names and roles of Persons with knowledge of any of the foregoing, and your interpretation of the terms of the SPA indemnification agreement.

These topics impermissibly seek testimony about *other* sites that are geographically remote from the Diamond Alkali Superfund Site that involve or could involve dioxin in some way. *See* **Ex. I** (OxyChem's 11/9/2022 Objections) at Topics 2.10, 2.18, 2.19, 2.20, and 1.18 (seeking testimony regarding "other dioxin sites").

- Topic 1.18 seeks testimony regarding OxyChem's knowledge of dioxin or other COCs, as well as environmental remediation of "any contaminated sediment site"—without any connection to the Diamond Alkali Superfund Site.

- Topic 2.10 seeks testimony regarding "[a]ny litigation [OxyChem, Maxus, or Tierra was involved in] . . . relating to . . . Dioxin"—without any connection to the Diamond Alkali Superfund Site.

- Topic 2.18 seeks testimony regarding OxyChem's "general experience with and knowledge of Dioxin," without any connection to the Diamond Alkali Superfund Site.

- Topic 2.19 seeks testimony regarding "other facilities and/or Superfund Sites involving Dioxin."

- Topic 2.20 seeks testimony regarding research "related to Dioxin in any way"—without any connection to the Diamond Alkali Superfund Site.

These topics are overbroad and unduly burdensome because they are not limited to the Diamond Alkali Superfund Site, the heart of this litigation.

The Special Master has already decided this issue and ruled that such testimony is "overbroad and does not fit within any of the Gore Factors." *See* Dkt. 1380 (8/11/2021 Decision of Special Master) at 10–11. That ruling specifically held that the SPG Defendants are not entitled to discovery related to "other contaminated sites." *See id.* As the Special Master ruled, "OxyChem's activities at Love Canal cannot be substituted for evidence of its activities at the Lister Plant. Additionally, the requested documents have a remote relationship, at best, to the party's claims and defenses and needs of the case. As OxyChem noted, this case is a cost recovery and contribution action for response costs incurred at the Diamond Alkali Superfund Site, not Love Canal." *Id.*

The SPG refuses to modify these topics to conform to this prior ruling, instead insisting on re-litigating this issue, even though it is black letter law that the *same* Rule 26 discoverability standard applies to both document requests and Rule 30(b)(6) depositions. *See Bracco Diagnostics Inc. v. Amersham Health Inc.*, 2005 WL 6714281, at *1 (D.N.J. Nov. 7, 2005) ("Integral to any analysis concerning scope is the notion that Rule 30(b)(6) does not appear to set its own discovery standard. The Court should 'not read Rule 30(b)(6) as carving out a special limitation on the scope of discovery defined in [Fed. R. Civ. P.] 26(b)(1).'"); *Hooker v. Norfolk S. Ry. Co.*, 204 F.R.D. 124, 126 (S.D. Ind. 2001) ("Rule 30(b)(6) does not set its own discovery standard…[t]herefore [Rule] 26(b)(1) is the proper standard to resolve [the discovery] dispute.").

The Court should enter an order of protection limiting the scope of the deposition to the Diamond Alkali Superfund Site, and excluding testimony regarding other sites.

### d. The SPG Seeks Irrelevant Information About OxyChem's and Maxus's Financial Condition and "Ability to Pay."

Consistent with his prior rulings, the Special Master should grant OxyChem's motion for protection to limit the scope of the deposition to exclude the issues of OxyChem's ability to pay, with respect to the following proposed topics:

> 1.07. **Organizational information about GSH, Miller Springs, and any other environmental remediation-related Subsidiaries and Affiliates** of OCC, including their business structure, mission, operations, services agreements, responsibilities, and activities that relate to DASS, **OCC's environmental reserves,** and other environmental liabilities and obligations of OCC.
>
> 1.10. **OCC's financial condition and/or ability to pay for environmental remediation of the DASS**, including any basis for raising Your financial resources as an equitable allocation factor in this litigation.
>
> 1.11. **OCC's environmental reserves for environmental costs or liabilities arising from or related to investigatory or remedial activities** related to or concerning the DASS, the Lister Property, or the Newark Bay Complex, including

> amounts identified in filings with the U.S. Securities and Exchange Commission from the date of the 1986 Merger to the present.
>
> 1.14.   Your knowledge of and efforts to investigate, review, and monitor Maxus's, and any of its Affiliates' or Subsidiaries', financial ability, from 1986 to the present, to fund and perform remediation activities on behalf of OCC at the DASS.

These topics seek testimony on financial condition and "environmental reserves" of OxyChem, its corporate affiliates, and Maxus. *See* **Ex. I** (OxyChem's 11-9-2022 objections) at Topic 1.07, 1.10, and 1.11.

The Special Master has already sustained OxyChem's objection that the SPG's attempt to obtain discovery regarding "[T]he financial condition of [OxyChem and its affiliates'] from 2015 to the present, including but not limited to … environmental reserves." *See* Dkt. 1380; Dkt. 1145-1 (Second Set of Requests for Production from the SPG to Plaintiff) at Request 24. The Special Master ruled that information regarding OxyChem's financial condition is outside the scope of discovery. Dkt. 1380 at 12.

Again, the SPG cannot expand the scope of permissible discovery by using a different discovery vehicle to pursue the same information the Special Master already ruled was out of bounds. The SPG's refusal to withdraw these topics from its deposition notice is an improper attempt to re-litigate an issue already decided, and the Special Master should limit the scope of the SPG's deposition of OxyChem to exclude these topics.

### e. *The SPG Improperly Seeks Testimony on the Structure of Corporate Entities Not Involved in the Diamond Alkali Superfund Site.*

The Special Master should grant OxyChem's motion for protection as to Requests 1.06 and 1.07, which improperly seeks information on irrelevant corporate entities:

> 1.06.   Corporate structure and organization of OCC and related entities, including departments, committees, groups, and sections of OCC involved with environmental remediation, liabilities, and compliance.
>
> 1.07.   Organizational information about GSH, Miller Springs, and any other environmental remediation-related Subsidiaries and Affiliates of OCC, including their business structure, mission, operations, services, agreements, responsibilities, and activities that relate to DASS, OCC's environmental reserves, and other environmental liabilities and obligations of OCC.

This Request seeks information on the corporate structure of entities that are not involved in the Diamond Alkali Superfund Site. *See* **Ex. I** (11/9/2022 OxyChem Objections to SPG Notices) at Topic 1.06.

The Special Master has already limited the scope of discovery to exclude such information: "If the entities were not involved in the 1986 acquisition and operations, environmental inspection,

Special Master Thomas P. Scrivo, Esq.
December 2, 2022
Page 9

and remediation of the Lister plant, . . . , then the information does not bear on, or could not reasonably lead to other matters that could bear on, any issue that is or may be in the case." Dkt. 1380 (8/11/2021 Decision of Special Master) at 9.

Consistent with prior rulings, the Special Master should grant a motion for protection limiting the scope of the deposition to exclude entities not involved in the Diamond Alkali Superfund Site.

### *f.* *The SPG's Improperly Seeks Information in the Control of Other Entities.*

The Special Master should narrow the scope of discovery to exclude information in the control and custody of other entities having no corporate relationship to OxyChem.

### *i.* *Information in the possession or control of Maxus or Tierra.*

Several of the SPG's topics seek testimony regarding information in the possession or control of Maxus or Tierra, without regard to whether *OxyChem* has ever possessed or was involved with the events related to that information.

> 1.05 **Any Persons retained during the Relevant Time Period** as consultants or contractors, including as litigation experts, public relations consultants, researchers, or scientists, **by or for** OCC, **Maxus or Tierra**, in relation to the DASS or the Lister Property, and their names, roles, scopes of work, time periods of involvement, and areas of specialty.
>
> 2.10. **Any litigation in which** OCC, **Maxus, or Tierra have been involved** relating to the Lister Property, the **DASS, or Dioxin**, including but not limited to those identified in Your Amended Response to Interrogatory No. 16 in the above-captioned litigation (including worker compensation claims) and with respect to each, information about outcomes, allegations, arguments, and appeals.
>
> 2.13. **All settlement agreements** relating to the Lister Property or DASS and **involving** OCC, **Maxus, or Tierra**, including those identified in Your Amended Response to Standard Interrogatory No. 16 and Your Amended Response to the Second Set of Interrogatories No. 3 in this litigation; any releases from liability related to Dioxin contamination and the Lister Property involving OCC and including but not limited to releases related to Marisol, Inc., SCA, or E.M. Sergeant Pulp & Chemical Company; and all administrative settlement agreements, consent decrees, and unilateral administrative orders relating to the DASS, including but not limited to the 1984 AOC, 1987 AOC, 1990 Consent Decree, 1994 AOC, 2004 ASAOC, 2004 § 122h Agreement (LPRSA RI/FS), 2007 ASAOC, 2008 ASAOC, 2011 settlement, and the 2016 ASAOC.
>
> 2.14. Your oversight, involvement, or knowledge of **Tierra and Maxus's activities** under the SPA indemnification agreement relating to the DASS, including **Communications with state, federal, or local government agencies**, efforts to establish a multi-agency takeover of the LPRSA and Newark Bay

remedial investigations, the involvement or participation of any OCC Employee or consultants in working groups, advisory boards, task forces, or sponsorship efforts relating to research on phenoxy herbicides, 2,4-D, Dioxin, or COCs, such as the articles referenced in the Newark Bay Baseline Human Health Risk Assessment and Baseline Ecological Risk Assessment.

2.16.   **Membership in the CPG** of OCC, **Tierra**, and/or **Maxus**, including Your decision to join the CPG, Your departure from the CPG, Your obligations as a CPG member and signatory to the 2004 § 122(h) settlement agreement related to the LPRSA RI/FS and the 2007 ASAOC to takeover performance of the LPRSA RI/FS from EPA, Employees or Agents of You and OPC involved in any aspect of Your membership in the CPG; Your receipt and retention of CPG documents, communications and information; amounts paid or owed by You to the CPG during or after Your membership; and Your decision not to pay certain costs or participate in certain activities related to the 2007 ASAOC.

Topic 1.05 seeks testimony about persons retained by Maxus and Tierra, with no requirement that those retentions involved OxyChem in any way. Topic 2.10 seeks testimony on litigation involving Maxus and Tierra relating to the DASS or dioxin—whether or not *OxyChem* was involved. Topic 2.13 seeks testimony about settlement agreements Maxus or Tierra entered into regarding the DASS, also without any requirement of OxyChem's involvement. Topic 2.14 seeks testimony about Tierra and Maxus's communications with government agencies, without any requirement of OxyChem's involvement. Topic 2.16 seeks testimony about Tierra and Maxus's membership in the CPG.

> ii. *Ownership of or occurrences at the Lister Property while it was owned by other entities.*

The SPG also seeks testimony regarding the Lister Property while it was owned by entities other than OxyChem—information that is not within OxyChem's custody or control.

2.02   Any notices of violations, citations, or penalties for environmental conditions related to the Lister Property (including but not limited to discharges to the Passaic River) issued or assessed by any federal, state, or other government agency including the United States Coast Guard, USACE, PVSC, NJDEP, or EPA.

2.07.   **Closure of the Lister Plant in or around February 1977**, including the transfer of property or equipment; the circumstances of the closure and the condition of the Lister Property at time of closure; any involvement of regulators, banks, law enforcement, or other Persons or entities; and information about contaminated equipment or containers and their contents left on the Lister Property after its closure or relocated to nearby properties or elsewhere offsite.

2.08   Insurance policies and related Communications pertaining to the Lister Property in the 1970s involving OCC, Hooker, OPC, **Chemicaland, Thompson-**

Special Master Thomas P. Scrivo, Esq.
December 2, 2022
Page 11

> **Hayward Chemical Company, Frank & Hall Company, Thico Plan, Inc., and/or any other person or entity**.
>
> 2.09   Any property interests that You hold or have held relating to the Lister Property, including but not limited to leases, liens, mortgages, easements, access rights, assignments, or warehouse rentals, or **any such interests held by any Persons or entities on Your behalf or for Your use**, including but not limited to the property interests at issue in the cases captioned *Occidental Chemical Co. v. Chemicaland Corp., et al.*, No. F-5277-76 (N.J. Super 1977) and *Midlantic National Bank v. Chemicaland Corp., et al.*, Nos. L-8204-74; J-3517-74 (N.J. Super 1977).
>
> 2.12   The presence of contamination at and the ongoing release of Hazardous Substances from **the Lister Property during the 1980s and 1990s** and any related inspections, reports, notices of violation, or citations.

Topics 2.02 and 2.12 seeks testimony about inspections, reports, notices of violation, or citations issued regarding the Lister Property during time periods when that property was not owned by OxyChem or any of its corporate predecessors. Similarly, Topic 2.07 seeks testimony regarding closure of the Lister plant in 1977, when it was not owned by OxyChem nor any of its corporate predecessors. Topic 2.08 seeks testimony about "insurance policies and related Communications" involving companies with no corporate relationship to OxyChem: Chemicaland, Thompson-Hayward Chemical Company, Frank & Hall Company, Thico Plan, Inc., and "*any other* person or entity." Topic 2.09 seeks testimony regarding Tierra's ownership of the Lister site.

The Special Master should grant OxyChem's motion for protection and limit the scope of the deposition to OxyChem's direct knowledge, quashing the deposition topics regarding the independent actions and knowledge of Maxus, Tierra, and other entities with no corporate relationship to OxyChem, on which OxyChem cannot possibly testify.

**g.   *The parties have stipulated that Newark Bay is outside the scope of discovery.***

Many of the SPG's topics seek testimony regarding Newark Bay.[4] Those topics violate the stipulation submitted by the parties and entered by the Court that the "Newark Bay Study Area, also referred to as OU3, is not at issue in this litigation." Dkt. 1233 (Joint Stipulation and Proposed Order Regarding Scope of Claims). The Special Master should enter an order narrowing the scope of those topics consistent with that parties' stipulation.

---

[4] The following topics include Newark Bay within their scope: 1.01, 1.02, 1.03, 1.04, 1.05, 1.07, 1.08, 1.10, 1.11, 1.13, 1.14, 1.18, 2.10, 2.11, 2.13, 2.14, 2.15, 2.22.

### h. *The SPG's "Catchall" Topic Fails to Meet the Specificity Requirement of Rule 30(b)(6).*

The Special Master should exclude the SPG's Topic 2.22 from the scope of its deposition of OxyChem because it violates Rule 30(b)(6). That topic seeks testimony regarding:

> 2.22    Any involvement with the Lister Property or the DASS from 1970 to the present.

This "catchall" topic is improper because it lacks *any* specificity and, at best, is redundant of other topics in the SPG's notices. *Compare* Dkt. 2170 (9/26/22 Decision of Special Master) at 9-10 (ruling that the topic "All communications between FTI and any Government Entity relating to the Diamond Alkali Superfund Site" is "not particularized in subject matter or time limitation and subjects a witness to an unlimited scope of questioning").

### i. *The SPG Seeks Irrelevant Information About Expenditures OxyChem Does not Claim in this Case.*

The Special Master should exclude the SPG's Topic 1.18 from the scope of its deposition of OxyChem because it seeks irrelevant information—focusing specifically on OxyChem's expenditures that it is not seeking to recover in this lawsuit:

> **1.18.**    Your activities and expenditures related to the DASS or Lister Property **other than the activities and resulting costs You have claimed** in this litigation, including activities and expenditures related to projects not approved by EPA or NJDEP under any administrative agreement or order, including (1) public relations or lobbying activities and expenditures and (2) studies, research, publications, or presentations commissioned by OCC **and relating to dioxin or other COCs**, the Lower Passaic River, the Lister Property, **or environmental remediation of contaminated sediment sites.**

Topic 1.18 explicitly centers on irrelevant information: OxyChem's costs, including for public relations or lobbying activities, that OxyChem is *not* seeking to recover in this case. This topic is unduly burdensome because OxyChem's "expenditures related to the DASS or Lister Property *other than* the activities and resulting costs … claimed in this litigation" are not relevant to any claim or defense asserted in this lawsuit. This topic is also unduly burdensome because OxyChem's "public relations or lobbying activities and expenditures" are not relevant to any claim or defense asserted in this lawsuit. This information is not at issue in this cost recovery action and is irrelevant to any equitable allocation as to the DASS.

Consistent with the Special Master's prior rulings, testimony regarding costs OxyChem is not seeking here is "overbroad and does not fit within any of the Gore Factors." *See* Dkt. 1380 (8/11/2021 Decision of Special Master) at 10–11. Just as "other contaminated sites" than those at issue in this case are out of bounds, so too are OxyChem's other expenditures that it does not seek to recover. *Cf. id.* And just as "OxyChem's activities at Love Canal cannot be substituted for evidence of its activities at the Lister Plant," OxyChem's other expenditures "cannot be substituted

Special Master Thomas P. Scrivo, Esq.
December 2, 2022
Page 13

for evidence" of its costs at issue in this case. *Cf. id.* These other expenditures do not even have "a remote relationship" to the "party's claims and defenses and needs of the case." *See id.*

For reasons more fully described above, the remainder of this topic should also be limited to require a connection to the DASS—testimony regarding COCs or remediation of sediment sites in general should be outside of the scope of the deposition.

**4.     Conclusion**

OxyChem requests that the Special Master protect it from the SPG's unduly burdensome deposition notice by:

1. Limiting the 30(b)(6) deposition of OxyChem to one day per designee, as provided in the deposition protocol.

2. Protecting OxyChem from Topic 1.16, which requests individualized testimony on *each individual SPG Defendant.*

3. Limiting the scope of the SPG's deposition to the Diamond Alkali Superfund Site, rather than the broader scope specified in Topics 1.13, 1.18, 2.10, 2.18, 2.19, and 2.20.

4. Quashing Topics 1.07, 1.10, 1.11, and 1.14 regarding OxyChem's financial condition and ability to pay for environmental remediation.

5. Limiting the deposition of OxyChem's corporate representative to issues *involving OxyChem* and the entities "involved in the 1986 acquisition and operations, environmental inspection, and remediation of the Lister plant."

6. Protecting OxyChem from the request to provide testimony on Maxus and Tierra's independent knowledge, separate and apart from OxyChem.

7. Limiting the scope of OxyChem's deposition to exclude Newark Bay.

8. Quashing the SPG's "catchall" Topic 2.22.

9. Limiting the scope of Topic 1.18 to exclude costs not sought by OxyChem in this case, to exclude public relations and lobbying activities, and to exclude testimony regarding COCs or remediation of sediment sites generally without a connection to the DASS.

Respectfully submitted,

Kathy D. Patrick

/s/ *John J. McDermott*

John J. McDermott

Special Master Thomas P. Scrivo, Esq.
December 2, 2022
Page 14

cc: All counsel of record

226033082v1