


Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

December 9, 2022

*Via CM/ECF*
Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

> Re:  *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*
>      Civil Action No. 2:18-cv-11273-MCA-LDW

Dear Special Master Scrivo:

The SPG Defendants refuse to produce responsive documents in their consultants' possession until OxyChem pays more than *$5 million.* Much of that amount is to reimburse SPG and individual counsel for the cost of a manual, document-by-document review of every requested document.

This violates the Stipulation entered to ensure consultant documents are produced efficiently and cost-effectively.[1] It does so by shifting production costs to the requesting party—but *only* shifts those costs that are *reasonably necessary* to produce the documents. This limitation is an essential feature of the stipulated process; otherwise the SPG Defendants will abuse the process by, for example, insisting that OxyChem must pay for *multiple* law firms to review the *same* documents where more than one Defendant has an interest in a site or consultant.

OxyChem served the subpoenas at issue more than a year ago on 42 consultants: 34 are Licensed Site Remediation Professionals charged with implementing New Jersey's regulations at certain Defendants' sites, and 8 are consultants whose fees the Defendants seek to recover from OxyChem as alleged response costs incurred through the CPG. These consultants' roles and the nature of the materials in their possession minimize the likelihood that OxyChem's subpoenas implicate privileged information. Nevertheless, the SPG Defendants are free to conduct manual, document-by-document reviews if they choose—but they must do so at their own expense because such review is not *necessary* to evaluate the documents at issue and search terms or other approaches are adequate.

---

[1] *See* Dkt. 1865 (Joint Stipulation and Order Regarding Production of Documents and Communications with Non-Party Consultants) (the "Stipulation").

Archer & Greiner, P.C. · 1025 Laurel Oak Road · Voorhees, New Jersey 08043 · T 856.673.3902 · F 856.673.7023 · jmcdermott@archerlaw.com
Gibbs & Bruns LLP · 1100 Louisiana · Houston, Texas 77002 · T 713.650.8805 · F 713.750.0903 · www.gibbsbruns.com

Special Master Thomas P. Scrivo, Esq.
December 9, 2022
Page 2

Filing serial motions to compel will only compound the wasted party and judicial resources already spent attempting to hold the SPG Defendants to the terms of the Stipulation. OxyChem maintains its request for a conference to address this dispute and requests the Special Master instruct the SPG Defendants to either revise their cost estimates to reflect only those costs that are *reasonably necessary* for production or otherwise be precluded from shifting *any* document review costs to OxyChem.

1. **The SPG Defendants and their consultants are free to conduct a manual, document-by-document review, but they must do so at their own expense.**

The Stipulation was entered to ensure discoverable information in the possession of consultants "is produced efficiently and cost effectively." Dkt. 1865 ¶ 3. It accomplishes this goal by providing to a party requesting such information a list of responsive files in a consultant's possession and an estimate of the costs "reasonably necessary" to produce those files. *Id.* ¶¶ 4, 6-7. The Stipulation incentivizes the requesting party to select only those documents it determines are necessary or important by shifting to it the associated costs of production.

Critically, the Stipulation *limits* the costs shifted to only those that are *reasonably necessary*. This ensures the responding consultants and associated parties produce the selected documents—and perform any evaluation of responsiveness and privilege—efficiently and cost effectively. This limitation is an essential component of the Stipulation because it addresses the difficulty inherent in shifting to a requesting party the costs for document review: the producing party's exclusive control of those costs. *See Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of Rhode Island,* No. 15-272, 2016 WL 8716426, at *5 (E.D. Pa. Nov. 4, 2016) ("Generally, it is not appropriate to shift [costs of reviewing documents for privilege] because the producing party has the exclusive ability to control the cost of reviewing the documents.").

The SPG Defendants demonstrate why the Stipulation cannot function unless parties adhere to its "reasonably necessary" limitation. OxyChem has complied with the Stipulation by selecting the documents it seeks from the SPG Defendants' consultants, but those Defendants refuse to produce the selected documents unless OxyChem commits to funding a manual, record-by-record review estimated to cost *millions* of dollars. This violates the Stipulation because manual, document-by-document review of the documents sought by OxyChem is not reasonably necessary. Courts have long recognized that

> [T]o insist in ***every*** case upon ***'old world' record-by-record pre-production privilege review*** . . . would impose upon parties costs of production that bear no proportionality to what is at stake in the litigation, and mark a dramatic retreat from the commendable efforts since the adoption of Rule 26(b)(2) to tailor the methods and costs of discovery to fit the case at hand.

*Hopson v. Mayor and City Council of Baltimore*, 232 F.R.D. 228, 244 (D. Md. 2005) (emphasis added). Any SPG Defendant is free to conduct an old-world, record-by-record review of the documents requested by OxyChem, but they cannot make OxyChem pay for it.

Special Master Thomas P. Scrivo, Esq.
December 9, 2022
Page 3

A determination of the necessary responsiveness and privilege review must consider the nature and source of the documents at issue. OxyChem's subpoenas seek documents from consultants retained as LSRPs at the SPG Defendants' upland sites or to perform work in the Lower Passaic River that allegedly underlies the SPG Defendants' claims for response costs. As explained below, documents in the possession of such consultants are far less likely to contain privileged information than, for example, consultants retained to assist counsel in providing a legal defense.

Importantly, the Stipulation requires that the responding consultants' documents be *prescreened*—the list provided to the requesting party should include those documents it "reasonably expects to contain non-privileged responsive materials in the possession of that Consultant." *Id.* ¶ 4. If the SPG Defendants truly believe substantial further review is necessary, that reflects their own failure to adequately prescreen their consultants' documents—in violation of the Stipulation. OxyChem will not pay the SPG to fix its own non-compliance.

Moreover, the document production protocol entered by the Court protects any privileged information from waiver. Dkt. 543 (Protective Order) ¶ 8 (non-waiver of privilege); *id.* ¶ 7 (non-waiver of confidential designation). Federal courts—including this District—have incorporated such protections specifically to avoid the reflexive and wasteful use of manual review in every instance. *See Windfield v. City of New York,* 2018 WL 2148435, at *4 (S.D.N.Y. May 10, 2018) ("[FRE 502(d)] incentivizes parties to voluntarily agree to procedures that will alleviate the burdens of pre-production privilege reviews by offering protection from waiver of privilege to the producing party."); L. Civ. R. 16.1(b)(2) (automatically incorporating Rule 502(d) into scheduling orders). Counsel's ethical obligation to protect confidential information reflects the same reasonableness standard as the Stipulation. *See* N.J. RPC 1.6*.*

In contrast to the SPG Defendants, OxyChem has limited the burden and cost of pre-production review for its own consultants' documents. To ensure its production of materials from its consultant Arcadis complies with the Stipulation's cost shifting provision, OxyChem is evaluating those materials using search terms and other information to minimize the cost of review. As a result, the 800,000 files selected by the SPG for production will be produced for an estimated cost of $363,000. *See* Ex. A (4-13-2022 ltr. from McDermott to Talbert). Production of those files using the SPG approach of manual, document-by-document review would cost more than $2 million—an amount SPG's liaison counsel characterized as "*facially excessive*." Dkt. 2078 (6-10-2022 ltr. from Talbert to Special Master) at 5 ("$2.4 million dollars for processing, hosting, and reviewing ($1.8 million of the estimate from review alone) which is facially excessive.").

2. **Documents maintained by an LSRP do not require a privilege or responsiveness review.**

Most Defendants conducted operations at properties along or near the Passaic River that are now severely contaminated, and thirty-four of the consultants that received subpoenas from OxyChem are designated LSRPs for those sites. "Licensed site remediation professionals are individuals who independently oversee the cleanup of contaminated sites, ensuring that the process is conducted effectively and in compliance with New Jersey statutes and regulations." *Magic Petroleum Corp. v. Exxon Mobil Corp.*, 218 N.J. 390, 400 n. 2 (2014) (citing N.J.S.A. 58:10C-14).

Special Master Thomas P. Scrivo, Esq.
December 9, 2022
Page 4

"LSRPs 'step into the shoes' of the [NJDEP] to oversee the remediation of contaminated sites."[2] LSRPs are required to maintain records reflecting the environmental condition for sites where they are designated, have an obligation to provide such information to the public upon request, and perform a non-privileged regulatory function that is incompatible with claims of privilege over responsive documents in their possession.[3]

Despite this, 14 SPG Defendants have insisted that OxyChem fund a manual, document-by-document review for privilege before any documents in the possession of their designated LSRPs can be produced. Ex. B (chart of LSRP cost estimates). For example, McKesson, Safety-Kleen, and Legacy Vulcan, the Defendants responsible for the 600 Doremus Avenue Site, have demanded $163,000 in total costs before they will produce 7,818 documents from their LSRP's files. Ex. C (6-17-22 ltr. from McKesson to OxyChem) at 1-2. Most of that amount ($145,000, or $18 per document) is to compensate counsel for a linear review of documents and preparation of a privilege log. *Id.*

But because of an LSRPs duties as described above, an LSRP site files do not *need* to be reviewed for responsiveness or privilege. OxyChem has raised its concerns with the SPG Defendants and proposed alternative approaches, but these proposals have been almost universally rejected. *See* Ex. D (compilation of correspondence between OxyChem, Defendants, and LSRPs). Some Defendants have even argued that by seeking to meet and confer regarding the necessity of the estimated costs, OxyChem has forfeited its right to enforce its subpoenas. *See* Ex. E (8-11-2022 ltr. from Golder to OxyChem).

Many SPG Defendants have forced OxyChem to obtain basic information about the environmental condition of upland sites from LSRPs through third-party discovery. *See* Dkt. 2115 (7-21-2022 ltr. from Haworth to Special Master) at 2 ("Pitt-Consol [is] one of—if not the only—party who proactively searched and produced responsive, non-privileged documents from its consultant."). These Defendants should not now be permitted to demand more than a million dollars in production costs before OxyChem can obtain that information.

3. **Documents in the possession of CPG consultants whose fees the SPG Defendants seek to recover as response costs do not require document-by-document review.**

The SPG Defendants' failure to produce the documents relating to its alleged $166 million in response costs has been the subject of extensive motion practice.[4] Throughout those prior proceedings the SPG claimed that because its member Defendants charged the CPG's "common

---

[2] Ex. F (NJDEP 2014. "Overview of the Licensed Site Remediation Professional (LSRP) Program."

[3] *See* 7:26I-6.27 ("An LSRP shall maintain and preserve all data, documents, records, and information concerning remediation activities at each contaminated site the LSRP has worked on including, but not limited to, technical records, contractual documents, raw sampling data, and monitoring data."); N.J.A.C. 7:26I-6.19 ("LSRP shall respond to public inquiries for information when the person responsible for conducting the remediation designates the LSRP as the point of contact for public inquiries…").

[4] *See* Dkt. 1866 (OxyChem's Motion to Compel); Dkt. 1842 (SPG's Opposition); Dkt. 1889 (SPG Update); Dkt. 1891 (OxyChem Request for Oral Argument). The Special Master ordered the SPG to produce these documents in January 2022 (Dkt. 1932).

Special Master Thomas P. Scrivo, Esq.
December 9, 2022
Page 5

counsel" with maintaining the group's non-privileged documents, OxyChem should obtain those documents directly from the CPG's consultants.[5]

But the SPG now insists OxyChem must pay millions of dollars in review costs to obtain those documents. The SPG estimates that the costs shifted to OxyChem to produce the CPG consultants' documents will total $2,899,700. *See* Ex. G (table of CPG consultant cost estimates). One of those consultants, Integral, provided in its letter to OxyChem a breakdown of the cost estimate for its documents:[6]

| Integral Consulting Inc. | |
|---|---|
| Summary of Budget | Budget Estimate |
| Internal Budget | $111,256.20 |
| Integral Outside Counsel (does not include any costs of defendants' outside counsel) | $21,351.00 |
| Digital Project and Email Data | $658,378.60 |
| SPG Privilege Review (provided by SPG counsel)[1] | $735,444.00 |
| Total | $1,526,429.80 |

OxyChem has repeatedly requested that these consultants use search terms or another approach to reduce these estimated costs, and has conferred with SPG counsel for months. In every instance, OxyChem's proposals have been denied and the SPG has refused to modify its approach. *See, e.g.*, Ex. H (10-06-22 ltr. from Moffatt & Nichol to OxyChem) at 1 (declining to modify review "to achieve a cost savings for your client").

These privilege review costs cannot be shifted to OxyChem. Like the LSRP documents discussed above, the SPG is free to conduct any privilege review it chooses at whatever cost its dozens of members are willing to share. But it cannot shift those costs to OxyChem, and it cannot continue to dodge compliance with OxyChem's subpoenas and each SPG Defendants' obligation to provide discovery relating to their alleged response costs.

---

[5] *See* Ex. I (Tr. of 11-10-2021 Oral Argument) at 20:22-21:4 ("The consultants are the ones performing all of this work, pursuant to these agreements, and we just entered a stipulation, which you're aware of, to govern a process we're producing documents from the consultants.").

[6] Ex. J (10-28-2022 letter from Integral to OxyChem). Integral's letter notes that its "Estimated Budget costs for SPG Privilege Review were provided independently by SPG counsel with no input, review, or approval by Integral Consulting, Inc, and/or its legal counsel." *See also* Ex. K (9-16-2022 ltr. from Windward to OxyChem) (estimating $136,250 for review by its own outside counsel and $121,146 for the SPG's review); Ex. L (10-12-2022 email from Anchor QEA to counsel for OxyChem) (estimating an additional $145,000 for the SPG's review).

Special Master Thomas P. Scrivo, Esq.
December 9, 2022
Page 6

                                      Respectfully submitted,

                                      Kathy D. Patrick

                                      /s/ *John J. McDermott*

                                      John J. McDermott

cc:    All counsel of record

226214057v4