**PretiFlaherty**

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

December 16, 2022

**VIA EMAIL AND ECF**

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009
tscrivo@oslaw.com

   RE: *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.*
      **Docket No. 2:18-cv-11273-MCA-LDW**

Dear Special Master Scrivo:

  In 2021, OxyChem proposed adoption of the Joint Stipulation and Order Regarding Production of Documents and Communications with Non-Party Consultants (ECF No. 1865) (the "Stipulation") because it wanted Defendants to bear the cost of pre-production review of its consultants' documents. In turn, OxyChem agreed to bear the cost of pre-production review of the Defendants' consultants' documents. The Stipulation explicitly provides for "costs reasonably necessary to collect, review (*for relevance and privilege*), and produce responsive documents."[1]

  Now, faced with the prospect of paying these estimated costs, OxyChem attempts to alter this agreement, insisting that Defendants and their consultants give up their right to pre-production relevance and privilege review and instead rely only on search terms. In response to Defendants' consultants' refusal to give up this important right, expressly embedded in the Stipulation, OxyChem has effectively paused its efforts under the Stipulation, once again perpetuating the very type of discovery delay that OxyChem repeatedly claims it wants to avoid. Far from refusing to produce documents, the SPG Defendants are awaiting OxyChem's confirmation of which documents it seeks. It is OxyChem that refuses to abide by the plain cost-shifting terms of the Stipulation. The Special Master should reject OxyChem's latest request to be excused from its agreed-upon obligations.

   **1. Background**

  On October 13, 2021, the SPG and OxyChem entered the Stipulation at issue.[2] Notably, the SPG and OxyChem negotiated and agreed upon the Stipulation to address OxyChem's purported concerns with excessive costs related to producing large volumes of consultant documents. Thus, the Stipulation provided cost-shifting provisions for Consultants who "opted into" the stipulated production process.

---

[1] ECF No. 1865 at 3 (emphasis added).
[2] Stipulation ¶ 6.

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
December 16, 2022
Page 2

      Under the Stipulation, the party employing the consultant provides a First Response that includes an index of electronic folders or email custodians the party reasonably expects to contain non-privileged responsive materials with volume estimates.[3] Within 30 days of receiving the First Response, the requesting party must provide the Designation, which designates folders or files the requesting party would like to be produced.[4] Within 45 days of receiving the Designation, the employing party then must provide a Second Response that includes "an estimate of the costs reasonably necessary to collect, review (*for relevance and privilege*), and produce responsive documents" from the Designation.[5] Finally, within 45 days of the Second Response, the requesting party must provide the Confirmation, which confirms the folders and files it would like produced and acknowledges responsibility for payment.

      Notwithstanding the fact that the SPG has provided Second Response cost estimates for all requested CPG consultants, OxyChem has yet to execute a single Confirmation for any of the CPG consultants as required by the Stipulation. Instead, OxyChem has launched a months-long campaign to persuade the CPG consultants to veer from the Stipulation and engage in a limited search term-based privilege review of the documents. The CPG consultants have all declined this request, citing the right to pre-production relevance and privilege review under both the Stipulation and the Protective Order and concerns that their clawback rights may not be sufficient to address privileged and client-confidential information that could be among the designated documents.

## 2. Argument

      OxyChem's insistence that Defendants' consultants forgo pre-production review because review costs are not "reasonably necessary" ignores the language of the Stipulation, OxyChem's own consultant review costs, and the Defendants' efforts to reduce their review and production costs.

      First, the Stipulation and the Protective Order expressly preserve the parties' rights to pre-production privilege and relevance reviews. The Stipulation provides at paragraph 6 that "[t]he Second Response shall provide an estimate of the costs reasonably necessary to collect, *review (for relevance and privilege)*, and produce responsive documents from the folders or boxes that have been designated."[6] Second, Paragraph 8(c) of the Stipulation incorporates Paragraph 8 of the Protective Order, which states "[n]othing contained herein is intended or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness and/or segregation of privileged or protected information before production."[7] Thus, the Stipulation specifically incorporates a relevance and privilege review within the Second Response and further clarifies that a party's signing of the Stipulation will not

---

[3] *Id.* ¶ 4.
[4] *Id.* ¶ 5.
[5] *Id.* ¶ 6 (emphasis added).
[6] ECF No. 1865 at 3.
[7] ECF No. 543.

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
December 16, 2022
Page 3

limit a party's right to conduct a relevance or privilege review.[8] The answer to the question before the Special Master is answered by the plain terms of the Stipulation and could not be any clearer.[9]

Beyond that, as a practical matter, OxyChem's search terms approach may violate a consultant's privilege/confidentiality obligations to other clients whose documents have been swept up by the Designation process. The prescreening process in the broad First Response phase is limited and therefore cannot be relied upon to filter out documents that may pertain to other clients. The consultants uniformly have confidentiality obligations for other clients, which would be violated if their documents were disclosed in this case.

Rather than limit review rights, the Stipulation contemplates that the requesting party will narrow its request if unsatisfied with the cost estimate provided under the Second Response. Paragraph 7 provides that the requesting party shall confirm *and/or modify* its Designation upon receipt of the budget and shall specify which documents it still wants produced.

The SPG Defendants have demonstrated their willingness to help OxyChem narrow its requests in accordance with the Stipulation, and with effective results. For instance, OxyChem's Designation for CPG Consultant, Anchor, initially requested 900,000 documents and 50,000 pages of hard copy documents. Anchor estimated the production of these documents would cost $625,000.[10] After meeting and conferring with Anchor to refine the documents OxyChem sought, OxyChem reduced its Designation to 80,000 emails and 40,000 pages of hard copy documents. Anchor estimated the production of these documents would cost $265,000.[11] OxyChem refining its Designation, a simple cost reduction measure expressly contemplated by the Stipulation, resulted in a cost reduction of nearly 60%. In general, OxyChem has not made comparable efforts to reduce its Designations with any CPG consultant aside from Anchor.

Notably, in all its correspondence on this issue, OxyChem points to its use of the search-term-based privilege review with its consultant Arcadis as support for insisting that every CPG and individual Defendant consultant applies this approach. But Arcadis's volume and cost is not analogous to any Defendants' consultant. Arcadis stands out as a clear outlier as OxyChem estimated $2.4 million dollars to produce 800,000 documents.[12] No SPG cost estimate stands even close to this amount. The closest SPG cost estimate is Integral at $790,985.[13] While there is some variation, CPG consultant cost estimates are in line with OxyChem's consultant estimates on a cost-per-document basis. For example, CPG consultant Anchor estimates $4 per document for production, while OxyChem estimates $3 per document and $9 per document, respectively, for

---

[8] OxyChem's December 9, 2022, letter repeatedly refers to a screening for "responsiveness" permitted under the Stipulation, *see* Ltr. at 2-4, but nowhere acknowledges that the Stipulation expressly preserves the right to review for *relevance*.
[9] The Special Master recently affirmed the parties' adherence to discovery processes agreed to in stipulations by granting Ashland's protective order. *See* ECF No. 2226.
[10] *See* Anchor's Initial Second Response, attached as **Exhibit A**.
[11] *See* Anchor's Supplemental Second Response, attached as **Exhibit B.**
[12] *See* Arcadis Second Response, attached as **Exhibit C**.
[13] *See* Integral Second Response, attached as **Exhibit D.**

P̲ʀᴇᴛɪ F̲ʟᴀʜᴇʀᴛʏ

Special Master Thomas P. Scrivo, Esq.
December 16, 2022
Page 4

Brown and Caldwell and Tetra Tech.[14] OxyChem conducted pre-production reviews for both Brown and Caldwell and Tetra Tech, so it's unclear why Defendants' consultants should not be permitted to conduct comparably priced reviews. OxyChem's use of a search term-based privilege review for Arcadis represented an atypical approach to account for a uniquely large volume of documents.

The case law OxyChem cites is not on point since the parties have agreed upon procedures to govern discovery in this particular case. Regardless of which party pays in the usual course, the parties here, *at OxyChem's request*, expressly agreed that the requesting party would pay for the responding party's review for privilege and relevance. Additionally, *Hopson v. Mayor and City Council of Baltimore*, is further inapposite given the relative size and states of the litigation. There, the court held that the "[o]ld world record-by-record pre-production privilege review" imposed costs that were disproportionate to the stakes of the litigation. *Hopson v. Mayor and City Council of Baltimore,* 232 F.R.D. 228, 244 (D. Md. 2005). However, the financial stakes in *Hopson* are miniscule in comparison to the stakes in this case and the costs of production at issue here are proportional.[15] Also, the SPG's reviews utilize modern document management technology to de-duplicate and promote efficiency however possible and thus are not "old world" reviews. OxyChem's assertions that the SPG's privilege review costs are not reasonably necessary only underscores OxyChem's hypocrisy in this process as OxyChem seemingly hopes all will forget its approach to document productions for its consultants.

In response to the SPG's subpoenas to OxyChem's consultants, OxyChem has delayed productions for over two years and conducted the same document-by-document privilege reviews it now condemns. On August 26 and September 28, 2020, the SPG served its subpoenas on OxyChem's consultants. On October 13, 2021, the SPG and OxyChem signed the Stipulation. Notably, OxyChem proposed the cost shifting agreement in the Stipulation precisely because OxyChem foresaw high production costs and wanted to shift those costs to the SPG.[16] In the year between the service of the subpoenas and the parties signing the Stipulation, the SPG pressed OxyChem to explain the ongoing delay of document productions. In response, OxyChem consistently pointed to rigorous and expensive pre-production privilege reviews of consultant documents as the reason for the delay.[17] Despite parroting the mandatory nature of a search-term based privilege review to CPG and individual Defendant consultants, OxyChem only conducted a search term-based privilege review for Arcadis and Exponent. OxyChem executed the same document-by-document privilege review of Brown and Caldwell and Tetra Tech documents that it

---

[14] *See* Brown and Caldwell and Tetra Tech Second Responses attached as **Exhibits E and F.**
[15] *Id.*
[16] *See* 4-19-21 OCC Status Conference Agenda Letter, ECF No. 1205 ("But OxyChem cannot agree to bear hundreds of thousands of dollars of costs, and to engage in a burdensome and expensive privilege review, just so the SPG can pursue a cost-free fishing expedition.")
[17] *See* 3-17-21 Status Conf. Tr. 30-31 (Jack McDermott: "The SPG's subpoenas prompted one of the contractors working on the design to send to the SPG and to Oxy, depending on which document we're talking about, a set of about 300,000 emails and attachments that we are making our way through pretty quickly. We're halfway done."); *see also* 3-17-21 Status Conf. Tr. 48-49 (Jack McDermott: "I have to tell you, I do not think there is a prospect that we're going to be able to resolve this, unless the SPG is willing to meaningfully narrow the scope. Because it is unduly burdensome for these consultants to have to produce these documents. Oxy has to review them for privilege.")

19797362.1

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
December 16, 2022
Page 5

now vigorously opposes. Overall, OxyChem aims to avoid paying for the privilege review of its own consultant documents *and* the privilege review of the Defendants' consultants' documents.

OxyChem's position that documents from Licensed Site Remediation Professionals ("LSRPs") do not require privilege review lacks support and ignores the fact that these consultants likely possess confidential material for other clients. In its attempt to support misguided conclusions on LSRP documents, OxyChem mischaracterizes N.J.A.C. 7:26I-6.19 by stating that LSRPs "[p]erform a non-privileged regulatory function that is incompatible with claims of privilege over responsive documents in their possession." The word "privilege" does not even appear in the text of this regulation. And, in footnote 3 of OxyChem's submission, OxyChem omits the last few words of N.J.A.C. 7:26I-6.19 which are "…pursuant to N.J.A.C. 7:26C-1.7(o)." OxyChem omitted the reference to N.J.A.C. 7:26C-1.7(o) because this regulation places the entirety of N.J.A.C. 7:26I-6.19 in the context of an LSRP's duty to the public in the event of an emergency discharge.[18] In fact, N.J.A.C. 7:26I-6.19(d) incorporates a confidentiality requirement that serves to protect the confidentiality interests of the LSRP's clients.[19] N.J.A.C. 7:26I-6.19 governs an LSRP's duty to the public in the event of an emergency discharge and in no way limits an LSRP's ability to conduct privilege reviews before producing documents.[20] Also, OxyChem hypocritically ignores the fact that it conducted document-by-document privilege reviews for its consultant with LSRP status—Brown and Caldwell.

The Stipulation preserves the SPG Defendants' right to conduct a document-by-document privilege review of documents in the possession of SPG Defendants' consultants and recover their fees for the same. OxyChem's contrary position again ignores that the Stipulation specifically provides for privilege reviews and that the consultants possess privileged and confidential materials, including confidential materials for other clients. As noted above, OxyChem proposed a cost shifting agreement precisely because OxyChem foresaw high production costs and aimed to shift those costs to the SPG.[21] Having sued scores of parties and subpoenaed dozens of consultants, OxyChem was well aware that it could be on the hook for significant review costs. When proposing and signing the Stipulation, OxyChem should have understood the costs associated with the SPG Defendants' consultant productions.

In addition to OxyChem's hypocrisy in opposing privilege reviews it conducted itself, OxyChem expresses frustration related to not receiving documents from CPG and individual

---

[18] *See* N.J.A.C. 7:26C-1.7(a) ("Immediately after a discharge commences, any person or persons responsible for a discharge who knows or should reasonably know of discharge shall immediately notify the department by following the requirements of the Discharge of Petroleum and Other Hazardous Substances rules at N.J.A.C. 7:1E-5.")
[19] *See* N.J.A.C. 7:26I-6.19(d); N.J.A.C. 7:26I-6.12 ("An LSRP shall not reveal information obtained in a professional capacity, except as may be authorized or required by law, without the prior consent of the client, if the client has notified the LSRP, in writing, that the information is confidential. The provisions of this section shall not apply to information that is in the public domain.")
[20] OxyChem misleadingly removed critical context from the excerpt in Pitt-Consol's submission [ECF No. 2231 at 4] in an effort to support its misguided conclusions on LSRPs. *See* ECF No. 2115. OxyChem's approach with Pitt-Consol further demonstrates it hypocrisy as OxyChem unreasonably sought burdensome, duplicative discovery and shifted those costs to Pitt-Consol.
[21] *See* fn 16.

PRETI FLAHERTY

Special Master Thomas P. Scrivo, Esq.
December 16, 2022
Page 6

Defendant consultants[22] and stating that the SPG "[c]annot continue to dodge compliance with OxyChem's subpoenas…"[23] OxyChem's Confirmations were due to the majority of CPG consultants 123 days ago but still have not come through. To be clear, OxyChem halted this process, not the SPG. And, to date, *over two years* after the SPG requested the documents from OxyChem's consultants, OxyChem has only produced approximately 40% of the consultant documents requested. OxyChem currently delaying the consultant subpoena process by insisting the CPG consultants forgo a privilege review represents OxyChem's latest effort to impede discovery. OxyChem maintains its strategy of delay and gamesmanship because it continues to yield OxyChem's intended result—not producing documents from its consultants.

   For the foregoing reasons, the Special Master should reject OxyChem's request to avoid the plain terms of the Stipulation that OxyChem itself proposed.

                Respectfully Submitted,

                Jeffrey D. Talbert

cc:  All counsel of record

---

[22] For example, OxyChem cites the Second Response of Defendants McKesson Corporation, Safety-Kleen and Legacy Vulcan [ECF No. 2231 at 4] without mentioning that, subsequently, the parties engaged in a meet and confer resulting in a lowering of the cost estimate as well as offering other proposals aimed at expediting review and reducing costs without giving up their right to conduct a relevance and privilege review. *See* Email from Adam Pearse to Charles Dennen (Sept. 28, 2022), attached as **Exhibit G.**
[23] ECF No. 2231 at 5.