

William S. Hatfield
Director

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4511 Fax: 973-639-8320
whatfield@gibbonslaw.com

December 16, 2022

**VIA ECF**

Special Master Thomas P. Scrivo, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009
tscrivo@oslaw.com

>   Re:   *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al*
>         **Docket No. 2:18-cv-11273-MCA-LDW**

Dear Special Master Scrivo:

On behalf of defendant Givaudan Fragrances Corporation ("Givaudan"), we write in response to Occidental Chemical Corporation's ("OxyChem") December 9th letter (Dkt. 2231) related to the estimated costs for production of documents under the subpoenas that OxyChem issued to third party consultants, and to correct several of the misstatements included therein concerning Givaudan and/or its consultants at Matrix New World Engineering ("Matrix") in this matter.

In its December 9th letter, OxyChem requests a conference with the Special Master to address various disputes with defendants related to the forty-two (42) subpoenas issued by OxyChem to both group consultants and individual party consultants (including Givaudan's consultants at Matrix). OxyChem takes the position that the estimates provided by parties under the Joint Stipulation and Order Regarding Production of Documents and Communications with Non-Party Consultants ("Joint Stipulation") (Dkt. 1865) are excessive and include costs that are not reasonably necessary. For the reasons that follow, OxyChem's arguments are without merit and should be rejected.

At the outset, it is worth highlighting OxyChem's selective and self-serving citations to the Joint Stipulation. In arguing that the cost estimates it received are excessive and unreasonable, OxyChem states that the Joint Stipulation's goal is to ensure that discoverable information is produced efficiently and effectively. OxyChem then argues that the Joint Stipulation accomplishes this goal "by providing to a party requesting such information a list of responsive files in a consultant's possession and an estimate of costs 'reasonably necessary' to produce those files." (Dkt. 2231 at pg. 2). However, that is not what the Joint Stipulation provides. Rather, it states that the Second Response (cost estimate) "shall provide an estimate of the costs reasonably necessary <u>to collect, review (for relevance and privilege), and produce</u> responsive documents ."

GIBBONS P.C.

Special Master Thomas P. Scrivo, Esq.
December 16, 2022
Page 2

(Dkt. 1865 at ¶ 6, emphasis added). Having negotiated and agreed to the Joint Stipulation, OxyChem cannot now seek to change its terms and refuse to reimburse a party for conducting the type of review that is explicitly permitted. The Joint Stipulation is a binding agreement and OxyChem cannot ignore its express terms.[1]

The primary argument raised by OxyChem is that because many of its subpoenas were issued to Licensed Site Remediation Professionals ("LSRP"), the likelihood of OxyChem's subpoenas implicating privilege concerns is minimal. This argument is not supported by any legal authority. On the contrary, the regulations governing LSRPs explicitly include a requirement to maintain confidentiality over client information, except where such information is in the public domain.[2] Further, in making its unsupported argument, OxyChem misconstrues and misquotes the provisions of the Joint Stipulation and also, as it pertains to Givaudan and its consultant, mischaracterizes the nature of the work conducted by Matrix and the nature and scope of the subpoena and document requests propounded by OxyChem on Matrix.

First, Givaudan notes that OxyChem's primary argument is based on a faulty premise as it relates to Givaudan's consultants at Matrix. This is because the work performed by Matrix for Givaudan is not limited to work by an LSRP. Indeed, the majority of Matrix's work for Givaudan, and the vast majority of Matrix documents sought by OxyChem, falls outside of the LSRP role that is served by one particular individual at Matrix. In fact, through its subpoena and its subsequent "Designation" under the Joint Stipulation, OxyChem has confirmed that it is seeking not only Matrix files, but thousands of files from Givaudan's former remedial consultants whose work predates the LSRP program. As such, OxyChem's argument that the production of such materials only minimally implicates issues of privilege is without merit. Regardless, Givaudan's right to conduct a detailed privilege review of its consultant's file prior to production is undeniable, and is explicitly provided for in the Joint Stipulation (*see* Dkt. 1865 at ¶ 6).

Second, OxyChem argues that a party's intention to conduct a document-by-document review is not necessary, and it believes therefore that the costs associated with same are not "reasonably necessary" under the Joint Stipulation. OxyChem cannot negate a defendant's right to conduct a privilege review prior to production. Givaudan's position that such a review is necessary is not subject to OxyChem's whims or slanted views in this proceeding, where OxyChem improperly withholds responsive documents claiming privilege (where there likely is none) on the one hand, while it attempts to dictate to defendants whether they should even review documents for responsiveness and privilege prior to production on the other. Time and again in this case, OxyChem seeks to have two different sets of rules apply to the litigants, and also seeks to ignore or undercut the stipulations entered by the parties to contain and manage discovery in this complex litigation.

---

[1] *See* Special Master Decision Denying OxyChem's Motion to Compel (Dkt. 2225), noting that "a party is bound by his stipulations as a stipulation … is akin to a contract" (quoting *United States v. Morales*, 684 F.3d 749, 755 (8th Cir. 2012), and denying OxyChem's motion as it "contravenes the express terms of the Joint Sampling Protocol." (Dkt. 2225 at pg. 7).

[2] *See* N.J.A.C. 7:26I-6.12

GIBBONS P.C.

Special Master Thomas P. Scrivo, Esq.
December 16, 2022
Page 3

      Moreover, at least with respect to Givaudan, a large portion of the costs provided by Givaudan in its "Second Response" (cost estimate) relate directly to work that has already been done and costs incurred in response to the subpoena to Matrix at the <u>specific request of OxyChem</u>. Attached hereto as Exhibit A is a demand letter sent by Givaudan to OxyChem dated November 15, 2022, which details the costs incurred by Givaudan and its consultants in responding to OxyChem's requests and its several revised Designations of files. OxyChem cannot request that parties such as Givaudan conduct work for OxyChem's benefit and then subsequently object to reimbursing those costs on the basis that they are unnecessary.[3]

      For all of the above reasons, Givaudan requests that OxyChem be ordered to reimburse the costs that Givaudan's counsel and consultants have incurred to date in responding to OxyChem's many requests and its several iterations of its Designation. Givaudan also joins in the arguments raised on behalf of the Small Parties Group ("SPG") (Dkt. 2243), of which Givaudan is a member. Further, to the extent the Special Master elects to hold a conference on these issues, or to request briefing on these issues, Givaudan requests an opportunity to be heard on this matter and reserves the right to submit additional information and briefing, if that would be helpful to the Special Master in addressing these important issues.

      Thank you.

Sincerely,

*/s/ William S. Hatfield*

William S. Hatfield
Director

cc:    All Liaison Counsel (via ECF)

---

[3] Givaudan also notes that the cost estimates referenced for Matrix in Exhibit B to OxyChem's December 9th letter are outdated and do not represent the most recent Second Response provided by Givaudan, which was revised at OxyChem's request in light of the many requests by OxyChem to amend its Designation.