

2555 Grand Blvd.
Kansas City
Missouri 64108
t 816.474.6550
f 816.421.5547

December 19, 2022

Special Master Thomas P. Scrivo
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
tscrivo@oslaw.com

Re:   ***Occidental Chemical Corp. v. 21st Century Fox America, Inc., et al.,***
***Docket No. 2:18-cv-11273-MCA-JAD***

**Motion for Leave to Serve Discovery Regarding Financial Condition**

Dear Special Master Scrivo,

Small Parties Group ("SPG") members Nokia of America Corp. ("Nokia"), Pharmacia LLC ("Pharmacia"), and Public Service Electric and Gas Company ("PSE&G") (collectively "Moving Defendants") respectfully request that the Special Master allow discovery of Plaintiff Occidental Chemical Corporation's ("OxyChem") financial condition. The Special Master previously declined to allow discovery of financial condition, but two recent events have made OxyChem's financial condition directly relevant and an appropriate subject of discovery:

(1) In an attempt to limit its liability and exposure for future cleanup work at the Diamond Alkali Superfund Site ("Site"), OxyChem informed the United States Environmental Protection Agency that it could not provide the requisite financial assurance for future cleanup work that EPA seeks from OxyChem for the Site.[1]

(2) EPA recently lodged a Consent Decree with the Court, which proposes a settlement with certain parties that is premised upon EPA's finding that OxyChem is liable for *nearly all* past and future costs for the Site. Consent Decree, *United States v. Alden Leeds, Inc.*, No. 2:22-cv-07326-KM-ESK (D.N.J. Dec. 16, 2022), ECF No. 2-1 [hereinafter "Consent Decree"].

The Court, in conducting an equitable allocation among all remaining parties in this litigation, will need to know if OxyChem can pay its nearly 100% share of the cleanup of

---

[1]     OxyChem provided this statement to the Court and the Special Master as well. ECF No. 2100-1.

the Passaic River. Accordingly, the Special Master should allow discovery of OxyChem's financial condition.

## I.      Background

OxyChem is suing Defendants under CERCLA for cost recovery and contribution for its past and future costs. OxyChem alleges it incurred those costs investigating and remediating environmental contamination at the Site. Defendants have counterclaimed for contribution for their own costs incurred to date. The past and potential future costs at issue in this litigation exceed $2 billion.

### a.  OxyChem told EPA it cannot provide financial assurance

As the Special Master is aware, EPA has been working to reach settlements to secure cleanup of Operable Units ("OU") 2 and 4 of the Site, which are also the subject of this litigation. In March 2022, EPA invited OxyChem (and several other parties including Moving Defendants) to provide a "good faith offer" for the performance of future remedial work for OUs 2 and 4. OxyChem provided EPA its response in a letter dated June 27, 2022 ("Good Faith Offer" letter).[2] OxyChem also filed its Good Faith Offer letter with the Court on July 12, 2022. ECF No. 2100-1. In that letter, OxyChem represented to EPA that it could not provide EPA the financial assurance required of a party performing the necessary response actions for the Site. Ex. 1 at 7.

### b.  EPA has found that OxyChem is nearly 100% responsible for the damage to and cleanup of the Passaic River

EPA's Consent Decree is based upon an allocation conducted by an EPA-appointed allocator. The Consent Decree will settle the potential liabilities of 85 parties, including 65 parties sued by OxyChem in this litigation. EPA's appointed allocator found that OxyChem should bear up to 99.94% of the costs associated with OU-2, due primarily to (1) the extreme toxicity and risk to human health and the environment posed by the hazardous substances discharged from OxyChem's Lister Avenue facility, and (2) the intentional and knowing conduct of Lister Avenue facility employees and management over several decades that caused hazardous substance releases to the Passaic River. *See* David Batson, Esq., *Diamond Alkali Superfund Site OU2 Allocation Recommendation Report* at 2004–05 (Dec. 28, 2020) (Attach. K: Allocation Operations Spreadsheet), available at https://semspub.epa.gov/work/02/609904.pdf (attributing 99.9396103% share to OxyChem); *see also id.* at 2575–87 (Attach. L: OxyChem Allocation Calculation) (applying the highest level culpability factor for any party to OxyChem for its "intentional action[s] with knowledge of significant risk to human health and the environment"). The Consent Decree includes OU-4 because the "interim remedy selected for OU-4 will complement the remedy selected for OU2." Consent Decree at 6. EPA has also concluded that OU-2 and OU-4 have similar contamination and risk. *Id.*

---

[2]      Occidental Chemical Corporation Response to EPA Region 2 Letters dated March 2, 2022, and May 31, 2022 (attached hereto as Exhibit 1).

### c. Meet and confer

Moving Defendants met and conferred with OxyChem via teleconference on November 18, 2021 in an attempt to resolve this dispute. OxyChem would not agree to allow Moving Defendants' discovery, and continues to refuse all parties any discovery about its financial condition. *See* ECF No. 2227-9 (OxyChem's Letter to the Special Master Requesting a Protective Order to SPG's Notice of Rule 30(b)(6) of Deposition of OxyChem, Exhibit I, Dec. 2, 2022).

## II.   Legal Standard

Federal Rule of Civil Procedure 26 allows parties to gather "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Courts "construe Rule 26 'broadly to encompass *any matter* that bears on, or that reasonably could lead to other matters that could bear on, *any issue that is or may be in the case.*'" *In re Gerber Probiotic Sales Pracs. Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015) (emphasis added) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (ruling that medical records of plaintiffs' children are relevant to false marketing claims even though medical conditions not raised in pleadings).

## III.   Argument

Moving Defendants are entitled to take discovery of OxyChem's financial status, due to OxyChem's intentional introduction of its financial capabilities into this litigation, and the significant likelihood of OxyChem being ordered liable for nearly 100% of Site costs. Accordingly, Moving Defendants request the Special Master grant them leave to file their proposed discovery (Ex. 2).

In CERCLA contribution actions such as this, a party's ability to pay is a recognized equitable allocation factor commonly considered by Courts. *See Trinity Indus., Inc. v. Greenlease Holding Co.*, 173 F. Supp. 3d 108, 227 (W.D. Pa. 2016) (listing a "party's ability to pay its share of the cost" as a critical factor when courts equitably allocate response costs), *vacated on other grounds*, 903 F.3d 333 (3d Cir. 2018); *see also Gavora, Inc. v. City of Fairbanks*, No. 4:15-cv-00015-SLG, 2017 WL 3161626, at *7–9 (D. Alaska July 25, 2017) (same); *United States v. Davis*, 31 F. Supp. 2d 45, 63 (D.R.I. 1998) (same), *aff'd* 261 F.3d 1 (1st Cir. 2001).

OxyChem has consistently opposed discovery of its financial condition because, it has argued, it has not suggested an inability to pay.[3] But only the context of a lawsuit—not a party's self-serving framing of the issues—defines relevance. *See In re Gerber*, 306 F.R.D. at 528 ("[T]he boundaries of relevance under Rule 26 depend upon the context of each action"). In CERCLA actions, courts often consider equitable factors outside of the

---

[3]     *See* ECF No. 1150 at 4 ("The SPG claims it needs this information 'to the extent OCC intends to make any equitable arguments based on its financial condition, or its (in)ability to pay for the cleanup of the Passaic River.' But OxyChem has not made such arguments." (citation omitted)).

pleadings.[4] *See, e.g.*, *HLP Props., LLC v. Consol. Edison Co. of N.Y., Inc.*, No. 14 Civ. 1383(LGS), 2015 WL 5092627, at *6–7 (S.D.N.Y. Aug. 28, 2015) (allowing discovery into financial issues in CERCLA allocation proceeding because "additional equitable factors outside the pleadings may be relevant"). Indeed, CERCLA itself provides that only the Court, not the parties, determines which equitable factors it will consider. 42 U.S.C. § 9613(f)(1) ("In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors *as the court determines are appropriate.*" (emphasis added)). Moving Defendants are entitled to this discovery "to ensure that the relevant equities are considered." *HLP Props.*, 2015 WL 5092627, at *6.

Through its Good Faith Offer to EPA, OxyChem has placed its financial condition squarely in issue. Specifically, OxyChem has requested that EPA make an exception to its long-standing guidance which requires a party who performs cleanup work to provide long-term financial assurance for the work to "help ensure that potentially responsible parties (PRPs), and not public funding sources, bear the financial burden of completing Superfund cleanups." EPA, *Financial Assurance in Superfund Settlements and Orders* (2022), https://www.epa.gov/enforcement/financial-assurance-superfund-settlements-and-orders. OxyChem asked EPA to apply this policy differently to OxyChem because, in OxyChem's own words, it "certainly" could *not* "post financial assurance for a multi-decade scope of work of this magnitude." Ex. 1 at 7 (emphasis omitted). OxyChem wrote that if EPA required OxyChem to provide financial assurance for the entire length of the cleanup work, as EPA typically requires, then OxyChem's performance would become "impossible." *Id.*

The parties and the Court are entitled to full transparency about OxyChem's financial structure and any transactions that may limit its ability to meet its substantial future obligations, especially in light of EPA's assessment of OxyChem's responsibility for Site costs. OxyChem's ability to fund and guarantee future funding for its substantial share of remediation is highly relevant. Fact discovery is the only means by which the parties can gather the necessary facts for this Court to evaluate this factor.

As a wholly-owned subsidiary of Occidental Petroleum Corporation, a publicly-traded company, OxyChem's financial picture cannot be discerned from public information. *See* Declaration of Leo J. Mullin, Ex. 3, at ¶¶ 9–11. The company can be subject to a host of transactions with its parent, affiliated companies, and others, with the effect on OxyChem's finances hidden from view. For example, it is not uncommon for a parent corporation to draw down on or leverage its debt with the subsidiary's remaining assets. But there is no way to know from Occidental Petroleum's publicly available information whether it is sufficiently maintaining OxyChem's ability to meet future obligations and minimize the risk of future default. *Id.* at ¶ 12 ("Acquiring reliable financial information and acquiring updates on the financial information helps to

---

[4] In a CERCLA contribution action, a party cannot even plead ability to pay as an affirmative defense because CERCLA limits affirmative defenses to those listed in § 107(b), which does not list ability to pay as a defense. 42 U.S.C. § 9607(b); *see also United States v. Kramer*, 757 F. Supp. 397, 425 (D.N.J. 1991) (explaining that CERCLA imposes liability "subject only to the defenses set forth in subsection (b)" of § 107).

minimize the risk of potential default."). A future default could expose other responsible parties to liability well beyond their allocated shares—an important consideration, given that the EPA's settlement shows that OxyChem has a nearly 100% share of liability.

Moving Defendants include with this Motion their proposed discovery that they intend to serve on OxyChem should this Motion be granted (Ex. 2). This discovery is consistent with the information typically sought by EPA in determining the financial condition of a wholly-owned subsidiary whose information is not otherwise publicly available, as is the case with OxyChem. (Ex. 3 at ¶¶ 13–14.)

### IV.    Conclusion

OxyChem has expressly introduced its financial condition into this case by arguing it cannot post financial assurance for a cleanup. And EPA believes OxyChem is nearly 100% responsible for that cleanup. Moving Defendants respectfully request that the Special Master allow discovery into OxyChem's financial condition. This discovery should include, but not be limited to, allowing additional discovery of OxyChem's ability to meet its obligations under federal environmental laws and its ability to pay for or perform cleanups at the Site, as well as to obtain financial assurance required by federal environmental regulations, as set forth in Moving Defendants' proposed Request for Production of Financial Documents (Ex. 2).


Respectfully submitted,


/s/ Joseph H. Blum


David R. Erickson (admitted *pro hac vice*)
Joseph H. Blum (NJ Bar No. 010211984)
Shook, Hardy & Bacon, L.L.P.


*Counsel for SPG Members Nokia of America Corp., Pharmacia LLC, and Public Service Electric & Gas Company*