**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>21ST CENTURY FOX AMERICA, INC., *et al*.,<br><br>　　　　　　　　Defendants. | Civil Action No. 18-11273 (MCA)(LDW)<br><br>**SPECIAL MASTER DECISION DENYING OCCIDENTAL CHEMICAL CORPORATION'S MOTION FOR A PROTECTIVE ORDER** |

## INTRODUCTION

This matter comes by way of a motion (the "Motion") filed by Plaintiff, Occidental Chemical Corporation ("OxyChem") on November 9, 2022, seeking a protective order and quashing the Small Parties Group Defendant's ("SPG Defendant's") notice to take the deposition of Frank Parigi ("Deposition Notice") (ECF 2213).

OxyChem claims deposing Mr. Parigi, General Counsel and Vice President of OxyChem affiliate, Glenn Springs Holdings, Inc. ("GSH"), intrudes on the attorney-client privilege because he provides legal advice to OxyChem on remediation in relation to the Diamond Alkali Superfund Site ("DASS") and this lawsuit.

On November 22, 2022, SPG Defendants filed opposition to the Motion (ECF 2223) and seek to depose Mr. Parigi as a fact witness relating to his non-legal activities performed as Vice President of GSH. SPG Defendants claim that they are seeking to depose Mr. Parigi on deposition topics that OxyChem has already deemed acceptable for depositions of other GSH Vice Presidents.

The Motion is fully briefed by the parties, and therefore, is ripe for decision. For the reasons set forth herein, the Motion is denied.

1

## BACKGROUND

Mr. Parigi has worked as Vice President and General Counsel for GSH since 2005. GSH is an OxyChem affiliate focused on environmental remediation. According to SPG Defendants, GSH is an Occidental Petroleum subsidiary and Occidental Petroleum's in-house environmental remediation company.

According to SPG Defendants and the deposition of Alan Mack on March 26, 2015, Mr. Parigi succeeded the former GSH President, Jo Ellen Drisko. In Ms. Drisko's deposition, she confirmed that she was not a lawyer, and thus could not have legal responsibilities in her role with GSH.

On June 28, 2019, Mr. Parigi signed the verification to OxyChem's interrogatory responses as Vice President and General Counsel of GSH, and stated within the verification:

> In accordance with Local Civil Rule 33.1(b), the information contained in OxyChem's Responses to the Standard Set of Interrogatories was primarily obtained from the following documents: (1) the 1985 Site Evaluation, 80 Lister Avenue (MAXUS2519470); (2) the June 10, 1983 DSC Report to NJDEP on Lister Avenue Facility (MAXUS1004050); and (3) the June 1, 1961 Engineering Design Report, Newark Rehabilitation (MAXUS 1213753).

On November 12, 2020, SPG Defendants submitted a letter requesting an order compelling OxyChem to collect and produce documents from the custodial file of Mr. Parigi ("November 12 Request").

On November 16, 2020, OxyChem sent a letter to the Special Master in advance of the monthly conference scheduled for November 18, 2020, asserting that "SPG [Defendant]'s contention that Mr. Parigi functions in a business role with respect to the Passaic River. . . is simply inaccurate [because] with respect to the issued relevant to this case, Mr. Parigi operates only as counsel." Further, OxyChem's letter asserts that "Mr. Mack mistakenly stated that Mr. Parigi was

2

the successor to Jo Ellen Drisko, the former president of GSH." OxyChem asserted that Mr. Drisko's role was assumed not by Mr. Parigi, but by then GSH President Mike Anderson.

On December 14, 2020, SPG Defendants proposed that OxyChem remove Mr. Parigi's name from its *Rule* 26 initial disclosures and not to call him as a witness to the case, and in return, SPG Defendants would withdraw the November 12 Request. SPG Defendants reserved its right to "seek other discovery relating to Mr. Parigi's relevance in this case should discovery developments so warrant." OxyChem agreed and removed Mr. Parigi from its *Rule* 26 initial disclosures, and SPG Defendants withdrew the November 12 Request.

On February 24, 2021, Mr. Parigi verified OxyChem's responses to the SPG Defendants' Second Set of Interrogatories. The verification stated as follows:

> In accordance with Local Civil Rule 33.1(b), the information contained in OxyChem's Amended Responses to the Small Parties Group's Second Set of Interrogatories to Plaintiff was primarily obtained from the following documents[…]

On March 18, 2022, SPG Defendants requested dates from OxyChem to depose 18 witnesses, including Mr. Parigi.  On March 25, 2022, OxyChem responded by letter objecting to SPG Defendants' request to depose Mr. Parigi. The parties met-and-conferred on March 30, 2022, and according to OxyChem, the parties agreed to list the deposition for Mr. Parigi after all other OxyChem witnesses after completed to allow the parties, and if necessary, the Special Master, to determine whether Mr. Parigi's deposition is warranted. On April 1, 2022, OxyChem memorialized this agreement in a letter sent to SPG Defendants, which tentatively scheduled Mr. Parigi's deposition on September 29, 2022, and reaffirmed OxyChem's objections. On July 15, 2022, OxyChem scheduled other depositions and reiterated its prior position in the meet-and-confer.

On September 14, 2022, OxyChem sent a letter to SPG Defendants refusing to produce Mr. Parigi for deposition until SPG Defendants were "able to meet its burden after the deposition of all other OxyChem-affiliated witnesses had been completed." On September 29, 2022, the parties did not proceed with the scheduled deposition of Mr. Parigi, but instead met-and-conferred. The parties did not reach an agreement.

On October 6, 2022, SPG Defendants served the Deposition Notice listing eight topics ("Parigi Topics"):

(1) response activities of [OxyChem], including its predecessors, affiliates, and indemnitors, related to the Diamond Alkali Superfund Site (DASS);

(2) the indemnity relationship between Maxus/Tierra and [OxyChem] relating to DASS;

(3) the performance of obligations relating to DASS arising under settlement agreements with U.S. EPA and/or NJDEP;

(4) the transition of DASS work and documents from Maxus/Tierra to OCC;

(5) communications between [OxyChem] and Glenn Springs Holdings, Inc. (GSH), on the one hand, and U.S. EPA and NJDEP, on the other, relating to the DASS;

(6) costs incurred or estimated to be incurred by [OxyChem], GSH, and/or Occidental Petroleum Corporation related to the DASS;

(7) [OxyChem]'s interrogatory answers in the above-captioned litigation that were verified by Mr. Parigi; and

(8) public testimony and statements provided or made by Mr. Parigi relating to DASS.

OxyChem claims that the Parigi Topics are similar to the topics in the deposition notice of Enrique Castro (GSH Director of Operations) from July 20, 2022, the deposition notice of Mike Anderson (GSH President) dated October 6, 2022, and the two Rule 30(b)(6) deposition notices for OxyChem both dated October 6, 2022.

4

On November 9, 2022, OxyChem filed the Motion seeking a protective order from the SPG Defendants' notice of deposition of Mr. Parigi. On November 22, 2022, SPG Defendants filed opposition to the Motion.

## LEGAL STANDARD

"The purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings and thus the boundaries of relevance under [*Federal Rule of Civil Procedure*] 26 depend on the context of each action." *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015). To that end, *Rule* 26 provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.
>
> [FED. R. CIV. P. 26(b)(1).]

"Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Courts construe *Rule* 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253, 265 (1978); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (citation omitted).

However, courts have the discretion to determine the scope of discovery. *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. at 528. A "court may issue a protective order to regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 159712, *5 (D.N.J. Nov. 24, 2015) (citations omitted). *Federal Rule of*

*Civil Procedure* 26(c)(1) provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses, including . . . (A) forbidding the disclosure or discovery; . . . [or, *inter alia*, ] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .
>
> [FED. R. CIV. P. 26(c) (1)(A)-(D).]

Indeed, the objective of *Federal Rule of Civil Procedure* 26(c) is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Notes of Advisory Committee on 1983 amendments, Note to Subdivision (b); see also In re EthiCare Advisors, Inc.*, 2020 U.S. Dist. LEXIS 144816, at *6 (D.N.J. Aug. 12, 2020) (stating courts may limit discovery when information sought is not proportional to needs of case considering factors including burden and expense). To that end, the grounds for "limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c)." *Id.*

The *Rule* "places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To overcome the presumption, the party seeking the protective order must show good cause by demonstrating particular need for protection." *Cipollone*, 785 F.2d at 1121; *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone.*785 F.2d at 1121 (citations omitted). The "harm must be significant, not a mere trifle." *Id.* (citations omitted).

"Good cause" is defined as a "showing that disclosure will work a clearly defined and serious

injury to the party seeking closure." *Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir. 2007) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1986)). Good cause is established based on "balancing a number of considerations." *Arnold*, 477 F.3d at 108 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)). The factors include but are not limited to: "(1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Arnold*, 477 F.3d at 108 (citations omitted). Issuance of a protective order will depend on whether the moving party has established good cause based on an analysis of pertinent factors.

In the District of New Jersey, courts considering a motion for protection from a deposition of counsel apply the "*Shelton* test" or the "*Johnston* test." *See Shelton v. AM. Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir. 1986); *see also Johnston Dev. Grp., Inc. v. Carpenters Loc. Union No. 1578*, 130 F.R.D. 348, 353 (D.N.J. 1990). The *Shelton* test "places the burden of proof on the party seeking the deposition." *Memory Bowl v. North Pointe Ins. Co.*, 280 F.R.D. 181, 184 (D.N.J. 2012). Under *Shelton*, a deposition of an opposing party's in-house counsel may proceed only if:

    (1) No other means exist to obtain the information;

    (2) The information sought is relevant and non-privileged; and

    (3) The information sought is crucial to the preparation of the case.

*See Shelton*, 805 F.2d at 1327. Under the *Johnston* test, the party seeking to preclude an attorney's

deposition must establish undue burden or oppression measured by:

>  (1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs;
>
>  (2) the availability of the information from other sources that are less intrusive into the adversarial process; and
>
>  (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony.

*Johnston*, 130 F.R.D. at 353.

## **ANALYSIS**

SPG Defendants seek relevant and crucial information that is proportionate to the case and is likely to lead to information that is within the inquiring party's legitimate discovery needs. *Rule 26(b)(1)* states "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). However, discovery is not unlimited. Parties may move for a protective order, in which case, the moving party bears the burden of persuasion for why protection is required. *Cipollone*, 785 F.2d at 1121.

Similarly, the *Johnston* test used by courts in the District of New Jersey for determining whether attorneys may be protected from being deposed places the burden on the party seeking protection. *Johnston*, 130 F.R.D. at 353. The *Johnston* test substantially overlaps with the *Shelton* test, except the *Shelton* test places the burden on the party seeking the deposition. *Id.* While both tests are used in the Third Circuit, the *Johnston* test is more favored. *See Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 2017 WL 6539309, at *2 (W.D. Pa. Dec. 21, 2017). The *Johnston* case and its progeny are also more applicable to this case they involved the deposition of in-house counsel. *See Johnston*, 130 F.R.D. at 355; *see also Younes v. 7-Eleven, Inc.*, 2015.U.S. Dist. LEXIS 192172, at *15 (D.N.J. Mar. 11, 2015); *Elec. Ins. Co. v. Electrolux N. Am., Inc.*, 2011 U.S. Dist.

LEXIS 159216, at *2-3 (D.N.J. Mar. 4, 2011). The *Shelton* case considers depositions of opposing counsel more generally.  To that end, the *Johnston* test will be used to evaluate the Motion.

A.       **Relative Quality of Information in the Attorney's Knowledge**

The first factor of the *Johnston* test requires an analysis of the discovery's relevance and proportionality. Under the *Johnston* test, OxyChem, in order to receive a protective order, must show that the relative quality of information in the attorney's knowledge is such that the deposition is not proportionate to the discovering party's needs.

The discovery that SPG Defendants seek through the deposition of Mr. Parigi is relevant and proportionate to the claims in the litigation. SPG Defendants seek the deposition of Mr. Parigi to discover the information relating to the Parigi Topics, which could include the: (1) responsive activities of OxyChem; (2) indemnity and documentary transfer of Maxus/Tierra; (3) performance of OxyChem's obligations under settlement agreements; and (4) costs incurred or estimated that OxyChem may seek to recover. The foregoing topics, especially the consideration of OxyChem's damages and responsive activities, are central to this litigation. The discovery sought is unquestionably relevant.

As noted by SPG Defendants, Mr. Parigi is a central figure to the decisions made and remediation processes undertaken by OxyChem and GSH over more than a decade of work on the Passaic River and was a member of key discussions on environmental reviews, project status updates, and communications with the United States Environmental Protection Agency (EPA). This is supported by documentary evidence submitted by SPG Defendants that demonstrate Mr. Parigi's asserted non-legal role with GSH. SPG uses the following as evidentiary support:

> (1) Multiple emails catalog Mr. Parigi's attendance at Academic and Technical team meetings related to the Passaic River Focused Feasibility Study *See* SPG Defendants' Opp'n, Ex. E;

(2) Mr. Parigi participated in regular status meetings with Cliff Firstenberg and David Rabbe of Tierra on Passaic projects. *See Id.*, Ex. F;

(3) Both Mr. Parigi and Juan Somoano (another Vice President) were designees to receive oversight invoices from EPA, which were forwarded on for payment. *See Id.*, Ex. G;

(4) Several EPA removal-action letters addressed to Mr. Parigi encourage his involvement in the environmental process. *See Id.*, Ex. H;

(5) Mr. Parigi alongside Mike Anderson and Suda Arkere (another GSH Vice President) acted as a Company Representative for OxyChem during the Tierra/Maxus transition. *See Id.*, Ex. I;

(6) Mr. Parigi was involved in tenders related to Maxus' indemnity to OxyChem during his tenure at GSH. *See Id.*, Ex. J;

(7) Mr. Parigi served as OxyChem's Rule 30(b)(6) corporate representative during the Spill Act litigation and has testified before the New Jersey State Legislature about contamination of the Passaic River. *See Id.*, Ex. K; and

(8) In this litigation, Mr. Parigi has verified OxyChem's responses to interrogatories. *See Id.*, Ex. L.

OxyChem argues that Mr. Parigi's testimony would be limited to information not already obtained from other fact witnesses, and that this information would not be crucial. OxyChem's argument is flawed, however, because it compares topics of Parigi's deposition to the testimony of Mr. Castro and the eventual testimony Mr. Anderson under the guise of a topic-to-topic comparison. At this stage, SPG Defendants have only proffered deposition topics. While general topics may be similar or identical across deposition notices, each person's personal knowledge and deposition testimony may be vastly different.

Accordingly, the information sought from Mr. Parigi is relevant, proportionate, and seemingly central to matters in the litigation. SPG Defendants have established that Mr. Parigi played a central role in the remediation and environmental reviews. OxyChem has failed to show that the information sought is not relevant or proportionate to the claims in this litigation.

## B.     Availability of Information from Other Sources

Under the second factor of the *Johnston* test, OxyChem must show that SPG Defendants can discover the information it seeks from less intrusive measures.

According to OxyChem, SPG Defendants have cited the same topics in deposition notices to Mr. Anderson and Mr. Castro and in the Rule 30(b)(6) deposition notice to OxyChem. While the deposition for Mr. Castro has occurred, it is unclear from the motion papers whether SPG Defendants have already obtained responses from Mr. Castro to certain topics that were also directed to Mr. Parigi. SPG Defendants have only provided topics for a deposition, rather than actual questions to a deponent. Indeed, it is possible that SPG Defendants seek information that is unavailable by other sources, but within the same topics of deposition for other fact witnesses. For example, SPG Defendants may wish to question Mr. Parigi on his public statements or attendance at meetings, for which he may have unique personal knowledge.

Further, Mr. Anderson's deposition and OxyChem's Rule 30(b)(6) deposition have not occurred, meaning that there could be disparity between the deposition testimony. A bar from broad topics of deposition on Parigi may prematurely limit SPG Defendants' right to discovery. Moreover, SPG Defendants assert that OxyChem has notably named Mr. Parigi as the deponent on "some of the Rule 30(b)(6) topics," but has failed to identify the exact topics. Thus, OxyChem's assertion of an overlap in testimony may not occur if Mr. Parigi is not named as the Rule 30(b)(6) witness for similar topics to the Parigi Topics.

At this time, there is a question as to whether the testimony of the other deponents will divulge similar or identical information to Mr. Parigi's testimony. OxyChem has not met its burden to establish that the information that SPG Defendants seek from Mr. Parigi is available from a less intrusive source.

### C.     Oppression is Sufficiently Mitigated.

Under the *Johnston* test, OxyChem must show that SPG Defendants would harm OxyChem's representational rights of its attorney if called upon to give deposition testimony.

The court in *Shelton*, was notably concerned with harassing practice of deposing opposing counsel, unless counsel's testimony is crucial. *Johnston*, 130 F.R.D. at 353 (citing *Shelton*, 805 F.2d 1323 at 1330) (internal quotations omitted). While there is concern for such misconduct, the *Johnston* court explains that protections exist for such misconduct (i.e., objections on the basis of attorney-client privilege). *Id.* Despite such protections, the *Johnston* court also explained that the greater concern is deflecting efforts in attorneys' case preparation and injecting an unproductive dynamic into the litigation. *Id.* Courts do, however, scrutinize the activities of in-house counsel to a greater extent than outside counsel because "in-house attorneys are more likely to mix legal and business functions." *Bank Brussells Lambert v. Credit Lyonnais (Suisse)*, 220 F. Supp. 2d 283, 286 (S.D.N.Y. 2002); see also *United States v. Philip Morris Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002).

Here, SPG Defendants claim to seek only non-legal information. According to SPG Defendants, while Mr. Parigi has been in-house counsel to GSH, he has also performed non-legal business duties as a Vice President of GSH. SPG Defendants demonstrate that Mr. Parigi's predecessors to the Vice President role had no legal responsibilities. SPG Defendants also assert that Mr. Parigi was involved in many aspects, personally. Namely, Mr. Parigi (1) attended Academic and Technical team meetings; (2) attended regular status meetings; (3) was encouraged to be personally involved in remediation efforts by the EPA; and (4) was the company representative in the Maxus/Tierra transition. Thus, it is clear that Mr. Parigi had the hybrid role that SPG Defendants assert.

SPG Defendants further assert that Mr. Parigi's verification of interrogatory responses demonstrates that Mr. Parigi contains personal knowledge of matters in a non-legal capacity. OxyChem argues that Mr. Parigi is clear in his verification of OxyChem's interrogatory answers that the substance of those answers came from documents, not his personal knowledge. On June 28, 2019, Mr. Parigi signed the verification to OxyChem's interrogatory responses as Vice President and General Counsel of GSH, and stated within the verification:

> In accordance with Local Civil Rule 33.1(b), the information contained in OxyChem's Responses to the Standard Set of Interrogatories was *primarily* obtained from the following documents: (1) the 1985 Site Evaluation, 80 Lister Avenue (MAXUS2519470); (2) the June 10, 1983 DSC Report to NJDEP on Lister Avenue Facility (MAXUS1004050); and (3) the June 1, 1961 Engineering Design Report, Newark Rehabilitation (MAXUS 1213753).

On February 24, 2022, Mr. Parigi signed a verification to amended responses in the same fashion. SPG Defendants assert that the usage of the word "primarily" means that the remainder of Mr. Parigi's answers came from personal knowledge. Whether that knowledge is, in fact, personal knowledge remains in question, but SPG Defendants have availed, at the very least, that Mr. Parigi may have knowledge outside of the documents.

OxyChem argues that Mr. Parigi advises OxyChem in this litigation and therefore has a legal role. Even if Mr. Parigi advises OxyChem in this litigation, this does not speak to Mr. Parigi's asserted hybrid-role. OxyChem attempts to simply disclaim the non-legal role, whereas SPG Defendants have provided a length of corroborating documentary support of personal statements, attendance at meetings and other possible involvement as a fact witness. SPG Defendants produced documents to demonstrate Mr. Parigi's asserted hybrid role at GSH. *See supra* p. 10.

Further, SPG Defendants assert that Mr. Parigi has not entered an appearance or appeared at any court hearing. SPG Defendants seek non-legal testimony from a party who is alleged to have participated in meetings and made personal statements in his role as Vice President of GSH. There

is no indication that such a deposition would be a harassing practice of deposing a party's counsel, nor does there appear to be any attempt to deflect efforts in attorneys' case preparation and injecting an unproductive dynamic into the litigation.

OxyChem also argues that SPG Defendants have no reason to pursue a more restrictive means than paper discovery. SPG Defendants have essentially shown with documentary support that Mr. Parigi may be a fact witness. Depositions of fact witnesses are not limited in light of paper discovery. *See Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008) (stating "the two forms of discovery are not equivalent" and "depositions provide a more complete means to obtain information and are, therefore, favored."); *see also Bank of N.Y. Mellon v. Witty*, 2019 U.S. Dist. LEXIS 246447, at *3 n.4 (D.N.J. May 14, 2019) (rejecting argument that party should be precluded from deposing deponent because deponent already received written discovery pertaining to those topics).

It is clear, particularly with Mr. Parigi's execution of discovery in this matter, that he has personal knowledge that is not privileged, and the SPG Defendants should be given the opportunity to explore such knowledge. However, the SPG Defendants must be mindful during the deposition of Mr. Parigi's dual role and limit its examination to the unique personal knowledge of Mr. Parigi on non-privileged topics. For these reasons, OxyChem has failed to meet its burden to show that the information sought could be obtained through less intrusive means.

## CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

*/s/ Thomas P. Scrivo*
**THOMAS P. SCRIVO**
**Special Master**