**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, | **Civil Action No. 18-11273 (MCA)(LDW)** |
| Plaintiff, | **SPECIAL MASTER DECISION DENYING IN PART AND GRANTING IN PART PLAINTIFF, OCCIDENTAL CHEMICAL CORPORATION'S MOTION FOR A PROTECTIVE ORDER** |
| v. | |
| 21ST CENTURY FOX AMERICA, INC., *et al*., | |
| Defendants. | |

<u>**INTRODUCTION**</u>

This matter comes by way of a motion (the "Motion") filed by Plaintiff, Occidental Chemical Corporation ("OxyChem"), on December 2, 2022, seeking a protective order to quash and/or limit the scope of topics in the Small Parties Group Defendants' ("SPG Defendants'") notices to depose OxyChem's Rule 30(b)(6) witnesses ("Deposition Notices") (ECF 2227).

OxyChem claimed the Deposition Notices exceed the scope of discovery, are oppressive, and impose an undue burden on OxyChem. OxyChem requested permission to exceed the page limit set forth in the Protocol for Motions (ECF 755) ("Protocol") in light of the number of topics addressed in the Motion.

On January 7, 2023, SPG Defendants filed opposition (ECF 2257) asserting that OxyChem sought to improperly narrow discovery and failed to establish good cause for a protective order.

Also on January 7, 2023, MI Holdings ("MIH") filed opposition (ECF 2256) joining SPG Defendants' opposition and arguing that OxyChem's corporate designee must testify regarding: (1) various subject areas as they relate to the Newark Bay Study Area ("Newark Bay"); and (2) allegations of discharges in the Newark Bay and migration to the Passaic River.

1

On January 18, 2023, the Special Master conducted a monthly status conference, at which OxyChem sought leave to file a reply because it contended that MIH and SPG Defendants raised new arguments in their opposition. (ECF 2264). MIH and SPG Defendants opposed OxyChem's request (ECF 2265 and ECF 2266), claiming that there were no new issues raised in their opposition briefs.  MIH also requested that the Special Master decide the Motion as briefed.

OxyChem then submitted a reply, without leave, to SPG Defendants' and MIH's opposition (ECF 2271). OxyChem's reply asserted that MIH did not adequately meet-and-confer and MIH's position was contrary to the request to stay the case, which is currently pending before the Court. OxyChem also disputed the admissibility of the EPA-administered allocation process (the "Batson Allocation") in determining allocation for responsibility for the Passaic River cleanup.

SPG Defendants and MIH submitted letter briefs on January 31, 2023, and February 1, 2023, which equate to sur-replies without leave (ECF 2273 and 2274). MIH claimed that it adequately met and conferred on the topics raised in its briefing. SPG Defendants once again asserted that it has the right to basic discovery on OxyChem's financial condition given recent events including OxyChem's statements to the United States about its inability to pay for the Passaic River cleanup.

The Motion is fully briefed by the parties, and therefore, is ripe for decision.  For the reasons set forth herein, the Motion is denied in part and granted in part.

## **BACKGROUND**

### A.    **SPG Defendants' Rule 30(b)(6) Notices**

By letter to OxyChem dated March 18, 2022, SPG Defendants stated it would provide draft Rule 30(b)(6) deposition notices for OxyChem and several of its consultants prior to a meet-and-

confer regarding scheduling. On April 1, 2022, SPG Defendants sent two draft Rule 30(b)(6) deposition notices to OxyChem ("Deposition Notice 1" and "Deposition Notice 2"). According to OxyChem, the notices spanned 40 topics, across 82 years, and demanded six days of deposition. On May 26, 2022, OxyChem responded by offering, without prejudice to its objections, to produce Rule 30(b)(6) designees on July 18, 19, or 20, 2022. SPG Defendants responded by requesting that OxyChem instead make its designee(s) available on August 2, 3 and 4, 2022, to testify regarding 19 topics listed in Deposition Notice 1 and on September 14, 15, and 16, 2022, for 21 topics listed in Deposition Notice 2.

By letter to SPG Defendants dated May 26, 2022 ("May 26 Letter"), OxyChem refused to schedule six days of deposition, asserting that it violated the deposition protocol agreed to by the parties ("Deposition Protocol") and the proposed depositions sought to cover topics that were already ruled as off limits by the Special Master.  OxyChem also stated that the proposed topics were outside the scope of discovery and constituted discovery-on-discovery.  As such, OxyChem stated it would not produce a designee for Topics 1 – 4, 11, and 12 in Deposition Notice 1 and Topic 18 in Deposition Notice 2. OxyChem offered dates in September 2022 to produce a witness on agreeable topics and offered to make its representatives available for deposition dates pursuant to the Deposition Protocol.  During a meet-and-confer on July 1, 2022, OxyChem agreed to revisit its objections to four of the topics addressed in its May 26 Letter while the SPG Defendants agreed to revisit the remaining three topics.

By letter to SPG Defendants dated September 14, 2022, OxyChem offered to produce a witness to testify on many topics, including some of its document collection procedures, databases containing environmental information, document retention practices, and transfers of documents

to OxyChem regarding the Diamond Alkali Superfund Site ("DASS"). OxyChem also requested that SPG Defendants identify potential deposition exhibits at least ten days before the deposition.

By letter to OxyChem dated September 20, 2022, SPG Defendants agreed to remove or modify four topics as requested by OxyChem and to meet-and-confer with OxyChem regarding its additional objections. On September 29, 2022, OxyChem and SPG Defendants met and conferred regarding the SPG Defendants' proposed topics and OxyChem's objections.

On October 6, 2022, SPG Defendants served four formal deposition notices, including two notices for a Rule 30(b)(6) deposition of OxyChem (*i.e.,* the Deposition Notices). According to OxyChem, across the two notices, SPG Defendants sought to depose OxyChem for five days regarding a combined 40 topics—implicating facts across more than 80 years, dozens of entities, and a broad range of complex and overlapping issues. On November 9, 2022, in response to the Deposition Notices, OxyChem served a letter totaling 43 pages of formal objections. The parties appeared to have hit an impasse, so on December 2, 2022, OxyChem filed the Motion for a protective order relating to the Deposition Notices.

**B.      Salient Facts and Procedural History as to MIH and Newark Bay Discovery**

OxyChem alleged in its Amended Complaint and Third-Party Complaint (ECF 1247) that hazardous substances were released from MIH's facility into "the public waters at the confluence of the Passaic River, Hackensack River, and Newark Bay, which has a tidal influence on the Passaic River." OxyChem further alleged that these releases "contaminated and continue to contaminate the sediments in the Lower Passaic River."

On June 16, 2021, the parties entered into a Joint Stipulation and Proposed Order Regarding Scope of Claims (ECF 1233) (the "Stipulation"). The Stipulation's purpose was to ensure that "CERCLA cost recovery, contribution, and declaratory judgment claims related to the

Newark Bay Study Area, as the term is defined below, are not joined for adjudication in this action." *See* Stipulation at ¶1. Further, "[b]ecause certain of the pleadings could be interpreted to encompass claims related to the Newark Bay Study Area, the parties wish to clarify and better define the geographic scope of their claims to avoid necessary confusion in this litigation." *Id.*

The Stipulation defined the Newark Bay Study Area as the area of the DASS ("Site") that "covers the Newark Bay and portions of the Hackensack River, Arthur Kill and Kill Van Kull." The United States Environmental Protection Agency ("EPA") divided the Site into four operable units, of which the Newark Bay Study Area was OU3. The Stipulation also set forth that "the parties' pleadings do not seek contribution or cost recovery for any costs incurred, or to be incurred, addressing the Newark Bay, but such claims are hereby preserved." *Id.* at ¶3. The Stipulation set forth that its sole purpose and effect is to clarify that the Newark Bay Study Area, also referred to as OU3, is not at issue in this litigation. *Id.* at 5.

The Stipulation allowed amendments to pleadings on leave of court, but "does not amend or foreclose claims that any party's alleged liability for the claims at issue in this litigation is related to properties located at or near the Newark Bay Study Area (OU3) or any defenses thereto." *Id.* at 6(b). Similarly, the Stipulation did not explicitly limit discovery of the Newark Bay Study Area.

At an August 2022 meet-and-confer, OxyChem informed MIH that it was not withholding documents regarding the Newark Bay based on the Stipulation. OxyChem also advised that it would produce additional modeling documents regarding the Newark Bay. OxyChem further stated in its July 16, 2022 letter that:

> Since June 2021, OxyChem has been diligent about producing documents in its possession, custody and control regarding the tidal connection between Newark Bay and the Passaic River, and OxyChem is in substantial compliance with its discovery obligations in this regard as set forth in the SPG's January 25th, 2022 letter and OxyChem's January 28th, 2022 letter.

On November 18, 2022, at MIH's deposition, OxyChem also questioned MIH about the Newark Bay.

**C.      The Related Nokia Motion**

On December 19, 2022, Nokia, PSEG, and Pharmacia jointly filed the Nokia Motion seeking leave to serve discovery regarding OxyChem's financial condition (ECF 2245) ("Nokia Motion"). OxyChem did not file opposition to the Nokia Motion; however, the papers filed in this Motion address a similar issue.

## LEGAL STANDARD

"The purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings and thus the boundaries of relevance under [*Federal Rule of Civil Procedure*] 26 depend on the context of each action." *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Courts construe *Rule* 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253, 265 (1978); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (citation omitted).

However, courts have discretion to determine the scope of discovery. *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. at 528. A "court may issue a protective order to regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 159712, *5 (D.N.J. Nov. 24, 2015) (citations omitted). *Rule* 26(c)(1) provides in pertinent part:

A party or any person from whom discovery is sought may move for

> a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses, including . . . (A) forbidding the disclosure or discovery; . . . [or, *inter alia*, ] (D) forbidding inquiry into certain matters,  or limiting the scope of disclosure or discovery to certain matters . . . .

> [FED. R. CIV. P. 26(c) (1)(A)-(D).]

Indeed, the objective of *Rule* 26(c) is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Notes of Advisory Committee on 1983 amendments, Note to Subdivision (b); see also In re EthiCare Advisors, Inc.*, 2020 U.S. Dist. LEXIS 144816, at *6 (D.N.J. Aug. 12, 2020). To that end, the grounds for "limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c)." *Id.*

The *Rule* "places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To overcome the presumption, the party seeking the protective order must show good cause by demonstrating particular need for protection." *Cipollone*, 785 F.2d at 1121; *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted). A court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. FED. R. CIV. P. 26(c)(1). However, a showing of good cause must be specific and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone.*785 F.2d at 1121 (citations omitted). The "harm must be significant, not a mere trifle." *Id*. (citations omitted).

## ANALYSIS

### A.  Consideration of Replies and Sur-Replies without Leave of Court

Pursuant to Local Rule 37.1, no reply papers relating to discovery motions are allowed without permission of the court. *See* L.Civ.R. 37.1(b)(3). Equally, the motion protocol set by the Special Master does not permit replies. *See* ECF 755 at 2. A party may seek to file a reply in good faith, but not to regurgitate old, or make new, arguments. *Bayer AG & Bayer Corp. v. Schein Pharm.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001). To the extent reply papers are permitted, "[i]t is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted." *Raritan Baykeeper, Inc. v. NL Indus.*, Civil Action No. 09-4117 (MAS) (DEA), 2018 U.S. Dist. LEXIS 147469, at *6 (D.N.J. Aug. 29, 2018) (citing *Bayer AG & Bayer Corp.*, 129 F. Supp. 2d at 716 (quoting *Elizabethtown Water Co. v. Hartford Casualty Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998)).

On January 18, 2023, OxyChem requested leave to file a reply to address alleged "new arguments" contained in MIH and SPG Defendants' oppositions. OxyChem argued that MIH impermissibly sought to pursue discovery on matters related to the Newark Bay. According to OxyChem, this discovery would violate the Stipulation and reopen discovery for a number of parties. OxyChem further argued that SPG Defendants sought discovery on OxyChem's financial condition, which is subject of a separate motion (the Nokia Motion), where OxyChem sought a protective order. OxyChem is incorrect. SPG Defendants and MIH's arguments merely opposed arguments from the Motion. Because OxyChem already addressed the discovery regarding the Newark Bay and its financial condition (ECF 2271 at 7 and 11), no reply was necessary. This led to a litany of improperly filed responses.  Typically, the parties would have filed two briefs (a motion and an opposition) under the Protocol. Instead, the parties filed ten briefs, two of which

were more than double the page limit. Nevertheless, all briefs have been considered.

**B.      Deposition on Factual Bases of Claims Is Relevant (Topic 1.16)**

*Rule* 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The relevance of discovery is broader than that of admissible evidence. *Id.* In cases involving the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), "[c]ourts generally trot out two lists of factors when considering allocation," known as the "Gore Factors" and the "Torres Factors." *Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 123 (D.D.C. 2014). The United States District Court for the District of New Jersey ("District Court") has used the Gore Factors to aid in the equitable allocation of contribution costs. *See*, *e.g.*, *Lenox, Inc. v. Reuben Smith Rubbish Removal*, 91 F. Supp. 2d 743, 747 (D.N.J. 2000) (citations omitted). Courts, however, are not bound to consider each of the Gore Factors, nor are they limited to considering only the Gore Factors. *See Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 388 (3d Cir. 2013) (citation omitted).

The court can consider the Gore and/or Torres factors in allocation analysis in a CERCLA case. *Lockheed*, 35 F. Supp. 3d at 123. Under the Gore Factors, the following are considered:

1)   the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished;

2)   the amount of the hazardous waste involved;

3)   the degree of toxicity of the hazardous waste involved;

4)   the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;

5)   the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics

of such hazardous waste; and

6) the degree of cooperation by the parties with Federal, State or local officials to prevent any harm to the public health or the environment.

[*Id.*]

Under the Torres Factors, the following are considered:

1) The extent to which cleanup costs are attributable to wastes for which a party is responsible;

2) The party's level of culpability;

3) The degree to which the party benefitted from disposal of the waste; and

4) The party's ability to pay its share of the cost.

[*Id; see also, B.F. Goodrich Co. v. Murtha*, 958 F.2d 1992 (2d Cir. 1992); *U.S. v. Davis*, 31 F. Supp. 2d 45 (D.R.I. 1998); *Central Me. Power Co. v. F.J. O'Connor Co.*, 838 F. Supp. 641, 645 (D. Me. 1993); *Weyerhaeuser Co. v. Koppers Co.*, 771 F. Supp. 1420 (D. Md. 1991)].

Accordingly, the Gore and Torres Factors, along with other considerations, guide the relevance analysis in this dispute.

OxyChem first sought a protective order from Topic 1.16 in the Deposition Notice 1:

1.16. Factual bases for Your claims in this litigation against each of the SPG defendants for contribution or cost recovery related to costs involving the 2016 ASAOC, the 2008 Tierra Removal ASAOC, the 2011 CSO ASAOC, the 2012 RM 10.9 UAO, and PRP search costs.

OxyChem has brought claims against more than 100 defendants and its Amended Complaint asserts counts for cost recovery, contribution, and declaratory judgment under CERCLA.

In response to this proposed topic, OxyChem asserted that deposition questions seeking a factual basis for its claims are akin to contention interrogatories. OxyChem drew a parallel to the prior Special Master Decision from June 2021 (ECF 1249) ("June 2021 Decision") where the Special Master refused to compel OxyChem to answer contention interrogatories.

SPG Defendants has presented two counterarguments: (1) the topics in the Deposition Notices seek only factual allegations, not the factual basis for legal conclusions; and (2) even if they are considered contention questions, the topics are appropriate for Rule 30(b)(6) depositions. On its face, SPG Defendants' first argument is unconvincing. The topic states that SPG Defendants seek "Factual bases for Your claims," which requests a factual basis for a legal conclusion.

However, SPG Defendants' second argument is compelling. SPG Defendants has relied on several cases to support their argument that contention questions may be asked at a deposition.[1] For its part, OxyChem provided no legal support for its position that the June 2021 Decision should apply to questions asked at a Rule 30(b)(6) deposition.

The June 2021 Decision is distinguishable. That Decision concerned written answers to contention interrogatories, not topics of a Rule 30(b)(6) deposition. Discovery had not advanced such that compelling answers to contention interrogatories was appropriate. No depositions had been completed, substantial written discovery was outstanding, and the discovery end date was indeterminable. Since that time, numerous depositions have occurred, including document productions and written discovery. While discovery remains outstanding, "a party may make inquiries similar to contention interrogatories at a [Rule] 30(b)(6) deposition." *Yerkes v. Weiss*, No. 17-2493 (NLH/AMD), 2019 U.S. Dist. LEXIS 237760, at *17 n.2 (D.N.J. Sep. 30, 2019).

OxyChem has also argued that Topic 1.16 is unduly burdensome and overbroad. OxyChem resorted to a broad allegation of harm, unsubstantiated by specific examples or articulated reasoning. OxyChem ignored that SPG Defendants seek underlying facts relating to OxyChem's

---

[1] *Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Envtl., Inc.*, No. 09-cv-0956, 2009 U.S. Dist. LEXIS 115698 (E.D. Pa. Dec. 11, 2009); *Gen. Nutrition Corp. v. Gardere Wynne Sewell, LLP*, No. 2:08-cv-831, 2009 U.S. Dist. LEXIS 47377, at *5 (W.D. Pa. June 5, 2009); *Standard Fire Ins. Co. v. F & S Boatworks, Inc.*, Civil Action No. 07-132-JJF, 2008 U.S. Dist. LEXIS 51157, at *1 (D. Del. July 2, 2008); *Yerkes v. Weiss*, No. 17-2493 (NLH/AMD), 2019 U.S. Dist. LEXIS 237760, at *17 n.2 (D.N.J. Sep. 30, 2019); *Radian Asset Assurance, Inc. v. Coll. of the Christian Bros. of N.M.*, 273 F.R.D. 689, 690 (D.N.M. 2011); *In re Riddell Concussion Reduction Litig.*, No. 13-7585 (JBS/JS), 2016 U.S. Dist. LEXIS 178342, at *6 (D.N.J. Jan. 6, 2016)

complaint, which contains numerous allegations about SPG Defendants' operations. It should go

without saying that a defendant is entitled to seek discovery on what he is accused of in a lawsuit.

Thus, OxyChem failed to meet its burden to demonstrate good cause to warrant protection.

**C.      Testimony About Facilities and Operations Outside of the Diamond Alkali Superfund
         Site (Topics 1.13, 1.18, 2.10, 2.18, and 2.19)**

OxyChem also sought a protective order from Topics 1.13, 1.18, 2.10, 2.18, and 2.19 in

the Deposition Notices:

> 1.13. All Communications, litigation, releases, proposals or offers to renegotiate
> terms, and all claims for indemnification under the SPA indemnification agreement
> and the DASS or other contaminated sites, including the number of claims filed
> each year, the names and roles of Persons with knowledge of any of the foregoing,
> and your interpretation of the terms of the SPA indemnification agreement.

> 1.18. Your activities and expenditures related to the DASS or Lister Property other
> than the activities and resulting costs You have claimed in this litigation, including
> activities and expenditures related to projects not approved by EPA or NJDEP
> under any administrative agreement or order, including (1) public relations or
> lobbying activities and expenditures and (2) studies, research, publications, or
> presentations commissioned by OCC and relating to dioxin or other COCs, the
> Lower Passaic River, the Lister Property, or environmental remediation of
> contaminated sediment sites.

> 2.10. Any litigation in which OCC, Maxus, or Tierra have been involved relating
> to the Lister Property, the DASS, or Dioxin, including but not limited to those
> identified in Your Amended Response to Interrogatory No. 16 in the above-
> captioned litigation (including worker compensation claims) and with respect to
> each, information about outcomes, allegations, arguments, and appeals.

> 2.18. Your general experience with and knowledge of Dioxin, including its
> generation in manufacturing processes, its toxicity and/or effects on human health
> or the environment, and approaches to removing or remediating Dioxin
> contaminated soil and/or sediments in bodies of water.

> 2.19 The name, location, and general description of any other facilities and/or
> Superfund Sites involving Dioxin contamination at which You have been
> considered a responsible or liable party or otherwise been involved in removal or
> remedial activities.

> 2.20. Studies, reports, papers, and presentations offered by You or on Your behalf
> between 1980 and the present related to Dioxin in any way, including but not

limited to environmental contamination, toxicity, and/or fate and transport.

OxyChem has argued that the Deposition Notices include topics that impermissibly seek testimony about sites that are not at issue in this litigation. According to OxyChem, these topics are overbroad and unduly burdensome because they are not limited to the DASS, which OxyChem called "the heart of the litigation." OxyChem cited to the Special Master Decision of August 11, 2021 (ECF 1380) ("August 2021 Decision"), which determined that discovery related to another contaminated site, specifically known as Love Canal, was irrelevant, and therefore, impermissible.

SPG Defendants have summarized OxyChem's concerns as relating to: (1) its knowledge of dioxin and other contaminants of concern ("COCs"); and (2) its interpretation of a 1986 Stock Purchase Agreement ("SPA"). SPG Defendants asserted that OxyChem incorrectly claimed that SPG Defendants' inquiry into these two areas may incidentally touch on facilities or operations at other sites.  But, as SPG Defendants pointed out, "none of the notice topics is targeted at any site other than the Diamond Alkali Superfund Site." Even if the topics relate to other facilities, SPG Defendants urged they are relevant to the DASS.

SPG Defendants sought to discover whether OxyChem learned of dioxin's singular toxicity through its experience at another site, and then continued to discharge dioxin to the Passaic River. SPG Defendants also sought discovery regarding OxyChem's and Maxus Energy Corporation's ("Maxus") course of performance and enforcement of the indemnity provision in the 1986 SPA. Evidence of OxyChem's prior knowledge is relevant to OxyChem's position regarding dioxin's toxicity in this litigation. Additionally, SPG Defendants' discovery related to the SPA is relevant to OxyChem's prior position about successor and indemnitor liabilities, which is an issue in this litigation.  SPG Defendants linked the information to Gore and Torres Factors of: (1) degree of care, (2) degree of toxicity, (3) cooperation, and (4) culpability.

Further, the August 2021 Decision related to the Love Canal, a site that is unrelated to the DASS. Here, SPG Defendants sought to depose OxyChem on prior knowledge of dioxin and COCs at or related to the DASS, which specifically relates to the Gore and Torres Factors. The concern that SPG Defendants would proceed with a fishing expedition into information relating to OxyChem's operations at other sites is minimal. SPG Defendants are permitted to question about OxyChem's prior knowledge of dioxin and COCs that were used or present at the DASS and their toxicity, and such questioning may include knowledge or experience with such dioxins and COCs. However, any questioning about the operations of or discharge at other sites is not permitted.

**D.**     **<u>OxyChem's Financial Condition (1.07, 1.10, 1.11, and 1.14)</u>**

OxyChem has further sought a protective order from Topics 1.07, 1.10, 1.11, 1.14 in the Deposition Notices:

> 1.07. Organizational information about GSH, Miller Springs, and any other environmental remediation-related Subsidiaries and Affiliates of OCC, including their business structure, mission, operations, services agreements, responsibilities, and activities that relate to DASS, OCC's environmental reserves, and other environmental liabilities and obligations of OCC.

> 1.10. OCC's financial condition and/or ability to pay for environmental remediation of the DASS, including any basis for raising Your financial resources as an equitable allocation factor in this litigation.

> 1.11. OCC's environmental reserves for environmental costs or liabilities arising from or related to investigatory or remedial activities related to or concerning the DASS, the Lister Property, or the Newark Bay Complex, including amounts identified in filings with the U.S. Securities and Exchange Commission from the date of the 1986 Merger to the present.

> 1.14. Your knowledge of and efforts to investigate, review, and monitor Maxus's, and any of its Affiliates' or Subsidiaries', financial ability, from 1986 to the present, to fund and perform remediation activities on behalf of OCC at the DASS.

OxyChem has asserted that the financial condition and environmental reserves of OxyChem, its corporate affiliates, and Maxus are outside the scope of discovery. OxyChem has relied on the August 2021 Decision, where the Special Master sustained OxyChem's objection to

SPG Defendants' attempt to obtain discovery regarding "the financial condition of OxyChem and its affiliates from 2015 to the present, including but not limited to . . . environmental reserves."

SPG Defendants have asserted that circumstances have changed since the August 2021 Decision because OxyChem publicly disclaimed its ability to pay for cleanup, representing that it could not provide financial assurance for the OU4 and OU2 remedies. SPG Defendants further asserted that OxyChem refused to stipulate that it will not raise an inability-to-pay defense.

*Rule* 26(b)(1) states "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to *any party's claim or defense* and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1) (emphasis added). This was confirmed in the August 2021 Decision, which noted that financial condition had not been put "at issue" in this matter:

> If there are no claims or defenses relating to the inability to pay, then related requests are outside the scope of discovery. . . But the scope of discovery is tied to the claims and defenses set forth in the pleadings at the time it is filed and does not permit speculation as to what may be raised in the future by an opposing party.

(August 2021 Decision at 12).

SPG Defendants have argued that OxyChem recently placed its financial condition "at issue" because OxyChem: (1) refused to voluntarily agree to waive an inability-to-pay defense; and (2) made public, through correspondence with the EPA, that it disclaimed an ability to pay. Neither argument is convincing. OxyChem is entitled to a protective order related to its financial condition and environmental concerns, subject to certain conditions.

As a threshold matter, OxyChem's refusal to agree to waive a defense that has not previously been raised in this litigation is not an action by OxyChem that puts its financial condition at issue.  In addition, the June 27, 2022, letter to the EPA is not invocation of a defense that it cannot pay for its fair share of the related costs. Instead, the letter discusses financial

assurances for the scope of work:

> No company alone—and certainly not OxyChem—can post financial assurance for a multi-decade scope of work of this magnitude. And no company can secure an entire scope of work that spans decades and still retain sufficient financial resources and resilience to pay to perform the work each year, as the work is due, while EPA holds multiple years of financial assurance.

[ECF 2100-1 at 7].

Nevertheless, the filing of this letter on the docket in this case raises questions about OxyChem's intentions, and SPG Defendants are permitted to inquire if OxyChem has any intention of raising a claim or defense that: (1) it is unable to pay for environmental remediation of the DASS; or (2) intends to raise its financial condition as an equitable allocation factor in this litigation. Moreover, if OxyChem ever intends to assert such positions, which it has not to date, it is under an on-going obligation to supplement its discovery responses.

**E.     Corporate Structure of Entities (Topics 1.06 and 1.07)**

OxyChem has sought a protective order from the topics in the Deposition Notice that seek information on the corporate structure of entities unrelated to the DASS. These topics seek:

1.06.  Corporate structure and organization of OCC and related entities, including departments, committees, groups, and sections of OCC involved with environmental remediation, liabilities, and compliance.

1.07   Organizational information about GSH, Miller Springs, and any other environmental remediation-related Subsidiaries and Affiliates of OCC, including their business structure, mission, operations, services, agreements, responsibilities, and activities that relate to DASS, OCC's environmental reserves, and other environmental liabilities and obligations of OCC.

In support of its argument, OxyChem has cited to the August 2021 Decision, where the Special Master protected from discovery the corporate structure of OxyChem and its affiliates. SPG Defendants have argued that OxyChem has refused to clarify which entities are relevant to the litigation. However, SPG Defendants have failed to demonstrate a change in circumstances

since the August 2021 Decision. SPG Defendants did not cite case law to support their argument. The August 2021 Decision stated that "[i]f the entities were not involved in the 1986 acquisition, operations, environmental inspection, and remediation of the Lister plant. . ., then the information does not bear on, or could not reasonably lead to other matters that could bear on, any issue that is or may be in the case." ECF 1380 at 9. This statement remains true.

In addition, SPG Defendants have asserted that OxyChem did not include this topic as a subject of a meet-and-confer. Accordingly, the parties must first meet-and-confer on the matter, with the foregoing guidance in mind, before returning to the Special Master.

## F.   Information in Control of Other Entities (Topics 1.05, 2.02, 2.07, 2.08, 2.09, 2.10, 2.12, 2.13, 2.14, 2.16)

OxyChem has asserted that SPG Defendants seek information in the possession or control of Maxus and Tierra Solutions, Inc. ("Tierra") regardless of whether OxyChem has ever possessed or was involved with the events related to that information. According to SPG Defendants, OxyChem's objections on the grounds that it is not able to testify regarding information in the control of unrelated entities is not a proper basis for objection to Rule 30(b)(6) topics.

At the outset, OxyChem's basic discovery obligations require it to produce what is known or reasonably available to it.  Moreover, as SPG Defendants stated, it is an improper objection to simply state that discovery is available from another source. *Williams v. Swack*, No. 13-CV-00974-WMS-JJM, 2016 U.S. Dist. LEXIS 84639, at *15 (W.D.N.Y. June 29, 2016). Instead, an objection is proper only if the sought discovery is obtainable from some other source that is *more convenient, less burdensome, or less expensive*. FED. R. CIV. P. 26(b)(2)(C)(i).

Here, OxyChem is the sole party to this case that remains solvent and has decades-long, nearly uninterrupted involvement with the Lister Plant and DASS. Throughout the litigation, OxyChem has repeatedly emphasized its close relationship with Maxus and Tierra. Indeed,

OxyChem has sought to disclaim an obligation to provide discovery based on the assumption of Maxus and Tierra's privilege. In assuming the assets of each company in bankruptcy, OxyChem had reason to remain apprised of both companies' work related to DASS. For these reasons, OxyChem has failed to meet its burden.

**G.    Newark Bay (Topics 1.01, 1.02, 1.03, 1.04, 1.05, 1.07, 1,08, 1.10, 1.11, 1.13, 1.14, 1.18, 2.10, 2.11, 2.13, 2.14, 2.15, 2.22)**

OxyChem has asserted that the topics in the Deposition Notices regarding the Newark Bay violate the Stipulation and are irrelevant to the claims of the litigation. In particular, OxyChem has argued that, because the Stipulation prohibits claims relating to the Newark Bay, it follows that discovery relating to the Newark Bay is not part of this case. SPG Defendants and MIH have asserted that the Stipulation does not bar discovery based on the Newark Bay because there is a nexus between MIH's Jersey City facility and the Passaic River.

The purpose of the Stipulation was to ensure that "CERCLA cost recovery, contribution, and declaratory judgment claims related to the Newark Bay Study Area, as the term is defined below, are not joined for adjudication in this action." *See* Stipulation, ¶1. The Stipulation states that "the Newark Bay Study Area, also referred to as OU3, *is not at issue in this litigation*." *Id.* at 5 (emphasis added). The Stipulation "does not amend or foreclose claims that any party's alleged liability for the claims at issue in this litigation *is related to properties located at or near the Newark Bay Study Area (OU3) or any defenses thereto*." *Id.* at 6(b) (emphasis added). Under the Stipulation, the parties agreed to forego claims regarding CERCLA cost recovery, contribution, and declaratory judgment of the Newark Bay, but allow claims and defenses against properties located at or near the Newark Bay that relate to cleanup of the DASS.

Following execution of the Stipulation, the parties engaged in discovery, where OxyChem: (1) informed MIH that it was not withholding documents regarding Newark Bay; (2) advised that

it would produce additional modeling documents regarding the Newark Bay; (3) advised that it did not "know of any documents that specifically address [MIH's] facility's connection to [the] Passaic [River]; and (4) questioned MIH about the Newark Bay at MIH's deposition.

The Stipulation does not explicitly bar discovery. Indeed, OxyChem has engaged in discovery related to the Newark Bay. In light of the claims against MIH, the Stipulation not fully barring claims and defenses related to properties at or near the Newark Bay, and there being no preclusive language regarding discovery in the Stipulation, the information in these topics of the Deposition Notices remains relevant, especially given the broad latitude of discovery.

**H.**      **Catch-All Provision (Topic 2.22)**

OxyChem has asserted that Topic 2.22 in the Deposition Notices is redundant and lacks specificity. Topic 2.22 states: "Any involvement with the Lister Property or the DASS from 1970 to the present."

The party noticing a deposition pursuant to Rule 30(b)(6) has the burden to identify topics of examination "with reasonable particularity." *Yerkes*, 2019 U.S. Dist. LEXIS 237760, at *5 (citing *Alexander v. F.B.I.*, 186 F.R.D. 137, 140 (D.D.C. 1998)).  After meeting this burden, the burden shifts to the deponent to produce a witness with knowledge of the subject matter. *Id.* at *6 (citations omitted). The reasonable particularity requirement is meant to inform the company, the witness, and counsel of the level of specificity required to identify the outer limits of inquiry. *See FTC v. AM. Future Sys.*, 2022 U.S. Dist. LEXIS 81708, at *3 (E.D. Pa. Apr. 8, 2022) (citing J.C. Wang, D. Lambrinos, M.L. Murphy, *Speak for Yourself: The 30(b)(6) Deposition* (Sept. 19, 2016) and *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005)); *see also Mullenix v. Univ. of Tex.*, 2021 U.S. Dist. LEXIS 79965, at *19 (W.D. Tex. Apr. 26, 2021) (stating the requirement is met if notice enables an entity to adequately fulfill its obligations to identify

and prepare deponent); *TERA II, LLC v. Rice Drilling D, LLC*, 2020 U.S. Dist. LEXIS 179619, at *11 (S.D. Ohio Sep. 29, 2020) (stating notice must describe matters sufficient to enable business to produce witness who can testify to entity's knowledge on topics identified).

Some courts strictly enforce the reasonable particularity requirement, requiring topics to be set forth "with painstaking specificity." *See British Telcoms. PLC, v. IAC/Interactivecorp*, 2020 U.S. Dist. LEXIS 37271, at *4 (D. Del. Mar. 4, 2020) (citations omitted). Other courts, including courts in the Third Circuit, have ruled that deposition topics lacking any metes and bounds are facially overbroad and unduly burdensome. *See Fifth Third Bank v. Westwood Zamias Ltd. P'Ship*, 2019 U.S. Dist. LEXIS 59512, at *4 (W.D. Pa. Feb. 6, 2019); *FTC v. Am. Future Sys.*, 2022 U.S. Dist. LEXIS 81708, at *5 (E.D. Pa. Apr. 8, 2022) (stating proposed topics that require witness to master unreasonably large body of knowledge or leave in doubt metes and bounds of subject matter fail reasonable particularity test); *Pres. Techs. Llc v. Mindgeek United States*, 2020 U.S. Dist. LEXIS 258315, at *14-15 (C.D. Cal. Oct. 19, 2020) (stating "deposition topic lacking all metes and bounds is facially overbroad and unduly burdensome").

A large deposition topic is not automatically overbroad. Indeed, a topic can be temporally and geographically limited, but still be a large topic. Here, the topic is temporally limited "from 1970 to the present." Although spanning 50 years, the parties have limited the topic through meet-and-confers. Moreover, OxyChem has sought information from an equally large time period in its deposition notices to other defendants under Rule 30(b)(6). The topic is also geographically limited in that it seeks discovery only related to the Lister Plant and the DASS. Accordingly, the deposition topic is specific enough in time and location to inform OxyChem of the scope of inquiry, and thus, OxyChem has not shown good cause to warrant a protective order.

I.      **Information on OxyChem's Expenditures (Topic 1.18)**

As stated, the standard for relevancy relates to claims of the litigation and the Gore and Torres Factors. OxyChem has asserted that Topic 1.18 seeks irrelevant information about its expenditures, which are not relevant to the litigation. OxyChem has cited to the August 2021 Decision.  SPG Defendants have asserted that discovery related to OxyChem's expenses is relevant because OxyChem may have failed or refused to expend funds on cleanup, and instead expended funds elsewhere. Neither party has cited to case law and OxyChem's citation to the August 2021 decision is not on point. The cooperation of a party is relevant to the sixth Gore Factor and is, therefore, relevant.  Given this, there is no reason for a protective order.

J.      **Number of Days and Hours to Depose OxyChem's Representatives**

OxyChem has sought to limit the number of days and hours for its Rule 30(b)(6) deponents. SPG Defendants has proposed to depose OxyChem representatives for five days. OxyChem has offered one day for each deposition. If OxyChem designates two witnesses, OxyChem implicitly has admitted that the depositions would be two, eight-hour days (*i.e.,* one day for each witness).

Under *Rule* 30(d)(1), a deposition is limited to one day of seven (7) hours, unless otherwise stipulated or ordered by the court. The Deposition Protocol states:

> Thus, the Noticing Party presumptively shall be entitled to question each witness designated as a corporate representative under Rule 30(b)(6) or up to 6 hours on the record, with the understanding that parties will not unreasonably withhold consent to requests for additional time, through the meet and confer process described below, if necessary to fairly complete a Rule 30(b)(6) deposition of a party in the case.

(ECF 2060 at ¶D4).

The Advisory Committee Notes to the 2000 amendments to Rule 30 provide that the deposition of each designee should be considered a separate deposition when considering the

durational limit.

The number of topics in the Deposition Notices total 40 topics. At the time of the Motion and still to date, OxyChem has not designated representatives for depositions. As such, SPG Defendants have argued that the request to limit the days of depositions remains premature. The Special Master agrees that whether there exists good cause to extend the days of deposition beyond the parameters established in the Deposition Protocols is premature. OxyChem must first be given a fair opportunity, in light of this decision, to designate its representative(s) for deposition. The parties will then meet-and-confer regarding the duration of depositions, understanding that the Deposition Protocols are still the guidepost for the durational limits. Should the parties not agree to any extension of the limits, the parties may submit an application to the Special Master.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Motion is **DENIED IN PART** and **GRANTED IN PART**.

Dated: February 28, 2023                      */s/ Thomas P. Scrivo*
                                               **THOMAS P. SCRIVO**
                                               **Special Master**

22