**PretiFlaherty**

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

May 4, 2023

<u>VIA CM/ECF</u>

Leda Dunn Wettre, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

      **RE:  *United States of America v. 21st Century Fox America, et al.*
           Civil Action No. 2:18-cv-11273 (MCA-LDW)
           OxyChem's Request to Reopen and Partially Lift the Stay**

Dear Magistrate Judge Wettre:

      The Defendants[1] submit this letter in response to Occidental Chemical Corporation's ("OxyChem's") April 26, 2023, letter requesting that the Court reopen and partially lift the stay of the above-referenced action as to a subset of parties.[2] The Court should not entertain this request. In the interests of justice and judicial economy, the Court should maintain the existing stay and enforce it with regard to *Occidental Chemical Corp. v. Givaudan Fragrances Corp.*[3] OxyChem—which did not oppose the stay—has not identified any meaningful change in circumstances or developments since the Court's entry of the stay that would warrant lifting it. If the Court plans to entertain OxyChem's request, however, the Defendants request that a briefing schedule and oral argument be set on this issue.

      On March 1, 2023, the Court granted the motion of all Defendants to stay this matter pending the outcome of the related consent decree ("CD") approval

---

[1] The Defendants comprise the Small Parties Group ("SPG"), the Gordon Rees Group, the CSG Group, the PVSC Group, the King Group, and Chargeurs, Inc.

[2] ECF No. 2296 (filed Apr. 26, 2023).

[3] OxyChem does not move to lift the stay in order to amend its pleadings to include the claims in *Givaudan*.

Preti Flaherty Beliveau & Pachios LLP  Attorneys at Law    One City Center, Portland, ME 04101  |  PO Box 9546, Portland, ME 04112-9546  |  Tel 207.791.3000  |  www.preti.com

20428609.1

PRETI FLAHERTY

Leda Dunn Wettre
May 4, 2023
Page 2

proceeding, *United States v. Alden Leeds, Inc.*, No. 2:22-cv-07326 (MCA) (LDW) (D.N.J.) ("*Alden Leeds*").[4]  OxyChem did not oppose that motion.

This Court properly determined that this action should be stayed "pending the outcome of" *Alden Leeds*.[5]  As articulated by the Court, the stay serves the interests of justice and judicial economy because "there is no question that resolution of the *Alden Leeds* action could substantially affect this matter because the [CD], if approved, could result in the dismissal of some or all of OxyChem's claims against at least eighty-five defendants, substantially reducing the scope of any remaining cost recovery and contribution claims" in this matter.[6]  Moreover, the Court recognized that a stay pending the outcome of *Alden Leeds* was warranted because

> continuing the massive effort and expense of discovery in this action for CERCLA claims that may become moot if the [CD] is approved would impose a significant burden not only on the Moving Parties but also on the Court, which – given the complexity of the claims presented and that there are over 100 defendants in this action – has been presented with an inordinate number of discovery disputes.[7]

*Nothing* material to that stay analysis has changed since the Court granted the stay.  *Alden Leeds* remains pending.  Approval of the CD may still result in the dismissal of some or all of OxyChem's claims against each of the more than eighty defendants who are also settling defendants in *Alden Leeds*.[8]  Approval of the CD may still obviate the need for the Court and the parties to engage in the complex, burdensome discovery that—although in its early stages[9]—has entailed the

---

[4] ECF No. 2287 (entered Mar. 1, 2023), *as amended by* ECF No. 2289.

[5] ECF No. 2289 at 4.

[6] *Id.* at 3.

[7] *Id.*

[8] *See* 42 U.S.C.A. § 9613(f)(2); *United States v. NCR Corp.*, No. 10-C-910, 2017 WL 3668771, at *6 (E.D. Wis. Aug. 23, 2017) (explaining that the court granted a stay pending review of a CERCLA CD because, "if approved, [the CD] would . . . put an end to most if not all of the litigation" and "would significantly change the contours of" the contribution case).

[9] Document discovery is not yet complete, and millions of documents have yet to be produced by consultants and third parties.  Written discovery is just beginning for those third parties who were more recently joined in the case.  Many depositions have yet to be taken, with roughly 30 of 200 permissible

adjudication of numerous disputes to date. Every factor that weighed in favor of the stay on March 1, 2023, continues to apply with equal force.[10]

By its request to partially lift the stay, OxyChem has mistaken its own convenience for the compelling reasoning supporting the stay. OxyChem concedes that it did not oppose the Defendants' motion to stay (as to any parties) because it wanted time to seek intervention in *Alden Leeds* and to generate and submit roughly 800 pages of comments on the CD. Now that the CD comment period is closed[11] and OxyChem has been granted intervenor status in *Alden Leeds*, OxyChem seeks to lift the stay here. Having fully obtained the advantage it sought from the stay, OxyChem now attempts to revive this litigation without regard for the reasons supporting the entry of the stay in the first place.

Unlike OxyChem, the Defendants did not move for the stay based on CD comment or *Alden Leeds* briefing obligations; the Defendants sought a stay because of the significant simplification of this litigation that could result from the outcome of *Alden Leeds*. Likewise, the Court did not grant the stay motion based on the CD comment deadline or intervention motions; the Court granted the stay motion based on the significant burdens to the Court and the parties that would result from maintaining this matter when the resolution of *Alden Leeds* could moot those efforts in whole or in part.

None of the information OxyChem sets forth in its request changes this analysis.[12] The expiration of the public comment period for the CD as to *Alden*

---

depositions completed. Additionally, no deadline has been set for the parties to disclose experts or otherwise start expert discovery.

[10] The stay also serves the purposes of CERCLA, which prioritizes settlement over litigation. *See* 42 U.S.C.A. § 9622(a); *United States v. E.I. DuPont de Nemours & Co., Inc.*, 432 F.3d 161, 175 (3d Cir. 2005); *United States v. Occidental Chem. Corp.*, 200 F.3d 143, 150 n.8 (3d Cir. 1999); *United States v. DiBiase*, 45 F.3d 541, 546 (1st Cir. 1995).

[11] *See* Notice of Lodging of Proposed Consent Decree Under the Comprehensive Environmental Response, Compensation, and Liability Act, 88 Fed. Reg. 2133 (Jan. 12, 2023) (setting the public comment period for the CD to expire on March 22, 2023).

[12] Nor does it show that OxyChem will "suffer 'clear damage'" or prejudice if the stay is not lifted. ECF No. 2296 at 9; *see Everett Labys., Inc. v. River's Edge Pharms., LLC*, No. 09-3458(JLL), 2009 WL 4508584, at *3 (D.N.J. Nov. 24, 2009) (explaining that delay alone is not dispositive of the issue of prejudice). OxyChem contends that it is prejudiced by the stay because it is "continuing to incur massive costs." *Id.* at 6. But OxyChem will not lose its opportunity to seek recovery of those costs, no matter how

PRETI FLAHERTY

Leda Dunn Wettre
May 4, 2023
Page 4

*Leeds* is irrelevant to the continued validity and value of the stay in this matter. OxyChem's intervention in *Alden Leeds* is unrelated to the basis of the stay in this litigation. OxyChem's other scattershot concerns also play no role with regard to the stay.[13]

Likewise, the fact that OxyChem seeks to lift the stay only as to those defendants that are not settling parties in *Alden Leeds* does nothing for its cause.[14] Litigation between OxyChem and the non-settlors cannot be extricated from litigation between OxyChem and the settlors, which constitute the majority of defendants in this case. The litigation that would proceed should the Court grant OxyChem's request would entail similar theories as to the liabilities of settling and non-settling defendants alike, many of the same experts, and identical discovery with regard to OxyChem. Proceeding with some discovery as to some parties when the remainder of discovery as to the bulk of the parties is stayed thus risks unnecessary complication and duplication. Because discovery and rulings in this litigation could adversely impact settling parties in *Alden Leeds* (*e.g.*, if the Court does not enter the settlement), lifting the stay as to some parties would necessarily impact all parties in the case, create more complexity, and burden the Court, all of which would defeat the purpose of the stay pending resolution in *Alden Leeds*.

Moreover, OxyChem's assertion that its litigation as to the non-settlors will not be affected by the outcome of *Alden Leeds* is incorrect. Should the settlement be approved, the claims between OxyChem and the non-settlors will be affected through, at the least, a deduction of $150 million from the total remaining

---

unjustified, just by the passage of time during the stay. Additionally, OxyChem's concern over the "massive costs" it has incurred are tempered by the fact that, through a related bankruptcy settlement, it stands to recover funds far greater than it has incurred at the Diamond Alkali Superfund Site to date. *In re Maxus Energy Corp.*, Case No. 16-11501 (CTG) (Bkr. D. Del.). That proceeding has been settled and is awaiting final approval.

[13] *See generally* ECF No. 2296 (discussing, among other things, the admissibility of the allocation, support for the settlement, EPA's disclosure of the allocation report, EPA's authority to allocate or settle CERCLA matters, motions to intervene, OxyChem's settlement offers to EPA, and the proximity of the United States' filings to Christmas).

[14] EPA and the Department of Justice have also indicated their intention to continue settlement negotiations with most or all of the remaining parties to the AlterEcho allocation proceeding. Such settlements could effectively end all or most of the outstanding claims in this litigation.

EPA-estimated costs to remediate the Site.[15] Further, the litigation will benefit from a reduction in the number of parties, the simplification of discovery, and the potential elimination of claims. At this point, prior to entry of the settlement in *Alden Leeds*, it is impossible to predict how many parties will be left in this case, which will have a substantial impact on how the non-settling parties proceed.

Finally, OxyChem's handwringing about the potential length of *Alden Leeds* and the concomitant length of the stay is both premature and overstated.[16] The stay has been in place for only two months, and the deadline for public comments on the CD ended only six weeks ago. Contrary to OxyChem's assertion, the stay is not "indefinite."[17] The length of the stay is linked to the outcome of *Alden Leeds*, a finite CD approval proceeding. At the Court's request, the parties to *Alden Leeds* are already devising a joint letter proposing next steps and a schedule for the swift resolution of those proceedings.[18] Moreover, to the extent *Alden Leeds* is not proceeding expeditiously, OxyChem cannot credibly cry foul, having itself requested that the public comment period be extended to ninety days—three times the statutorily-required period[19]—and having filed more than 800 pages of comments, which will take the United States time to review.

OxyChem should not be heard to complain of a stay it declined to oppose in order to buy itself time to challenge the CD. OxyChem's gamesmanship in this regard also illustrates the benefits of staying this action: until *Alden Leeds* is resolved, the interests of justice and judicial economy are best served by allowing

---

[15] 42 U.S.C.A. §§ 9613(f)(2), 9622(h)(4). Moreover, many other parties are in various stages of settlement discussions with the United States, which would have further impact on this litigation.

[16] *See, e.g.*, ECF No. 2296 at 1 (complaining that it may be months before EPA makes a decision on whether to move for entry of the CD).

[17] ECF No. 2296 at 5-6, 9-10.

[18] ECF No. 206 in *Alden Leeds*. Moreover, courts have granted stays of far greater lengths than this one. *See, e.g.*, *Nicolas v. Trs. of Princeton Univ.*, No. CV 17-3695, 2017 WL 6514662, at *4 (D.N.J. Dec. 20, 2017) (holding that the length of the stay was not excessive where a parallel case was still in briefing and, ultimately, was not resolved for another seventeen months); *Sheridan v. iHeartMedia, Inc.*, No. 15-cv-7574 (WHW) (CLW), 2016 WL 1059268, at *4-5 (D.N.J. Mar. 16, 2016) (describing as "relatively short" a stay pending issuance of rulings in a multiple appellate decisions where briefing had been completed and the last of those decisions was ultimately issued more than five years later); *Port of Seattle v. Boeing Co.*, No. C22-0993JLR, 2022 WL 17176858, at *1 & n.1 (W.D. Wash. Nov. 23, 2022) (granting the defendant's motion for an eight-month stay pending resolution of a settlement in a related CERCLA action).

[19] *See* ECF No. 34-1 at 21 in *Alden Leeds*.

Preti Flaherty

Leda Dunn Wettre
May 4, 2023
Page 6

resolution of *Alden Leeds* before tackling what remains of this burdensome litigation. Its request to revive this litigation now also fits neatly within OxyChem's predictable pattern of attempting to sow chaos and division among the defendants while bolstering its misleading media campaign.[20] But, regardless of its motives, OxyChem has failed to justify its request to reopen this case and partially lift the stay. Because the circumstances have not "changed such that the court's reasons for imposing the stay no longer exist or are inappropriate," there is no reason to lift the stay.[21] For these reasons, the Court should not entertain OxyChem's request at this time. If the Court does decide to consider its request, the Defendants request filing of a formal motion, full briefing, and oral argument so that the Court can understand all of the issues.[22]

      Thank you for your attention to this matter.

---

[20] In response to the lodging of the CD in *Alden Leeds*, OxyChem launched an aggressive media campaign aimed at pressuring politicians, citizens of New Jersey, and others to oppose the proposed settlement. OxyChem's campaign peddles the false narrative that New Jersey taxpayers and communities, including some non-settlors, will be forced to pay for cleanup costs at the Site if the CD is approved. *See, e.g.*, www.passaicrivercleanup.com (last visited May 4, 2023) (stating, for example, that "EPA wants New Jersey taxpayers to pay for the clean-up of the Passaic River" and that "nearly all the $1.82 billion clean-up cost is pinned on a handful of parties, including New Jersey communities").

[21] *Sager v. Allied Interstate, LLC*, No. 3:18-cv-220, 2021 WL 9406785, *2 (W.D. Pa. Dec. 21, 2021) (quotation marks omitted); *accord Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002). Even where significant changes in circumstances exist, courts will not necessarily lift a stay but will consider the original stay factors again. *See Nasdaq, Inc. v. Miami Int'l Holdings, Inc.*, No. 3:17-cv-6664-BRM-DEA, 2020 WL 8920588, at *3 (D.N.J. Mar. 10, 2020); *Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc.*, Nos. 12-1461-LPS-CJB, 13-335-LPS-CJB, 2015 WL 219019, at *4 (D. Del. Jan. 14, 2015) (declining to lift a stay in the face of changed circumstances that would cause the stay to be in place longer).

[22] L. Civ. R. 16.1(f)(1). Because the prior motion to stay was unopposed, the relevant facts and law supporting the stay were not fully briefed.

PRETI FLAHERTY

Leda Dunn Wettre
May 4, 2023
Page 7

        Very truly yours,

        s/ *Jeffrey D. Talbert*
        Jeffrey D. Talbert
        PRETI FLAHERTY BELIVEAU &
        PACHIOS, LLP
        PO Box 9546
        One City Center
        Portland, ME 04112-9546
        Tel: 207-791-3000
        Email: jtalbert@preti.com

        *Liaison Counsel for the Small Parties Group*

| s/ *Diana L. Buongiorno* | s/ *Lee Henig-Elona* |
|---|---|
| **CHIESA SHAHINIAN & GIANTOMASI PC** | **GORDON REES SCULLY MANSHUKHANI, LLP** |
| One Boland Drive | 18 Columbia Turnpike, Suite 220 |
| West Orange, NJ 07052 | Florham Park, NJ 07932 |
| Tel: 973.325.1500 | Tel: 973.549.2520 |
| dbuongiorno@csglaw.com | lhenig-elona@grsm.com |
| Diana L. Buongiorno, Esq. | Lee Henig-Elona, Esq. |
| | |
| *Liaison Counsel for the CSG Group* | *Liaison Counsel for the Gordon Rees Group* |
| | |
| s/ *Grant P. Gilezan* | s/ *Peter J. King* |
| **DYKEMA GOSSETT PLLC** | **KING MOENCH & COLLINS LLP** |
| 400 Renaissance Center | 51 Gibraltar Drive, Suite 2F |
| Detroit, MI 48243 | Morris Plains, NJ 07950 |
| Tel: 313.568.6800 | Tel: 973.998.6860 |
| ggilezan@dykema.com | pking@kingmoench.com |
| Grant P. Gilezan, Esq. | Peter J. King, Esq. |
| | |
| *Counsel for PVSC and Liaison Counsel for PVSC Group* | *Liaison Counsel for King Group* |

20428609.1

PRETI FLAHERTY

Leda Dunn Wettre
May 4, 2023
Page 8

*s/ Steven M. Richman*
**CLARK HILL**
210 Carnegie Center, Suite 102
Princeton, NJ 08540
Tel: 609.785.2911
srichman@clarkhill.com
Steven M. Richman, Esq.

*Counsel for Chargeurs, Inc.*

cc:   All counsel of record

20428609.1