# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION, | ) Hon. Madeline Cox Arleo |
| | ) Hon. Magistrate Leda D. Wettre |
| | ) |
| Plaintiff, | ) Civil Action No. 2:18-CV-11273 |
| | ) (MCA-LDW) |
| | ) |
| v. | ) |
| | ) **BRIEF IN SUPPORT OF THE** |
| | ) **MOTION OF THE SPG, PVSC,** |
| 21ST CENTURY FOX AMERICA, INC., et al., | ) **AND THE KING GROUP TO** |
| | ) **EXTEND THE STAY OF** |
| | ) **PROCEEDINGS** |
| Defendants and Third Party Plaintiffs, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| PASSAIC VALLEY SEWERAGE COMMISSIONERS, et al., | ) |
| | ) |
| | ) |
| Third-Party Defendants. | ) |
| | ) |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ...................................................................................... 1

PROCEDURAL BACKGROUND................................................................ 3

ARGUMENT ............................................................................................. 7

   I.     ALL RELEVANT FACTORS WEIGH IN FAVOR OF EXTENDING
        THE STAY ...................................................................................... 7

       A. Simplification of this Litigation ........................................... 8

           *1. Statutory Framework* .................................................10

           *2. Application of Contribution Protection to OxyChem's
              Claims* ......................................................................17

       B. Balance of Harms to the Parties ...........................................22

       C. Status of Discovery and Trial...............................................24

       D. Length of the Stay ................................................................25

       E. Interests of the Public..........................................................26

       F. Interests of Judicial Economy ..............................................28

CONCLUSION .........................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Actelion Pharms. Ltd. v. Apotex Inc.*, No. 12-5743, 2013 WL 5524078 (D.N.J. Sept. 6, 2013) ...........................................................22

*Aero AG Holdings, LLC v. Summit Footwear Co., Ltd.*, No. 20-16655, 2021 WL 4148218 (D.N.J. Sept. 13, 2021) .......................................................24

*Akishev v. Kapustin*, 23 F. Supp. 3d 440 (D.N.J. 2014) ................................. 7-8, 22

*Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir. 1994) .............13, 16, 28

*Alcan Aluminum Corp. v. Butler Aviation-Boston, Inc.*, No. 3:CV-02-0562, 2003 WL 22169273 (M.D. Pa. Sept. 19, 2003) ...........................................................17

*Arkema Inc. v. Honeywell Int'l, Inc.*, No. 10-cv-2886, 2013 WL 5356844 (E.D. Pa. Sept. 25, 2013) ....................................................................25

*ASARCO, LLC v. Union Pacific R.R. Co.*, 762 F.3d 744 (8th Cir. 2014) .........10, 17

*Ashland Inc. v. Gar Electroforming*, 2013 WL 6079993 (D.R.I. Jan. 15, 2013) ....12

*Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335 (2020) ..........................................26

*Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207 (3d Cir. 1976) .................................................................................................9

*Brass Smith, LLC v. RPI Indus., Inc.*, No. 09-06344, 2010 WL 4444717 (D.N.J. Nov. 1, 2010)..................................................................................9, 21

*Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599 (2009)..............12

*Cable Sys. Installations Corp. v. Int'l Bhd. of Elec. Workers, Loc. Union No. 351*, No. 12-7407, 2015 WL 13650366 (D.N.J. Mar. 30, 2015) ................................22

*Caldwell Trucking PRP Grp. v. Spaulding Composites Co.*, No. 94-3531, 1996 WL 608490 (D.N.J. Apr. 22, 1996) .......................................................................16

*Consol. Edison Co. of N.Y., Inc. v. UGI Utils.*, 423 F.3d 90 (2d Cir. 2005) ...........16

*Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701 (3d Cir. 2019)....... 10-11

*Datatern, Inc. v. Staples, Inc.*, No. 2:10CV133, 2012 WL 12903689 (E.D. Tex. Nov. 20, 2012) ................................................................7

*Diamond Shamrock Chems. Co. v. Aetna Cas. & Surety Co.*, 609 A.2d 440 (N.J. Super. App. Div. 1992) ................................................3

*Diamond Shamrock Chems. Co. v. Aetna Cas. & Surety Co.*, No. C-3939-84 (N.J. Super. Ct. Chancery Div. Apr. 12, 1989) ..............................3

*Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) ...............................17

*Everett Laby's, Inc. v. River's Edge Pharms., LLC*, No. 09-3458, 2009 WL 4508584 (D.N.J. Nov. 24, 2009) ......................................................23

*Exxon Mobil Corp. v. United States*, 108 F. Supp. 3d 486 (S.D. Tex. 2015) ..........15

*Hobart Corp. v. Dayton Power & Light Co.*, 336 F. Supp. 3d 888 (S.D. Ohio 2018) ..................................................................16

*In re Acushnet River & New Bedford Harbor: Proc. re Alleged PCB Pollution*, 712 F. Supp. 1019 (D. Mass. 1989) ....................................................8

*In re Bell Petroleum Servs., Inc.*, 3 F.3d 889 (5th Cir. 1993) .................................19

*In re Maxus Energy Corp.*, No. 16-11501-CTG (D. Del.) .........................................2

*In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201 (3d Cir. 2003) ....................27

*ITT Indus., Inc. v. Borgwarner, Inc.*, 700 F. Supp. 2d 848 (W.D. Mich. 2010) ......15

*Key Tronic Corp. v. United States*, 511 U.S. 809 (1994) ........................................12

*Lewis v. Russell*, No. 2:03-cv-02646, 2019 WL 5260731 (E.D. Cal. Oct. 17, 2019) ...................................................................17

*Lyondell Chem. Co. v. Occidental Chem. Corp.,* 608 F.3d 284 (5th Cir. 2010) .....11

*Morgenstern v. Fox Television Stations of Phila.*, No. 08-0562, 2010 WL 678113 (E.D. Pa. Feb. 23, 2010) ...................................................................23

*N.J. Dep't of Env't Prot. v. Occidental Chem. Co.*, No. ESX-L9868-05, Consent Judgment (Super. Ct. N.J. Dec. 16, 2013) ..........................................3

*N.J. Dep't of Env't Prot. v. Occidental Chem. Corp.*, Docket Nos. A02036-17, A2038-17 (N.J. Super. Ct. App. Div. Dec. 27, 2021) .........................................3

*N.J. Dep't of Env't. Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486 (3d Cir. 2020) ....................................................................................11

*N.J. Dep't of Env't. Prot. v. Am. Thermoplastics Corp.*, No. 98-CV-4781 (D.N.J.).......................................................................................17

*N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 808 F. Supp. 2d 417 (N.D.N.Y. 2011) ..........................................................................16

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 (2d Cir. 2010).........................................................................15

*Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*, No. CIV.A. 3:05-0784, 2010 WL 4642023 (S.D.W. Va. Nov. 2, 2010)..............................................7

*Onyx Enters. Int'l Corp. v. Volkswagen Grp. of Am., Inc.*, No. 3:20-cv-09976, 2021 WL 1338731 (D.N.J. Apr. 9, 2021)................................... 22-24

*Port of Seattle v. Boeing Co.*, No. C22-0993JLR, 2022 WL 17176858 (W.D. Wash. Nov. 23, 2022)........................................................*passim*

*Power Surv., LLC v. Premier Util. Servs., LLC*, 124 F. Supp. 3d 338 (D.N.J. 2015)................................................................................9

*Resco Prods., Inc. v. Bosai Mins. Grp. Co.*, No. 06-235, 2010 WL 2331069 (W.D. Pa. June 4, 2010).................................................................9

*S.E.C. v. Deloitte Touche Tohmatsu CPA Ltd.*, 940 F. Supp. 2d 10 (D.D.C. 2013) .......................................................................7

*San Gabriel Basin Water Quality Auth. v. Aerojet-Gen. Corp.*, No. 2:02 Civ. 4565 (C.D. Cal. July 15, 2008)...................................................17

*Sheridan v. iHeartMedia, Inc.*, No. 15-cv-7574, 2016 WL 1059268 (D.N.J. Mar. 16, 2016)...................................................................26

*Smart Vent, Inc. v. USA FloodAir Vents, Ltd.*, No. 10-0168-JBS-KMW, 2012 WL 12909887 (D.N.J. Apr. 25, 2012) ...........................................9

*State of Colorado v. United States*, No. 13-cv-02532, 2013 WL 6729511 (D. Colo. Dec. 20, 2013)..........................................................24, 29

*Transtech Indus., Inc. v. A & Z Septic Clean*, 798 F. Supp. 1079 (D.N.J. 1992) ................................................................................13

*Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333 (3d Cir. 2018) ........10

*United States v. $1,879,991.64 Previously Contained in Sberbank of Russia's Interbank*, 185 F. Supp. 3d 493 (D.N.J. 2016) ....................................................8

*United States v. Acton Corp.*, 733 F. Supp. 869 (D.N.J. 1990) .................................8

*United States v. Atl. Rsch. Corp.*, 551 U.S. 128 (2007)....................................*passim*

*United States v. Bay Area Battery*, 895 F. Supp. 1524 (N.D. Fla. 1995) ...............13

*United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) .................8, 17

*United States v. Charter Int'l Oil Co.*, 83 F.3d 510 (1st Cir. 1996) ........................27

*United States v. Colo. & E. R. Co.*, 50 F.3d 1530 (10th Cir. 1995) ........................16

*United States v. Davis*, 261 F.3d 1 (1st Cir. 2001) ........................................... 10-11

*United States v. Kramer*, 19 F. Supp. 2d 273 (D.N.J. 1998) ...................................27

*United States v. Kramer*, 953 F. Supp. 592 (D.N.J. 1997) ......................................10

*United States v. Nat'l R.R. Passenger Corp.*, No. CIV. A. 86-1094, 1999 WL 199659, at *10 (E.D. Pa. Apr. 6, 1999) ...........................................................28

*United States v. NCR Corp.*, No. 10-C-910, 2017 WL 3668771 (E.D. Wis. Aug. 23, 2017) ...............................................................................29

*United States v. Occidental Chem. Corp.*, 200 F.3d 143 (3d Cir. 1999)................26

*United States v. Rohm & Haas Co.*, 721 F. Supp. 666 (D.N.J. 1989)...............11, 27

*United States v. Se. Pa. Transp. Auth.* (*SEPTA*), 235 F.3d 817 (3d Cir. 2000)................................................................................................27

*Yankee Gas Servs. Co. v. UGI Utils., Inc.*, 852 F. Supp. 2d 229 (D. Conn. 2012) ................................................................................................15

**STATUTES**

42 U.S.C.A. § 9601 ................................................................................10

42 U.S.C.A. § 9607 ...............................................................................3, 10

42 U.S.C.A. § 9613 .............................................................................*passim*

42 U.S.C.A. § 9622 .............................................................................*passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54(b) ...............................................................................14

**INTRODUCTION**

The Small Parties Group ("SPG"), the Passaic Valley Sewerage Commissioners ("PVSC"), and the King Group (collectively, "Moving Parties")[1] respectfully seek an extension of the stay of these proceedings pending the outcome of *United States v. Alden Leeds, Inc.*[2] or, in the alternative, a six-month stay to allow the Court to better understand the consent decree ("CD") between the United States and over eighty defendants ("Settling Defendants") and its implications.

All three related cases—this matter, *Occidental Chemical Corporation v. Givaudan Fragrances Corp.*,[3] and *Alden Leeds*—concern the resolution of the responsibility for the cleanup costs for Operable Unit ("OU") 2 and OU4, which constitute the entire 17 miles of Lower Passaic River. The objective of the CD is to resolve the Settling Defendants' liability for those costs. Entry of the CD should result in the dismissal of OxyChem's claims against the Settling Defendants. There are multiple ways this may occur. The Court could enter an order in *Alden Leeds* barring claims against the Settling Defendants for costs addressed in the CD. It

---

[1] "Moving Parties" collectively refers to the individual parties in the SPG, the PVSC Group, and the King Group. Defendant SPG members Nokia of America Corporation and Pharmacia LLC join the Motion to Extend the Stay of Proceedings and accompanying proposed form of Order filed this date by counsel for the SPG but do not join this Brief in support thereof.

[2] No. 2:22-cv-07326-MCA-LDW (D.N.J.) ("*Alden Leeds*").

[3] No. 2:23-cv-01699-MCA-LDW (D.N.J.) ("*Givaudan*").

1

could dismiss the claims here and in *21st Century Fox* because they sound in contribution and the settling parties, as part of the CD, will receive contribution protection.  At the very least, the CD in *Alden Leeds* should result in dismissal of this case because it involves an equitable allocation of costs, and the settling parties will have already paid their fair share of those costs through the CD.

If entered, the CD will also provide a framework for non-settling defendants to settle with the United States, which may further narrow this case.  Without a stay, Settling Defendants will suffer significant prejudice by having to incur substantial costs to defend claims from which they may soon be immune and to engage in what could soon be unnecessary, yet extensive and contentious, motion practice and discovery. Non-settling defendants will also be prejudiced by having to plead claims and engage in piecemeal discovery that will be obviated if the CD is entered.  On the other hand, OxyChem will suffer little prejudice from a stay because it merely seeks the recovery of costs—a remedy for which there is no urgency either legally or practically.[4]

Lastly, staying this case to allow the court to evaluate the settlement in *Alden Leeds* prior to litigation over the same issues serves the interests of judicial economy,

---

[4] This is particularly true in light of developments in a related bankruptcy proceeding, in which OxyChem recently recovered $340 million from its indemnitor—an amount covering most if not all of its claims here.  *See In re Maxus Energy Corp.*, No. 16-11501-CTG (D. Del.).

the goals of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.A. §§ 9601-9675 (prioritizing settlement over litigation), and is the most efficient means for this Court to exercise good case management of these related matters.  The outcome of *Alden Leeds* will substantially affect the parties involved, the scope of claims, and the costs at issue in this matter. There is no question that *Alden Leeds may* substantially impact this case, which is all that the court needs to find to issue a continuation of the stay.

## **PROCEDURAL BACKGROUND**[5]

In 2018, having spurned the invitation of the United States Environmental Protection Agency ("EPA") to participate in a comprehensive settlement process with other potentially responsible parties ("PRPs") at the Site, primary PRP OxyChem initiated this litigation against over one hundred parties, seeking contribution and recovery of costs related to OU2 and OU4 pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C.A. §§ 9607, 9613.[6]  *See* ECF Nos. 1, 1247.  The

---

[5] In the interest of time, the Moving Parties do not repeat the factual background of this litigation, which is set out in the brief in support of the initial unopposed motion to stay, ECF No. 2246-3.

[6] EPA has long identified OxyChem as a "major" PRP at the Site, *see* ECF No. 84-1 at ¶ 10 in *Alden Leeds*, and the notorious facts supporting that designation have been well documented for decades, *see, e.g.*, *Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*, 609 A.2d 440 (N.J. Super. App. Div. 1992); *Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*, No. C-3939-84 (N.J. Ch. Apr. 12, 1989); *N.J. Dep't of Env't. Prot. v. Occidental Chem. Corp.*, No. ESX-L9868-05, Consent Judgment (N.J. Super. Ct. Law Div. Dec. 16, 2004), *available at*

defendant PRPs filed counterclaims against OxyChem seeking contribution pursuant to Section 113 for costs associated with OU2 and OU4.[7]  The defendants also impleaded more than forty third-party defendants,[8] and those third-party defendants, in turn, filed Section 107 and Section 113 counterclaims and cross-claims.[9]

This litigation—brought by OxyChem to undermine EPA's efforts to resolve the liability of PRPs at the Site—has been contentious and highly burdensome.  *See* ECF No. 2289 at 3 (noting the "inordinate number of discovery disputes" that have characterized these proceedings).  It remains years from what will be a months-long trial.  When this litigation was initially stayed, the parties had only recently started taking fact depositions, expert discovery had not yet begun, and millions of documents were still to be produced, primarily by OxyChem.[10]

As OxyChem's litigation proceeded, EPA reached a settlement agreement with most of the parties that participated in the years-long settlement negotiation process.  On December 16, 2022, the Department of Justice, on behalf of EPA

---

www.nj.gov/dep/passaicdocs; *N.J. Dep't of Env't Prot. v. Occidental Chem. Corp.*, Docket Nos. A02036-17, A2038-17 (N.J. Super. Ct. App. Div. Dec. 27, 2021).

[7] *See* ECF Nos. 424, 669, 674-77, 680-85, 688-89, 692-94, 697-98, 701-02, 706, 709, 712-13, 716, 718, 720, 723, 730, 753, 1488, 1790 in *21st Century Fox*.

[8] *E.g.*, ECF Nos. 580, 836, 1170 in *21st Century Fox*.

[9] *E.g.*, ECF Nos. 1383, 1388, 1790 in *21st Century Fox*.

[10] Expert discovery in a case of this magnitude and complexity, involving scores of individual sites and parties, could, by itself, last several more years and generate enormous defense and expert costs for all Moving Parties.

(collectively, the "United States"), initiated *Alden Leeds* and lodged the proposed CD that embodies the settlement with over eighty Settling Defendants.  ECF Nos. 1, 2-1 in *Alden Leeds*; *see* 42 U.S.C.A. § 9622(d)(1)(A), (2)(A).  On December 20, 2022, the Moving Parties filed an unopposed motion to stay this litigation.  ECF Nos. 2246 to 2246-7.  The Court thereafter stayed and administratively terminated these proceedings "pending the outcome of" *Alden Leeds*.  ECF No. 2289.

In March 2023, OxyChem filed its complaint in *Givaudan* against a subset of the parties to this litigation and *Alden Leeds* by which it seeks costs as to the same OU of the same Site.  Specifically, OxyChem pleaded a claim pursuant to Section 107 of CERCLA to recover costs incurred pursuant to a Unilateral Administrative Order ("UAO") issued by EPA dated March 2, 2023, in which OxyChem was the sole respondent.  ECF No. 1 in *Givaudan.*  The SPG and PVSC moved to stay that litigation concomitant with the stay of this litigation because the cases are inextricably intertwined.  ECF No. 98 in *id.*  Following oral argument, the Court ordered supplemental briefing in *Givaudan*, ECF No. 135 in *id.*, to be filed contemporaneously with this motion.

After OxyChem requested that the stay of this litigation be partially lifted, ECF No. 2296, the Court ordered that the stay would continue until November 10, 2023, giving the parties time to evaluate the continued need for the stay after the United States disclosed, by September 22, 2023, whether it intended to move

forward with the proposed CD in *Alden Leeds*.  ECF No. 2317.  The United States

requested an extension of its disclosure deadline in *Alden Leeds* based in large part

on the delay caused by its review of OxyChem's unprecedented volume of public

comments on the proposed CD and numerous related Freedom of Information Act

requests.  *See* ECF No. 238 at 2 in *Alden Leeds* ("OCC's comments total 777 pages,

with close to 24,000 pages of supporting exhibits. The comments include legal

arguments, technical arguments, criticisms regarding the decision to settle with

many individual settling parties, and twelve expert reports."); ECF Nos. 240, 249 at

1-2 in *id.*  After granting an extension of that deadline in *Alden Leeds* to November

21, 2023, ECF No. 267 in *id.*, the Court directed the parties to meet and confer

regarding the effect of that extension on the stay in this matter, ECF Nos. 2333, 2338,

2339.  The Court directed the Moving Parties to file this motion by December 1,

2023, and ordered that all discovery remain stayed pending a ruling on this motion.

ECF No. 2344.

On November 21, 2023, the United States informed the Court in *Alden Leeds*

that it will move to enter a modified version of the proposed CD, and it submitted a

proposed briefing schedule.[11]  ECF No. 272 in *Alden Leeds*.  The motion to stay

---

[11] The CD has been modified as a result of the United States' review of public comments.  The United States and the Settling Defendants have reached an agreement as to the modified terms and expect to execute the modified CD shortly such that it will not affect the proposed schedule in *Alden Leeds*.  *See* ECF No. 272 in *Alden Leeds*.

*Givaudan* remains pending, and the parties are filing supplemental briefs on the potential effect of the entry of the CD in *Alden Leeds* on that litigation. The Moving Parties that are not Settling Defendants in *Alden Leeds* are also actively seeking to settle their liability with the United States.

## **ARGUMENT**

### I.   **ALL RELEVANT FACTORS WEIGH IN FAVOR OF EXTENDING THE STAY.**

The Court "possess[es] inherent discretion to stay a proceeding whenever the interests of justice mandate such action." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 445 (D.N.J. 2014) (quotation marks omitted). Each of the factors that informs the exercise of that discretion weighs in favor of extending the stay of this litigation pending the outcome of *Alden Leeds* or, in the alternative, for six months the date of from a ruling on this motion.[12] That additional time would allow the Court and the parties to focus their resources on the CD approval proceedings and avoid wasting judicial and party resources on this private-party litigation—litigation that

---

[12] Courts consider the same factors in deciding whether to extend a stay as they do an initial stay; the authority to grant a stay and to extend a stay arise from courts' inherent discretion to control the docket. *See, e.g.*, *Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*, No. CIV.A. 3:05-0784, 2010 WL 4642023, at *3 (S.D.W. Va. Nov. 2, 2010); *S.E.C. v. Deloitte Touche Tohmatsu CPA Ltd.*, 940 F. Supp. 2d 10, 12 (D.D.C. 2013) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)); *Datatern, Inc. v. Staples, Inc.*, No. 2:10CV133, 2012 WL 12903689, at *2 (E.D. Tex. Nov. 20, 2012).

contravenes CERCLA's strong preference for settlement[13] and that will be substantially curtailed, if not entirely obviated, by the outcome of *Alden Leeds*.

Courts may consider a number of factors in ruling on a motion to stay, including the balance of harm to the parties; whether a stay would simplify the issues and the trial of the case; whether discovery is complete or a trial date has been set; the length of the stay; the interests of the public; and the interests of judicial economy. *Akishev*, 23 F. Supp. at 446; *United States v. $1,879,991.64 Previously Contained in Sberbank of Russia's Interbank*, 185 F. Supp. 3d 493, 500 (D.N.J. 2016). All of these factors, taken together, weigh in favor of extending the stay of this litigation to allow *Alden Leeds* to proceed before this case.

## A. Simplification of this Litigation

As this litigation has demonstrated, CERCLA litigation is often characterized by large numbers of parties and is therefore lengthy, expensive, and onerous. *See In re Acushnet River & New Bedford Harbor Proc. re Alleged PCB Pollution*, 712 F. Supp. 1019, 1022 n.1 (D. Mass. 1989); *United States v. Acton Corp.*, 733 F. Supp. 869, 870-71 (D.N.J. 1990). Thus, perhaps the most important factor in the

---

[13] The policy to encourage settlements in a CERCLA litigation "has particular force where . . . a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990).

analysis of this motion to extend the stay is whether the stay will simplify the issues and trial of this case. This factor also bears on the remaining stay factors.

"In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). Doing so could eliminate the need to expend "substantial time, effort, and resources" on litigation and promotes judicial economy. *Resco Prods., Inc. v. Bosai Mins. Grp. Co.*, No. 06-235, 2010 WL 2331069, at *7 (W.D. Pa. June 4, 2010). The inquiry is not whether the outcome of *Alden Leeds will* simplify this case but whether it *might* simplify the case. *See Smart Vent, Inc. v. USA FloodAir Vents, Ltd.*, No. 10-0168, 2012 WL 12909887, at *5 (D.N.J. Apr. 25, 2012) (considering "*the possibility* that issues in this case may be resolved" (emphasis added)); *Power Surv., LLC v. Premier Util. Servs., LLC*, 124 F. Supp. 3d 338, 339-40 (D.N.J. 2015) (considering whether "the number of issues left to be litigated *may* be considerably reduced" (emphasis added)); *Brass Smith, LLC v. RPI Indus., Inc.*, No. 09-06344, 2010 WL 4444717, at *5 (D.N.J. Nov. 1, 2010) (evaluating whether the stay "*might* serve to clarify and simplify the claims at issue in the litigation" (emphasis added)).

For the reasons detailed below, the outcome of *Alden Leeds* may greatly simplify this litigation.

### 1.    *Statutory Framework*

Depending on the circumstances, CERCLA allows PRPs to plead two types of claims against each other.  *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 138 (2007) ("We have previously recognized that §§ 107(a) and 113(f) provide two clearly distinct remedies." (quotation marks omitted)).  Pursuant to Section 107 of CERCLA, a PRP may sue one or more PRPs to recover costs it expends to clean up a Superfund site.[14]  *See Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 704 (3d Cir. 2019); *ASARCO, LLC v. Union Pacific R.R. Co.*, 762 F.3d 744, 747 (8th Cir. 2014); *United States v. Kramer*, 953 F. Supp. 592, 600 (D.N.J. 1997).  Pursuant to Section 113 of CERCLA, a PRP against which CERCLA liability is asserted or determined "during or following any civil action" or which has resolved its CERCLA liability through a settlement with the government may attempt to offset that liability by seeking contribution from other PRPs.[15]  42 U.S.C.A. § 9613(f)(1), (3)(B); *see United States v. Davis*, 261 F.3d 1, 27 (1st Cir. 2001); *N.J. Dep't of Env't*

---

[14] To be successful, a Section 107 plaintiff must prove, by a preponderance of evidence, that (1) the site in question is a "facility" as defined by CERCLA Section 101 (2) the defendant is a PRP, (3) a release or a threatened release of a hazardous substance has occurred, and (4) the release or the threatened release has caused the plaintiff to incur "necessary costs of response" consistent with the National Contingency Plan.  42 U.S.C.A. §§ 9601(9), 9607(a); *see Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 352 & nn.9-10 (3d Cir. 2018).

[15] Either an administrative or judicially approved settlement agreement satisfies this element of a Section 113 claim, in addition to the elements of a Section 107 claim. 42 U.S.C.A. § 9613(f)(2).

*Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 489 (3d Cir. 2020); *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 291 (5th Cir. 2010). "Contribution is defined as the tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *Atl. Rsch.*, 551 U.S. at 138 (quotation marks omitted). PRPs' shares are calculated "using such equitable factors as the court determines are appropriate," i.e., through equitable allocation. 42 U.S.C.A. § 9613(f)(1).

In crafting CERCLA to prioritize settlement over litigation, *see* 42 U.S.C.A. § 9622(a); *Cranbury Brick Yard*, 943 F.3d at 706, Congress provided a powerful settlement incentive in the form of contribution protection—a provision that immunizes settling PRPs from contribution claims by non-settling PRPs for any matter addressed in the settlement. 42 U.S.C.A. § 9613(f)(2); *accord* 42 U.S.C.A. § 9622(g)(5), (h)(4); *see also Davis*, 261 F.3d at 27; *Cranbury Brick Yard*, 943 F.3d at 706; *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 677 (D.N.J. 1989). Section 113(f)(2) provides broad protection as to any contribution claims. *See* 42 U.S.C.A. § 9613(f)(2) ("A person who has resolved its liability to the United States . . . in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."). This is

sometimes referred to as CERCLA's "settlement bar." *See Atl. Rsch.*, 551 U.S. at 140.

Although CERCLA provides PRPs with these two "similar and somewhat overlapping remed[ies]" against other PRPs, *Key Tronic Corp. v. United States*, 511 U.S. 809, 816 (1994), for a number of equally sufficient legal and practical reasons, in certain circumstances, a Section 107 claim is resolved as a claim for contribution and is subject to the settlement bar, *see Atl. Rsch.*, 551 U.S. at 141 n.8 (leaving open the question of whether Section 107 "contains an additional implied right to contribution"). Indeed, CERCLA's text confirms that some Section 107 claims may be "for contribution." *See, e.g.*, 42 U.S.C.A. § 9613(h)(1) (prescribing when federal courts have jurisdiction to review certain actions or orders, including in "[a]n action under section 107 . . . *for contribution*" (emphasis added)). That Section 107 claims may sound in contribution also comports with the common law of joint tortfeasors, by which claims between PRPs are claims for contribution and are thus subject to contribution protection. *See Atl. Rsch.*, 551 U.S. at 140-41; Restatement (Second) of Torts § 886A(2) (Am. Law Inst. 1977); *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 613 (2009) ("Congress intended the scope of [CERCLA] liability to be determined from traditional and evolving principles of common law." (quotation marks omitted)); *Ashland Inc. v. Gar Electroforming*, 2013 WL 6079993, at 6 (D.R.I. Jan. 15, 2013) (setting out the United States' position

that "[b]ecause the plaintiff is a liable party, like a tortfeasor under common law, its claim is properly in the nature of contribution and should be barred either by the direct operation of section 113(f)(2) or by common law contribution protection principles").

Courts therefore evaluate the remedy sought by a PRP without regard for that PRP's characterization of the claim. *See Transtech Indus., Inc.*, 798 F. Supp. at 1086 ("[A] claim for contribution is one in which one liable party attempts to recover from another potentially liable party for its share of the cost."); *id.* at 1085-86 (evaluating the remedy sought without regard for the plaintiff's characterization of the claim to determine the nature of the claim); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994) (concluding that a claim was a Section 113 action for contribution even though it was presented as a Section 107 action for cost recovery); *United States v. Bay Area Battery*, 895 F. Supp. 1524, 1532-33 (N.D. Fla. 1995) ("[Because the plaintiff's suits] seek to reapportion costs between liable parties, they are not cost recovery actions under section 107(a).  Instead, they are quintessential claims for contribution."  (quotation marks omitted)).

Regardless of whether it sounds in contribution, however, when any Section 107 claim is met with a Section 113 counterclaim, the entire dispute becomes an

equitable allocation.[16]  *Atl. Rsch.*, 551 U.S. at 140.  In *Atlantic Research*, the Supreme Court confirmed what courts had already held—that a PRP may plead a Section 107 cost recovery claim against another PRP, but "a defendant PRP may trigger equitable apportionment by filing a § 113(f) counterclaim."  *Id.* at 134, 139-41.  In so holding, the Court expressly noted that the "supposed loophole" that OxyChem seeks to use—by purporting to plead a Section 107 cost recovery claim to avoid contribution protection—does not exist.  *Id.* at 140.  Rather, the Court explained, "permitting PRPs to seek recovery under § 107(a) will not eviscerate § 113(f)(2)," which provides for contribution protection, because "[r]esolution of a § 113(f) counterclaim would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action."  *Id.* at 140 ("A district court applying traditional rules of equity would undoubtedly consider any prior settlement as part of the liability calculus.").

---

[16] The SPG disputes that a claim seeking costs related to a UAO is a Section 107 claim.  Although the Court concluded otherwise as to OxyChem's UAO claims in a motion to dismiss, ECF No. 647, the defendants had not yet filed counterclaims and third party claims and, thus, the Court did not then have the opportunity to consider the effect of those Section 113 claims on the Section 107 claims or the issue as matter of contribution protection.  In any event, the Court may reconsider that decision.  *See* Fed. R. Civ. P. 54(b).  Indeed, it controverts CERCLA to allow a party that refuses to cooperate with EPA to such an extent that EPA issues a UAO against it to then benefit from the issuance of the UAO by asserting UAO-related costs as the basis of a Section 107 claim against parties who have cooperated with EPA and thereby circumvent contribution protection.  Even if OxyChem's UAO-related claims are regarded as Section 107 claims, however, those claims are equally subject to dismissal on multiple grounds, including as detailed herein.

On that rationale, both before and since *Atlantic Research*, courts have routinely held that "once a § 107(a) claim is met with a § 113(f) counterclaim, the action has been effectively converted into an allocation of costs made on the basis of 'such equitable factors as the court determines are appropriate.'" *Yankee Gas Servs. Co. v. UGI Utils., Inc.*, 852 F. Supp. 2d 229, 240 (D. Conn. 2012) (quoting 42 U.S.C.A. § 9613(f)(1)); *Exxon Mobil Corp. v. United States*, 108 F. Supp. 3d 486, 534 (S.D. Tex. 2015) (declining to impose joint and several liability after a defendant brought a Section 113 claim and instead allocating liability based on equitable principles); *ITT Indus., Inc. v. Borgwarner, Inc.*, 700 F. Supp. 2d 848, 888 (W.D. Mich. 2010) ("[A]s a result of the various Cross-Claims, Counter-Claims and Third-Party Complaints that have been filed, this case is effectively a contribution suit between and among [PRPs].")); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 121 n.8 (2d Cir. 2010) ("A number of courts, including ours, have noted that while § 107(a) permits recovery of all remedial costs, it does not preclude defendant PRPs from  asserting counterclaims (or cross-claims) for contribution under § 113(f)(1), effectively converting the § 107(a) action into an apportionment of liability . . . ."); *Hobart Corp. v. Dayton Power & Light Co.*, 336 F. Supp. 3d 888, 897 n.5 (S.D. Ohio 2018) ("Although a defendant sued for contribution under § 113(f) may file contribution cross-claims against co-defendants and counterclaims against Plaintiffs, such claims are largely redundant, given that

the Court is already charged with equitably allocating response costs among all liable parties.").[17]   Thus, where a Section 113 contribution claim is asserted for any common liability at a site or operable unit, *all claims* relating to the site or operable unit require an equitable allocation of costs—quintessential contribution—and it stands to reason that they are therefore subject to contribution protection upon settlement.   Moreover, in that scenario, all claims against a settling party that has paid its fair share in the settlement are also subject to dismissal because the equitable allocation leaves no costs for affirmative recovery.   *See Atl. Rsch. Corp.*, 551 U.S. 140-41 (quoting the Restatement (Second) of Torts § 886A(2) (Am. Law Inst. 1977) for the proposition that "[n]o tortfeasor can be required to make contribution beyond his own equitable share of the liability"); *see also* 42 U.S.C.A. § 9622(h)(4) (providing that the liability of non-settling parties is reduced the amount of the settlement with other parties).

Thus, courts have entered bar orders when they approve CERCLA settlements to make clear that pending and future contribution claims that fall within the matters addressed by the CD are barred and to ensure that the settling parties receive the

---

[17] *See also Akzo Coatings, Inc.*, 30 F.3d at 764; *Caldwell Trucking PRP Grp. v. Spaulding Composites Co.*, No. 94-3531, 1996 WL 608490, at *8, 14 (D.N.J. Apr. 22, 1996); *United States v. Colo. & E. R. Co.*, 50 F.3d 1530, 1536 (10th Cir. 1995); *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 808 F. Supp. 2d 417, 489 (N.D.N.Y. 2011), vacated in part on other grounds, 766 F.3d 212; *Consol. Edison Co. of N.Y., Inc. v. UGI Utils.*, 423 F.3d 90, 100 n.9 (2d Cir. 2005).

finality to which they are entitled.[18]  *See, e.g.*, *San Gabriel Basin Water Quality Auth. v. Aerojet-Gen. Corp.*, No. 2:02 Civ. 4565, slip op. at 7 (C.D. Cal. July 15, 2008); *see also* ECF No. 1123 at 2-3 in *N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, No. 98-CV-4781; *see also, e.g.*, ECF No. 952 at ¶ 6.B in *id.*  Courts may also enter a dismissal or a summary judgment in favor of settling parties in private litigation against them by non-settling PRPs.  *See, e.g.*, *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 92 (1st Cir. 1990); *ASARCO, LLC*, 762 F.3d at 746, 748-50; *Alcan Aluminum Corp. v. Butler Aviation-Boston, Inc.*, No. 3:CV-02-0562, 2003 WL 22169273, at *1 (M.D. Pa. Sept. 19, 2003).

### 2.  *Application of Contribution Protection to OxyChem's Claims*

Here, as discussed above, OxyChem pleaded claims under both Section 107 and Section 113, and the defendants filed counterclaims against OxyChem seeking contribution pursuant to Section 113.  Third-party defendants filed additional Section 107 and Section 113 counterclaims and cross-claims.  This litigation, containing some 800 pleading documents, therefore requires the equitable allocation

---

[18] Courts may enter bar orders as a matter of federal common law.  *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995); *see Lewis v. Russell*, No. 2:03-cv-02646, 2019 WL 5260731, at *3 (E.D. Cal. Oct. 17, 2019).

of liability.  All of the claims in this litigation concern OU2 and OU4 of the Site[19]—precisely the "matters addressed" by the proposed CD in *Alden Leeds*.[20]

For a number of equally sufficient reasons, all of which lead to the same result, entry of the CD should eliminate *all* of OxyChem's claims against the Settling Defendants.  Although there are several ways (discussed above) in which this can occur, the follow two ramifications are unavoidable if the CD is entered:

- **<u>Elimination of Section 113 claims</u>** - Entry of the CD will provide settling parties with contribution protection which will unquestionably immunize the Settling Defendants from OxyChem's Section 113 contribution claims in this case.  This, alone, will substantially affect this litigation.  *See* 42 U.S.C.A. §§ 9613(f)(2), 9622(h)(4).

- **<u>Elimination of Section 107 claims</u>** - Since this case involves both Section 107 claims and Section 113 counterclaims the entire matter is converted into one for equitable allocation.  Entry of the CD in *Alden Leeds* should result in dismissal of any remaining claims because it provides for contribution protection and resolves the Settling Defendants responsibility for the costs at issue in this case. *See Atl.*

---

[19] OU2 lies within OU4, and OxyChem has also made allegations as to the entire seventeen miles of the Lower Passaic River, or OU4.  *See* ECF No. 1247 at ¶ 19.

[20] The proposed CD provides for contribution protection and defines the matters addressed in the settlement as follows:

> [E]ach Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with OU2 and OU4, by the United States or any other person, except for the State . . . .

ECF No. 2-1 at ¶ 23 in *Alden Leeds*.

> *Rsch. Corp.*, 551 U.S. at 140-41; *see also* 42 U.S.C.A. § 9622(h)(4) (meaning that OxyChem will receive a dollar-for-dollar credit for the amount paid by the Settling Defendants pursuant to the CD).[21]

A stay pending the outcome in *Alden Leeds* is therefore warranted because the resolution of that matter will unquestionably have a substantial impact on the parties, the scope of claims, and the costs at issue in this litigation.

If this litigation proceeds in any fashion before the Court rules on the motion to enter the CD, all of the parties and the Court will be forced to engage in likely unnecessary motion practice and discovery, as well as a complex equitable allocation, without knowing which parties have been immunized from OxyChem's claims.  This would be no small feat.  *See In re Bell Petroleum Servs., Inc.*, 3 F.3d 889, 896-97 (5th Cir. 1993) (discussing the difficulties in litigating cases where "each of a large number of [defendants] contributes a relatively small and insignificant part to the total harm").  In the absence of a stay, the parties will engage in summary judgment practice without knowing which parties will receive the benefit of contribution protection pursuant to the CD and without knowing which third-party claims may or may not be eliminated.  If the Court later enters the proposed CD in *Alden Leeds*, a significant amount of unnecessary motion practice will also have taken place against parties who will ultimately be dismissed.

---

[21] The reasons identified herein as to why *all* of OxyChem's claims in this case will be eliminated upon entry of the CD are just several of many ways to reach the same result.

Moving forward with this litigation without knowing the outcome of *Alden Leeds* would also lead to highly inefficient discovery. The non-settling parties would be forced to coordinate discovery with numerous parties that might be soon dismissed from this action without knowing which of those parties might be dismissed. Even in the event of a partial stay, the Settling Defendants would need to participate in discovery to ensure that the record regarding OxyChem's culpability and share of liability is fully developed, thereby protecting their interests in the event the CD is not approved. Alternatively, if the non-settling parties pursue discovery in the absence of the Settling Defendants and the CD is not approved, the non-settling parties may need to repeat the discovery already taken to account for the Settling Defendants' allocable shares of liability, if any. Additionally, managing the "inordinate number of discovery disputes" that have characterized this litigation, ECF No. 2289 at 3, would consume a substantial amount of judicial resources and significantly burden the parties without advancing the resolution of this matter in a meaningful way.

The absence of a stay as to all parties also risks the inefficient and perhaps unnecessary judicial allocation among the parties. The Court's equitable allocation—the inevitable outcome in this case, where parties filed Section 113 claims, *see Atl. Rsch.*, 551 U.S. at 140—should not occur until the outcome of *Alden Leeds* is known. To allocate shares of liability, the Court and the parties need to

know which parties are required to participate in that allocation.  The logic of *Atlantic Research* thus dictates that this Court should act on the CD in *Alden Leeds* before embarking on an equitable allocation among the parties in this case.  *See id.* at 140-41.

Even if the Court ultimately declines to approve the proposed CD, an extension of the stay of this litigation is warranted.  The proposed CD and the underlying allocation could inform this Court's own equitable allocation among the PRPs, thereby simplifying the trial in this case.  *See Port of Seattle v. Boeing Co.*, No. C22-0993JLR, 2022 WL 17176858, at *6 (W.D. Wash. Nov. 23, 2022) (discussing that "it will be easier and more efficient for the court" to equitably allocate cleanup costs once the related settlement is complete).

As discussed above, for purposes of deciding whether to further stay this litigation, the inquiry is not whether this litigation will be simplified but whether it might be.  The Court need not decide at this time whether the Settling Defendants will be immunized from all of OxyChem's claims.  Nor is it necessary to show that every claim in this case will be obviated.  It is sufficient that a plausible legal theory and case law support the Moving Parties' position that *Alden Leeds* may simplify the issues and trial of this case.  *See Brass Smith*, 2010 WL 4444717, at *5 (granting a stay even though the defendant was "not asserting that a stay should be granted because the suit will likely be dismissed outright as a result of the pending

21

reexaminations."); *Actelion Pharms. Ltd. v. Apotex Inc.*, No. 12-5743, 2013 WL 5524078, at *5 (D.N.J. Sept. 6, 2013) (holding that the mere filing of a dispositive motion "favor[ed] the issuance of a stay, where . . . the Court finds that resolution of the dispositive motion may narrow or outright eliminate the need for discovery" (alterations and quotation marks omitted)).

## B. Balance of Harms to the Parties

In evaluating the need for an extended stay, the Court may also look to the balance of harms between the parties, i.e., whether granting the stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party versus whether denying the stay would create a clear case of hardship or inequity for the moving party. *Akishev*, 23 F. Supp. 3d at 446. Here, that balance favors granting an extension of the stay pending the outcome of *Alden Leeds*. The Court need not evaluate prejudice to the Moving Parties if it finds no undue prejudice to OxyChem. *See Onyx Enters. Int'l Corp. v. Volkswagen Grp. of Am., Inc.*, No. 3:20-cv-09976, 2021 WL 1338731, at *4 (D.N.J. Apr. 9, 2021); *Cable Sys. Installations Corp. v. Int'l Bhd. of Elec. Workers, Loc. Union No. 351*, No. 12-7407, 2015 WL 13650366, at *3 (D.N.J. Mar. 30, 2015).

As before, the only possible prejudice that OxyChem may suffer as a result of extending the stay of this litigation is a delay in recovering money. "[D]elay, alone, is not dispositive on the issue of prejudice, particularly given that such delay is

common to all stayed cases." *Everett Laby's, Inc. v. River's Edge Pharms., LLC*, No. 09-3458, 2009 WL 4508584, at *3 (D.N.J. Nov. 24, 2009). Here in particular, that delay would not unduly prejudice or tactically disadvantage OxyChem. Even with the requested extension, the stay would still be brief in comparison not only to this years-long litigation but also relative to the decades-long cleanup of the Site for which OxyChem seeks to recoup costs. OxyChem will suffer no severe consequences as a result of waiting to restart its private-party litigation pending the outcome of *Alden Leeds*. *See Morgenstern v. Fox Television Stations of Phila.*, No. 08-0562, 2010 WL 678113, at *3 (E.D. Pa. Feb. 23, 2010). More importantly, whether it recoups costs in several years or several years plus several months, that remedy will be adequate to compensate OxyChem for any alleged injury. *See supra* note 4; *Port of Seattle*, 2022 WL 17176858, at *5 ("[M]oney damages compensate a plaintiff for their injury regardless of when the money damages are awarded." (quotation marks omitted)).

The Moving Parties, in contrast, will suffer clear hardship and inequity should the Court decline to extend the stay in the unique circumstances of this case. As discussed above, this litigation has been (and by all indications will continue to be) lengthy, contentious, and resource-intensive, substantially burdening the Moving Parties, including public entities such as PVSC. *See Onyx Enters.*, 2021 WL 1338731, at *4 (concluding that, in a case requiring significant discovery, discovery

costs constituted a "specific and substantial harm to the movant"). Requiring the Settling Defendants to engage in this litigation while simultaneously engaging in a CD approval process that could immunize them from OxyChem's claims "would be both inefficient and inequitable" and could "disrupt or even derail" the settlement process in *Alden Leeds*. *Port of Seattle*, 2022 WL 17176858, at *6. Non-settling Moving Parties would also be prejudiced by continuing with this litigation when the outcome of *Alden Leeds* may substantially narrow these proceedings, making them less burdensome, and may even negate the need for third-party claims against them.[22] *See State of Colorado v. United States*, No. 13-cv-02532, 2013 WL 6729511, at *2 (D. Colo. Dec. 20, 2013). This potential waste of time and money on litigation that may ultimately be unnecessary is sufficient to tip this factor in favor a continued stay. *See Onyx Enters.*, 2021 WL 1338731, at *4; *Aero AG Holdings, LLC v. Summit Footwear Co., Ltd.*, No. 20-16655, 2021 WL 4148218, at *3 (D.N.J. Sept. 13, 2021).

### C.  Status of Discovery and Trial

This case is in the beginning stages of discovery. Fact and document discovery are underway but clearly incomplete and written discovery is just beginning for parties more recently impleaded, *see* ECF No. 1170; many depositions

---

[22] Three of the non-settling Moving Parties are intervenors in *Alden Leeds*. *See* ECF Nos. 197, 198 in *Alden Leeds*.

have yet to be taken;[23] expert discovery has not begun; no trial date has been set; and no scheduling dates have been set beyond an aspirational fact discovery deadline that was extended shortly before the stay was initially granted, *see* ECF No. 2184. Even if the discovery already taken constituted a "considerable amount," the fact that the vast majority of discovery remains unfinished (indeed, not even begun) coupled with the lack of a trial date or scheduling order tips this factor in favor of the extended stay. *Cf. Arkema Inc. v. Honeywell Int'l, Inc.*, No. 10-cv-2886, 2013 WL 5356844, at *7 (E.D. Pa. Sept. 25, 2013) (determining that "this factor weigh[ed] in favor of a stay" although "a considerable amount of discovery" had been conducted as to one issue because "discovery concerning [additional matters was] just beginning," "a scheduling order [had] yet to issue," and a parallel proceeding led to "uncertainty of what claims may emerge").

### D.  Length of the Stay

The significant impact the CD in *Alden Leeds* will necessarily have on this litigation warrants a stay pending the outcome of *Alden Leeds*.  Because the Court controls the schedule in *Alden Leeds*, the Court may manage both cases as it sees fit. Moreover, proceedings to evaluate settlements such as the CD in *Alden Leeds* should proceed much more quickly than civil litigation, especially civil litigation with

---

[23] Approximately thirty of the two hundred depositions authorized by the Amended Deposition Protocol have been completed.  *See* ECF No. 2060.

nearly 140 parties.  With that said, if the Court is disinclined to extend the stay of this case until the resolution of *Alden Leeds*, the Court should issue a six-month stay to provide it sufficient time to better understand the scope of the settlement, related issues, and the effect of that settlement on other actions against the Settling Defendants.   A six-month stay is certainly not unreasonable considering the protracted nature of private CERCLA litigation.[24]  *See Port of Seattle*, 2022 WL 17176858, at *1 & n.1 (staying the case for eight months pending resolution of a settlement in a related CERCLA action).  This litigation is no exception to the rule, having taken over four and a half years from initiation to partial completion of fact discovery.

### E.  Interests of the Public

The public interest also favors extending the stay of this litigation pending the outcome of *Alden Leeds* or, in the alternative, for six months.  By design, CERCLA strongly favors settlement over litigation.  *See* 42 U.S.C.A. § 9622(a); *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1355 (2020) ("Settlements are the heart of the Superfund statute."); *United States v. Occidental Chem. Corp.*, 200 F.3d 143, 148, 150 n.8 (3d Cir. 1999) (explaining that contribution protection "is the result of a

---

[24] Nor would the stay, even extended, be of such a length that it is unprecedented in this jurisdiction.  *See, e.g.*, *Sheridan v. iHeartMedia, Inc.*, No. 15-cv-7574, 2016 WL 1059268, at *4-5 (D.N.J. Mar. 16, 2016) (describing as "relatively short" a stay pending issuance of rulings in a pair of appellate decisions, the last of which was issued more than five years later).

deliberate policy choice made by Congress in order to encourage settlements" and noting that the "usual federal policy encouraging settlements is even stronger in the CERCLA context" (quotation marks omitted)); *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 209 (3d Cir. 2003); *United States v. Se. Pa. Transp. Auth. (SEPTA)*, 235 F.3d 817, 822 (3d Cir. 2000); *United States v. Kramer*, 19 F. Supp. 2d 273, 281 (D.N.J. 1998).

Settling with many peripheral PRPs in *Alden Leeds* serves the public interest, not only by contributing funds to Site remediation costs, but also by allowing EPA to focus on OxyChem as the primary PRP and by saving the government—and thus the taxpayers—years of resource-intensive, risky litigation that it would otherwise take to engage in enforcement against each of the over eighty Settling Defendants. *See Rohm & Haas Co.*, 721 F. Supp. at 696 (explaining that first settling with smaller PRPs streamlines and expedites resolution of litigation, substantially reduces transaction costs, and allows the government to focus enforcement resources on major PRPs); *United States v. Charter Int'l Oil Co.*, 83 F.3d 510, 521 (1st Cir. 1996) ("CERCLA . . . aims to induce those parties who settle earlier to do so for higher amounts than they might otherwise by assuring them the right to seek contribution protection from those who have not as yet settled.").

In contrast, forcing the Settling Defendants to litigate their liability in OxyChem's private-party litigation when a settlement with the government is

pending defeats CERCLA's purposes.  Doing so exposes the Settling Defendants to substantial litigation costs, thereby reducing the value of the settlement and discouraging future settlement by the Settling Defendants and other PRPs.  *See United States v. Nat'l R.R. Passenger Corp.*, No. CIV. A. 86-1094, 1999 WL 199659, at *10 (E.D. Pa. Apr. 6, 1999) ("[Contribution protection] was intended to foster settlement in two ways.  Obviously, settling parties who are immune from later contribution actions are encouraged to settle. Additionally, non-settling parties who risk a disproportionate share of the loss are also inclined to settle."); *see also Akzo Coatings, Inc.*, 30 F.3d at 770 ("EPA . . . stands to gain from any precedent that makes settlements more attractive.").  Thus, extending the stay to allow the parties to seek resolution of *Alden Leeds* without the simultaneous, considerable burden of this litigation and potentially unnecessary costs serves the public interest.

## F.  Interests of Judicial Economy

Finally, the interests of judicial economy also favor extending the stay of these proceedings pending the outcome of *Alden Leeds* or, in the alternative, for six months to allow *Alden Leeds* to proceed.  It would make little sense for the Court to devote its limited time and resources to overseeing discovery and allocating liability among the parties when, as discussed above, over eighty of those parties may ultimately be immunized from OxyChem's claims and many more may be eliminated from this litigation should that immunity mean that third-party claims are

no longer needed.  *See NCR Corp.*, 2017 WL 3668771, at *6 (discussing that the court granted a stay pending review of a CD because, "if approved [the CD] would . . . put an end to most if not all of the litigation" and "would significantly change the contours of" the litigation); *Port of Seattle*, 2022 WL 17176858, at *6 n.14 (staying private CERCLA litigation in the interest of judicial economy because a pending settlement could moot contribution claims that the defendant would otherwise bring against additional PRPs); *State of Colorado*, 2013 WL 6729511, at *2 ("Proceeding with discovery and other proceedings in this case would also pose a waste of judicial resources if this case is ultimately dismissed after a ruling on the Joint Motion for Entry of [CD].").

## **CONCLUSION**

Entry of the CD in *Alden Leeds* should precipitate resolution of all three related actions, but there is no question that it will substantially impact this action. Extending the stay of this litigation will permit the parties and the Court to learn the outcome of *Alden Leeds* before moving forward with this case.  Proceeding in that order will prevent the Court and the parties from wasting resources by continuing to engage in this costly, time-consuming private-party litigation—litigation that is disfavored by CERCLA and that may ultimately be unnecessary.  The Moving Parties therefore ask that the Court extend the stay of these proceedings pending the

outcome of *Alden Leeds* or, in the alternative, for six months from the date of a ruling on this motion.

Dated: December 1, 2023                    Respectfully submitted,

s/ *Grant P. Gilezan*                      s/ *Jeffrey D. Talbert*
**DYKEMA GOSSETT PLLC**                     **PRETI, FLAHERTY, BELIVEAU &**
400 Renaissance Center                      **PACHIOS, LLP**
Detroit, MI 48243                           One City Center
Tel: 313.568.6800                           Portland, ME 04101
Grant P. Gilezan, Esq.                       Tel: 207.791.3239
                                            Jeffrey D. Talbert, Esq.

*Counsel for PVSC and Liaison Counsel*      *Liaison Counsel for the Small Parties*
*for Third-Party Defendants in the*         *Group*
*PVSC Group*

s/ *Peter J. King*
**KING MOENCH HIRNIAK &**
**METHA, LLP**
51 Gibraltar Drive, Suite 2F
Morris Plains, NJ 07950
Tel. 973.998.6860
Peter J. King, Esq.

*Liaison   Counsel   for   Third-Party*
*Defendants in the King Group*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey D. Talbert, hereby certify that on December 1, 2023, I caused a copy

of the foregoing document to be served via electronic filing on all counsel of record.


Dated: December 1, 2023      *s/ Jeffrey D. Talbert*
          **PRETI, FLAHERTY, BELIVEAU**
          **& PACHIOS, LLP**
          One City Center, PO Box 9546
          Portland, ME 04112
          Telephone: 207.791.3239
          Jeffery D. Talbert, Esq. (Bar #333512021)