**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
*Attorneys for MI Holdings, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>21ST CENTURY FOX AMERICA, INC., et al.,<br><br>Defendants. | Civil Action No. 2:18-cv-11273-MCA-LDW<br><br>**DECLARATION OF CAMILLE V. OTERO IN SUPPORT OF MOTION TO WITHDRAW AS COUNSEL FOR MI HOLDINGS, INC.** |

**CAMILLE V. OTERO**, being of full age, hereby certifies as follows:

1.      I am an attorney at law in the State of New Jersey, admitted to practice before this Court, and a Partner in the law firm of FBT Gibbons LLP[1] ("Gibbons"), counsel for Defendant MI Holdings, Inc. in the above-captioned matter.  As such, I am fully familiar with the facts set forth herein.

2.      On August 12, 2024, (the "Petition Date") AIO US, Inc., Avon Products, Inc., MI Holdings, Inc., and Avon Products, Inc. each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  *See In re: AIO US, Inc.*, Case No. 24-11836-CTG (Bankr. D. Del.) (the "Bankruptcy").

---

[1] FBT Gibbons LLP was formerly known as Gibbons P.C.  Because this case is marked closed, this name change is not reflected on the docket.

G005593.G098890  4911-1296-9105v2

3.      The Order Confirming Debtors' Plan of Liquidation (the "Plan") in the Bankruptcy is attached hereto as Exhibit A.

4.      The Notice of Occurrence of Effective Date and Entry of Order Confirming Debtors' Plan in the Bankruptcy is attached hereto as Exhibit B.

5.      The Hon. Melanie Cyganowski (Ret.) is the Liquidating Trustee for the Avon Liquidation Trust.  The Trustee is required to administer the Trust, and her responsibilities include resolving claims and payments to be made to holders of allowed claims in accordance with the Plan.  *See* Exhibit B at 2 ¶ 5.  On November 12, 2025, the Trustee informed Gibbons that she has no objection to its withdrawal from the instant case, given that the Debtors, including MIH, have transferred all of their remaining assets to the Avon Liquidation Trust and are required to be dissolved under the Plan.

6.      The Liquidating Trustee is now in the process of taking possession of the Debtors' books and records as part of the transfer of the Debtors' remaining assets to the Liquidation Trust.

7.      Plaintiff Occidental Chemical Corporation took the deposition of MIH pursuant to Fed. R. Civ. P. 30(b)(6) in November 2022.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: April 10, 2026                              */s/ Camille V. Otero*
                                                    Camille V. Otero

G005593.G098890   4911-1296-9105v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2026, the foregoing Certification of Camille V. Otero was served upon (1) all counsel of record via the CM/ECF Electronic filing system of the United States District Court for the District of New Jersey, and (2) the Hon. Melanie L. Cyganowski (Ret.) via email and FedEx.

FBT GIBBONS LLP


By:    */s/ Camille V. Otero*
Camille V. Otero
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
cotero@fbtgibbons.com
*Attorneys for MI Holdings Inc.*

April 10, 2026

-3-

G005593.G098890   4911-1296-9105v2

# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
                                                             :
In re                                                        :        Chapter 11
                                                             :
AIO US, INC., et al.,                                        :        Case No. 24–11836 (CTG)
                                                             :
            Debtors.¹                                        :        (Jointly Administered)
                                                             :
                                                             :        Re: Docket Nos. 812, 965, 1027, 1048 & 1319
------------------------------------------------------------ x
```

**ORDER (I) CONFIRMING FOURTH AMENDED**
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF AIO US, INC.**
**AND ITS DEBTOR AFFILIATES AND (II) GRANTING RELATED RELIEF**

Upon the filing by AIO US, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned Chapter 11 Cases (collectively, the "**Debtors**"), as "proponents of the plan" within the meaning of section 1129 of title 11 of the United States Code (the "**Bankruptcy Code**"), of the *Joint Chapter 11 Plan of Liquidation of AIO US, Inc. and Its Debtor Affiliates* [Docket No. 812] (as amended by Docket Nos. 965, 1027, 1048 and 1319, and including any exhibits, schedules, and supplements thereto and as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, the "**Plan**"), a copy of which is attached hereto as **Exhibit A**;² and the Bankruptcy Court having approved the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Liquidation of AIO US, Inc. and Its Debtor Affiliates* [Docket No. 1028] (as amended by Docket No. 1050 and including any exhibits, schedules, and supplements thereto,

---

¹     A complete list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number is available at https://dm.epiq11.com/case/aiousinc/info. The Debtors' mailing and service address is 4 International Drive, Suite 110, Rye Brook, New York 10573.

²     Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Solicitation Procedures Order (as defined below), as applicable.

the "**Disclosure Statement**") and having entered the *Order (I) Approving Proposed Disclosure Statement and the Form and Manner of Notice of Hearing Thereof, (II) Establishing Solicitation and Voting Procedures with Respect to Debtors' Proposed Chapter 11 Plan, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation of Debtors' Proposed Chapter 11 Plan, and (V) Granting Related Relief* [Docket No. 1047] (the "**Solicitation Procedures Order**"); and the Debtors, through their solicitation agent in the Chapter 11 Cases, Epiq Corporate Restructuring, LLC ("**Epiq**"), having served the Solicitation Procedures Order, the Plan, the Disclosure Statement, and the other related solicitation materials, including copies of the Bankruptcy Court-approved ballots (the "**Ballots**"), notices of non-voting status, optional election form (the "**Optional Election Form**"), and notice of the hearing on confirmation of the Plan (the "**Confirmation Hearing**" and the notice thereof, the "**Confirmation Hearing Notice**"), as applicable, on the holders of Claims and Interests in accordance with the Solicitation Procedures Order, as described in the *Certificate of Service* of Hallie Dreiman, dated May 23, 2025 [Docket No. 1067], and the *Certificate of Service* of Stephenie Kjontvedt, dated June 3, 2025  [Docket  No. 1120]  (collectively,  the "**Solicitation  Certifications**")  and  the *Declaration  of  Stephenie  Kjontvedt  of  Epiq  Corporate  Restructuring,  LLC  Regarding  the Solicitation and Tabulation of Ballots Cast on the Second Amended Joint Chapter 11 Plan of Liquidation of AIO US, Inc. and Its Debtor Affiliates*, filed on June 27, 2025 [Docket No. 1221] (the "**Voting Certification**"); and on May 28, 2025, the Debtors, through Epiq, having caused the Confirmation Hearing Notice to be published in the national editions of the *Wall Street Journal* and *USA Today,* as set forth in the proofs of publication*,* filed on May 28, 2025 [Docket Nos. 1099 and 1100] (the "**Publication Affidavits**"); and due and proper notice of the Confirmation Hearing having been given to holders of Claims against, and Interests in, the Debtors and other parties in

2

interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), and the Solicitation Procedures Order, as established by the certificates of service, mailing, and publication filed with the Bankruptcy Court, including the Solicitation Certifications and the Publication Affidavits, and such notice being reasonable and sufficient under the circumstances and no further or additional notice being required; and the Debtors having filed on June 13, 2025, the *Notice of Filing of Plan Supplement in Connection with Second Amended Joint Chapter 11 Plan of Liquidation of AIO US, Inc. and Its Debtor Affiliates* [Docket No. 1138] (including any exhibits, schedules, and supplements thereto and as may be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan and this Confirmation Order, the "**Plan Supplement**"); and due and proper notice of the Plan Supplement and the documents set forth, and transactions contemplated, therein having been given to holders of Claims against, and Interests in, the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Solicitation Procedures Order; and such filing and notice thereof being reasonable and sufficient under the circumstances and no further or additional notice being required; and the Bankruptcy Court having considered the record in these Chapter 11 Cases, the compromises, settlements, and transactions embodied in and contemplated by the Plan, the briefs and arguments regarding confirmation of the Plan, the evidence in support of the Plan adduced at the Confirmation Hearing; and the Confirmation Hearing having been held on July 21, 2025 and July 23, 2025; and the Bankruptcy Court having taken judicial notice of the entire record of these Chapter 11 Cases; and after due deliberation; and for the reasons set forth in the Memorandum Opinion dated August 21, 2025 [Docket No. 1442]:

3

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      **Findings of Fact and Conclusions of Law.**  The findings and conclusions set forth herein and the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

B.      **Jurisdiction and Venue.**  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to entry of a final order by the Bankruptcy Court in accordance with the terms set forth herein to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

C.      **Judicial Notice.**  The Bankruptcy Court takes judicial notice of the docket in these Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the

RLF1 33843519v.1

Bankruptcy Court during these Chapter 11 Cases, including, without limitation, the Confirmation Hearing.

D.    **Burden of Proof.**  Based on the record of these Chapter 11 Cases, each of the Debtors has met the burden of proving by a preponderance of the evidence each applicable element of section 1129 of the Bankruptcy Code.

E.    **Solicitation.**  The Plan was solicited in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Solicitation Procedures Order.  The Debtors and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys are entitled to the protections of section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan and this Confirmation Order.

F.    **Good Faith.**  The Plan, including the Trust Distribution Procedures, has been proposed in good faith and not by any means forbidden by law.  In so finding, the Bankruptcy Court has considered the totality of the circumstances of the Chapter 11 Cases.  The Plan, including the Trust Distribution Procedures, is the result of extensive, good faith, arm's length negotiations among the Debtors and their principal constituencies, including the Creditors' Committee.  This Court has not made any determination about the reasonableness or fairness of the Trust Distribution Procedures.

G.    **Plan Supplement**.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  The Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the Plan.

H.    **Section 1129(b).**  The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to the Classes that are Impaired and voted to, or are deemed to, reject the

5

RLF1 33843519v.1

Plan in accordance with section 1129(b) of the Bankruptcy Code. With respect to each Debtor, the Plan does not discriminate unfairly among the different classes of unsecured creditors and Interest holders and does not offend the fair and equitable standard of the Bankruptcy Code because grounds and justifications exist for treating the classes differently in the Chapter 11 Cases.

I.   **Trust Distribution Procedures.** The Allowed amount of any Talc Claim shall be the amount determined under the Trust Distribution Procedures. Solely as between the holders of any Talc Claims and the Avon Liquidation Trust, such Allowed amount shall be legally enforceable against the Avon Liquidation Trust in accordance with the Plan, Trust Distribution Procedures and the other ALT Documents. For the avoidance of doubt, the amount of any installment payments, initial payments, or payments based on payment percentages established under the Trust Distribution Procedures, as determined or as actually paid by the Avon Liquidation Trust, are not the equivalent of any claimant's Allowed amount of their Talc Claim. For the further avoidance of doubt, nothing herein determines whether any Insurance Company is obligated to provide coverage for, or pay, the amount determined under the Trust Distribution Procedures for an Allowed Talc Claim or any other amount.

J.   **Insurance Entity Injunction**. The terms of the Insurance Entity Injunction, including any provisions barring actions against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement.

K.   **Injunctions.** The injunctions set forth in Article X of the Plan, including the Plan Injunction and Insurance Entity Injunction, are essential to the Plan, appropriately tailored to implement the applicable provisions of the Plan, and consistent with all applicable provisions of the Bankruptcy Code and other applicable law.

RLF1 33843519v.1

L.    **Transfer of Rights Under Insurance Policies.**    The Plan's transfer of the Insurance Rights, subject to the terms and conditions of the Insurance Policies, is authorized and permissible notwithstanding any terms of any policies or provisions of non-bankruptcy law that prohibit the delegation, assignment, or other transfer of the Insurance Rights and of any policies or provisions of applicable law that are argued to prohibit the assignment or transfer of such Insurance Rights; *provided*, *however*, that, for the avoidance of doubt, the Insurance Rights that are transferred pursuant to Section 5.4(iv) of the Plan include and are subject to the Insurance Policies' terms and conditions.  The Avon Liquidation Trust is a proper defendant for all applicable Claims against the Debtors to assert liability of the Debtors or the Liquidating Debtors, as applicable.

M.    **Avon Liquidation Trust Rights Under Insurance Policies.**    The Avon Liquidation Trust's rights under any Insurance Policies issued by Non-Settling Insurance Companies, including the effect of any failure to satisfy conditions precedent or obligations under such policies (other than, in the case of the Insurance Policies, the terms of any policies or provisions of applicable law that are argued to prohibit the assignment or transfer of such rights), shall be determined in accordance with the Insurance Policies and applicable law, in subsequent litigation.

N.    **Avon Liquidation Trust Rights to Proceeds of Insurance Settlements.**    The proceeds of any sale of any Insurance Policies pursuant to an Insurance Settlement Agreement, including the full settlement amount, shall be contributed to the Avon Liquidation Trust "free and clear" of all liens, claims, encumbrances, any other rights of any nature, whether at law or in equity, and other "interest," under sections 363 and 1141 of the Bankruptcy Code, of any additional insured or any other person or Entity in such Insurance Policies.  Notwithstanding anything to the

7

RLF1 33843519v.1

contrary, and for the avoidance of doubt, any Insurance Policies sold by the Debtors to an applicable Settling Insurance Company shall be sold free and clear of all liens, claims, encumbrances, interests, or other rights on the Effective Date on the terms and as provided in any applicable Insurance Settlement Agreement and any orders governing such settlements.

O.      **Debtor Releases**.  Good and valid justifications have been demonstrated in support of the releases contained in Section 10.6 of the Plan (the "**Debtor Releases**").  Based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, including in the Confirmation Declaration, the Debtor Releases are (i) fair, equitable, and reasonable, (ii) integral elements of the Plan and resolution of the Chapter 11 Cases, and (iii) in the best interests of the Debtors, the Estates, and creditors.  Accordingly, such releases constitute a sound exercise of the Debtors' business judgment.

P.      **Exculpation.**  The exculpation provided by Section 10.7 of the Plan for the benefit of the Exculpated Parties is appropriately tailored to the circumstances of these Chapter 11 Cases. The failure to implement the exculpation provision would seriously impair the Debtors' ability to confirm the Plan.  No Exculpated Party is being exculpated for acts or omissions that are determined in a Final Order by a court of competent jurisdiction to constitute a criminal act, fraud, willful misconduct, or gross negligence.

Q.      **Modifications to Plan.**  Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan and/or the Plan Supplement made after solicitation of the Plan (including, without limitation, the modifications set forth in the versions of the Plan filed on July 17, 2025 [Docket No. 1319], July 31, 2025 [Docket No. 1388], and September 19, 2025 [Docket No. 1521]) or in this Confirmation Order constitute technical or clarifying changes, and/or do not materially and adversely affect or change the treatment of any other Claim or Interest under the

8

Plan. Notice of any such modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, such modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims or Interests be afforded any further opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan is properly before the Bankruptcy Court, and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

R. **Notice.** As evidenced by the Solicitation Certifications and the Publication Affidavit filed with the Bankruptcy Court, due, proper, timely, adequate, and sufficient service and notice of the Plan, including all releases and injunctions thereunder, the deadline and procedures for filing objections to the Plan (including, without limitation, the deadline and procedures for filing any objections to the assumption, assumption and assignment, or rejection of any executory contracts and unexpired leases under the Plan), the Plan Supplement, and the Confirmation Hearing has been provided in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Solicitation Procedures Order to all interested Persons and Entities and no other or further notice is necessary or shall be required.

S. **Tabulation.** As described in the Voting Certification, the holders of Claims in Class 3 (General Unsecured Claims) against each Debtor and the holders of Claims in Class 4 (Talc Claims) against Avon Products, Inc. have accepted the Plan in the numbers and amounts required by section 1126 of the Bankruptcy Code or otherwise pursuant to the Solicitation Procedures Order. All procedures used to tabulate the Ballots, and to record the elections of holders of Unsecured 2043 Notes Claims in Class 3 in the Optional Election Form or, in the case

9

RLF1 33843519v.1

of a General Unsecured Claim in Class 3 other than a Unsecured 2043 Notes Claim, in the Class 3

Ballots, were fair, reasonable, and conducted in accordance with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Solicitation

Procedures Order.  All other Claims against, and Interests in, the Debtors are presumed to accept

the Plan, deemed to reject the Plan, or unclassified under the Plan.

T.      **Opportunity to Object.**  In compliance with the Bankruptcy Code, the Bankruptcy

Rules, the Local Bankruptcy Rules, and the Solicitation Procedures Order, a fair and reasonable

opportunity to object or be heard with respect to the Plan has been afforded to all interested Persons

and Entities.

U.      **No Action.**  Pursuant to the appropriate provisions of the internal laws of the State

of Delaware, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code,

no action of the respective officers, directors, managers, members, or stockholders of the Debtors

or Liquidating Trustee, as applicable, shall be required to authorize the Debtors, the Liquidating

Debtors, or Liquidating Trustee to enter into, execute, deliver, file, adopt, amend, restate,

consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other

document to be executed, delivered, adopted, or amended in connection with the implementation

of the Plan, the winding up and dissolution of the Liquidating Debtors, or the documents set forth

in the Plan Supplement, except as expressly required pursuant to the Plan.

V.      **No Governmental Approvals Required.**  Except as otherwise expressly provided

in the Plan or this Confirmation Order, this Confirmation Order shall constitute all approvals and

consents required, if any, by the laws, rules or regulations of any state or any other governmental

authority with respect to the implementation or consummation of the Plan and any other acts that

may be necessary or appropriate for the implementation or consummation of the Plan.

10

W.    **Best Interests.**  The Liquidation Analysis provided in the Disclosure Statement and the other evidence presented, proffered, or adduced at the Confirmation Hearing (i) are persuasive and credible; (ii) have not been controverted by other evidence; and (iii) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

X.    **Executory Contracts and Unexpired Leases**

i.    **Cure and Assumption Notices and Opportunity to Object.**    On June 5, 2025, the Debtors served the *Notice of Proposed Assumption and Assignment and Cure Costs Relating to Executory Contracts and Unexpired Leases of the Debtors* [Docket No. 1123] (the "**Assumption and Assignment Notice**"), which included a schedule listing certain executory contracts that may potentially be assumed by the Debtors and assigned to the Avon Liquidation Trust and identifying the Cure Amount, if any, that the Debtors believed must be paid to cure any monetary defaults and pay all amounts accrued under such contracts and leases (such schedule, as may be amended, supplemented, or otherwise modified, the "**Schedule of Assumed and Assigned Contracts**").    The Assumption and Assignment Notice was served on each non-Debtor counterparty (each, a "**Counterparty**" and collectively, the "**Counterparties**") to the executory contracts and unexpired leases identified on the Schedule of Assumed and Assigned Contracts (the "**Assumed and Assigned Contracts**"), as applicable.    The service of the Assumption and Assignment Notice, including the Schedule of Assumed and Assigned Contracts, was timely, good, sufficient and appropriate under the circumstances and no further notice need be given.  All Counterparties to the Assumed and Assigned Contracts have had a reasonable opportunity to object

11

both to the Cure Amount listed on the Assumption and Assignment Notice and to the assumption and assignment of the Assumed and Assigned Contracts.

ii.      **Cure/Adequate Assurance.**  The Debtors have cured or demonstrated the ability to cure any default with respect to any act or omission that occurred prior to the Effective Date under any of the Assumed and Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code.  Unless otherwise agreed to by the Debtors or the Liquidating Trustee, as applicable, and the applicable Counterparty, the Cure Amounts set forth in the Schedule of Assumed and Assigned Contracts are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such executory contracts or unexpired leases. Accordingly, all of the requirements of sections 1123(b)(2) and 365(b) of the Bankruptcy Code have been satisfied for the assumption by the Debtors of each of the Assumed and Assigned Contracts.

Y.      **Unenforceability of Anti-Assignment Provisions.**  Anti-assignment provisions in any Assumed and Assigned Contract, any other third party consent, or of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code, shall not restrict, limit, or prohibit the assumption, assignment, or sale of the Assumed and Assigned Contracts and are unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

Z.      **Final Order.**  This Confirmation Order is intended to be a final order within the meaning of 28 U.S.C. § 158(a).

**FURTHER, IT IS HEREBY ORDERED THAT:**

1.      All requirements for the Confirmation of the Plan have been satisfied.  Accordingly, the Plan is confirmed in its entirety as set forth herein.

12

RLF1 33843519v.1

2.       The findings of fact and conclusions of law set forth above, as well as any additional findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing, are hereby incorporated into this Confirmation Order.

3.       The documents contained in the Plan Supplement are approved in their entirety. The Debtors are authorized to take all actions required under the Plan and the Plan Supplement documents to effectuate and/or implement the Plan.  The Debtors are authorized to amend, modify, or supplement the Plan and the Plan Supplement documents following entry of this Confirmation Order in a manner consistent with this Confirmation Order and the Plan, and as provided for by section 1127 of the Bankruptcy Code.

4.       The terms of the Plan, the documents contained in the Plan Supplement, and all exhibits and other relevant and necessary documents related thereto or contemplated thereby shall be effective and binding as of the Effective Date subject to the terms of this Confirmation Order and applicable law.

5.       **Objections.**  All interested Persons and Entities have had a fair opportunity to litigate all claims that are raised by, or could have been raised by, the objections, and the objections have been fully and fairly litigated.  To the extent any objections (including any statements, responses, or reservation of rights contained therein) to confirmation of the Plan or other responses or reservations of rights with respect thereto have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, such objections and responses are denied and overruled on the merits with prejudice.

6.       **Implementation and Effectiveness of the Plan.**  Upon the Effective Date, by virtue of the satisfaction of all conditions precedent in Section 9.1 of the Plan, or waiver thereof pursuant to Section 9.2 of the Plan, all actions contemplated by the Plan (including any action to

13

be undertaken by the Avon Liquidation Trust and/or the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken on or prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person, including but not limited to (i) the appointment of the Liquidating Trustee and the establishment of the Avon Liquidation Trust, (ii) the assignment and vesting of the ALT Assets in the Avon Liquidation Trust, (iii) the assumption of such liabilities and obligations identified in Section 5.4(vi) of the Plan by the Avon Liquidation Trust, (iv) the issuance and vesting of the New Parent Interest in the Avon Liquidation Trust, (v) the execution of the Trust Transfer Agreement(s), (vi) the allocation of Effective Date Available Cash and Post-Effective Date Available Cash for payment of Distributions in accordance with the terms of the Plan, (vii) the taking of all necessary or appropriate actions by the Debtors, the Liquidating Debtors, the Liquidating Trustee, or the Disbursing Agent, as applicable, to effectuate the Trust Formation Transactions and the Plan, and (viii) such other transactions that are necessary or appropriate to implement the Plan in a tax-efficient manner. All matters provided for in the Plan are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without any requirement of further action by the Debtors or the Estates.

7. **Appointment of Liquidating Trustee.** Hon. Melanie L. Cyganowski (Ret.) is hereby appointed as the initial Liquidating Trustee effective as of the Effective Date, subject to the terms set forth in the applicable ALT Documents.

8. **Establishment of Avon Liquidation Trust.** This Confirmation Order authorizes (i) the creation and implementation of the Avon Liquidation Trust in accordance with the terms of this Confirmation Order, the Plan, and the ALT Trust Agreement, and (ii) the appointment of the Liquidating Trustee and the ALT Trust Advisory Committee for the Avon Liquidation Trust to

14

accomplish the purposes of the Avon Liquidation Trust, as set forth in and subject to the ALT

Trust Agreement and the Plan, notwithstanding any otherwise applicable non-bankruptcy law.  The

Avon Liquidation Trust shall be established on the Effective Date upon the execution of the ALT

Trust Agreement by the parties thereto.

9.     **Role of the Liquidating Trustee.**  In accordance with the ALT Documents, and in

furtherance of and consistent with the purposes of the Avon Liquidation Trust and the Plan, the

Liquidating Trustee shall have the power and authority to act as trustee of the Avon Liquidation

Trust and, subject to the consent and consultation rights of the ALT Trust Advisory Committee

specified in the ALT Documents, perform the Authorized Acts through the earlier of the ALT

Termination Date and the date such Liquidating Trustee resigns, is terminated, or is otherwise

unable to serve for any reason, as determined by the Liquidating Trustee.

10.     **Securities Registration Exemption**.  The issuance of the New Parent Interest to

the Avon Liquidation Trust pursuant to the Plan shall be exempt, pursuant to section 1145 of the

Bankruptcy Code, without further act or actions by any Person, from registration under the

Securities Act, and all rules and regulations promulgated thereunder, and any other applicable

securities laws, to the fullest extent permitted by section 1145 of the Bankruptcy Code.

11.     Any right to receive a Distribution from the Avon Liquidation Trust will not, and

is not intended to, constitute "securities" and, accordingly, will not be registered pursuant to the

Securities Act or any applicable state or local securities law.  However, if it should be determined

that any such right to receive such Distributions constitute "securities," the exemption provisions

of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of

such right will be exempt from registration under the Securities Act, all rules and regulations

promulgated thereunder, and all applicable state and local securities laws and regulations.  Any

15

RLF1 33843519v.1

such right to receive such Distributions (and the underlying Claim giving rise thereto) shall not: (i) be voluntarily or involuntarily, directly or indirectly, assigned, conveyed, hypothecated, pledged, or otherwise transferred or traded; (ii) be evidenced by a certificate or other instrument; and (iii) possess any voting rights with respect to the Avon Liquidation Trust or otherwise.

12.    **Exemption from Certain Transfer Taxes and Recording Fees.**  To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor or a Liquidating Debtor to any Entity (including the Avon Liquidation Trust) pursuant to, in contemplation of, or in connection with the Plan or pursuant to the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments, or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers of assets to and by the Avon Liquidation Trust) shall not be subject to any United States federal, state, or local document recording tax, stamp tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

13.    **Cancellation of Notes, Interests, Instruments, Certificates, and Other Documents.**  Except as otherwise provided herein and in the Plan, on and after the Effective Date, all Interests and all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims against or Interests in the Debtors or

16

RLF1 33843519v.1

obligations of the Debtors thereunder or in any way related to the foregoing, including the Natura Secured Credit Documents, the Natura Unsecured Promissory Note, and the Unsecured 2043 Notes Documents, shall be deemed cancelled and of no further force and effect without any need for further action or approval of the Bankruptcy Court, *provided*, *however*, that the Unsecured 2043 Notes Documents shall continue solely to (i) preserve the Bond Trustee's rights thereunder (including, without limitation, its rights to assert, pursue, and be paid with respect to any lien, expense reimbursement, indemnification or similar amounts) and (ii) permit the Unsecured 2043 Noteholders to receive their Distributions. Upon the Effective Date, the obligations of the Bond Trustee under the Unsecured 2043 Notes Documents shall be discharged and its duties thereunder shall be deemed fully satisfied, except to the extent necessary to facilitate the Distributions provided in the Plan to holders of Unsecured 2043 Notes that are not Electing General Unsecured Claims.

14. **Setoffs and Recoupments.** Subject to Section 2.2 and Sections 10.4 through 10.8 of the Plan, the Liquidating Trustee may, but shall not be required to, setoff against, or recoup from, any Claim and from any payments to be made pursuant to the Plan with respect to such Claim or any claims of any nature whatsoever (to the extent permitted by applicable law) that the Debtors or the Liquidating Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder or in the Plan shall constitute a waiver or release by the Debtors, the Liquidating Debtors, or the Liquidating Trustee of any such Claim the Debtors, the Liquidating Debtors, or the Liquidating Trustee may have against such claimant.

15. **Claims Resolution Procedures Approved.** The procedures for resolving Disputed Claims set forth in Article VII of the Plan are hereby approved.

16. **ALT Operating Reserve**. On the Effective Date or as soon as practicable thereafter, the Debtors or the Liquidating Debtors, as applicable, shall transfer Effective Date Available Cash in the ALT Operating Reserve Amount and any remaining Effective Date Available Cash following the allocations set forth in the first sentence of Section 5.10(i) of the Plan, in each case to an account of the Avon Liquidation Trust to fund the ALT Operating Reserve. The Liquidating Trustee shall, in the name of the Avon Liquidation Trust, establish a separate account for the ALT Operating Reserve. Periodically, until the ALT Termination Date, the Liquidating Trustee will replenish the ALT Operating Reserve pursuant to Section 5.10 of the Plan to the extent deemed necessary by the Liquidating Trustee to satisfy and pay estimated future ALT Operating Expenses.

17. **Retained Causes of Action and Reservation of Rights.** The Avon Liquidation Trust shall have the right to prosecute any and all Retained Causes of Action. Pursuant to section 1123(b) of the Bankruptcy Code, except as provided in Sections 10.4 through 10.7 of the Plan, nothing contained in this Confirmation Order or the Plan shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including any actions specifically enumerated in the Schedule of Retained Causes of Action filed as part of the Plan Supplement. Subject to Sections 10.4 through 10.7 of the Plan, all such Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses shall be transferred to the Avon Liquidation Trust which shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced,

18

and all of the Debtors' and the Liquidating Debtors' legal and equitable rights with respect to any Claim or Interest may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

18.     **Distributions.**  The Debtors, the Liquidating Debtors, the Avon Liquidation Trust and the Disbursing Agent, as and to the extent applicable, are authorized and directed to make all distributions under the Plan pursuant to Article VI of the Plan and the ALT Documents and to pay, as applicable, any fees, expenses, or other amounts approved by this Confirmation Order, or any other order of the Bankruptcy Court.

19.     **Insurance Rights Transfer**.  This Confirmation Order confirms that the Insurance Rights Transfer, as provided by Section 5.4(iv) of the Plan, is authorized, valid, and enforceable under sections 541(c)(1)(a), 1123(a)(5)(B), and 1129(a)(1) of the Bankruptcy Code, notwithstanding any terms of any policies or provisions of non-bankruptcy law that prohibit the delegation, assignment, or other transfer of Insurance Rights, and that the Bankruptcy Code preempts any anti-assignment contractual provisions and applicable state law.  The Insurance Rights transferred pursuant to the Plan remain subject to the terms and conditions of the applicable Insurance Policies, including any coverage defense available under applicable law.

20.     **Executory Contracts and Unexpired Leases.**  Pursuant to Section 8.1 of the Plan, as of and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, each executory contract and unexpired lease of the Debtors not previously assumed, rejected, or assumed and assigned by the Debtors during the Chapter 11 Cases, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease (i) is listed on the Schedule of Assumed and Assigned Contracts or (ii) as of the

19

Effective Date is subject to a pending motion to assume, reject, or assume and assign such executory contract or unexpired lease.

21.  To the extent a Cure Dispute is timely asserted in an objection filed in accordance with Section 8.2(ii) of the Plan, such Cure Dispute shall be scheduled for a hearing by the Bankruptcy Court.  Following resolution of a Cure Dispute by Final Order of the Bankruptcy Court, the applicable contract or lease shall be deemed assumed as of the Effective Date; *provided*, *however*, that if any Claim subject to a Cure Dispute is Allowed in an amount greater than the Cure Amount for such Claim listed on the Schedule of Assumed and Assigned Contracts, the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as applicable, reserves the right to reject such executory contract or unexpired lease for a period of seven (7) Business Days following entry of a Final Order of the Bankruptcy Court resolving the applicable Cure Dispute by filing a notice indicating such rejection with the Bankruptcy Court.

22.  Subject to the occurrence of the Effective Date, the payment of any applicable Cure Amount, and the resolution of any Cure Dispute, the entry of this Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections, assumptions, and assumptions and assignments provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated or provided in a separate order of the Bankruptcy Court, rejections, assumptions, or assumptions and assignments of executory contracts and unexpired leases pursuant to the Plan are effective as of the Effective Date.  Each executory contract and unexpired lease assumed pursuant to the Plan or by order of the Bankruptcy Court shall be assigned to the Avon Liquidation Trust on the date such trust is established or as soon as reasonably practicable thereafter, and shall vest in, and be fully enforceable by, the Avon Liquidation Trust in accordance

20

with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

23.    **Rejection Damages Claims.**    Pursuant to Section 8.4 of the Plan, if the rejection of an executory contract or unexpired lease by any of the Debtors results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their Estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors no later than thirty (30) calendar days after the later of (i) the Effective Date and (ii) the effective date of the rejection of such executory contract or unexpired lease.  Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims.

24.    **Administrative Expense Claims Bar Date.**    Except as otherwise provided in Section 2.1 of the Plan, the applicable deadline for filing requests for payment of Administrative Expense Claims (other than Professional Fee Claims and Statutory Fees) shall be the date that is sixty (60) calendar days after the Effective Date (the "**Administrative Expense Claims Bar Date**").  Holders of Administrative Expense Claims that are required to, but do not, file and serve requests for the payment of such Administrative Expense Claims by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Claims against the Debtors or their Assets.

25.    **Professional Fee Claims.**    Pursuant to Section 2.4 of the Plan, all Professional Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 327, 328, 330, 331, 363, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall (i) file, on or before the date that is forty-five (45) days after the Effective Date, or as soon

21

RLF1 33843519v.1

as reasonably practicable thereafter, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, from the Professional Fee Escrow Account, in such aggregate amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claim, (a) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Professional Fee Claim is entered or (b) upon such other terms and conditions as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as applicable.

26. On or prior to the Effective Date, the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as applicable, shall establish the Professional Fee Escrow Account and, on the Effective Date, fund the Professional Fee Escrow Account with Cash in an amount equal to the sum of each Professional Person's reasonable and good faith estimates of its Professional Fee Claims. No later than ten (10) calendar days prior to the Effective Date, holders of Professional Fee Claims shall provide a reasonable and good faith estimate of unpaid Professional Fee Claims incurred in rendering services before the Effective Date to the Debtors. If a holder of a Professional Fee Claim does not provide such an estimate, the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Professional Fee Claim. No Claims, Interests, Liens, other encumbrances, or liabilities of any kind shall encumber the Professional Fee Escrow Account in any way.

27. **Conditions Precedent to the Effective Date and Waiver.** Notwithstanding anything to the contrary herein or in the Plan, the Plan shall not become effective unless and until

22

all conditions set forth in Section 9.1 of the Plan have been satisfied or waived in accordance with the Plan. Each of the conditions precedent to confirmation of the Plan and the occurrence of the Effective Date may be waived in writing by the Debtors with the consent of the Creditors' Committee (and, with respect to Section 9.1(xii) of the Plan, the Bond Trustee) (in each case not to be unreasonably withheld), without leave of or order of the Bankruptcy Court. If any such condition precedent is waived pursuant to Section 9.2 of the Plan and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied.

28. **Release, Injunction and Exculpation Provisions.** As of the Effective Date, pursuant to Bankruptcy Rule 3020(c)(1), all release, injunction, and exculpation provisions embodied in the Plan, including those contained in Sections 10.2 (Pre-Confirmation Injunctions and Stays), 10.3 (Injunction Against Interference with Plan), 10.4 (Plan Injunction), 10.5 (Insurance Entity Injunction), 10.6 (Releases), 10.7 (Exculpation) and 10.8 (Injunction Related to Releases and Exculpation) are hereby approved and shall be effective and binding on all Persons and Entities, to the extent provided in the Plan, without further order or action by the Bankruptcy Court.

29. **Dissolution of the Creditors' Committee**. In accordance with Section 12.15 of the Plan, on the Effective Date, the Creditors' Committee will dissolve; *provided, however*, that following the Effective Date, the Creditors' Committee may, at its option and without taking any action or seeking or receiving any approval, continue to serve and function after the Effective Date for the purposes of participating in any: (i) appeal of any order entered in the Chapter 11 Cases, including this Confirmation Order; (ii) applications for compensation or expense reimbursements

23

RLF1 33843519v.1

of Professional Persons and any hearing thereon; and/or (iii) adversary proceeding pending on the Effective Date to which the Creditors' Committee was a participant. Effective as of the dissolution of the Creditors' Committee, the ALT Trust Advisory Committee shall succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Creditors' Committee and shall enjoy the work product protections that were applicable or available to the Creditors' Committee before its dissolution.

30. **Retention of Jurisdiction.** Notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, except as set forth in this Confirmation Order, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible, including, among other things, jurisdiction over the matters set forth in Section 11 of the Plan. The Bankruptcy Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Confirmation Order, all amendments thereto, and any waivers and consents thereunder.

31. **Reversal/Stay/Modification/Vacatur of Order.** Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Bankruptcy Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, assignment, transfer, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors, the Liquidating Debtors, the Avon Liquidation Trust, the Liquidating Trustee, or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any

24

such act, transfer, or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the ALT Documents, or any amendments or modifications to the foregoing.

32. **Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent.** The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

33. **Binding Effect.** Subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan, the Plan Documents, or any exhibit or document related thereto, and the Confirmation Order shall bind every interested Person or Entity, to the fullest extent permitted under applicable law, including every holder of a Claim against or Interest in any Debtor, and inure to the benefit of and be binding on such holders' respective successors and assigns, regardless of whether the Claim or Interest of such holder is Impaired under the Plan and whether such holder has accepted the Plan.

34. **Applicable Non-Bankruptcy Law.** Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, the ALT Documents, and any other related documents or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law; *provided, however*, that the rights and obligations of any Non-Settling Insurance Company relating to or arising out of the Plan Documents, including the Plan, the Confirmation Order, or any provision thereof, and the rights and obligations under any Insurance Policies issued by Non-Settling Insurance Companies, shall be determined under applicable law.

25

35.     **Notice of Entry of Confirmation Order and Effective Date.**  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Avon Liquidation Trust or the Liquidating Debtors shall file and serve a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form annexed hereto as **Exhibit B**, on all parties who hold a Claim or Interest in these Chapter 11 Cases, the U.S. Trustee, and any other parties listed in the creditor matrix maintained by Epiq (the "**Notice of Effective Date**").  The Avon Liquidation Trust or the Liquidating Debtors may cause a summary version of the Notice of Effective Date to be published in the national editions of the *Wall Street Journal* and *USA Today*, and any other publications the Liquidating Trustee deems appropriate, within ten (10) Business Days after the Effective Date (or as soon as reasonably practicable thereafter).  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of the contents thereof, entry of this Confirmation Order, the occurrence of the Effective Date and the Administrative Expense Claims Bar Date.

36.     **No Waiver.**  Any failure of this Confirmation Order to specifically include or refer to any particular article, section, or provision of the Plan, the documents contained in the Plan Supplement, or any exhibit or document related thereto, or contemplated thereby, does not, and shall not be, deemed to diminish or impair the effectiveness or enforceability of such article, section, or provision nor constitute a waiver thereof; it being the intention of the Bankruptcy Court that all such documents are approved in their entirety.  Nothing in this Confirmation Order shall constitute or be deemed to be a waiver, modification, or suspension of section 525 of the Bankruptcy Code or any party's rights thereunder.

37.     **No Stay of Confirmation Order.**  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062 and any other Bankruptcy Rule to the contrary, to the extent applicable, there

is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

38.     **Miscellaneous.**    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept for filing and/or recording any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

39.     **No Successor Liability.**  Except as otherwise expressly provided in the Plan and this Confirmation Order, the Avon Liquidation Trust: (i) is not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors on or prior to the Effective Date; (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

40.     **Natura Settlement.**  Nothing herein or in the Plan, including the injunction, releases, or exculpation provided therein, shall, or shall be deemed to, expand or otherwise affect the releases granted to Natura or its non-Debtor affiliates pursuant to the Natura Settlement Order and the Natura Settlement Agreement.  For the avoidance of doubt, neither Natura nor its non-Debtor affiliates shall be a "Released Party" under the Plan.

41.     **The Stock and Asset Purchase Agreement and Transition Services.**  Nothing herein or in the Plan, including the injunction, releases, or exculpation provided therein, shall, or shall be deemed to, expand or otherwise affect the rights or obligations under the Sale Order and

27

the Stock and Asset Purchase Agreement[3], which remain in full force and effect and remain binding and enforceable in all respects with respect to the Liquidating Debtors, Natura, and the Liquidating Trustee. Pursuant to, and in accordance with, the Sale Order and the Stock and Asset Purchase Agreement (and any ancillary Transaction documents executed in connection thereto, including, without limitation, the Transition Services Agreement), the Liquidating Debtors, Natura, and the Liquidating Trustee, as applicable, shall promptly execute, acknowledge and deliver all reasonable further conveyances, notices, assumptions, releases and acquaintances and other documents or instruments, and shall take such reasonable actions as may be necessary or appropriate, to make effective the Transactions as may be reasonably requested by any other Party (including, without limiting the generality of the foregoing), (i) transferring to Seller or its designee(s) (and having Seller or such designee(s) assume) each Excluded Asset and any asset or Liability not contemplated by the Stock and Asset Purchase Agreement to be a Transferred Asset or an Assumed Liability, respectively, which asset or Liability was transferred to Buyer at the Closing or is otherwise held by Buyer or any of its Subsidiaries after the Closing and (ii) transferring to Buyer or its designee (and having Buyer or such designee(s) assume) any asset or Liability contemplated by the Stock and Asset Purchase Agreement to be a Transferred Asset or an Assumed Liability, respectively, which was not transferred to Buyer at the Closing); *provided, however*, that except for Buyer's obligations to discharge an Assumed Liability and as otherwise provided pursuant to Section 2.03 of the Stock and Asset Purchase Agreement, nothing in this Confirmation Order shall require any Party or its Affiliates to pay money to, commence or participate in any Action with respect to, or offer or grant any accommodation (financial or

---

[3]   Capitalized terms used but not defined in this Paragraph shall have the meanings ascribed to such terms in the Stock and Asset Purchase Agreement.

otherwise) to, any third party following the Closing, such terms as defined under the Stock and Asset Purchase Agreement.

42.      **PBGC Release Carve-Out.**  Nothing in these Chapter 11 Cases, the Disclosure Statement, the Plan, this Confirmation Order, or any other document filed in these Chapter 11 Cases shall be construed to discharge, release, limit, or relieve any individual from any claim by the Pension Benefit Guaranty Corporation ("**PBGC**") or the Avon Products Inc. Personal Retirement Account Plan ("**Pension Plan**") for breach of any fiduciary duty under ERISA[4], including prohibited transactions, with respect to the Pension Plan, subject to any and all applicable rights and defenses of such parties, which are expressly preserved.  The PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such fiduciary duty or related liability by any of the provisions of the Disclosure Statement, Plan, Confirmation Order, Bankruptcy Code, or other document filed in these Chapter 11 Cases.  For the avoidance of doubt, the Liquidating Debtors shall not be released from any liability or obligation under ERISA, the Internal Revenue Code, and any other applicable law relating to the Pension Plan.  For the avoidance of doubt, the foregoing paragraph shall not diminish the scope of any exculpation to which any party is entitled under section 1125(e) of the Bankruptcy Code or other applicable law.

Dated: September 24th, 2025
Wilmington, Delaware

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

---

[4]     "**ERISA**" means the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1301-1461 (2018 & Supp. IV 2023), and the regulations promulgated thereunder.

29

# Exhibit B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- x
                                                         :
In re                                                    :   **Chapter 11**
                                                         :
**AIO US, INC.,** *et al.,*                              :   **Case No. 24–11836 (CTG)**
                                                         :
          **Debtors.**[1]                                :   **(Jointly Administered)**
                                                         :
                                                         :   **Re: Docket Nos. 812, 965, 1027, 1048, 1319,**
                                                         :       **1549 & 1550**
                                                         :
-------------------------------------------------------- X

**NOTICE OF OCCURRENCE OF
EFFECTIVE DATE AND ENTRY OF ORDER
CONFIRMING FOURTH AMENDED JOINT CHAPTER 11 PLAN
OF LIQUIDATION OF AIO US, INC. AND ITS DEBTOR AFFILIATES**

**Entry of the Confirmation Order and Occurrence of the Effective Date**

**PLEASE TAKE NOTICE** that:

1.      On September 24, 2025, AIO US, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed the *Fourth Amended Joint Chapter 11 Plan of Liquidation of AIO US, Inc. and Its Debtor Affiliates* [Docket No. 1549] (together with all exhibits and schedules thereto and as may be amended, modified, or supplemented from time to time, the "**Plan**") with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2.      On September 24, 2025, the Bankruptcy Court entered the *Order (I) Confirming Fourth Amended Joint Chapter 11 Plan of Liquidation of AIO US, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1550] (the "**Confirmation Order**").[2]

3.      All conditions precedent to consummation of the Plan were satisfied or waived in accordance with Article IX of the Plan.  Further, no stay of the Confirmation Order is in effect.  Accordingly, the Plan was substantially consummated and became effective on October 7, 2025 (the "**Effective Date**").  As of the Effective Date, all releases, exculpations, waivers, and injunctions set forth in the Plan are now effective.

---

[1]      A complete list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number is available at https://dm.epiq11.com/case/aiousinc/info.  The Debtors' mailing and service address is 4 International Drive, Suite 110, Rye Brook, New York 10573.

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

4.      The Plan and the provisions thereof (including the exhibits and schedules thereto and all documents and agreements executed pursuant thereto or in connection therewith), the Plan Supplement, and the Confirmation Order are effective and enforceable and shall bind the Liquidating Debtors, the Released Parties, the Exculpated Parties, all holders of Claims and Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted or are deemed to have accepted the Plan), any other Person giving, acquiring, or receiving property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in these chapter 11 cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.  All settlements, compromises, releases (including the releases set forth in Article X of the Plan), waivers, exculpations, and injunctions set forth in the Plan are effective and binding on any Person that may have had standing to assert any settled, compromised, released, waived, exculpated, or enjoined Causes of Action.

**The Avon Liquidation Trust**

**PLEASE TAKE FURTHER NOTICE** that:

5.      In accordance with the Plan, the ALT Documents, and the Confirmation Order, the Avon Liquidation Trust shall administer, process, settle, resolve, liquidate, satisfy, and pay (from the designated fund therefor), as applicable, Claims against the Debtors from and after the Effective Date.  The Avon Liquidation Trust shall be administered and implemented by the Liquidating Trustee subject to the consent and consultation rights of the ALT Trust Advisory Committee as provided in the ALT Documents.  As set forth in Section 5.4 of the Plan, as of the Effective Date, the Avon Liquidation Trust shall assume sole and exclusive responsibility and liability for all liabilities of the Liquidating Debtors arising after the Effective Date, and such liabilities shall be liquidated, resolved, or paid by the Avon Liquidation Trust from the ALT Operating Reserve.  Talc Claims will be administered and liquidated pursuant to the Plan and the Trust Distribution Procedures, as applicable.

6.      Pursuant to Section 10.5 of the Plan and the Confirmation Order, the Bankruptcy Court issued an Insurance Entity Injunction to facilitate the Insurance Rights Transfer, protect the Avon Liquidation Trust, and preserve its Insurance Rights pursuant to the equitable jurisdiction and power of the Bankruptcy Court.  A complete description of the Claims, demands, or Causes of Action enjoined by the Insurance Entity Injunction and the reservations related thereto are set forth in more detail in Section 10.5 of the Plan.  **Please read the Confirmation Order and the Plan carefully for details regarding how the Insurance Entity Injunction and other terms and provisions may affect your rights.**

**Executory Contracts**

**PLEASE TAKE FURTHER NOTICE** that:

7.      In accordance with Section 8.1 of the Plan, each executory contract and unexpired lease of the Debtors not previously assumed, rejected, or assumed and assigned by the Debtors during the chapter 11 cases, shall be deemed automatically rejected unless such executory contract or unexpired lease (i) is listed on the Schedule of Assumed and Assigned Contracts or (ii) as of the

2

Effective Date, is subject to a pending motion to assume, reject, or assume and assign such executory contract or unexpired lease.

8.      In accordance with Section 8.4 of the Plan, in the event that the rejection of an executory contract or unexpired lease, solely pursuant to the Plan, results in damages to the other party or parties to such contract or lease, a Proof of Claim on account of such rejection damages Claim must be filed and served upon the Debtors **no later than thirty (30) calendar days after the later of (i) the Effective Date or (ii) the effective date of the rejection of such executory contract or unexpired lease (the "Rejection Damages Bar Date")**.

9.      Any such rejection damages Claim will be forever barred and will not be enforceable against the Debtors or their Estates, properties, or interests in property, unless a Proof of Claim is timely filed by the Rejection Damages Bar Date.

**Administrative Expense Claims Bar Date**

**PLEASE TAKE FURTHER NOTICE** that:

10.      Except as otherwise provided in Section 2.1 of the Plan, the applicable deadline for filing requests for payment of Administrative Expense Claims[3] (other than Professional Fee Claims and Statutory Fees) shall be **December 8, 2025, at 5:00 p.m. (Prevailing Eastern Time) (the "Administrative Expense Claims Bar Date")**.  Holders of Administrative Expense Claims that are required to, but do not, file and serve requests for the payment of such Administrative Expense Claims by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Claims against the Debtors or their Assets.

**Documents Filed in these Chapter 11 Cases**

**PLEASE TAKE FURTHER NOTICE** that:

11.      All documents filed with the Bankruptcy Court in connection with the above-captioned chapter 11 cases, including the Plan, the Plan Supplement (including the Schedule of Assumed and Assigned Contracts), and the Confirmation Order, may be viewed free of charge by visiting the website maintained by Epiq at https://dm.epiq11.com/case/aiousinc/info.  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee by accessing the Bankruptcy Court's website at http://www.deb.uscourts.gov.  Note that a PACER password and login are required to access documents on the Bankruptcy Court's website.  A PACER password can be obtained by visiting http://www.pacer.psc.uscourts.gov.

---

[3]    Pursuant to Section 1.1 of the Plan, "**Administrative Expense Claim**" means any Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses, (ii) Professional Fee Claims, (iii) all Statutory Fees, (iv) all Allowed Claims that are to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2) of the Bankruptcy Code, and (v) any Cure Claims.

Date:   October 8, 2025
        Wilmington, Delaware

/s/ Zachary I. Shapiro

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Zachary I. Shapiro (No. 5103)
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
E-mail: collins@rlf.com
        merchant@rlf.com
        shapiro@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ronit J. Berkovich (admitted *pro hac vice*)
Matthew P. Goren (admitted *pro hac vice*)
Alejandro Bascoy (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
E-mail: ronit.berkovich@weil.com
        matthew.goren@weil.com
        alejandro.bascoy@weil.com

*Attorneys for the Debtors
and the Debtors in Possession*